UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| LIGHTSPEED MEDIA CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  12-cv-889 WDS-SCW |
| | ) | |
| ANTHONY SMITH, | ) | |
| SBC INTERNET SERVICES, INC. d/b/a | ) | |
| AT&T INTERNET SERVICES, | ) | |
| AT&T CORPORATE REPRESENTATIVE #1, | ) | |
| COMCAST CABLE COMMUNICATIONS, | ) | |
| LLC and COMCAST CORPORATE | ) | |
| REPRESENTATIVE #1, | ) | |
| | ) | |
| Defendants. | ) | |

**OPPOSITION OF AT&T INTERNET SERVICES TO
EMERGENCY MOTION FOR EARLY DISCOVERY**

Defendants SBC Internet Services, Inc. d/b/a AT&T Internet Services ("AT&T") opposes

plaintiff Lightspeed Media Corporation's emergency motion for early discovery.  Quite simply,

there is no "emergency."  Lightspeed has demonstrated nothing close to the kind of emergency

that warrants the extraordinary departure it seeks from the orderly litigation process in federal

court.  What Lightspeed wants is the identity and contact information of Internet subscribers, and

that it is all it wants.  The reason Lightspeed wants this information is so that Lightspeed can

begin intimidating and coercing those subscribers into settling Lightspeed's unsubstantiated

claims against them.  As detailed below, Lightspeed may suspect, but certainly does not know,

that the named subscribers (prejudged by Lightspeed to be and condemned in its pleadings as

"criminals") were the actual individuals using a particular Internet connection at the point in time

Lightspeed claims its rights were infringed.   The Illinois Supreme Court in this very case has

already agreed with AT&T and other Internet service providers ("ISPs") that Lightspeed's untenable "conspiracy" allegations as to some 6,600 subscribers do not warrant the nationwide discovery Lightspeed continues to seek after amending its pleadings to assert baseless claims against AT&T based on AT&T's successful opposition to discovery in state court. These baseless claims do not validate Lightspeed's renewed attempts to harvest settlements in the name of "discovery." In reality, Lightspeed is using the ISPs and courts to aid in the identification of large numbers of individuals who can be targeted with threats of massive damages, the expense of litigating, and the potential embarrassment of being associated with the content Lightspeed purveys. With no apparent intent of actually litigating claims, Lightspeed and other firms engaged in similar "mass discovery" impose substantial burdens on the courts and ISPs, not for the purpose of litigating and securing judgments against the guilty but for the purpose of harvesting settlement money from any customer whose Internet connection has allegedly been used to infringe their rights.

By its emergency motion here, Lightspeed feigns a sense of urgency in the hopes of obtaining the personally identifiable information of hundreds of settlement targets before the defendants have an opportunity to move to dismiss the case for its lack of merit and before the Court can fully appreciate Lightspeed's true goals, motives, and methods. Lightspeed's emergency motion is less than forthright as to applicable authorities and is based on nothing more than a declaration of Lightspeed's principal (who is also Lightspeed's supposed investigator—a detail omitted from Lightspeed's emergency motion), which asserts and is relied upon as evidence of conclusory matters but is devoid of any factual assertions that can be tied to any of the thousands of so-called "co-conspirator" subscribers that Lightspeed still wants AT&T and other ISPs to identify. Lightspeed's motion should be summarily denied.

# INTRODUCTION

> *"What has been will be again, what has been done will be done again; there is nothing new under the sun."* -- Ecclesiastes 1:9

This lawsuit is of a piece with hundreds of other cases brought across the country by plaintiffs seeking recovery for alleged unauthorized access to sexually explicit content using the Internet.  The cases typically follow what district judges have called a "common arc":

> (1) a plaintiff sues anywhere from a few to thousands of Doe defendants for copyright infringement in one action; (2) the plaintiff seeks leave to take early discovery; (3) once the plaintiff obtains the identities of the IP subscribers through early discovery, it serves the subscribers with a settlement demand; (4) the subscribers, often embarrassed about the prospect of being named in a suit involving pornographic movies, settle…. Thus, these mass copyright infringement cases have emerged as a strong tool for leveraging settlements — a tool whose efficiency is largely derived from the plaintiffs' success in avoiding the filing fees for multiple suits and gaining early access en masse to the identities of alleged infringers.

*McGIP, LLC v. Does 1-149*, 2011 U.S. Dist. LEXIS 108109, at *11, n.5 (N.D. Cal. Sept. 16, 2011).  In these cases, ISPs like AT&T are repeatedly targets of the plaintiffs' massive burdensome discovery demands, often made in procedurally irregular fashion, and invariably made with dubious, untested evidentiary and legal support.

This case is just another example of a recent ploy of plaintiffs' lawyers in their efforts to secure mass discovery from a single court.  In this particular type of case, the plaintiffs' lawyers sue just one defendant, then state there are numerous potential "joint tortfeasors" or so-called "co-conspirators" as to which expedited *ex parte* discovery should be permitted even though they are not parties.  Thus, discovery is sought as to hundreds or thousands of individuals under the theory that they are simultaneously (i) potential parties as to whom identification is warranted and (ii) non-parties as to whom personal jurisdiction, venue, and joinder are not pertinent.  In support of this fictional pleading, plaintiff's lawyers argue *both* that the so-called "co-conspirators" don't have standing to challenge the subpoenas (because the subpoenas are

directed to the ISPs) and that the ISPs don't have standing to challenge the subpoenas (because some of the arguments involve the rights of the ISPs' customers who are the so-called "co-conspirators"). The plaintiffs' lawyers will also say that the subscribers' rights, if any, should be addressed after they are served and enter an appearance, when in actuality the plaintiffs have little to no true desire to serve or name defendants, and, even if they did, it would come separate and apart from the mass identification and coercion game that is actually at play.

AT&T and other ISPs made these arguments in this very case with respect to the very same discovery that Lightspeed seeks now on an emergency basis, and the Illinois Supreme Court granted the ISPs' motion for a supervisory order. (Explanatory Suggestions in Supp. of Rule 383 Mot. for Supervisory Order Directing Circuit Ct. to Vacate its Order Den. Movants' Mot. to Quash, or, Alternatively, Directing the Circuit Ct. to Enter a Finding of "Friendly" Contempt for Purposes of Immediate Appeal, *AT&T Internet Services v. LeChien*, No. 114334 (Ill. May 22, 2012), a true and correct copy of which is attached hereto as Exhibit A; Supervisory Order, *AT&T Internet Services v. LeChien*, No. 114334 (Ill. Jun. 27, 2012), a true and correct copy of which is attached to the Emergency Mot. to Order Defs., AT&T and Comcast to Produce Limited Disc. Prior to the Rule 26(f) Conference (ECF No. 9) (the "Emergency Mot.") as Exhibit J (ECF No. 9-10).) At the federal level, all or virtually all courts that have faced the issue outside the context of an initial *ex parte* hearing agree that such fictional "co-conspiracy" pleading does not justify disclosure of the personally identifiable information of Internet subscribers. Indeed, in a recent opinion concerning several lawsuits filed by Lightspeed's attorneys here, Chief Judge Holderman of the Northern District of Illinois held:

> [T]he court finds that the complaints' allegations of civil conspiracy are only unjustified attempts to bolster the obtaining of irrelevant discovery about non-parties. It is thus plain that the plaintiffs are not seeking information about the non-party IP addresses for the purpose of litigating their current claims.

4

*Pac. Century Int'l, Ltd. v. John Does 1-37*, 2012 WL 1072312 at *5 (N.D. Ill. Mar. 30, 2012)

(quashing subpoenas seeking information from ISPs and stating that "[w]hat the plaintiffs may

not do…is improperly use court processes by attempting to gain information about hundreds of

IP addresses located all over the country in a single action, especially when many of those

addresses fall outside of the court's jurisdiction");[1]  *see also CP Prods. v. Doe*, 2012 WL

3205621 at *2-3 (E.D. Cal. Jul. 31, 2012) (finding that even minimal burden on ISPs to produce

information concerning alleged co-conspirators would not be outweighed by any "needs" of the

plaintiff to obtain such information); *Pac. Century Int'l, Ltd. v. Doe*, 2012 WL 2522146 at *4

(E.D. Cal. Jun. 28, 2012) (vacating prior order to the extent it allowed the discovery of

information related to alleged co-conspirators); *First Time Videos, LLC v. Doe*, 2012 WL 170167

(E.D. Cal. Jan. 19, 2012) (finding no good cause for discovery of identity of John Doe

defendant's alleged "co-conspirators").

 Outside the "co-conspirator" case context, some judges have bit on plaintiffs' mass-

discovery requests, but increasingly few.  Lightspeed touts the recent opinion of one federal

judge, Judge Beryl A. Howell in the District of Columbia, as an "authoritative" and even a

"landmark" opinion.  But Lightspeed fails to mention that, in that very opinion, Judge Howell

certified for immediate appeal her order allowing discovery because she recognized that several

other judges in her own district had ruled to the contrary and disallowed the very same type of

discovery.[2]  Mem. Op. at 37, *AF Holdings, LLC v. Does 1-1,058*, No. 12-cv-00048 (D.D.C. Aug.

---

[1] Chief Judge Holderman reiterated his views in denying the plaintiffs' motion to alter and
amend his ruling.  *Pac. Century Int'l, Ltd. v. John Does 1-37*, No. 1:12-cv-01057(N.D. Ill. May
21, 2012), ECF No. 32.

[2] A number of ISPs have timely filed their petition for appellate review of Judge Howell's
decision with the U.S. Court of Appeals for the D.C. Circuit.  Pet. of Cox Commc'n, Inc.,
Verizon Online, LLC, Bright House Networks, LLC, SBC Internet Services, Inc. d/b/a AT&T

6, 2012), ECF No. 46 ("Upon consideration of the legal questions presented in the instant motion to quash, as well as the division in opinion among Judges on this Court when presented with cases claiming online copyright infringement against unknown individuals, the Court . . . certifies for interlocutory appeal denial of the [moving ISPs'] motion to quash the plaintiff's subpoenas").  Accordingly, Judge Howell's opinion doesn't even represent the law in her own district.  *Compare Nu-Image, Inc. v. Does 1-23,322*, 799 F. Supp. 2d 34, 44 (D.D.C. July 29, 2011) (Wilkins, J.) ("The Court finds it inappropriate and a waste of scarce judicial resources to allow and oversee discovery on claims or relating to defendants that cannot be prosecuted in this lawsuit."), *SBO Pictures Inc. v. Does 1-87*, 2012 WL 177865 (D.D.C. Jan. 19, 2012) (Facciola, J.) (relying upon *Nu-Image* and ordering plaintiff to "supplement its showing regarding its good faith belief that the IP addresses identified by plaintiff  belong to persons who are domiciled in the District of Columbia"), *and Caribbean Broad. Sys. Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1090 (D.C. Cir. 1998) ("[I]n order to get jurisdictional discovery[,] a plaintiff must have at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendant."), *with Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 2d 332, 345 (D.D.C. Mar. 22, 2011) (Howell, J.) ("Given that the defendants have yet to be identified, the Court believes that evaluating the defendants' jurisdictional defenses at this procedural juncture is premature").

Many more other judges have recognized the potential for abusive settlement tactics and have, in rapidly increasing numbers, quashed subpoenas, severed mass defendants, imposed

---

Internet Services, and Comcast Cable Communications, LLC for Permission to Appeal Pursuant to 28 U.S.C. § 1292(B), *AF Holdings, LLC v. Does 1-1,058*  (D.C. Cir. Aug. 16, 2012), a true and correct copy of which is attached hereto as Exhibit B.

sanctions, and generally increased their supervision and skepticism over these lawsuits.  One judge put it thus:

> [T]he court shares the concern that these cases potentially open the door to abusive settlement tactics. . . .  Nothing currently prevents Plaintiff from sending a settlement demand to the individual that the ISP identifies as the IP subscriber. That individual—whether guilty of copyright infringement or not—would then have to decide whether to pay money to retain legal assistance to fight the claim that he or she illegally downloaded sexually explicit materials, or pay the money demanded. This creates great potential for a coercive and unjust "settlement."

*Hard Drive Prods. v. Does*, 2011 U.S. Dist. LEXIS 132449, at *9 (N.D. Cal. Nov. 16, 2011) (dismissing Does 2-130 and imposing ongoing obligations upon plaintiff and its counsel to demonstrate that the discovery sought of Doe 1 is used for a proper purpose); *see also, e.g.*, Ruling at 7-9*, West Coast Prods., Inc. v. Swarm Sharing Hash Files,* No. 12-cv-01713 (W.D. La. Aug. 17, 2012), ECF No. 15 (severing all but one Doe defendant, and granting moving defendant's motion to quash subpoena seeking his or her identifying information); *Malibu Media, LLC v. John Does 1-10*, 2012 U.S. Dist. LEXIS 89286 at *5-9 (C.D. Cal. Jun. 27, 2012) (stating that "[t]he federal courts are not cogs in plaintiff's copyright-enforcement business model.  The Court will not idly watch what is essentially an extortion scheme, for a case that plaintiff has no intention of bringing to trial. . . . If [plaintiff] desires to vindicate its copyright rights, it must do it the old-fashioned way and earn it."; and ultimately allowing the plaintiff to seek information as to only one Doe defendant)*; Cinetel Films, Inc. v. Does 1-1,052*, 2012 WL 1142272 (D. Md. Apr. 4, 2012) (dismissing all Does for improper joinder but one); *AF Holdings LLC v. Does 1-135*, 2012 WL 1038671 (N.D. Cal. Mar. 27, 2012) (dismissing lawsuit for failing to serve any defendants); *Patrick Collins, Inc. v. John Does 1-23*, 2012 WL 1019034 (E.D. Mich. Mar. 26, 2012) (dismissing from action Does 2-23 for improper joinder); *K-Beech, Inc. v. John Does 1-41*, 2012 WL 773683 (S.D. Tex. Mar. 8, 2012) (dismissing all Does but one because plaintiff's copyright concerns "do[] not justify perverting the joinder rules"); *SBO Pictures, Inc.*

*v. Does 1-87*, 2012 WL 177865 (D.D.C. Jan. 19, 2012) (ordering plaintiff to show Does' IP

addresses are within court's jurisdiction before granting any discovery); *Raw Films, Inc. v. Does*

*1-32*, 2011 WL 6840590 (N.D. Ga. Dec. 29, 2011) (dismissing claims against 29 of 32 Does for

improper joinder, and noting that earlier grant of plaintiff's motion for discovery was done

"before appreciating the manageability problems posed by joinder of unrelated defendants");

*Berlin Media Art v. Does 1-654*, 2011 WL 36383080 (N.D. Cal. Oct. 18, 2011) (denying motion

for ex parte discovery for failure to show personal jurisdiction over each Doe or proper venue);

*Hard Drive Productions, Inc. v. Does 1-30*, 2011 WL 4915551 (E.D. Va. Oct. 17, 2011) (after

initially granting plaintiff's request to take discovery, finding "upon due consideration" that

Does 2-30 are improperly joined); *DigiProtect USA Corp. v. Does 1-240*, 2011 WL 4444666

(S.D.N.Y. Sept. 26, 2011) (vacating subpoena and dismissing complaint, with leave to replead

only Does over whom there is prima facie personal jurisdiction); *On the Cheap, LLC v. Does 1-*

*5011*, 2011 WL 4018258 (N.D. Cal. Sept. 6, 2011) (dismissing Does 1-16 and 18-5,011, after

originally granting plaintiff's ex parte order, based on multiple concerns arising during the case);

*AF Holdings LLC v. Does 1-97*, 2011 WL 2912909 (N.D. Cal. July 20, 2011) (denying discovery

of Does 2-97 due to improper joinder).

　　　Before this case was removed, the presiding judge in the circuit court of St. Clair County

initially permitted Lightspeed to obtain the names and identities of AT&T's and other ISPs'

subscribers, but, before the compliance deadline, the Illinois Supreme Court intervened.  First,

the supreme court stayed enforcement of all of the judge's orders requiring compliance with the

subpoenas,[3] Docket Entry Order Granting Emergency Motion by Movants for Stay of

---

[3] The Illinois Supreme Court agreed with AT&T and the other moving ISPs that immediate,
temporary relief was warranted *preventing* Lightspeed from obtaining the discovery that it now

Enforcement of Subpoenas Issued to Movants in the Circuit Ct. of St. Clair County Pending

Disposition of the Motion for Supervisory Order, *AT&T Internet Services v. LeChien*, No.

114334 (Ill. 2012), and then the supreme court issued the extraordinary remedy of a supervisory

order directing the circuit court to vacate its orders and to enter an order granting AT&T and

other ISPs' motions to quash. Supervisory Order, *AT&T Internet Services v. LeChien*, No.

114334 (Ill. Jun. 27, 2012).  Then, Lightspeed amended its complaint to add AT&T and another

ISP as defendants, who removed the case to this Court.  Lightspeed is simply trying again, based

on nothing new.  Lightspeed's request for early discovery should be denied.

## BACKGROUND[4]

Lightspeed's motion omits and/or twists many aspects the history of this lawsuit as it was

pending in state court.  Because this Court should have full awareness of the proceedings to date,

we set that history forth here.

### Lightspeed's pleadings and the *ex parte* early-discovery order

On December 14, 2011, Lightspeed filed its complaint (referred to elsewhere herein as

the "Original Complaint") against a single, unidentified defendant—a "John Doe"—alleged to

have accessed Lightspeed's website without authorization.  Lightspeed alleged that the single

Doe made use of "one or more hacked passwords" to access its pornographic website.

Lightspeed alleged it had "good cause for asserting that personal jurisdiction is proper" as to the

---

seeks again here. True and correct copies of the ISPs' motion to stay and the order granting same
are attached hereto as Exhibits C and D.

[4] In order to avoid an overly voluminous document being submitted to this Court hours before
the scheduled hearing, the supporting citations from this section have been omitted.  The
procedural history is supported by the citations and record submitted to the Illinois Supreme
Court along with the Explanatory Suggestions attached hereto as Exhibit A, all of which is also
contained in the state court file provided to this Court upon removal.

single John Doe defendant (whose IP address information was set forth in Exhibit A to the complaint) based on "geolocation technology."

Two days after filing the complaint, Lightspeed filed an *ex parte* motion with the circuit court of St. Clair County for early discovery under Illinois Supreme Court Rule 201(d) to authorize the issuance of subpoenas to a number of ISPs (including AT&T), seeking the personally identifiable information of their Internet subscribers.  In that motion, Lightspeed did not seek just the personally identifiable information of the single John Doe defendant, but also the personally identifiable information of some 6,600 other unnamed individuals who are located across the country.  Although Lightspeed referred to these thousands of individuals as "co-conspirators," it did not sue, and still has not sued, these individuals.  Moreover, none of them was alleged to have any particular connection to the single John Doe defendant, his alleged wrongdoing, or even the State of Illinois.

The circuit court granted the *ex parte* motion for early discovery on the same day it was filed.  Subsequently, the court also granted at least one request for domestication of the discovery requests in another state.

### Orders and events precipitated by entry of the *ex parte* early-discovery order

After obtaining the *ex parte* early discovery order, Lightspeed served subpoenas on a number of ISPs.  Some of those subpoenas were defective, and some of the ISPs had no record of being served, and yet when counsel asked Lightspeed's counsel for copies of the subpoenas, their request was refused.  Nevertheless, the ISPs preserved data—and still are preserving data—as if they had been served with valid subpoenas.  The subpoenas that were actually served sought "[t]he name, current (and permanent) addresses, telephone numbers, e-mail addresses and Media Access Control addresses, and any other form of contact information that may be used to identify

all persons whose IP addresses are listed in [an] attached spreadsheet." Some ISPs began

complying with subpoenas served on them by sending notifications to their subscribers.

Certain ISPs, however, including AT&T, moved to quash and/or for a protective order

with respect to the discovery that Lightspeed sought under the authority of the circuit court's *ex

parte* early discovery order. On April 12, 2012, the circuit court denied those ISPs' motions to

quash. The court required the ISPs to comply with outstanding subpoenas by notifying

subscribers and producing the subscriber identifying information by a date in June 2012. The

court ordered that all subscriber notifications should apprise the subscribers (located across the

nation) that any and all of their motions to quash would be heard in St. Clair County at a single

hearing on July 20, 2012.

Four days later, noting the "boisterous percussion" from subscribers that its April 12,

2012 order would cause, the circuit court *sua sponte* entered an additional order requiring

Lightspeed to submit to the circuit court for *in camera* review a draft of communications to be

sent to Internet subscribers by Lightspeed, and not to make any further communications absent

the circuit court's approval. Lightspeed's demand letter was evidently submitted for review—*in

camera*—the next day, although it was never provided to the ISPs. Presumably the letter was

sent to hundreds or thousands of subscribers across the country.

Inquiries and pleas from notified subscribers across the country began to roll in to the

court and counsel. For example, one subscriber in Pennsylvania filed an objection noting both

his innocence and poor health. A girl's uncle from Massachusetts called in to say that his niece

could barely hold a job and couldn't go to Illinois to defend herself. A Massachusetts couple in

their sixties wrote in to say that they go to bed each night long before the time of the alleged

"hacking." A woman in Illinois called the court asking whether this was a scam and if she

should pay the $3,000 she had been told would make this "go away."  Other objections, motions, and inquiries continued to surface from individuals in various states including California, Washington, Minnesota, Wisconsin, Pennsylvania, Massachusetts, Virginia, Georgia, and Florida.

In the related Florida proceeding that was initiated based on an order of commission from the circuit court in this case, multiple subscribers filed motions to quash.   In response, Lightspeed's lawyers filed a motion to strike, advising the Florida courts that the objecting subscribers have no rights at all, stating:

> The [Florida subscribers moving to quash the Illinois subpoena] have no standing in this case, are not the subjects of the subpoena in question, and are non-parties to this litigation. … The Court has not exercised jurisdiction over any [of the subscribers moving to quash the Illinois subpoena in Florida court] in connection with this case, and because there is no claim pending against any of them, [they] cannot seek dismissal or generally deny liability. … [They] have no right to steer the course of the litigation, or to address the factual and legal merits of the underlying complaint.

On April 27, 2012, the circuit court noted the incoming submissions by the so-called "co-conspirators" and issued another order *sua sponte* directing Lightspeed to halt mailing demand letters to subscribers absent further order of the court.  On May 7, 2012, Lightspeed's counsel sent a letter to the clerk of the circuit court that, among other things, suggests that she instruct any Internet subscribers who telephone the clerk to advise them that they should telephone *plaintiff's counsel* "with any questions."  This letter was particularly troublesome given that subscribers who call the court might not have already been identified to Lightspeed's counsel, yet Lightspeed's counsel was suggesting that the authority of the court be used to instruct inquiring subscribers to contact Lightspeed's counsel directly.

On May 11, the circuit court entered another order *sua sponte*, in which the court indicated that it had apparently had further discussions with Lightspeed's lawyers regarding a

revised demand letter, and that the court was now satisfied that Lightspeed could resume its nationwide collection campaign.  Notably, at this point, almost six months after Lightspeed filed its lawsuit, it had still not gotten around to naming and serving the single John Doe defendant, even though the ISP from whom it sought that information does not appear to have resisted such discovery.

**After trial court denies immediate appeal,**
**ISPs seek and obtain supervisory order from Illinois Supreme Court**

On April 25, 2012, the moving ISPs filed with the circuit court a motion for finding of "friendly" contempt in order to obtain an immediate appeal of the circuit court's orders.  In their accompanying motion for a stay, the moving ISPs further assured the circuit court that they would preserve subscriber information pending appellate review.  On May 14, 2012, however, the court denied the request for "friendly" contempt at a hearing.  On May 21, 2012, the circuit court issued two orders confirming and expanding upon that ruling.[5]

This situation left the ISPs with no choice but to seek relief in the Illinois Supreme Court.  They immediately moved for (1) a supervisory order quashing the subpoenas that Lightspeed had issued to the ISPs, and (2) a stay of enforcement of the trial court's rulings.  The day after the motions were filed, the supreme court granted the emergency stay, and, on June 27, 2012, the full court, without dissent, took the extraordinary and rare step of entering a supervisory order directing the circuit court to vacate its orders of May 21, 2012 and to enter an order granting the motions to quash that AT&T and other ISPs had filed.

---

[5] The Illinois Supreme Court's supervisory order struck these orders, attached to the Emergency Mot. as Exhibit H, ECF No. 9-8, and attached hereto as Exhibit E.

**Lightspeed amends complaint to add ISPs as defendants;
after it reissues subpoenas, defendants remove case to this Court**

On August 3, 2012, Lightspeed evidently asked the circuit court for leave to file an amended complaint, and the circuit court evidently granted the motion the same day it was filed. The amended complaint names AT&T and Comcast (and their corporate representatives) as defendants and accuses them of conspiring with the purportedly-now-identified hacker Anthony Smith[6] and with other unnamed subscribers to allow the purported continued hacking of Lightspeed's pornographic website.

Lightspeed then simply reissued the same subpoenas to the same ISPs that the Illinois Supreme Court had quashed, seeking the very same personally identifiable information of the same Internet subscribers.  (*See* Notice of Subpoenas, *Lightspeed Media Corporation v. Smith*, No. 11-L-683 (Ill. 20th Cir. Ct. Aug. 9, 2012);  and Subpoena in a Civil Matter, *Lightspeed Media Corp. v. John Doe*, 11-L-683 (Ill. 20th Cir. Ct. Aug. 7, 2012), true and correct copies of which are attached hereto as Exhibits F and G.)[7]

Because the new complaint added at least one federal claim and also presented diversity, AT&T removed the case to this Court, whereupon Lightspeed sought "emergency" early discovery of the identity of the ISPs' subscribers.

**ARGUMENT**

In its emergency motion, Lightspeed essentially seeks three forms of relief from AT&T: (i) the same personally identifiable information of AT&T's subscribers that Lightspeed previously sought, (ii) the identity of an AT&T representative with authority as to the successful

---

[6] Presumably, if Lightspeed were truly facing an "emergency" situation, it would have managed to name and serve the single individual "hacker" defendant in this case sooner than nine months after it was filed.

[7] For some reason, Lightspeed issued these new subpoenas from Cook County, Illinois.

litigation decisions that resulted in a supervisory order from the Illinois Supreme Court in this case, and (iii) a mandatory injunction requiring AT&T to send "cease and desist" letters to AT&T's subscribers, which letters would include Lightspeed's lawyer's contact information. Lightspeed has not made any showing sufficient to justify any of these requests for extraordinary relief.

## I.  Applicable standard[8]

The authority Lightspeed cites only underscores how rarely courts allow discovery before the normal schedule allowed for under Rules 16 and 26 of the Federal Rules of Civil Procedure. (Emergency Mot. at 6-8.)  Of the five decisions Lightspeed cites to support its request for discovery before a Rule 26(f) conference, three *deny* such discovery.  *See IRC, LP. v. McLean*, No. 09-189, 2009 WL 839043 at (S.D. Ill. Mar. 31, 2009) (noting that a party seeking expedited discovery must demonstrate a need for such discovery and denying the motion at issue); *Lamar v. Hammel*, No. 08-02, 2008 WL 370697 at *3-4 (S.D. Ill. Feb. 11, 2008) (denying emergency motion for expedited discovery seeking to quickly obtain information so that additional parties and information could be discovered before the running of the statute of limitations for the underlying claim); *Merrill Lynch, Pierce, Fenner & Smith v. O'Connor*, 194 F.R.D. 618, 621-24 (N.D. Ill. 2000) (stating "Expedited discovery is not the norm.  Plaintiff must make some *prima facie* showing for the *need* for expedited discovery" and finding plaintiff had failed to make such a showing where plaintiff sought broad discovery that was not relevant to claims at issue and were "seemingly propounded for the purpose of harassment") (emphasis in original).  Another of

---

[8] The requirements and standards of a preliminary injunction are not addressed in detail here, because Lightspeed has not even tried to meet such requirements and standards.  *See* Fed. R. Civ. P. 65 (various procedural requirements including posting of security); *see also, e.g.*, *Wright v. Miller*, 2012 U.S. Dist. LEXIS 71511 at *2-3 (S.D. Ill. Apr. 17, 2012) (discussing, *inter alia*, requisite showings of likelihood of success on the merits, no adequate remedy at law, and irreparable harm).

Lightspeed's authorities does not address expedited discovery at all and instead describes contours of options available to district judges to take measures to limit the burden imposed on public officials by discovery in cases alleging "constitutional tort[s]" or civil rights claims.  *See Crawford v. Britton*, 523 U.S. 574, 598-600 (1998).  The lone case Lightspeed cites where expedited discovery was permitted concerned a request to expedite discovery in order to avoid a statute-of-limitations defense where the normal discovery process had been hindered by the war in Iraq.  *Vance v. Rumsfeld*, 2007 WL 4557812 at *3-6 (N.D. Ill. Dec. 21, 2004).

In any event, in addition to requiring that a plaintiff demonstrate a need for expedited discovery, "courts must also protect defendants from unfair expedited discovery …[so] the movant must establish good cause."  *Hard Drive Prods. v. John Doe*, 2012 WL 2469973 at *1, *3-4  (N.D. Ill. Jun. 26, 2012) (finding that the plaintiff had failed to demonstrate good cause) (internal quotations and citations omitted).  Here, Lightspeed does not meet *any* standard for the mass disclosure it seeks, much less a heightened standard for disclosure out of the normal course on an "emergency" basis.

## II.     Lightspeed has not made any showing sufficient to warrant the mass disclosure of personally identifiable information it seeks, on an emergency basis or otherwise

In their state court motion for a supervisory order, AT&T and the other moving ISPs argued, successfully, that:

> Plaintiff's interest in perpetuating its coercive "settlement" scheme does not constitute good cause for discovery as to the thousands of affected, unrepresented Internet subscribers involved.  Nor is there any other "good cause" in plaintiff's suit sufficient to warrant discovery to obtain the personally identifiable information of more than 6,600 Internet subscribers (i) who are not even alleged to have any particular association with the single John Doe defendant; (ii) who are not otherwise alleged to have been involved in any actionable civil conspiracy; (iii) who may not even be the individuals who were using the Internet accounts when any wrongs were allegedly committed; (iv) as to whom there is no good cause to believe that the circuit court would have personal jurisdiction or venue; (v) as to which there is no good cause to believe that joinder in this lawsuit would be proper; and (vi) whose identifying information is actually sought only for the

16

purposes of coercing millions of dollars in settlement payments and not for the
purpose of prosecuting this lawsuit.

(Explanatory Suggestions, at 33-34.)  Lightspeed's amended complaint does not create any such

"good cause," and none can be found in the submitted declaration of Lightspeed's principal,

Steve Jones a/k/a Steve Lightspeed.

Lightspeed's amended complaint, as before, is devoid of any factual allegations that

would connect any of the thousands of so-called "co-conspirators" with the single individual

"hacker" defendant now identified as Anthony Smith.  The amended complaint speaks of how

hacking is "normally done"  (Notice of Removal, Ex. A-1 (ECF No. 2-2) (First Am. Compl.,

*Lightspeed Media Corp. v. Smith*, 11-L-683 (20th Cir. Ct. Ill. Aug. 3, 2012) (the "Am. Compl.")

¶ 14), discusses "various other means" employed by hackers in general, (*id.*), postulates that

"[s]ometimes a hacker will post the hacked password on a hacked password website…" (*id.*

¶ 15), and generally asserts that  "Defendant Smith and Defendant Smith's co-conspirators

belong to a hacking community…" (*id.* ¶ 17).  Based on such allegations—not specifically

asserted with respect to any of the 6,600 so-called "co-conspirators,"[9] Lightspeed summarily

pronounces that "Defendant Smith and his co-conspirators actively participated with one another

in order to disseminate the hacked passwords, and intentionally engaged in a concerted action

with one another to access the same websites and content." *Id.*

Likewise, the declaration of Steve Jones submitted with Lightspeed's emergency motion

to this Court does not include a single averment concerning any of the numerous subscribers that

Lightspeed wants this Court to order AT&T to identify.  (*See* Emergency Mot., Ex. A (Decl. of

---

[9] Even Lightspeed's long list of 6,600 IP addresses is and was not supported by any evidentiary
showing—here or in state court.  (*See* Am. Compl. ¶ 26 (declaration of Steve Jones filed in
circuit court attests to software used (not the list of IP addresses, which are merely attached to
the complaint)).)

Steve Jones in Supp. of Pl.'s Emergency Mot. to Order Defs., AT&T and Comcast to Produce Limited Disc. Prior to the Rule 26(f) Conference) (ECF No. 9-1) ("Jones Decl.").) Rather, Jones attests (supposedly based on his personal knowledge) that "the hackers" believe they are "effectively immune from liability" and "have become emboldened" by Lightspeed's inability to identify them all in a St. Clair County lawsuit. (See id. ¶ 8.) Jones provides no evidentiary basis for such an assertion with respect to any one of the so-called "co-conspirators" any more than he provides support for his claims that "the hackers" (who may or may not be the same as the so-called "co-conspirators" in this case) made threats on him or committed identity theft of his attorneys. (See id.)

Although Lightspeed has shown that it can speculate concerning methods by which an individual might have participated in hacking with others over the Internet, Lightspeed, even now, does not articulate *any* alleged connection (let alone any alleged conspiratorial act or agreement) between the single individual defendant and *even one* of the 6,600 so-called "co-conspirators." Just as before, Lightspeed does not now offer even a shred of evidence or even a specific factual assertion that would support a claim that a given "co-conspirator" conspired with defendant Smith or anyone else.[10]

Moreover, Lightspeed has not shown that any emergency exists to warrant the extraordinary relief it seeks. The same discovery requests in state court were not posed as emergencies, and even Judge LeChien's orders imposed long-term schedules for compliance.

---

[10] Notably, the date of defendant Smith's allegedly wrongful act, November 28, 2011, is *after* the dates of the alleged acts of most of the so-called "co-conspirators," which range from early August 2011 to early December 2011. (See Notice of Removal, Ex. A-2 (Compl., *Lightspeed Media Corp. v. Does*, 11-L-683 (20th Cir. Ct. Ill. Aug. 3, 2012)) (ECF No. 2-3) (the "Original Compl.") and Exs. A and C thereto.) Such dates make the unsupported, untenable suggestion that defendant Smith conspired with 6,600 other Internet subscribers even more unbelievable.

(*See, e.g.*, Am. Order at 2-4, *Lightspeed Media Corp. v. Doe*, No. 11-L-683 (Ill. 20th Cir. Ct. May 21, 2012); Sua Sponte Ct. Mgmt. Order #2 at 3-4, *Lightspeed Media Corp. v. Doe*, No. 11-L-683 (Ill. 20th Cir. Ct. May 21, 2012).)  It has taken Lightspeed approximately nine months to name and serve the single individual "hacker" defendant.

If anything, the sole document that Lightspeed offers to establish the existence of an emergency, Jones's declaration, suggests that no urgency exists.  Incredibly, Jones says that (unspecified) hackers have *already* "permanently destroyed Lightspeed's computer systems." (Jones Decl. ¶ 8.)  While this is a dubious claim, inconsistent with other assertions by Lightspeed, accepting it as true it would indicate there is *no* emergency because the purported damage has already been done.  Jones's declaration also indicates that Lightspeed has "resolved" claims and is "in litigation" with some hackers, yet Jones does not offer a single detail of any actual "conspiracy" that might have emerged from any such dispute resolution and/or litigation. (*Id.*)  Further, Jones's declaration states, correctly, that AT&T and Comcast have gathered and are already preserving, for the pendency of the litigation, the identifying information Lightspeed seeks. *Id.* ¶ 10.  Thus, Lightspeed's own declaration and its litigation tactics provide no indication of any emergency, and Lightspeed concedes that there is no risk that the information it seeks will be destroyed.

Early discovery would give Lightspeed basically all it seeks in this lawsuit—the personally identifiable information of hundreds or thousands of collection targets—before the case could even be subject to a motion to dismiss for failure to state a plausible claim.  If a motion to dismiss is granted, of course, there will be no discovery.  This case should proceed in the normal course, and, if the lawsuit survives a motion to dismiss, discovery issue can be revisited at the appropriate time.

## II.      Lightspeed has not shown good cause for the other emergency relief it seeks

Lightspeed also requests, on an emergency basis, that AT&T be required to identify its corporate representative who was authorized to make decisions in connection with the successful state court litigation in this case.[11]  Lightspeed feebly argues that such relief is warranted on an emergency basis because the corporate representative "may terminate their employment from [AT&T], which may make it substantially more difficult for Lightspeed to locate and serve [him or her]."  Emergency Mot. at 12-13. This argument, of course, could be made in every case in which any party sought to identify an employee of another party with potential knowledge of pertinent facts.  There is nothing critical about this discovery—sought concerning a representative against whom no viable claims are asserted—especially where Lightspeed's asserted grounds consist only of AT&T's successful objection to discovery sought from it in this case.

Finally, Lightspeed also asks this Court to require AT&T to send cease-and-desist letters (which would, conveniently for Lightspeed, include the contact information of Lightspeed's counsel) to the hundreds of AT&T subscribers that Lightspeed has identified by IP address, date, and time.  Lightspeed believes such an extraordinary remedy is warranted simply because Lightspeed says it is.  As elsewhere, Lightspeed and its attorneys would have this Court act as the instrument for its collection activity on a grand scale without regard to whether Lightspeed has asserted any viable claims, and without regard to the substantive and procedural rights of the ISPs or their subscribers.  Lightspeed has made no evidentiary or other showing to support such extraordinary relief, which would be tantamount to a preliminary mandatory injunction (and

---

[11] This tactic is reminiscent of a groundless and harassing motion filed by Lightspeed earlier in this lawsuit to take the deposition of AT&T's Chief Executive Officer and Chairman of the Board.

which could not be undone or reversed).  Presumably, Lightspeed is merely searching for any

sort of relief that could result in the collection of more settlements before any judicial scrutiny

and adversarial debate in this Court.[12]

## CONCLUSION

For all the above reasons, the Court should deny Lightspeed's motion.


Respectfully submitted,

  /s/ Troy A. Bozarth_____
Troy A. Bozarth – 06236748
tab@heplerbroom.com
HEPLERBROOM LLC
130 North Main Street
Edwardsville, IL   62025
(618) 656-0184


Bart W. Huffman
LOCKE LORD LLP
100 Congress Avenue, Suite 300
Austin, TX 78701
(512) 305-4700
*Pro hac vice application pending*

*Attorneys for SBC Internet Services, Inc.*
*d/b/a AT&T Internet Services*

---

[12] Using the cease-and-desist letters, Lightspeed could avoid (as to any subscribers who contact
Lightspeed's counsel) even advance notification to subscribers and an opportunity for them to
file motions to quash prior to identification, as typically permitted and/or required in the
hundreds of other, similar lawsuits that Lightspeed's counsel have filed.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of August 2012, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record as listed below:

Paul A. Duffy                    paduffy@wefightpiracy.com

Kevin T. Hoerner                 KTH@bphlaw.com,lane@bphlaw.com

Andrew G. Toennies               atoennies@lashlybaer.com,skohler@lashlybaer.com


/s/ Troy A. Bozarth_____
Troy A. Bozarth

22