# EXHIBIT A

No. _____

## IN THE SUPREME COURT OF ILLINOIS

| | |
|---|---|
| AT&T INTERNET SERVICES; BELLSOUTH.NET; CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS; CENTURYTEL INTERNET HOLDINGS INC.; COX COMMUNICATIONS, INC.; EMBARQ COMMUNICATIONS, INC.; QWEST COMMUNICATIONS COMPANY LLC; VERIZON ONLINE LLC;  and WAYPORT, INC., | Circuit Court No. 11 L 683 |

        Movants,

v.

THE HONORABLE ROBERT P. LECHIEN,
Judge of the Circuit Court of St. Clair County,
Illinois

        Respondent,

LIGHTSPEED MEDIA CORPORATION,

        Prevailing Party Below.

**EXPLANATORY SUGGESTIONS IN SUPPORT OF
RULE 383 MOTION FOR SUPERVISORY ORDER DIRECTING CIRCUIT
COURT TO VACATE ITS ORDER DENYING MOVANTS' MOTION TO
QUASH, OR, ALTERNATIVELY, DIRECTING CIRCUIT COURT TO ENTER
FINDING OF "FRIENDLY" CONTEMPT FOR PURPOSES OF
IMMEDIATE APPEAL**

## TABLE OF CONTENTS AND POINTS AND AUTHORITIES

INTRODUCTION.................................................................................................2

*In re BitTorrent Adult Film Copyright Infringement Cases,*
  2012 WL 1570765 (E.D.N.Y.) ...........................................................2, 3, 5

*Pac. Century Int'l, Ltd. v. John Does 1-37,*
  2012 WL 1072312 (N.D. Ill. Mar. 30, 2012) ...........................................3, 6

*First Time Videos, LLC, v. Doe,*
  2012 WL 170167 (E.D. Cal. Jan. 19, 2012) ...............................................6

BACKGROUND .............................................................................................8

1.  **The Big Picture**................................................................................8

*Raw Films, Ltd. v. Does 1-32,*
  2012 WL 6182025 (E.D. Va. Oct. 5, 2011) ................................................9

*McGIP, LLC v. Doe,*
  2011 U.S. Dist. LEXIS 108109 (N.D. Cal. Sept. 16, 2011) ..................10

*IO Group, Inc. v. Does 1-43,*
  2011 U.S. Dist. LEXIS 14123 (N.D. Cal. Feb. 3, 2011) ......................10

*Hard Drive Prods., Inc. v. Does,*
  2011 U.S. Dist. LEXIS 132449 (N.D. Cal. Nov. 16, 2011)..................10

*Cinetel Films, Inc. v. Does 1-1,052,*
  2012 WL 1142272 (D. Md. Apr. 4, 2012) ............................................10

*AF Holdings LLC v. Does 1-135,*
  2012 WL 1038671 (N.D. Cal. Mar. 27, 2012).......................................10

*Patrick Collins, Inc. v. John Does 1-23,*
  2012 WL 1019034 (E.D. Mich. Mar. 26, 2012) ....................................11

*K-Beech, Inc. v. John Does 1-41,*
  2012 WL 773683 (S.D. Tex. Mar. 8, 2012)...........................................11

*SBO Pictures, Inc. v. Does 1-87,*
  2012 WL 177865 (D.D.C. Jan. 19, 2012)..............................................11

*Raw Films, Inc. v. Does 1-32,*
  2011 WL 6840590 (N.D. Ga. Dec. 29, 2011) ..................................................11

*Berlin Media Art v. Does 1-654,*
  2011 WL 36383080 (N.D. Cal. Oct. 18, 2011) ................................................11

*Hard Drive Productions, Inc. v. Does 1-30,*
  2011 WL 4915551 (E.D. Va. Oct. 17, 2011) ...................................................11

*DigiProtect USA Corp. v. Does 1-240,*
  2011 WL 4444666 (S.D.N.Y. Sept. 26, 2011) .................................................11

*On the Cheap, LLC v. Does 1-5011,*
  2011 WL 4018258 (N.D. Cal. Sept. 6, 2011) ..................................................11

*AF Holdings LLC v. Does 1-97,*
  2912909 (N.D. Cal. July 20, 2011) ...............................................................11

**2. Plaintiff's Improper Tactics in a Separate St. Clair County Proceeding, Currently on Appeal** ............................................................................12

**THE PROCEEDINGS BELOW** ....................................................................13

**1. Plaintiff's Pleadings and the *Ex Parte* Early Discovery Order** .............13

  Supreme Court Rule 201(d) ...........................................................................14

**2. Orders and Events Precipitated by Entry of the *Ex Parte* Early Discovery Order** ......................................................................................15

**3. The Moving ISP's Motion for "Friendly" Contempt and the Plaintiff's Harassing Motion for the Court-Ordered Deposition of AT&T's Chairman and Chief Executive Officer** ..............................................................18

  *People ex rel. Scott v. Silverstein,*
    87 Ill. 2d 167 (1981) ...................................................................................20

  *City of Chicago v. Berretta U.S.A. Corp.,*
    213 Ill. 2d 351 (2004) .................................................................................21

**ARGUMENT** ..................................................................................................23

**I. A Supervisory Order Is Necessary and Appropriate Here** .......................23

  *People ex rel. Birkett v. Bakalis,*
    196 Ill. 2d 510 (2001) .................................................................................23

*Norskog v. Pfiel,*
   197 Ill. 2d 60 (2001) ...............................................................24

*Wisniewski v. Kownacki,*
   221 Ill. 2d 453 (2006) .............................................................24

*People ex rel. Scott v. Silverstein,*
   87 Ill. 2d 167 (1981) ...............................................................24

*Cooney v. Magnabosco,*
   407 Ill. App. 3d 264 (1st Dist. 2011) ......................................25

*People ex rel. General Motors Corp. v. Bua,*
   37 Ill. 2d 180 (1967) ...............................................................25

**II.  The Circuit Court Acted Beyond Its Authority in Denying the Moving ISPs'
Motion to Quash and for Protective Order** ...........................................**26**

Supreme Court Rule 201(d) .............................................................26

735 ILCS 5/2-1101 ........................................................................26

**A.  The Subpoenas Improperly Seek Personal Information of 6,600 Individuals
When No Claims Are Asserted Against Such So-Called "Co-Conspirators"
and Such Information Is Not Relevant to Plaintiff's Claims Against the
Single John Doe Defendant** ....................................................**26**

Supreme Court Rule 201(b)(1) .......................................................27

*Youle v. Ryan,*
   349 Ill. App. 3d 377 (4th Dist. 2004) ..............................................27

*In re All Asbestos Litigation,*
   385 Ill. App. 3d 386 (1st Dist. 2008) ..............................................27

*Yuretich v. Sole,*
   259 Ill. App. 3d 311 (4th Dist. 1994) ..............................................27

*Eeuter v. MasterCard Intern., Inc.,*
   397 Ill App. 3d 915 (5th Dist. 2010) ..............................................28

*McClure v. Owens Corning Fiberglas Corp.,*
   188 Ill. 2d 102 (Ill. 1999) ............................................................28

*Vance v. Chandler,*
    231 Ill. App. 3d 747 (3rd Dist. 1992) ............................................................28

*Simpkins v. CSX Transp.,*
    2012 IL 110662 ..............................................................................................28

*Fritz v. Johnson,*
    209 Ill. 2d 302 (2004) ....................................................................................28

*Redelmann v. Claire Sprayway, Inc.,*
    375 Ill. App. 3d 912 (1st Dist. 2007) ........................................................29, 30

*Buckner v. Atlantic Plant Maintenance, Inc.,*
    182 Ill. 2d 12 (Ill. 1998)..................................................................................29

*Hume & Liechty Veterinary Associates v. Hodes,*
    259 Ill. App. 3d 367 (1st Dist. 1994) ..............................................................29

735 ILCS 5/2-1101 ...................................................................................................30

*Cooney v. Magnabosco,*
    407 Ill. App. 3d 264 (1st Dist. 2011) ..............................................................30

*Evitts v. Daimler Chrysler Motors Corp.,*
    359 Ill. App. 3d 504 (1st Dist. 2005) ..............................................................30

*First Time Videos, LLC v. Doe,*
    No. CIV S-11-3478, 2012 U.S. Dist. LEXIS 15801
    (E.D. Cal. Feb. 8, 2012) ..................................................................................30

**B. There is No Good Cause for Asserting That Personal Jurisdiction or Venue is Proper as to the So-Called "Co-Conspirators," or That They Could Otherwise Be Properly Joined in This Proceeding ...........................................30**

*Accord Millenium TGA v. Doe,*
    No. 1:10-cv-05603, 2012 WL 7444064 (N.D. Ill. Sept. 26, 2011)..................31

*Lightspeed Media Corp. v. Does 1-1000,*
    No. 10-cv-05604 (N.D. Ill. Mar. 31, 2011)......................................................31

*CP Productions, Inc. v. Does 1-300,*
    10-cv-06255, 2011 WL 737761 (N.D. Ill. Feb. 24, 2011)................................31

**C. Plaintiff Does Not Seek Discovery for a Proper Purpose ...................................32**

*Digital Sin, Inc. v. Doe,*
  No. 1:12-cv-00126, 2011 U.S. Dist. LEXIS 128033
  (N.D. Cal. Nov. 4, 2011)................................................................................32

*MCGIP, LLC v. Doe,*
  No. 4:11-cv-02331, 2011 U.S. Dist. LEXIS 108109
  (N.D. Cal. Sept. 16, 2011) ............................................................................33

*K-Beech, Inc. v. Does 1-85,*
  No. 11-cv-00469 (E.D. Va. Oct. 5, 2011)......................................................33

*Camelot Distrib. Group, Inc. v. Does 1 Through 1210,*
  2011 WL 4455249 (E.D. Cal. Sept. 23, 2011)................................................34

*On the Cheap, LLC v. Does 1-5011,*
  --- F.R.D. ---, 2011 WL 4018258 (N.D. Cal. Sept. 6, 2011) ....................34, 35

*Digital Sins, Inc. v. John Does 1-245,*
  2012 WL 1744838 (S.D.N.Y. May 15, 2012) .................................................35

*Pac. Century Int'l, Ltd. v. John Does 1-37,*
  2012 WL 1072312 (N.D. Ill. Mar. 30, 2012)..................................................36

*Compaq Computer Corp. v. Packard Electronics, Inc.,*
  163 F.R.D. 329 (N.D. Cal. 1995)...................................................................36

**III. The Appropriate Supervisory Relief Is to Direct the Circuit Court to Vacate its
Order Denying the ISPs' Motion to Quash and to Grant That Motion, or, in the
Alternative, Direct the Circuit Court to Vacate its Order Denying the ISPs'
Motion for Finding of "Friendly" Contempt and to Grant That Motion.............37**

**CONCLUSION** ................................................................................................**37**

Internet service providers AT&T Internet Services; BellSouth.net; Cellco Partnership d/b/a Verizon Wireless; Centurytel Internet Holdings Inc.; Cox Communications, Inc.; Embarq Communications, Inc.; Qwest Communications Company LLC; Verizon Online LLC; and Wayport, Inc. (sometimes referred to as the "moving ISPs") respectfully request this Court to enter a supervisory order under Illinois Supreme Court Rule 383 directing the circuit court of St. Clair County (Hon. Robert P. LeChien) to vacate its order denying the moving ISPs' motion to quash and for protective order. (C345-46)  The Court should direct the circuit court to quash the subpoenas at issue or, alternatively, to enter a finding of "friendly" or good-faith contempt (and only a nominal monetary penalty) to enable the ISPs to seek immediate review of the underlying discovery orders in the Fifth District appellate court.

As demonstrated below, under the guise of an "early discovery" order in a lawsuit involving only one John Doe defendant, plaintiff is coercing mass settlements from thousands of individuals across the nation based on the fiction that those individuals somehow "conspired" with a single, unnamed John Doe defendant located in St. Clair County.  Despite the passage of over five months since this lawsuit was filed, a summons has not even been issued for the John Doe defendant.  In fact, the plaintiff has not pleaded an actual conspiracy and has no intention of seeking any "discovery."  Rather, in this purely *ex parte* proceeding, the plaintiff seeks to harvest settlements from the thousands of individuals to be identified based on a threat of association with plaintiff's sexually explicit websites.  If this Court does not grant a supervisory order, there will be no other opportunity in this lawsuit to safeguard the rights and interests of the moving ISPs and the personal information, due process, privacy rights, and other rights of

1

thousands of individuals located across the nation who may not have committed any wrongs.

Accordingly, as stated in the movants' emergency motion for stay, filed separately with this Court, the moving ISPs also seek a stay of any obligation to comply with subpoenas that have been or may be issued by plaintiff, Lightspeed Media Corporation, in this case pending review.

## INTRODUCTION

Plaintiff Lightspeed Media Corporation has obtained from the circuit court—before the service or appearance of any defendant—an *ex parte* order authorizing the discovery from the movants and other Internet service providers (ISPs) of the personally identifiable information of some 6,600 of the ISPs' Internet service subscribers located across the country. This order is not for any legitimate purpose—rather, this entire "lawsuit" is part of a nationwide scheme under which plaintiff's lawyers harvest identifying subscriber information based on one-sided papers, unchallenged evidence, and *ex parte* orders, and then contact the identified subscribers to threaten them with public exposure for unauthorized access to pornographic content if they don't cough up thousands of dollars in settlement. *See, e.g.*, *In re BitTorrent Adult Film Copyright Infringement Cases*, 2012 WL 1570765 (E.D.N.Y.) (noting "a nationwide blizzard of civil actions brought by purveyors of pornographic films" and also taking note of a media report that "more than 220,000 individuals have been sued since mid-2010 in mass BitTorrent lawsuits, many of them based upon alleged downloading of pornographic works").

Typically these types of lawsuits are filed in federal court and assert copyright infringement.  But, plaintiffs like Lightspeed who are enlisting the courts for the purpose of harvesting contact information are encountering a "stiffening judicial headwind" in federal courts across the country.  *Pac. Century Int'l, Ltd. v. John Does 1-37*, 2012 WL 1072312 at *3 (N.D. Ill. Mar. 30, 2012).  These courts have, in rapidly increasing numbers, quashed subpoenas, severed mass defendants, imposed sanctions, and generally increased their supervision and skepticism over these lawsuits.  *See In re BitTorrent Adult Film Copyright Infringement Cases*, 2012 WL 1570765 at *9 ("The most persuasive argument against permitting plaintiffs to proceed with early discovery arises from the clear indicia, both in this case and in related matters, that plaintiffs have employed abusive litigation tactics to extract settlements from John Doe defendants"); *see also Background* section below.  Stymied in many federal courts, plaintiffs have begun turning to state courts, where they present the same issues and objectives—sometimes repackaged in the form of non-copyright claims but still seeking to coerce mass settlements for alleged unauthorized access to their pornographic materials.

This case is an example of the latest effort to secure mass discovery from a single court.  In this type of case, the plaintiffs' lawyers sue just one defendant, then say that there are numerous potential "joint tortfeasors" or so-called "co-conspirators" as to which expedited, *ex parte* discovery should be permitted even though they are not parties.  Thus, discovery is sought as to hundreds or thousands of individuals under the theory that they are simultaneously (i) potential parties as to whom identification is warranted and (ii) non-parties as to whom personal jurisdiction, venue, and joinder are not pertinent.  In support of this fictional pleading, plaintiff's lawyers boldly argue *both* that the so-called

3

"co-conspirators" lack standing to challenge the subpoenas (because the subpoenas are directed to the ISPs) and that the ISPs lack standing to challenge the subpoenas (because many of the arguments involve the rights of the ISPs' customers who are the so-called "co-conspirators").  The plaintiffs' lawyers will also say that the subscribers' rights, if any, should be addressed after they are served and enter an appearance, when in actuality the plaintiffs have no intention of serving or naming any defendants, and, even if they did, such would be at or near the conclusion of the mass identification and coercion game that is actually at play.

In this proceeding, Plaintiff has sued a single "John Doe" defendant, who is said to have accessed Lightspeed's pornographic website without authorization on November 28, 2011, from a specific Internet Protocol (IP) address (*i.e.*, a unique address used to route Internet traffic).  (C10)  Lightspeed does not indicate how it is that its software identifies any given instance of access as that of an unauthorized "hacker" (as opposed to a legitimate, paying member).  In any event, Lightspeed's lawsuit has very little if anything to do with the asserted claims against this one defendant.

Instead, Lightspeed wants a list of names and contact information for the 6,600 so-called "co-conspirators" so it can harvest settlements of several thousand dollars each from them.  The individual Internet service subscribers are to be identified from a list of approximately 6,600 IP addresses[1] located across the nation.  As with the single John Doe defendant, Lightspeed has submitted no evidence that any of these individuals' IP

---

[1] An IP address is an address used to route Internet traffic.

addresses actually accessed any of its websites,[2] much less that any of these instances of alleged access were unauthorized.  Notably, even if a particular IP address accessed the website, Lightspeed has no way of knowing that the particular subscriber accessed the website, or whether the offender, if any, was a family member, a houseguest, a hired worker, or even a neighbor who is able to pick up a wireless signal.  *See, e.g., In re BitTorrent Adult Film Copyright Infringement Cases*, 2012 WL 1570765, at *3 ("[I]t is no more likely that the subscriber to an IP address carried out a particular computer function—here the purported illegal downloading of a single pornographic film—than to say an individual who pays the telephone bill made a specific telephone call.").

To associate these thousands of individual subscribers with the single John Doe defendant, Lightspeed simply proclaims they are "co-conspirators" with the defendant. (C2, C5)  Lightspeed does not allege that each of the thousands of so-called "co-conspirators" entered into an agreement with the single John Doe defendant or even that any of them actually acted in concert with the single John Doe defendant in any particular way.  Any such contention is inconceivable given that the single John Doe defendant allegedly accessed Lightspeed's website on November 28, 2011, and the thousands of so-called "co-conspirators" allegedly accessed the website beginning several months earlier. (C10-88)  Although Lightspeed speculates that some (unspecified) hackers belong to a "hacking community," it does not allege any particular commonality between any of the so-called "co-conspirators" and the single John Doe defendant.  (C4)

---

[2] Even the self-serving declaration submitted by plaintiff (C89-92) is submitted only as evidence, at best, of the software used; it does not attach or even refer to plaintiff's 80-page list of 6,600 IP addresses, dates, and times (C10-88).

Lightspeed's purpose for this bizarre pleading is evident.  Lightspeed has not and presumably never will name any of the thousands of so-called "co-conspirators" as parties in this lawsuit.   Yet, Lightspeed has to say that the internet subscribers are *potentially* parties in this lawsuit so it can maintain some sort of pretext for obtaining their personally identifiable information from the ISPs through an *ex parte* order for early discovery.  In a recent opinion concerning several lawsuits filed by plaintiff's attorneys here, Chief Judge Holderman of the Northern District of Illinois rejected this approach:

> [T]he court finds that the complaints' allegations of civil conspiracy are only unjustified attempts to bolster the obtaining of irrelevant discovery about non-parties.  It is thus plain that the plaintiffs are not seeking information about the non-party IP addresses for the purpose of litigating their current claims.

*Pac. Century Int'l, Ltd. v. John Does 1-37*, 2012 WL 1072312 at *5 (N.D. Ill. Mar. 30, 2012) (quashing subpoenas seeking information from ISPs and stating that "[w]hat the plaintiffs may not do…is improperly use court processes by attempting to gain information about hundreds of IP addresses located all over the country in a single action, especially when many of those addresses fall outside of the court's jurisdiction");[3] *see also First Time Videos, LLC v. Doe*, 2012 WL 170167 (E.D. Cal. Jan. 19, 2012) (finding no good cause for discovery of identity of John Doe defendant's alleged "co-conspirators").

In the case at bar, the circuit court seemed to recognize the oddities of Lightspeed's lawsuit and discovery requests.  (R92)  In a roller coaster ride of orders, the judge, on an *ex parte* basis, has: (i) entered an order authorizing pre-suit, mass discovery concerning thousands of individuals across the country (C107-09); (ii) entered, on the

---

[3] A copy of this decision appears in the record at C482-96.

request of Lightspeed's counsel, an order of commission to the Florida state courts purporting to authorize a subpoena seeking the names and contact information of hundreds of individuals under the authority of the courts of that state (C112); (iii) requested review and presumably reviewed *in camera* Plaintiff's demand letters to be sent to the masses of individual Internet service subscribers involved (C347); (iv) entered an order *sua sponte* requiring Lightspeed's lawyers to cease contacting individuals until further order of the court, because of the pleas and complaints that the court and counsel were receiving from far-flung jurisdictions (C383.1); and (v) upon still more *in camera* collaboration with Lightspeed's attorneys regarding their demand letter, decided to reverse its prior ruling and once again to permit plaintiff's attorneys to proceed with their nationwide collection scheme (C434).[4]

The circuit court denied the moving ISPs' motions to quash the discovery and for a protective order. (C345-46)  Then, when the ISPs sought a good-faith "friendly" contempt to enable them immediately to appeal the discovery orders to the Fifth District, the court denied the ISPs this avenue of appellate review, instead preferring they put themselves in direct contempt and at the further mercy of the court. (R97-98)  Because the ISPs are not going to defy a court's order, such a ruling could only work to prevent any appellate review at all.  Hence, the ISPs' only option to protect their interests and avoid the improper disclosure of the personally identifiable information of thousands of their subscribers is to seek supervisory relief from this Court.  Indeed, supervisory relief

---

[4] The judge stated, "I have worked with the plaintiff in this case ... in what contact letter they write and what methods they employ … So I am trying on both ends to avoid any coercive or well … any sort of intimidation in a letter threatening things that aren't remedies.  Making representations that aren't remedies, in an effort to funnel this in a reasonable manner." (R93)

is the only available method for halting the plaintiff's and its attorneys' misuse of the Illinois courts in furtherance of their collection scheme and the abuse and deprivation of rights it entails.

For the reasons explained below, this Court should direct the circuit court to grant the movants' motion to quash, quashing any and all subpoenas that have been or may be issued pertaining to the so-called "co-conspirators." Alternatively, this Court should direct the circuit court to grant the moving ISPs' requested finding of friendly contempt (and assess nothing more punitive than a nominal fine) so that they may file an interlocutory appeal to the Fifth District appellate court and in that manner obtain appellate review of the propriety of the subpoenas and the related discovery orders. In any case, the Court should also stay these proceedings pending appellate review.

## BACKGROUND

### 1.    The Big Picture

This lawsuit is one of well over a hundred lawsuits that have been filed in the last two years by plaintiff's counsel alone in both federal and state courts around the country, all seeking the personally identifiable information of Internet subscribers. (C464) Although most of these lawsuits involve federal copyright claims, for present purposes they are not different from the present lawsuit. In all these cases, the plaintiff's lawsuit boils down to the plaintiff's desire to identify Internet subscribers based on IP addresses in connection with allegedly improper access to Plaintiff's sexually explicit works.

As a general matter, the moving ISPs are respectful of the legitimate interests of copyright holders and the need to address copyright infringement. But, as exemplified by

the matter presently before this Court, the plaintiffs and their counsel in this national wave of lawsuits have frequently disregarded procedural requirements, the rights and interests of individual subscribers, and the undue burdens improperly being imposed on their Internet service providers.

The number of subscribers who are targeted in such cases is often in the hundreds or even, as in this case, thousands.  But, out of all of these lawsuits involving tens of thousands of individuals in the aggregate, only a handful of defendants end up being served.  (*See* C212-13)

The plaintiffs' *modus operandi* is to demand settlements—estimated to be in the neighborhood of $3,000 per subscriber—reportedly sending demand letters and placing phone calls repeatedly to the subscribers' homes.  (e.g., C384 (subscriber asked court clerk "if this was a scam" and "if she needed to get an attorney or should she pay the $3,000 she was told she could pay to 'make this case go away'." ) )  The subscriber, even if innocent of the accusation, is likely to be embarrassed about the prospect of being named in a suit involving pornographic material.  The cost to a subscriber who resides in a distant state of retaining counsel is likely to exceed the settlement demand. Accordingly, the individual—whether potentially liable or not—would then have to decide whether to pay money to retain legal assistance to fight the claim that he or she illegally downloaded sexually explicit materials, or pay the money demanded.  In the resulting vacuum of any adversarial litigation, neither the plaintiffs' alleged rights or alleged entitlement to damages, nor the evidence allegedly implicating the "John Does," are subject to any scrutiny or debate.  Thus, there is great potential for a coercive and unjust "settlement."  *See, e.g., Raw Films, Ltd. v. Does 1-32*, 2012 WL 6182025 (E.D.

Va. Oct. 5, 2011) (ordering plaintiff to show cause why it should not be sanctioned for its using "the offices of the Court as an inexpensive means to gain the Doe defendants' personal information and coerce payment from them").

Federal courts have recognized the abuses employed by Lightspeed's attorneys and other plaintiffs' attorneys in these lawsuits, and have frequently censured or restricted their tactics.  As one federal court observed:

> Copyright infringement cases such as this ordinarily maintain a common arc:  (1) a plaintiff sues anywhere from a few to thousands of Doe defendants for copyright infringement in one action; (2) the plaintiff seeks leave to take early discovery; (3) once the plaintiff obtains the identities of the IP subscribers through early discovery, it serves the subscribers with a settlement demand; (4) the subscribers, often embarrassed about the prospect of being named in a suit involving pornographic movies, settle…. Thus, these mass copyright infringement cases have emerged as a strong tool for leveraging settlements…

*McGIP, LLC v. Doe*, 2011 U.S. Dist. LEXIS 108109, at *8 (N.D. Cal. Sept. 16, 2011) (citing *IO Group, Inc. v. Does 1-43*, 2011 U.S. Dist. LEXIS 14123 (N.D. Cal. Feb. 3, 2011)).  In another case, the court stated:

> [T]he court shares the concern that these cases potentially open the door to abusive settlement tactics. . . .  Nothing currently prevents Plaintiff from sending a settlement demand to the individual that the ISP identifies as the IP subscriber.  That individual—whether guilty of copyright infringement or not—would then have to decide whether to pay money to retain legal assistance to fight the claim that he or she illegally downloaded sexually explicit materials, or pay the money demanded. This creates great potential for a coercive and unjust "settlement."

*Hard Drive Prods. v. Does*, 2011 U.S. Dist. LEXIS 132449, at *9 (N.D. Cal. Nov. 16, 2011) (dismissing Does 2-130 and imposing ongoing obligations upon plaintiff and its counsel to demonstrate that the discovery sought of Doe 1 is used for a proper purpose); *see also, e.g.*, *Cinetel Films, Inc. v. Does 1-1,052*, 2012 WL 1142272 (D. Md. Apr. 4, 2012) (dismissing all Does for improper joinder but one); *AF Holdings LLC v. Does 1-*

*135*, 2012 WL 1038671 (N.D. Cal. Mar. 27, 2012) (dismissing lawsuit for failing to serve any defendants); *Patrick Collins, Inc. v. John Does 1-23*, 2012 WL 1019034 (E.D. Mich. Mar. 26, 2012) (dismissing from action Does 2-23 for improper joinder); *K-Beech, Inc. v. John Does 1-41*, 2012 WL 773683 (S.D. Tex. Mar. 8, 2012) (dismissing all Does but one because plaintiff's copyright concerns "do[] not justify perverting the joinder rules"); *SBO Pictures, Inc. v. Does 1-87*, 2012 WL 177865 (D.D.C. Jan. 19, 2012) (ordering plaintiff to show Does' IP addresses are within Court's jurisdiction before granting any discovery); *Raw Films, Inc. v. Does 1-32*, 2011 WL 6840590 (N.D. Ga. Dec. 29, 2011) (dismissing claims against 29 of 32 Does for improper joinder, and noting that earlier grant of plaintiff's motion for discovery was done "before appreciating the manageability problems posed by joinder of unrelated defendants"); *Berlin Media Art v. Does 1-654*, 2011 WL 36383080 (N.D. Cal. Oct. 18, 2011) (denying motion for ex parte discovery for failure to show personal jurisdiction over each Doe or proper venue); *Hard Drive Productions, Inc. v. Does 1-30*, 2011 WL 4915551 (E.D. Va. Oct. 17, 2011) (after initially granting plaintiff's request to take discovery, finding "upon due consideration" that Does 2-30 are improperly joined); *DigiProtect USA Corp. v. Does 1-240*, 2011 WL 4444666 (S.D.N.Y. Sept. 26, 2011) (vacating subpoena and dismissing complaint, with leave to replead only Does over whom there is prima facie personal jurisdiction); *On the Cheap, LLC v. Does 1-5011*, 2011 WL 4018258 (N.D. Cal. Sept. 6, 2011) (dismissing Does 1-16 and 18-5,011, after originally granting plaintiff's ex parte order, based on multiple concerns arising during the case); *AF Holdings LLC v. Does 1-97*, 2011 WL 2912909 (N.D. Cal. July 20, 2011) (denying discovery of Does 2-97 due to improper joinder).

State courts, too, have determined that plaintiff's attorneys' tactics are improper. For example, plaintiff's attorneys filed at least four "bill of discovery" proceedings in Florida (including at least one brought by this plaintiff, Lightspeed) seeking subscriber identifications from ISPs. Plaintiff's attorneys did not, however, name the targets of discovery (*i.e.*, the ISPs) as defendants in those proceedings, as is required in a bill of discovery proceeding. Instead to bypass the need to serve ISPs (including many from remote jurisdictions who would presumably not be subject to the jurisdiction of the Florida courts) and give the ISPs an opportunity to appear and be heard, plaintiff's attorneys named "John Does" as defendants, even though no discovery (or other relief of any kind) would actually be sought from any of the "John Does" in those proceedings. In two of those cases, the courts have already granted motions for a protective order filed by several of the moving ISPs. (C475-76)

Notably, there is nothing special or different about the abusive discovery tactics in this case because it involves alleged "hacking" of pornographic material instead of alleged copyright infringement of pornographic material. The expedited discovery and "shake-down" settlement tactics are the same. If anything, the plaintiffs' copyright lawsuits at least include the manner of the alleged wrongdoing, in that the plaintiffs typically allege that each defendant committed infringement using BitTorrent peer-to-peer file sharing. Here, the plaintiff hasn't alleged any particular method of wrongdoing at all.

**2.    Plaintiff's Improper Tactics in a Separate St. Clair County Proceeding, Currently on Appeal**

This is not the only case Lightspeed has filed in the circuit court of St. Clair County. In *Lightspeed Media Corp. v. AT&T Internet Servs.*, No. 11-L-621, Lightspeed

sought pre-suit discovery under Supreme Court Rule 224 to obtain multiple individuals' personal information from multiple ISPs.  Lightspeed, however, bypassed Rule 224's fundamental requirement that the discovery targets be given notice and an opportunity to be heard (just as it had bypassed similar obligations in the Florida proceedings described above).  Instead, it obtained an order *ex parte* granting its petition for discovery.  When the ISPs' counsel thereafter learned of the lawsuit (because one of the ISPs was served with a subpoena), Lightspeed's attorney refused even to provide the ISPs' counsel with a copy of the petition.  (C464-65)  The Fifth District Appellate Court stayed further proceedings in the circuit court, and has since denied both Lightspeed's motion to reconsider the grant of stay pending appeal and Lightspeed's motion to dismiss the appeal for lack of jurisdiction.  (C471-73)

**THE PROCEEDINGS BELOW**

**1.      Plaintiff's Pleadings and the *Ex Parte* Early Discovery Order**

Lightspeed is the Arizona-based owner and operator of one or more paid-subscription sexually explicit websites.  (C3)  On December 14, 2011, plaintiff filed the underlying action against a single, unidentified defendant—a "John Doe"—alleged to have accessed plaintiff's website without authorization.  (C1-10)

Lightspeed complains that the defendant John Doe made use of "one or more hacked passwords" to access its pornographic website.  (C1)  Lightspeed alleges that it has "good cause for asserting that personal jurisdiction is proper" as to the single John Doe defendant (whose IP address information is set forth in Exhibit A to the complaint) based on "geolocation technology."  (C2, C10)

Two days after filing the complaint, Lightspeed filed an *ex parte* motion with the circuit court for early discovery under Supreme Court Rule 201(d) to authorize the issuance of subpoenas to a number of Internet service providers (including the moving ISPs here), seeking the personally identifiable information of their Internet subscribers. (C98-106)  In that motion, Lightspeed did not seek just the personally identifiable information of the single John Doe defendant, but also the personally identifiable information of some 6,600 other unnamed individuals who are located across the country.[5] (C98)  Although Lightspeed refers to these thousands of individuals as "co-conspirators," it has not sued these individuals.  Moreover, they are not alleged to have any particular connection to the single John Doe defendant,[6] his alleged wrongdoing, or even the State of Illinois.

---

[5] A review of available resources regularly used to approximate the geographic location of IP addresses reveals that a sample of 25 of the IP addresses on Exhibit B to the complaint are associated with locations in 14 different states. (C246-47)  Similarly, Comcast determined that of the approximately 1,200 IP addresses attributable to Comcast, only 37 are associated with a subscriber in Illinois. (C177)  Needless to say, with respect to the 6,600 so-called "co-conspirators" (whose IP address information is set forth in Exhibit B of the complaint), Lightspeed makes no allegation of any use of "geolocation technology."

[6] At the April 12, 2012 hearing in this case, Lightspeed's counsel argued to the court that the single John Doe defendant is supposedly a "master hacker … the center of the entire web of this incredible web of hacking." (R10-11)  Yet there is absolutely no evidence or even any pleading in this case that the single John Doe defendant had anything at all to do with any of the 6,600 so-called "co-conspirators" or any other individuals.  Indeed, the date of the single John Doe's allegedly wrongful act, November 28, 2011 (C10) is *after* the dates of the alleged acts of most of the so-called "co-conspirators," which range from early August 2011 to early December 2011 (C11-88).  Likewise, there are no pleadings or evidence to support any of the other arguments that plaintiff's counsel presented to the court at that hearing about theoretical hacking scenarios, let alone any pleadings or evidence that would connect any of those theoretical scenarios with any of the thousands of Internet subscribers implicated in this case. (R.21-26)  The trial court inquired further concerning this fabricated "master hacker" theory at a subsequent hearing, but

Footnote continues on next page.

14

The circuit court granted the *ex parte* motion for early discovery on the same day it was filed.  (C107-09)  Subsequently, the court also granted at least one request for domestication of the discovery requests in another state.  (C112)

## 2.    Orders and Events Precipitated by Entry of the *Ex Parte* Early Discovery Order

After obtaining the *ex parte* early discovery order, Lightspeed served subpoenas on some of the moving ISPs.  (C249-312)  Some of those subpoenas were defective, and some of the ISPs believe they were never served with any subpoena at all.[7]  (C196, C463)  Nonetheless, plaintiff's attorneys have represented that the moving ISPs have been served with subpoenas (R82-83), and the moving ISPs have preserved data as though they had been served with valid subpoenas (C372).  The subpoenas seek "[t]he name, current (and permanent) addresses, telephone numbers, e-mail addresses and Media Access Control addresses, and any other form of contact information that may be used to identify all persons whose IP addresses are listed in [an] attached spreadsheet."  (C252, C255, C265, C282)  Some ISPs began complying with subpoenas served on them by sending notifications to their subscribers.

The moving ISPs, however, filed a motion to quash and/or for a protective order with respect to the discovery that plaintiff sought under the authority of the circuit court's *ex parte* early discovery order.  (C189-312)  Another major ISP, Comcast Cable

---

Lightspeed's counsel did not articulate any details, and the court changed the topic. (R95-96)

[7] Plaintiff's counsel represented that all of the moving ISPs had been served with subpoenas, and on that basis counsel for ISPs waived any issue as to service.  (R84)  However, counsel for the moving ISPs have still been unable to locate subpoenas (other than the Cox Communications subpoena domesticated in Florida and the mostly defective subpoenas identified in their memorandum in support of their motion to quash), and counsel for plaintiff have refused to provide those subpoenas despite repeated requests.

Communications, LLC ("Comcast") filed a separate motion to quash. (C152-88) In the moving ISPs' motion to quash, and at an April 12, 2012 hearing on those motions, the moving ISPs raised the arguments raised here.

On April 12, 2012, the circuit court denied the ISPs' motions to quash. (C345-46) The court required the ISPs to comply with outstanding subpoenas by notifying subscribers and producing the subscriber identifying information by June 12, 2012 (Comcast was given until June 26, 2012). (C345) The court ordered that all subscriber notifications should apprise the subscribers that any and all of their motions to quash would be heard in St. Clair County, Illinois at a single hearing on July 20, 2012. (C345)

The events and orders that transpired after the April 12, 2012 hearing and order reflect the palpable and intractable problems for the legal system that this "lawsuit" entails. Four days later, noting the "boisterous percussion" from subscribers that its April 12, 2012 order would cause, the circuit court *sua sponte* entered an additional order requiring Lightspeed to submit to the circuit court for *in camera* review a draft of communications to be sent to an Internet subscriber by Lightspeed, and not to make any further communications absent the circuit court's approval. (C347) Plaintiff's demand letter was evidently submitted for review—*in camera*—the next day, on or about April 17, 2012. (C364) That letter has not been provided to the ISPs, but presumably it has been sent to hundreds or thousands of subscribers across the country.

Inquiries and pleas from Does across the country began to roll in to the court and counsel. For example, one Doe in Pennsylvania filed an objection noting both his innocence and poor health. (C348-63) A girl's uncle from Massachusetts called in to say that his niece could barely hold a job and couldn't go to Illinois to defend herself. (C387)

A Massachusetts couple in their sixties wrote in to say that they go to bed each night long before the time of the alleged "hacking." (C388)  A woman in Illinois called the court asking whether this was a scam and if she should pay the $3,000 she had been told would make this "go away." (C384)  Other objections, motions, and inquiries have continued to surface from individuals in various states including California, Washington, Minnesota, Wisconsin, Pennsylvania, Massachusetts, Virginia, Georgia, and Florida.  (C348-63, C384, C390-432, C564-600, C607-75, C676-79, R91-92)

In the separate Florida proceeding that was initiated based on an order of commission from the circuit court in this case, multiple Does filed motions to quash. (*see, e.g.*, C535-43)  In response, plaintiff's lawyers have filed a motion to strike, in which they advise the Florida courts that the objecting subscribers have no rights at all, stating as follows:

> The [Florida subscribers moving to quash the Illinois subpoena] have no standing in this case, are not the subjects of the subpoena in question, and are non-parties to this litigation. … The Court has not exercised jurisdiction over any [of the subscribers moving to quash the Illinois subpoena in Florida court] in connection with this case, and because there is no claim pending against any of them, [they] cannot seek dismissal or generally deny liability. … [They] have no right to steer the course of the litigation, or to address the factual and legal merits of the underlying complaint.

(C550, C556)

On April 27, 2012, the circuit court noted the incoming submissions by the so-called "co-conspirators" and issued another order *sua sponte* directing Lightspeed to halt mailing demand letters to subscribers absent further order of the court.  (C383.1)  On May 7, 2012, plaintiff's counsel sent a letter to the clerk of the circuit court that, among other things, suggests that she instruct any Internet subscribers who telephone the clerk to

instead telephone *plaintiff's counsel* "with any questions."  (C389)  This letter was particularly outrageous, given that subscribers who call the court might not have already been identified to plaintiff's counsel, yet plaintiff's counsel was suggesting that the authority of the court be used to instruct inquiring subscribers to contact plaintiff's counsel directly.

On May 11, the circuit court entered another order *sua sponte*, in which the court indicated that it had apparently had further discussions with the plaintiff's lawyers regarding a revised demand letter, and that the court was now satisfied that the plaintiff could resume its nationwide collection campaign.  (C434; R93)

### 3.    The Moving ISPs' Motion for "Friendly" Contempt and the Plaintiff's Harassing Motion for the Court-Ordered Deposition of AT&T's Chairman and Chief Executive Officer

On April 25, 2012, the moving ISPs filed with the circuit court a motion for finding of "friendly" contempt to obtain an immediate appeal of the circuit court's orders.  (C365-39)  The moving ISPs respectfully asked the circuit court to issue a "friendly" contempt citation against the ISPs, in a nominal monetary amount, for the sole purpose of the ISPs' good-faith effort to secure immediate review in the Fifth District Appellate Court of the circuit court's denial of their motion to quash and for protective order.  (C367)  In their accompanying motion for a stay, the moving ISPs further assured the circuit court that they would preserve subscriber information pending appellate review.  (C372)

When the moving ISPs sought a prompt hearing on their motions for "friendly" contempt and to stay proceedings, Lightspeed's lawyers resisted, saying they needed time to brief a response.  Evidently, however, the lawyers had time to put together, by the next

day, a motion seeking the court-ordered deposition of Randall Stephenson, who is the Chairman of the Board, Chief Executive Officer, and President of AT&T, Inc.  (C376-83) The stated premise of the motion was that plaintiff's lawyers wanted to question Mr. Stephenson to make sure he was aware of the legal position that AT&T was taking in St. Clair County about the validity of plaintiff's subpoenas.  (C378)  As detailed in AT&T's opposition, that motion lacks any legitimate legal basis, is based on a host of misrepresentations, is procedurally improper, and was submitted only for the purpose of harassment.  (C444-57).

At a scheduling hearing on April 30, 2012, the Court set a May 14, 2012 hearing on the moving ISPs' motions for "friendly" contempt and to stay (as well as plaintiff's motion for deposition of AT&T's chairman), and stated that the "Moving ISPs are not required to mail any notice letters [i.e., letters notifying subscribers of the subpoenas seeking their personally identifying information] before receiving a ruling on their pending motions but shall proceed as though they may be required to comply (mail immediately after the court rules."  (C385)

At the May 14 hearing, the moving ISPs[8] assured the circuit court that they had preserved subscriber information and were able to send notifications, as directed by the court in its April 30, 2012 order.  (R57)  The circuit court, however, denied the request for "friendly" contempt.  (R97-98)  The circuit court alternately: (i) stated that such a request is not "friendly" and should not be granted unless all parties agree, (R57); (ii) stated that there are other ways to coerce compliance by the ISPs besides contempt

---

[8] Comcast did not file a motion for "friendly" contempt, but its counsel advised the circuit court at the May 14 hearing that Comcast supports the moving ISPs' motion. (R55-56)

(R98);[9] and (iii) stated that the request is "premature" (R98).[10]  The circuit court refused to grant a stay (R99) or even to move back the date of compliance pending the moving ISPs' receipt of his written order (R106).

      At the May 14 hearing, the circuit court did not permit counsel to elaborate on the apparent lack of any pleadings or other demonstration of any relevance of the identifying information of thousands of Internet subscribers located across the country.  Nor did the circuit court acknowledge the demonstrated fact that what is actually being sought here (with the circuit court's *ex parte, in camera* participation in the crafting of the plaintiff's demand letter) is a massive collection scheme having nothing at all to do with any discovery concerning the claims against the single John Doe defendant in this case.  Instead, the circuit court echoed the plaintiff's pretext—that discovery is "permitted of those individuals who may have information relevant to the proceeding."  (R89-90)  Thus, the circuit court declined to allow the moving ISPs to proceed with an appeal in the normal manner for testing the validity of discovery orders under Illinois law.  *See, e.g., People ex rel. Scott v. Silverstein*, 87 Ill. 2d 167, 171 (1981).

---

[9] The court said, "So I understand I probably could do many, many things that are new and improved ideas or old and settled.  I understand what you are saying.  I choose not to accept your invitation [for a friendly contempt] because it is prema - - because the evidence only shows that the issue is premature and that while I could I guess go ahead and do it under what you are suggesting, I choose not to because in my discretion I think there are valid issues to a valid means to coerce compliance short of the contempt power."  (R97-98)

[10] Although it was clear from the May 14 hearing that the circuit court was going to "coerce compliance" and was not going to permit appellate review (R97-98), the moving ISPs also asked the circuit court to consider certifying the matter for appeal under Rule 308, even handing up a proposed order containing the question to be presented.  (R98).  The circuit court declined to address the request at that hearing.  (R98)

In anticipation of a written order from the circuit court, the moving ISPs postponed the filing of their motion for a supervisory order for a few days.  On May 21, 2012, the court issued its written order.[11]  (C684-88)  The document tracks the rulings made by the circuit court at the May 14 hearing, including the denial of the motion for "friendly" contempt and the motion for stay.  The May 21 order includes a number of factual statements that are not supported by the pleadings or the record, such as statements concerning a "master hacker" or "hub cracker" theory (addressed in note 8 *supra*), the service of subpoenas (addressed in note 6 *supra*), and the apparent lack of security employed on Lightspeed's pornographic websites (addressed in note 15 *infra*).  (C684-85)

More importantly, the May 21 order fully adopts the plaintiff's fictional "conspiracy" theory, based on a rationale that the court is supposed to take plaintiff's pleadings as true.  (C686)  But, as described above, plaintiff has not alleged an actionable conspiracy as to any of the 6,600 so-called "co-conspirators," and it is axiomatic that even liberal construction cannot save a complaint that fails to allege even the most basic factual components of a cause of action.  *See City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 368 (2004).  Finally, the order ignores that discovery is not being sought here as to thousands of affected "co-conspirators" so that they can be named as parties in a lawsuit in St. Clair County, any more than discovery is being sought to obtain evidence that is relevant to the plaintiff's claims against the single John Doe defendant.  The

---

[11] The May 21 order states that it amends an order emailed to the "parties" on May 18. However, the moving ISPs only received, from plaintiff's counsel, an unsigned prior version of the court's order in Word format via email at 9 pm on Saturday, May 19.

"discovery" is nothing more than a list of settlement targets, as this case is nothing more than an attempt to enlist the courts of Illinois in plaintiff's nationwide collection scheme.

The court on May 21, 2012 also issued, *sua sponte*, a "Court Management Order #2" concerning this "on-going long, wide, fat, and deep litigation." (C680-83) This order requires the moving ISPs (but not Comcast) to produce the subscriber identity information to the court for *in camera* review on an unspecified basis. (C681) Obviously, the court retains complete discretion to turn the identifying information over to plaintiff at any time it chooses. Further, even though it is understood and acknowledged that the subscribers hail from all corners of the country (indeed, there is related litigation actively proceeding in the State of Florida), the order requires the moving ISPs to produce, at their own expense, information about the location of their subscribers. (C681-82) The court appears to recognize that its previous orders might have created jurisdictional problems.

The May 21 "Court Management Order #2" also indicates that further explanation from the plaintiff concerning its software is warranted because of challenges (presumably from objecting subscribers) that plaintiff's list contains "false positives," and the court states that it will request briefing from the moving ISPs with respect to "evidentiary issues concerning the test for admissibility" of the use and conclusions of plaintiff's software. (C682-83) It appears that the court has overlooked that the "false positives" may be caused, in part, by the fact that an IP address does not correspond to an individual (as discussed above) and, more importantly, that plaintiff's software is not even alleged to provide any evidence of a "conspiracy." At bottom, the court's May 21 orders completely overlook that the complaint has not come close to alleging a civil conspiracy,

so, even forgetting about the jurisdictional defects, there has been no good cause demonstrated for *any* discovery. And, even though the court seems to sense a problem with its earlier orders, it has steadfastly refused to quash the subpoenas or to significantly modify the ISPs' obligation to comply with the April 12, 2012 order.[12]

The moving ISPs have been left with no alternative but to file a motion for supervisory order with this Court.

## ARGUMENT

The dispute in this case—and the circuit court's denial of the moving ISPs' motions to quash—involves a matter important to the administration of justice in this State. Direct and immediate action by this Court is necessary to ensure that the circuit courts act within the scope of its authority both in the current case—by ordering the circuit court to vacate its early discovery order—and in subsequent filings in the event that plaintiff's counsel brings additional similar lawsuits in this County.

## I.     A Supervisory Order Is Necessary and Appropriate Here

A supervisory order may be entered where "the normal appellate process will not afford adequate relief and the dispute involves a matter important to the administration of justice" or where "intervention is necessary to keep an inferior tribunal from acting beyond the scope of its authority." *People ex rel. Birkett v. Bakalis*, 196 Ill. 2d 510 (2001). The facts implicated in this motion satisfy all these criteria.

---

[12] The required notification has changed, though. Per the court's April 12 order, the moving ISPs were required to notify their subscribers of a mass hearing on anticipated motions to quash to be held in St. Clair County on July 20, 2012. (C345) Per the court's May 21 order, the moving ISPs are required to notify their subscribers that such a mass hearing will be held in St. Clair County on August 17, 2012. (C682)

*First*—The normal appellate process will not afford adequate relief. Because discovery orders are not final, they are not ordinarily appealable. *See Norskog v. Pfiel*, 197 Ill. 2d 60, 69 (2001). Thus, absent immediate intervention by a higher court, the ISPs must comply with the circuit court's order by June 12, 2012, and must notify its subscribers of the subpoenas in advance of that date.

This process is not only burdensome to the ISPs, but it will result in disclosure of the names and other personal information about individual subscribers without plaintiff having made even the barest showing that the access in question occurred or was unauthorized, or that any such person identified (i) was the person who accessed plaintiff's website, (ii) is involved in any conspiracy, or (iii) has any connection whatsoever to Illinois. The identified individuals will be notified they can object only by filing a motion and appearing in an Illinois state court at a mass hearing on motions to quash, unless they want to pay the plaintiff's settlement demand for several thousand dollars. This Court and the appellate court have appropriately recognized that discovery orders like the order at issue here are effectively unreviewable if the parties must await a final judgment and appeal, and that is why Illinois courts have consistently approved the use of the "friendly contempt" mechanism to secure immediate review of a disputed discovery ruling. *See, e.g., Wisniewski v. Kownacki*, 221 Ill. 2d 453, 458 (2006); *Norskog*, 197 Ill. 2d at 69; *People ex rel. Scott v. Silverstein*, 87 Ill. 2d 167, 171 (1981). Because the trial judge denied the moving ISPs' request for "friendly" contempt, the ISPs' only option for meaningful review of the discovery ruling is by this motion to this Court.

*Second*—The matter here is important to the administration of justice. Lightspeed and its counsel are trying to enlist Illinois courts as their accomplice in their scheme to extract coercive settlements from thousands of the ISPs' subscribers, with no demonstrated connection to Illinois or allegation of facts indicating a conspiracy. As discussed herein, plaintiff has no intention of litigating any "conspiracy" case; rather, its lawyers hope to take advantage of the threat of damages and the stigma associated with viewing pornography to induce thousands of potentially innocent ISP subscribers to make "settlement" payments, without a claim even having been filed against them in court. This Court should not allow Illinois courts to aid plaintiff in this unsavory endeavor.

*Third*—Intervention is also necessary to prevent the circuit court from acting beyond the scope of its authority. As further addressed below, discovery cannot be used as a fishing expedition to build speculative claims, and thus if a complaint fails to state a cause of action, discovery is not permitted. *See, e.g., Cooney v. Magnabosco*, 407 Ill. App. 3d 264, 270 (1st Dist. 2011). Because the complaint in this case fails to allege even the most basic facts that constitute a conspiracy, the trial court had no authority to allow discovery as to 6,600 so-called "co-conspirators."

While a trial court is afforded considerable latitude in conducting pre-trial discovery, that "breadth of power requires a careful exercise of discretion in order to balance the needs of truth and excessive burden to the litigants." *People ex rel. General Motors Corp. v. Bua*, 37 Ill. 2d 180, 193 (1967). Where, as here, a trial court has exceeded the bounds of discretion by ordering broad invasive discovery even though the proponent failed to make "some preliminary showing of materiality and relevancy," the

order should be reversed, even if it must be by an extraordinary order issued by this Court. *Id.* As we now show, that is the case here.

## II. The Circuit Court Acted Beyond Its Authority in Denying the Moving ISPs' Motion to Quash and for Protective Order.

In denying the moving ISPs' motion to quash, the circuit court acted beyond its authority. The subpoenas issued in accordance with the circuit court's December 16, 2011 *ex parte* order were obtained under the authority of Supreme Court Rule 201(d), which provides:

> *(d) Time Discovery May Be Initiated.* Prior to the time all defendants have appeared or are required to appear, no discovery procedure shall be noticed or otherwise initiated without leave of court granted upon good cause shown.

S. Ct. Rule 201(d). Similarly, 735 ILCS 5/2-1101 provides that the circuit court may quash any subpoena "for good cause shown." There was no good cause for the mass discovery that the *ex parte* early discovery order purported to permit. Moreover, as addressed herein, the circuit court's various attempts to address the lack of good cause do not address the deficiencies, and, at best, only highlight the absence of good cause when the sweeping early discovery order was entered.

### A. The Subpoenas Improperly Seek Personal Information of 6,600 Individuals When No Claims Are Asserted Against Such So-Called "Co-Conspirators" and Such Information Is Not Relevant to Plaintiff's Claims Against the Single John Doe Defendant.

Plaintiff has not demonstrated good cause for early discovery as to the so-called "co-conspirators" because such discovery is not relevant to plaintiff's case against the

John Doe defendant, and plaintiff has not asserted any claims against the so-called "co-conspirators."[13]

Supreme Court Rule 201(b)(1) limits discoverable material to that "relevant to the subject matter involved in the pending action." The right to discovery is limited to the disclosure of matters that will be relevant to the case at hand in order to protect against abuses and unfairness, and a court should deny a discovery request where there is an insufficient showing that the requested discovery is relevant or will lead to such evidence. *Youle v. Ryan,* 349 Ill. App. 3d 377, 380-81 (4th Dist. 2004). Courts generally hold that the allowance of wide, sweeping discovery requests is an abuse of discretion. *See In re All Asbestos Litigation,* 385 Ill. App. 3d 386, 391 (1st Dist. 2008); *Yuretich v. Sole*, 259 Ill. App. 3d 311, 317 (4th Dist. 1994) ("A plaintiff must possess a minimum level of information indicating defendant is liable to him before he commences litigation and forces defendant to undergo discovery. Otherwise plaintiff is engaged in a 'fishing expedition,' a recognized form of litigation abuse.... It is no justification that a fishing expedition might result in worthwhile information.").

Plaintiff in the case at bar has not provided anything more than vague, conclusory, and inconsistent allegations concerning the so-called "co-conspirators." Plaintiff does not specify that any particular "co-conspirators" interacted with any other "co-conspirators"—or, for that matter, that any of the "co-conspirators" even knows who

---

[13] In addition, the voluminous, improper discovery demands on the moving ISPs are unduly burdensome. Such burden imposed on the ISPs includes not only the legal resources associated with handling subpoenas, and the personnel time associated with performing IP address research, but also the personnel hours and expenses required to notify and respond to inquiries from subscribers. If left unchecked, such burden would unduly interfere not only with the ISPs' business operations, but also with their ability to respond to law enforcement requests and other civil litigants.

some or all of the other "co-conspirators" are.  At best, plaintiff's assertions and evidentiary support are limited to alleged wrongdoing by individuals acting separately, and are devoid of any indicia of conspiracy.[14]  Despite the volume of complaints from the ISPs and Does regarding the absence of evidence as to any so-called "conspiracy," plaintiff has never expanded on the skeletal and inadequate conspiracy allegations in the complaint.

Civil conspiracy is an intentional tort.  *Eeuter v. MasterCard Intern., Inc.*, 397 Ill. App. 3d 915, 927 (5th Dist. 2010).  It is defined as "a combination of two or more persons for the purpose of accomplishing by concerted action either an unlawful purpose or a lawful purpose by unlawful means." *Id.* (citing *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102, 133 (Ill. 1999)).  The elements of a conspiracy are (i) an agreement between two or more persons to participate in an unlawful act, or a lawful act in an unlawful manner; (ii) an injury caused by an unlawful overt act performed by one of the parties; and (iii) that the overt act was done pursuant to and in furtherance of the common scheme.  *Vance v. Chandler*, 231 Ill. App. 3d 747, 750 (3rd Dist. 1992).

Illinois is a fact-pleading jurisdiction, which requires that a plaintiff allege facts sufficient to bring a claim within a legally recognized cause of action.  *See Simpkins v. CSX Transp.*, 2012 IL 110662, ¶ 26.  Conclusory allegations are insufficient. *Id.* at ¶¶ 26-27.  Moreover, a plaintiff alleging a civil conspiracy must allege facts from which the existence of a conspiracy can be inferred.  *See Fritz v. Johnson*, 209 Ill. 2d 302, 317

---

[14] Even the limited evidentiary basis that Lightspeed has provided is suspect, given that Lightspeed's owner is also its purported forensic investigator.  (C4 ("Plaintiff retained Arcadia Data Security Consultants, LLC ('Arcadia') to identify IP addresses…."), C93 (Declarant Steve Jones, Founder and CEO of Arcadia and programmer of the software used, is also the owner of plaintiff)).

(2004).  A complaint therefore "must contain more than the conclusion that there was a conspiracy."  *Id.* at 318.

The complaint here abjectly fails to satisfy these standards.  Not only are the complaint's allegations wholly conclusory, but they fail even to cover all the elements of the cause of action.  For example, the complaint fails to allege facts from which a court can infer there was any communication or contact at all between the John Doe defendant and any of the thousands of alleged "co-conspirators," let alone any *agreement* as to any common scheme.  *Redelmann v. Claire Sprayway, Inc.*, 375 Ill. App. 3d 912, 924 (1st Dist. 2007) (civil conspiracy complaint must allege existence of an agreement); *see also Buckner v. Atlantic Plant Maintenance, Inc.*, 182 Ill. 2d 12, 23 (Ill. 1998) (in Illinois, plaintiff must plead the facts essential to his cause of action; unsupported conclusions are not sufficient).

Further, while the complaint suggests that thousands of alleged infractions were part of a concerted action, a "concert of action" occurs when "a tortious act is committed with another or pursuant to a common design or when one party renders substantial assistance to another knowing that the other's conduct constitutes a breach of duty."  *Hume & Liechty Veterinary Assocs. v. Hodes*, 259 Ill. App. 3d 367, 369 (1st Dist. 1994) (internal citation omitted).  Here, each alleged instance of unauthorized access to Lightspeed's website was separate and independent of any other individuals' unauthorized access. There is, in fact, no allegation or evidence whatsoever that indicates that the single John Doe defendant was some kind of "master hacker" who collaborated with over six thousand other Internet users—for the sole purpose of saving a couple of dollars in membership fees to plaintiff's pornographic website.  To the contrary, the John

Doe defendant is not even alleged to have "hacked" anything until after most of the so-called "co-conspirators" did so.  (C10-88)

Given the lack of any pleading or evidentiary basis for plaintiff's conspiracy theory (and given the true, improper motive behind such a theory), there is good cause to quash the subpoenas under 735 ILCS 5/2-1101.  Plaintiff's pursuit of identifying information for the so-called "co-conspirators" is nothing more than a fishing expedition designed to locate new settlement targets, as opposed to a legitimate pursuit of evidence in support of plaintiff's viable claims, if any, against the single John Doe defendant.  *See Cooney v. Magnabosco*, 407 Ill. App. 3d 264, 270 (1st Dist. 2011) ("Discovery cannot be used as fishing expedition to build speculative claims."); *Redelmann v. Claire Sprayway, Inc.*, 375 Ill. App. 3d 912, 927 (1st Dist. 2007) (noting the trial court's "unwillingness" to permit plaintiff to go on a fishing expedition where plaintiff "failed to explain how discovery will help him overcome the pleading deficiencies"—namely that plaintiff failed to "plead facts that establish all the elements in his conspiracy counts"); *Evitts v. Daimler Chrysler Motors Corp.*, 359 Ill. App. 3d 504, 514 (1st Dist. 2005) ("Discovery is not necessary where a cause of action has not been stated."); *accord First Time Videos, LLC v. Doe*, No. CIV S-11-3478, 2012 U.S. Dist. LEXIS 15810 (E.D. Cal. Feb. 8, 2012) (finding that plaintiff's "request to conduct expedited discovery regarding all of the alleged co-conspirators is not reasonable and is not supported by good cause").

     **B.**     **There is No Good Cause for Asserting That Personal Jurisdiction or Venue is Proper as to the So-Called "Co-Conspirators," or That They Could Otherwise Be Properly Joined in This Proceeding.**

In its complaint, Lightspeed alleges that it used geolocation technology to determine the location of the single John Doe defendant (allegedly, St. Clair County) in order to have "good cause for asserting that personal jurisdiction is proper" as to that

defendant.  (C2)  Conspicuously absent from the complaint, however, is any indication that plaintiff used geolocation technology to determine whether there is "good cause for asserting that personal jurisdiction is proper" as to the thousands of so-called "co-conspirators" whose identifying information and "settlement" money is the true and sole objective of plaintiff's lawsuit and improper subpoenas.

In fact, Lightspeed concedes that it seeks mass discovery here before any assessment of whether joinder is proper as to the thousands of implicated individuals artfully referred to as "co-conspirators."  (C101 ("Plaintiff may seek in the future to join any number of the co-conspirators to this suit so long as their joinder is proper …."))  This admission is well-founded, given the absence of any factual allegations supporting the existence of any actual "conspiracy" and the lack of any basis for asserting that personal jurisdiction and venue are proper as to more than six thousand Internet subscribers who may or may not have been the actual users of the Internet accounts at the time of any alleged "hacking" activity.

The use of geolocation technology with respect to a sample of the so-called "co-conspirator" subscribers suggests that they are likely to be located in numerous other states.  (C246-47)  Thus, as plaintiff essentially concedes, there is no "good cause" for asserting that personal jurisdiction is proper as to those thousands of subscribers. *Accord Millenium TGA v. Doe*, No. 1:10-cv-05603, 2012 WL 7444064 (N.D. Ill. Sept. 26, 2011) (dismissing Doe defendant on personal jurisdiction and venue grounds); *Lightspeed Media Corp. v. Does 1-1000*, No. 10-cv-05604 (N.D. Ill. Mar. 31, 2011), ECF No. 53 (severing all but one Doe defendant on the basis of improper joinder); *CP Productions, Inc. v. Does 1-300*, 10-cv-06255, 2011 WL 737761 (N.D. Ill. Feb. 24, 2011) (denying

31

motion for reconsideration of the court's earlier order dismissing without prejudice all 300 Doe defendants in part because "there is no justification for dragging into an Illinois federal court, on a wholesale basis, a host of unnamed defendants over whom personal jurisdiction clearly does not exist and—more importantly—as to whom [plaintiff]'s counsel could have readily ascertained that fact").

### C.     Plaintiff Does Not Seek Discovery for a Proper Purpose.

Based on the lawyers' conduct in other cases, it is highly doubtful that plaintiff will seek to amend its suit to sue thousands of identified individuals in St. Clair County. Rather, plaintiff seeks to obtain a trove of personally identifiable information in order to coerce settlement from those Internet subscribers located across the country, many of whom may not be the individuals who allegedly committed any wrongs.  Indeed, assuming just $2,500 per coerced settlement, the potential value of the so-called "co-conspirator's" identifying information to plaintiff and its counsel could exceed $16.5 million.[15]

Courts dealing with similar suits have repeatedly recognized that a given Internet subscriber may not even be the individual who was actually using the Internet account in question. *E.g., Digital Sin, Inc. v. Doe*, No. 1:12-cv-00126, 2011 U.S. Dist. LEXIS 128033, at *5-6 (N.D. Cal. Nov. 4, 2011) ("[Plaintiff's] [c]ounsel stated that the true

---

[15] In various court documents, plaintiff repeatedly complains that thousands and thousands of "hackers" are entering its websites without authorization.  If that is true, it seems that plaintiff cannot secure its own websites.  (C90 ("There are no limits to the number of individuals that can use a single hacked password...")) Perhaps plaintiff believes it is in its best financial interest not to, given that it would take years of monthly membership fees to total the cost of a single settlement from an Internet subscriber who may or may not have entered plaintiff's website without authorization one or more times. Regardless, plaintiff's purported website security issues, even if true and even if uninvited, do not warrant nationwide deprivation of due process from the courts of Illinois.

offender is often the 'teenaged son ... or the boyfriend if it's a lady.'....Alternatively, the perpetrator might turn out to be a neighbor in an apartment building that uses shared IP addresses or a dormitory that uses shared wireless networks."). Similarly, here, the putative "co-conspirators" that plaintiff seeks to identify (and then coerce into settlement) are the ISPs' Internet account subscribers, who in many instances would not be the same person as the user of an Internet account (e.g., a roommate, spouse, child, Wi-fi guest, etc.) with respect to any allegedly wrongful acts.

Courts have also recognized that the sexually explicit subject matter involved, as well as the costs of engaging legal counsel, may lead an individual to settle regardless of culpability. *See*, e.g., *MCGIP, LLC v. Doe*, No. 4:11-cv-02331, 2011 U.S. Dist. LEXIS 108109, at *8 n.5 (N.D. Cal. Sept. 16, 2011) ("[S]ubscribers, often embarrassed about the prospect of being named in a suit involving pornographic movies, settle....Thus, these mass copyright infringement cases have emerged as a strong tool for leveraging settlements—a tool whose efficiency is largely derived from the plaintiffs' success in avoiding the filing fees for multiple suits and gaining early access en masse to the identities of alleged infringers."); *K-Beech, Inc. v. Does 1-85*, 11-CV-00469 at 4 (E.D. Va. Oct. 5, 2011) ECF No. 9 ("This course of conduct indicates that the plaintiffs have used the offices of the Court as an inexpensive means to gain the Doe defendants' personal information and coerce payment from them. The plaintiffs seemingly have no interest in actually litigating the cases, but rather simply have used the Court and its subpoena powers to obtain sufficient information to shake down the John Does.").

Plaintiff's interest in perpetuating its coercive "settlement" scheme does not constitute good cause for discovery as to the thousands of affected, unrepresented

Internet subscribers involved.  Nor is there any other "good cause" in plaintiff's suit sufficient to warrant discovery to obtain the personally identifiable information of more than 6,600 Internet subscribers (i) who are not even alleged to have any particular association with the single John Doe defendant; (ii) who are not otherwise alleged to have been involved in any actionable civil conspiracy; (iii) who may not even be the individuals who were using the Internet accounts when any wrongs were allegedly committed; (iv) as to whom there is no good cause to believe that the circuit court would have personal jurisdiction or venue; (v) as to which there is no good cause to believe that joinder in this lawsuit would be proper; and (vi) whose identifying information is actually sought only for the purposes of coercing millions of dollars in settlement payments and not for the purpose of prosecuting this lawsuit.

In the circuit court's May 21 order, the court cites a couple of cases as potentially supportive of the plaintiff's tactics in this lawsuit.  (C686)  In the first case, *Camelot Distrib. Group, Inc. v. Does 1 Through 1210*, the court merely granted the plaintiff's motion to expedite discovery.  *Camelot Distrib. Group*, 2011 WL 4455249, at *1 (E.D. Cal. Sept. 23, 2011 ("No appearance was made by or on behalf of any of the Doe defendants or the ISPs because, of course, none of the Doe defendants has yet been identified by plaintiff or served with the First Amended Complaint.").  It does not appear that any defendant has ever been served or named in that lawsuit.  In the other case, *On the Cheap, LLC v. Does 1-5011* --- F.R.D. ----, 2011 WL 4018258 (N.D. Cal. Sept. 6, 2011), the court actually *dismissed* all defendants but one, noting: (i) the trend against permitting joinder in these cases, (ii) the "significant case management issues" that would result from 5,000 defendants, (iii) the "logistical issues associated with keeping the

identities of the moving Doe defendants sealed so that their privacy rights are protected," (iv) the affront to "principles of fundamental fairness" caused by the remote location of defendants, (v) a likely lack of personal jurisdiction as to many Does, (vi) the failure to serve any defendants in over eleven months, and (vii) that "plaintiff's desire to enforce its copyright in what it asserts is a cost-effective manner does not justify perverting the joinder rules to first create the management and logistical problems discussed [] and then offer to settle with Doe defendants so that they can avoid digging themselves out of the morass plaintiff is creating."[16]

We expect that plaintiff may argue, as it has previously, that the moving ISPs lack standing to challenge the subpoenas. The argument is cynical at best. As discussed earlier, plaintiff urged, in response to multiple Does' motions to quash subpoenas in the related Florida action arising out of this lawsuit, that the subscribers lack standing to challenge the subpoenas requiring their identifying information because they are not parties, there is no claim pending against them, and they have "no right to steer the course of the litigation, or to address the factual and legal merits of the underlying complaint."

---

[16] Apropos to the situation here, the court also noted that "According to public reports, plaintiffs in other BitTorrent [John Doe copyright infringement] cases rather than prosecuting their lawsuits after learning the identities of Does, are demanding thousands of dollars from each Doe defendant in settlement. If all this is correct, it raises questions of whether this film was produced for commercial purposes or for purposes of generating litigation and settlements." *On the Cheap, LLC v. Does 1-5011*, --- F.R.D. ----, 2011 WL 4018258 at *3 n.6. Even if the cases cited by the circuit court's May 21 order did support the tactics of these plaintiffs in general, neither of the cases involves the fictional "co-conspirator" pleading at play here, nor are movants aware of any adverse authority approving these mass, fictional "co-conspirator" cases. Indeed, any cases that plaintiff may cite in response herein at best belong to a dwindling minority, as federal courts have increasingly disapproved of the plaintiffs' tactics even in cases that are less blatantly abusive than this one. *E.g.*, *Digital Sins, Inc. v. John Does 1-245*, 2012 WL 1744838 (S.D.N.Y. May 15, 2012) (Discussing chronicling by numerous courts of abusive litigation practices.).

(C550, 556)  So, to make such an argument, it would apparently be plaintiff's view that no one—neither the ISPs who received the subpoenas nor the subscribers whose private information the subpoenas seek—has standing to challenge the subpoenas.

In any event, it should go without saying that recipients of subpoenas have standing to challenge them.  Indeed, Chief Judge Holderman in the *Pacific Century* case discussed earlier had no problem with ISPs' standing to challenge similar subpoenas.  *See Pac. Century Int'l, Ltd. v. John Does 1-37*, 2012 WL 1072312 at *5 (N.D. Ill. Mar. 30, 2012) (quashing subpoenas directed at ISPs); *see also Compaq Computer Corp. v. Packard Electronics, Inc.*, 163 F.R.D. 329, 335-36 (N.D. Cal. 1995) (noting that, "if the sought-after [discovery is] not relevant nor calculated to lead to the discovery of admissible evidence, then *any burden whatsoever* imposed upon [a third party] would be by definition 'undue'") (emphasis in original).

We also expect that plaintiff will argue that it has experienced thousands of "attempts" at hacking even since this lawsuit was filed, and that somehow it is necessary for them to extract settlements from thousands of subscribers to change the tide. (C439-40)  Even if "attempts" at hacking constituted actual harm, and even if such complaints demonstrate anything other than irresponsible website security measures, plaintiff does not even attempt to explain how its professed immediate need to demand settlements from individuals across the country would stop the flow of attempted (or even actual) "hacks" into its website.

**III.    The Appropriate Supervisory Relief Is to Direct the Circuit Court to Vacate its Order Denying the ISPs' Motion to Quash and to Grant That Motion, or, in the Alternative, Direct the Circuit Court to Vacate its Order Denying the ISPs' Motion for Finding of "Friendly" Contempt and to Grant That Motion.**

This Court should enter a supervisory order, under Supreme Court Rule 383, directing the circuit court to vacate its April 12, 2012 order denying the ISPs' motion to quash and for protective order and to then grant that motion.

Alternatively, in the event that this Court concludes that the better approach is to allow the appellate court to consider in the first instance the issues set forth in this Motion, this Court should enter a supervisory order directing the circuit court to vacate its May 21, 2012 order denying the ISPs' motion for finding of "friendly" contempt and to then grant that motion and assess nothing more punitive than a nominal fine to the moving ISPs, who have demonstrated their good faith in connection with seeking appellate review.

## CONCLUSION

For all the foregoing reasons, Internet service providers AT&T Internet Services; BellSouth.net; Cellco Partnership d/b/a Verizon Wireless; Centurytel Internet Holdings Inc.; Cox Communications, Inc.; Embarq Communications, Inc.; Qwest Communications Company LLC; Verizon Online LLC; and Wayport, Inc. respectfully request this Court to exercise its supervisory authority and enter an order directing the circuit court to vacate its order denying the moving ISPs' motion to quash and for protective order and to then grant that motion or, alternatively, enter an order directing the circuit court to vacate its order denying the moving ISPs' motion for finding of "friendly" contempt and to then grant that motion, and assess nothing more punitive than a nominal fine to the moving ISPs (if the "friendly" contempt approach is taken).

37

Dated:  May 22, 2012

Respectfully submitted,

*Beth A. Bauer*

Troy A. Bozarth – 06236748
Beth A. Bauer – 06274533
HEPLERBROOM LLC
130 North Main Street
Edwardsville, IL   62025
(618) 656-0184

Bart W. Huffman
LOCKE LORD LLP
100 Congress Avenue, Suite 300
Austin, TX 78701
(512) 305-4700
*pro hac vice admission  pending*

Hugh S. Balsam
LOCKE LORD LLP
111 South Wacker Drive
Chicago, IL 60606
(312) 443-0403

## **Certificate of Service**

The undersigned hereby certifies that a true and accurate copy of the foregoing document was forwarded to the following parties to the supervisory order proceeding below on this _22_day of May, 2012, by hand-delivery:

Kevin T. Hoerner
Becker, Paulson, Hoerner & Thompson, P.C.
5111 W. Main Street
Belleville, IL  62226

Paul Duffy
Prenda Law, Inc.
161 N. Clark Street, Suite 3200
Chicago, IL 60601

Hon. Robert P. LeChien
St. Clair County Circuit Court
#10 Public Square
Belleville, IL 62220

The undersigned hereby certifies also that a true and accurate copy of the foregoing document was forwarded to all other subscribers below on this _22_ day of May, 2012, by enclosing same in an envelope addressed to said attorneys, with proper postage fully prepaid, and depositing same in the United States mail at Edwardsville, Illinois:

Andrew G. Toennies
Lashly & Baer, P.C.
20 East Main Street
Belleville, IL  62220

Celestine Dotson
300 N. Tucker Blvd.
Suite 300
St. Louis, MO  63101

John D. Seiver
Leslie G. Moylan
1919 Pennsylvania Ave., N.W.
Suite 800
Washington, DC  20006

Andrew J. Rankin
1939 Delmar
P. O. Box 735
Granite City, IL  62040

Wayne E. Bradburn, Jr.
Masorti & Donaldson, P.C.
302 S. Burrows St.
State College, PA 16801

M. Ann Hatch
Brian M. Wacker
John G. Beseau
Herzog Crebs LLP
100 N. Broadway, 14th Floor
St. Louis, MO 63102

Mark A. Pogue
Erika J. Lindberg
Edwards Wildman Palmer LLP
2800 Financial Plaza
Providence, RI 02903

39

Karen E. Scanlan
Puryear Law P.C.
3719 Bridge Ave. #6
Davenport, IA 52807

Charles L. Joley
Laura K. Beasley
Joley, Nussbaumer, Oliver, Dickerson
 & Beasley, P.C.
8 East Washington Street
Belleville, IL 62220

Don Cary Collins
126 West Main Street
Belleville, IL 62220

Michael D. Carter
Horwitz, Horwitz & Associates
25 E. Washington, Suite 900
Chicago, IL 60602

Lauren A. Heischmidt
Blake Law Group, P.C.
521 West Main Street, Ste. 100
Belleville, IL 62220

Yasha Heidari
Heidari Power Law Group, LLC
P.O. Box 79217
Atlanta, GA 30357

Patrick Lavelle, Esq.
25 East Park Ave., Ste. 2
DuBois, PA 15801

Josh Doe
Jane Doe
c/o 180 Grand Ave. Ste. 700
Oakland, CA 94612

Jake Doe
c/o 180 Grand Ave., Ste. 700
Oakland, CA 94612

Jason Doe
c/o 180 Grand Ave., Ste. 700
Oakland, CA 94612

# APPENDIX

# INDEX TO APPENDIX

Order Granting Plaintiff's Motion for Leave to Take Early Discovery                  A1 – A3
Pursuant to Supreme Court Rule 201(d), entered December 16, 2011

Order denying all pending motions to quash and ordering compliance                  A4 – A5
with the plaintiff's outstanding subpoenas, entered April 12, 2012

Order directing plaintiff to submit draft of letter or other                        A6
communication of content to an ISP subscriber to the Court for *in
camera* review by April 27, 2012, entered April 16, 2012

Order directing Lightspeed Media Corporation to halt mailing demand                 A7
letters, entered April 27, 2012

Order withdrawing the Court's Order of April 27, 2012 halting the                   A8
mailing of contact letters to disclosed IP users, entered May 11, 2012

Amended Order denying the ISPs Motion for Finding of "Friendly"                     A9 – A13
Contempt and denying the Motion to Stay, entered May 21, 2012

Index to the Supporting Record                                                      A14 – A20

IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
ST. CLAIR COUNTY, ILLINOIS
LAW DIVISION

| | | |
|---|---|---|
| LIGHTSPEED MEDIA CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | No.    L |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN DOE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**FILED
ST. CLAIR COUNTY
DEC 1 6 2011**

**[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO TAKE EARLY DISCOVERY PURSUANT TO SUPREME COURT RULE 201(d)**

The Court has reviewed the Complaint with attached Exhibits, Plaintiff's Motion for Leave to Take Early Discovery, the Memorandum of Law filed in support thereof, and relevant case law. Accordingly, it is hereby

ORDERED AND ADJUDGED as follows:

1.   Plaintiff's Motion for Leave to Take Early Discovery.

2.   Plaintiff may immediately serve each of the Internet Service Providers ("ISPs") listed in Exhibits A and B to the Complaint with a subpoena commanding each ISP to provide Plaintiff with the true name, address, telephone number, email address, Media Access Control ("MAC") address, and any other form of contact information that may be used to identify John Doe and each of his co-conspirators to whom the ISP assigned an Internet Protocol ("IP") address as set forth on Exhibits A and B to the Complaint.

3.   Plaintiff may also serve a subpoena in the same manner as above on any ISP that is identified in response to a subpoena as a provider of internet services to one John Doe or his co-conspirators.

A1

4.      Each of the ISPs that qualifies as a "cable operator," as defined by 47 U.S.C. § 522(5), which states:

the term "cable operator" means any person or group of persons:

(A) who provides cable service over a cable system and directly or through one or more affiliates owns a significant interest in such cable system, or

(B) who otherwise controls or is responsible for, through any arrangement, the management and operation of such a cable system[,]

shall comply with 47 U.S.C. § 551(c)(2)(B), which states:

A cable operator may disclose such [personal identifying] information if the disclosure is . . . made pursuant to a court order authorizing such disclosure, if the subscriber is notified of such order by the person to whom the order is directed[,]

by sending a copy of this Order to the Internet subscribers of whom identifying information is sought. Each ISP will have thirty (30) days from the date a copy of this Order and a copy of the subpoena are served to respond, so that it may have sufficient time to provide this notice to the subscribers.

5.      Subscribers shall have thirty (30) days from the date of notice of the subpoena upon them to file any motions in this Court to contest the subpoena. If the thirty-day period lapses without a contest, the ISPs will have ten (10) day thereafter to produce the information in response to the subpoena to Plaintiff.

6.      The subpoenaed ISPs shall not require Plaintiff to pay a fee in advance of providing the subpoenaed information; nor shall the subpoenaed ISPs require Plaintiff to pay a fee for an IP address that is not controlled by such ISP, or for duplicate IP addresses that resolve to the same individual, or for an IP address that does not provide the name of a unique individual or for the ISP's internal cost to notify its customers. If necessary, the Court shall resolve any

disputes between the ISPs and Plaintiff regarding the reasonableness of the amount proposed to be charged by the ISP after the subpoenaed information is provided to Plaintiff.

7.     Plaintiff may only use the information disclosed in response to a subpoena served on an ISP for the purpose of protecting and enforcing Plaintiff's rights as set forth in its Complaint.

DONE AND ORDERED in Chambers at St. Clair County, Illinois this _16ᵗ_ day of _December_____, 2011.

_____

CIRCUIT COURT JUDGE

A3

# IN THE CIRCUIT COUNTY
# TWENTIETH JUDICIAL CIRCUIT
# ST CLAIR COUNTY, ILLINOIS

```
                    FILED
                ST. CLAIR COUNTY
                 APR 1 2 2012
            27        Natalie A. Orton
                    CIRCUIT CLERK
```

**Lightspeed Media Corporation**   )
    Plaintiff   )
    )
    )    CASE NO.   **11 L 683**
VS.   )
    )
**John Doe**   )
    Defendant   )

# ORDER

Case called for hearing on pending motions to quash subpoenas: parties present through counsel, arguments heard
IT IS THEREFORE ORDERED:

1)    All pending motions to quash subpoenas filed by the ISPs are Denied.

2)    All ISPs shall comply with plaintiff's outstanding subpoenas (consistent with the court's order entered 12/16/11) as follows: ISPs shall issue any required statutory notice of this order to their subscribers and shall produce all client subscriber identifying information (including but not limited to name and address) on or before 6/12/12. (By agreement of plaintiff and Comcast, Comcast to produce 80% of its compliance on or before said date with final compliance to be completed by 6/26/12.)

3)    The ISPs shall provide the following notice in substantially the following form to their subscribers:

"we have been ordered to provide your identifying information to Prenda Law pursuant to a court order dated April 12, 2012 in the case Lightspeed Media Corp. vs. John Doe, case number 11-L-683 in St. Clair County, Illinois.  The court has ordered that any motions filed relating to this order will be heard on July 20, 2012 at 10:00am.  No other dates will be set to hear any motions relating to compliance with outstanding subpoenas.  All Non-Attorneys are prohibited from directly contacting the court in any manner other than in writing."

RECEIVED APR 1 2 2012

4) In the event one or more ISP subscribers file a motion of any kind relating to the release of their private information, that ISP shall delay production with respect to the moving subscribers only and shall not delay the release of the information of any other subscribers.

5) All pleadings objecting to the release of information must list the IP address associated with the person objecting.  The ISP that has the subscribers information shall preserve all information until the court rules on the objecting motion.

So Ordered:

_____

Hon. Robert P. LeChien

IN THE CIRCUIT COURT
TWENTIETH JUDICIAL CIRCUIT
ST. CLAIR COUNTY, ILLINOIS

LIGHTSPEED MEDIA CORPORATIO )
    Plaintiff, )
     )
vs. )        11-L-683
     )
JOHN DOE )
    Defedandt. )

```
FILED
ST. CLAIR COUNTY
APR 1 6 2012
Katulah a. Dien
CIRCUIT CLERK
27
```

ORDER

    Pursuant to its powers to supervise discovery, there is a substantial risk that contact with the ISP subscriber will create a boisterous percussion. Plaintiff is to make not contact with any ISP subscriber until the Court has approved that communication(written/electronic/telephonic). Plaintiff to prepare proposed contact letter for subscribers and submit it to the Court for approval. In addition, contact with subscriber shall begin with the base of the pyramid, i.e. the ISP subscriber that breached Plaintiff's website and pirated content the most times then the penultimate pirate, and so on to the least frequent.

    Plaintiff to submit draft of the letter or other communication of content to an ISP subscriber to Court for *in camera* review by April 27, 2012.

SO ORDERED.

¬c.c.   All Counsel of Record

_Robert P. LeChien_
_____

Honorable Robert P. LeChien,  Circuit Judge

RECEIVED APR 1 6 2012

A6

IN THE CIRCUIT COURT
OF THE TWENTIETH JUDICIAL CIRCUIT
ST. CLAIR COUNTY, ILLINOIS

FILED
ST. CLAIR COUNTY

APR 2 7 2012

CIRCUIT CLERK

LIGHTSPEED MEDIA CORPORATION      )
                                  )
          Plaintiff,              )
                                  )
          v.                      )        11-L-683
                                  )
JOHN DOE, *et. al.*               )
                                  )
          Defendant(s).           )

ORDER

Pursuant to the Court's authority to supervise discovery of John Doe Defendants (Doe), after review of certain Doe submissions to the Court it is hereby ordered that LIGHTSPEED MEDIA CORPORATION (Lightspeed) halt mailing demand letters to named subscribers of disclosed IP addresses until further order of Court.

April 27, 2012

c.c.   Kevin Hoerner
       Troy Bozarth
       Andrew Toennies

_____
*Robert P. LeChien, Circuit Judge*

IN THE CIRCUIT COURT
OF THE TWENTIETH JUDICIAL CIRCUIT
ST. CLAIR COUNTY, ILLINOIS


LIGHTSPEED MEDIA CORPORATION )
)
Plaintiff, )
)
v. )        11-L-683
)
JOHN DOE, *et. al.* )
)
Defendant(s). )

FILED
ST. CLAIR COUNTY

MAY 1 1 2012

CIRCUIT CLERK

ORDER


On the basis of the Court's review of the revised contact letter proposed by

LIGHTSPEED MEDIA CORPORATION (Lightspeed) to be addressed to subscribers of

complying ISP providers, the Court hereby withdraws its order of April 27, 2012

that halted mailing contact letters to disclosed IP users.


May 11, 2012

c.c.    Kevin Hoerner
Troy Bozarth
Andrew Toennies

_____
**Robert P. LeChien, Circuit Judge**

IN THE CIRCUIT COURT
TWENTIETH JUDICIAL CIRCUIT
ST. CLAIR COUNTY, ILLINOIS

FILED
ST. CLAIR COUNTY

MAY 2 1 2012

*Iscbabel a. Diso*
CIRCUIT CLERK

LIGHTSPEED MEDIA CORPORATION,     )
                                  )
         Plaintiff,               )
                                  )
vs.                               )     No.: 11-L-683
                                  )
JOHN DOE,                         )
                                  )
         Defendant.               )

## AMENDED ORDER [1]

The Plaintiff wants to identify people it can name as defendants replacing the protean seat-filler "John Doe." Lightspeed runs a pornographic website that has more content pirated than is downloaded by paying customers. Lightspeed conducted an internal investigation that selected a very large number of computers that were claimed to have gained illegal access to Lightspeed's proprietary web content. Lightspeed attaches over 6,500 IP addresses to the Complaint and claims to be able to demonstrate that these individuals represent spokes on a wheel of a conspiracy. Lightspeed claims to have captured a St. Clair County IP address as that of the key conspiracy hub cracker through implementation of geolocation technology.  Lightspeed claims that the hub cracker used password cracking software to obtain a valid password to its website and that the hub conspirator then shared password(s) with co-conspirators in the hacking community. The "hacking community" trade illegally obtained password(s) back and forth suggesting that spoke conspirators are connected by rim participants. The plot was designed to steal and share Lightspeed's nasty pictures.

---

[1]  Today's Order amends and supersedes the Order that was emailed to the parties on May 18, 2012.

1

Lightspeed claims that it cannot name or obtain contact information on any of the offending ISP account subscribers but assumes that the owner of the account is the person operating the computer at the times its website was breached. Lightspeed depends on its own software program with the sportive appellation "T.H.I.E.F. 2.0" to pinpoint the members of this conspiracy out of the universe of pirates listed in its many fronts of we fight piracy/privacy wars.

On December 16, 2011, Lightspeed filed an *ex parte* Motion for leave to take early discovery of non-party ISPs to obtain the identities and contact information of the IP addressees its software selected as pirating porno picture products. The Circuit Court found good cause for the Motion and the early discovery was allowed as provided for in Illinois Supreme Court Rule (ISCR) 201(d).

The order allowing early discovery permitted Lightspeed to serve subpoenas for the limited purpose of obtaining the identities and contact information of certain subscribers of the ISPs. Among the ISPs served with subpoena are Movants' Embarq Communications, Inc.; Verizon Online LLC; AT&T Internet Services; BellSouth.net; Cellco Partnership d/b/a Verizon Wireless; Centurytel Internet Holdings Inc.; Cox Communications, Inc.; Qwest Communications Company LLC; and Wayport, Inc. (collectively, the "ISPs"). On March 20, 2012, the ISPs filed a Motion to Quash and/or Motion for Protective Order.

In support its position, Counsel for the ISPs are fond of repeating that Lightspeed's attorneys are bullies only interested in identifying innocent internet spectators in order to arm twist tribute from them for their alleged trespass of Lightspeed's adult media playground.  The argument presumes that the chaste will be roused to pay Plaintiff hush money out of fear of being publicly exposed and associated with lurid sexual hedonism.

2

Lightspeed remonstrates ISPs' counsel for hedging its position by volunteering legal challenges that are individual to their customers, whom they do not represent and are not properly before the court. Lightspeed contends that the subpoenas are limited to producing the identities and contact information of thieving IP subscribers and as such are intended to obtain evidence that is likely relevant to the proof of issues raised in the Complaint. Lightspeed correctly points out that the Court must take the allegations of the Complaint as true for the purpose of the ISPs' Motions. Lightspeed is not presently concerned about the festering problem when all kinds of real people recoil from Lightspeed's discovery request. This group of all kinds of real people may have very strong opinions that the discovery creates an unreasonably annoying, expensive, embarrassing or oppressive burden on them.

The ISPs urge the Court to take charge of Lightspeed's tactics, ignore the requirement that the Court treat the allegations of the Complaint as true and proactively prohibit the large scale identification of Johns Doe because Plaintiff has not demonstrated the merits of potential joinder of and venue over of such wild numbers of potential defendants.  Unlike some of our Federal Districts Courts (*MCGIP, LLC v. Does* 1-149, 2011 WL 3607666, at pp. 3-4; *Diabolic Video Prods., Inc.,* No. 10-CV-5865-PSG, 2011 WL 3100404, at pp. 4-5 (N.D. Cal. May 31, 2011), but like others (*Camelot Distribution Group v. Does* **1 through 1210, Dist. Court, ED California 2011;** *On The Cheap, LLC v. Does* **1-5011, __ F. Supp. 2d __, No. C10-4472 BZ, 2011 WL 4018258, at p.1 (N.D. Cal. Sept. 6, 2011)**, this Court declines to the invitation to act as SuperJudge like those that deny discovery on the basis of improper joinder or bad venue before any party is named and served as a defendant and appears to properly raise the issues. On April 12, 2012, the

3

A11

motions to quash and/or for a protective order were denied in total. The ISPs were ordered to produce identifying information of certain of their subscribers by June 12, 2012.

Since the Order was entered, no new evidence has been presented to warrant granting ISPs' Motion to Quash. The Court's decision is clearly within boundaries mandated by the ISCR and its decision(s) regulating discovery in a difficult case was and is now not an abuse of discretion.

The ISPs request a finding of friendly contempt based on their contemplated refusal to comply with the Court's April 12th order requiring the ISPs to identify and provide contact information for the selected IP addressees. The ISPs take the position that they have good cause and have acted in good faith and, therefore, qualify for immediate appellate review of this Court's ruling.

Lightspeed objects and demands that the ISPs comply with the Order. Lightspeed's objection to proceeding as requested is grounded on its complaint that it is a victim of an on-going crime and that there is nothing "friendly" about the ISPs' refusal to honor its righteous subpoenas intended to expose internet crackers, pirates and thieves boldly plundering their media product. Plaintiff insists that the ISPs have not sustained their burden of showing good faith when there is no good cause to challenge the Court's April 12th order seeking immediate review. The Court agrees.

The ISPs respectfully ask the Court to stay Circuit Court proceedings and allow the Appellate Court to decide the case. The Court cannot do what is asked. While it may be easy for me to kick the problem to the court of review, the yellow-bellied avoidance of controversy is antithetical to the role of trial courts, i.e. to resolve controversies in a timely fashion. Based on the record presented, the Court finds that there is no good cause or good faith reason to allow a friendly contempt that would trigger an immediate appeal.

4

The Court acknowledges that the ISPs are still within the timeframe allowed for compliance with outstanding subpoenas as set forth in this Court's Order entered on April 12, 2012 and that counsel for the ISPs has represented that the ISPs will have done the identification work required of it by the time required.

In summary, the ISPs Motion for Finding of Friendly Contempt is denied because the record establishes that the limited scope of the commands of the subpoenas are for the purpose to obtain relevant evidence and are not unreasonable or oppressive. In addition, the ISPs have failed to demonstrate good faith or good cause for a finding of friendly contempt. The ISPs Motion to Stay is denied in light of the Court's rulings above.


May 21, 2012

c.c.      all counsel


_____
Robert P. LeChien, Circuit Judge


5

## INDEX TO SUPPORTING RECORD

| | |
|---|---|
| Complaint, filed December 14, 2011 | C1 – C92 |
| Certificate of Disclosure, filed December 14, 2011 | C93 |
| Declaration of Steve Jones, filed December 14, 2011 | C94 – C97 |
| Motion for Leave to Take Early Discovery Pursuant to Illinois Supreme Court Rule 201(d) and Memorandum of Law in Support, filed December 16, 2011 | C98 – C106 |
| Order Granting Plaintiff's Motion for Leave to Take Early Discovery Pursuant to Supreme Court Rule 201(d), entered December 16, 2011 | C107 – 109 |
| John Doe's Motion to Quash Subpoena, filed January 27, 2012 | C110 – C111 |
| Order directing issuance of subpoena on Cox Communications, Inc., entered February 10, 2012 | C112 |
| Plaintiff's Response to "John Doe's" Motion to Quash Subpoena, filed February 17, 2012 | C113 – C121 |
| Order denying John Doe's Motion to Quash, entered February 23, 2012 | C122 |
| Motion for Additional Time to Respond or Otherwise Object to Subpoena for Deposition, filed March 2, 2012 | C123 – 129 |
| Order granting Motion for Additional Time to Object to Plaintiff's Subpoena for Deposition, entered March 2, 2012 | C130 |
| Plaintiff's Opposition to Third-Party Comcast Cable Holdings LLC's Motion for Additional Time to Respond or Otherwise Object to Subpoena for Deposition, filed March 2, 2012 | C131 – 134 |
| AT&T Internet Services, BellSouth.net, Cellco Partnership d/b/a Verizon Wireless, Centurytel Internet Holdings Inc., Cox Communications, Inc., Embarq Communications, Inc., Qwest Communications Company, LLC, Verizon Online LLC and Wayport, Inc.'s Motion for Additional Time to Move to Quash and/or Move for a Protective Order with Respect to Subpoenas, filed March 5, 2012 | C135 – C142 |

| | |
|---|---|
| Order granting Motion for Withdrawal and Substitution of Counsel entered March 6, 2012 | C143 |
| Order granting AT&T Internet Services, BellSouth.net, Cellco Partnership d/b/a Verizon Wireless, Centurytel Internet Holdings Inc., Cox Communications, Inc., Embarq Communications, Inc., Qwest Communications Company, LLC, Verizon Online LLC and Wayport, Inc.'s Motion for Additional Time, entered March 6, 2012 | C144 |
| Entry of Appearance and Jury Demand for alleged user of IP address 173.30.177.50, filed March 9, 2012 | C145 |
| Motion for Extension of Time for alleged user of IP address 173.30.177.50, filed March 9, 2012 | C146 – C151 |
| Non-Party Comcast Cable Communications, LLC's Motion to Quash Subpoena and Vacate Order Granting Plaintiff's Motion for Leave to Take Early Discovery, filed March 19, 2012 | C152 – C156 |
| Non-Party Comcast Cable Communications, LLC's Memorandum in Support of its Motion to Quash Subpoena and Vacate Order Granting Plaintiff's Motion for Leave to Take Early Discovery, filed March 19, 2012 | C157 – C188 |
| AT&T Internet Services, BellSouth.net, Cellco Partnership d/b/a Verizon Wireless, Centurytel Internet Holdings Inc., Cox Communications, Inc., Embarq Communications, Inc., Qwest Communications Company, LLC, Verizon Online LLC and Wayport, Inc.'s Motion to Quash and for Protective Order, filed March 20, 2012 | C189 – C191 |
| AT&T Internet Services, BellSouth.net, Cellco Partnership d/b/a Verizon Wireless, Centurytel Internet Holdings Inc., Cox Communications, Inc., Embarq Communications, Inc., Qwest Communications Company, LLC, Verizon Online LLC and Wayport, Inc.'s Memorandum in Support of Motion to Quash and for Protective Order, filed March 20, 2012 | C192 – C312 |
| AT&T Internet Services, BellSouth.net, Cellco Partnership d/b/a Verizon Wireless, Centurytel Internet Holdings Inc., Cox Communications, Inc., Embarq Communications, Inc., Qwest Communications Company, LLC, Verizon Online LLC and Wayport, Inc.'s Motion for Leave to File Memorandum in Excess of Ten (10) Pages in Support of Motion to Quash and/or Motion for Protective Order, filed March 20, 2012 | C313 – C315 |

| | |
|---|---|
| AT&T Internet Services, BellSouth.net, Cellco Partnership d/b/a Verizon Wireless, Centurytel Internet Holdings Inc., Cox Communications, Inc., Embarq Communications, Inc., Qwest Communications Company, LLC, Verizon Online LLC and Wayport, Inc.'s Motion for Additional Time to Move to Quash and/or Move for a Protective Order with Respect to Subpoenas, filed March 20, 2012 | C316 – C317 |
| Order granting AT&T Internet Services, BellSouth.net, Cellco Partnership d/b/a Verizon Wireless, Centurytel Internet Holdings Inc., Cox Communications, Inc., Embarq Communications, Inc., Qwest Communications Company, LLC, Verizon Online LLC and Wayport, Inc.'s Motion for Additional Time to Move to Quash and/or Move for a Protective Order with Respect to Subpoenas, entered March 20, 2012 | C318 |
| Order granting AT&T Internet Services, BellSouth.net, Cellco Partnership d/b/a Verizon Wireless, Centurytel Internet Holdings Inc., Cox Communications, Inc., Embarq Communications, Inc., Qwest Communications Company, LLC, Verizon Online LLC and Wayport, Inc.'s Motion for Leave to File Memornadum in Excess of Ten (10) Pages in Support of Motion to Quash and/or Motion for Protective Order, entered March 20, 2012 | C319 |
| Perry-Spencer Communications, Inc.'s Entry of Special Limited Appearance and Motion to Quash Subpoena for Deposition for Lack of Personal Jurisdiction, filed March 23, 2012 | C320 – C328 |
| Comcast Cable Communications, LLC's Motion for Leave to File Memorandum in Excess of Ten (10) Pages in Support of Motion to Quash and/or Motion for Protective Order, filed March 26, 2012 | C329 – C331 |
| Comcast Cable Communications, LLC's Motion to Continue, filed March 30, 2012 | C332 – C334 |
| Order setting all motions for April 12, 2012, entered April 2, 2012 | C335 |
| Plaintiff's Combined Opposition to Non-Parties' Motion to Quash Subpoena, filed April 9, 2012 | C336 – C344 |
| Order denying all pending motions to quash and ordering compliance with the plaintiff's outstanding subpoenas, entered April 12, 2012 | C345 – C346 |

Order directing plaintiff to submit draft of letter or other communication of content to an ISP subscriber to the Court for *in camera* review by April 27, 2012, entered April 16, 2012

C347

Objections and Motion to Quash Order to Produce/Subpoena Filed by *Pro Se* Moving John Doe, Whom is a Resident of Pennsylvania and Who Has Windstream Communications as His Internet Carrier, filed April 16, 2012

C348 - 363

Correspondence to the Clerk of the Court re submission of draft contact letter to the judge for *in camera* review, filed April 18, 2012

C364

Internet Service Providers' Motion for Finding of "Friendly" Contempt for Purposes of Immediate Appeal, filed April 25, 2012

C365 – C369

Internet Service Providers' Motion to Stay, filed April 25, 2012

C370 – C375

Motion to Order Court-Supervised Deposition of Randall L. Stephenson, filed April 26, 2012

C376 – C380

Affidavit of John Steele, filed April 26, 2012

C381 – C383

Order directing Lightspeed Media Corporation to halt mailing demand letters, entered April 27, 2012

C383.1

Court document referencing telephone call from individual who received letter and subpoena inquiring about case, filed April 27, 2012

C384

Order setting hearing on Motion to Stay and Motion for Finding of "Friendly" Contempt for May 14, 2012, entered April 30, 2012

C385

Declaration of Troy A. Bozarth, filed April 30, 2012

C386 – C388

Correspondence from Kevin T. Hoerner to the Clerk of the Court requesting all subscribers who call the Clerk's office be referred to Paul Duffy, dated May 7, 2012

C389

Motion to Quash Subpoena on Behalf of John Doe IP Address 24.118.107.24, filed May 8, 2012

C390 – C392

Motion to Quash Subpoena and Objection to Personal Jurisdiction, filed May 10, 2012

C393 – C405

Motion Quash Subpoena, filed May 10, 2012

C406 – C409

Special and Limited Appearance;  Motion to Quash Subpoena; Motion to Dismiss, filed May 10, 2012 — C410 – C415

Affidavit of Don Cary Collins, filed May 10, 2012 — C416 – C417

Correspondence to Clerk re: filing of Special and Limited Appearance;  Motion to Quash Subpoena; Motion to Dismiss and Affidavit, filed May 10, 2012 — C418

Defendant's Motion to Quash Subpoena, filed May 10, 2012 — C419 – C422

Notice of Motion and Correspondence, filed May 10, 2012 — C423 – C425

Special Appearance for the Limited Purpose of Moving to Quash Subpoena to Comcast Cable Holdings, LLC, filed May 10, 2012 — C426 – C427

Amended Motion to Quash Subpoena, filed May 11, 2012 — C428 – C432

Order of May 11, 2012 regarding *pro se* plaintiff's "Jane Doe" and "Josh Doe" — C433

Order withdrawing the Court's Order of April 27, 2012 halting the mailing of contact letters to disclosed IP users, entered May 11, 2012 — C434

Petitioner's Combined Opposition to Nonparty ISPs' Motion for Stay in Proceedings and Motion for "Friendly" Contempt Finding, filed May 11, 2012 — C435 – C443

AT&T Internet Services' Opposition to Plaintiff's Motion to Order Court-Supervised Deposition of Randall L. Stephenson, filed May 11, 2012 — C444 – C511

Proposed Order on Internet Service Providers' Motion for Finding of "Friendly" Contempt for Purposes of Immediate Appeal, submitted May 14, 2012 — C512

Proposed Order on Internet Service Providers' Motion to Stay, submitted May 14, 2012 — C513

[Proposed] Order Pursuant to Rule 308 — C514 – C515

Supplement to Motion to Quash and Finding of "Friendly" Contempt, filed May 14, 2012 — C516

Order taking motions under advisement, entered May 14, 2012 — C563

| | |
|---|---|
| Motion to Quash Subpoena filed by ISP No. 71.60.30.150, filed May 14, 2012 | C564 – C571 |
| Motion to Quash and/or Vacate Subpoena Filed by Comcast ISP Subscriber 24.91.68.2 and Memorandum in Support, filed May 14, 2012 | C572 – C573 |
| Second Amended Motion to Quash, filed May 14, 2012 | C574 – C577 |
| Non-Party John Doe (24.30.99.203)'s Motion to Strike, Quash and for a Protective Order, and Sanctions, filed May 14, 2012 | C578 – C579 |
| Non-Party John Doe (24.30.99.203)'s Motion for Leave of Court to File Brief, filed May 14, 2012 | C580 |
| Non-Party John Doe (24.30.99.203)'s Brief in Support of Motion to Strike, Quash, for a Protective Order, and Sanctions, filed May 14, 2012 | C581 – C600 |
| Supplemental Affidavit of Steve Jones in Opposition to ISPs' Motion for "Friendly" Contempt Finding and Motion to Stay, filed May 17, 2012 | C601 – C603 |
| [Plaintiff's Proposed Order A] Order, submitted to the Court on or about May 17, 2012 | C604 – C605 |
| [Plaintiff's Proposed Order B] Order, submitted to the Court on or about May 17, 2012 | C606 |
| Motion to Quash Subpoena to Comcast Cable Communications, LLC, filed by Jake Doe on or about May 16, 2012 | C607 – C641 |
| Motion to Quash Subpoena to Comcast Cable Communications, LLC, filed by Jason Doe on or about May 16, 2012 | C642 – C675 |
| Amended Motion to Quash of nonparties possessing the IP addresses 174.61.54.191, 71.63.65.224 and 67.181.85.196, filed May 18, 2012 | C676 - 679 |
| *Sua Sponte* Court Management Order #2, entered May 21, 2012 | C680 – C683 |
| Order denying the ISPs Motion for Finding of "Friendly" Contempt and denying the Motion to Stay, entered May 21, 2012 | C684 – C888 |

Report of Proceedings of April 12, 2012                    R1 – R 50

Report of Proceedings of May 14, 2012                    R51 – R109