# EXHIBIT B

No. _____

IN THE UNITED STATES COURT OF APPEALS

FOR THE DISTRICT OF COLUMBIA CIRCUIT

**AF HOLDINGS, LLC,**

*Plaintiff-Respondent,*

v.

**DOES 1 – 1,058,**

*Defendants.*

From an Order by the U.S. District Court for the District of Columbia
The Honorable Beryl A. Howell, Judge Presiding
(Case No. 1:12-cv-00048-BAH)

**PETITION OF COX COMMUNICATIONS, INC., VERIZON ONLINE, LLC, BRIGHT HOUSE NETWORKS, LLC, SBC INTERNET SERVICES, INC., D/B/A AT&T INTERNET SERVICES, AND COMCAST CABLE COMMUNICATIONS, LLC, FOR PERMISSION TO APPEAL PURSUANT TO 28 U.S.C. § 1292(B)**

**(Appendix Filed Concurrently Under Separate Cover)**

Deanne E. Maynard
MORRISON & FOERSTER LLP
2000 Pennsylvania Ave., NW
Washington, D.C. 20006-1888
Telephone: 202.887.1500
DMaynard@mofo.com

Benjamin J. Fox
MORRISON & FOERSTER LLP
555 West Fifth Street
Los Angeles, California 90013-1024
Telephone: 213.892.5200
BFox@mofo.com

Attorneys for Petitioners Bright House Networks, LLC, Cox Communications, Inc.
and Verizon Online LLC

(Additional Petitioners and Counsel Listed on Inside Page)

## *Additional Petitioners and Counsel*

Hugh S. Balsam
LOCKE LORD LLP
111 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 443-0403
Facsimile: (312) 896-6403
HBalsam@lockelord.com

Bart W. Huffman
LOCKE LORD LLP
100 Congress Avenue, Suite 300
Austin, Texas 78701
Telephone: (512) 305-4746
Facsimile: (512) 391-4741
BHuffman@lockelord.com

Attorneys for Petitioner SBC Internet Services, Inc.,
d/b/a AT&T Internet Services

John D. Seiver
Leslie G. Moylan
Lisa B. Zycherman
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Ave., N.W., Suite 800
Washington, D.C. 20006
Telephone: (202) 973-4200
johnseiver@dwt.com

Attorneys for Petitioner Comcast Cable Communications Management, LLC

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................. 1

QUESTION PRESENTED AND RELIEF SOUGHT ............................................. 3

STATEMENT OF THE CASE ................................................................. 3

    A.    Plaintiff's Mass "Doe" Defendant Lawsuit .............................. 3

    B.    Plaintiff's Ex Parte Application to Take Discovery of the Internet Service Providers ...................................... 4

    C.    The Locations of the ISPs' Targeted Subscribers ..................... 4

    D.    The ISPs' Motion and District Court's Order Denying the Motion to Quash and Certifying the Order for Appeal ............................................................... 5

REASONS FOR GRANTING PERMISSION TO APPEAL ................................. 6

I.    THIS CASE PRESENTS IMPORTANT, "CONTROLLING QUESTIONS OF LAW" THAT WILL EVADE APPELLATE REVIEW ABSENT PERMISSION TO APPEAL ............................. 6

    A.    The Order Authorizing Discovery of the ISPs Presents a Controlling Issue of Law Because Plaintiff's Pursuit of the Internet Subscribers' Data Is the *Only* Issue Typically Litigated in These Multi-Doe Defendant Actions ..................................................... 6

    B.    The Issues Presented Will Evade Appellate Review Without an Order from This Court Granting Permission to Appeal ............................................... 8

i

# TABLE OF CONTENTS
## (continued)

Page

II.   THERE ARE "SUBSTANTIAL GROUNDS FOR DIFFERENCE OF OPINION" AS TO THE RULES GOVERNING PERSONAL JURISDICTION, JOINDER, VENUE, AND PRE-RULE 26 DISCOVERY OF INTERNET SERVICE PROVIDERS ................................................... 8

    A.   The District Judges in This Circuit Are Divided as to Whether Plaintiff Must Make a Prima Facie Showing That Personal Jurisdiction Exists Over the "Doe" Defendants, and that Venue is Proper, Before Permitting Third-Party Discovery ............................................. 9

    B.   Courts Are Divided as to Whether Rules for Joinder and Venue Permit Plaintiff to Sue More Than 1,000 Defendants in a Single Action and Seek Discovery Concerning All of Them ........................................ 14

    C.   Courts Are Divided Concerning the ISPs' Rights to Complain About the Cumulative Burdens Imposed by Mass Doe Defendant Actions................................................. 17

III.  AN IMMEDIATE APPEAL "MAY MATERIALLY ADVANCE THE ULTIMATE TERMINATION OF THE LITIGATION" AND CURTAIL FORUM SHOPPING .................. 18

CONCLUSION ..................................................................... 20

CERTIFICATE OF PARTIES AND AMICI ....................................... 24

CORPORATE DISCLOSURE STATEMENTS ................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*A. P. De Sanno & Son, Inc. v. Brown,*
  313 F.2d 898 (D.C. Cir. 1963) ............................................................. 6

*AF Holdings LLC v. Does 1-96,*
  No. C-11-3335, 2011 U.S. Dist. LEXIS 109816,
  2011 WL 4502413 (N.D. Cal. Sept. 27, 2011) ................................. 13

*AF Holdings LLC v. Does 1-96,*
  No. C-11-03335, 2011 U.S. Dist. LEXIS 134655,
  2011 WL 5864174 (N.D. Cal. Nov. 22, 2011) ......................... 11, 13

*AF Holdings, LLC v. Does 1-97,*
  No. C-11-03067, 2011 U.S. Dist. LEXIS 126225,
  2011 WL 5195227 (N.D. Cal. Nov. 1, 2011) ............................. 13, 15

*AF Holdings LLC v. Does 1-135,*
  No. 11-CV-03336, 2012 U.S. Dist. LEXIS 7493
  (N.D. Cal. Jan. 19, 2012) ................................................................. 7

*Berlin Media Art v. Does 1 - 654,*
  No. C-11-03770, 2011 U.S. Dist. LEXIS 120257,
  2011 WL 36383080 (N.D. Cal. Oct. 18, 2011) ................................. 11

*Boy Racer, Inc. v. Does 1-60,*
  No. C 11-01738, 2011 U.S. Dist. LEXIS 92994
  (N.D. Cal. Aug. 19, 2011) ............................................................... 17

*Burger King Corp. v. Rudzewicz,*
  471 U.S. 462 (1985) ........................................................................ 10

*Call of the Wild Movie, LLC v. Does 1-1,062,*
  770 F. Supp. 2d 332 (D.D.C. 2011) ................................. 2, 13, 14, 16

*Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC,*
  148 F.3d 1080 (D.C. Cir. 1998) ....................................................... 10

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Cobbledick v. United States*,
309 U.S. 323 (1940) .................................................................... 8

*DigiProtect USA Corp. v. Does 1-240*,
No. 10 Civ. 8760, 2011 U.S. Dist. LEXIS 109464,
2011 WL 4444666 (S.D.N.Y. Sept. 26, 2011)............................. 10, 15

*Digital Sin, Inc. v. Does 1-5698*,
No. C 11-04397, 2011 U.S. Dist. LEXIS 128033
(N.D. Cal. Nov. 4, 2011) ............................................................ 17

*Donkeyball Movie, LLC v. Does 1-171*,
810 F. Supp. 2d 20 (D.D.C. 2011) ............................................ 13, 15

*Exponential Biotherapies, Inc. v. Houthoff Buruma N. V.*,
638 F. Supp. 2d 1 (D.D.C. 2009) .............................................. 10, 12

*Exquisite Multimedia, Inc. v. Does 1-21*,
No. 1:11-cv-2298-ABJ (D.D.C. Jan. 5, 2012) ........................... 9

*Grant v. Chevron Phillips Chem. Co. L.P.*,
309 F.3d 864 (5th Cir. 2002) .................................................... 8

*Gillespie v. Civiletti*,
629 F.2d 637 (9th Cir. 1980)...................................................... 12

*Groover, Christie & Merritt v. Lobianco*,
336 F.2d 969 (D.C. Cir. 1964) .................................................. 6

*Hard Drive Prods. v. Does 1-30*,
No. 2:11-CV 345, 2011 U.S. Dist. LEXIS 119333,
2011 WL 4915531 (E.D. Va. Oct. 17, 2011)............................... 11, 19

*Hard Drive Prods. v. Does 1-130*,
No. C-11-3826, 2011 U.S. Dist. LEXIS 132449
(N.D. Cal. Nov. 16, 2011) .......................................................... 17, 19

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Hard Drive Prods. v. Does 1-188,*
   809 F. Supp. 2d 1150 (N.D. Cal. 2011) .......................................................... 11

*In re Baker & Getty Fin. Servs.,*
   954 F.2d 1169 (6th Cir. 1992).......................................................................... 6

*In re BitTorrent Adult Film Copyright Infringement Cases,*
   No. 11-3995, 2012 U.S. Dist. LEXIS 61447
   (E.D.N.Y. May 1, 2012) ............................................................................ 11, 16

*In re Cement Antitrust Litig.,*
   673 F.2d 1020 (9th Cir. 1982)) ........................................................................ 6

*In re Micron Tech., Inc. Sec. Litig.,*
   264 F.R.D. 7 (D.D.C. 2010) ........................................................................... 18

*In re Sealed Case,*
   827 F.2d 776 (D.C. Cir. 1987) ......................................................................... 8

*K-Beech, Inc. v. Does 1-85,*
   No. 3:11-cv-469, 2011 U.S. Dist. LEXIS 124581
   (E.D. Va. Oct. 5, 2011) .................................................................................. 15

*K-Beech, Inc. v. Does 1-41,*
   No. V-11-46, 2012 U.S. Dist. LEXIS 31803
   (S.D. Tex. Mar. 8, 2012) ............................................................................... 16

*Liberty Media Holdings, LLC v. BitTorrent Swarm,*
   277 F.R.D. 672 (S.D. Fla. 2011) ................................................................... 15

*Lightspeed v. Does 1-1,000,*
   2011 U.S. Dist. LEXIS 35392 (N.D. Ill. Mar. 31, 2011) .............................. 16

*Marquis v. Federal Deposit Ins. Corp.,*
   965 F.2d 1148 (1st Cir. 1992)......................................................................... 8

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*McGIP, LLC v. Does 1-149,*
    No. C-11-02331, 2011 U.S. Dist. LEXIS 108109,
    2011 WL 4352110 (N.D. Cal. Sept. 16, 2011) .............................................. 7, 16

*Mick Haig Prods. v. Does,*
    No. 11-10997, 2012 U.S. App. LEXIS 14263
    (5th Cir. July 12, 2012) ....................................................................................... 8

*Millenium TGA v. Doe,*
    No. 10-C-5603, 2011 U.S. Dist. LEXIS 110135
    (N.D. Ill. Sept. 26, 2011) ................................................................................... 11

*Millennium TGA, Inc. v. Comcast Cable Commun. LLC,*
    No. 12-mc-00150, 2012 U.S. Dist. LEXIS 88369
    (D.D.C. June 25, 2012) ........................................................... 7, 9, 14, 17, 20

*New Sensations, Inc. v. Does 1-1,474,*
    No. C-11-2770, 2011 U.S. Dist. LEXIS 140670
    (N.D. Cal. Dec. 7, 2011) .................................................................................. 11

*Northwestern Mem'l Hosp. v. Ashcroft,*
    362 F.3d 923 (7th Cir. 2004) ........................................................................... 17

*Nu-Image, Inc. v. Does 1-23,322,*
    799 F. Supp. 2d 34 (D.D.C. 2011) ......................................................... 2, 5, 9, 10

*On the Cheap, LLC v. Does 1-5011,*
    280 F.R.D. 500 (N.D. Cal. 2011) ..................................................................... 15

*Oppenheimer Fund, Inc. v. Sanders,*
    437 U.S. 340 (1978) ................................................................................... 11, 17

*Patrick Collins, Inc. v. Does,*
    No. C 11-2766, 2011 U.S. Dist. LEXIS 140913
    (N.D. Cal. Dec. 7, 2011) .................................................................................. 11

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Patrick Collins, Inc. v. Does 1-10,*
No. JFM 8:12-cv-00094, 2012 U.S. Dist. LEXIS 47689
(D. Md. Apr. 4, 2012) ............................................................................... 16

*Patrick Collins, Inc. v. Does 1-23,*
No. 11-cv-15231, 2012 U.S. Dist. LEXIS 40536
(E.D. Mich. Mar. 26, 2012) ...................................................................... 16

*Patrick Collins, Inc. v. Does 1-58,*
No. 3:11-cv-531, 2011 U.S. Dist. LEXIS 120235
(E.D. Va. Oct. 5, 2011) ............................................................................. 13

*Penguin Group (USA), Inc. v. Am. Buddha,*
640 F.3d 497 (2d Cir. 2011) ........................................................................ 9

*Raw Films, Inc. v. Does 1-32,*
No. 1:11-cv-2939, 2011 WL 6840590 (N.D. Ga. Dec. 29, 2011) .................... 15

*SBO Pictures, Inc. v. Does 1-87,*
No. Civ. A 11-1962, 2012 U.S. Dist. LEXIS 6968,
2012 WL 177865 (D.D.C. Jan. 19, 2012) ................................................. 9, 14

*Third Degree Films, Inc. v. Does 1-131,*
280 F.R.D. 493 (D. Ariz. 2012) ................................................................. 16

*West Coast Prods. v. Does 1,1911,*
No. 1:11-cv-01687-ABJ (D.D.C. Oct. 25, 2011) ........................................... 9

*W. Coast Prods. v. Does 1-1,434,*
No. 11-55, 2012 U.S. Dist. LEXIS 110847
(D.D.C. Aug. 6, 2012) ........................................................................... 9, 17

*W. Coast Prods. v. Does 1-5,829,*
275 F.R.D. 9 (D.D.C. 2011) ...................................................................... 13

## TABLE OF AUTHORITIES
### (continued)

Page(s)

**STATUTES**

28 U.S.C. § 1292(b) ............................................................... 2, 3, 6, 8, 18

D.C. Code § 13-423 ....................................................................... 10

Fed. R. Civ. P. 20 ..................................................................... 14, 17

Fed. R. Civ. P. 26 ..................................................................... 8, 9, 12

Fed. R. Civ. P. 45 ........................................................................ 17

## INTRODUCTION

A stark split of authority has arisen within the district courts of this Circuit concerning the propriety of using civil subpoena power for general investigative purposes, i.e., to obtain and enforce subpoenas at the outset of mass "John Doe" suits—lawsuits that invariably do not reach a final judgment on the merits and hence evade appellate review.  Interlocutory review is needed to resolve the intra-district conflict, which is resulting in "judge shopping" and threatens to make the district a destination venue for mass copyright infringement actions.

This case is one among many hundreds of recently filed actions that seek information from Internet Service Providers ("ISPs") about the ISPs' subscribers.  The cases typically involve sexually explicit digital content, target several to several thousand "Does" per action and follow a common arc:  Plaintiffs apply for leave to serve subpoenas on the ISPs, obtain the ISPs' customers' information, and then settle or abandon all claims.  The result is a recurring exercise in which the ISPs are required to respond to subpoenas seeking information about subscribers located throughout the country, for cases that never reach the merits.

District courts are increasingly critical of the burdens these multi-Doe defendant cases are placing on the judicial system and the ISPs, with an increasing number of courts denying leave to conduct discovery of the ISPs, reconsidering earlier ex parte grants of permission to take discovery, or dismissing the actions

1

outright.  Among the district judges within this Circuit, a series of decisions by Judges Wilkins and Jackson and Magistrate Judge Facciola have rejected plaintiffs' efforts to obtain the personal information for hundreds or thousands of "Does" in a single action.  *See, e.g., Nu-Image, Inc. v. Does 1-23,322*, 799 F. Supp. 2d 34, 37-41 (D.D.C. 2011).  Decisions by Judges Howell and Kollar-Kotelly, by contrast, like the Order at issue, have declined to reach the threshold issues of personal jurisdiction, venue, and joinder of thousands of Does, and have permitted plaintiffs to obtain unfettered access to the ISPs' subscribers' information.  *E.g., Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 2d 332 (D.D.C. 2011).

The practical effect of this intra-district split is that the outcome of any particular suit is driven entirely by random judicial draw.  And the record shows that Plaintiff's counsel, who has filed more than 180 multi-Doe lawsuits, is keenly aware of this split and has engaged in "judge shopping" (e.g., by dismissing a case voluntarily soon after assignment to Judge Wilkins and then promptly re-filing it in another court).  The lack of uniformity of decision and the waves of multi-Doe cases flooding the courts present compelling reasons for appellate review.

As this petition explains, all criteria for appeal pursuant to 28 U.S.C. § 1292(b) are satisfied.  This petition presents a "controlling question of law" because the *only* issue typically litigated in these cases is whether discovery should be permitted of the ISPs.  "Substantial ground for difference of opinion" exists, as

the district court's Order acknowledges.  (Order at 40-41, attached hereto.)  And, resolution of the issues presented through an immediate appeal will "materially advance the ultimate termination of the litigation" because these cases rise or fall based on the courts' preliminary assessment of personal jurisdiction and joinder of the Does, and the related discovery rulings affecting the ISPs.

No circuit court has addressed the issues presented.  The split of authority among the district judges in this Circuit—and the Order's departure from a growing consensus among other courts—creates an untenable situation with no clear path to resolution absent discretionary review by this Court.  The ISPs respectfully request that the Court grant permission to appeal.

## QUESTION PRESENTED AND RELIEF SOUGHT

Should the Court grant the ISPs permission to appeal pursuant to 28 U.S.C. § 1292(b) and ultimately reverse the district court's order permitting AF Holdings to obtain the ISPs' subscribers' personally identifiable information?  ("Yes.")

## STATEMENT OF THE CASE

### A.     Plaintiff's Mass "Doe" Defendant Lawsuit.

Plaintiff AF Holdings is a limited liability company formed in the island of Nevis in the Caribbean Sea.  (Appendix ["App."] at 4, ¶ 9.)  It has alleged claims for copyright infringement against 1,058 "Doe" defendants for purportedly obtaining or sharing excerpts of a sexually explicit film entitled "Popular

Demand." (App. 1.)  Plaintiff acquired rights to the film through assignment from a California company.  (App. 32.)  Plaintiff does not allege any presence in, or tie to, the District of Columbia.  (*See* App. 1-7.)

The 1,058 Defendants are identified only by a list of Internet Protocol ("IP") addresses and their corresponding Internet Service Providers.  Plaintiff asserts that the Does used BitTorrent file-sharing software to download or upload excerpts of Plaintiff's film at different times over a four-month period.  (App. 4, 9-31.)

**B.      Plaintiff's Ex Parte Application to Take Discovery of the ISPs.**

On January 18, 2012, Plaintiff filed a motion seeking leave to serve subpoenas on the ISPs, ostensibly to "determine the true identities of the Doe defendants ...." (App. 35.)  On January 30, without receiving or requesting any opposition or setting a hearing, the court granted Plaintiff's motion.  (App. 58.)

**C.      The Locations of the ISPs' Targeted Subscribers.**

Contrary to the complaint's unsupported allegation that "each Defendant may be found in this District" (App. 3), Petitioners' targeted subscribers are residents of more than 20 states, with substantial concentrations in the Western and Southern United States.  (App. 64, 72, 78, 84.)  Three Petitioners (Cox, AT&T, and Bright House) do not even provide residential Internet service in the District of Columbia and, thus, have no subscribers here.  (App. 64, 72, 78.)

The discovery authorized in this litigation also targets ISPs that provide only regional (or local) Internet access in areas far outside the district: *e.g.*, Alaska Communications Systems Group; Baja Broadband; Bel Air Internet; Bend Cable Communications; Buckeye Cablevision; Cincinnati Bell Telephone; Great Lakes Comnet; Guadalupe Valley Telephone Corp.; Hawaiian Telecom Services Co.; Missouri Network Alliance; Panhandle Telecommunications; Roseville Telephone Company; and SureWest Kansas Operations.  (App. 9-31.)

### D.   The ISPs' Motion and District Court's Order Denying the Motion to Quash and Certifying the Order for Appeal.

AT&T, Bright House, Cox and Verizon filed a joint motion to quash the subpoenas issued to them, and Plaintiff filed a motion to compel against Comcast. The ACLU and the Electronic Frontier Foundation filed an amicus brief supporting the ISPs.  (Dkt. 7-8, 12-13, 15, 24, 26.)  The court heard argument on both motions as well as expert testimony concerning BitTorrent and geolocation technology.

On August 6, 2012, the court issued its Order denying the ISPs' motions to quash and granting Plaintiff's motion to compel.  In so doing, the court declined to adopt the approach of *Nu-Image*, 799 F. Supp. 2d 34, and held instead that any consideration of personal jurisdiction, joinder or venue was premature until after discovery of the ISPs had been authorized.  The court, however, acknowledged the split of authority and need for appellate review, certified its Order for appeal

5

pursuant to 28 U.S.C. § 1292(b) and stayed the action pending any appeal.

(Order at 40-42; App. 106.)

## REASONS FOR GRANTING PERMISSION TO APPEAL

I.   **THIS CASE PRESENTS IMPORTANT, "CONTROLLING QUESTIONS OF LAW" THAT WILL EVADE APPELLATE REVIEW ABSENT PERMISSION TO APPEAL.**

A.   **The Order Authorizing Discovery of the ISPs Presents a Controlling Issue of Law Because Plaintiff's Pursuit of the Internet Subscribers' Data Is the *Only* Issue Typically Litigated in These Multi-Doe Defendant Actions.**

For a question of law to be "controlling" under section 1292(b), Petitioners must show only that the question is important and may affect the outcome of the litigation—or that an appeal could otherwise further the administration of justice by resolving a recurring or unsettled legal issue. *Groover, Christie & Merritt v. Lobianco*, 336 F.2d 969, 970 (D.C. Cir. 1964) (permitting interlocutory appeal to address discoverability of a document that was central to contested issues below); *A. P. De Sanno & Son, Inc. v. Brown*, 313 F.2d 898 (D.C. Cir. 1963) (accepting for appeal certification of order denying motion to quash service of process).[1]

Multi-Doe defendant copyright actions typically follow "a common arc":

---

[1] "[A]ll that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of the litigation...." *In re Baker & Getty Fin. Servs.*, 954 F.2d 1169, 1172 (6th Cir. 1992) (quoting *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982)).

> (1) a plaintiff sues anywhere from a few to thousands of Doe defendants for copyright infringement in one action; (2) the plaintiff seeks leave to take early discovery; (3) once the plaintiff obtains the identities of the IP subscribers through early discovery, it serves the subscribers with a settlement demand; (4) the subscribers, often embarrassed about the prospect of being named in a suit involving pornographic movies, settle…. Thus, these mass copyright infringement cases have emerged as a strong tool for leveraging settlements — a tool whose efficiency is largely derived from the plaintiffs' success in avoiding the filing fees for multiple suits and gaining early access en masse to the identities of alleged infringers.

*McGIP, LLC v. Does 1-149*, 2011 U.S. Dist. LEXIS 108109, at *11 n.5 (N.D. Cal. Sept. 16, 2011) (action filed by Plaintiff's current counsel); *see also Millennium TGA, Inc. v. Comcast Cable Commun. LLC*, 2012 U.S. Dist. LEXIS 88369, at *23-25 (D.D.C. June 25, 2012) (reviewing dockets in Plaintiff's counsel's other cases).

Indeed, Plaintiff's counsel declared in another case for AF Holdings that, in 118 separate multi-Doe suits filed in the last two years, at that time *not a single defendant had been served*—and, a fortiori, few (if any) of these cases proceed to a litigated judgment. (App. 97-105.) *See also AF Holdings LLC v. Does 1-135*, 2012 U.S. Dist. LEXIS 7493 (N.D. Cal. Jan. 19, 2012) (order to show cause for failure to serve John Doe after obtaining his personal information). Accordingly, the only issue typically litigated is the propriety of discovery of the ISPs, and the cases rise or fall based on whether plaintiffs are able to obtain the subscribers' names, addresses, and phone numbers for the purpose of demanding settlements.

7

**B.     The Issues Presented Will Evade Appellate Review Without an Order from This Court Granting Permission to Appeal.**

Given that the Does routinely are not named or served in the underlying lawsuits (even after the ISPs have provided their contact information), it is unsurprising that there is no appellate authority addressing the mass Doe phenomenon.[2] Orders on motions to quash are not appealable. Thus, short of the ISPs being held in contempt of court, no opportunity for appeal of these issues will exist absent discretionary review. *Cobbledick v. United States*, 309 U.S. 323, 326 (1940) (explaining that a subpoenaed witness must be held in contempt to create an appealable order and "could not be party to an appeal taken at the conclusion of the main case"); *In re Sealed Case*, 827 F.2d 776, 777 (D.C. Cir. 1987) (same).

This untenable situation warrants section 1292(b) review.

**II.     THERE ARE "SUBSTANTIAL GROUNDS FOR DIFFERENCE OF OPINION" AS TO THE RULES GOVERNING PERSONAL JURISDICTION, JOINDER, VENUE, AND PRE-RULE 26 DISCOVERY OF INTERNET SERVICE PROVIDERS.**

Cases involving an "intra-district division of authority" are particularly appropriate for permissive appeal. *Grant v. Chevron Phillips Chem. Co. L.P.*, 309 F.3d 864, 875 (5th Cir. 2002); *see also Marquis v. Federal Deposit Ins. Corp.*, 965

---

[2] *But see Mick Haig Prods. v. Does*, 2012 U.S. App. LEXIS 14263 (5th Cir. July 12, 2012) (affirming sanctions award for discovery abuses in mass Doe action, including for serving subpoenas on the ISPs without authorization to do so).

F.2d 1148, 1151 (1st Cir. 1992). The split of authority among the district judges in this Circuit could not be starker.

> **A.     The District Judges in this Circuit Are Divided as to Whether Plaintiff Must Make a Prima Facie Showing That Personal Jurisdiction Exists, and that Venue is Proper, Before Permitting Third-Party Discovery.**

Unlike the Order at issue here, Judge Wilkins in *Nu-Image*—and other judges in this district—have required *evidence* of "tortious injury in the District" as a component for showing the "good cause" needed to seek discovery from the ISPs. *Nu-Image*, 799 F. Supp. 2d at 38-39 (citing, e.g., *Penguin Group (USA), Inc. v. Am. Buddha*, 640 F.3d 497, 500-01 (2d Cir. 2011)).[3] *Nu-Image* applied this Court's decision in *Caribbean Broadcasting*, which requires plaintiffs seeking pre-Rule 26, jurisdictional discovery to submit, at minimum, evidence showing "at least a good faith belief that such discovery will enable it to show that the court has

---

[3] *See also SBO Pictures, Inc. v. Does 1-87*, 2012 U.S. Dist. LEXIS 6968, at *3-9 (D.D.C. Jan. 19, 2012) (following *Nu-Image*'s analysis of personal jurisdiction and denying request for discovery of ISPs; Facciola, M.J.); *Exquisite Multimedia, Inc. v. Does 1-21*, No. 1:11-cv-2298-ABJ (D.D.C. Jan. 5, 2012) (Jackson, J.; adopting *Nu-Image*'s reasoning and denying application to take discovery of the ISPs, submitted in Appendix at p. 111); *West Coast Prods. v. Does 1,1911*, No. 1:11-cv-01687-ABJ (D.D.C. Oct. 25, 2011) (same; submitted in Appendix at p. 108); *W. Coast Prods. v. Does 1-1,434*, 2012 U.S. Dist. LEXIS 110847, at *8-12 (D.D.C. Aug. 6, 2012) (explaining BitTorrent file-sharing technology and rejecting plaintiff's arguments that alleged downloading of excerpts of a film results in nationwide jurisdiction over all Does); *Millennium TGA, Inc. v. Comcast Cable Communs. LLC*, 2012 U.S. Dist. LEXIS 88369, at *11-20 (D.D.C. June 25, 2012) (Wilkins, J.; denying motion to compel discovery from ISP and reviewing current Plaintiff's counsel's judge-shopping).

personal jurisdiction over the defendant." *Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1090 (D.C. Cir. 1998); *accord Exponential Biotherapies, Inc. v. Houthoff Buruma N.V.*, 638 F. Supp. 2d 1, 11 (D.D.C. 2009) (plaintiff must "reasonably demonstrate[] that it can supplement its jurisdictional allegations through discovery").  Evidence of tortious injury in the district is required to satisfy personal jurisdiction and venue because copyright infringement is a tort, and the Does are accused of doing nothing other than accessing portions of plaintiff's film from their computers without authorization.  *See Nu-Image*, 799 F. Supp. 2d at 38 (citing, *inter alia*, D.C. Code § 13-423(a)(3)-(4).).

*Nu-Image*'s reasoning comports with well-settled principles of personal jurisdiction, see *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985), and imposes no real burden on plaintiffs, given the "geolocation services that are generally available to the public to derive the approximate location of the IP addresses identified for each putative defendant." *Nu-Image, supra*, at 40.

The recent rulings by Judges Wilkins, Jackson and Facciola are consistent with a growing body of decisions from other courts, which have rejected attempts by publishers of sexually explicit content to pursue discovery *en masse* from the ISPs without an evidentiary showing that the information will be used to name and serve subscribers located in the forum.  *See, e.g., DigiProtect USA Corp. v. Does 1-240*, 2011 U.S. Dist. LEXIS 109464, at *8-10 (S.D.N.Y. Sept. 26, 2011)

(holding that personal jurisdiction in a BitTorrent copyright action requires intentional conduct showing that defendant availed himself of the forum, which is not satisfied merely by showing that hundreds of defendants in different locations accessed the same film); *Millenium TGA v. Doe*, 2011 U.S. Dist. LEXIS 110135 (N.D. Ill. Sept. 26, 2011) (same; citing additional authority from other circuits).[4]

The approach taken by the *Nu-Image* line of authority also comports with guidance from the Supreme Court:  Third-party discovery should not be permitted for the purpose of pursuing potential future claims in other jurisdictions. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352-53 & n.17 (1978) ("when

---

[4] *See also In re BitTorrent Adult Film Copyright Infringement Cases*, 2012 U.S. Dist. LEXIS 61447 (E.D.N.Y. May 1, 2012); *Hard Drive Prods. v. Does 1-30*, 2011 U.S. Dist. LEXIS 119333, at \*7-10 (E.D. Va. Oct. 17, 2011); *New Sensations, Inc. v. Does 1-1,474*, 2011 U.S. Dist. LEXIS 140670, at \*7-9 (N.D. Cal. Dec. 7, 2011) (citing *Nu-Image* and explaining that "[w]here Plaintiff has made no effort to determine jurisdiction, the administration of justice is not served by requiring out-of-state recipients of subpoenas to bring challenges to the subpoenas in far-flung jurisdictions"); *Hard Drive Prods. v. Does 1-188*, 809 F. Supp. 2d 1150, 1160-65 (N.D. Cal. 2011) (explaining BitTorrent technology and severing Does 2-188 based on failure to show participation in a single "swarm"); *Patrick Collins, Inc. v. Does*, 2011 U.S. Dist. LEXIS 140913, at \*4-5, \*8 (N.D. Cal. Dec. 7, 2011) (citing *Nu-Image* with approval and explaining that "even if one or more of the unidentified defendants allegedly downloaded the file at some point during the time period in question from a computer located in this District, the Court is not aware of any case law that suggests that it has personal jurisdiction over all 2,590 Defendants based on this connection"); *AF Holdings LLC v. Does 1-96*, 2011 U.S. Dist. LEXIS 134655, at \*9 (N.D. Cal. Nov. 22, 2011) (requiring a prima facie showing that each defendant resides in the district and is thus subject to personal jurisdiction in California); *Berlin Media Art v. Does 1 - 654*, 2011 U.S. Dist. LEXIS 120257, at \*4-6 (N.D. Cal. Oct. 18, 2011).

the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied").[5]

Notwithstanding the mounting disapproval for multi-Doe actions, Plaintiff here sought discovery from the ISPs for more than 1,000 subscribers located throughout the country, to protect rights to a film assigned to a Plaintiff located in the Caribbean.  (App. 4, 64, 72, 78, 84.)  The ISPs urged the district court to apply *Caribbean Broadcasting* to require an evidentiary showing supporting a "good faith" belief that the Does are located in the district, and to address the threshold issues of joinder, personal jurisdiction, and venue before authorizing wide-ranging discovery.  The ISPs explained that publicly available "geolocation" software used by Plaintiff's counsel in other courts could provide the information necessary for plaintiffs to meet the "good faith belief" standard of *Caribbean Broadcasting*. For example, AF Holdings and its counsel have represented in other actions:

> Plaintiff also represents that it has used geolocation technology to trace the IP addresses of each Doe Defendant to California; in other words, Plaintiff has made a prima facie showing of personal jurisdiction.

---

[5] *Accord Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) (pre-Rule 26 discovery should be denied where the court concludes that discovery "would not uncover [the defendants'] identities, or that the complaint would be dismissed on other grounds"); *Exponential Biotherapies*, 638 F. Supp. 2d at 11.

*AF Holdings LLC v. Does 1-96*, 2011 U.S. Dist. LEXIS 134655, at *6-7 (N.D. Cal. Nov. 22, 2011); *see also Patrick Collins, Inc. v. Does 1-58*, 2011 U.S. Dist. LEXIS 120235, at *1-2 (E.D. Va. Oct. 5, 2011) (same; action by Plaintiff's counsel).

The court below acknowledged a subset of the recently decided authority in the ISPs' favor, but adhered to the reasoning of earlier decisions, including two of Judge Howell's own: The court held that any consideration of personal jurisdiction or venue is "premature" until *after* discovery of the ISPs has been permitted. (Order at 4, 27-31, citing, *e.g.*, *Call of the Wild*, 770 F. Supp. 2d at 345; *Donkeyball Movie, LLC v. Does 1-171*, 810 F. Supp. 2d 20 (D.D.C. 2011); *W. Coast Prods. v. Does 1-5829*, 275 F.R.D. 9, 14 (D.D.C. 2011).)

By permitting Plaintiff to pursue discovery as to 1,000-plus Does without any showing that the information would be used to litigate claims in the forum, the Order ignores the pattern in Plaintiff's many cases—which begin and end with discovery of the ISPs—and thus creates a "safe haven" (at least before some district judges in this Circuit) for pursuing discovery that has been denied Plaintiff in other forums. *Compare AF Holdings v. Does 1-97*, 2011 U.S. Dist. LEXIS 126225 (N.D. Cal. Nov. 1, 2011) (denying leave to conduct discovery where plaintiff failed to show that the 97 Does were properly joined); *AF Holdings LLC v. Does 1-96*, 2011 U.S. Dist. LEXIS 109816 (N.D. Cal. Sept. 27, 2011) (denying

leave to conduct discovery because experience with this Plaintiff's counsel shows that the discovery is not "likely to lead" to identification of the actual infringers).

At a minimum, the Order presents an irreconcilable conflict with the decisions of other district judges in this Circuit that warrants immediate review.

### B.    Courts Are Divided as to Whether Rules for Joinder and Venue Permit Plaintiff to Sue More Than 1,000 Defendants in a Single Action and Seek Discovery Concerning All of Them.

The conflict concerning personal jurisdiction is mirrored in the courts' conflicting treatment of joinder of hundreds or thousands of Does in a single action. *Compare, e.g., Millennium TGA*, 2012 U.S. Dist. LEXIS 88369, at *13 ("There is no rhyme or reason as to why the rights of all the 351 subscribers should be heard and adjudicated in the District of Columbia."), *and SBO Pictures*, 2012 U.S. Dist. LEXIS 6968, at *9 (ordering plaintiff to show cause as to venue over each Doe), *with* Order at 19-23, *and Call of the Wild*, 770 F. Supp. 2d at 342 ("at this procedural juncture, joinder of the [1,062] putative defendants is proper").

For joinder to be proper, defendants' actions must be part of the "same transaction or series of transactions" or otherwise satisfy Rule 20's requirements. Fed. R. Civ. P. 20(a)(2).  Plaintiff alleged that the 1,058 Does were part of a file-sharing "swarm," purportedly because they used BitTorrent software to access excerpts of Plaintiff's film on different dates over a four-month period.  (App. 9-31.)  Other decisions that have analyzed BitTorrent file-sharing technology have

concluded that to be part of the same "swarm," a user must have "downloaded the movie from the same website during overlapping times" with another member of the swarm. *See, e.g., DigiProtect*, 2011 U.S. Dist. LEXIS 109464, at *9-10 ("To participate, a user must be online at the time of a swarm."); *cf., Donkeyball Movie*, 810 F. Supp. 2d at 28 (quoting plaintiff's declaration that swarming is possible "so long as that first seed peer is online at the time the subsequent peer"). Even assuming, *arguendo*, that the "same series of transactions" includes automated file-sharing among users who are unaware of each other, it does not necessarily follow that users who may have shared excerpts of the same film days, weeks, or months apart are part of that "same series."[6]

---

[6] "Downloading a work as part of a swarm does not constitute 'acting in concert' with one another, particularly when the transactions happen over a long period." *Raw Films, Inc. v. Does 1-32*, 2011 WL 6840590, at *2 (N.D. Ga. Dec. 29, 2011); *On the Cheap, LLC v. Does 1-5011*, 280 F.R.D. 500, 502-04 (N.D. Cal. 2011) (summarizing split of authority and disagreeing with *Call of the Wild*); *AF Holdings, LLC v. Does 1-97*, 2011 U.S. Dist. LEXIS 126225, at *7-8 (denying request to take discovery of ISPs where "Plaintiff has not alleged that any of the ninety-seven Doe Defendants exchanged any piece of the relevant file with each other or actually acted in concert with one another"); *Liberty Media Holdings, LLC v. BitTorrent Swarm*, 277 F.R.D. 672, 675 (S.D. Fla. 2011) (same; time span of two months); *Pacific Century Int'l Ltd. v. Doe*, 2011 U.S. Dist. LEXIS 73837, at *12 (N.D. Cal. July 8, 2011) ("Plaintiff glosses over the fact that BitTorrent users may upload different initial files of a given work, which results in the creation of distinct swarms … , [and] the participants in the first swarm would not interact with those in the second swarm"); *K-Beech, Inc. v. Does 1-85*, 2011 U.S. Dist. LEXIS 124581, at *5 (E.D. Va. Oct. 5, 2011) ("The bare fact that a Doe clicked on a command to participate in the BitTorrent Protocol does not mean that they were part of the downloading by unknown hundreds or thousands of individuals").

The Order's conclusion that joinder of all Does is proper at this stage—and thus presents no obstacle to Plaintiff gaining broad access to the ISPs' customers' data—underscores the intra- and extra-district conflict and ignores the Order's practical effects.  Plaintiff's strategy in these cases,

> effectively precludes consideration of joinder issues at a later point in the proceedings.  By not naming or serving a single defendant, [Plaintiff] ensures that this case will not progress beyond its infant stages and therefore, the court will never have the opportunity to evaluate joinder. Deferring a ruling on joinder, then, would "encourage[] [p]laintiffs ... to join (or misjoin) as many doe defendants as possible...."

*McGIP*, 2011 U.S. Dist. LEXIS 108109, at *10 (quotation omitted); *see also K-Beech, Inc. v. Does 1-41*, 2012 U.S. Dist. LEXIS 31803, at *7-15 (S.D. Tex. Mar. 8 2012) (same; compiling cases that have disagreed with *Call of the Wild*'s conclusions); *BitTorrent Adult Film Copyright Cases*, 2012 U.S. Dist. LEXIS 61447, at *38-39 (declining to address joinder at the outset "results in lost revenue of perhaps millions of dollars (from lost filing fees) and only encourages plaintiffs in copyright actions to join (or misjoin) as many doe defendants as possible").[7]

---

[7] *See also Patrick Collins, Inc. v. Does 1-10*, 2012 U.S. Dist. LEXIS 47689, at *10-11 (D. Md. Apr. 4, 2012) (same; severing and dismissing Does 2-10); *Patrick Collins, Inc. v. Does 1-23*, 2012 U.S. Dist. LEXIS 40536, at *14-16 (E.D. Mich. Mar. 26, 2012) (same; citing and disagreeing with *Call of the Wild*); *Lightspeed v. Does 1-1000*, 2011 U.S. Dist. LEXIS 35392, at *6 (N.D. Ill. Mar. 31, 2011); *Third Degree Films, Inc. v. Does 1-131*, 280 F.R.D. 493, 497-98 (D. Ariz. 2012) (discussing conflicting authorities including *Call of the Wild* and concluding
(Footnote continues on next page.)

As courts have noted, given the prevalence of open (and shared) wireless Internet connections, it is exceedingly likely that the Internet subscribers targeted by Plaintiff's suit include "not only those who allegedly committed copyright infringement—proper defendants to Plaintiff's claims—but [innocent] ISP 'Subscriber[s]' over whose internet connection the Work allegedly was downloaded." *Hard Drive Prods.*, 2011 U.S. Dist. LEXIS 132449, at *6-7; *see Digital Sin, Inc. v. Does 1-5698*, 2011 U.S. Dist. LEXIS 128033, at *10 (N.D. Cal. Nov. 4, 2011). This fact underscores why "mass joinder" is inappropriate.

At bottom, the conflicting authorities warrant appellate guidance.

### C. Courts Are Divided Concerning the ISPs' Rights to Complain About the Cumulative Burdens Imposed by Mass Doe Defendant Actions.

The Order questions whether the ISPs have standing to object to repetitive subpoenas served upon them, and whether these subpoenas, taken alone or together, impose an undue burden on the ISPs. (Order at 14-18.) Here, too, the court's Order diverges dramatically from the views of other district courts in this Circuit. *See, e.g., W. Coast Prods.*, 2012 U.S. Dist. LEXIS 110847, at *3 ("these cases have imposed and will continue to impose extraordinary burdens on the courts and the Internet Service Providers"); *Millennium TGA*, 2012 U.S. Dist.

---

(Footnote continued from previous page.)

that Rule 20's joinder requirements must be addressed at the outset); *Boy Racer, Inc. v. Does 1-60*, 2011 U.S. Dist. LEXIS 92994, at *10 (N.D. Cal. Aug. 19, 2011).

LEXIS 88369, at *14 (plaintiff's desire for "'one stop shopping' in the District of Columbia" does not justify seeking the personal information for 351 Comcast subscribers located across the country in a single action).

As the targets of discovery, the ISPs necessarily have standing to object to subpoenas issued to them. Fed. R. Civ. P. 45(c)(3)(A)(iv). And, as ample precedent demonstrates, *any* burden is an undue burden where the sought-after jurisdictional discovery is unlikely to lead to a defendant being served in this lawsuit. *Oppenheimer Fund*, 437 U.S. at 352-53 & n.17; *Northwestern Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 928-29 (7th Cir. 2004) (rejecting argument that a subpoena causes no undue burden merely because "the administrative hardship of compliance would be modest," but considering instead "the rash of suits around the country" and the publicity generated therefrom); *In re Micron Tech., Inc. Sec. Litig.*, 264 F.R.D. 7, 9-10 (D.D.C. 2010) (explaining that a subpoena can impose an "undue burden" even where the witness has already identified the requested documents); *see also Nu-Image*, 799 F. Supp. 2d at 37.

The ISPs' complaints about the cumulative burdens imposed by Plaintiff's counsel's hundreds of cases are particularly well-taken given Plaintiff's counsel's admitted recent history of failing to name and serve any defendant in 118 separate multi-Doe actions. (App. 103-105.) At a minimum, a "reasonable ground for

difference of opinion" exists as to the need to consider the cumulative burdens

imposed on the ISPs by mass Doe lawsuits.  28 U.S.C. § 1292(b).

## III.   AN IMMEDIATE APPEAL "MAY MATERIALLY ADVANCE THE ULTIMATE TERMINATION OF THE LITIGATION" AND CURTAIL FORUM SHOPPING.

An immediate appeal "may materially advance the ultimate termination of

the litigation."  If the Court agrees that plaintiffs must make a threshold evidentiary

showing that the Does are subject to suit in the forum and that the information

sought will be used for a proper purpose, that will be the end of Plaintiff's lawsuit.[8]

Absent guidance from this Court, plaintiffs will continue to select their

venues based not on the location of parties and the situs of harm, but on the

forum's perceived willingness to grant plaintiff the broadest range of discovery of

the ISPs, at the lowest expense, with the least judicial oversight.  Granting

permission to appeal will help bring clarity to the rules governing these many

---

[8] The improper purposes for which Plaintiff's counsel has used the ISPs' customers' data is discussed in several decisions.  *See, e.g., Millennium TGA*, 2012 U.S. Dist. LEXIS 8836, at *24 ("Given the intimidating tactics and oppressive demands made by Plaintiff's counsel in other cases, it is particularly appropriate to require the Plaintiff to proceed according to the federal rules and only allow discovery related to valid claims that can and actually will be prosecuted in the federal court where the claims have been filed."; Wilkins, J., addressing Plaintiff's current counsel's activities); *Hard Drive Prods. v. Does 1-30*, 2011 U.S. Dist. LEXIS 119333, at *9 (citing Plaintiff's counsel's history of "threatening behavior on behalf of Plaintiffs" used to force settlements with Does as grounds for denying ex parte discovery requests); *Hard Drive Prods. v. Does 1-130*, 2011 U.S. Dist. LEXIS 132449, at *9 (N.D. Cal. Nov. 16, 2011) (same; describing the potential for "coercive and unjust 'settlement'" in Plaintiff's counsel's cases).

hundreds of cases (and it could avoid making this Circuit a destination venue for plaintiffs seeking to obtain broad discovery that is unavailable in other venues).

The specter of judge-specific shopping within this Circuit underscores the importance of appellate review.  The ISPs noted in the district court Plaintiff's counsel's practice of filing complaints and then promptly dismissing them based on the judicial assignment—only to re-file in another court.  (App. 92-94.)  While the court below "decline[d] to comment" on this evidence, it acknowledged that "due to the divergence of opinion in this jurisdiction, the potential for forum-shopping exists." (Order at 41.)  When presented with the same facts, Judge Wilkins noted that the later-selected forum described "Plaintiff's actions as akin to 'judge shopping.'… This Court could not agree more."  *Millennium TGA*, 2012 U.S. Dist. LEXIS 88369 at *5-6.  Under either interpretation, the need for uniformity and clarity of decision within the Circuit is plain.

## CONCLUSION

For all these reasons, the ISPs respectfully request permission to appeal.

Dated:  August 16, 2012                   Respectfully submitted,


By:   _Deanne E. Maynard /mдн_
      Deanne E. Maynard
      (*Signature block continues on next page*)

MORRISON & FOERSTER LLP
2000 Pennsylvania Ave., NW
Washington, D.C.  20006-1888
Telephone:  202.887.1500
Facsimile:  202.887.0763
DMaynard@mofo.com

Benjamin J. Fox
(*request for admission to be filed*)
MORRISON & FOERSTER LLP
555 W. 5th Street
Los Angeles, CA  90013-1024
Telephone:  213.892.5200
Facsimile:  213.892.5454
BFox@mofo.com

*Attorneys for Petitioners*
Bright House Networks LLC,
Cox Communications, Inc.,
Verizon Online LLC

*(Signatures Continue on Following Pages)*

21

Dated:  August 16, 2012

Respectfully submitted,

LORD LOCKE LLP

By:  *Hugh S. Balsam* /MAH

      Hugh S. Balsam

LOCKE LORD LLP
111 South Wacker Drive
Chicago, IL 60606
Telephone:  (312) 443-0403
Facsimile:  (312) 896-6403
HBalsam@lockelord.com

Bart W. Huffman
(*request for admission to be filed*)
LOCKE LORD LLP
100 Congress Avenue, Suite 300
Austin, Texas  78701
Telephone:  (512) 305-4746
Facsimile:  (512) 391-4741
BHuffman@lockelord.com

Attorneys for Petitioner
SBC Internet Services, Inc., d/b/a
AT&T Internet Services

Dated:  August 16, 2012

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By:  _John D. Seiver /mah_____

     John D. Seiver

1919 Pennsylvania Ave., N.W.
Suite 800
Washington, D.C. 20006
Telephone:  (202) 973-4200
johnseiver@dwt.com

*Attorneys for Petitioner*
Comcast Cable Communications
Management, LLC

# CERTIFICATE OF PARTIES AND AMICI

Pursuant to Circuit Rule 5(a), the following persons or entities have appeared in the district court or are appearing in this Court:

<u>Plaintiff / Respondent</u>:  AF Holdings, LLC.

<u>Defendants</u>:  Does 1-1,058.

<u>Subpoenaed Third Parties / Petitioners</u>:  Bright House Networks, LLC; Cox Communications, Inc.; Verizon Online LLC; SBC Internet Services, Inc., d/b/a AT&T Internet Services; Comcast Cable Communications, LLC.

<u>Other Interested Parties</u>:  Andrew Fignar, Jr.; Kristi Johnson.

<u>Amici</u>:  America Civil Liberties Union Foundation; American Civil Liberties Union of the Nation's Capital; the Electronic Frontier Foundation.

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rules of Appellate Procedure Rule 26.1, counsel for the undersigned petitioners states:

Bright House Networks, LLC:  Bright House Networks, LLC ("BHN") is wholly owned by Time Warner Entertainment – Advance/Newhouse Partnership ("TWEAN").  The general partners of TWEAN are Time Warner Entertainment Company, L.P., Time Warner NY Cable LLC and Advance/ Newhouse Partnership.  Time Warner Cable Inc. is the ultimate parent of Time Warner Entertainment Company L.P. and Time Warner NY Cable LLC.  No publicly held corporation owns 10 percent or more of BHN's stock.

Cox Communications, Inc.:  Cox Communications, Inc. is wholly owned by Cox Enterprises, Inc.  No other publicly held corporation owns 10 percent or more of Cox Communication, Inc.'s stock.

Verizon Online LLC:  Verizon Online LLC is wholly owned by GTE Wireless Incorporated, which is wholly owned by GTE Corporation, which is more than 90 percent owned by Verizon Communications, Inc.  No other publicly held corporation owns 10 percent or more of Verizon Online LLC's stock.

As relevant to the litigation, the petitioners are Internet service providers.


Dated:  August 16, 2012                    Respectfully Submitted,


                                           MORRISON & FOERSTER LLP


                                           By:  _Deanne E. Maynard_ /MAH
                                                Deanne E. Maynard

                                           *Attorneys for Petitioners*
                                           Bright House Networks, LLC,
                                           Cox Communications, Inc.
                                           and Verizon Online LLC

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rules of Appellate Procedure Rule 26.1, counsel for the undersigned petitioner states that SBC Internet Services, Inc., d/b/a AT&T Internet Services is wholly owned by AT&T Teleholdings, Inc., which is wholly owned by AT&T Inc. No publicly held company owns 10% of more of the stock of AT&T Inc.

As relevant to the litigation, SBC Internet Services, Inc. is an Internet service provider.

Dated:  August 16, 2012                  Respectfully Submitted,

                                         LOCKE LORD LLP


                                         By: _Hugh S. Balsam_ /m4h
                                             Hugh S. Balsam

                                             *Attorneys for Petitioner*
                                             SBC Internet Services, Inc., d/b/a
                                             AT&T Internet Services

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rules of Appellate Procedure Rule 26.1, counsel for the undersigned petitioner states that Comcast Cable Communications, LLC is wholly owned by Comcast Holdings Corporation, which is wholly owned by Comcast Corporation, whose stock is publicly traded. No publicly held company owns 10% or more of the stock of Comcast Corporation.

As relevant to the litigation, Comcast Cable Communications, LLC is an Internet service provider.

Dated: August 16, 2012                  Respectfully Submitted,

                                        DAVIS WRIGHT TREMAINE LLP


                                        By: _John D. Seiver/_____
                                             John D. Seiver   /M+d

                                             *Attorneys for Petitioner*
                                             Comcast Cable Communications
                                             Management, LLC

**ATTACHMENT A**

(District Court's Memorandum Opinion Dated August 6, 2012)

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AF HOLDINGS LLC,

    Plaintiff,

     v.

DOES 1 – 1,058,

    Defendants.

Civil Action No. 12-0048 (BAH)
Judge Beryl A. Howell

## MEMORANDUM OPINION

  As in numerous other cases pending in this and other jurisdictions across the country, this case involves a copyright owner's effort to protect a copyrighted work from unknown individuals, who are allegedly illegally copying and distributing the work on the Internet. Plaintiff AF Holdings LLC ("AF Holdings") alleges that 1,058 unknown individuals used a peer-to-peer file-sharing application, called BitTorrent, on their computers to download and distribute the plaintiff's movie, *Popular Demand*. *See generally* Compl., ECF No. 1. In support of the Complaint, the plaintiff listed the Internet Protocol ("IP") addresses assigned to the computers allegedly engaged in the unauthorized copying and distribution of the plaintiff's copyrighted movie. Compl., Ex. A. ("Listed IP Addresses"). Upon authorization from the Court, pursuant to Rule 26(d)(1) of the Federal Rules of Civil Procedure, to seek discovery prior to a conference of the parties otherwise required by Rule 26(f), the plaintiff issued subpoenas to Internet Service Providers ("ISPs") to obtain limited identifying information about the ISPs' customers whose computers were assigned the Listed IP Addresses. Pending before the Court are two motions: the plaintiff's motion to compel ISP Comcast Cable Communications, LLC ("Comcast") to comply with the plaintiff's subpoena, and a motion to quash the plaintiff's subpoenas filed by four other ISPs: Bright House Networks, LLC; Cox Communications, Inc.; SBC Internet

Services, Inc., d/b/a AT&T Internet Services; and Verizon Online, LLC (collectively "Movant ISPs"). All of the ISPs argue that the plaintiff's subpoenas should be quashed because the plaintiff's Complaint is procedurally defective. The Court disagrees. Consequently, the plaintiff's motion to compel Comcast to comply with the plaintiff's subpoena is GRANTED, and the Movant ISPs' motion to quash the plaintiff's subpoenas is DENIED. The Movant ISPs further request, in the event the Court requires compliance with the plaintiff's subpoenas, that the Court certify an immediate appeal of the order denying the Movant ISPs' Motion to Quash. This request is GRANTED.

## I.    BACKGROUND

On January 11, 2012, plaintiff AF Holdings filed a complaint against 1,058 unknown individuals who allegedly used a file-sharing protocol called BitTorrent to infringe illegally the plaintiff's copyright in the motion picture *Popular Demand*. Compl. ¶¶ 3, 5. These unknown customers are identified only by the IP addresses assigned by the ISPs to their computers. *See id.* ¶ 11. In order to identify these unknown individuals – a prerequisite to determining whether to name them as defendants and proceed with a lawsuit against them – the plaintiff moved for leave to issue subpoenas to ISPs to obtain limited identifying information for the customers associated with the Listed IP Addresses. Mot. for Leave to Take Discovery Prior to Rule 26(f) Conference, ECF No. 4. The Court granted this motion, authorizing the plaintiff to obtain "limited information sufficient to identify only the putative Defendants listed in Exhibit A to the Complaint," which included the "name, current and permanent address, telephone number, e-mail address, and Media Access Control (MAC) Address" associated with each Listed IP Address. Order Granting Pl.'s Mot. Leave to take Expedited Discovery, ECF No. 5 at 1. The Court's Order further directed the ISPs to provide their customers with a Court-directed notice prior to releasing the affected customers' personal information to the plaintiff. *Id.* at 2, App. A.

Despite the Court's January 30, 2012 Order authorizing the plaintiff to issue subpoenas to ISPs, Comcast refuses to produce the requested information "[w]ithout a valid court order that recognizes that [the Court] will ultimately have jurisdiction over the unnamed subscribers, [and] whether they may be properly joined."[1] Pl.'s Mot. Compel Comcast, ECF No. 7, Ex. B, Comcast Objection Letter dated February 16, 2012, at 3. Comcast's refusal to comply with the subpoena prompted the plaintiff to file a motion to compel, pursuant to Federal Rule of Civil Procedure 45(c)(2)(B)(i), seeking an order directing Comcast to comply with the plaintiff's subpoena for identifying information for the customers using the 400 Listed IP Addresses serviced by Comcast. Pl.'s Mot. Compel Comcast, ECF No. 7.

Subsequently, the Movant ISPs filed a joint motion to quash the subpoenas directed to them pursuant to the January 30, 2012 Order. Movant ISPs' Mot. Quash, ECF No. 8. The Movant ISPs assert that the plaintiff's subpoenas should be quashed, pursuant to Federal Rule of Civil Procedure 45(c)(3)(A)(iv), because they impose an "undue burden" upon them. *See* Mem. Supp. Movant ISPs' Mot. Quash, ECF No. 8, at 4-5. Specifically, the Movant ISPs argue that the "John Does" associated with the Listed IP Addresses are improperly joined in one lawsuit and that "[p]ersonal jurisdiction and venue do not exist in this district over the vast majority of the targeted Does." *Id.* at 1-2. Thus, because the plaintiff's "underlying action is procedurally defective or Defendants are not subject to suit here," the Movant ISPs argue that "any burden put upon a third-party to identify Defendants is an *undue* burden." *Id.* at 4.

The Movant ISPs recognize that this Court previously denied motions to quash filed by ISPs in other cases involving allegations of illegal infringement of copyrighted works by unknown individuals using a BitTorrent protocol. *See Call of the Wild Movie, LLC v. DOES 1-*

---

[1] Comcast also apparently refused to comply with the subpoena due to an issue over "inadequate assurance of payment," but that issue was resolved prior to the filing of the plaintiff's motion to compel. Pl.'s Mot. Compel Comcast, ECF No. 7, at 1.

*1,062*, 770 F. Supp. 2d 332 (D.D.C. 2011) (consolidated opinion denying motions to quash and
modify subpoenas that were issued in *Call of the Wild Movie, LLC v. Does 1-1,062*, No. 10-cv-
455; *Maverick Entertainment Group, Inc. v. Does 1-4,350*, No. 10-cv-569; and *Donkeyball
Movie, LLC v. Does* 1-171, No. 10-cv-1520). In those cases, this Court explained that
considerations of personal jurisdiction and joinder are premature when discovery is sought
before the plaintiff has named a defendant and the discovery is targeted to identify unknown
individuals associated with the IP addresses for computers, which were used to engage in
allegedly illegal infringing activity. In the event of a consistent ruling in the instant case, the
Movant ISPs further request "an order certifying the significant and recurring issues presented
here for appeal pursuant to 28 U.S.C. § 1292(b), so that litigants, the ISPs, and the courts may
move closer to uniform treatment and disposition" of similar copyright infringement cases.
Mem. Supp. Movant ISPs' Mot. Quash, ECF No. 8, at 2.

Following the filing of the plaintiff's motion to compel and the Movant ISPs' motion to
quash, the Electronic Frontier Foundation, American Civil Liberties Union Foundation, and
American Civil Liberties Union of the Nation's Capital were permitted to file a brief as amici
curiae in support of the Movant ISPs' motion to quash. Minute Order dated Mar. 15, 2012; Mot.
Leave to File Brief as Amici Curiae, ECF No. 17. Like the Movant ISPs and Comcast, amici
argue that the plaintiff's instant lawsuit is procedurally defective because the Court most likely
lacks personal jurisdiction over a majority of the individuals associated with the Listed IP
Addresses, and because the "John Does" associated with the Listed IP Addresses are improperly
joined in one action. *See generally* Brief of Amici Curiae, ECF No. 24. These defects,
according to amici, require the Court to quash the plaintiff's subpoenas. As an alternative, amici
join in the Movant ISPs' request that the Court "certify an immediate appeal." *Id.* at 2.

Upon consideration of the arguments presented at the motions hearing held on April 27, 2012, the legal memoranda submitted in support and in opposition to the pending motions, the associated exhibits and declarations, as well as the applicable law, the Court concludes that the ISPs' objections to the plaintiff's subpoenas have no merit. As explained in previous decisions issued by this Court, consideration of personal jurisdiction and joinder of unknown individuals, who are not yet named defendants in this case, is premature and, indeed, inappropriate. In circumstances where the plaintiff knows only the IP addresses associated with computers being used allegedly to infringe its copyright, the plaintiff is entitled to a period of discovery to obtain information to identify the ISPs' customers who may be using those computers in order to determine whether to name those individuals as defendants. The plaintiff's subpoenas do not impose an undue burden upon the ISPs, and, consequently, the ISPs must produce the information requested by the plaintiff. The plaintiff's motion to compel Comcast to comply with the plaintiff's subpoena is therefore GRANTED and the Movant ISPs' motion to quash is DENIED.

That said, the Court recognizes that other Judges on this Court have reached different conclusions with respect to the legal questions posed by the ISPs, and that the resolution of these legal questions materially affects resolution of this case. Accordingly, pursuant to 28 U.S.C. § 1292(b), the Court certifies the Order accompanying this Memorandum Opinion for immediate interlocutory appeal.

## II.    STANDARD OF REVIEW

The Federal Rules of Civil Procedure provide a broad scope for discovery in civil actions, permitting a party to obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense," which matter expressly includes "the identity and location of persons who know of any discoverable matter." FED. R. CIV. P. 26(b)(1). Further, for good cause, the

court is authorized to order discovery of any matter relevant to the subject matter of the action that "appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The scope of discovery under Rule 26 permits a party to obtain "discoverable matter" relevant to its claims, irrespective of the location of such evidence. *Id.* Indeed, issues regarding the location and possession of the sought-after "discoverable matter" is only pertinent to ascertain the appropriate mechanism a party must use to obtain it. *See* FED. R. CIV. P. 34 (a)-(b) (delineating procedure to produce or inspect, *inter alia*, documentary or electronically stored information, or tangible items from a party); FED. R. CIV. P. 34(c) (stating that a non-party may be compelled to produce documents and tangible things pursuant to Rule 45); FED. R. CIV. P. 45(a)(2) (delineating the appropriate court from which to obtain a subpoena); FED. R. CIV. P. 45 (b)(2) (delineating the procedure by which to serve a subpoena outside the district in which the underlying lawsuit is located). The Court must, however, limit discovery if, *inter alia*, "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." FED. R. CIV. P. 26(b)(2)(C)(iii).

If the sought-after "discoverable matter" is in the custody of a non-party, the party seeking discovery may obtain a subpoena for the evidence pursuant to Federal Rule of Civil Procedure 45. FED. R. CIV. P. 34(c). The same broad scope of discovery set out in Rule 26 applies to the discovery that may be sought pursuant to Rule 45. *See Watts v. S.E.C.*, 482 F.3d 501, 507 (D.C. Cir. 2007); Advisory Committee Note on 1946 Amendments to FED. R. CIV. P. 45 ("The added last sentence of amended [Rule 45](d)(1) properly gives the subpoena for documents or tangible things the same scope as provided in Rule 26(b)."). The Court must quash a subpoena issued to a non-party, however, if the subpoena subjects the non-party to an undue

burden or expense. FED. R. CIV. P. 45(c). The individual or entity seeking relief from subpoena compliance bears the burden of demonstrating that a subpoena should be modified or quashed. *See Linder v. Dep't of Def.*, 133 F.3d 17, 24 (D.C. Cir. 1998); *In re Micron Tech., Inc. Sec. Litig.*, 264 F.R.D. 7, 9 (D.D.C. 2010). Limiting discovery and quashing subpoenas, however, "goes against courts' general preference for a broad scope of discovery." *N. Carolina Right to Life, Inc. v. Leake*, 231 F.R.D. 49, 51 (D.D.C. 2005) (citations omitted).

When evaluating whether the burden of subpoena compliance is "undue," the court balances the burden on the recipient of the subpoena, the relevance of the information sought to the claims or defenses at issue in the lawsuit, the scope or breadth of the discovery request, and the party's need for the information. *See id.*; *Linder*, 133 F.3d at 24 ("Whether a burdensome subpoena is reasonable must be determined according to the facts of the case, such as the party's need for the documents and the nature and importance of the litigation.") (citation and internal quotation marks omitted). The "undue burden" test also requires the court to be "generally sensitive to the costs imposed on third-parties." *In re Micron Tech.*, 264 F.R.D. at 9 (citation and internal quotation marks omitted).

## III. DISCUSSION

The plaintiff's motion to compel Comcast to comply with the plaintiff's subpoena and the Movant ISPs' motion to quash the plaintiff's subpoenas raise identical legal issues. Both Comcast and the Movant ISPs, in addition to amici, urge the Court to revisit its previous rulings that considerations of personal jurisdiction and joinder do not operate to block compliance with subpoenas by copyright owners seeking limited identifying information for unknown individuals associated with IP addresses for computers allegedly being used for infringing activity. As explained below, the Court reaffirms its previous decision that the legal issues of personal jurisdiction and joinder of unknown persons who may be, but are not yet, named as defendants,

are not ripe for consideration.  The ISPs' reliance on these possible defenses as a shield to

forestall the plaintiff from obtaining discovery about the customers using the Listed IP Addresses

serviced by the ISPs is unavailing.  If any of these unknown individuals are named as defendants,

they may respond by asserting any of the defenses available pursuant to Federal Rule of Civil

Procedure 12(b).  At this procedural juncture, however, these defenses are purely speculative.

The ISPs' customers, who are unknown to the plaintiff and not named as defendants in this

action, have no obligation to appear, respond, or defend themselves against any of the plaintiff's

allegations.  The Court also concludes that any defense of improper venue is also premature for

consideration and does not excuse subpoena compliance.

Prior to discussing the issues of venue and personal jurisdiction, the Court briefly reviews

two preliminary matters:  the context in which the ISPs make their argument that "any burden"

placed upon them to identify their customers, who are allegedly infringing the plaintiff's

copyright, is undue; and the plaintiff's claim that the ISPs lack standing to contest subpoena

compliance on the grounds asserted.

## A.   STATUTORY BACKGROUND

Nearly twenty years prior to the instant lawsuit, in 1993, President Clinton established the

Information Infrastructure Task Force ("IITF") in response to the rise and growing prominence

of the Internet.  In an effort to better understand the Internet's effect on the economy and existing

legal structures, the Task Force formed a working group chaired by the Assistant Secretary of

Commerce and Commissioner of Patents and Trademarks to examine the Internet's implications

for intellectual property rights and recommend appropriate changes to U.S. intellectual property

law and policy.  *See* Bruce A. Lehman, THE REPORT OF THE WORKING GROUP ON INTELLECTUAL

PROPERTY RIGHTS, INTELLECTUAL PROPERTY AND THE NATIONAL INFORMATION

INFRASTRUCTURE ("White Paper") 2 (Sept. 1995).  Even at that time, when the Internet was

considered an emerging technology, the liability of ISPs for infringement occurring on the Internet arose as a critical issue. The potential exposure under then-existing copyright law of ISPs for infringing activity by their customers was cited as potentially chilling the robust growth of the Internet. *See id.* at 115-16. The working group established by the IITF counseled against limiting the liability of ISPs, arguing that these service providers should not be encouraged to remain ignorant of the use of their services for illegal infringing activity by their customers. *See id.* at 122. Indeed, in a September 1995 White Paper, the working group asserted that it would be "at best – premature to reduce the liability of any type of [such] service providers," cautioning that "[i]t would be unfair – and set a dangerous precedent – to allow one class or distributors to self-determine their liability by refusing to take responsibility. This would encourage intentional and willful ignorance." *Id.*

Three years following issuance of the IITF working group's White Paper, in 1998 Congress enacted the Digital Millennium Copyright Act ("DMCA"), which was intended to foster the development of electronic commerce and communication and bring U.S. copyright law into the digital age. *See* S. REP. NO. 105-190, at 1-9 (1998); 144 CONG. REC. S12, 376 (Oct. 12, 1998). The DMCA reflected a carefully balanced compromise between those who believed that ISPs should be exposed to potential liability for infringement occurring through use of their services, and those who believed such liability would stifle the growth of the Internet.[2] The

---

[2] The Senate Report explained,

> [d]ue to the ease with which digital works can be copied and distributed worldwide virtually instantaneously, copyright owners will hesitate to make their works readily available on the Internet without reasonable assurance that they will be protected against massive piracy. Legislation implementing the treaties provides this protection and creates the legal platform for launching the global digital on-line marketplace for copyrighted works. It will facilitate making available quickly and conveniently via the Internet the movies, music, software, and literary works that are the fruit of American creative genius. It will also encourage the continued growth of the existing off-line global marketplace for copyrighted works in digital format by setting strong international copyright standards.

DMCA resolved this legal and policy dispute by limiting the liability of ISPs for infringing activity occurring over their networks, while providing mechanisms for copyright owners to protect their copyrighted works with assistance from ISPs when specific evidence of infringing activity was identified. *See* Cong. Rec. S11, 890 (Oct. 8, 1998) (DMCA co-sponsor Senator Patrick Leahy stating that Title II of the DMCA "is intended to preserve incentives for online service providers and copyright owners to cooperate to detect and address copyright infringements that occur in the digital networked environment."); H.R. Rep. No. 105-796, Comm. on Conf., 72 (1998); *see also ALS Scan, Inc. v. RemarQ Cmtys., Inc.*, 239 F.3d 619, 625 (4th Cir. 2001) ("The DMCA was enacted both to preserve copyright enforcement on the Internet and to provide immunity to service providers from copyright infringement liability for 'passive,' 'automatic' actions in which a service provider's system engages through a technological process initiated by another without the knowledge of the service provider.").

Title II of the DMCA, captioned the "Online Copyright Infringement Liability Limitation Act," created "safe harbors" to protect qualifying ISPs from monetary damages for direct, vicarious, and contributory liability associated with the infringing activity of their customers. These liability limitations were counter-balanced in the DMCA by, *inter alia*, a provision authorizing a copyright owner to obtain subpoenas from federal courts directing ISPs to disclose the identity of their customers allegedly engaging in infringing activity. Specifically, section 512(h) of the DMCA provided that, upon meeting certain conditions,[3] "[a] copyright owner or a

---

At the same time, without clarification of their liability, service providers may hesitate to make the necessary investment in the expansion of the speed and capacity of the Internet. . . . In short, by limiting the liability of service providers, the DMCA ensures that the efficiency of the Internet will continue to improve and that the variety and quality of services on the Internet will continue to expand.

S. REP. NO. 105-190, at 8.

[3] Section 512(h) requires that the subpoena request contain a proposed subpoena, notification information subject to subsection (c)(3)(A), including "[i]dentification of the copyrighted work claimed to have been infringed," and "a

person authorized to act on the owner's behalf may request the clerk of any United States district court to issue a subpoena to a service provider for identification of an alleged infringer in accordance with this subsection." 17 U.S.C. § 512(h)(1). The ISP was required, upon receipt of a DMCA subpoena, to disclose "expeditiously . . . the information required by the subpoena, notwithstanding any other provision of law and regardless of whether the service provider responds to the notification." *Id.* § 512(h)(5).

This DMCA subpoena provision set forth in section 512(h) was an important "self-help" tool for copyright owners to obtain from the ISPs limited information about the ISPs' customers about whom the copyright owner had a good-faith belief predicated on specific information were using the ISPs' services to engage in infringing activity. As the text of the statute made clear, a copyright owner could obtain subpoenas from the clerk of *any* district court, irrespective of the potential location of the alleged infringers, and irrespective of the venue of the copyright owner's possible lawsuit against those persons illegally distributing its protected work. The statute provided guidance that "unless otherwise provided, the court should look to the provisions of the Federal Rules of Civil Procedure governing the issuance, service, and enforcement of a subpoena duces tecum." *Id.* § 512(h)(6).

The DMCA subpoena provision subsequently came under judicial scrutiny. In *Recording Industry Association of America, Inc. v. Verizon Internet Services*, Inc., 351 F.3d 1229 (D.C. Cir. 2003), and *In re Charter Communications, Inc., Subpoena Enforcement Matter*, 393 F.3d 771 (8th Cir. 2005), the D.C. Circuit and the Eighth Circuit concluded that section 512(h) "does not allow a copyright owner to request a subpoena for an ISP which merely acts as a conduit for data

---

sworn declaration to the effect that the purpose for which the subpoena is sought is to obtain the identity of an alleged infringer and that such information will only be used for the purpose of protecting rights under this title." 17 U.S.C. § 512(h)(2)(A)-(C). As summarized in the House Commerce Committee Report for the DMCA, "[u]nder this procedure, the copyright owner or agent files three documents with the clerk of any Federal district court . . . . The issuing of the order should be a ministerial function performed quickly for this provision to have its intended effect." H.R. REP. NO. 105-551, Pt. 2, Comm. on Commerce, 59-60 (1998).

transferred between two internet users." *In re Charter*, 393 F.3d at 776; *see also Verizon*, 351 F.3d at 1231. Instead, the Circuit Courts construed the statute to permit use of the subpoena authority only when "an ISP [is] engaged in storing on its servers material that is infringing or the subject of infringing activity." *Verizon*, 351 F.3d at 1233. According to the D.C. Circuit's and Eighth Circuit's interpretations of section 512(h), copyright holders attempting to identify persons infringing their copyrights using peer-to-peer file sharing programs – such as BitTorrent in the instant case – could not utilize the subpoena provision created in the DMCA to obtain identifying information from ISPs. *See Verizon*, 351 F.3d 1229 (vacating district court's order enforcing subpoenas issued to ISP for the names of two customers allegedly using a peer-to-peer file-sharing program to illegally copy and distribute copyrighted material); *In re Charter*, 393 F.3d 771 (vacating district court's order denying motion to quash subpoena issued to ISP for the names of customers allegedly using a peer-to-peer filesharing program to illegally copy and distribute copyrighted material).[4]

Judge Diana Murphy noted in her dissent in *In re Charter* that the D.C. Circuit and Eighth Circuit decisions limiting the scope of section 512(h)'s subpoena provision "ha[d] wide-reaching ramifications, because as a practical matter, copyright owners cannot deter unlawful peer-to-peer file transfers unless they can learn the identities of persons engaged in that activity." *Id.* at 775 n.3 (Murphy, J., dissenting). After these decisions, "copyright holders [were] left to file John Doe lawsuits to protect themselves from infringement by subscribers of conduit ISPs . . . , instead of availing themselves of the mechanism Congress provided in the DMCA . . . ." *Id.* at

---

[4] The Eighth Circuit also noted, without resolving, since the case was decided on statutory construction grounds, that the DMCA subpoena provision posed a constitutional issue in permitting the clerk of the court to exercise judicial power by reviewing the sufficiency of the subpoena request and authorizing the issuance of the subpoena, in the absence of an actual case or controversy. *In re Charter*, 393 F.3d at 777-78 ("[T]his provision *may* unconstitutionally invade the power of the judiciary by creating a statutory framework pursuant to which Congress, via statute, compels a clerk of court to issue a subpoena, thereby invoking the court's power.").

782 (Murphy, J., dissenting). Judge Murphy specifically commented on the unraveling of the compromises struck in the DMCA, explaining that "ISPs were only shielded from monetary and injunctive liability in exchange for their assistance in identifying subscribers who engage in acts of piracy over their networks and in removing or disabling access of infringers to protected works when technically possible," and that limiting the scope of section 512(h)'s subpoena provision "denies copyright holders the ability to obtain identification of those subscribers who purloin protected materials through § 512(a) conduit ISPs. This interpretation also shields conduit ISPs from liability without requiring their assistance in protecting copyrights." *Id.* In short, after *Verizon* and *In re Charter*, ISPs faced fewer statutory responsibilities to aid in the identification of alleged copyright infringers and combat infringement occurring through the use of their services, yet continued to enjoy the shield from liability under the remaining provisions of the DMCA.

Following *Verizon* and *In re Charter*, as Judge Murphy noted, the only mechanism for copyright owners, such as the plaintiff in the instant case, to obtain identifying information for the unknown persons, who are allegedly illegally downloading and distributing a copyrighted work using a peer-to-peer file sharing program, is to initiate a so-called "John Doe" lawsuit. The plaintiff must next obtain permission from the court for pre-litigation discovery, then issue subpoenas to the ISPs for the needed identifying information for the customers assigned the IP addresses for the computers being used to engage in the allegedly infringing activity.

While the ISPs assert that they are burdened by the number of pending copyright infringement actions and associated requests for identifying information for their customers, the plaintiff aptly states that "[w]ithout a large and growing problem of copyright infringement, there

could not be an increasing level of copyright infringement litigation."[5] Pl.'s Mem. in Response

to Amici Brief, ECF No. 27, at 2. Indeed, the plaintiff contends, without refutation by the ISPs,

that infringement occurring on the Internet through peer-to-peer file-sharing technology has risen

exponentially, and the instant lawsuit is an attempt by the plaintiff to "salvage the value of its

copyright." Compl. ¶ 8; *see also* Pl.'s Response to Amici Brief, at 2 (citing *Metro-Goldwyn-*

*Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 928-29 (2005) (referencing the increased use

of file-sharing software to illegally download copyrighted works)). The plaintiff, however,

cannot salvage the value of its copyright without assistance from the ISPs because there is no

way for the plaintiff to identify the unknown individuals referenced in the Complaint without

responses to the subpoenas by the ISPs. Now, fourteen years after the DMCA effectively limited

the ISPs' liability for copyright infringement in exchange for their cooperation in identifying

persons involved in infringing activity through the use of their services, the ISPs object to

providing such information, arguing that "any burden" placed upon them for information is

undue.

## B. STANDING

Prior to reaching the Movant ISPs' arguments regarding personal jurisdiction and joinder,

the Court must address the plaintiff's contention that the ISPs lack standing to assert these

defenses. The plaintiff is correct that lack of personal jurisdiction and misjoinder are not

delineated under Federal Rule of Civil Procedure 45 as bases to quash a subpoena issued to a

third-party. Indeed, third-parties cannot assert these defenses as a basis to dismiss the underlying

---

[5] The plaintiff's estimates regarding the amount of online infringing activity and the economic harm resulting from such activity is corroborated by a recent government report. *See* U.S. GOV'T ACCOUNTABILITY OFFICE, GAO-10-423, INTELLECTUAL PROPERTY: OBSERVATIONS ON EFFORTS TO QUANTIFY THE ECONOMIC EFFECTS OF COUNTERFEIT AND PIRATED GOODS 23-24 (2010) (estimating that U.S. economy annually loses $58 billion, over 370,000 jobs, and $2.6 billion in tax revenue as a result of copyright infringement over the Internet) (citing Stephen E. Siwek, THE TRUE COST OF COPYRIGHT INDUSTRY PIRACY TO THE U.S. ECONOMY, Institute for Policy Innovation (IPI), IPI Center for Technology Freedom, Policy Report 189 (Oct. 2007)).

action because, if either of these flaws did exist in the underlying action, they must be raised, and may be waived, by named defendants. *See* FED. R. CIV. P. 12(b)(2) (lack of personal jurisdiction must be asserted in a responsive pleading); FED. R. CIV. P. 21 ("Misjoinder of parties is not a ground for dismissing an action . . . .").

The Movant ISPs do not, however, seek to dismiss the plaintiff's lawsuit for lack of jurisdiction and improper joinder. Rather, they assert that these alleged deficiencies in the plaintiff's Complaint are relevant to the Court's analysis, pursuant to Federal Rule of Civil Procedure 45(c)(3)(A)(iv), of whether the plaintiff's subpoenas subject the ISPs to an "undue burden." Movant ISPs' Reply in Supp. of Mot. to Quash ("Movant ISP's Reply"), ECF No. 26, at 2. The ISPs contend that the Court should quash the subpoenas issued to the ISPs because the plaintiff's underlying lawsuit is defective and thus "*any* burden" to produce information in this case is "undue" under Federal Rule of Civil Procedure 45(c). *Id.* at 3. According to the ISPs, the plaintiff "lacks the requisite 'good faith belief that . . . discovery will enable it to show that the court has personal jurisdiction' over the Doe defendants" and the putative defendants ultimately cannot be tried together in this case because of misjoinder. *Id.* at 7. Consequently, "the sought-after jurisdictional discovery is not likely to lead to a defendant being served in this lawsuit." *Id.* at 3.

As discussed below, the Court concludes that the plaintiff's Complaint is not procedurally defective because consideration of personal jurisdiction and joinder are not appropriate at this procedural juncture. Accordingly, because the Complaint sufficiently alleges *prima facie* allegations of copyright infringement, there are no named defendants in this case, and the plaintiff must obtain information necessary to identify those allegedly infringing its copyright in order to proceed with a lawsuit, the plaintiff's subpoenas to the ISPs are properly issued, and compliance with these subpoenas will not impose an undue burden upon the ISPs.

Page **15** of **42**

## C.     THE ISPs HAVE FAILED TO DEMONSTRATE THAT THE PLAINTIFF'S SUBPOENAS SUBJECT THEM TO A UNDUE BURDEN

Despite their reliance on Federal Rule of Civil Procedure 45(c)(3)(A)(iv), which requires the Court to quash a subpoena if it subjects a third-party to an undue burden, the Movant ISPs eschew the text and plain meaning of the Rule by arguing that *any* burden placed upon them in this case is unacceptable. *See* Mem. Supp. Movant ISPs' Mot. Quash, at 4; Comcast Opp'n Pl.'s Mot. Compel, ECF No. 12, at 3. Although the Movant ISPs contend that subpoenas from "similar mass 'Doe' defendant actions' . . . have imposed – and continue to pose – a substantial administrative burden on the ISPs," Mem. Supp. Movant ISPs' Mot. Quash, at 4, the Movant ISPs present no evidence to support this claim of hardship. *See Irons v. Karceski*, 74 F.3d 1262, 1264 (D.C. Cir. 1995) (stating that "the party seeking to quash a subpoena bears a heavy burden of proof") (citation omitted); *see also In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606, 612 (E.D. Va. 2008) ("When a non-party claims that a subpoena is burdensome and oppressive, the non-party must support its claim by showing how production would be burdensome.").

In support of their Motion to Quash, the Movant ISPs supplied declarations from five individuals,[6] but only two of these declarations – those from the representatives of Cox Communications and Verizon – mention the administrative burden, and that is essentially all they do. Both of these declarations merely state in conclusory fashion that subpoenas associated with similar copyright infringement cases "have imposed (and continue to impose) a substantial administrative burden . . . ." *See* Movant ISPs Mot. to Quash, Cadenhead Decl., at 1; *Id.*,

---

[6] The Movant ISPs supplied declarations from Randall J. Cadenhead, Senior Counsel for Cox Communications; Rhonda Compton, an employee in AT&T's Internet Services Legal Compliance group; Tim Frendberg, Senior Director of Voice Services and Internet Security for Bright House Networks, LLC; Sean Moriarty, Manager of IP Legal Compliance for Verizon Online, LLC and Verizon Communications, Inc.; and Bart Huffman, an attorney with Locke Lord LLC, which represents SBC Internet Services, Inc. *See* Movant ISPs' Mot. Quash, ECF No. 8, Decls. of Cadenhead, Compton, Frendberg, Moriarty, and Huffman.

Moriarty Decl. at 1-2. These declarants provide no further detail as to Cox's or Verizon's cost of complying with the plaintiff's subpoenas, the time associated with producing the requested information, or the procedure by which the information is obtained and released. The declarations from AT&T and Bright House Networks do even less, making no mention whatsoever of any burden associated with compliance with the plaintiff's subpoenas.

Given the Movant ISPs' failure to provide any evidentiary support for their claim of undue burden in their moving papers, the Court invited the Movant ISPs and Comcast to present witnesses at the motions hearing. *See* Minute Order dated Apr. 17, 2012. The Movant ISPs, however, forfeited the opportunity to present evidence corroborating their alleged burden by choosing instead to present only testimony from a staff technologist of a civil liberties organization.[7]  Consequently, the only evidence before the Court to establish the burden incurred by the Movant ISPs are the declarations originally supplied in support of their motion to quash. Other than barebones references from two of the four movant ISPs that these subpoenas impose "a substantial administrative burden," the ISPs fail to present any witness or other evidentiary detail to demonstrate a burden to the Court, let alone what steps the ISPs are or could be taking to deter infringing activity on their networks to reduce any burden subpoena compliance engenders. *See Alberts v. Wheeling Jesuit Univ.,* No. 5:09-CV-109, 2010 WL 1539852, at *8 (N.D. W. Va. Apr. 19, 2010) (ruling that party resisting discovery must show how requested discovery "was overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden"); *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas,* 262 F.R.D. 293, 300 (S.D.N.Y. 2009) (quoting 9 MOORE'S FEDERAL

---

[7] At the motions hearing, the parties presented testimony from two witnesses: the plaintiff presented a technology consultant and the Movant ISPs presented a senior staff technologist for a non-profit "civil liberties organization working to protect rights in the digital world." Hearing Tr. (Apr. 27, 2012); Amici Mem. in Supp. Mot. for Leave to File Brief, ECF No. 17, at 1.

PRACTICE ¶ 45.51[4] (3d ed. 2009), for proposition that "[a] party objecting to a subpoena on the ground of undue burden generally must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request"); *In re Urethane Antitrust Litig.*, 261 F.R.D. 570, 575-76 (D. Kan. 2009) ("A party asserting undue burden must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request. Defendants have provided only conclusory allegations and have not offered any detailed explanation, affidavit, or other evidence demonstrating that they will suffer undue burden and expense by complying with the discovery." (internal footnote omitted)).

Rather, the Movant ISPs' declarations make clear that the administrative burden incurred by the ISPs in responding to the plaintiff's subpoenas is minimal. As the plaintiff notes, "[b]y the [Movant ISPs'] own sworn admission, the information requested in the subpoenas is currently sitting on the desks of Mr. Cadenhead, Ms. Compton, Mr. Frendberg and Mr. Moriarity. (Decl. of Randall Cadenhead, ECF No. 8-3 ¶¶ 3-4 (explaining that he identified the "mailing and billing address for [the 110] subscribers."); Decl. of Rhonda Compton, ECF No. 8-5 ¶ 4 (explaining that she performed a "routine search of AT&T's systems" for every fifth IP address and "determine[d] the Internet subscriber for the listed IP address at the specified date and time . . ."); Decl. of Tim Frendberg, ECF No. 8-7 ¶¶ 2-3 (explaining that he determined the "service address" for all 30 subscribers); Decl. of Sean Moriarty, ECF No. 8-9 ¶ 3 (explaining that he determined the "mailing or billing address for these [188] subscribers . . .")." Pl.'s Opp'n Movant ISPs' Mot. Quash, ECF No. 13, at 6-7.[8] Despite the fact that the Movant ISPs have already located the requested information, they urge the Court to quash the plaintiff's subpoenas because of misjoinder and lack of personal jurisdiction. This argument is erroneous.

---

[8] The Movant ISPs' declarations attest that nearly all of the IP addresses identified in the Complaint are associated with customers residing outside of the District of Columbia but, as explained below, since none of these customers is yet named as a defendant, residence outside this jurisdiction is irrelevant at this procedural juncture.

### D.     CONSIDERATION OF JOINDER IS PREMATURE

The Movant ISPs argue that the IP addresses listed in the plaintiff's Complaint are misjoined because the unknown individuals assigned the Listed IP Addresses are alleged to have infringed the plaintiff's copyrighted movie over a four-month period, which is "irreconcilable with Plaintiff's assertion that joinder . . . is proper due to the 'same series of transactions.'" Mem. Supp. Movant ISPs' Mot. Quash, ECF No. 8, at 2.  The Movant ISPs further contend that the Court should reconsider its previous ruling that joinder need not be considered at this procedural juncture because the plaintiff's "unbroken practice" of declining to sue individuals by name "precludes consideration of joinder at a later time and weighs heavily in favor of addressing Rule 20's requirements at the outset." *Id.*  These arguments are not persuasive.

### 1.     Legal Standard

Pursuant to Federal Rule of Civil Procedure 20, defendants may be joined in a single action if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." FED. R. CIV. P. 20(a)(2).  "[P]arties are misjoined when the preconditions of permissive joinder set forth in Rule 20(a) have not been satisfied." *Disparte v. Corporate Exec. Bd.,* 223 F.R.D. 7, 12 (D.D.C. 2004) (citation omitted).

The purpose of joinder under Rule 20 is "to promote trial convenience and expedite the final resolution of disputes, thereby preventing multiple lawsuits, extra expense to the parties, and loss of time to the court as well as the litigants appearing before it." *W. Coast Prods., Inc. v. Does 1-5,829,* 275 F.R.D. 9, 15 (D.D.C. 2011) (quoting *M.K. v. Tenet,* 216 F.R.D. 133, 137 (D.D.C. 2002)).  The two prongs of Rule 20(a) are thus "liberally construed in the interest of convenience and judicial economy . . . in a manner that will secure the just, speedy, and

inexpensive determination of the action." *Spaeth v. Mich. State Univ. Coll. of Law*, No. 11-cv-1376, 2012 WL 517162, at *2 (D.D.C. Feb. 17, 2012) (quoting *Davidson v. District of Columbia,* 736 F. Supp. 2d 115, 119 (D.D.C. 2010)). Indeed, "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; [and] joinder of claims, parties, and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).

Federal Rule of Civil Procedure 21 states that "[m]isjoinder of parties is not a ground for dismissing an action" and improper joinder may be remedied by "drop[ping]" a party and severing the claim against that party. FED. R. CIV. P. 21 ("On motion or on its own, the Court may at any time, on just terms, add or drop a party."). The remedy for misjoinder therefore creates separate actions containing the same claims against the dropped defendant. *See Bailey v. Fulwood*, 780 F. Supp. 2d 20, 26 (D.D.C. 2011); *In re Brand-Name Prescription Drugs Antitrust Litig.*, 264 F. Supp. 2d 1372, 1376 (J.P.M.L. 2003) ("[S]everance of claims under Rule 21 results in the creation of separate actions."). The Court may exercise discretion regarding the proper time to sever parties, and this determination includes consideration of judicial economy and efficiency. *See Disparte*, 223 F.R.D. at 10 (permissive joinder under Federal Rule 20 is designed "to promote trial convenience and expedite the resolution of lawsuits") (quoting *Puricelli v. CNA Ins. Co.*, 185 F.R.D. 139, 142 (N.D.N.Y. 1999)).

Given that joinder and severance are interrelated, courts have read Rule 21 in conjunction with Rule 42(b), which allows the court to sever claims in order to avoid prejudice to any party. *Tenet*, 216 F.R.D. at 138; *see also* FED. R. CIV. P. 42(b) ("For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims."). Consequently, in addition to the two requirements of Rule 20(a)(2), courts also consider whether joinder would prejudice any party or

result in needless delay. *See Lane v. Tschetter*, No. 05-cv-1414, 2007 WL 2007493, at *7 (D.D.C. July 10, 2007); *Tenet*, 216 F.R.D. at 138.

In the instant case, the plaintiff has met all the requirements for permissive joinder under Federal Rule of Civil Procedure 20(a)(2): the plaintiff's claims against the unknown individuals associated with the Listed IP Addresses "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences" and there are common questions of law and fact relating to the claims against them. The Court additionally sees no prejudice to these individuals. Rather, joinder of the claims against the unknown individuals associated with the Listed IP Addresses at this procedural juncture presents the most efficient mechanism for the plaintiff to obtain the identifying information required to evaluate the claims against each individual, protect its copyrighted work, and for judicial review of the plaintiff's claims.

### 2. Same Transaction, Occurrence, or Series of Transactions or Occurrences

The first requirement for permissive joinder under Rule 20(a)(2) is that the plaintiff's claims against the defendants must arise "out of the same transaction, occurrence, or series of transactions or occurrences." FED. R. CIV. P. 20(a)(2)(A). This essentially requires claims asserted against joined parties to be "logically related." *Disparte*, 223 F.R.D. at 10. This is a flexible test, and courts seek the "broadest possible scope of action." *Lane*, 2007 WL 2007493, at *7 (quoting *Gibbs*, 383 U.S. at 724).

The Movant ISPs assert that the Listed IP Addresses are not part of the same transaction or series of transactions. According to them, the "wide range of dates and times over a four-month period" during which the alleged infringing activity took place is "fatally inconsistent with Plaintiff's assertion that joinder of all 1,058 Defendants is proper" and it does not follow

that users who "shared excerpts of the same film days, weeks, or months apart" are part of the "same series." Mem. Supp. Movant ISPs' Mot. Quash, ECF No. 8, at 9-10. This is incorrect.

The plaintiff's Complaint alleges that the unknown individuals illegally infringed the plaintiff's copyright by downloading and distributing the movie *Popular Demand* using a file-sharing protocol called BitTorrent. This technology allows users to download files through a "piecemeal system with multiple pieces of data coming from peer members [ ] usually referred to as a 'swarm.'" Compl. ¶ 5. When using BitTorrent, "any seed peer that has downloaded a file prior to the time a subsequent peer downloads the same file is automatically a source for the subsequent peer so long as that first seed peer is online at the time the subsequent peer downloads a file." *Id.* ¶ 6.

Based on these allegations in the Complaint, the plaintiff's claims against the unknown individuals infringing its copyright are logically related. The plaintiff alleges that each unknown individual used the BitTorrent protocol and exchanged bits of the plaintiff's motion picture. Thus, each unknown individual is a possible source and may be responsible for distributing the movie to the other unknown individuals, who are also using the same file-sharing protocol to copy the identical copyrighted material. *See Disparte*, 223 F.R.D. at 10 (to satisfy Rule 20(a) claims must be "logically related," and this test is "flexible"). Although some IP addresses listed in the Complaint are identified as infringing the plaintiff's copyright four months apart, at this stage there is no basis to rebut the plaintiff's claims that the Listed IP Addresses were, at least potentially, part of the same swarm and provided or shared pieces of the plaintiff's copyrighted work. *See W. Coast Prods., Inc.*, 275 F.R.D. at 15; *Call of the Wild*, 770 F. Supp. 2d at 343. If the plaintiff chooses to proceed against those allegedly infringing its copyright after it obtains identifying information, the named defendants may be able to rebut these allegations. At the pleading stage, however, the plaintiff has sufficiently alleged that its claims against the

defendants potentially stem from the same transaction or occurrence and are logically related. *See Arista Records LLC v. Does 1-19,* 551 F. Supp. 2d 1, 11 (D.D.C. 2011) ("While the Court notes that the remedy for improper joinder is severance and not dismissal, . . . the Court also finds that this inquiry is premature without first knowing Defendants' identities and the actual facts and circumstances associated with Defendants' conduct."); *see also Call of the Wild*, 770 F. Supp. 2d at 343 (concluding that "at this nascent stage of the case, the plaintiffs have sufficiently alleged that the infringing activity at issue in each of the cases may involve multiple computers, based in various jurisdictions, which are using the BitTorrent protocol to make available for sharing the same copyrighted content").

### 3. Question of Law or Fact Common to All Potential Defendants

The second requirement for permissive joinder under Rule 20(a)(2) requires the plaintiff's claims to contain a common question of law or fact. FED. R. CIV. P. 20(a)(2)(B); *see also Disparte*, 223 F.R.D. at 11. This requirement is easily met. For each defendant ultimately named, the plaintiff is required to establish the validity of its copyright and the infringement of the exclusive rights reserved to the plaintiff as the copyright holder. Additionally, the plaintiff must prove that each individual named as a defendant used the same BitTorrent file-sharing technology to infringe the plaintiff's copyright in the same work. Moreover, factual issues related to how BitTorrent works and the methods used by the plaintiff to investigate, uncover, and collect evidence about the infringing activity will be common to each individual.[9] At this procedural juncture, the claims against the unknown individuals infringing the plaintiff's copyright are identical. The commonality in facts and legal claims support joinder under Rule

---

[9] To the extent that additional issues may be raised as to whether the defendants must be part of the same swarm, the plaintiff has sufficiently alleged commonality in the factual underpinnings of the claim to support joinder. *See* Compl. ¶¶ 5-6; *see also* Hearing Tr. at 76-77 (Apr. 27, 2012) (EFF's expert stating that individuals will be part of the same swarm "if the user has the file available for sharing and has the [BitTorrent] application continuing to be open and connected that it will be shared with other people even if the user is doing something else [on his/her computer]").

20(a)(2)(B).

### 4. Prejudice to Any Party or Needless Delay

In addition to the requirements of Rule 20(a)(2), the Court must also inquire whether joinder will prejudice any party or cause needless delay. At this stage in the proceedings, the Court concludes that it will not.

The unknown individuals alleged to have infringed the plaintiff's copyright are not prejudiced by joinder. These individuals are identified only by the IP address assigned to the computers found by the plaintiff being used for allegedly infringing activity, and they are not named as defendants in this case. Given that the plaintiff has not named or asserted claims against the individuals associated with the Listed IP Addresses, these unknown individuals have no obligation to respond to the Complaint or assert a defense. If the plaintiff chooses to name as a defendant any of these unknown individuals -- after obtaining their information and evaluating the viability of a lawsuit -- the defendants may then be able to demonstrate prejudice by joinder with others accused of similar activity. Until that time, these individuals can demonstrate no legally cognizable harm by virtue of the plaintiff filing a lawsuit against "John Does."

While the unknown individuals who are referenced as "John Does" in the Complaint suffer no prejudice, joinder at this stage in the proceedings is the single, most efficient mechanism available for the plaintiff to obtain information to identify those allegedly illegally downloading and distributing its movie. Severing the Doe defendants would essentially require the plaintiff to file 1,058 separate cases, pay separate filing fees, and obtain 1,058 separate subpoenas for each of the Listed IP Addresses. This burden for the plaintiff – not to mention the judicial system – would significantly frustrate the plaintiff's efforts to identify and seek a remedy from those engaging in the alleged infringing activity. Moreover, such an outcome would certainly not be in the "interest of convenience and judicial economy," or "secure the just,

speedy, and inexpensive determination of th[e] action." *Lane*, 2007 WL 2007493, at *7

(declining to sever defendants where "parties joined for the time being promotes more efficient

case management and discovery" and no party was prejudiced by joinder).[10]

The Movant ISPs "recognize" that this Court has previously found to be premature

consideration of the joinder issue before defendants are formally named and brought into this

case, but nonetheless urge the Court to reconsider. Specifically, the Movant ISPs argue that

plaintiff's counsel "moves from court to court seeking authorization to serve subpoenas for the

broadest number of subscribers – imposing ever-increasing burdens on the ISPs – without using

the information gathered for the purpose of litigating any case on its merits." Mem. Supp.

Movant ISPs' Mot. Quash, ECF No. 8, at 11-12. This strategy, according to the Movant ISPs,

"effectively precludes consideration of joinder at a later point in the proceedings . . . [and]

ensures . . . [that] the court will never have the opportunity to evaluate joinder." *Id.* at 11

(quoting *McGIP, LLC v. Does*, No. 11-cv-2331, 2011 U.S. Dist. LEXIS 108109, at *10 (N.D.

Cal. Sept. 16, 2011) and *Arista Records, LLC v. Does*, No. 1-07-cv-2828, 2008 U.S. Dist. LEXIS

90183, at *17 (N.D. Ohio Nov. 3, 2008)).

Although the plaintiff objects to this characterization of its litigation strategy, even

assuming, *arguendo*, that the Movant ISPs' contentions are correct, it would not alter the Court's

conclusion that joinder is proper at this time. The plaintiff has set forth cognizable claims of

copyright infringement against the unknown individuals identified only by the Listed IP

Addresses in the Complaint. As explained above, the Court has evaluated whether joinder is

proper and has concluded that these individuals are not only properly joined under Federal Rule

of Civil Procedure 20, but also face no prejudice by joinder at this stage in the proceedings

---

[10] The Movant ISPs acknowledged that the plaintiff would not be able to protect its copyright if the Court were to sever the unknown defendants in this action due to the cost of filing an individual lawsuit for each of the thousands of IP addresses identified as being used for allegedly online infringing activity. Hearing Tr. at 127-28 (Apr. 27, 2012).

because they have no obligation to identify themselves or to respond to the Complaint.  While the Movant ISPs criticize plaintiff's counsel for not asserting claims against named defendants, the plaintiff has no obligation to do so.  At this stage, the plaintiff is attempting to identify those infringing its copyright so that it may investigate the feasibility of proceeding in lawsuits against them.  That the plaintiff chooses, after obtaining identifying information, to pursue settlement or to drop its claims altogether is of no consequence to the Court.  The plaintiff has sufficiently pled allegations of copyright infringement and has a right to name or decline to assert claims against defendants whose identities and other relevant circumstances become known to the plaintiff.  *See Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 91 (2005) ("In general, the plaintiff is the master of the complaint and has the option of naming only those parties the plaintiff chooses to sue, subject only to the rules of joinder [of] necessary parties.") (quoting 16 MOORE'S FEDERAL PRACTICE § 107.14[2][c], p. 107-67 (3d ed. 2005)).

At this procedural juncture, the plaintiff has met the requirements of permissive joinder under Rule 20(a)(2).  The unknown individuals referenced in the Complaint are not prejudiced by joinder, and severance would render it impossible for the plaintiff to protect its copyright.  Courts are instructed to "'entertain[] the broadest possible scope of action consistent with fairness to the parties.'"  *Lane*, 2007 WL 2007493, at *7 (quoting *Gibbs*, 383 U.S. at 724).  Joinder at this juncture not only promotes judicial efficiency, but is the only way for the plaintiff to protect the rights afforded to it as a copyright owner.  The Court therefore declines to sever into separate suits each Listed IP Address assigned to a computer used by the ISPs' customers and allegedly engaged in infringing activity.

### E. EVALUATING PERSONAL JURISDICTION AND VENUE IS PREMATURE

The ISPs argue that the plaintiff's subpoenas should be quashed because the Court lacks personal jurisdiction over the individuals associated with the IP addresses listed in the Complaint. The ISPs further contend that "[f]or the same reasons that personal jurisdiction is lacking[,] . . . venue is improper under the governing venue statute, 28 U.S.C. § 1400(a), which requires that all defendants must be subject to suit in this district." Mem Supp. Movant ISPs' Mot. Quash, ECF No. 8, at 9. For the reasons explained below, the Court disagrees. At this procedural juncture, evaluating potential jurisdictional or improper venue defenses, which may ultimately be waived by any future defendants, is premature.

#### 1. Personal Jurisdiction is Not Relevant at this Procedural Juncture

The ISPs specifically contend that the plaintiff's subpoenas are "inappropriate because the vast majority of these 'Does' have no connection to this forum and thus could not be sued here even if, *arguendo*, Plaintiff were to use the information it seeks from the ISPs to name Defendants and then to attempt to serve them." *Id.* They state that "the inclusion of thousands of Defendants in a single copyright action does not satisfy the demands of personal jurisdiction," and therefore the plaintiff's request for information to identify the unknown individuals infringing its copyright "imposes an undue burden upon the ISPs without a corresponding benefit to the justice system." *Id.* at 7. As stated in the Court's previous opinions, however, personal jurisdiction is not relevant when there are no named defendants in the case. This is true for three reasons.

First, the plaintiff correctly notes that it need not establish personal jurisdiction when filing a Complaint. Federal Rule of Civil Procedure 8(a)(1) requires a pleading to contain "a short and plain statement of the grounds for the court's jurisdiction, unless the court already has

jurisdiction and the claim needs no new jurisdictional support." For purposes of Rule 8, "jurisdiction" refers to subject matter jurisdiction. 2 MOORE'S FEDERAL PRACTICE ¶ 8.03[1] (3d ed. 2007). There is no requirement that a complaint allege a basis for personal jurisdiction over a defendant. *See* 4 Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 1067.6 (3d ed. 2007) (collecting cases and noting that "strictly speaking, under Federal Rule 8(a) plaintiffs are not required to plead the basis for personal jurisdiction over defendants"); *accord Stirling Homex Corp. v. Homasote Co.,* 437 F.2d 87, 88 (2d Cir. 1971) (noting that Rule 8(a)'s "term 'jurisdiction' . . . refers to subject matter jurisdiction rather than personal jurisdiction."); *Polar Molecular Corp. v. Amway Corp.*, No. 1:07-cv-460, 2007 WL 3473112, at *8 (W.D. Mich. Nov. 14, 2007); *D'Addario v. Geller*, 264 F. Supp. 2d 367, 390 n.29 (E.D. Va. 2003); *Gray v. Lewis & Clark Expeditions, Inc.*, 12 F. Supp. 2d 993, 995 (D. Neb. 1998); *Hansen v. Neumueller GmbH*, 163 F.R.D. 471, 474-75 (D. Del. 1995); *Curran Co. v. Imedco GmbH,* No. 91-C-7938, 1992 WL 370237, at *2 (N.D. Ill. Dec. 3, 1992); *Dirks v. Carnival Cruise Lines* 642 F. Supp. 971, 973 (D. Kan. 1986); *In re Enron Corp.*, 316 B.R. 434, 439 (Bankr. S.D.N.Y. 2004). The plaintiff need only establish personal jurisdiction after it has been raised and contested by a defendant through a motion filed pursuant to Federal Rule of Civil Procedure 12(b)(2). *See, e.g., Hagen v. U-Haul Co. of Tenn.*, 613 F. Supp. 2d 986, 1001 (W.D. Tenn. 2009) ("The burden of establishing the existence of personal jurisdiction lies with the party asserting such jurisdiction, i.e. the plaintiff. Although, a plaintiff is only required to meet this burden when challenged by a motion under Rule 12(b)(2) . . . .") (internal citation omitted). There are no named defendants and, consequently, no person with standing to challenge personal jurisdiction before the Court.

Second, it would be premature to consider the exercise of personal jurisdiction over unknown individuals when neither the Court nor the plaintiff is able to evaluate a specific individual's ties to the District of Columbia. *See, e.g., London-Sire Records, Inc. v. Doe 1*, 542

F. Supp. 2d 153, 180-81 (D. Mass. 2008) (concluding that it is "premature to adjudicate personal jurisdiction" and permitting plaintiff to engage in jurisdictional discovery because "[e]ven taking all of the facts in [the putative defendant's] affidavit as true, it is possible that the Court properly has personal jurisdiction"); *Humane Soc'y of the U.S. v. Amazon.com, Inc.*, No. 07-cv-623, 2007 U.S. Dist. LEXIS 31810, at *10 (D.D.C. May 1, 2007) ("[A] plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery, lest the defendant defeat the jurisdiction of a federal court by withholding information on its contacts with the forum") (quoting *Virgin Records Am., Inc. v. Does 1-35,* No. 05-1918, 2006 WL 1028956, at *3 (D.D.C. Apr. 18, 2006)); *Sony Music Entm't, Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 567 (S.D.N.Y. 2004) (evaluating personal jurisdiction premature without defendants' identifying information); *Virgin Records,* 2006 WL 1028956, at *3 (rejecting amici's personal jurisdiction arguments since "Defendant's Motion to Quash is without merit [] because it is premature to consider the question of personal jurisdiction in the context of a subpoena directed at determining the *identity* of the Defendant") (citing *Elektra Entm't Grp., Inc. v. Does 1-9,* No. 04-2289, 2004 WL 2095581, at *5 (S.D.N.Y. Sept. 8, 2004)).

The plaintiff here seeks limited discovery to obtain information identifying the unknown individuals allegedly infringing its copyright in order to consider whether to name and serve them as defendants. The plaintiff certainly cannot anticipate and rebut personal jurisdiction arguments without more information, starting with the names and addresses of the ISPs' customers. Those customers, when and if named as defendants, may assert a personal jurisdiction defense, and the plaintiff may be able to counter such defense to establish personal jurisdiction with evidence not yet developed. For this reason, courts have regularly permitted a discovery period within which a plaintiff may gather evidence to support jurisdiction in cases where a party's contacts with the jurisdiction are unclear and the record before the court is

"plainly inadequate." *See GTE New Media Servs. v. BellSouth Corp.*, 199 F.3d 1343, at 1351-52 (D.C. Cir. 2000) (reversing lower court's finding of personal jurisdiction, but stating that "[t]his court has previously held that if a party demonstrates that it can supplement its jurisdictional allegations through discovery, then jurisdictional discovery is justified"); *accord Convertino v. U.S. Dep't of Justice*, 684 F.3d 93, 99 (D.C. Cir. 2012) (stating that "[w]hile the district court enjoys broad discretion in structuring discovery, summary judgment is premature unless all parties have had a full opportunity to conduct discovery. A Rule 56(f) motion requesting time for additional discovery should be granted almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence.") (internal citations and quotation marks omitted). "This Circuit's standard for permitting jurisdictional discovery is quite liberal," *Diamond Chem. Co. v. Atofina Chems., Inc.*, 268 F. Supp. 2d 1, 15 (D.D.C. 2003), and jurisdictional discovery is available when a party has "at least a good faith belief" that it has personal jurisdiction. *Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1090 (D.C. Cir. 1998). Courts have permitted discovery even when a party has failed to establish a *prima facie* case of personal jurisdiction. *See GTE New Media Servs.*, 199 F.3d at 1351-52 ("[A]s the record now stands, there is absolutely no merit to [plaintiff]'s bold claim that the parent companies and subsidiaries involved in this lawsuit should be treated identically. Jurisdictional discovery will help to sort out these matters."); *see also In re Vitamins Antitrust Litig.*, 94 F. Supp. 2d 26, 35 (D.D.C. 2000) (discussing *GTE New Media Servs.* and stating that "the D.C. Circuit held that although plaintiffs had failed to establish a prima facie case of personal jurisdiction and the court was unable to tell whether jurisdictional discovery would assist GTE on this score, plaintiffs were entitled to pursue [discovery]."). In such cases, a party is entitled to pursue "precisely focused discovery aimed at addressing matters relating to personal jurisdiction." *GTE New Media Sers., Inc.*, 199 F.3d at 1352.

Finally, it would be improper for the Court to consider personal jurisdiction at this stage

because individuals may choose to waive personal jurisdiction and litigate in this forum.[11] *See*

FED. R. CIV. P. 12(b)(2) (stating that a lack of personal jurisdiction may be asserted as a defense,

but it must be asserted in the responsive pleading). In *Anger v. Revco Drug Co.*, 791 F.2d 956

(D.C. Cir. 1986) (per curiam), the D.C. Circuit admonished that "the Federal Rules of Civil

Procedure indicate that personal jurisdiction is a matter to be raised by motion or responsive

pleading, not by the court *sua sponte*. Therefore, before the complaint has been served and a

response received, the court is not positioned to determine conclusively whether personal

jurisdiction exists." *Id.* at 958 (reversing district court's *sua sponte* dismissal, pursuant to 28

U.S.C. § 1915(d),[12] of complaint filed *in forma pauperis*); *see also Buchanan v. Manley*, 145

F.3d 386, 387 (D.C. Cir. 1998) (per curiam) (stating that district court's *sua sponte* dismissal of

prisoner's complaint for improper venue was harmless error); *W. Coast Prods., Inc.*, 275 F.R.D.

at 14 (citing *Anger* and rejecting putative defendants' argument that the plaintiff's subpoenas

should be quashed for lack of personal jurisdiction). The D.C. Circuit concurred with the Third

Circuit's conclusion that it is "inappropriate for the trial court to dispose of the case *sua

sponte* on an objection to the complaint which would be waived if not raised by the defendant(s)

in a timely manner." *Anger*, 791 F.2d at 958 (quoting *Sinwell v. Shapp*, 536 F.2d 15, 19 (3d Cir.

1976)); *see also Manley*, 145 F.3d at 387. This is precisely the situation before the Court.

---

[11] For example, in *Third Degree Films, Inc. v. Zwarycz*, No. 11-cv-1833 (D.D.C. 2012), another case before this
Court, even before the plaintiff formally named her as a defendant, the defendant voluntarily identified herself as the
ISP customer associated with an IP address listed in the complaint as being used to engage in allegedly infringing
activity. *Third Degree Films*, No. 11-cv-1833, ECF No. 18. The defendant further waived her personal jurisdiction
defense by filing an Answer and asserted counterclaims against the plaintiff. *Id.* Following a brief period of
discovery, the plaintiff voluntarily dismissed its case against the defendant with prejudice, *id.*, Pl.'s Stip. of
Dismissal, ECF No. 59, since a digital forensic examination of the defendant's computer "found no evidence of
BitTorrent on Zwarycz laptop," and the plaintiff was "unable to investigate the events in Zwarycz's household" to
establish who was using the computer to engage in allegedly illegal downloads and distribution of the copyright
work. *Id.*, Pl.'s Rule 41 Mot. to Dismiss, ECF No. 56 at 2.

[12] In 1996, Congress amended 28 U.S.C. § 1915 and, *inter alia*, redesignated subsection (d) as subsection (e).

The ISPs acknowledge that "the Defendants 'could consent' to jurisdiction," but argue that "as a practical matter, the 1,000-plus Does will not be named as Defendants or served here—and thus, the proper scope of this lawsuit and the third-party discovery sought for it must be addressed now, or never." Movant ISPs' Reply, ECF No. 26, at 6. This argument lacks merit.

The plaintiff's subpoenas seek only information to identify those infringing its copyright and potentially name defendants. The Movant ISPs assert that because the plaintiff may not name any defendants in this case, the plaintiff's request for identifying information "imposes an undue burden upon the ISPs without a corresponding benefit to the justice system." Mem. Supp. Movant ISPs' Mot. Quash, ECF No. 8, at 7. This statement is both overly simplistic and incorrect. Upon receipt of the identifying information sought in the subpoenas, the plaintiff is entitled to seek settlement with these individuals, or decide that pursuing a lawsuit against particular defendants is no longer feasible or cost-effective. Either course selected by the plaintiff would give the copyright owner the opportunity to effectuate its statutorily protected rights and thereby serves our system of justice.

Furthermore, the ISPs' contention that the Court should examine personal jurisdiction at this stage because the "proper scope" of the plaintiff's action must be "addressed now or never" is inaccurate. The ISPs do not dispute that the plaintiff has set forth cognizable claims of copyright infringement against the unknown individuals associated with the Listed IP Addresses. *See generally* Hearing Tr. at 101 (Apr. 27, 2012). As explained above, the Court has determined that joinder of these unknown individuals is appropriate at this stage while the plaintiff obtains information to identify and consider naming defendants. Contrary to the Movant ISPs' assertion, the Court has already evaluated the scope of this case and concluded that it is proper.

## 2. Venue is Not Relevant at this Procedural Juncture

The venue statute for copyright actions, 28 U.S.C. § 1400(a), differs from the general

venue statute, 28 U.S.C. § 1391(b), for federal question actions. Specifically, venue for copyright infringement suits is limited to districts "in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a). An individual "resides" for venue purposes in the district of his domicile. 17 MOORE'S FEDERAL PRACTICE, § 110.39[2], at 110-76 (3d ed. 2011). A defendant is "found" for venue purposes where he is subject to personal jurisdiction. *Id.; see also DSMC, Inc. v. Convera Corp.*, 273 F. Supp. 2d 14, 22 (D.D.C. 2002) (where court has personal jurisdiction over defendant, "venue is proper pursuant to § 1400(a)"); *Mullis v. Wright*, No. 89-cv-2379, 1990 U.S. Dist. LEXIS 1706, at *9 (D.D.C. Feb. 9, 1990) ("Courts have construed this provision [§ 1400(a)] to mean that defendants can be 'found' in districts where personal jurisdiction over the defendants exists."); *Malibu Media, LLC v. Doe*, No. 12-cv-1061, 2012 U.S. Dist. LEXIS 99148, at *10 (S.D. Cal. July 17, 2012) (citing *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1126 (9th Cir. 2010) ("This circuit interprets [28 U.S.C. § 1400(a)] to allow venue in any judicial district where, if treated as a separate state, the defendant would be subject to personal jurisdiction.")). The same analysis that leads this Court to conclude that evaluating personal jurisdiction is premature before unknown defendants are identified and named applies with equal force to consideration of venue.

### 3. The Plaintiff is Not Required to Utilize "Geolocation Tools" to Establish Personal Jurisdiction or Venue Prior to Obtaining Jurisdictional Discovery

The ISPs contend that to obtain early discovery before naming defendants, the plaintiff must be required to utilize "geolocation services" to ensure that only those IP addresses located in the Court's general vicinity are the subject of subpoenas for identifying information and that the Court will be able to exercise personal jurisdiction over the ISPs' customers whose computers are assigned those IP addresses. They urge this Court to follow rulings of other Judges, who have "reversed course from earlier rulings that had permitted broad discovery from

the ISPs, based in part on the recognition that 'geolocation services . . . are generally available to the public to derive the approximate location of the IP addresses identified for each putative defendant' and thus could be used to limit the scope of mass Doe actions to comport with personal jurisdictional standards—as well as to permit greater judicial oversight." Movant ISPs' Reply, ECF No. 26, at 4 (quoting *Nu Image, Inc. v. Does 1-23,322*, 799 F. Supp. 2d 34, 40 (D.D.C. 2011)). This Court does not agree that the plaintiff must use geolocation tools in order to establish a basis for jurisdictional discovery or to establish venue.

In support of their argument that the plaintiff should be required to utilize geolocation tools to establish a basis for jurisdictional discovery and to establish proper venue, the ISPs rely on *Nu Image, Inc.*, 799 F. Supp. 2d at 37. In *Nu Image*, like the case before this Court, the plaintiff identified the IP addresses of unknown computer users who were allegedly illegally distributing a copyrighted work using BitTorrent. Relying on the venue provision of the Copyright Act, 28 U.S.C. § 1400(a), and the District of Columbia's long-arm statute, D.C. CODE § 13-423, the Court restricted the plaintiff's subpoenas for identifying information to only those IP addresses that would "likely" be associated with individuals residing in the District of Columbia. *Nu Image*, 799 F. Supp. 2d at 40. The Court concluded that Section 1400(a), read in conjunction with D.C.'s long-arm statute, permitted the exercise of personal jurisdiction over a nonresident defendant in a copyright infringement action only if the defendant "causes tortious injury in the District of Columbia." *Id.* at 37-38 (citing D.C. CODE § 13-423(a)(3)-(4)).[13] The

---

[13] To determine the location of the tortious injury, the Court in *Nu Image* discussed *Penguin Group (USA), Inc. v. Am. Buddha*, 640 F.3d 497, 500-01 (2d Cir. 2011), which held that under New York's long-arm statute the situs of the injury in a copyright infringement action is the location of the copyright holder, and *Helmer v. Doletskaya*, 393 F.3d 201, 209 (D.C. Cir. 2004), which held that for purposes of jurisdiction the site of economic injury may be the location of the "original events that caused the alleged injury." *Nu Image*, 799 F. Supp. 2d at 38-39. The Court in *Nu Image* concluded, however, that "[s]ince it appears that Plaintiff could not establish personal jurisdiction under either test, [it] need not (and therefore does not) reach a holding as to whether the *American Buddha* or the *Helmer* test applies to the District of Columbia's long-arm statute in internet piracy copyright infringement actions." *Id.* at 40 n.6.

Court concluded that the plaintiff did not have a "threshold good faith showing" that the
defendants caused tortious injury in this district or that the putative defendants could be found in
the District of Columbia. *Id.* at 41. The Court further held that "the Plaintiff has a good faith
basis to believe a putative defendant may be a District of Columbia resident if a geolocation
service places his/her IP address within the District of Columbia, or within a city located within
30 miles of the District of Columbia." *Id.*

This Court respectfully disagrees with the holding in *Nu Image.* As stated above, the
plaintiff is not required to plead personal jurisdiction in its Complaint and must only demonstrate
that the Court has personal jurisdiction over a defendant once that defendant has asserted lack of
personal jurisdiction as a defense pursuant to Federal Rule of Civil Procedure 12(b)(2). This is
also true for venue, which need not be pled in a Complaint and is waived if not asserted by a
defendant in its responsive pleading. *See* FED. R. CIV. P. 8; FED. R. CIV. P. 12(b)(3); *see also*
*Lindahl v. Office of Pers. Mgmt.*, 470 U.S. 768, 793 n.30 (1985) ("Venue provisions come into
play only after jurisdiction has been established and concern the place where judicial authority
may be exercised; rather than relating to the power of a court, venue relates to the convenience of
litigants and as such is subject to their disposition.") (internal quotation marks and citations
omitted); *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 168 (1939) ("[T]he
locality of a law suit – the place where judicial authority may be exercised – though defined by
legislation relates to the convenience of litigants and as such is subject to their disposition.");
*Johnson Creative Arts, Inc. v. Wool Masters, Inc.*, 743 F.2d 947, 951 (1st Cir. 1984) ("Venue,
though a statutory requirement, is based on Congress' decision concerning where a
case *should* be heard. It is a privilege given to the defendant primarily as a matter of
convenience and is not based on an inherent power of a particular court over the parties."); 5
FED. PRAC. & PROC. CIV. § 1206 (3d ed.) ("It should be emphasized that Rule 8(a)(1) only deals

with subject matter jurisdiction. Thus, allegations showing that the suit is brought in a district of proper venue are not required. Improper venue is a defense that is waived by the defendant if he fails to assert it by pre-answer motion or in the answer.").

Even if the plaintiff were required to demonstrate personal jurisdiction or proper venue in the absence of a Rule 12(b) motion, the Movant ISPs and amici acknowledge that publicly available geolocation lookup tools are not fully accurate.[14] Hearing Tr. at 67 (Apr. 27, 2012) (Movant ISPs' expert stating the geolocation tools "mak[e] an estimate of where the connection associated with that IP number is likely to be"); Brief of Amici Curiae, at 6-7 (stating that a service that provides "on-demand geolocation service for $8 per 1,000 addresses . . . was audited independently by PriceWaterhouse Coopers in 2011 and found to be between 95.5% and 96.1% accurate at identifying in which U.S. state a given IP address is located"). In any event, the use of geolocation services would not resolve the often complex mix of legal and factual matters that must be considered in evaluating the propriety of exercising personal jurisdiction. Consequently, the Court still would be unable to properly evaluate jurisdictional arguments or venue until the putative defendants are properly identified and named. *See Sony,* 326 F. Supp. 2d. at 567-68 ("Assuming personal jurisdiction were proper to consider at this juncture, the [publicly available IP lookup] techniques suggested by amici, at best, suggest the mere 'likelihood' that a number of defendants are located [outside this jurisdiction]. This, however, does not resolve whether personal jurisdiction would be proper.").

The Movant ISPs argue that the plaintiff cannot establish a "good faith belief" that personal jurisdiction exists over the unknown individuals without use of geolocation tools, but this Court does not agree. By setting forth *prima facie* allegations of copyright infringement

---

[14] Amici contend that "where geolocation using current technology does not identify the correct state, it is likely accurate to within one city away from a user's actual location." Brief of Amici Curiae, at 7. Such error may make little difference in less congested regions of the country but "one city away" from the District of Columbia may place an IP address in either the Northern District of Virginia or in the District of Maryland.

predicated upon capture of the Listed IP Addresses engaged in allegedly infringing activity, the plaintiff has met its burden and is entitled to a period of discovery to identify the customers to whom the ISPs assigned the Listed IP Addresses. Indeed, it is virtually impossible for the plaintiff to allege in good faith a basis for personal jurisdiction or venue when it does not know the names and addresses of the unknown individuals.

For these reasons, the Court reaffirms its holding in other cases that evaluating personal jurisdiction is premature because "the Court and parties are in no position yet to evaluate each putative defendant's specific connection with this jurisdiction." *Call of the Wild*, 770 F. Supp. 2d at 348. As noted, evaluating venue is premature for the same reasons.

## IV. CERTIFICATE OF APPEALABILITY

As explained above, the Court concludes that the Movant ISPs' motion to quash the plaintiff's subpoenas is without merit. The Movant ISPs state that if the Court were to deny their motion, they request an order "certifying the significant and recurring issues presented here for appeal pursuant to 28 U.S.C. § 1292(b), so that litigants, the ISPs, and the courts may move closer to uniform treatment and disposition of these many cases." Mem. Supp. Movant ISPs' Mot. Quash, ECF No. 8, at 2. Upon consideration of the legal questions presented in the instant motion to quash, as well as the division in opinion among Judges on this Court when presented with cases claiming online alleged copyright infringement against unknown individuals, the Court grants the Movant ISPs' request and certifies for interlocutory appeal denial of the Movant ISPs' motion to quash the plaintiff's subpoenas.

### A. Legal Standard

A district court may certify an interlocutory order for immediate appeal if "such order involves a controlling question of law as to which there is substantial ground for difference of opinion and . . . an immediate appeal from the order may materially advance the ultimate

termination of the litigation." 28 U.S.C. § 1292(b). Whether to allow an interlocutory appeal of a non-final order is left to the discretion of the district court. *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 47 (1995). Although courts have discretion, certification of an issue for interlocutory appeal "is granted rarely and only under exceptional circumstances." *Arias v. Dyncorp*, Nos. 01-cv-1908, 07-cv-1042, 2012 WL 1383116, at *5 (D.D.C. Mar. 28, 2012) (quoting *Al Maqaleh v. Gates*, 620 F. Supp. 51, 54 (D.D.C. 2009); *see also Am. Council of the Blind v. Paulson*, 525 F.3d 1256, 1265 (D.C. Cir. 2008). The party seeking interlocutory appeal bears the burden of persuading the Court that "circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *In re Vitamins Antitrust Litig.*, No. 99-cv-197, 2000 WL 33142129, at *1 (D.D.C. 2000). Indeed, the party seeking appeal "must meet a high standard to overcome the strong congressional policy against piecemeal reviews, and against obstructing or impeding an ongoing judicial proceeding by interlocutory appeals." *Arias*, 2012 WL 1383116, at *5 (quoting *Graham v. Mukasey*, 608 F. Supp. 2d 56, 57 (D.D.C. 2009)); *see also Tolson v. United States,* 732 F.2d 998, 1001-02 (D.C. Cir. 1984).

Section 1292(b) creates a three-part test for certification that requires the party seeking an interlocutory appeal to show: (1) that the order involves a controlling question of law, (2) as to which a substantial ground for difference of opinion exists, and (3) that an immediate appeal would materially advance the disposition of the litigation. *See Howard v. Office of Chief Admin. Officer of U.S. House of Representatives*, 840 F. Supp. 2d 52, 55 (D.D.C. 2012); *APCC Servs., Inc. v. AT&T Corp.*, 297 F. Supp. 2d 101, 104 (D.D.C. 2003). The Movant ISPs have met these requirements.

**B.    Denial of the ISPs' Motion to Quash Involves Resolution of a Controlling Question of Law**

A "controlling question of law" under section 1292(b) "is one that would require reversal if decided incorrectly or that could materially affect the course of litigation with resulting savings of the court's or the parties' resources." *Feinman v. FBI*, No. 09-cv-2047, 2010 WL 962188, at *1 (D.D.C. Mar. 15, 2010) (quoting *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group*, 233 F. Supp. 2d 16, 19 (D.D.C. 2002)). "The resolution of an issue need not necessarily terminate an action in order to be 'controlling,' but instead may involve a procedural determination that may significantly impact the action." *APCC Servs.*, 297 F. Supp. 2d at 105 (citing *In re The Duplan Corp.*, 591 F.2d 139, 148 n.11 (2d Cir. 1978) (a "controlling question of law" includes procedural determination affecting the conduct of an action); *Judicial Watch*, 233 F. Supp. 2d at 19 (a question of law can be controlling if it determines the outcome "or even the future course of the litigation")); *see also* 16 WRIGHT, MILLER & COOPER, FEDERAL PRACTICE & PROCEDURE, § 3930 ("A steadily growing number of decisions . . . have accepted the better view that a question is controlling . . . if interlocutory reversal might save time for the district court, and time and expense for the litigants."). The impact that the appeal will have on other cases is also a factor supporting a conclusion that the question is controlling. *APCC Servs.*, 297 F. Supp. 2d at 105 (citing *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990); *Brown v. Bullock*, 294 F.2d 415, 417 (2d Cir. 1961) (leave to appeal granted in part because the "determination was likely to have precedential value for a large number of other suits")); *DeVittorio v. Hall*, No. 07-cv-0812, 2008 WL 273981, at *2 (S.D.N.Y. Jan. 29, 2008) (a question is "controlling" if it substantially affects a large number of cases); *Genentech, Inc. v. Novo Nordisk A/S*, 907 F. Supp. 97, 99 (S.D.N.Y. 1995) (same).

In this case, the Court agrees with the Movant ISPs that the legal questions regarding

joinder, personal jurisdiction, and venue are controlling questions of law. Indeed, reversal of this

Court's Order would drastically effect the scope of the plaintiff's instant action because, as amici

note, "[i]f the appeals court determines that joinder of all 1,058 Defendants was improper, many

of the putative defendants would be severed. If the appeals court finds that personal jurisdiction

is lacking, the defendants will be dismissed. Both scenarios materially affect the outcome."

Brief of Amici Curiae, ECF No. 24, at 20. Moreover, a decision by the D.C. Circuit on the legal

questions presented in the ISPs' motion would conclusively resolve these issues in the other

cases pending in this jurisdiction involving allegations of online copyright infringement by

unknown individuals.

### C. Grounds Exist for a Difference of Opinion on the Issues Presented in the ISPs' Motion

Section 1492(b) further provides that to obtain certification of an interlocutory order for

appeal, there must exist a substantial ground for difference of opinion on the controlling question

of law. A substantial ground for difference of opinion is often established when there are

conflicting decisions by other courts. *See APCC Servs.,* 297 F. Supp. 2d at 107; *see also In re*

*Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.,* 212 F. Supp. 2d 903, 909-10 (S.D. Ind.

2002) (certification is appropriate where other courts have adopted conflicting positions

regarding the issue of law proposed for certification). This requirement is met.

Judges on this Court have reached different conclusions on the propriety and scope of

early discovery by copyright owners to obtain identifying information about the unknown

individuals believed to be engaged in infringing activity. *Compare Call of the Wild Movie, LLC*

*v. Does 1–1,062,* 770 F. Supp. 2d 332 (D.D.C. 2011) (Howell, J.) (denying motions to quash

subpoena because consideration of joinder and personal jurisdiction was premature); *W. Coast*

*Prods., Inc. v. Does 1-5829*, 275 F.R.D. 9 (D.D.C. 2011) (Kollar-Kotelly, J.) (same); *Imperial Enters., Inc. v. Does 1-3,145*, No. 11-cv-0529 (D.D.C. Aug. 30, 2011), ECF No. 43 (Walton, J.) (same) *with Nu Image, Inc. v. Does 1-23,322*, 799 F. Supp. 2d 34 (D.D.C. 2011) (Wilkins, J.) (denying plaintiff's motion for expedited discovery because plaintiff failed to utilize geolocation services to demonstrate personal jurisdiction and venue); *W. Coast Prods., Inc. v. Does 1-1911*, No. 11-cv-1687 (D.D.C. Oct. 25, 2011), ECF No. 7 (Jackson, J.) (same); *People Pictures LLC v. Grp. of Participants in Filesharing Swarm Identified by Hash: 43F4CFD05C115EE5887F680B0-CA73B1BA18B434A*, No. 11-1968, 2011 WL 6758462 (D.D.C. Dec. 23, 2011) (Facciola, M.J.) (same). The Movant ISPs allege that the split of authority in this district has led plaintiff's counsel to "forum-shop" for "favorable judicial assignments." Mem. Supp. Movant ISPs' Mot. Quash, ECF No. 8, at 21. The Court declines to comment on this allegation, but recognizes that due to the divergence of opinion in this jurisdiction, the potential for forum-shopping exists. Given the substantial difference of opinion among judges in this jurisdiction, resolution by the D.C. Circuit of the legal issues presented in the Movant ISPs' Motion to Quash would promote uniformity in the manner in which such cases are handled. *See generally Arias, 2012 WL 1383116*, at \*5 (denying certification for appeal because the defendants failed to identify "any split in this district or this circuit regarding any controlling issue of law") (internal citations and quotation marks omitted).

### D. An Immediate Appeal Would Materially Advance the Disposition of the Litigation

Finally, Section 1492(b) provides that certification of an interlocutory order for appeal is appropriate if an immediate appeal will materially advance disposition of the litigation. The Court believes that it will. The plaintiff's requested discovery for identifying information for the unknown individuals referenced in the Complaint is essential to its case because there is no other

mechanism for the plaintiff to identify those infringing its copyright. If the Court's ruling is reversed, the plaintiff's subpoenas would be quashed and its period of expedited discovery would be terminated. The plaintiff would not be able to identify and name defendants and this action would essentially come to a close. *See APCC Servs.*, 297 F. Supp. 2d at 109 (certifying appeal because "[a]n immediate appeal would conserve judicial resources and spare the parties from possibly needless expense if it should turn out that this Court's rulings are reversed").

In sum, the Court concludes that the requirements of Section 1292(b) are satisfied. Due to the divergence of opinion on the legal issues presented in Movant ISPs' Motion to Quash, together with the effect of this Court's conclusions on the remainder of this case, the Court's denial of the motion to quash is an interlocutory order suitable for certification for appeal.[15] Accordingly, the Movant ISPs' request for certification for interlocutory appeal pursuant to Section 1292(b) will be granted.

## V.    CONCLUSION

For the reasons explained above, the Movant ISPs' Motion to Quash is DENIED, and the plaintiff's Motion to Compel Comcast to comply with the plaintiff's subpoena is GRANTED. An Order consistent with this Memorandum Opinion will be entered. The Movant ISPs' request that the Court certify the Court's denial of the Movant ISPs' Motion to Quash, pursuant to 28 U.S.C. § 1292(b), for interlocutory appeal is granted.

**DATED:  AUGUST 6, 2012**

/s/ Beryl A. Howell
BERYL A. HOWELL
United States District Judge

---

[15] The plaintiff strenuously objects to certification of an interlocutory appeal since this will further delay this lawsuit and the instant effort to protect the plaintiff's movie. Pl.'s Opp'n Movant ISPs' Mot. Quash, ECF No. 13, at 18. The ISPs have assured the Court that the information responsive to the subpoenas is being preserved, however, so the plaintiff will not be significantly prejudiced by the delay engendered by grant of the Movant ISPs' request for certification. *See* Hearing Tr. at 109 (Apr. 27, 2012).

## CERTIFICATE OF SERVICE

I certify that on August 16, 2012, two copies of the foregoing Petition for Permission to Appeal Pursuant to 28 U.S.C. § 1292(b) were served by UPS Overnight Delivery upon the following:

Paul A. Duffy
John L. Steele
Prenda Law Inc.
161 N. Clark St., Suite 3200
Chicago, IL 60601

*Attorneys for AF Holdings LLC*

Thomas P. Hartnett
Law Office of Thomas P. Hartnett
1310 Pennsylvania Ave., SE
Washington, DC 20003

*Attorney for Andrew Fignar, Jr.,
John Doe 905*

_____
Marc A. Hearron