IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

LIGHTSPEED MEDIA CORPORATION,⠀⠀⠀)
⠀⠀⠀⠀⠀⠀*Plaintiff*,⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀⠀⠀⠀Case No. 12-cv-889-GPM-SCW
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
ANTHONY SMITH, SBC INTERNET⠀⠀⠀)⠀⠀⠀⠀Removed from the Circuit Court of
SERVICES, INC., d/b/a AT&T INTERNET⠀)⠀⠀⠀St. Clair County, IL Case No. 11-L-683
SERVICES, AT&T CORPORATE⠀⠀⠀⠀)
REPRESENTATIVE #1, COMCAST⠀⠀⠀⠀)⠀⠀⠀⠀⠀**JURY TRIAL DEMANDED**
CABLE COMMUNICATIONS, LLC, and⠀⠀)
COMCAST CORPORATE⠀⠀⠀⠀⠀⠀⠀)
REPRESENTATIVE #1,⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀*Defendants*.⠀⠀⠀⠀⠀⠀⠀)

**<u>BRIEF IN SUPPORT OF AT&T INTERNET SERVICES' MOTION TO DISMISS</u>**

## TABLE OF CONTENTS AND AUTHORITIES

I.  **BACKGROUND** ...................................................................................................1

    A.  **Proceedings In The State Circuit Court Leading To Entry Of Supervisory Order From Illinois Supreme Court**.......................................................................1

        *Ennenga v. Starns*,
           677 F.3d 766 (7th Cir. 2012) ......................................................................1

        *PSCE, LLC v. Associated Bank, N.A.*,
           No. 3:10-cv-882-JPG-SCW, 2011 WL 3444318 (S.D. Ill. Aug. 8, 2011)....................1

        *Pac. Century Int'l, Ltd. v. John Does 1-37*,
           2012 WL 1072312 (N.D. Ill. Mar. 30, 2012)........................................................2

        *MCGIP, LLP v. Does 1-149*,
           2011 WL 4352110 (N.D. Cal. Sep. 16, 2011) ..............................................3

        Fed. R. Civ. P. 11 ....................................................................................3

        *Raw Films v. Does 1-32*,
           2011 WL 6182025 (E.D. Va. Oct. 5, 2011) ................................................3

    B.  **Proceedings In The State Circuit Court After Entry Of Supervisory Order From Illinois Supreme Court**........................................................................5

        28 U.S.C. § 1446(d) ................................................................................6

        Fed. R. Civ. P. 81(c)(1)............................................................................6

        Fed. R. Civ. P. 26(d) ...............................................................................6

II.  **ARGUMENT**........................................................................................................6

    A.  **Lightspeed's Allegations Against AT&T Are Not Actionable**...........................6

        1.  AT&T cannot be liable for successfully asserting its rights in court............................6

        *Norris v. Nat'l Union Fire Ins. Co. of Pittsburgh*,
           857 N.E. 2d 859 (Ill. App. Ct. 2006) ....................................................7

        *Du Page Forklift Serv Inc. v. Material Handling Servs., Inc.*,
           744 N.E.2d 845 (Ill. 2001) .................................................................7

        2.  AT&T had not duty to act in support of Lightspeed's unsubstantiated accusations against AT&T's Internet subscribers ..........................................................8

*Iseberg v. Gross*,
  879 N.E.2d 278 (Ill. 2007) ........................................................8

*In re BitTorrent Adult Film Copyright Infringement Cases*,
  No. 11-3995 (DRH) (GRB) 2012 WL 1570765 (E.D.N.Y.) ..................................9

*Hard Drive Prods., Inc. v. Does*,
  2011 U.S. Dist. LEXIS 132449 (N.D. Cal. Nov. 16, 2011)....................................9

*K-Beech, Inc. v. Does 1-85*,
  No. 11-CV-00469 (E.D. Va. October 5, 2011)....................................................9

**B. All of Lightspeed's Causes of Action Against AT&T Fail as a Matter of Law ..........10**

  1. Lightspeed fails to state a claim for aiding and abetting ............................................11

  *Time Savers, Inc. v. La Salle Bank, N.A.*,
    863 N.E.2d 1156 (Ill. App. Ct. 2007) ....................................................11

  *Simmons v. Homatas*,
    898 N.E.2d 1177 (Ill. App. Ct. 2008) ....................................................11

  *Grimes v. Saikley*,
    904 N.E.2d 183 (Ill. App. Ct. 2009) ....................................................12

  2. Lightspeed fails to state a claim for civil conspiracy....................................................12

  *McClure v. Owens Corning Fiberglass Corp.*,
    720 N.E.2d 242 (Ill. 1999)....................................................12

  *Hard Drive Productions, Inc. v. Does 1-55*,
    No. 11-C-2798, 2011 WL 4889094 (N.D. Ill. Oct. 12, 2011) ..............................12

  *Kiswani v. Phoenix Sec'y Agency, Inc.*,
    529 F. Supp. 2d 949 (N.D. Ill. 2008) ..............................................12, 13

  *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*,
    665 F.3d 930 (7th Cir. 2012) ....................................................13

  *Baker v. Jewel Food Stores, Inc.*,
    823 N.E.2d 93 (Ill. App. Ct. 2005) ....................................................13

  3. Lightspeed fails to state a claim under the Computer Fraud and Abuse Act...............13

  18 U.S.C. § 1030(a)-(b), (g)....................................................13

*Flynn v. Liner Grode Stein Yankelevitz Sunshine Regenstreif & Taylor LLP*,
No. 3:09-CV-00422-PMP-RAM,
2011 WL 2847712 (D. Nev. July 15, 2011) ...................................................13, 14

*Trademotion, L.L.C. v. Marketcliq, Inc.*,
No. 6:11-cv-1011-Orl-36DAB, 2012 WL 682465 (M.D. Fla. Mar. 2, 2012)........14

18 U.S.C. § 1030(c)(4)(A)(i)(I), (g).........................................................................14, 15

18 U.S.C. § 1030(c)(4)(A)(i), (g)..............................................................................14

18 USC § 1030(e)(11)..................................................................................................14, 15

*SKF USA, Inc. v. Bjerkness*,
636 F. Supp. 2d 696 (N.D. Ill. 2009) .........................................................15, 16

*Nexans Wires S.A. v. Sark-USA, Inc.*,
319 F. Supp. 2d 468 (S.D.N.Y. 2004)........................................................15

*In re Apple & AT&TM Antitrust Litig.*,
596 F. Supp. 2d 1288 (N.D. Cal. Oct. 1, 2008) .......................................15

4.  Lightspeed fails to state a claim under the Illinois Consumer Fraud and Deceptive
Business Practices Act ...........................................................................................16

815 ILCS 505/2...........................................................................................................16

*De Bouse v. Bayer*,
922 N.E.2d 309 (Ill. 2009)...........................................................................16, 17

Fed. R. Civ. P. 9(b) .....................................................................................................16

*Oshana v. Coca-Cola Company*,
472 F.3d 506 (7th Cir. 2006)  ....................................................................17

5.  Lightspeed fails to state a claim for unjust enrichment ..............................................17

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*,
545 N.E.2d 672 (Ill. 1989) .........................................................................17

*Schlosser v. Welk*,
550 N.E.2d 241 (Ill. App. Ct. 1990) ..........................................................17

*Pearson v. Garrett-Evangelical Theological Seminary, Inc.*,
790 F. Supp. 2d 759 (N.D. Ill. 2011) .........................................................17

*Hayes Mech., Inc. v. First Indus., L.P.*,
    812 N.E.2d 419 (Ill. App. Ct. 2004) .......................................................................18

*Village of Bensenville v. City of Chicago*,
    906 N.E.2d 556 (Ill. App. Ct. 2009) .......................................................................18

*Cement-Lock v. Gas Tech. Inst.*,
    523 F. Supp. 2d 827 (N.D. Ill. 2007) .....................................................................18

**C. Lightspeed's State Claims Against AT&T Are Preempted By The Federal
Copyright Act** ..............................................................................................................**18**

17 U.S.C. § 301(a) ...........................................................................................................18

*Seng-Tiong Ho v. Taflove*,
    648 F.3d 489 (7th Cir. 2011) .............................................................................18, 19

*Personal Keepsakes, Inc. v. PersonalizationMall.Com, Inc.*,
    No. 11 C 5177, 2012 WL 414803 (N.D. Ill. Feb. 8, 2012).....................................19

*CustomGuide v. CareerBuilder, LLC*,
    813 F.Supp.2d 990 (N.D. Ill. 2011) .......................................................................19

*Merchant Transaction Sys., Inc. v. Nelcela, Inc.*,
    No. CV 02-1954-PHX-MHM, 2009 WL 1835109 (D. Ariz. June 25, 2009)..............19

*Do It Best Corp. v. Passport Software, Inc.*,
    No. 01 C 7674, 2005 WL 743083 (N.D. Ill. Mar. 31, 2005) ....................................19

**III. CONCLUSION** ..........................................................................................................**19**

Defendant SBC Internet Services, Inc. d/b/a AT&T Internet Services ("AT&T") files this brief in support of its Motion to Dismiss,[1] and respectfully submits as follows:

## I. BACKGROUND

Plaintiff Lightspeed Media Corporation ("Lightspeed") owns or operates one or more paid-subscription adult-entertainment websites.  In its operative complaint, Lightspeed contends that Defendant Anthony Smith "hacked" and accessed content from Lightspeed's password-protected websites without authorization.  (Aug. 3, 2012 First Am. Compl. ("Am. Compl.") ¶ 18, ECF No. 2-2.)  Lightspeed complains that AT&T and Comcast Cable Communications LLC ("Comcast") improperly opposed Lightspeed's discovery, failed to act to protect Lightspeed's websites, and conspired with their customers to Lightspeed's detriment.  (*Id.* ¶¶ 29-52.)

## A.    Proceedings In The State Circuit Court Leading To Entry Of Supervisory Order From Illinois Supreme Court[2]

When Lightspeed filed this lawsuit on December 14, 2011, it identified Defendant Smith, then the only defendant in the case, as "John Doe."  (Dec. 14, 2011 Compl. ("Original Compl."), ECF No. 2-3.)  Lightspeed obtained an *ex parte* court order authorizing it to serve subpoenas on multiple Internet Service Providers (ISPs), including AT&T and Comcast, to obtain identifying information of the John Doe defendant and some 6,600 unnamed individuals located across the

---

[1] The defendant "AT&T Corporate Representative #1" has not been named, served, or appeared in this lawsuit.  Moreover, the description of such person in Plaintiff's Amended Complaint is not adequate to identify any particular individual.  In any event, the grounds set forth herein for dismissal of Plaintiff's baseless claims against AT&T would also constitute grounds for dismissing this lawsuit as to a corporate representative of AT&T.

[2] This motion refers to various filings in this same case, either at the circuit court or at the Illinois Supreme Court.  "Taking judicial notice of matters of public record need not convert a motion to dismiss into a motion for summary judgment," and, therefore, "public court documents" from "the earlier state-court litigation" are judicially noticeable.  *Ennenga v. Starns*, 677 F.3d 766, 773-74 (7th Cir. 2012); *see PSCE, LLC v. Associated Bank, N.A.*, No. 3:10-cv-882-JPG-SCW, 2011 WL 3444318, at *1 (S.D. Ill. Aug. 8, 2011) ("In this case, Associated attaches only publicly filed documents from a prior state court action.  The Court takes judicial notice of those documents and accordingly considers this motion as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).").

country.  (Dec. 16, 2011 Order Granting Pl.'s Mot. for Leave to Take Early Disc. Pursuant to Supreme Court Rule 201(d) (the "Early Disc. Order").)  Although Lightspeed referred to those 6,600 individuals as "co-conspirators," Lightspeed did not allege any conspiratorial conduct or even an agreement to conspire between or among any of the 6,600 individuals and/or the single John Doe defendant.  (Original Compl. ¶¶ 10-18.)

Lightspeed sought personally identifiable information about thousands of so-called "co-conspirators" under the theory that they are simultaneously (i) potential parties as to whom identification is warranted and (ii) non-parties as to whom personal jurisdiction, venue, and joinder are not pertinent.  In support of this theory, Lightspeed argued both that the so-called "co-conspirators" had no standing to challenge the subpoenas (because they were directed to the ISPs) and that the ISPs had no standing to challenge the subpoenas (because some of the ISPs' arguments involved the rights of the ISPs' customers).  (Apr. 9, 2012 Pls.' Combined Opp'n to Non-Parties' Mot. to Quash Subpoena, pp. 1-2, ECF No. 2-12; May 14, 2012 Supplement to Mot. to Quash and Finding of "Friendly Contempt," pp. 34-35, 41, ECF No. 2-15.)

Lightspeed's allegations did not establish good cause for the extraordinary discovery sought, and compliance with its discovery requests (as well as similar requests that would surely have followed in subsequent cases) would have been unduly burdensome.  Among other things, no claims were asserted against the so-called "co-conspirators," and the discovery sought concerning them was not relevant to the claims against the single John Doe defendant.  *See Pac. Century Int'l, Ltd. v. John Does 1-37*, 2012 WL 1072312 at *5 (N.D. Ill. Mar. 30, 2012) ("[T]he court finds that the complaints' allegations of civil conspiracy are only unjustified attempts to bolster the obtaining of irrelevant discovery about non-parties.  It is thus plain that the plaintiffs

are not seeking information about the non-party IP addresses for the purpose of litigating their current claims.").

As many courts have observed, Lightspeed and/or its attorneys have abused and continue to abuse the courts to further a business model involving hundreds of lawsuits filed across the country seeking the names and contact information of Internet subscribers they can threaten in order to coerce "settlement payments" from them. *E.g. MCGIP, LLC v. Does 1-149*, 2011 WL 4352110 at *4 n. 5 (N.D. Cal. Sep. 16, 2011) (describing litigation tactics). Lightspeed's attorneys (and similarly motivated attorneys) seek such payments *before* there is any scrutiny of their allegations or the evidence on which their allegations are grounded, and without regard to whether or not the *user* of a given Internet account at a particular date and time is the same person as the *subscriber* (i.e., account holder) for that account. Seldom is any litigation actually initiated against a Doe defendant.[3]

In this lawsuit, AT&T and other ISPs[4] resisted Lightspeed's improper demands for personally identifiable information by filing a motion to quash and for a protective order in the state circuit court, as permitted under 735 ILCS 5/2-1101 and Rule 201(c) of the Illinois Supreme Court Rules. That motion was denied. (Apr. 12, 2012 Order, ECF. No. 2-12.) In accordance with long-standing Illinois practice, AT&T and the moving ISPs sought a stay and

---

[3] For example, in this lawsuit the single John Doe defendant was not even named until approximately nine months after the lawsuit was filed, and AT&T is not aware that he has even yet been served. Federal courts have questioned whether plaintiffs such as Lightspeed are complying with Rule 11 of the Federal Rules of Civil Procedure to the extent they are not seeking discovery for a proper purpose, but are instead burdening the courts and ISPs to take advantage of the threat against an ISP subscriber of damages, the prospect of having to appear and assert defenses in a remote jurisdiction, and the stigma associated with pornography, and to thereby induce thousands of potentially innocent ISP subscribers to make "settlement" payments to avoid being named as defendants in a lawsuit. *Raw Films v. Does 1-32*, 2011 WL 6182025 at *2-3 (E.D. Va. Oct. 5, 2011) (order to show cause why Rule 11 had not been violated).

[4] AT&T was joined by Cellco Partnership d/b/a Verizon Wireless; Centurytel Internet Holdings Inc.; Cox Communications, Inc.; Embarq Communications, Inc.; Qwest Communications Company LLC; and Verizon Online LLC. Comcast filed a separate motion to quash.

"friendly" contempt finding in order to take an immediate appeal, well in advance of the deadline for compliance with outstanding subpoenas.  (Apr. 25, 2012 Internet Service Providers' Mot. for Finding of Friendly Contempt for Purposes of Immediate Appeal.)  That motion was also denied. (May 21, 2012 Am. Order., ECF No. 9-8; *see also* May 21, 2012 *Sua Sponte* Case Management Order #2, ECF No. 14-5.)  Pursuant to Illinois Supreme Court Rules 305(b) and 383, AT&T and the moving ISPs filed an emergency motion for stay and a motion seeking a supervisory order from the Illinois Supreme Court, contending that the dispute involved a matter important to the administration of justice and that intervention was necessary to keep the circuit court from acting beyond its authority.  (Explanatory Suggestions in Support of Rule 383 Mot. for Supervisory Order, *AT&T Internet Services v. LeChien*, No. 114334 (Ill. May 22, 2012), ECF No. 14-1.)  The grounds for the motion were as follows: (i) Lightspeed's seeking personal information of 6,600 so-called "co-conspirators" was improper when no claims were asserted against such individuals and such information was not relevant to Lightspeed's claims against the single John Doe defendant; (ii) there was no good cause for asserting that personal jurisdiction or venue would be proper as to the so-called "co-conspirators" or that they could otherwise be properly joined in this proceeding; and (iii) Lightspeed did not seek discovery for a proper purpose.  (*Id.* pp. 26-36.)

Almost immediately, the supreme court stayed enforcement of the circuit court's orders requiring compliance with the subpoenas.  (Docket Entry Order Granting Emergency Mot. for Stay Pending Disposition of Mot. for Supervisory Order, *AT&T Internet Services v. Lechien*, No. 114334 (Ill. 2012), ECF No. 14-4.)  Then, the supreme court issued the extraordinary remedy of a supervisory order directing the circuit court to "vacate its orders of May 21, 2012 … and to enter an order allowing the motion to quash subpoenas filed by movants AT&T Internet Services, et al."  (Supervisory Order, *AT&T Internet Services v. LeChien*, No. 114334 (Ill. Jun.

27, 2012), ECF No. 9-10.)  The opposition by AT&T and other ISPs to Lightspeed's improper tactics was thus vindicated.  On July 16, 2012, the circuit court entered an order vacating its May 21, 2012 orders and granting AT&T and the other moving ISPs' motions to quash.  (July 16, 2012 Order, ECF No. 2-27.)

**B.**     **Proceedings In The State Circuit Court After Entry Of Supervisory Order From Illinois Supreme Court**

Refusing to respect the authority and decision of the Illinois Supreme Court, Lightspeed next filed its imaginative First Amended Complaint on August 3, 2012, naming AT&T, Comcast, and their respective corporate representatives as defendants.  With no well-pleaded allegations of fact and no legal basis, Lightspeed purports to assert various causes of action against AT&T on two grounds.   First, Lightspeed complains about AT&T's successful opposition to Lightspeed's third-party subpoenas in the Illinois Supreme Court.  (Am. Compl. ¶¶ 32-44.)  Second, Lightspeed complains about AT&T's alleged failure to take punitive actions against its subscribers in response to Lightspeed's unsubstantiated accusations against them.  (*Id.* ¶¶ 45-49.)  As further discussed below, neither ground gives rise to any cause of action.

In its First Amended Complaint, Lightspeed named Anthony Smith as the single John Doe defendant.  Lightspeed did not name any of the 6,600 so-called "co-conspirators" as parties. Lightspeed added no factual basis for any contention that any one of them "conspired" with Anthony Smith or any one of the other so-called "co-conspirators."  Apparently contending that the Illinois Supreme Court order only meant that the then-existing subpoenas should be quashed, Lightspeed simply proceeded *to re-issue virtually identical subpoenas seeking the same information about the same thousands of so-called "co-conspirators" as requested in the subpoenas the Illinois Supreme Court had ordered quashed in this same case*.  Lightspeed purported to do so under the same Early Discovery Order it had relied on in issuing the

subpoenas that had been quashed.  (August 13, 2012 Notice of Subpoenas ECF No. 14-6; August 6, 2012 Subpoena to AT&T, ECF No. 14-7.)  Those subpoenas became null and void (as they essentially already were) upon removal of this case.  28 U.S.C. § 1446(d); Fed. R. Civ. P. 81(c)(1); Fed. R. Civ. P. 26(d).

## II.  ARGUMENT

### A.    Lightspeed's Allegations Against AT&T Are Not Actionable.

All of Lightspeed's claims against AT&T are based on two general factual assertions: (1)  AT&T lawfully and successfully asserted its rights in response to Lightspeed's discovery requests in this lawsuit, and (2) AT&T has taken no action against its subscribers in response to Lightspeed's uncorroborated accusations against them.  As a matter of law, neither of these assertions supports a cause of action against AT&T.

#### 1.    AT&T cannot be liable for successfully asserting its rights in court.

Lightspeed complains that AT&T "chose to interpose [itself] in this litigation, interfere with the Court's Orders, evade subpoenas, and prevent and obstruct Plaintiff from learning the identities of those ISP subscribers hacking into and stealing from its website."  (Am. Compl. ¶ 30.)  More specifically, Lightspeed complains that AT&T joined in a motion to quash and/or for a protective order with respect to discovery sought by Lightspeed in this case and eventually sought and obtained a supervisory order from the Illinois Supreme Court.  (*Id.* ¶¶ 37-39.)

Even if AT&T could somehow be liable for asserting its rights in court (which it cannot be), this certainly cannot be the case when AT&T did so *successfully*.  It is unquestionable that AT&T's legal position in this lawsuit was meritorious.  The motion to quash or for a protective order filed by AT&T and other ISPs was eventually granted, so AT&T cannot be somehow liable for the filing of that motion.  The Illinois Supreme Court granted AT&T and other ISPs' request

for relief – not in part but in its entirety –AT&T cannot be attacked civilly  for seeking such relief and winning.

Under the law-of-the-case doctrine, "questions of law decided on a previous appeal are binding on the trial court on remand as well as on the appellate court on a subsequent appeal." *Norris v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 857 N.E. 2d 859, 864-66 (Ill. App. Ct. 2006). Here, the highest court of Illinois has determined that AT&T's assertion of rights in opposing Lightspeed's discovery and the orders of the circuit court was meritorious.  That determination is the law of this case, and Lightspeed cannot maintain a cause of action predicated on Lightspeed's contention that the Illinois Supreme Court was wrong or simply should be ignored.

Indeed, by analogy, to hold otherwise would contradict the principles of collateral estoppel.  Collateral estoppel precludes a plaintiff from re-litigating an issue when (1) the issue decided in the prior adjudication is identical with the one presented in the current action, (2) there was a final judgment on the merits in the prior adjudication, and (3) the party against whom estoppel is asserted was a party to, or in privity with a party to, the prior adjudication.  *Du Page Forklift Serv., Inc. v. Material Handling Servs., Inc.*, 744 N.E.2d 845, 849 (Ill. 2001). Although here there was no "final judgment," the issues that were finally decided by the Illinois Supreme Court are in fact identical to those raised by Lightspeed's claims against AT&T. Specifically:

- In its amended complaint, Lightspeed contends that AT&T's resistance to its subpoenas was wrongful because it "made numerous arguments for which it had no standing."  (Am. Compl. ¶ 40.)  But Lightspeed already argued before the Illinois Supreme Court that the ISPs "do not have standing to raise substantive factual and legal challenges … on behalf of their subscribers."  (Objections of Lightspeed Media Corp. to Rule 383 Mot. for Supervisory Order ("Objections to Mot. for Supervisory Order") at 5, *AT&T Internet Services v. LeChien*, No. 114334 (Ill. May 30, 2012), ECF No. 2-23.)

- In its amended complaint, Lightspeed contends that AT&T wrongfully asserted "arguments that are available only to litigants to make."  (Am. Compl. ¶ 41.)  But Lightspeed already argued before the Illinois Supreme Court that the ISPs "assert

defenses to liability, that are available only to the actual parties to the case." (Objections to Mot. for Supervisory Order at 7.)

- In its amended complaint, Lightspeed contends (albeit imprecisely) that AT&T's identifying an excessive burden on its subscribers was incorrect because "the ISPs, and not subscribers, were the only ones required to take action." (Am. Compl. ¶ 42.) But Lightspeed already argued before the Illinois Supreme Court that "there is no burden on the subscribers, who are not required to … do anything in response to the subpoenas," and "[t]he only 'burden' of responding to the subpoenas is on the ISPs." (Objections to Mot. for Supervisory Order at 6.)

Lightspeed cannot relitigate these issues through a cause of action against AT&T.

### 2. AT&T had no duty to act in support of Lightspeed's unsubstantiated accusations against AT&T's Internet subscribers.

Lightspeed complains that "the ISPs have not taken any actions to prevent their subscribers from committing criminal and tortious acts against Plaintiff even after being on actual notice of the criminal and tortious activity." (Am. Compl. ¶ 30.) In particular, Lightspeed complains that AT&T did not, after learning of Lightspeed's allegations via this lawsuit, notify AT&T's subscribers to "cease and desist the illegal hacking," has not "cancelled a single contract," and did not "notif[y] law enforcement officials." (*Id.* ¶¶ 45-47.) Each of Lightspeed's claims against AT&T is based on this alleged failure to act. (*Id.* ¶¶ 56, 74, 93, 100, 106.)

However, AT&T cannot be liable for any such inaction because, as a matter of law, it had no duty to act. It is well settled that a person has no duty to act affirmatively to protect another from criminal attack by a third person absent a "special relationship" between the parties. *See Iseberg v. Gross*, 879 N.E.2d 278, 284 (Ill. 2007). Lightspeed has not alleged, nor can it allege, that any of the recognized special relationships apply between it and AT&T. For example, Lightspeed does not allege that it and AT&T are carrier-passenger, innkeeper-guest, business invitor-invitee, or voluntary custodian-protectee. *See id.* at 285, 292 (holding that Illinois courts "continue to adhere" to "special relationship" doctrine for finding exception to no-affirmative-

duty rule).  For this reason alone, all of Lightspeed's claims against AT&T based on its failure to affirmatively act against AT&T's subscribers should be dismissed.

The absence of duty is particularly sensible in this case.  Lightspeed's allegations of hacking by AT&T subscribers are just that – allegations.  There has been no verdict of guilt. There has been no judgment of liability.  In fact, the so-called "co-conspirator" subscribers have not been named, served, or even sued in this lawsuit.  Indeed, there is no evidence that Lightspeed has itself reported the alleged hacking to law enforcement[5] instead of absurdly contending that AT&T should make such reports upon receipt of a subpoena.  No evidence or even allegations of an actual "conspiracy" have been asserted, other than the conclusory pronouncement that there is a "conspiracy."  Also, Smith and the so-called "co-conspirators" have been identified based only on IP address (Am. Compl. ¶ 26), which is by nature not a unique identifier.  *See, e.g.*, *In re BitTorrent Adult Film Copyright Infringement Cases*, No. 11-3995 (DRH) (GRB), 2012 WL 1570765, at *3-5 (E.D.N.Y. May 1, 2012) ("[I]t is no more likely that the subscriber to an IP address carried out a particular computer function – here the purported illegal downloading of a single pornographic film – than to say an individual who pays the telephone bill made a specific telephone call.").[6]

The only known evidence to support Lightspeed's allegation that there was even a hacking or theft – regardless of who committed it – is a declaration by Steve Jones a/k/a Steve

---

[5] If Lightspeed were truly motivated to stop criminal activity and actually had credible and adequate evidence, it would presumably would have contacted law enforcement or taken some such measure besides bringing baseless claims against ISPs.

[6] As courts throughout the country have observed, it is far from clear that Lightspeed has made its allegations or would use personally identifiable information properly.  *See, e.g.*, *Hard Drive Prods. v. Does*, 2011 U.S. Dist. LEXIS 132449, at *9 (N.D. Cal. Nov. 16, 2011) ("[T]he court shares the concern that these cases potentially open the door to abusive settlement tactics…."); *K-Beech, Inc. v. Does 1-85*, No. 11-CV-00469 (E.D. Va. Oct. 5, 2011), ECF No. 9 at 4 ("The plaintiffs seemingly have no interest in actually litigating the cases, but rather simply have used the Court and its subpoena powers to obtain sufficient information to shake down the John Does.").

Lightspeed, which, at most, merely states what his forensic software is designed to do. (Original Compl., Ex. C (Decl. of Steve Jones ¶¶ 7-12) .) Mr. Jones' declaration does not state that his software system was, in fact, used to produce the lengthy list of IP addresses, dates, and times attached to the Complaint as corresponding to instances when Smith and the so-called "co-conspirators" allegedly accessed Lightspeed's websites without authorization. (Am. Compl. ¶ 26.) Lightspeed has in fact submitted no evidence at all to support its allegations as to any particular AT&T subscriber.

AT&T is respectful of the legitimate interests of copyright holders and the need to address copyright infringement. But there is no legal ground to assert – and it defies reason to suggest – that AT&T should investigate or request law enforcement to investigate hundreds of Internet subscribers because a website owner has filed a civil lawsuit, relying only on IP addresses to identify the alleged hackers, supported obliquely only by one biased individual's declaration as to a software system that may have been used, in connection with a lawsuit in which the highest court of the forum state has issued a supervisory order quashing discovery as to those subscribers, in the absence of any relationship between the website owner and the ISP, and in the face of widely-criticized abuse of the judicial system in similar lawsuits filed across the country. In short, AT&T's alleged inaction is simply not actionable.

**B.     All of Lightspeed's Causes of Action Against AT&T Fail as a Matter of Law.**

Even if AT&T could somehow be liable (i) for successfully resisting a civil litigant's third-party subpoena or (ii) for failing to act against its customers based on an unsubstantiated accusation against unknown individuals allegedly using those customers' account, Lightspeed's suit against AT&T should be dismissed because Lightspeed cannot meet essential elements of any of the causes of action asserted in its amended complaint. In its amended complaint, Lightspeed asserts the following claims against AT&T: (1) aiding and abetting (Am. Compl. ¶¶

104-08); (2) civil conspiracy (*Id.* ¶¶ 90-97); (3) violation of the Computer Fraud and Abuse Act (*Id.* ¶¶ 53-61); (4) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (*Id.* ¶¶ 98-103); and (5) unjust enrichment (*Id.* ¶¶ 73-78).[7]  Each of these claims is baseless and without merit.

### 1.    Lightspeed fails to state a claim for aiding and abetting.

Lightspeed contends that AT&T "knew or should have known" that its subscribers "were accused of hacking into and stealing from Plaintiff's website."  (*Id.* ¶ 105.)  By failing to attempt to prevent the subscribers' alleged conduct, Lightspeed contends, AT&T aided and abetted the subscribers' hacking and theft.  (*Id.* ¶¶ 106-07.)

A claim for aiding and abetting requires that "the defendant must knowingly and substantially assist the principal violation."  *Time Savers, Inc. v. La Salle Bank, N.A.*, 863 N.E.2d 1156, 1168 (Ill. App. Ct. 2007).  Dismissal is proper if the plaintiff fails to plead this necessary element of an aiding-and-abetting claim.  *See id.*  In this case, based on Lightspeed's own pleadings, any assistance given to any hackers by AT&T was neither knowing nor substantial.

AT&T's actions and alleged inaction could not be "knowing," because this requires that it *knows* the subscribers intend to commit a tortious or criminal act.[8]  *See Simmons v. Homatas*, 898 N.E.2d 1177, 1184 (Ill. App. Ct. 2008).  As Lightspeed admits, AT&T's subscribers have only been *accused* of hacking into Lightspeed's website, and even that accusation is overstated given that the actual accusation is levied at an unknown user of an Internet account, who may or may not be the same person as the subscriber.  (*See* Am. Compl. ¶ 105.)  Lightspeed's uncorroborated accusations against unnamed, non-present, and unrepresented Internet

---

[7] These causes of action are not addressed in the same order as asserted by Lightspeed, but instead are addressed in the order that AT&T believes is most logical and thus efficient for the Court's review.

[8]  Notably, Lightspeed does not even allege that AT&T knew *anything*.  It alleges only that it "knew *or should have known*."  (Am. Compl. ¶ 105.)

subscribers (or, more accurately stated, against unknown users of those subscribers' Internet accounts) do not impute knowledge to AT&T – or anyone else – that those statements are true.

In addition, any theoretical benefit to the alleged hackers by AT&T's alleged failure to take unspecified measures to prevent such hacking is not "substantial," because, among other things, a defendant's inaction cannot support an aiding-and-abetting claim. *See Grimes v. Saikley*, 904 N.E.2d 183, 196 (Ill. App. Ct. 2009) ("While allegations of having knowledge and failing to take certain actions may be part of a cause of action for negligence in certain instances, those allegations do not allege that defendants … substantially assisted in the principal violation."). Here, it is particularly ridiculous to assert aiding-and-abetting for alleged failure to act on Lightspeed's "accusations," given that the Illinois Supreme Court has blocked the mass identification of Internet subscribers in this case in connection with those same "accusations."

### 2.     Lightspeed fails to state a claim for civil conspiracy.

In order to state a claim for civil conspiracy, a plaintiff must allege both an agreement and a tortious act committed in furtherance of that agreement. *McClure v. Owens Corning Fiberglass Corp.*, 720 N.E.2d 242, 258 (Ill. 1999). An agreement is "a necessary and important" element of this cause of action. *Id.*; *see Hard Drive Productions, Inc. v. Does 1-55*, No. 11-C-2798, 2011 WL 4889094, at *4-5 (N.D. Ill. Oct. 12, 2011).

There is no allegation of an agreement here. Lightspeed alleges that by resisting subpoenas (successfully) in this case, AT&T acted as "de facto" legal counsel for Smith's so-called "co-conspirators." (Am. Compl. ¶¶ 94-95.) In any event, there is no exception to the "agreement" requirement of a civil conspiracy claim for unilateral activity by a non-tortious actor that might benefit the tortious actor. *See Kiswani v. Phoenix Sec'y Agency, Inc.*, 529 F. Supp. 2d 949, 956 (N.D. Ill. 2008) ("Thus, because Plaintiff has failed to establish any facts that an actual agreement was entered into by [Defendant], his civil conspiracy claim against

[Defendant] must be dismissed because no reasonable jury could find for the Plaintiff."); *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 939 (7th Cir. 2012) ("[I]n the absence of any evidence of an explicit or implicit agreement, a defendant's failure to prevent harm to a plaintiff does not amount to a conspiracy."); *cf. Baker v. Jewel Food Stores, Inc.*, 823 N.E.2d 93, 103 (Ill. App. Ct. 2005) (holding that actual agreement, not "conscious parallel conduct," is required to show conspiracy in price-fixing cases).   Indeed, Lightspeed makes no allegation whatsoever that the Internet subscribers even communicated – much less reached an agreement – with AT&T regarding Lightspeed's website or any other aspect of Lightspeed's generally-stated allegations.  (Am. Compl. ¶¶ 94-95.)  Nor could AT&T have "conspired" with any given user of an Internet account at a given point in time, because AT&T has no way of knowing whether such user was the subscriber of the Internet account or someone else.   The "subscriber fees" that Lightspeed complains were paid to AT&T (*id.* ¶ 95) are just another red herring, since Lightspeed alleges no facts indicating that the monthly subscription fees that the ISPs charge their subscribers indicate a conspiratorial "agreement" to provide "de facto" legal services.

Here, again, AT&T has only acted in a manner consistent with its rights, and has prevailed in doing so.  AT&T cannot be sued merely because AT&T's meritorious assertion of its rights may have in some way benefitted a third party.

### 3.      Lightspeed fails to state a claim under the Computer Fraud and Abuse Act.

Lightspeed also contends that AT&T's actions constitute a violation of the federal Computer Fraud and Abuse Act (the "CFAA").   (*Id.* ¶¶ 53-61.)  The CFAA imposes civil liability for economic damages in certain cases against a person who accesses a computer without authorization.  *See generally* 18 U.S.C. § 1030(a)-(b), (g).

AT&T's alleged conduct could not constitute a CFAA violation.  The statute's plain language sets forth who is liable under the CFAA:  a primary violator, a person who attempts a

primary violation, and a co-conspirator of a primary violator.  *Flynn v. Liner Grode Stein Yankelevitz Sunshine Regenstreif & Taylor LLP*, No. 3:09-CV-00422-PMP-RAM, 2011 WL 2847712, at *3 (D. Nev. July 15, 2011).  Lightspeed contends that Smith gained unauthorized access to its websites, and that AT&T "failed and refused to take action to prevent" such access. (Am. Compl. ¶¶ 54-56.)  This contention is ridiculous on its face, given that Smith is not alleged to be an AT&T subscriber, but rather a subscriber of some other ISP.  Regardless, there is no allegation that AT&T was a primary violator (by accessing a computer, transmitting a program, trafficking a password, or transmitting a threatening or extortionary communication).  *See* 18 U.S.C. § 1030(a).  Nor is there any allegation that AT&T *attempted* to commit a primary violation.  *See id.* § 1030(b).  The only remaining activity that could potentially subject AT&T to civil liability under the CFAA is if it *conspired* with a primary violator.  *See id.*  As discussed above, however, AT&T cannot be held liable for a conspiracy because it has done nothing other than to successfully assert its rights, and because there is no allegation of any conspiratorial agreement between Smith and AT&T.  *See Trademotion, L.L.C. v. Marketcliq, Inc.*, No. 6:11-cv-1011-Orl-36DAB, 2012 WL 682465, at *7 (M.D. Fla. Mar. 2, 2012) ("While the term 'conspires' is not defined [in the CFAA], its meaning in other criminal statutes implies a knowing agreement with another to commit the unlawful act.").

Furthermore, Lightspeed has no standing to assert a civil action under the CFAA.  To assert a civil action, Lightspeed must allege that the unauthorized activity relating to its website caused "loss to 1 or more persons during any 1-year period … aggregating at least $5,000 in value."  *See* 18 U.S.C. § 1030(c)(4)(A)(i)(I), (g).[9]  The term "loss" is specifically defined to

---

[9] A civil claim under the CFAA can also arise if the alleged computer access caused an impact on medical treatment, a physical injury, a threat to public health or safety, or damage to a United States Government computer.  *See* 18 U.S.C. § 1030(c)(4)(A)(i), (g).  Lightspeed does not allege any of these.

include (1) reasonable cost to the victim including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and (2) any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service. *Id* § 1030(e)(11). Lightspeed fails to allege either such loss.

To be sure, Lightspeed alleges costs relating to developing and operating its security software system. (Am. Compl. ¶¶ 57-58.) But those costs were allegedly incurred to proactively detect hacking in general, not to respond to, evaluate, or make repairs to Lightspeed's websites or computers themselves. *See SKF USA, Inc. v. Bjerkness*, 636 F. Supp. 2d 696, 721 (N.D. Ill. 2009) (holding that "loss" under CFAA does not cover "purely economic harm unrelated to the computer system"); *Nexans Wires S.A. v. Sark-USA, Inc.*, 319 F. Supp. 2d 468, 474-76 (S.D.N.Y. 2004) ("Therefore, the meaning of 'loss' … has consistently meant a cost of investigating or remedying damage *to a computer*." (emphasis added)). In fact, according to Lightspeed, Lightspeed would have incurred those alleged costs even if Smith and the so-called "co-conspirators" conducted no hacking, as Lightspeed contends they "represent less than two percent (2%) of the attempts to hack into Plaintiff's website"). (Am. Compl. ¶ 51.)

Similarly, although Lightspeed alleges costs attributable to lost website membership fees[10] (*id.* ¶ 59), it does not allege that such economic damages were incurred because of interruption of service. "Although the lost revenues that [Plaintiff] alleges were caused by

---

[10] Although Lightspeed speculates that it has lost $519,350 in revenues, it overlooks not only that such revenues do not qualify as "loss" under the CFAA, *see* 18 U.S.C. § 1030(e)(11), but also that the $5,000 loss threshold applies separately to each alleged intruder. *See, e.g., In re Apple & AT&TM Antitrust Litig.*, 596 F. Supp. 2d 1288, 1308 (N.D. Cal. Oct. 1, 2008) (any "aggregation" provided for by the CFAA to reach $5,000 threshold refers to aggregating multiple victims of the same defendant's act, not aggregating multiple acts by multiple defendants). According to Lightspeed, the cost of a single month of membership to its websites is $39.95 and the average membership lasts two months (*See* Am. Compl. ¶ 51.) Thus the applicable lost revenue figure, if pertinent, would be more on the order of $80.00.

Defendants' unauthorized transfer of [Plaintiff's] data might fit the usual understanding of the term 'loss,' the CFAA provides a different definition that trumps the ordinary definition." *SKF USA, Inc.*, 636 F. Supp. 2d at 721. Lightspeed's economic damages are not recoverable pursuant to a CFAA claim unless it can first allege "loss" that meets the $5,000 annual threshold. Lightspeed has failed to allege *any* recoverable loss whatsoever under the statute.

For these multiple reasons, Lightspeed's CFAA claim fails as a matter of law.

### 4.  Lightspeed fails to state a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act.

Lightspeed also asserts a claim against AT&T for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA").  (Am. Compl. ¶¶ 98-103.)  The ICFA imposes civil liability in certain cases against a person who uses or employs deception, fraud, false pretense, false promise, misrepresentation, or concealment.  *See* 815 ILCS 505/2.

An ICFA claim requires "a deceptive act or practice."  *De Bouse v. Bayer*, 922 N.E.2d 309, 313 (Ill. 2009).  Lightspeed states that AT&T's resistance to Lightspeed's subpoenas and failure to prevent individuals from hacking into its website "is a deceptive practice."  (Am. Compl. ¶ 100.)  Lightspeed fails to allege a single misrepresentation, concealment, or other deceptive act or practice by AT&T, much less to meet the heightened pleading requirement for such a claim under Rule 9(b) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); Am. Compl. ¶¶ 98-103.  At no time did AT&T inform Lightspeed that AT&T would voluntarily comply with Lightspeed's litigation requests.  Nor did AT&T inform Lightspeed that AT&T would proactively penalize unknown individuals who, according to Lightspeed's unsubstantiated accusations, were hacking Lightspeed's websites.  AT&T has consistently, openly, and successfully resisted Lightspeed's wrongful use of the judicial system

- 16 -

and legal process in this lawsuit.  (*See, e.g., id.* ¶¶ 43-48.)  There has been no deception, and Lightspeed does not allege otherwise.[11]  Lightspeed's cause of action under the ICFA, like its other causes of action, is essentially incoherent and manifestly fails to state a claim.

### 5. Lightspeed fails to state a claim for unjust enrichment.

Finally, Lightspeed asserts an unjust-enrichment claim against AT&T.  (Am. Compl. ¶¶ 73-78.)  According to this claim, AT&T' "dilatory legal strategy" and failure to take action against those subscribers accused of hacking "unjustly enriched" AT&T because it "continued to collect subscriber fees" from those subscribers.  (*Id.* ¶¶ 74-75.)

To state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience.  *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989).  AT&T's ongoing receipt of subscriber fees is by no means "unjust" just because Lightspeed contends that someone has used those subscribers' Internet accounts improperly.

Unjust enrichment is based on a finding of a contract implied in law.  *See Schlosser v. Welk*, 550 N.E.2d 241, 242 (Ill. App. Ct. 1990).[12]  AT&T's receipt of Internet fees from its subscribers does not violate some implied contract between AT&T and Lightspeed.  Put another

---

[11] Along the same lines, an ICFA claim also requires that the defendant intend for the plaintiff to "rely on the deception."  *De Bouse*, 922 N.E.2d at 313.  Further, the deception must be the proximate cause of plaintiff's "actual damages."  *Oshana v. Coca-Cola Company*, 472 F.3d 506, 513-14 (7th Cir. 2006).  ("In other words a damages claim under ICFA requires that the plaintiff was deceived in some manner and damaged by the deception.")  Given that no deceptive act or practice has occurred or even been alleged here, these elements become nonsensical.  Lightspeed has not, and indeed cannot, allege any deceptive act or practice upon which AT&T intended that Lightspeed rely and further that proximately caused it actual damages.

[12] Lightspeed's unjust-enrichment claim also fails to the extent it is merely an alternate theory of recovery because, as set forth above, AT&T is not liable under any other cause of action pleaded in the Complaint.  *See Pearson v. Garrett-Evangelical Theological Seminary, Inc.*, 790 F. Supp. 2d 759, 769 (N.D. Ill. 2011).

way, even assuming, *arguendo*, that Lightspeed is damaged by some subscribers' continued receipt of Internet services, Lightspeed is not damaged by AT&T's retention of the subscribers' Internet fees (and thus AT&T's retention of subscriber fees could not be "to [Lightspeed's] detriment").[13]   Lightspeed has failed to state grounds for an unjust-enrichment claim against AT&T.  *See Village of Bensenville v. City of Chicago*, 906 N.E.2d 556, 592-93 (Ill. App. Ct. 2009); *Cement-Lock v. Gas Tech. Inst.*, 523 F. Supp. 2d 827, 863 (N.D. Ill. 2007).

If more need be said, litigation conduct that is upheld by the highest court of the forum state cannot then be held to violate fundamental principles of justice, equity, and good conscience.  Lightspeed's unjust-enrichment claim, like its other claims, fails as a matter of law.

## C.   Lightspeed's State Claims Against AT&T Are Preempted By The Federal Copyright Act.

Lightspeed's state-law claims – aiding and abetting, conspiracy, violation of the ICFA, and unjust enrichment—are also preempted by the federal Copyright Act.  Under the Copyright Act, legal or equitable rights equivalent to exclusive rights specified in works of authorship fixed in a tangible medium are "governed exclusively" by the Copyright Act, and no person is entitled to any such equivalent right under the state law.  *See* 17 U.S.C. § 301(a).  Indeed, it is irrelevant whether Lightspeed has actually copyrighted its allegedly hacked website content, because "state laws that intrude on the domain of copyright are preempted even if the particular expression is

---

[13] In general, the materials that are received by the defendant must have been furnished *by the plaintiff*. *See Hayes Mech., Inc. v. First Indus., L.P.*, 812 N.E.2d 419, 426 (Ill. App. Ct. 2004).  There have been exceptions made, however, for the defendant's retention of a benefit transferred to it by a third party, where:  (1) the benefit should have been given to the plaintiff, but the third party mistakenly gave it to the defendant instead, (2) the defendant procured the benefit from the third party through some type of wrongful conduct, or (3) the plaintiff for some other reason had a better claim to the benefit than the defendant.  *See Village of Bensenville v. City of Chicago*, 906 N.E.2d 556, 592-93 (Ill. App. Ct. 2009).  But none of these exceptions applies.  AT&T's subscribers were not mistaken when they paid Internet subscription fees to their Internet provider AT&T.  The Internet subscription fees were not generated as a result of AT&T's allegedly wrongful conduct.  Nor does Lightspeed otherwise have any conceivable claim to Internet subscription fees paid by AT&T's Internet subscribers.

neither copyrighted nor copyrightable." *See Seng-Tiong Ho v. Taflove*, 648 F.3d 489, 501 (7th Cir. 2011).

Lightspeed's state-law causes of action are based on individuals having "gained unauthorized access" to its websites, "consumed Plaintiff's content as though they were paying members," and "disseminated that information to other unauthorized individuals."  (Am. Compl. ¶ 18.)  These allegations by nature are "simply copyright claims in different clothing" that should be "dismissed as preempted by the Copyright Act."  *See Personal Keepsakes, Inc. v. PersonalizationMall.Com, Inc.*, No. 11 C 5177, 2012 WL 414803, at *8 (N.D. Ill. Feb. 8, 2012).  Accordingly, under applicable law, Lightspeed's state-law causes of action must also be dismissed as preempted by the Copyright Act.  *See CustomGuide v. CareerBuilder, LLC*, 813 F.Supp.2d 990, 1000, 1004 (N.D. Ill. 2011) (unjust enrichment and ICFA claims are subject to Copyright Act preemption); *Merchant Transaction Sys., Inc. v. Nelcela, Inc.*, No. CV 02-1954-PHX-MHM, 2009 WL 1835109, at *11 (D. Ariz. June 25, 2009) (aiding and abetting the conversion of intellectual property is preempted by Copyright Act); *Do It Best Corp. v. Passport Software, Inc.*, No. 01 C 7674, 2005 WL 743083, *14 (N.D. Ill. Mar. 31, 2005) (civil conspiracy claim is subject to Copyright Act preemption).

### III.  CONCLUSION

The lawsuit against AT&T, Comcast, and their respective corporate representatives is frivolous, brought only for the purposes of harassment, and inconsistent with the requirements of Rule 11 of the Federal Rules of Civil Procedure.  Lightspeed has failed to assert a plausible claim against the ISPs (or their representatives).  AT&T asks that this Court dismiss the causes of action asserted against it in Plaintiff Lightspeed Media Corporation's First Amended Complaint, and for such other and further relief as the Court deems just and proper under the circumstances.

Respectfully submitted,

/s/ Troy A. Bozarth
Troy A. Bozarth – 06236748
tab@heplerbroom.com
HEPLERBROOM LLC
130 North Main Street
Edwardsville, IL   62025
(618) 656-0184

Bart W. Huffman
LOCKE LORD LLP
100 Congress Avenue, Suite 300
Austin, TX 78701
(512) 305-4700
*Admitted pro hac vice*

*Attorneys for SBC Internet Services, Inc.*
*d/b/a AT&T Internet Services*

## Certificate of Service

I hereby certify that on this 29th day of August 2012, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record as listed below:

Paul A. Duffy                    paduffy@wefightpiracy.com

Kevin T. Hoerner                 KTH@bphlaw.com, lane@bphlaw.com

Andrew G. Toennies               atoennies@lashlybaer.com, skohler@lashlybaer.com

/s/ Troy A. Bozarth_____
                    Troy A. Bozarth