# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| LIGHTSPEED MEDIA CORPORATION, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No. 12-cv-889 GPM-SCW |
| | ) | |
| ANTHONY SMITH, *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

## DEFENDANT COMCAST'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

John D. Seiver (admitted *pro hac vice*)
Ronald G. London
DAVIS WRIGHT TREMAINE, LLP
1919 Pennsylvania Ave., NW
Suite 800
Washington, DC 20006
(202) 973-4200

Andrew G. Toennies
LASHLY & BAER, P.C.
20 East Main Street
Belleville, Illinois 62220-1602
(618) 233-5587

*Attorneys for Defendants Comcast Cable Communications, LLC and Comcast Corporate Representative #1*

**TABLE OF CONTENTS**

I.    INTRODUCTION AND BACKGROUND ...................................................... 1

II.   ARGUMENT .......................................................................................... 3

    A.    Lightspeed Fails to State a CFAA Claim Against Comcast .................................. 5

    B.    All of Lightspeed's State Claims Against Comcast Are Preempted By The Federal Copyright Act ......................................................... 8

    C.    Lightspeed Cannot State a Claim Under Illinois' Consumer Fraud and Deceptive Practices Act ...................................................... 10

    D.    Lightspeed Cannot State a Claim Against Comcast for Conspiracy or Aiding and Abetting....................................................... 14

    E.    Lightspeed Has No Cause of Action for Unjust Enrichment.............................. 19

III.  CONCLUSION........................................................................................ 20

## TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Anderson v. Aon Corp.*,
    2008 WL 4865574 (N.D. Ill. June 16, 2008) ..........................................................................14

*Andritz, Inc. v. Southern Maintenance Contractor, LLC*,
    2009 WL 48187 (M.D. Ga. Jan. 7, 2009) ..............................................................................7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...............................................................................................................4

*Association Benefit Servs., Inc. v. AdvancePCS Holding Corp.*,
    2004 WL 2101928 (N.D. Ill. Sept. 21, 2004) ......................................................................20

*Bates v. United States*,
    522 U.S. 23 (1997)................................................................................................................14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...............................................................................................................4

*Bressner v. Ambroziak*,
    379 F.3d 478, 483 (7th Cir. 2004) .................................................................................15, 17

*Brooks v. Ross*,
    578 F.3d 574 (7th Cir. 2009) .................................................................................................4

*Cassetica Software, Inc. v. Computer Sciences Corp.*,
    2009 WL 1703015 (N.D. Ill. June 18, 2009).....................................................................7, 9

*Ciszewski v. Denny's Corp.*,
    2010 U.S. Dist. LEXIS 34132 (N.D. Ill. Apr. 7, 2010) .......................................................12

*City of Omaha Employees Betterment Ass'n v. City of Omaha*,
    883 F.2d 650 (8th Cir. 1989) ...............................................................................................16

*Cornelius v. Deluca*,
    2009 WL 2568044 (E.D. Mo. Aug. 18, 2009).....................................................................15

*CustomGuide v. CareerBuilder, LLC*,
    813 F.Supp.2d 990 (N.D. Ill. 2011) ...................................................................................7, 9

*Do It Best Corp. v. Passport Software, Inc.*,
    2005 WL 743083 (N.D. Ill. Mar. 31, 2005)........................................................................10

*Doe v. Bates*,
  2006 WL 3813758 (E.D. Tex. Dec. 27, 2006) ..................................................................14

*Doe v. Dartmouth-Hitchcock Med. Ctr.*,
  2001 WL 873063 (D.N.H. July 19, 2001) ..................................................................5, 14

*Doe v. GTE Corp.*,
  347 F.3d 655 (7th Cir. 2003) ..................................................................15, 17, 18

*Eastern Trading Co. v. Refco, Inc.*,
  229 F.3d 617 (7th Cir. 2000) ..................................................................14

*EEOC v. Illinois*,
  69 F.3d 167 (7th Cir. 1995) ..................................................................18

*Garelli Wong & Assocs. v. Nichols*,
  551 F.Supp.2d 704 (N.D. Ill. 2008) ..................................................................6

*Garland-Sash v. Lewis*,
  2007 WL 935013 (S.D.N.Y. Mar. 26, 2007), *vacated in part on other grounds*,
  2009 WL 3227297 (2d Cir. 2009) ..................................................................5

*Gaston v. Facebook, Inc.*,
  2012 WL 629868 (D. Or. Feb. 2, 2012) ..................................................................15

*GMAC, LLC v. Hillquist*,
  652 F.Supp.2d 908 (N.D. Ill. 2009) ..................................................................16, 17

*Goddard v. Google, Inc.*,
  2008 WL 5245490 (N.D. Cal. Dec. 17, 2008) ..................................................................14, 15

*Goldschmidt v. Patchett*,
  686 F.2d 582 (7th Cir. 1982) ..................................................................15

*Greenberger v. Geico Gen. Ins. Co.*,
  631 F.3d 392 (7th Cir. 2011) ..................................................................11

*Harris Custom Builders, Inc. v. Hoffmeyer*,
  834 F.Supp. 256 (N.D. Ill.1993) ..................................................................13

*Hartford Accident & Indem. Co. v. Sullivan*,
  846 F.2d 377 (7th Cir. 1988) ..................................................................17

*Independent Trust Corp. v. Stewart Info. Servs. Corp.*,
  665 F.3d 930 (7th Cir. 2012) ..................................................................16, 17

*Junction Solutions, LLC v. MBS Dev, Inc.*,
  2007 WL 4234091 (N.D. Ill. Nov. 20, 2007) ..................................................................13

*Kaliski v. Hunt Int'l Res. Corp.*,
    609 F.Supp. 649 (N.D. Ill. 1985) ...........................................................................18

*Kalow & Springnut, LLP v. Commence Corp.*,
    2008 WL 2557506 (D.N.J. June 23, 2008) ...........................................................5, 6

*Klein & Heuchan, Inc. v. CoStar Realty Info., Inc.*,
    2009 WL 963130 (M.D. Fla. Apr. 8, 2009) .................................................................6

*Knoll Pharm. Co. v. TEVA Pharm. USA, Inc.*,
    2001 WL 1001117 (N.D. Ill. Aug. 24, 2001) .............................................................13

*Koutsoubos v. Casanave*,
    816 F.Supp. 472 (N.D. Ill. 1993) .............................................................................14

*Liberty Media Holdings, LLC v. Tabora*,
    2012 WL 2711381 (S.D.N.Y. July 9, 2012) ..............................................................10

*Lightspeed Media Corp. v. Does 1-100*,
    No. 1:10-cv-05604 (N.D. Ill. Mar. 31, 2011) .............................................................1

*M.A. v. Village Voice Media Holdings*,
    809 F.Supp.2d 1041 (E.D. Mo. 2011)..................................................................14, 15

*Marobie-FL, Inc. v. National Ass'n of Fire Equip. Distribs.*,
    983 F.Supp. 1167 (N.D. Ill. 1997) ............................................................................10

*Metro Premium Wines v. Bogle Vineyards, Inc.*,
    2011 WL 5403635 (N.D. Ill. Nov. 8, 2011) ..............................................................14

*Mintel Int'l Group, Ltd. v. Neergheen*,
    2010 WL 145786 (N.D. Ill. Jan. 12, 2010) ..................................................................7

*Motorola v. Lemko Corp.*,
    609 F.Supp.2d 760 (N.D. Ill. 2009) ............................................................................7

*Noah v. AOL Time Warner Inc.*,
    261 F.Supp.2d 532 (E.D. Va. 2003) ..........................................................................15

*Orbit One Commc'ns, Inc. v. Numerex Corp.*,
    692 F. Supp. 2d 373 (S.D.N.Y. 2010).........................................................................7

*Pacific Century Int'l, Ltd. v. Does 1-37*,
    282 F.R.D. 189 (N.D. Ill. 2012).................................................................................15

*PBA Local No. 38 v. Woodbridge Police Dep't*,
    832 F.Supp. 808 (D.N.J. 1993) ............................................................................16, 17

iv

*Pearson v. Garrett-Evangelical Theological Seminary, Inc.*,
    790 F.Supp.2d 759 (N.D. Ill. 2011) ...............................................................19

*Personal Keepsakes, Inc. v. Personalizationmall.Com, Inc.*,
    2012 WL 414803 (N.D. Ill. Feb. 8, 2012) ........................................................9

*Prince v. Campbell*,
    314 F.Supp.2d 793 (N.D. Ill. 2004) ...............................................................15

*Probst v. Ashcroft*,
    25 F. App'x 469 (7th Cir. 2001) .....................................................................17

*PSN Illinois, Inc. v. Ivoclar Vivadent, Inc.*,
    2005 WL 2347209 (N.D. Ill. Sept. 21, 2005) ...........................................13, 17

*Renovitch v. Kaufman*,
    905 F.2d 1040 (7th Cir. 1990) .......................................................................14

*Seng-Tiong Ho v. Taflove*,
    648 F.3d 489 (7th Cir. 2011) ...........................................................................8

*Shailja Gandhi Revocable Trust v. Sitara Capital Mgmt., LLC*,
    2011 U.S. Dist. LEXIS 19784 (N.D. Ill. Feb. 25, 2011) .................................12

*Siegel v. Shell Oil Co.*,
    656 F.Supp.2d 825 (N.D. Ill. 2009) ..........................................................14, 19

*SKF USA, Inc. v. Bjerkness*,
    636 F.Supp.2d 696 (N.D. Ill. 2009) .................................................................7

*Smartix Int'l Corp. v. MasterCard Int'l LLC*,
    2008 WL 4444554 (S.D.N.Y. Sept. 30, 2008) ...............................................14

*Steffes v. Stepan Co.*,
    144 F.3d 1070 (7th Cir. 1998) .......................................................................12

*Swanson v. Citibank, N.A.*,
    614 F.3d 400 (7th Cir. 2010) ...........................................................................4

*Tamayo v. Blagojevich*,
    526 F.3d 1074 (7th Cir. 2008) .........................................................................4

*Thompson's Gas & Elec. Serv. v. BP Am. Inc.*,
    691 F.Supp.2d 860 (N.D. Ill. 2010) ...............................................................12

*United States v. Nosal*,
    676 F.3d 854 (9th Cir. 2012) ...........................................................................7

v

*Vaughn v. Kelly*,
2007 WL 804694 (N.D. Ill. Mar. 13, 2007)......................................................................9

*Villa v. Brady Publ'g*,
2002 WL 14003145 (N.D. Ill. June 27, 2002) ................................................................9

*Walsh Chiropractic, Ltd. v. Stratacare, Inc.*,
752 F.Supp.2d 896 (S.D. Ill. 2010)........................................................................4, 11, 19

*Ward Chrysler Ctr., Inc. v. ADP Dealer Servs., Inc.*,
2012 WL 3526757 (S.D. Ill. Aug. 14, 2012) ................................................................3, 4

*Wilton Partners III, LLC v. Gallagher*,
2003 WL 22880834 (N.D. Ill. Dec.5, 2003)................................................................12, 17

*Windy City Metal Fabricators & Supply, Inc. v. CIT Tech Fin. Servs.*,
536 F.3d 663 (7th Cir. 2008) ....................................................................................11

*WorldCom, Inc. v. Transcend Allegiance, Inc.*,
1998 WL 111636 (N.D. Ill. Mar. 6, 1998)................................................................13

**STATE CASES**

*De Bouse v. Bayer AG*,
922 N.E.2d 309 (Ill. 2009)........................................................................................11

*Doe II v. MySpace Inc.*,
175 Cal. App. 4th 561 (2009) ..................................................................................14

*Oliveira v. Amoco Oil Co.*,
776 N.E.2d 151 (Ill. 2002) ......................................................................................11

*Robinson v. Toyota Motor Credit Corp.*,
775 N.E.2d 951 (Ill. 2002) ......................................................................................11

**STATUTES**

17 U.S.C. § 101......................................................................................................8

17 U.S.C. § 106(1)-(5)............................................................................................8

17 U.S.C. § 301(a) ................................................................................................8

17 U.S.C. § 512......................................................................................................2

17 U.S.C. § 512(a) ..............................................................................................20

18 U.S.C. § 1030..................................................................................................5

18 U.S.C. § 1030(a)(2)(C) ..............................................................................5

18 U.S.C. § 1030(b) ......................................................................................14

18 U.S.C. § 1030(c)(4)(A)(i)(I-V) .................................................................6

18 U.S.C. § 1030(e)(11) .................................................................................6

18 U.S.C. § 1030(g) ......................................................................................6

28 U.S.C. § 1400 ...........................................................................................2

47 U.S.C. § 230 ...............................................................................14, 15, 20

47 U.S.C. § 230(c) .......................................................................................14

Pub. L. No. 110-326, Title II, § 206, 122 Stat. 3561 (2008) ......................14

815 Ill. Comp. Stat. ......................................................................................10

**OTHER AUTHORITIES**

F.R.C.P. 12(b)(6) ...........................................................................................4

F.R.C.P. 8(a) ................................................................................................11

F.R.C.P. 9(b) ..........................................................................................11, 12

Defendants Comcast Cable Communications LLC and Comcast Corporate Representative #1 (together, "Comcast") hereby submit this memorandum in support of their motion to dismiss Plaintiff Lightspeed Media Corporation's First Amended Complaint ("Am. Compl.").

## I.   INTRODUCTION AND BACKGROUND

Plaintiff Lightspeed Media Corporation ("Lightspeed") is an Arizona corporation which owns and operates pornographic websites.  Comcast is an Internet service provider in the business of providing access to the Internet to its customers.  On August 3, 2012, Lightspeed filed an Amended Complaint in the Circuit Court for St. Clair County, Illinois.  Although Plaintiff is a non-resident of Illinois, with counsel in Chicago, it chose to file this action initially in St. Clair County to test the judicial waters of the forum.  Lightspeed's other actions are pending in federal courts in Chicago and Oakland, California, and Plaintiff's counsel has filed actions for similar plaintiffs in multiple federal district courts around the country, including Illinois, the District of Columbia, Virginia, Minnesota, California, Texas, Kentucky, and Florida. Plaintiff's prior filing in the federal district court in Chicago demonstrates that the gravamen of its claims is not hacking, but copyright infringement for illegally downloading adult videos.  *See Lightspeed Media Corp. v. Does 1-100*, No. 1:10-cv-05604 (N.D. Ill. Mar. 31, 2011) (order dismissing complaint for improper joinder).

Lightspeed's original Complaint ("Compl."), also filed in St. Clair County, asserted a civil conspiracy claim against one Defendant John Doe and thousands of anonymous co-conspirators for the alleged unauthorized access to Plaintiff's pornographic website.  *See* Dkt. 2, Attach. 3, Compl. ¶¶ 38-42.  The essence of Lightspeed's initial Complaint was that thousands of unnamed Does were "members of an online hacking community where hacked passwords are passed back and forth among members."  *Id.* ¶¶ 11.  Without any factual support, Lightspeed alleged that these conspirators, totaling more than 6,000, over a period of many months "actively

1

participated with one another to disseminate the hacked passwords…." *Id*., although the evidence of hacking in the exhibits attached to the complaint concern unnamed Doe conspirators downloading and sharing content without proper authorization. Those are copyright claims that can only be brought in federal court. 17 U.S.C. § 512 and 28 U.S.C. § 1400. Accordingly, Lightspeed's claims in St. Clair County assiduously avoided mention of copyright infringement although that is the gravamen of plaintiff's allegations.

Before service or appearance of any defendant in the first action, Lightspeed obtained an *ex parte* order from the Circuit Court of St. Clair County (Hon. Robert P. LeChien) authorizing discovery from Comcast and other Internet Service Providers ("ISPs") of the personally identifiable information of the 6,600 Internet service subscribers located across the country. Pursuant to the court's order, Lightspeed served a subpoena on Comcast in December 2011, seeking the identities of more than 1,200 individuals who, Lightspeed alleged, are Comcast subscribers, out of the more than 6,000 identified in the initial Complaint as "conspirators." *See* Dkt. 9, Attach. 4, Order Granting Discovery. The circuit court denied Comcast's and the other affected ISPs' subsequent motions to quash their respective subpoenas and ordered that they begin complying within two months. Dkt. 9, Attach. 6, Order Denying Motion to Quash.

Thereafter, Comcast and the other affected ISPs, moved the Supreme Court of Illinois for a supervisory order directing the circuit court to grant the ISPs' motions to quash. The Supreme Court granted the ISPs that extraordinary relief on June 27, 2012, directing the circuit court to vacate its order denying the ISPs' motions to quash and to "enter an order allowing the motion to quash subpoenas" filed by the ISPs. Dkt. 9, Attach. 10, Supervisory Order. The circuit court complied on July 16, 2012. Order Vacating May 21, 2012 Order (attached hereto as Ex. A).

2

Less than a month later, Lightspeed filed the instant Amended Complaint, adding numerous counts, identifying one Doe Defendant as Anthony Smith, and adding Comcast, a Comcast "corporate representative," and another ISP (AT&T) and its corporate representative as defendants. *See* Dkt. 2, Attach. 2. The Amended Complaint was removed by Defendant AT&T to this court on August 9, 2012, and thereafter Comcast consented to removal. Dkt. 4. Undeterred by the Illinois Supreme Court's extraordinary act to void Lightspeed's first attempt to obtain vast discovery of the same 6,600 unnamed alleged co-conspirators, Plaintiff again immediately initiated two tactics to obtain discovery of their identifying information – presumably so that it could begin contacting those individuals with settlement demands.

First, before removal, Lightspeed issued a subpoena out of the Circuit Court for Cook County, Illinois seeking personal identifying information for Comcast subscribers, although its Amended Complaint was (at that time) pending in St. Clair County and no state court order authorizing the subpoena had been issued. *See* Second Subpoena to Comcast (attached hereto as Ex. B). Notwithstanding removal of the Amended Complaint to federal court, after removal, Lightspeed re-served copies of the state court subpoena on counsel. *See* Service of Second Subpoena to Comcast (attached hereto as Ex. C). Once again, the vast majority of the IP addresses listed in the state subpoena, which appear to be the same IP addresses sought in Lightspeed's first subpoena, are for individuals outside the jurisdiction of all Illinois state and federal courts. After removal to federal court, Lightspeed then filed an emergency motion for early discovery on August 16, 2012. Dkt. 9. After a hearing held on August 20, 2012, at Plaintiff's request, this Court denied Lightspeed's motion. Dkt. 23.

## II.    ARGUMENT

The Amended Complaint must be dismissed because, even taking its well-pled allegations as true and construing them in a light most favorable to Lightspeed, it fails to state a

3

claim against Comcast. *Ward Chrysler Ctr., Inc. v. ADP Dealer Servs., Inc.*, 2012 WL 3526757, at *1 (S.D. Ill. Aug. 14, 2012). While motions to dismiss under F.R.C.P. 12(b)(6) require courts to also accept the reasonable inferences arising from a complaint, *id.*, dismissal is proper as Lightspeed's claims against Comcast are not "plausible on [their] face,"[1] and applying "judicial experience and common sense" compels dismissal. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). If, as here, "factual allegations [are] so sketchy or implausible" they cannot satisfy the plaintiff's burden, dismissal must be granted. *Walsh Chiropractic, Ltd. v. Stratacare, Inc.*, 752 F.Supp.2d 896, 904 (S.D. Ill. 2010) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)).

Here, Lightspeed alleges a CFAA claim against Comcast (Count I) without asserting that Comcast took any action directly affecting protected computers, or causing transmission of any command or password, *see infra* § A, and conspiracy and aiding and abetting claims (Counts VII & X), even though no "meeting of minds" between Comcast and other defendants is alleged or inferable, and it is utterly implausible that Comcast offered "substantial and knowing assistance." *Id*. § D. In fact, each count against Comcast fails to allege the requisite intent, and all state law claims fail for the further reason they are preempted by the Copyright Act. *Id*. § B. The state law claims additionally fail not only on their merits, *id.* §§ C-E, but also because conspiracy, aiding and abetting, and unjust enrichment (Counts IV, VII & X) do not stand on their own but require other substantive wrongs, which are neither plausibly alleged nor inferable. *Id.* §§ C-E. And these are just a few of the Amended Complaint's many infirmities that, as shown below, make clear Lightspeed failed to "do better than putting … words on paper that, in the hands of an imaginative reader, might suggest [ ] something … that might be redressed by the law." *ADP Dealer*, at *2 (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010)).

---

[1] *Id.* (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008)).

### A.      Lightspeed Fails to State a CFAA Claim Against Comcast

Count I of the Amended Complaint, alleging against all Defendants an undifferentiated "violation of the [CFAA], 18 U.S.C. § 1030," Am. Compl. ¶ 61, fails at the outset for not specifying the CFAA prohibition purportedly violated.  Even giving the Amended Complaint its most liberal reading, it could be viewed at most as alleging violation of § 1030(a)(2)(C), which prohibits intentionally accessing, without or in excess of authorization, and obtaining information from, any protected computer; § 1030(a)(4), which prohibits knowingly and with intent to defraud accessing, without or in excess of authorization, a protected computer to obtain something of value besides the use thereof; § 1030(a)(5), which prohibits knowingly causing transmission of computer code to intentionally damage a protected computer, or intentionally accessing one without authorization so as to recklessly cause damage or cause damage and loss; or § 1030(a)(6), which prohibits knowingly or with intent to defraud trafficking in passwords that allows access to a computer without authorization.  Not only does lack of specificity doom this Count, Lightspeed does not allege Comcast engaged in *any* of these acts – but rather, only that Comcast "*refused to take action* to prevent hacking into and theft from" Lightspeed's website.  Am. Compl. ¶ 56 (emphasis added); *see also id.* ¶¶ 30-49 (alleging similar inaction, and engaging in litigation, but no act involving a protected computer).

This fails to state a claim, as the CFAA "creates only a limited private … action '*against the violator*,'"[2] and Comcast is not alleged to have "violated" any CFAA provision.  Lightspeed also fails to allege intent by Comcast to harm any computer, or to engage in, or bring about, any violation, and this, too, is fatal to a CFAA claim.  *E.g.*, *Kalow & Springnut, LLP v. Commence*

---

[2]    *Doe v. Dartmouth-Hitchcock Med. Ctr.*, 2001 WL 873063, at *5 (D.N.H. July 19, 2001) ("[I]mposing vicarious liability … would neither be permitted by the language of the CFAA itself, nor … further the basic purpose of the Act.").  *See also, e.g.*, *Garland-Sash v. Lewis*, 2007 WL 935013, at *4 (S.D.N.Y. Mar. 26, 2007), *vacated in part on other grounds*, 2009 WL 3227297 (2d Cir. 2009).

*Corp.*, 2008 WL 2557506, at *4 (D.N.J. June 23, 2008).  Even if Comcast could be accused of

any intentional conduct – which it cannot – that would not suffice, as there must an allegation

that the actor intended *harm* to occur by his conduct, which is absent here.  *See id.*  In fact, all

acts (and inaction) that the Amended Complaint attributes to Comcast occurred only ***after*** any

hacking, unauthorized access to computers or websites, or other computer-related malfeasance.

Am. Compl. ¶¶ 30-49, 56.

Count I also fails in that CFAA claims require pleading both damage ***and*** loss to survive,

yet Lightspeed does not do so here.  *Garelli Wong & Assocs. v. Nichols*, 551 F.Supp.2d 704, 708

(N.D. Ill. 2008); 18 U.S.C. § 1030(g) (cross-referencing § (c)(4)(A)(i)(I-V), of which only

subsection I, requiring loss, is applicable here).  The CFAA defines "loss" as "reasonable cost

to any victim, including … of responding to an offense, conducting a damage assessment and

restoring the data, program, system or [] information, … and any revenue lost, cost incurred, or

… consequential damages [] because of interruption of service."  18 U.S.C. § 1030(e)(11).  The

Amended Complaint alleges remedial costs and lost revenues, *e.g.*, Am. Compl. ¶¶ 57-59, but

nowhere does it tie this to damage to data, programs, or hardware, or service interruptions, as the

CFAA requires:

> To bring a claim under the CFAA using damages, [plaintiffs] must plead
> impairment to the integrity or availability of data, a program, a system, or
> information[.]  * * * *  To bring a claim … using loss, … [i]f the cost
> pleaded is lost revenue, cost incurred or other consequential damaged …,
> the CFAA requires a plaintiff to show an interruption of service.

*Klein & Heuchan, Inc. v. CoStar Realty Info., Inc.*, 2009 WL 963130, at *3-4 (M.D. Fla. Apr. 8,

2009).  Any "purported loss 'must relate to the investigation or repair of a computer system fol-

lowing a violation *that caused impairment or unavailability of data*.'"[3]  Moreover, as "damage under the statute is limited to the impairment of the integrity or availability of data and information," it must be "lost or impaired because it was erased" or rendered inaccessible.  *Motorola v. Lemko Corp.*, 609 F.Supp.2d 760, 769 (N.D. Ill. 2009); *Andritz, Inc. v. Southern Maintenance Contractor, LLC*, 2009 WL 48187, at *3 (M.D. Ga. Jan. 7, 2009).  Costs not related to impairment of or damage to a computer or computer system are not cognizable "losses" under the CFAA.  *Cassetica*, at *4; *SKF USA, Inc. v. Bjerkness*, 636 F.Supp.2d 696, 721 (N.D. Ill. 2009).

The Amended Complaint fails to identify any damage allegedly caused by the password hacking.  Critically absent is any claim that such conduct resulted in Lightspeed's inability to offer content to paying customers, or that unauthorized access in any way affected its systems or ability to offer such service.  *See Cassetica*, at *3.  In fact, quite the opposite is true, insofar as the Amended Complaint indicates the actions of Smith and his co-conspirators were ongoing.  *E.g.*, Am. Compl. ¶ 107.  Rather, as discussed in greater detail in § B, *infra*, most of the harm alleged involves improper use of content obtained through unauthorized access, which does not constitute loss or damage, or otherwise cognizable injury for CFAA purposes.   As the "plain language of the CFAA supports a narrow reading" and only "expressly prohibits improper 'access,'" the statute "does not prohibit misuse or misappropriation" of content, and no CFAA claim can stand.  *United States v. Nosal*, 676 F.3d 854, 863 (9th Cir. 2012) (quoting *Orbit One Commc'ns, Inc. v. Numerex Corp.*, 692 F. Supp. 2d 373, 385 (S.D.N.Y. 2010)).

---

[3]  *CustomGuide v. CareerBuilder, LLC*, 813 F.Supp.2d 990, 998 (N.D. Ill. 2011) (emphasis added) (quoting *Cassetica Software, Inc. v. Computer Sciences Corp.*, 2009 WL 1703015, at *4 (N.D. Ill. June 18, 2009)); *Mintel Int'l Group, Ltd. v. Neergheen*, 2010 WL 145786, at *10 (N.D. Ill. Jan. 12, 2010).

**B.    All of Lightspeed's State Claims Against Comcast Are Preempted By The Federal Copyright Act**

The rest of the Amended Complaint (Counts II-X) at its core asserts only interests protected by the federal Copyright Act, 17 U.S.C. §§ 101, *et seq.*, and must be dismissed as preempted, including all non-CFAA claims against Comcast. *E.g.*, *Seng-Tiong Ho v. Taflove*, 648 F.3d 489, 500 (7th Cir. 2011). Specifically, under Section 301, "all legal or equitable rights … equivalent to … exclusive rights … specified by section 106 in works of authorship … fixed in a tangible medium" are "governed exclusively" by the Copyright Act, and "no person is entitled to any such … equivalent right … under the []law … of any State." 17 U.S.C. § 301(a). As Lightspeed's Complaint is rife with averments indicating that what it is really pursuing is the unauthorized reproduction, publication, performance, and/or display of works fixed in a tangible medium,[4] all of which fall under Section 106, *see* 17 U.S.C. § 106(1)-(5), dismissal on preemption grounds is required.

For instance, Lightspeed avers "unauthorized access to [its] protected websites," Am. Compl. ¶ 4; *see also id.* ¶¶ 16,17, 69, 81, suggestive of protection the Copyright Act affords, and goes on to specify that what is at issue is "adult entertainment" and "website content," *id.* ¶ 16, and how "hacked passwords" are used to access it. *Id.* ¶ 17. More to the point, it claims "theft," *id.* ¶ 7, of "information and data … available only by those [with] lawful access," *id.* ¶ 13, and illicit "access" to "content." *Id.* ¶¶ 16-17. Lightspeed claims interlopers "consumed [its] content as though they were [] members" of its sites, and "downloaded [] content and disseminated [it] to" others. *Id.* ¶¶ 18, 55, 65; *see also id.* ¶¶ 23, 25 (discussing downloaded files). Lightspeed complains that this interferes with its "exclusive right[s] to the content" and "to allow access and

---

[4]   It immaterial here whether Lightspeed has actually copyrighted its assertedly hacked content, or could, as "state laws that intrude on the domain of copyright are preempted even if the particular expression is neither copyrighted nor copyrightable." *Taflove*, 648 F.3d at 501.

8

disseminate" it,[5] as well as of "consuming and downloading ... without [] compensation." *Id.* ¶ 74. Such harms make these Counts "simply copyright claims in different clothing" that should be "dismissed as preempted by the Copyright Act." *Personal Keepsakes, Inc. v. Personalizationmall.Com, Inc.*, 2012 WL 414803, at *8 (N.D. Ill. Feb. 8, 2012).

Courts routinely dismiss such claims. Count IV, for example, alleges unjust enrichment against Comcast for assertedly retaining benefits from the above-described interlopers "illegally accessing Plaintiff's [] website and consuming and downloading [the] content." Am. Compl. ¶ 74. "[I]nsofar as this claim is based on the allegation that [Comcast] was unjustly enriched by [acts] of using/selling and/or giving away [Lightspeed's] ... services ..., copyright preemption would apply." *CustomGuide*, 813 F.Supp.2d at 1003-04. *See also*, *e.g.*, *Cassetica*, at *5 ("state [] claims [based] entirely upon [] unauthorized downloads," including unjust enrichment "arise exclusively from conduct governed by the Copyright Act [and] are preempted"); *Vaughn v. Kelly*, 2007 WL 804694, at *4 (N.D. Ill. Mar. 13, 2007). Count VII, alleging ICFA liability based on "hacked passwords" used to "steal from Plaintiff's website," Am. Compl. ¶ 99, also is preempted, as the consumer confusion and deception necessary for ICFA claims "have been held ... inherently present in any copyright action and [] therefore not considered extra elements," such claims are preempted. *E.g.*, *CustomGuide*, 813 F.Supp.2d at 999-1000; *Villa v. Brady Publ'g*, 2002 WL 14003145, at *3 (N.D. Ill. June 27, 2002) (where acts alleged "rest solely on [] unauthorized reproduction, display and distribution of ... expression," the Copyright Act preempts ICFA claim). *See also Personal Keepsakes*, at *8.

Similarly, claims such as civil conspiracy and aiding and abetting (Counts VII & X) are preempted to the extent they in reality seek to impose liability for vicarious and/or contributory

---

[5]   *Id.* ¶¶ 63, 81; *see also id.* ¶ 88 (complaining of "downloaded protected content from th[e] websites and shar[ing of] that content").

9

copyright infringement.  At bottom, these claims rest on Comcast allegedly knowing of the hacking and resultant downloading/use/dissemination of Lightspeed's content, and supposedly assisting it by failing to take steps to stop it and litigating in ways that impeded Lightspeed's efforts to do so.[6]  This is no different from seeking to impose liability for contributory copyright infringement, where a defendant has knowledge of infringing activity and induces, causes or material contributes to it, or vicarious liability, where a defendant has the right and ability to supervise and control the infringing activity while having a direct financial interest therein.[7]  Accordingly, insofar as claims under the Copyright Act already accommodate contributory and vicarious infringement, Section 301 preempts conspiracy and aiding-and-abetting liability where, as here, the underlying wrong properly sounds in copyright.  *E.g.*, *Do It Best Corp. v. Passport Software, Inc.*, 2005 WL 743083, at *14 (N.D. Ill. Mar. 31, 2005); *Liberty Media Holdings, LLC v. Tabora*, 2012 WL 2711381, at *2 (S.D.N.Y. July 9, 2012).

### C.  Lightspeed Cannot State a Claim Under Illinois' Consumer Fraud and Deceptive Practices Act

Lightspeed fails to state a cause of action that Comcast is liable to Plaintiff for damages pursuant to the ICFA, which proscribes "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact."  815 Ill. Comp. Stat. 505/2.  First, Lightspeed is not a consumer, so it lacks standing to bring an ICFA claim against Comcast, because it cannot satisfy the "consumer

---

[6]  *See* Am. Compl. ¶¶ 92-95, 105-107.  As discussed at § D, *infra*, such litigation – especially considering Comcast prevailed – cannot support conspiracy or aiding and abetting liability.

[7]  *See, e.g.*, *Marobie-FL, Inc. v. National Ass'n of Fire Equip. Distribs.*, 983 F.Supp. 1167, 1178-79 (N.D. Ill. 1997).  For the same reasons Lightspeed's CFAA claim fails, *see supra* § A, and that conspiracy and aiding and abetting fail, *see infra* § D – *i.e.*, no allegations of, respectively, direct conduct by Comcast, or action by it in concert with Defendant Smith or any other wrongdoer – Comcast cannot be liable for contributory or vicarious infringement.  The timing also precludes liability for contributory infringement as  all acts alleged to have been committed by Comcast occurred after any alleged infringement occurred.

nexus" test, as Comcast's actions complained of do not involve trade practices addressed to the market generally or otherwise implicate consumer protection concerns. *Walsh Chiropractic*, 752 F.Supp.2d at 913. Lightspeed does not even allege Comcast's conduct complained of implicates consumer concerns, or that anyone – consumer or otherwise – is affected by the conduct, or that the relief requested will serve consumer interests.

Second, while the Illinois Supreme Court has held a plaintiff may recover under ICFA for unfair as well as deceptive conduct, *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002), Lightspeed purports to bring a claim against the ISPs based only on allegedly deceptive practices. This distinction is important because while claims for "unfairness" need only meet the notice pleading standard of Rule 8(a), claims for "deceptive practices" must meet the heightened pleading standard of Rule 9(b),[8] which requires pleading with specificity: (1) a deceptive act or practice by defendant, (2) that it intends plaintiff rely upon, (3) that the deception occur in the course of conduct involving trade or commerce, and (4) actual damages to the plaintiff (5) proximately caused by the deception. *Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 160 (Ill. 2002). With respect to the latter requirement, the Illinois Supreme Court has stated unequivocally that a plaintiff cannot demonstrate proximate cause under the ICFA where – as here – there has been no communication between plaintiff and defendant. *De Bouse v. Bayer AG*, 922 N.E.2d 309, 316 (Ill. 2009). Specifically, statements and omissions are actionable under ICFA only where defendant makes a direct statement to plaintiff and misrepresents or omits a material fact.[9] Because Rule 9(b) applies, courts interpreting *De Bouse* dismiss ICFA claims if plaintiffs

---

[8] *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech Fin. Servs.*, 536 F.3d 663, 670 (7th Cir. 2008); *Greenberger v. Geico Gen. Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011).

[9] *Id.* at 316 ("[W]e have repeatedly emphasized that in a consumer fraud action, the plaintiff must actually be deceived by a statement or omission. If there has been no communication with the plaintiff, there have been no statements and no omissions. In such a situation, a plaintiff cannot prove proximate cause.").

fail to identify specific communications between the parties and on which plaintiff allegedly relied.[10]  Here, Lightspeed does not identify any statements Comcast allegedly made, much less provide the particularity Rule 9(b) requires – such as the time, place, and general circumstances under which such statements were made – or that it relied on any statements by Comcast, only that Comcast "intended [Lightspeed] to rely upon [its] deceptive practices."  Am. Compl. ¶ 101.

Third, Lightspeed appears to contend Comcast engaged in the "deceptive practice" of "defend[ing] those gaining access to Plaintiff's website from being identified, while at the same time failing to prevent … continued unlawful entry into the website."  Am. Compl. ¶ 100.  Of course this allegation is unspecific and lacks factual basis because (among other reasons) Lightspeed fails to identify with any particularity who is "gaining access" to its website because of the conduct and does not specify the legal basis for contending ISPs should prevent the unnamed "individuals" from hacking into its website.  Moreover, Comcast has no responsibility (or authority) to police subscribers' online activities.  Woefully inadequate pleading aside, to the extent Lightspeed appears to contend Comcast's (unspecified) statements in the course of litigation constitute "deceptive acts" under the ICFA, any statements made by the ISPs, through counsel, and any motions or other filings made by counsel, are absolutely protected by the litigation privilege and cannot form the basis of a cause of action under the ICFA.

The "absolute litigation privilege affords immunity to attorneys (and other participants in the judicial process) from tort liability arising out of statements made in connection with litiga-tion."  *Steffes v. Stepan Co.*, 144 F.3d 1070, 1074 (7th Cir. 1998); *see also Wilton Partners III,*

---

[10]  *See, e.g., Shailja Gandhi Revocable Trust v. Sitara Capital Mgmt., LLC*, 2011 U.S. Dist. LEXIS 19784, at *16-17 (N.D. Ill. Feb. 25, 2011) (dismissing ICFA claim where "plaintiffs [] failed to plead [] they actually read or heard any of the alleged misrepresentations"); *Ciszewski v. Denny's Corp.*, 2010 U.S. Dist. LEXIS 34132, at *9 (N.D. Ill. Apr. 7, 2010) ("Because [plaintiff] identifies no communication that he received that was generated by Denny's, he has failed to plead the circumstances constituting the fraud with the particularity required by Rule 9(b)."); *Thompson's Gas & Elec. Serv. v. BP Am. Inc.*, 691 F.Supp.2d 860, 870 (N.D. Ill. 2010).

*LLC v. Gallagher*, 2003 WL 22880834, at *1 (N.D. Ill. Dec.5, 2003) (absolute litigation privilege precludes claims based on filing allegedly "baseless lawsuit" and serving third party subpoena).  Courts applying Illinois law have repeatedly dismissed unfair competition claims based on the allegedly improper use of litigation as a means of competition.[11]  As stated in *PSN Illinois, Inc. v. Ivoclar Vivadent, Inc.*, 2005 WL 2347209, at *5 (N.D. Ill. Sept. 21, 2005), "[u]nder Illinois law, the only causes of action that can arise from the wrongful filing of a lawsuit are malicious prosecution and abuse of process," such that courts "have repeatedly dismissed unfair competition claims based on the allegedly improper use of litigation[.]"  *See also id*. at *6 ("Ivoclar does not allege … any disparaging statements outside of the litigation or administrative context."); *see also Junction Solutions, LLC v. MBS Dev, Inc.*, 2007 WL 4234091, at *5, *7 (N.D. Ill. Nov. 20, 2007).  Ultimately, the claims regarding Lightspeed's reliance on Comcast's conduct complained of lack any inherent logic, or intelligibility,[12] and in any event, nothing in the complaint alleges or explains how it is that Comcast "intended" Lightspeed to "rely" on Comcast's conduct.  All that can be said is that Lightspeed wants to "punish" Comcast for prevailing in the earlier phase of this litigation by naming it as a defendant.  No valid cause of action can grow out of the victory Comcast and the other ISPs obtained in the Illinois Supreme Court.

---

[11]   *See, e.g., Knoll Pharm. Co. v. TEVA Pharm. USA, Inc.*, 2001 WL 1001117, at *2 (N.D. Ill. Aug. 24, 2001); *WorldCom, Inc. v. Transcend Allegiance, Inc.*, 1998 WL 111636, at *2 (N.D. Ill. Mar. 6, 1998); *Harris Custom Builders, Inc. v. Hoffmeyer*, 834 F.Supp. 256, 262 (N.D. Ill.1993).

[12]   *See* Am. Compl. ¶ 101 ("Defendants intended [] Plaintiff to rely upon their deceptive practices [characterized in ¶ 100 as making arguments in court and not terminating subscribers Lightspeed accuses of wrongdoing] because … the[] conduct allowed Defendant Smith's co-conspirators to re-gain unauthorized entry into Plaintiff's website").

### D.   Lightspeed Cannot State a Claim Against Comcast for Conspiracy or Aiding and Abetting

Given the implausibility of attempting to pin direct liability on Comcast for its **in**action and litigation activity, Lightspeed also asserts civil conspiracy and aiding-and-abetting, but these claims fail as well.  At the outset, civil conspiracy and aiding and abetting are not separate torts, but require independent, underlying wrongs,[13] which as shown above are absent here with respect to failure to state CFAA and ICFA claims (and insofar as the ICFA and other claims are preempted by the Copyright Act).  *See, e.g., Siegel v. Shell Oil Co.*, 656 F.Supp.2d 825, 836 (N.D. Ill. 2009) ("Because Seigel [] failed to establish his ICFA [and other] claims or his unjust enrichment claims, his conspiracy claim necessarily fails.").  The law, moreover, does not support civil conspiracy based on alleged CFAA violations,[14] which as noted, "creates only a [ ] private right of action 'against the violator.'"  *Dartmouth-Hitchcock*, at *5.  In addition, to the extent Comcast is alleged to have aided and abetted ICFA violations, "Illinois has [] never recognized a tort for aiding and abetting a fraud."  *Koutsoubos v. Casanave*, 816 F.Supp. 472, 476 (N.D. Ill. 1993) (citing *Renovitch v. Kaufman*, 905 F.2d 1040, 1049 (7th Cir. 1990)).

Conspiracy and aiding-and-abetting liability also are precluded by the Communications Decency Act ("CDA"), which grants ISPs like Comcast immunity that prevents holding them civilly liable as the publisher of statements or transmissions by third parties using their service.  47 U.S.C. § 230(c).  Here, civil conspiracy or aiding-and-abetting liability (or under ICFA or

---

[13]   *E.g., Anderson v. Aon Corp.*, 2008 WL 4865574, at *7 (N.D. Ill. June 16, 2008) ("[A] civil conspiracy claim cannot survive without a separate, predicate tort."); *Metro Premium Wines v. Bogle Vineyards, Inc.*, 2011 WL 5403635, at *6 (N.D. Ill. Nov. 8, 2011) ("'[A]iding and abetting' is not a separate tort.") (quoting *Eastern Trading Co. v. Refco, Inc.*, 229 F.3d 617, 623-24 (7th Cir. 2000)).

[14]   *E.g., Smartix Int'l Corp. v. MasterCard Int'l LLC*, 2008 WL 4444554, at * 1 n.2 (S.D.N.Y. Sept. 30, 2008) ("Congress has not provided for conspiracy liability under the CFAA.").  This is reinforced by recent CFAA amendments, in that Congress did not include conspiracy provisions in the CFAA until 2008, Pub. L. No. 110-326, Title II, § 206, 122 Stat. 3561, 3563 (2008), at which time it did so only for *criminal violations, compare* 18 U.S.C. § 1030(b) (criminal liability for those who "conspires to commit … an offense") *with id.* § 1030(g) (providing civil remedy only via "action *against the violator*"), and this differing language in the civil and criminal provisions must be given effect.  *Bates v. United States*, 522 U.S. 23, 30 (1997).

unjust enrichment[15]) for asserted use of Comcast's facilities involved in alleged hacking, disseminating hacked passwords, or distribution of illegally acquired content, would impermissibly treat Comcast as liable for transmissions by Smith and his co-conspirators.  It is well-settled that ISPs enjoy § 230 immunity for such conduct by subscribers where the ISP plays no role in what information or content subscribers transmit.  *E.g.*, *Doe v. GTE Corp.*, 347 F.3d 655 (7th Cir. 2003); *Noah v. AOL Time Warner Inc.*, 261 F.Supp.2d 532, 537-38 (E.D. Va. 2003).  And insofar as § 230 preempts contrary state law, *Doe v. GTE*, 347 F.3d at 658, there is no doubt it immunizes against precisely these types of conspiracy, aiding and abetting, and CFAA-based unfair trade claims.  *See*, *e.g.*, *Gaston v. Facebook, Inc.*, 2012 WL 629868, at *6-7 (D. Or. Feb. 2, 2012); *Village Voice*, 809 F.Supp.2d at 1054; *Cornelius v. Deluca*, 2009 WL 2568044, at *2-3 (E.D. Mo. Aug. 18, 2009); *Goddard v. Google, Inc.*, 2008 WL 5245490, at *4-5 (N.D. Cal. Dec. 17, 2008).

But even more fundamentally, Lightspeed cannot satisfy the basic elements of action in concert with and in assistance of primary wrongdoer(s) as conspiracy and/or aiding and abetting require.  Civil conspiracy requires alleging (1) agreement, (2) by two or more persons, (3) to perform some overt act(s), (4) in furtherance of the agreement/conspiracy, (5) to achieve an unlawful purpose, (6) that causes injury to another.  *Bressner v. Ambroziak*, 379 F3d 478, 483 (7th Cir. 2004).  As to "agreement," a conspiracy "requires factual allegations showing a meeting of the minds,"[16] and civil conspiracy "are unfounded [when] plaintiffs have not pled an agreement among the alleged conspirators."  *Pacific Century Int'l, Ltd. v. Does 1-37*, 282 F.R.D. 189 (N.D.

---

[15]   This also applies to the CFAA, as § 230 immunity encompasses civil liability under criminal laws.  *E.g.*, *M.A. v. Village Voice Media Holdings*, 809 F.Supp.2d 1041 (E.D. Mo. 2011); *Goddard v. Google, Inc.*, 2008 WL 5245490, at *17-18 n.5 (N.D. Cal. Dec. 17, 2008); *Doe v. Bates*, 2006 WL 3813758, at *4 (E.D. Tex. Dec. 27, 2006); *Doe II v. MySpace Inc.*, 175 Cal. App. 4th 561, 570 (2009).

[16]   *E.g.*, *Goldschmidt v. Patchett*, 686 F.2d 582, 585 (7th Cir. 1982) ("[C]onclusory allegations [] are insufficient."); *Prince v. Campbell*, 314 F.Supp.2d 793, 795 (N.D. Ill. 2004).

Ill. 2012).  Yet even reading the Complaint most favorably to Lightspeed, it "fails to link" Comcast to any hacking or dissemination of protected content "by plausibly suggesting [Comcast] participated in" that activity or "plausibly support[ing an] inference [Comcast] agreed, either explicitly or implicitly" that such wrongdoing occur.  *Independent Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 939 (7th Cir. 2012).  In fact, nothing in the Complaint alleges, or gives rise to an inference, that Comcast ever communicated – let alone had a "meeting of the minds" – with Smith or his co-conspirators (or AT&T).[17]

It does not suffice to just allege, *e.g.*, Am. Compl. ¶¶ 9, 29, 31, 46, 49, 74, 92, that Comcast as an ISP made available and maintained Internet access without "reach[ing] understanding with … other defendants."  *PBA Local No. 38 v. Woodbridge Police Dep't*, 832 F.Supp. 808, 832 (D.N.J. 1993).  Nor is it sufficient to simply allege, *e.g.*, Am. Compl. ¶¶ 28, 30, 45-48, 92-93, 100, 106, that Comcast knew of wrongdoing defendants' conduct and failed to act. *City of Omaha Employees Betterment Ass'n v. City of Omaha*, 883 F.2d 650, 652, 653 (8th Cir. 1989) (even where co-defendants "worked 'hand in hand,'" and one knew the other engaged in misconduct but "failed to take appropriate measures, that alone [] does not establish … agreement").  "Mere knowledge of the fraudulent or illegal actions of another is [] not enough to show a conspiracy."  *GMAC, LLC v. Hillquist*, 652 F.Supp.2d 908, 922-23 (N.D. Ill. 2009) ("It is an intentional tort and requires proof … defendant knowingly and voluntarily participated in a common scheme to commit an unlawful act or a lawful act in an unlawful manner.").  Rather, Comcast "must have understood the general objectives of the conspiratorial scheme, accepted them, and agreed … to do its part to further those objectives," none of which is alleged here.  *Independent Trust*, 665 F.3d at 939 (quotes and internal editing omitted).  There is "no authority" to

[17]  The implausibility of the claim is even more obvious in that Defendant Smith is not alleged to be a Comcast subscriber and was apparently not identified until well into the state court litigation.  To say that this previously unknown individual conspired with Comcast is simply not credible.

support the notion "that … failure to do more to prevent [] fraud makes [one] a co-conspirator." *Id*. at 940.

Comcast's inaction also cannot satisfy the "overt act" requirement, and the affirmative acts ascribed to it, *see* Am. Compl. ¶¶ 7, 30, 34-43, 75, 94-95, 100, 106 – involving solely success in raising legitimate legal issues inherent in Lightspeed's litigation strategy, *see supra* §C – cannot satisfy the requirement that the overt act "must be tortious or unlawful." *E.g.*, *Ambroziak*, 379 F.3d at 483. Rather, such conduct is "excluded from consideration by the litigation privilege – a doctrine that simply precludes actions taken in the adversarial setting of litigation and otherwise redressable through court process from supporting further litigation." *Probst v. Ashcroft*, 25 F. App'x 469, 471 (7th Cir. 2001). As *Independent Trust* held, simply making legal arguments relating to an alleged conspiracy does not make a party a co-conspirator absent conduct, that is wrongful in some way, in furtherance of the conspiracy. 665 F.3d at 939; *id*. at 940-41 (lawyer was conspirator, not because he performed legal work or received remuneration, but as "a knowing participant" as "[h]e had assisted in launching the scheme and knew [] it was continuing") (analyzing *Hartford Accident & Indem. Co. v. Sullivan*, 846 F.2d 377, 384-85 (7th Cir. 1988)). *See PSN Illinois*, at *4-5; *see also supra* § C (discussing *Junction Solutions* and Illinois limits on ICFA claims based on filing lawsuits as held in *PSI Illinois*). Those "who innocently perform[] an act which happens to fortuitously further the tortious purpose of another [are] not liable under … civil conspiracy,"[18] and this includes litigation efforts, including subpoena practice. *Wilton Partners*, at *3-4.

---

[18] *GMAC*, 652 F.Supp.2d at 923 ("Accidental, inadvertent, or negligent participation … does not amount to conspiracy."). Nor does a communications service provider's furnishing of services in the ordinary course, and receiving payment therefor, make it a co-conspirator. *E.g.*, *PBA Local*, 832 F.Supp. at 832; *cf.*, *Doe v. GTE*, 347 F.3d at 661 ("Plaintiffs do not cite any case … holding that a service provider must take reasonable care to prevent injury to third parties.").

Similarly, as to aiding and abetting, Lightspeed fails to allege substantial and knowing assistance to a primary violator by Comcast as required for civil liability, and claims that failure to prevent CFAA and/or ICFA violations, or to notify violators of the illegality of their conduct, Am. Compl. ¶¶ 28, 30, 45-48, 92-93, 100, 106, cannot suffice. *EEOC v. Illinois*, 69 F.3d 167, 169-70 (7th Cir. 1995). It would "stretch[] the concept" of CFAA and ICFA liability "beyond the breaking point to hold" Comcast liable for "failing to remind" Smith (not alleged to be a Comcast subscriber)that hacking is illegal. *Id*. at 170 ("Assisting, and failing to prevent, are not the same thing."); *see also Kaliski v. Hunt Int'l Res. Corp.*, 609 F.Supp. 649, 652 (N.D. Ill. 1985) (plaintiff must show aider and abettor's knowledge of primary violation and acts that substantially assist it (as well as a primary violation)). Comcast's role as an ISP for any alleged conspirators also cannot satisfy the substantial and knowing assistance requirement, as providing such service "does not satisfy the ordinary understanding of culpable assistance to a wrongdoer, which requires a desire to promote the wrongful venture's success." *Doe v. GTE*, 347 F.3d at 659.

Lightspeed also fails to allege, as to knowing assistance, a "substantial causal connection between the culpable conduct of the alleged aider and abettor and the harm suffered." *Kaliski*, 609 F.Supp.2d at 652. Alleged failures to act are not cognizable, as noted above, and thus cannot be said to have "caused" the losses Lightspeed claims, and nothing about the steps Comcast has taken in litigation, *see* Am. Compl. ¶¶ 7, 30, 34-43, 75, 94-95, 100, 106, can be fairly be said to have "caused" Smith's hacking, or any sharing of hacked passwords or illicitly downloaded content. Comcast's conduct was not, under any interpretation of the Complaint, "a substantial factor in bringing about [Lightspeed's] loss." *Kaliski*, 609 F.Supp. at 652. Comcast also "may not be held liable as an aider and abettor when [] acts constituting the alleged aiding and abetting

18

occur after the fraudulent transaction is completed." *Id.* (requisite causal connection "cannot exist when the alleged aiding and abetting occurs after completion of the fraudulent transaction"). Here, everything the Complaint alleges about Comcast's "interpos[ition] … in this litigation," Am. Compl. ¶¶ 30, 37-43, its supposed "delay[ing] and derail[ing]" of same," Am. Compl. ¶ 34, and any running of "interference for [] paying customers," *id.* ¶ 35, or "acting as *de facto* legal counsel," *id.* ¶ 106, all occurred – by definition – *after* the complained of acts by hackers and file-sharers.

### E.   Lightspeed Has No Cause of Action for Unjust Enrichment

Count IV of the Complaint alleging unjust enrichment against Comcast (and AT&T) must be dismissed for failure to state a claim inasmuch as Illinois does not recognize a separate cause of action for unjust enrichment, which rather is an additional theory of recovery for other conduct. *E.g.*, *Pearson v. Garrett-Evangelical Theological Seminary, Inc.*, 790 F.Supp.2d 759, 769 (N.D. Ill. 2011) ("unjust enrichment is not a separate cause of action; rather, it is a condition that may be brought about by unlawful or improper conduct as defined by the law … and may be addressed by a cause of action based upon that improper conduct."); *Walsh Chiropractic*, 752 F.Supp.2d at 909; *Siegel*, 656 F.Supp.2d at 834. Thus, as above, insofar as Lightspeed's CFAA and ICFA claims fail (as do conspiracy and aiding and abetting), any unjust enrichment claim based on that underlying conduct fails as well. *Pearson*, 759 F.Supp.2d at 769 ("Because no other counts remain, a claim for unjust enrichment cannot stand."). Even were that not so, the claim fails as Comcast did not, as recovery on an unjust enrichment theory requires, unjustly retain any benefit, to Lightspeed's detriment, that Comcast was not entitled to retain, and/or to which Lightspeed (or anyone else) had greater entitlement. *Walsh Chiropractic*, 752 F.Supp.2d at 909. All Lightspeed alleges in this regard is that Comcast "profits" through monthly fees from subscribers (some of whom are alleged hackers/downloaders/file-sharers) for providing Internet

service.  Am. Compl. ¶¶ 7, 74-75.  These fees are by no means something to which Lightspeed (or any third party) can claim a right,[19] and Comcast accordingly is not "unjustly enriched" by them.  Comcast provides Internet access service and is not liable for any alleged misuse of that service by others.  17 U.S.C. § 512(a); 47 U.S.C. § 230.

For similar reasons, the Amended Complaint fails to state an unjust enrichment claim based on any alleged benefit Comcast obtained from its subscribers who are alleged to be co-conspirators.  The Amended Complaint alleges no benefit Lightspeed should have received that Smith or others mistakenly gave to Comcast, or that Comcast procured any benefit from Smith through any type of wrongful conduct, or that Lightspeed has a better claim to any benefit that Smith conferred on Comcast than does Comcast.  *Association Benefit Servs., Inc. v. AdvancePCS Holding Corp.*, 2004 WL 2101928 at *3 & n.2 (N.D. Ill. Sept. 21, 2004).  Liability under an unjust enrichment cannot rest on benefits Comcast may have received from someone other than Lightspeed anyway.  *Id*.

### III.    CONCLUSION

For the foregoing reasons, the Comcast Defendants respectfully request that the Court dismiss each of Counts I, IV, VII, VIII, and X of Lightspeed's Complaint as against Comcast, with prejudice, for failure to state a claim upon which relief may be granted.

Dated: August 29, 2012

Respectfully submitted,

By:  */s/ John D. Seiver*

John D. Seiver (admitted *pro hac vice*)
Ronald G. London
DAVIS WRIGHT TREMAINE, LLP

---

[19]   Lightspeed also claims costs incurred and lost revenues, Am. Compl. ¶¶ 57-60, but none of these amounts have flowed to Comcast, which has thus not been "unjustly enriched" by them.

1919 Pennsylvania Ave., NW
Suite 800
Washington, DC 20006
(202) 973-4200

Andrew G. Toennies
LASHLY & BAER, P.C.
20 East Main Street
Belleville, Illinois 62220-1602
(618) 233-5587

*Attorneys for Defendants Comcast Cable Communications, LLC and Comcast Corporate Representative #1*