1           IN THE DISTRICT OF THE UNITED STATES OF AMERICA
              FOR THE SOUTHERN DISTRICT OF ILLINOIS
2    _____
                                       )
3    LIGHTSPEED MEDIA CORPORATION,     )
                                       )
4                   Plaintiff(s),      )
                                       )
5        vs.                           )   Case No. **12-00889-GPM**
                                       )
6    ANTHONY SMITH, et al.,            )
                                       )
7                   Defendant(s).      )
     _____  )

8
                        **MOTION FOR DISCOVERY**
9
     BE IT REMEMBERED AND CERTIFIED that heretofore on  **08/20/2012**,
10   the same being one of the regular judicial days in and for the
         United States District Court for the Southern District of
11   Illinois, **Honorable G. Patrick Murphy**, United States District
       Judge, presiding, the following proceedings were recorded by
12      mechanical stenography; transcript produced by computer.

13                            **APPEARANCES:**
     *FOR PLAINTIFF:*
14           **John L. Steele** of Steele Hansmeier PLLC, 161 North
     Clark Street, Suite 4700, Chicago, IL 60601
15           **And Kevin T. Hoerner** of Becker, Paulson *et al.*, 5111
     West Main Street, Belleville, IL 62226.
16           **And Paul A. Duffy**, Prenda Law, Inc.,
     161 N. Clark Street, Suite 3200, Chicago, IL 60601
17           **And (by phone) Paul Hansmeier** of alpha Law Firm, 80
     South 8th Street, Suite 900, Minneapolis, MN 55402
18
     *FOR DEFENDANT:*
19           **Bart Westcott Huffman** of Locke Lord LLP - Austin, 100
     Congress Avenue, Suite 300, Austin, TX 78701
20           **And Troy A. Bozarth** of HeplerBroom LLC - Edwardsville,
     130 North Main Street, P.O. Box 510, Edwardsville, IL 62025.
21           **And Andrew G. Toennies** of Lashly & Baer PC, 714 Locust
     Street, St. Louis, MO 63101.
22           **And John D. Seiver** of Davis Wright Tremaine LLP, 1919
     Pennsylvania Avenue, NW, Suite 800, Washington, DC 20006
23
     *REPORTED BY*:  **Molly N. Clayton, RPR, FCRR**, Official Reporter
24   for United States District Court, SDIL, 750 Missouri Ave., East
     St. Louis, Illinois 62201, (618)482-9226,
25                    *molly_clayton@ilsd.uscourts.gov*

1              **INDEX OF WITNESS EXAMINATION**

2                           **DX**       **CX**     **R-DX**     **R-CX**

3   No witness testimony.

4

5                  **INDEX OF EXHIBITS**

6   **EXHIBIT**            **DESCRIPTION**      **Id'D**     **Rcv'd**

7   No exhibits identified or received.

8

9                **MISCELLANEOUS INDEX**

10                          **PAGE**

11  No miscellaneous index entries.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              *COURTROOM DEPUTY:  Lightspeed Media Corporation versus*

2    *Anthony Smith et al.*, Case Number 12-889-GPM, is called for

3    hearing on the motion for discovery.

4              Will the parties identify themselves for the record?

5              *MR. STEELE:*  John Steele on behalf of Plaintiff

6    Lightspeed.

7              *THE COURT:*  Mr. Steele.

8              *MR. HOERNER:*  Kevin Hoerner for the plaintiff.

9              *THE COURT:*  Mr. Hoerner, good afternoon.

10             *MR. DUFFY:*  Paul Duffy for the plaintiff.

11             *THE COURT:*  Mr. Duffy.

12             *MR. JONES:*  I'm Steve Jones.  I'm the owner of

13   Lightspeed.

14             *THE COURT:*  All right.  Mr. Jones.

15             *MR. BOZARTH:*  Troy Bozarth for SPC Internet Services.

16             *THE COURT:*  Mr. Bozarth, good afternoon.

17             *MR. BOZARTH:*  Good afternoon.

18             *MR. HUFFMAN:*  Bart Huffman, also for SPC Internet

19   Services, Inc.

20             *THE COURT:*  Is it Huffman?

21             *MR. HUFFMAN:*  Huffman, yes, your Honor.

22             *THE COURT:*  Okay.  Good afternoon.

23             *MR. TOENNIES:*  Andy Toennies for ComCast Cable.

24             *THE COURT:*  All right.  Good afternoon.

25             *MR. SEIVER:*  John Seiver, also for ComCast Cable, your

1    Honor.

2              THE COURT:  Is it Seivers?

3              MR. SEIVER:  Seiver.

4              THE COURT:  Thank you.  Good afternoon.

5          All right.  Who do we have on the line?

6              MR.  HANSMEIER:  On the phone is Paul Hansmeier for

7    the plaintiff.

8              THE COURT:  All right, Mr. Hansmeier, good afternoon

9    to you.

10         Now, what we are doing here today is, I received calls

11   to my chambers.  I did not talk to -- I think it was someone

12   named Dunn.  Mr. Dunn had called and requested an emergency

13   hearing.  Instead, I had my clerk contact everyone that we

14   could contact and try to set it up.  Here we are.

15         Now, the Court understands what's requested here is

16   what's cast as an emergency motion to engage in out of the

17   ordinary discovery.  In other words, ordinarily we have a

18   scheduling conference and the parties work out their

19   limitations and who's to do what and when and we get started

20   that way.  But what I was told in the emergency motion was that

21   this was a life or death matter for the plaintiff's business.

22   But then I've read I think it is AT&T's papers today, and they

23   say it's not life or death at all and that, in fact, the

24   plaintiff has met with no success at all, including the

25   Illinois Supreme Court on these kind of cases.

1              Who's going to speak for the plaintiff?

2         *MR. STEELE:*  I am, your Honor.

3         *THE COURT:*  All right.  Identify yourself and tell me

4    what, exactly what relief you are wanting and why you think you

5    are entitled to it.

6         *MR. STEELE:*  Would the Court like me to approach?

7         *THE COURT:*  As long as I can hear you, I don't care,

8    and the court reporter can get your -- can get your name.

9         *COURTROOM DEPUTY:*  He needs to be at a mic so the

10   person on the phone can hear.

11        *THE COURT:*  All right.

12             You need to be at a mic so the court counsel can hear

13   you.

14        *MR. STEELE:*  All right.  Can everyone hear me?  Okay.

15             Your Honor, I represent Lightspeed.  John Steele,

16   S-T-E-E-L-E.  And to get to the crux of the main question, your

17   Honor, about whether it's an emergency motion, it is.  We

18   actually -- to help illustrate the matter, we've actually

19   conducted quite a bit of forensic work over the last three

20   days.  That's one of the reasons that my client flew up here.

21             And since Friday, at 11:00 a.m., when we were going to

22   initially have this hearing, until now, there's been 1495

23   hackers that have reentered despite my client's best efforts

24   and hacked into the system, including six hackers that are

25   actually ComCast and AT&T subscribers.  One of them downloaded

1   almost 2 gigabytes worth of data before he was caught and shut

2   out.

3           My client literally no longer even operates his core

4   business.  His entire waking moment is trying to keep out these

5   hackers.  And they are repetitive hackers, these are the same

6   people over and over again.  It's not like there's new hackers

7   every day.  We need to get -- find out who these people are so

8   that we may proceed against them.

9           What we are asking for, although it is an emergency

10  basis and although it may be outside to some extent normal

11  channels, we are asking for very limited discovery.  We are

12  asking for people's identifying information as to who had a

13  certain IP address at a certain time, just their contact

14  information, so that we may proceed against them.  We are not

15  asking for their social security numbers or their financial

16  records or anything along normal discovery.

17          But quite simply, how can we go after people, we don't

18  know who they are.  They know that.  They know that we don't

19  know who they are.  They brag about it on the blogs, and they

20  send messages to me and my co-counselors and my client and so

21  on that we will never get them because they are hiding under

22  AT&T and ComCast.  So this has been an emergency since the day

23  we filed this action.

24          We have used the utmost urgency in all of our

25  pleadings.  We have won the five or six hearings that were held

1    at the state court level in Illinois, in this case.  It is true

2    that Justice Karmeier, over -- under the certain aspects of

3    Judge LaChien's discovery orders.  However, I want to make it

4    clear that Judge Karmeier did not dismiss the case.  He did not

5    do nearly what is alleged in the respondent brief, and I would

6    encourage your Honor to look at the -- I think it is three

7    sentences -- the order.  It merely stops certain things such as

8    requiring ISPs to provide a map and certain minor functionary

9    things.  Many of the initial directives of Judge LaChien

10   remained in force.

11        THE COURT:  Let me just stop you there, though.  You

12   told me your client is no longer in the business?

13        MR. STEELE:  No, I didn't say that.

14        THE COURT:  That's what you said.  You said your

15   client has been spending all his time protecting his equipment

16   from these assaults that he is out of business.

17        MR. STEELE:  Well, no.  What he has, obviously, people

18   working with him.  But what I'm saying is, he spends a grossly

19   disproportionate amount of his time.  Instead of worrying about

20   his core business, what he does all the time now is work to

21   hire people and to bring in people and himself, because he is a

22   computer engineer, to try to stop the water from breaking over

23   the dam with these hacking attempts and so on.  He has to make

24   sure that his site is maintained.

25        For instance, one of the hackers, I believe it is a

1    ComCast subscriber, that was a denied services attack on his

2    network and he was down for almost an entire day.  So,

3    obviously, he can't focus on his business, and besides the

4    obvious fact that revenues -- and I think we mentioned this in

5    the preview.  Revenues are down over 60 percent since we've

6    just started this litigation, and he's obviously here to

7    proffer such statements and such testimony.

8         But the key here is, I'm very familiar with opposing

9    counsel's pleadings and, obviously, I've been in court with

10   opposing counsel in many different cases, but I think it is

11   unfair to characterize our type of litigation as not being

12   successful.  Right now, at the Illinois state level, we have

13   several cases that are large cases going on without even a

14   remotest sort of delay or the judge does not disagree with us

15   in any of our matters.

16        As far as the federal court, which I think is much

17   more relevant dealing with discovery because, obviously, we are

18   in federal court now.  The important thing to remember is that

19   we have well over, the last time I checked -- please don't hold

20   me to the exact number -- but well over 80 cases right now

21   going on in the Northern District of Illinois, and I don't

22   believe any currently in the Southern District.  But all these

23   cases are proceeding fine.  I think there is some inference in

24   here about some of the cherry-picking.

25             *THE COURT:*  I don't think the problem -- we're not

1     talking about a disposition of the lawsuit here today.  What we

2     are talking about today is whether the Court sets aside the

3     general, orderly progression of the federal discovery practice.

4           Certainly, as the case goes forward, judges are going

5     to have to very carefully analyze what is being asked and weigh

6     that against the interest of some of the parties involved.

7           Now, we're not a complete stranger to these cases.

8     You can get IP addresses, but what you might find is you might

9     have some 14-year-old kid that wants to get on mom's computer

10    and download porn.  I mean, that's what your client is selling.

11    And you know the courts not -- most courts wouldn't be of

12    any -- at least not any court that has ever had a 14-year-old

13    boy.  I don't know about girls.  But it wouldn't be too much of

14    a mind to fine mom and dad because the 14-year-old kid got on

15    the computer and got titillated watching some private porn

16    club.  So it is a very, very careful balance that has to be

17    reached here before we proceed.

18          Mr. Bozarth, are you going to speak for the other

19    side?

20          *MR. BOZARTH:*  Yes, your Honor.

21          *THE COURT:*  Tell me what you think about this.

22          *MR. BOZARTH:*  Yes, your Honor.  I don't want to get

23    too much into the merits because, frankly, we're working on a

24    12(b)(6) motion right now.  And, if anything, I think that's

25    the plaintiff's emergency because this case doesn't survive a

1    12(b)(6) motion.  There is no emergency here that meets the

2    requirements that your Honor has to look at to throw out all of

3    the structure and form of the civil procedure rules in order to

4    allow this extreme measure of extraordinary discovery.

5           What we have is clearly improper discovery that

6    they're seeking, and I can address that in a little bit.  But

7    when you look at the standards that your Honor has to look at,

8    there has to be a need for the expedited discovery; not a need

9    for the discovery, but for it to be expedited.  And that has to

10   be shown through good cause, and it has to be balanced against

11   the detriment to the other litigants involved, namely, the

12   defendants who would be providing it here.

13          The rules are put in place for a reason so that the

14   orderly process can take effect.  And if the case has no merit,

15   which we want to challenge, then we aren't spending the money

16   to go ahead and divulge this information.

17          We believe that the discovery sought of these 6600 or

18   so IP addresses that are not named in this complaint, that we

19   believe there is no intention to bring them in the complaint,

20   that this is to harvest information so that they can then go

21   and try to obtain settlements from that mother or father of the

22   14-year-old boy that your Honor spoke of earlier.

23          The problem is that these are IP addresses from all

24   over the country.  So when they receive a letter that says pay

25   us $3,000 to make this case go away, you have to decide whether

1    you are going to hire yourself a lawyer and fly to the Southern

2    District of Illinois and sit in front of Judge Murphy and

3    defend yourself and which one is more economically feasible.

4         So we want to get to that, your Honor, but the

5    important thing is, it wasn't Justice Karmeier who threw this

6    case out.  It was the Illinois Supreme Court.  It was -- the

7    order is clear.  It was the entire Illinois Supreme Court.  It

8    was not a one-judge order, and there was no dissent to that.

9    So they may not like it, but to turn around and serve the exact

10   same discovery or request from this Court the exact same

11   discovery, we believe is improper.

12        THE COURT:  Well, in short, what you are saying to me

13   is that there's no emergency here.

14        MR. BOZARTH:  There is no emergency.

15        THE COURT:  That's -- we argue about -- so what is the

16   emergency?

17        MR. STEELE:  Well, the emergency is that my client is

18   literally under attack on a minute-by-minute basis.  As we sit

19   here today, this very minute, hundreds or thousands of hackers

20   are literally targeting our client, including many, as we are

21   prepared to prove today, that are clients or subscribers of

22   AT&T and ComCast.

23        Now, unlike almost all of the other ISPs, these two

24   large ISPs have decided for their own reasons not to comply and

25   to raise these roadblocks, and never-ending in every case.  And

1    I understand we are not getting to the cases yet.  But what's

2    important to understand is, while the ISP are making lots of

3    monies from the subscriber payments and while the subscribers

4    are doing what they want to do, my client is -- literally, it's

5    like he is hiding behind a wall.  There's strangers throwing

6    bombs at him, and says, I want to know who those people are.  I

7    want to identify them so I can go after them.

8         And to be able to say, No, no, you don't get their

9    identity.  You can just survive for another month or two,

10   hopefully.  The problem is, is that my client spends more money

11   on a net basis each month now fighting these people than he is

12   making, at least for the last month or two, so there is --

13   there is an emergency.  And what we are asking for is not some

14   injunctive relief ordering AT&T to change its business

15   practices.  This is no -- as Judge Howell made very clear

16   several times, there is no undue burden here whatsoever on the

17   ISPs, and they have admitted to Judge LaChien in the early

18   state court action that they have all this information sitting

19   on someone's desk.  I believe his name is Mr. Cadenhead, but

20   don't hold me to that.  Sitting on a desk.  And they're

21   prepared, quote/unquote, to mail it tomorrow if ordered to do

22   so.

23        *THE COURT:*  Now, do you think that if the Court were

24   to order this discovery today that these attacks would stop?

25        *MR. STEELE:*  I think it would greatly, greatly

1    decrease and here's why.  Two things.  One is, first of all,

2    some of these hackers aren't aware of this litigation.  There

3    is no reason to presume that all these people are magically

4    connected to ECF and know everything that's going on.  When

5    they receive a letter from our firm saying, hey, we just caught

6    you.  We believe we caught the subscriber of the account

7    associated with this person downloading this exact movie.  My

8    experience has been there is a rapid, very rapid decrease in

9    the amount of hacking because it is almost, oh, shoot, I got

10   caught.  So, yes, I do believe there is going to be a huge

11   decrease, and I can bear that out as an officer of the court

12   with several other clients I have that had the exact same thing

13   happening.

14          In fact, I can tell you that I have a client,

15   Millennium TGA, who when we started this process and we got

16   discovery on a large case, all the sites that you get these

17   passwords from and all put up a warning, do not take this guy's

18   passwords, he is getting sued.  He is just suing everyone

19   that's involved in this case.  So, yeah, the word gets out real

20   quick amongst the hardcore hacking community, and it also puts

21   them on notice.  I mean, they could be actually destroying

22   information, spoliation of evidence, because they didn't even

23   know about the case.  And there are some that do know about the

24   case.  And the minute they realize that their gig is up and

25   they can't hide anymore, you know, they are going to make

1    certain changes.

2         But, also, we need to get this information as part of

3    our discovery process.  I know it's not -- that doesn't make it

4    an emergency, the nature of it, but to some extent it does.

5    Because if we know who's doing it, we can reach out and say,

6    one, stop.  You are --

7         THE COURT:  Well, you are never going to know who is

8    doing it.  You are going to know which computer it comes from.

9         MR. STEELE:  Right.

10        THE COURT:  That's a different issue.

11        MR. STEELE:  I agree.

12        THE COURT:  Wouldn't the better solution to this be,

13   and I'm looking down the road here.  Mr. Bozarth is telling me

14   I'm not going to have to fool with this case too long.  He will

15   hit it with a big left hook, and it will go.  Maybe.  But isn't

16   a better solution is that you give -- you would -- some judge

17   would say, well, maybe you should give the Internet providers

18   the IP addresses you have and pay them to notify these people

19   to quit hacking your system.

20        MR. STEELE:  Well, that's part of our discovery

21   request, and that is to -- I'm sorry.  One of the items in our

22   emergency motion is that they be ordered to notify all of their

23   subscribers with --

24        THE COURT:  I'm just talking on as a solution on this

25   thing.  So you would say give them this information, and then

1    they would notify those computers, say, hey, somebody here has

2    been doing this.

3           *MR. STEELE:*  Right.  And we do believe that's

4    important, but we also have been down this road before.  And

5    Judge LaChien ordered AT&T specifically, four different

6    hearings, four different orders, to do it, and they didn't do

7    it.

8           *THE COURT:*  I'm just asking.

9           *MR. STEELE:*  Well, I think -- and I understand, Judge.

10   And just for a moment, to the idea of IP addresses and the

11   hacker's right.  It is like we see the license plate of the

12   getaway car.  Now, it may not have been the car owner, but my

13   experience is and my office's experience is, that it may not be

14   the owner but it is -- certainly almost every time it is, oh,

15   let me guess, you have an 18-year-old son in the basement kind

16   of thing.  And granted, sometimes, as Judge Howell said,

17   sometimes it won't lead to the evidence of a hacker -- we are

18   not saying that every single IP address is a hacker.

19          In fact, in a similar case in Cook County in federal

20   -- I'm sorry -- Northern District of Illinois, every single IP

21   address was the same hacker.  He was so prolific he had 27

22   different IP addresses.  There could -- obviously, there are

23   not the exact number of hackers for the IPs.  In fact, we

24   expect there to be much fewer hackers than the number of IPs.

25   But they lead us there, and they begin our discovery process.

1    And the persons -- every day that goes by, more and more people

2    move.  More and more people go, I don't want to -- you know,

3    I'll just jettison this computer because I'm nervous what the

4    information

5          *THE COURT:*  What happens in the case like this, just a

6    nonpayment of the use?

7          *MR. STEELE:*  Well, no, no.  What happens with these

8    people when they get this data is that they do many -- I'll

9    give you an example because, obviously, I don't want to take up

10   the Court's whole afternoon.  But for instance, one person that

11   we caught in this exact case basically site-ripped the entire

12   Web site of my client, set up a competing commercial site with

13   a similar name, and collected money so that these people could

14   come to his site.  And most of them didn't even realize that

15   they were going to a fake site.

16          Now, someone like that, you know, it's important,

17   because this is a direct hit to my client, who literally, as I

18   mentioned, is ready to testify he didn't make any money the

19   last two months and he blames the approximately 60 percent

20   decrease in gross revenue from November on this group of

21   hackers that are literally targeting him.  I think that if down

22   the road we are not asking to put our case on now, we are not

23   trying to make an emergency motion into a quick trial on the

24   merits.

25          All we're saying is -- well, a couple of things we

1   want.   One is, we want to get that notice out to the people

2   because that puts them on constructive notice also so that

3   after that notice they throw away their computer or try to

4   hide, which a lot of them do, then we have that basis.

5          Secondly, we need to know who it is so that we can

6   begin our discovery because we can't properly argue the merits

7   of this case without at least some initial discovery.  Knowing

8   who it is that's in a conspiracy when one defendant knows who

9   it is doesn't seem to be that much to ask for.  I'm sure most

10  bank robbers who were caught wouldn't want to have to give up

11  their conspirators, but that's not how the system works.  You

12  have got to give up that information.  And then if it is

13  urgent, if it is something that we can stop right away.

14         And then the third thing we are asking for, to find

15  out who it is exactly that these counsels are representing.

16  They've said they represent an unknown corporate counsel.  We

17  don't know who they represent.  We are asking that they

18  identify the corporate counsel in the emergency or corporate.

19         THE COURT:  What are you talking about?

20         MR. STEELE:  We are asking that counsel identify the

21  corporate representative in AT&T and ComCast that has made the

22  decision --

23         THE COURT:  Oh, okay.  I see.

24         Here's the way I see this case.  The -- if there is a

25  case here at the bottom of all this, it's a case for damages.

1    You have an adequate remedy at law.  Properly understood, what

2    you are asking me to do here today is grant what is at the

3    bottom injunctive relief, to make somebody do something that

4    they would otherwise not have to do to protect this business.

5    Well, that's the same problem that every business in the world

6    has.  And for as long as we've had a common law, we say, if you

7    have got an adequate remedy at law, you have got one.

8         Now, there's no evidence that's going to be destroyed.

9    I'll be honest about this.  I'm skeptical about how this case

10   could ever be put on, but my feet are not set in stone on it.

11   I've seen some cases that didn't look too hot at the start that

12   got better with time.  This may be one of those cases.  But you

13   are going to have to go through the regular discovery route

14   just like everyone else, and then some judge or some magistrate

15   will have to sit down and very carefully tailor this thing.

16        I don't foresee a situation where the Southern

17   District of Illinois is going to be pulling in cases from all

18   over the United States.  I'm in St. Clair County, and in the

19   Southern District of Illinois, we've got 38 counties.  And

20   that's -- that provides us with about all we can take care of

21   as it is.  Motion denied.  Have a good day.

22        Court's in recess.

23

24                        -oOo-

25

1                              REPORTER'S CERTIFICATE

2           I, Molly N. Clayton, RPR, FCRR, Official Court Reporter

3      for the U.S. District Court, Southern District of Illinois, do

4      hereby certify that I reported with mechanical stenography the

5      proceedings contained in pages 1 - 18; and that the same is a

6      full, true, correct and complete transcript from the record of

7      proceedings in the above-entitled matter.

8
                    DATED this 30th day of August, 2012.
9

10                                 *Molly Clayton*, RPR, FCRR

11                          _____

12

13

14

15

16

17

18

19

20

21

22

23

24

25