IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LIGHTSPEED MEDIA CORPORATION, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ANTHONY SMITH, SBC INTERNET SERVICES, )<br>INC., d/b/a AT&T INTERNET SERVICES; AT&T )<br>CORPORATE REPRESENTATIVE #1; COMCAST )<br>CABLE COMMUNICATIONS, LLC, and )<br>COMCAST CORPORATE REPRESENTATIVE #1, )<br>)<br>Defendants. )<br>) | Case No. 3:12-cv-00889-WDS-SCW<br><br>**MEMORANDUM OF LAW<br>IN SUPPORT OF DEFENDANT<br>ANTHONY SMITH'S MOTION<br>TO DISMISS PURSUANT TO<br>FEDERAL RULE OF CIVIL<br>PROCEDURE 12(B)(6)** |

Defendant Anthony Smith ("Smith") respectfully submits this memorandum of law in support of his motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff Lightspeed Media Corporation ("LMC") contends that Smith, unauthorized, accessed LMC's websites to download and disseminate its content to others. (Doc. 2-2 ("First Amended Complaint" or "FAC") ¶¶ 17-18.) Smith is innocent of those baseless aspersions which, even if taken as true for purposes of this motion, fail to state a claim against him. LMC has not made out a claim under the Computer Fraud and Abuse Act, its sole federal cause of action, because it describes no "damage" or "loss" as defined in the statute. Its state causes of action are both preempted by the federal Copyright Act and otherwise not sufficiently pleaded. The FAC must be dismissed.

## I. INTRODUCTION

A.   **Procedural Posture.**

On December 14, 2011, LMC filed suit in the Circuit Court of the Twentieth Judicial District in St. Clair County, alleging that an unnamed defendant and more than 6,600 "co-

conspirators" had gained unauthorized access to LMC's adult entertainment websites. (Doc. 2-3 ("Complaint").) LMC filed an *ex parte* motion in the Circuit Court for leave to obtain discovery by subpoena, from dozens of non-party Internet Service Providers ("ISPs"), of information personally identifying among their subscribers the John Doe defendant and more than 6,600 alleged co-conspirators. (Complaint ¶ 18; Doc. 9-3 pp. 11-90.) Leave was granted December 16, 2011. (FAC ¶ 32; Doc. 9-4.) LMC served the subpoenas and most of the ISPs provided the identifying information, though some, including Comcast Cable Communications, LLC ("Comcast") and SBC Internet Services, Inc. d/b/a AT&T Internet Services ("AT&T"), filed motions to quash the subpoenas and/or for a protective order. (FAC ¶ 33; Doc. 9-1 ¶¶ 5-6.) Those motions were denied on April 12, 2012. (Doc. 9-6.) On a May 22, 2012 motion for a supervisory order by AT&T and other subpoenaed ISPs, the Illinois Supreme Court directed the circuit court to vacate its order denying the motion to quash on June 27, 2012. (Docs. 9-9 & 9-10.)

On August 3, 2012 LMC filed its FAC, identifying Smith as the unnamed defendant and raising claims against new defendants: Comcast, AT&T, and representatives of both (collectively, "Defendant ISPs"). AT&T filed a notice of removal to this Court on August 9, 2012. (Doc. 2.)

**B.      Lightspeed Media Corporation.**

LMC operates websites whose users pay to access and download pornographic materials. (See FAC ¶¶ 16, 59, 69-70 & 80.) As described by the Circuit Court before removal, "Lightspeed runs a pornographic website that has more content pirated than is downloaded by paying customers," and LMC alleges a conspiracy "designed to steal and share Lightspeed's nasty pictures." (Doc. 9-8 p. 2.)[1]

---

[1] LMC has previously pursued federal copyright claims on similar allegations of mass infringement. *See, e.g., Lightspeed Media Corp. v. Does 1-1000*, 10 C 5604, 2011 U.S. Dist. LEXIS 35392 (N.D. Ill. Mar. 30, 2011).

C.  **Factual Allegations Concerning Smith in the First Amended Complaint.**

At its heart, the FAC alleges unauthorized downloading and distribution of LMC's materials: in other words, "piracy" (Doc. 9 p. 3) or copyright infringement. It raises six counts against Smith:[2] the Computer Fraud and Abuse Act (Count I), conversion (Count II), unjust enrichment (Count III), breach of contract (Count V) and civil conspiracy (Counts VI and VII). LMC alleges that Smith and his alleged "co-conspirators":

- "belong to a hacking community" in which hacked passwords are shared (*id.* ¶ 17);

- "used one or more hacked passwords to gain access to Plaintiff's websites and protected computer content" (*id.* ¶ 1; *accord* ¶ 54);

- "gained unauthorized access to Plaintiff's protected websites. They used hacked passwords to intentionally gain unauthorized access to the members' sections of Plaintiff's protected websites. Through these hacked passwords [they] consumed Plaintiff's content as though they were paying members." (*id.* ¶ 18; *accord* ¶ 54); and

- "downloaded Plaintiff's private computer content and disseminated that information to other unauthorized individuals" (*id.* ¶ 18; *accord* ¶¶ 55 & 88).

LMC asserts that Smith's ISP is non-party Charter Communications ("Charter"). (See Exhibit A hereto.[3]) LMC alleges that Smith's Charter IP address was detected "accessing, without authorization, ten (10) of the Plaintiffs' protected websites" and "downloading more than seventy-two (72) private computer files from these websites." (FAC ¶ 25.) LMC lists the filenames of five files Smith allegedly downloaded: one movie file in .wmv (Windows Media Video) format, and four digital photographic image files in the .jpg (JPEG) format. (Exh. A.)

---

[2] Curiously, the section of the FAC that discusses "The Parties" contains no factual allegations about Smith. (FAC ¶¶ 3-8.) Instead, it raises multiple allegations against "Defendant Smith's co-conspirators," though they are not defendants in this action. (*Id.* ¶¶ 4-7 & 12.)

[3] The document attached as Exhibit A to this Motion was attached to LMC's original Complaint (Doc. 9-3 p. 11) and referenced in the operative complaint (FAC ¶ 26). It is therefore within the pleadings pursuant to Rule 10(c) and may be considered without converting this motion pursuant to Rule 12(d). *Segal v. Geisha NYC LLC*, 517 F.3d 501, 505 (7th Cir. 2008) ("attachments to a complaint become part of it 'for all purposes'") (*quoting* Rule 10(c)).

3

Pertinent to its six specific causes of action against Smith, LMC further alleges:

- Computer Fraud and Abuse Act (Count I): LMC had costs related to identifying "Smith and other hackers that were gaining unauthorized access" to its websites, and to limiting further access. (*Id.* ¶¶ 57-58.) LMC lost revenues because "[m]embers of the conspiracy" gained access without paying its minimum $39.95 monthly membership fees for authorized access. (*Id.* ¶ 59.)

- conversion (Count II): "Defendant Smith wrongfully, intentionally, and without authorization gained access to Plaintiff's protected websites and downloaded Plaintiff's private content and disseminated that content to other unauthorized individuals. These actions are inconsistent with Plaintiff's right of possession." (*Id.* ¶ 65.)

- unjust enrichment (Count III): "Defendant Smith unjustly retained a benefit by accessing Plaintiff protected websites and consuming and downloading Plaintiff's content without providing compensation for the services and content provided by Plaintiff." (*Id.* ¶ 69 (*see also* ¶¶ 70-71 (alleging benefit was to Plaintiff's detriment and is continuing).)

- breach of contract (Count V): "Defendant Smith violated [LMC's websites'] user agreement by ... disseminating the material to other unauthorized individuals" and "by knowingly violating the community standard where he lives...." (*Id.* ¶¶ 81, 82.)

- civil conspiracy with co-conspirators (Count VI): "Defendant Smith and his co-conspirators, by sharing hacked passwords among themselves that were created solely for the purpose of illegally gaining access to Plaintiff's website, reached an agreement to hack into and steal from Plaintiff's website." (*Id.* ¶ 86.) They then used those passwords to gain access to Plaintiff's websites, from which they downloaded protected content, which they shared amongst themselves and with others. (*Id.* ¶¶ 87-88.)

- civil conspiracy with the Defendant ISPs[4] (Count VII): "Defendant Smith and his co-conspirators hacked into and stole from Plaintiff's website." (*Id.* ¶ 91.) "Smith and/or his co-conspirators" paid subscription fees to the Defendant ISPs. (*Id.* ¶ 74.) "Defendants AT&T and Comcast ... chose to act as *de facto* legal counsel for Defendant Smith and his co-conspirators." (*Id.* ¶ 94.) To that extent, Defendants reached an agreement that the Defendant ISPs would allow and/or shelter Smith's alleged co-conspirators to continue in exchange for subscriber fees. (*Id.* ¶ 95.)

## II. STANDARD OF REVIEW

A 12(b)(6) motion challenges the sufficiency of the complaint to state a claim upon which relief may be granted. "When ruling on a motion to dismiss under Rule 12(b)(6), [the Court]

---

[4] Though Count VII naturally treats the Defendant ISPs as "co-conspirators," the FAC uses the term "Smith's co-conspirators" only to refer to the other alleged "hackers" LMC sought to identify. (*See, e.g.,* FAC ¶¶ 1, 4-8.)

accept[s] all well-pleaded allegations as true and draw[s] all reasonable inferences in favor of" the plaintiff. *Rujawitz v. Martin*, 561 F.3d 685, 688 (7th Cir. 2009). However, the Court must grant the motion where the factual allegations fail to "raise a right of relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). To survive a Rule 12(b)(6) motion, the complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements." *Id.* at 555 (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Courts "'are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (*quoting Papasain* at 286). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A complaint must be dismissed if the allegations do not state a plausible claim." *Estate of Miller v. Tobiasz*, 630 F.3d 984, 988 (7th Cir. 2012) (citing *Twombly* and *Iqbal*). "In addition, a plaintiff can plead himself out of court by alleging facts that show there is no viable claim." *Pugh v. Tribune Co.*, 521 F.3d 686, 689 (7th Cir. 2008) (citing *McCready v. eBay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006)). "A case can be dismissed because a complaint pleads facts establishing that the defendant is entitled to prevail." *Robbins v. Lading*, 10-CV-605-WDS, 2012 U.S. Dist. LEXIS 97941, *2 (S.D. Ill. July 16, 2012).

### III. ARGUMENT

**A.  LMC Failed to State a Claim for Relief under the Computer Fraud and Abuse Act.**

LMC has not stated a claim under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA"). Seven distinct bases for CFAA liability are delineated in 18 U.S.C. § 1030(a)(1)-(7). LMC does not indicate which subsection of 1030(a) Smith supposedly violated, either by specific pleading or by tracking any subsection's elements. *See Nyack Hosp. v. Moran*, 08 Civ.

11112, 2010 U.S. Dist. LEXIS 111651, *16 (S.D.N.Y. June 1, 2010). The FAC does not muster even the "[t]hreadbare recitals of the elements of a cause of action" found insufficient in *Ashcroft v. Iqbal*.[5] It fails even under the liberal notice pleading standard of Rule 8.[6] Moreover, Subsection 1030(g) provides civil remedies only to "any person who suffers damage or loss" caused by a violation of 1030(a).[7] "To state a claim under the CFAA, a plaintiff must allege damage or loss within the meaning of the statute." *Cassetica Software, Inc. v. Computer Scis. Corp.*, No. 09 C 0003, 2009 U.S. Dist. LEXIS 51589, *9 (N.D. Ill. June 18, 2009). LMC has not done so.

Under the CFAA, "the term 'damage' means any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8). LMC alleges its files were duplicated, not deleted or destroyed. "The plain language of the statutory definition refers to situations in which data is lost or impaired because it was erased or because (for example) a defendant smashed a hard drive with a hammer." *Motorola, Inc. v. Lemko Group*, 609 F. Supp. 2d 760, 769 (N.D. Ill. 2009). LMC does not allege that Smith "modifie[d] a computer system." (FAC p. 5 n.1.) Without more, access and copying cause no "damage" under the CFAA. *See Garelli Wong & Assocs., Inc. v. Nichols*, 551 F. Supp. 2d 704, 710 (N.D. Ill. 2008) (finding unpersuasive plaintiff's claim that "infringement of copyrighted material taken from a protected

---

[5] "The Court 'need not try to fish a gold coin from a bucket of mud.' ... And the Defendants cannot be expected to engage in wild speculation as to which allegations Plaintiffs intend to use in support of their ... claims." *Barnes v. Broy*, No. 08-CV-29-MJR, 2009 U.S. Dist. LEXIS 50336, *18-20 (S.D. Ill. June 16, 2009) (*quoting United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003)).

[6] Claims under some subsections of 1030(a) must be pleaded with the specificity required under Rule 9(b). *See, e.g., Motorola, Inc. v. Lemko Corp.*, 609 F. Supp. 2d 760, 765 (N.D. Ill. 2009). By not pleading which subsection applies, LMC would keep Smith (and the Court) guessing as to whether the claim fits and whether it is sufficiently pleaded.

[7] 18 U.S.C. § 1030(g) limits civil actions to conduct involving one of the factors set forth in Subsection 1030(c)(4)(A)(i)(I)-(V). Here again LMC offers no clue to which factor is supposed to fit its claim. The last four subclauses raise inapplicable concerns absent from the First Amended Complaint: effects on medical treatment, physical injury, threat to public health or safety, and damage to United States government computers. 18 U.S.C. § 1030 (c)(4)(A)(i)(II)-(V). Only the first subclause could arguably apply, if LMC had sufficiently alleged "loss to 1 or more persons during any 1-year period ... aggregating to more than $5,000 in value." 18 U.S.C. § 1030(c)(4)(A)(i)(I). But LMC's claims do not satisfy the CFAA's special definition of "loss," as explained *infra*.

computer system would [] qualify as impairment of the integrity of the copyrighted information"); *Cassetica*, 2009 U.S. Dist. LEXIS 51589, at *10 ("[M]erely copying electronic information from a computer system does not satisfy the 'damage' element because the CFAA only recognizes damage to a computer system when the violation caused a diminution in the completeness or usability of the data on a computer system.") (collecting cases); *Worldspan, L.P. v. Orbitz, LLC*, No. 05 C 5386, 2006 U.S. Dist. LEXIS 26153, *15 (N.D. Ill. Apr. 19, 2006) (rejecting argument that "mere 'taking of information' constitutes 'damage' under the CFAA").

LMC also shows no "loss" as defined in the CFAA: "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred *because of interruption of service*." 18 U.S.C. § 1030(e)(11) (emphasis added). "Under the statute, one can recover losses only for costs associated with interruption of service." *Grubb v. Bd. of Trustees of the Univ. of Ill.*, 730 F. Supp. 2d 860, 867 (N.D. Ill. 2010).[8] Conversely, "[c]osts that are not related to computer impairment or computer damages are not cognizable 'losses' under the CFAA." *Von Holdt v. A-1 Tool Corp.*, 714 F. Supp. 2d 863, 875 (N.D. Ill. 2010). LMC fails to contend that it incurred any losses due to a service interruption or any resulting impairment or unavailability of data.[9]

Further, Smith hereby incorporates by reference arguments against LMC's CFAA claims raised by AT&T (Doc. 27 at pp. 14-16) and Comcast (Doc. 28-1 pp. 6-7). Only damage or loss,

---

[8] "As the statutory language makes clear, 'losses' under the CFAA are limited to costs incurred and profits lost as a direct result of interrupted computer service." *Gen. Scientific Corp. v. Sheervision,* No. 10-cv-13582, 2011 U.S. Dist. LEXIS 100216, *12 (E.D. Mich. Sept. 2, 2011). "Otherwise, it would appear that the second half of the 'loss' definition is surplusage." *Cont'l Group, Inc. v. Kw Prop. Mgmt., LLC*, 622 F. Supp. 2d 1357, 1371 (S.D. Fla. 2009).

[9] The allegation that Smith "increas[ed] Plaintiff's bandwidth costs" (*id.* ¶ 70) does not state a claim for interruption of service. In any event, LMC did not incorporate said allegation in its CFAA claim. (See *id.* ¶ 53.)

as specifically defined in the CFAA, creates standing to maintain a civil action under the CFAA. LMC has not sufficiently pleaded either, so the claim must be dismissed.

**B.      LMC's Common Law Causes of Action State No Cognizable Claim Against Smith.**

The state common law counts LMC raised against Smith are expressly preempted by the Copyright Act and otherwise fail to state a claim.

**1.      Each of LMC's State Causes of Action Is Preempted by the Copyright Act.**

"Copyright preemption is both explicit and broad: 17 U.S.C. § 301(a) prohibits state-law protection for any right equivalent to those in the Copyright Act." *G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 904 (9th Cir. 1992). "A state law claim is preempted by the Copyright Act where: (1) the work is within the subject matter of copyright; and (2) the rights available under state law are equivalent to any of the exclusive rights provided by § 106 the Copyright Act." *Personal Keepsakes, Inc. v. PersonalizationMall.Com, Inc.*, 101 U.S.P.Q.2d (BNA) 1855, 2012 U.S. Dist. LEXIS 15280, *24 (N.D. Ill. Feb. 8, 2012) (citations omitted). Both conditions apply. The state law claims target the alleged unauthorized downloading and dissemination of LMC's website content—pornographic videos and photographs, which fall within the subject matter of copyright. *See Quincy Cablesystems, Inc. v. Sully's Bar, Inc.*, 650 F. Supp. 838, 849 (D. Mass. 1986) ("Section 102(a)(6) makes 'motion pictures and other audiovisual works' subject to copyright infringement").[10] One video file and four photographs are the only specific content LMC alleges were wrongfully downloaded.

---

[10] *See also FlavaWorks, Inc. v. Gunter*, No. 11-3190, 2012 U.S. App. LEXIS 15977, *4 (7th Cir. Aug. 2, 2012) (copyrightability of "videos of black men engaged in homosexual acts"). Even if pornography were not subject to copyright, the preemptive effect of the Copyright Act would apply: "state laws that intrude on the domain of copyright are preempted even if the particular expression is neither copyrighted nor copyrightable." *Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 911 (7th Cir. 2005); *Ho v. Taflove*, 648 F.3d 489, 501 (7th Cir. 2011). "[T]he shadow actually cast by the Act's preemption is notably broader than the wing of its protection." *United States ex rel. Berge v. Bd. of Trustees*, 104 F. 3d 1453, 1463 (4th Cir. 1997) (finding state law conversion claim preempted by copyright).

8

Each of LMC's state claims asserts equivalent rights. Preemption applies where "the state law claims ultimately rest[] on the mere act of unauthorized copying," absent additional factual allegations "so qualitatively altering the nature of the underlying infringement as to take the state based claims out of the preemptive scope of copyright."[11] *FASA Corp. v. Playmates Toys*, 869 F. Supp. 1334, 1363 (N.D. Ill. 1994). "A state law right is 'equivalent' if: '(1) it is infringed by the mere act of reproduction, performance, distribution, or display, or (2) it requires additional elements to make out a cause of action, but the additional elements do not *differ in kind* from those necessary for copyright infringement.'" *Nash v. CBS, Inc.*, 704 F. Supp. 823, 832 (N.D. Ill. 1989) (*quoting Baltimore Orioles, Inc. v. MLBPA*, 805 F.2d 663, 678 n.26 (7th Cir. 1986)).

LMC cannot avoid preemption with allegations of "unauthorized access" that do not differ *in kind* from the elements of infringement. *See Harper & Row, Publishers, Inc. v. Nation Enters.*, 723 F.2d 195, 198, 200-01 (2d Cir. 1983) (conversion preempted despite unauthorized possession), *rev'd on other grounds*, 471 U.S. 539 (1985). Likewise "the additional elements of knowledge and intent do not render [an] asserted right different in kind than the rights protected in a copyright infringement claim." *Higher Gear Group, Inc. v. Rockenbach Chevrolet Sales, Inc.*, 223 F. Supp. 2d 953, 960 (N.D. Ill. 2002) (*citing FASA Corp.*, 869 F. Supp. at 1360 n.43); *Baltimore Orioles*, 805 F.2d at 678 n.26 (*citing inter alia Crow v. Wainwright*, 720 F.2d 1224, 1226 (11th Cir. 1983) (publication with scienter not qualitatively different)).

---

[11] "The rights enumerated in § 106 [of the Copyright Act] are the rights of exclusive reproduction, performance, distribution and display." *Quincy Cablesystems*, 650 F. Supp. at 849. When a cause of action "involve[s] elements that would not establish qualitatively different conduct by the defendants than the elements for an action under the Copyright Act ... there is equivalence between the state and federal rights." *Id.* at 850 (finding conversion preempted). *Accord Personal Keepsakes*, 2012 U.S. Dist. LEXIS 15280, at *24. *See also CEO Mktg. Promotions Co. v. Heartland Promotions Co.*, 739 F. Supp. 1150, 1152-53 (N.D. Ill. 1990) (dismissing misappropriation claim as preempted where the "alleged misuse was distribution"); *Daboub v. Gibbons*, 42 F.3d 285, 289 (5th Cir. 1995) (copyright preemption applied to each state law claim where "[t]he core of each of these state law theories of recovery…is the same: the wrongful copying, distribution, and performance of the [work]").

Allegations that Smith downloaded copies of LMC's content (films and photographs) and shared or disseminated the copies underpin each cause of action, as detailed above. LMC's state-law claims merely describe acts of reproduction and distribution, which are "governed exclusively"—that is, preempted—by the Copyright Act. 17 U.S.C. § 301(a). "An action 'arises under' the Copyright Act if and only if the complaint is for a remedy expressly granted by the Act..." *T.B. Harms v. Eliscu*, 339 F.2d 823, 828 (2d Cir. 1964), *quoted with approval in Nova Design Build, Inc. v. Grace Hotels, LLC*, 652 F.3d 814, 816 (7th Cir. 2011). LMC itself invokes remedies exclusive to the Copyright Act, such as an "[o]rder of impoundment under 17 U.S.C. §§ 503 & 509(a)." (FAC p. 22.) LMC cannot avoid what it has expressly pleaded.[12] "Congress' intent to preempt all equivalent state causes of action should not be defeated by a triumph of form over substance." *Balsamo/Olson Group. Inc. v. Bradley Place Ltd. P'ship*, 950 F. Supp. 896, 899 (C.D. Ill. 1997). *See also Personal Keepsakes*, 2012 U.S. Dist. LEXIS 15280, at \*24 (dismissing as preempted state law claims that "are simply copyright claims in different clothing"); *In re StarLink Corn Prods. Liab. Litig.*, 212 F. Supp. 2d 828, 836 (N.D. Ill. 2002) ("plaintiffs cannot avoid preemption by artful pleading").[13]

None of LMC's individual state law claims escapes Copyright Act preemption. *See, e.g., Cassetica Software*, 2009 U.S. Dist. LEXIS 51589, at \*13-15 (claims of conversion and unjust enrichment preempted where "based entirely on [defendant's] unauthorized downloads"); *Ho v. Taflove*, 648 F.3d 489, 501-02 (7th Cir. 2011) (conversion preempted); *Pritikin v. Liberation*

---

[12] LMC appears to seek other copyright remedies, namely an award of "attorneys' fees, litigation expenses (including fees and costs of expert witnesses), and other costs of this action." (*Id.*) These unusual remedies may be awarded to prevailing parties in copyright cases under 17 U.S.C. § 505, a statutory exception to "the American Rule" that "parties are to bear their own attorney's fees." *Fogerty v. Fantasy*, 510 U.S. 517, 533 (1994).

[13] Indeed, Section 301 preemption may apply even if no copyright cause of action is pleaded. *CEO Mktg. Promotions Co.*, 739 F. Supp. 1150; *Vaughn v. Kelly*, No. 06 C 6427, 2007 U.S. Dist. LEXIS 17804 (N.D. Ill. Mar. 13, 2007); *Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225 (4th Cir. 1993).

*Publ'ns, Inc.*, 83 F. Supp. 2d 920, 922-23 (N.D. Ill. 1999) (same, where plaintiff alleged violation by "mere unauthorized reproduction"); *Gary Friedrich Enters., LLC v. Marvel Enters.*, 713 F. Supp. 2d 215, 231 (S.D.N.Y. 2009) (same under both Illinois and New York law) ("Even if the claims were properly stated, previous courts have found actions for conversion ... to be preempted by a federal copyright law.") (citations omitted); *CustomGuide v. Career Builder, LLC*, 813 F. Supp. 2d 990, 1003-04 (N.D. Ill. 2011) (unjust enrichment preempted); *Heriot v. Byrne*, No. 08 C 2272, 2008 U.S. Dist. Lexis 104214, *6-12 (N.D. Ill. Dec. 23, 2008) (same; "It is only through plaintiffs' ... Copyright Act claim ... that any enrichment is unjust."); *Am. Movie Classics Co. v. Turner Entm't Co.*, 922 F. Supp. 926, 934 (S.D.N.Y. 1996) ("preemption is appropriate because [plaintiff's] unjust enrichment claim does not allege that defendants were enriched from anything other than their unauthorized exhibition of the copyrighted films—a claim which is equivalent to the exclusive right of public performance provided by the Copyright Act"); *LTVN Holdings, LLC v. Odeh*, No. CCB-09-789, 2010 U.S. Dist. LEXIS 63164, *16 (D. Md. June 25, 2010) (breach of contract, unjust enrichment, conversion, and other state claims preempted by Copyright Act); *Ritchie v. Williams*, 395 F.3d 283 (6th Cir. 2005) (same, applying doctrine of complete preemption); *Higher Gear Group,* 223 F. Supp. 2d at 958 (breach of contract claim preempted "to the extent [plaintiff] intend to show that the licensing agreement prohibited unauthorized copying and creation of derivative products"); *id.* at 960 (civil conspiracy preempted where "premised on allegations supporting" another preempted state-law claim); *Do It Best Corp. v. Passport Software, Inc.*, No. 01 7674, 2005 U.S. Dist. LEXIS 7213, *46-47 (N.D. Ill. 2005) (claim of "conspiracy to infringe ... appears to be preempted"); *Peter*

11

*Rosenbaum Photography Corp. v. Otto Doosan Mail Order Ltd.*, No. 04 C 0767, 2005 U.S. Dist. LEXIS 21528, *15 (N. D. Ill. Sept. 26, 2005) (unjust enrichment and conspiracy preempted).

The preemption of LMC's breach of contract claim deserves special attention. "[W]hether contract claims are preempted by the Copyright Act does not lend itself to a bright-line rule. Rather, whether a given contractual promise renders a claim qualitatively different than a copyright claim must depend on what the promise is." *Canal + Image UK, Ltd. v. Lutvak*, 773 F. Supp. 2d 419, 444 (S.D.N.Y. 2011). Preemption generally does not apply to contracts between private parties. *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1454-55 (7th Cir. 1996). "A breach of contract claim should be preempted, however, if the allegations of breach are based on nothing more than the act of infringement." *Higher Gear Group*, 223 F. Supp. 2d at 958.[14] Where contract-based claims "basically assert that [one contractual party] infringed on the publication, performance, and distribution rights of [another] … the claims must … be recharacterized as copyright claims and governed by federal copyright law." *Ritchie*, 395 F.3d at 297. "The alleged breach of promise here *was* the alleged copyright infringement, *i.e.* using the copyrighted work in an unauthorized manner. Accordingly, because the state law breach of contract claim and the copyright claim are functionally identical, the state law claim is preempted." *Nutter v. Clear Channel Commc'ns, Inc.*, No. 5:05CV65, 2006 US Dist LEXIS 69375, *14 (N.D. W. Va. Sept. 21, 2007) (emphasis in original).

LMC failed to plead copyright infringement, and obscured any potential copyright claim with state law claims that are all preempted and, as discussed below, otherwise inapt. LMC has

---

[14] *Accord Am. Movie Classics*, 922 F. Supp. at 931. *See also* Joseph P. Bauer, *Addressing the Incoherency of the Preemption Provision of the Copyright Act of 1976*, 10 Vand. J. Ent. & Tech. L. 1, 58 (Fall 2007) ("It is a misreading of the statute to allow parallel copyright infringement and state law claims to proceed, based on the alleged violation by the defendant of a contractual promise not to engage in [infringing] behavior ... a 'promise' not to violate the copyright laws is not the meaningful 'extra element' required by § 301...").

thereby subjected itself to an award for costs and reasonable attorney's fees to a prevailing party. *Rosciszewski v. Arete Assocs.*, 1 F.3d 225, 232-34 (4th Cir. 1993) (affirming preemption of state law claims and award under 17 U.S.C. § 505 where copyright was not pleaded).

**2.      LMC Failed to Sufficiently Plead any of Its State Causes of Action.**

**a.      LMC May Not Assert Conversion as a Cause of Action on the Facts Alleged.**

"The essence of an action for conversion is the wrongful deprivation of property from the person entitled to possession." *In re Thebus*, 108 Ill. 2d 255, 260 (Ill. 1985) (quoting *Farns Assocs., Inc. v. Sternback*, 77 Ill. App. 3d 249, 252 (1979)). "It is ordinarily held, however, that an action for conversion lies only for personal property which is tangible, or at least represented by or connected with something tangible." *Id.* (quoting 18 Am. Jur. 2d Conversion § 9 at 164 (1985)). LMC's conversion claim fails to allege a *deprivation* of any property, or that the property in question was *tangible*. Further, to the extent LMC might allege interference with intangible property rights in its films or photographs, the claim is preempted.

Conversion involves an unauthorized assumption of possessory dominion and exclusive control of a physical property. *National Presto Indus., Inc. v. Hamilton Beach, Inc.*, No. 88 C 10567, 1990 U.S. Dist. LEXIS 16758, *36-37 (N.D. Ill. Dec. 12, 1990); *Pritikin*, 83 F. Supp. 2d at 922-23 ("in Illinois, conversion is understood as the wrongful deprivation of an identifiable object of property to which the plaintiff was entitled").[15] LMC alleges that "unauthorized access to Plaintiff's websites and protected computer content ... continues ..." (FAC ¶ 1.) Even if, as alleged, Smith downloaded content from websites where it remains available for other alleged

---

[15] *See also FMC Corp. v. Capital Cities/ABC, Inc.*, 915 F.2d 300, 304 (7th Cir. 1990) (applying California law), (*quoting Harper & Row*, 723 F.2d at 201 ("Conversion requires not merely temporary interference with property rights, but the exercise of unauthorized dominion and control to the complete exclusion of the rightful possessor...") and *Pearson v. Dodd*, 410 F.2d 701, 706 (D.C. Cir. 1969) ("Where the intermeddling falls short of the complete or very substantial deprivation of possessory rights in the property, the tort committed is not conversion.")).

co-conspirators to download, LMC retains possession of all its copyrighted content. Whatever loss LMC alleges, it has failed to state a full deprivation of any property that could be returned.[16]

"[I]ntangible property rights cannot be the subject of conversion unless they are merged into a tangible document over which the alleged tortfeasor exercised dominion or ownership." *The Film and Tape Works, Inc. v. Junetwenty Films, Inc.*, 368 Ill. App. 3d 462, 475 (Ill. App. Ct. 2006), *quoted with approval in Joe Hand Promotions, Inc. v. Lynch*, 822 F. Supp. 2d 803, 808 (N.D. Ill. 2011). LMC has alleged no such tangible, physical conversion. "Illinois courts do not recognize an action for conversion of intangible rights." *Am. Nat'l Ins. Co. v. Citibank, Inc.*, 543 F. 3d 907, 910 (7th Cir. 2008). *See also Joe Hand*, 822 F. Supp. 2d at 809 ("Illinois courts have not yet extended the tort of conversion to intangible property like television programming."); *Joe Hand Promotions, Inc. v. DeMarco*, No. 11 CV 8569, 2012 U.S. Dist. LEXIS 120526, *10 (N.D. Ill. Aug. 24, 2012) (unauthorized rebroadcast of televised boxing match "is not conversion but breach of contract or violation of a statute for which a penalty attaches") (distinguishing contrary cases). LMC "failed to state a claim for conversion ... because the defendants never assumed 'physical control' over the intellectual property." *Gary Friedrich Enters., LLC v. Marvel Enters.*, 713 F. Supp. 2d 215, 231 (S.D.N.Y. 2009) (applying Illinois and New York law) (citing *Dowling v. United States*, 473 U.S. 207, 217 (1985)). Because LMC does not claim Smith converted any tangible property, Count II must be dismissed.

---

[16] By its nature, intangible property remains in its owners' possession. *Ho v. Taflove,* 696 F. Supp. 2d 950, 957 (N.D. Ill. 2010) (no evidence that alleged conversion of intangible property prevented plaintiffs "from conducting, controlling, accessing, using, or publishing their research"). By contrast, "the tort of conversion, traditionally applicable to tangible, identifiable property, at least assumes that the property converted can be returned... Indeed, one element of the claim is that the plaintiff has an absolute and unconditional right to the immediate possession of the property. ... But television images are intended to be broadcast. If they were not, there would be no television industry." *Joe Hand Promotions, Inc. v. DeMarco*, No. 11 CV 8569, 2012 U.S. Dist. LEXIS 120526, *10 (N.D. Ill. Aug. 24, 2012).

To the extent that Count II concerns intangible, intellectual property, it is preempted as discussed above.[17] The Copyright Act "will preempt a conversion claim 'where the plaintiff alleges only the unlawful retention of its intellectual property rights and not the unlawful retention of the tangible object embodying its work.'" *Pritikin*, 83 F. Supp. 2d at 922-23 n.1 (*quoting* Paul Goldstein, *Copyright, Patent, Trademark and Related State Doctrines* 777 (3d ed. 1993)). "Whereas conversion requires the wrongful deprivation of one's possession of property, the Copyright Act provides for liability when mere copying occurs ..." *Prostar v. Massachi*, 239 F.3d 669, 677 (5th Cir. 2001). "[C]onversion claims are limited to the wrongful exercise of dominion and control over tangible, physical objects. ... A claim for conversion will be preempted when the theory of recovery merely asserts the wrongful copying, distribution, or performance of an interest under the Copyright Act." *Real Estate Innovations, Inc. v. Houston Ass'n of Realtors, Inc.*, 422 Fed. Appx. 344, 350 (5th Cir. 2011). Either way, Count II fails.

**b.      LMC Has Not Stated a Remediable Claim for Unjust Enrichment.**

"Unjust enrichment is not a separate cause of action that, standing alone, will justify an action for recovery." *Martis v. Grinnell Mut. Reinsurance Co.,* 388 Ill. App. 3d 1017, 1024 (Ill. App. Ct. 2009). Accordingly, an unjust enrichment claim that rests on improper conduct alleged in another claim stands or falls with the related claim. *Id.* at 1025. *See also Ass'n Benefit Servs. v. Caremark Rx, Inc.,* 493 F.3d 841, 855 (7th Cir. 2007); *cf. Wild v. NBC Universal, Inc.*, 788 F. Supp. 2d 1083, 1111 (C.D. Cal. 2011) ("the unjust enrichment claim is likewise preempted" where all claims "sound in copyright"). The failure of Plaintiff's other claims dooms Count III.

---

[17] "Since copyright protection does not extend to copies of a work, actions for conversion of the physical object in which the work is embodied are not preempted. By contrast, almost all courts have properly recognized that a claim for the 'conversion' of the work itself is nothing more than a claim for its unauthorized duplication, distribution, alteration, or performance. Since such 'wrongs' are the essence of a copyright infringement, they are properly preempted by § 301." Bauer, 10 Vand. J. Ent. & Tech. L. at 86.

A plaintiff can claim for either breach of contract or unjust enrichment, but not both.[18] LMC argues a contract exists between itself and Smith, which Smith violated. (FAC ¶¶ 79-83.) But "where the parties' relationship is governed by a contract, the doctrine of unjust enrichment has no application." *Wheeler-Dealer, Ltd. v. Christ*, 379 Ill. App. 3d 864, 872 (Ill. App. Ct. 2008); *Shaw v. Hyatt Int'l Corp.*, 461 F.3d 899, 902 (7th Cir. 2006) (*citing Guinn v. Hoskins Chevrolet*, 361 Ill. App. 3d 575, 604 (Ill. App. Ct. 2005)).

Further, LMC claims it has been denied compensation for website downloads.[19] (FAC ¶¶ 69-70.) But "the disgorgement of ill-gotten gains does not constitute damages in Illinois." *Cont'l Cas. Co. v. Duckson*, 826 F. Supp. 2d 1086, 1098 (N.D. Ill. 2011). Any recovery for LMC may not exceed "the economic cost to plaintiff of providing a benefit." *Midcoast Aviation, Inc. v. Gen. Elec. Credit Corp.*, 907 F.2d 732, 745 (7th Cir. 1990). LMC alleges no such cost: it retains its website content, and can continue to charge newcomers in full. LMC has not stated a claim for unjust enrichment upon which relief can be granted, so Count III must be dismissed.

### c.     LMC Has Not Pled Facts That Would Establish a Breach of Contract (Count V).

LMC's claim for breach of contract is a *non sequitur*. LMC alleges that Smith unlawfully accessed its website content through computer hacking. Those allegations are fatally inconsistent with a cause of action for breaching an agreement between the hacker and the hacked. A plaintiff may plead inconsistent theories in the alternative, but LMC has not. (See FAC ¶ 79.) Count V "clearly incorporates the allegation" of hacking. *CEO Mktg. Promotions Co. v. Heartland Promotions Co.*, 739 F. Supp. 1150, 1152-53 (N.D. Ill. 1990). Specifically, LMC claims:

---

[18] *Duffy v. Ticketreserve, Inc.*, 722 F. Supp. 2d 977, 993 (N.D. Ill. 2010). LMC has not pleaded these theories "in the alternative." *See CEO Mktg. Promotions Co.*, 739 F. Supp. at 1152-53 (dismissing count of unjust enrichment that "clearly incorporates" allegation of agreement between the parties and thus "contains an internal inconsistency").

[19] LMC also alleges "reputational harm." (FAC ¶ 70.) This is an element of defamation, not unjust enrichment.

> *To lawfully access Plaintiff's websites*, users must state that they agree with the following statement: "I have come to this website knowing it's [sic] contents and agree to view sexually explicit material for my personal use. Viewing such material does not knowingly violate the community standards of the area in which I live."

(FAC ¶ 80 (emphasis added).) But throughout the FAC, LMC alleges that Smith did *not* engage in "lawful access." LMC does not contend that any unlawful access, such as the alleged hacking, requires the same agreement. It fails to allege that Smith entered into the contract that it claims he nevertheless breached. LMC's allegations of wholly unauthorized access, which would manifest the opposite of mutual assent, defeat any claim to a "meeting of the minds" with Smith that could create an enforceable agreement. A "contract includes only the terms on which the parties have agreed." *ProCD*, 86 F.3d at 1450. "A meeting of the minds is 'legally inconsistent with a finding of fraud." *AEL Fin. LLC c. Tri-City Auto Salvage, Inc.*, No. 08-cv-4384, 2009 U.S. Dist. LEXIS 77573, *34 (N.D. Ill. Aug. 31, 2009) (quoting *Action Constr. & Restoration, Inc. v. W. Bend Mut. Ins. Co.*, 322 Ill. App. 3d 181, 184 (2001)). A hacker could not have agreed to LMC's terms and conditions[20] while breaching its security systems as alleged. (FAC ¶ 14.)

LMC further alleges that Smith violated the user agreement limited to "personal use" by disseminating its websites' material to others. (FAC ¶¶ 80-81.) As noted above, this is merely a preempted copyright claim in contract clothing. LMC adds nothing to its claim by alleging that Smith breached the agreement by "violating the community standards where he lives, because Defendant Smith's violations of law are presumably a violation of the community

---

[20] LMC also fails to state how Smith would have known of its terms and conditions, essential elements to proving any *knowing* assent that could then have been breached. See, e.g., *Van Tassell v. United Mktg. Group, LLC*, 795 F. Supp. 2d 770, 793 (N.D. Ill. 2011) ("While Internet users are bound by the terms of a website for which they have reasonable notice, Van Tassell's failure to scour the website for the Conditions of Use she had no notice existed does not constitute assent.") Allegations that LMC's terms and conditions govern its websites' lawful use, standing alone, do not suffice to show that any user had notice of those terms. See *id.* at 793 (citing *Hines v. Overstock*, 668 F. Supp. 2d 362 (E.D.N.Y. 2009), *aff'd*, 380 Fed. Appx. 22 (2d Cir. 2010) (refusing to uphold browse-wrap agreement where notice of users' acceptance of Terms and Conditions "was only available within the Terms and Conditions")).

standards." (*Id.* ¶ 82.) In the first instance, LMC alleges Smith breached by unauthorized copying and distribution; in the second, by failing to adhere to societal norms that shun the same acts. "If the [contractual] promise amounts only to a promise to refrain from reproducing, performing, distributing or displaying the work, then the contract claim is preempted." *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 457 (6th Cir. 2001).[21] An online pornographer's requirement that users not violate local standards properly concerns compliance with the *Miller*[22] test, not societal norms about infringement. LMC cannot stretch that requirement to cover other alleged "violations of law," where the rights allegedly violated arise not from any contract but from copyright and are preempted. Copyright preempts not just the underlying claimed violations but also equivalent claims based on the same acts, such as any purported agreement not to infringe.

d.  **LMC Fails to State a Claim for Conspiracy (Count VI and Count VII) on which Relief Can Be Granted.**

Neither of LMC's causes of action for conspiracy state a claim against Smith. "[T]he elements of a civil conspiracy are: 1) a combination of two or more persons; 2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means; 3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act." *Fritz v. Johnston*, 209 Ill. 2d 302, 317 (Ill. App. Ct. 2004). Count VI names only one defendant, failing to plead the first element. "By its nature, a conspiracy allegation demands multiple Defendants. Thus, Plaintiffs cannot allege a conspiracy in a claim brought against only one Defendant." *Designing Health, Inc. v. Erasmus*, CV-98-4758-LGB

---

[21] *See also LTVN Holdings*, 2010 U.S. Dist. LEXIS 63164, at *16 (finding breach of contract and other state claims preempted by Copyright Act "because all are predicated on the defendants' unauthorized use of the videos").

[22] See *Miller v. California*, 413 U.S. 15 (1973). Viewed in that context, the community standards clause is irrelevant. It anticipates a possible defense to obscenity claims, but gives LMC no additional rights against infringing users.

(CWx), 2000 U.S. Dist. LEXIS 23000, *20-21 (C.D. Cal. Oct. 31, 2000) (striking conspiracy allegations). *Accord Hawkinson v. A.H. Robins Co.*, 595 F. Supp. 1290, 1314 (D. Colo. 1984) (dismissing conspiracy claim against one named defendant, though plaintiffs alleged defendant had conspired with others); *Morrison v. California*, 291 U.S. 82, 92 (1933) ("It is impossible in the nature of things for a man to conspire with himself."). Count VI alleges acts by "Smith and his co-conspirators." (FAC ¶¶ 85-88.) But LMC seeks no relief from them and disavows treating them as current defendants. (*Id.* ¶ 12 ("Plaintiff may elect, after learning additional facts, to seek leave of court to amend this complaint to include Defendant's co-conspirators as defendants in this action...") & ¶ 84 (incorporating by reference the preceding paragraphs' allegations).) No one can conspire alone, so Count VI fails to state a claim against Smith.

Count VII alleges a distinct conspiracy: that the Defendant ISPs chose to act tortiously on behalf of "their subscribers." (FAC ¶¶ 2, 34-35, 92-93, 96.) Even overlooking its implausibility, Count VII does not apply to Smith because it alleges no such relationship between him and the Defendant ISPs. As LMC pleads, Smith's ISP is Charter, not Comcast or AT&T. (Exh. A.) He has no agreement with Defendant ISPs to provide Internet service, so he cannot be a party to some convoluted agreement with them to "allow and/or shelter the continued hacking and theft ... in exchange for subscriber fees." (FAC ¶ 95.) LMC pleads no facts that would give rise to an inference of such a quid pro quo. Instead, LMC alleges that "AT&T and Comcast ... chose to act as *de facto* legal counsel for Smith and his co-conspirators..." (*Id.* ¶ 94.) If so, Smith would be only a *third-party beneficiary* of the conspiracy, not a conspirator. "[T]o be a conspirator you must know of the agreement ... and must intend to join it." *United States v. Townsend*, 924 F.2d 1385, 1390 (7th Cir. 1991) (citations omitted). *See also United States v. Pedigo*, 12 F.3d 618, 624

(7th Cir. 1993) ("mere knowledge of the illegal activities of another is not enough to support an inference of an agreement to join a conspiracy. Even active assistance is not always sufficient.").

Finally, civil conspiracy cannot stand alone. If a "plaintiff fails to state an independent cause of action underlying his conspiracy allegations, the claim for conspiracy also fails." *Thomas v. Fuerst*, 345 Ill. App. 3d 929, 936 (Ill. App. Ct. 2004). Thus, 17 U.S.C. § 301 preempts conspiracy claims which are premised on underlying torts that are also preempted. *Higher Gear Group*, 223 F. Supp. 2d at 960; *Do It Best Corp.*, 2005 U.S. Dist. LEXIS 7213, at *46-47. LMC has stated no valid underlying cause of action, so the conspiracy claims must also be dismissed.

## IV. CONCLUSION

Plaintiff has not properly alleged the elements of any of its claims. Smith therefore respectfully urges this Court to dismiss the Complaint in its entirety against him, with prejudice, and order an award of reasonable attorney's fees to Smith, pursuant to Section 505 of the Copyright Act, and/or such other relief as the Court deems proper.

Dated: September 18, 2012          Respectfully,

      /s/ Dan Booth
Dan Booth (admitted *pro hac vice*)
Email: dbooth@boothsweet.com

      /s/ Jason Sweet
Jason E. Sweet (admitted *pro hac vice*)
Email: jsweet@boothsweet.com

BOOTH SWEET LLP
32R Essex Street
Cambridge, MA 02139
Tel.: (617) 250-8602
Fax: (617) 250-8883

*Counsel for Defendant Anthony Smith*