**IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT**
**ST. CLAIR COUNTY, ILLINOIS**
**LAW DIVISION**

| | | |
|---|---|---|
| LIGHTSPEED MEDIA CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Case No. 12-cv-889-GPM-SCW |
| ANTHONY SMITH, | ) | |
| SBC INTERNET SERVICES, INC., d/b/a | ) | |
| AT&T INTERNET SERVICES; | ) | Judge:  Hon. G. Patrick Murphy |
| AT&T CORPORATE REPRESENTATIVE #1; | ) | |
| COMCAST CABLE COMMUNICATIONS, | ) | Magistrate: Stephen C. Williams |
| LLC., and COMCAST CORPORATE | ) | |
| REPRESENTATIVE #1 | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**OPPOSITION TO DEFENDANT AT&T'S**
**MOTION TO DISMISS AMENDED COMPLAINT**

**INTRODUCTION**

The Motion[1] by AT&T and its Representative pursuant to Rule 12(b)(6) and L.R. 7.1

fails to identify a single valid ground to dismiss any claim in the Complaint, and the Court

should deny it in its entirety.  (ECF No. 26.) While AT&T takes a shot-gun approach and seeks

dismissal for everything claimed against it and/or its Representative, each of Counts I, IV, VII,

VIII and X is well-pled.  The arguments that AT&T makes in its Motion are largely factual, and

thus wholly inappropriate in a Rule 12(b)(6) motion.  They also include incorrect statements of

governing law, particularly Federal laws governing cable communications companies, that

---

[1] For reference purposes, this memorandum refers to SBC Internet Services, Inc., d/b/a AT&T
Internet Services as "AT&T;" the AT&T Corporate Representative #1 as "Representative;" the
Federal Rules of Civil Procedure as "Rules;" the Local Rules of the U.S. District Court for the
Southern District of Illinois as "L.R.;" the Rule 12(b)(6) motion to dismiss as "Motion;"
Plaintiff, Lightspeed Media Corporation as "Lightspeed;" Lightspeed's amended complaint as
"Complaint;" and Internet Service Provider as "ISP."

AT&T – one of the largest cable providers – should know are incorrect.  The Court should deny the Motion in its entirety.

## FACTUAL BACKGROUND

Neither Defendant Comcast nor Defendant AT&T have ever contested or disputed allegations that certain of its subscribers have hacked into, and stolen from, Plaintiff's website. (ECF No. 2-2 ¶¶ 27-28.) At the outset of this litigation, the ISPs and their Representatives were simply third-party custodians who were the sole holders of identifying information of their subscribers who have been hacking into and stealing from Plaintiff's website. (*Id.* ¶ 29.) Plaintiff attempted, through the only means available to it, to obtain that identifying information through discovery. (*Id.*)

The Defendant ISPs, upon information and belief, through the approval and authorization of the Corporate Representative of each entity, chose to interpose themselves in this litigation, interfere with the Court's orders, evade subpoenas, and prevent and obstruct Plaintiff from learning the identities of those ISP subscribers hacking into and stealing from its website. (*Id.* ¶ 30.) Further, upon information and belief, the Defendant ISPs have not taken any actions to prevent their subscribers from committing criminal and tortious acts against Plaintiff even after being on actual notice of the criminal and tortious activity and having full control over the Internet accounts of their subscribers. (*Id.*)

An overwhelming percentage of the alleged criminal and tortious actors are Comcast and AT&T subscribers. (*Id.* ¶ 31.) As such, the delay tactics and other interference on the part of the ISPs have prevented Plaintiff from learning the identities of a vast number of Defendant Smith's co-conspirators. (*Id.*) Plaintiff requested, and this Court granted (on or about December 16, 2011) leave to serve discovery in order to learn the identities of Defendant Smith and his co-

conspirators. (*Id.* ¶ 32.) In accordance with that Court Order, Plaintiff served subpoenas upon all of the ISPs listed in Paragraph A of the Court Order, including Defendants AT&T and Comcast. (*Id.* ¶ 33.)

Upon being served with the subpoenas, the Defendant ISPs sought to delay and derail this litigation, thereby shielding their subscribers from liability and allowing them to continue their unfettered hacking and theft from Plaintiff's websites. (*Id.* ¶ 34.) The Defendant ISPs ran interference for their paying customers, despite allegations that certain of those customers were using their subscriptions to commit criminal acts. (*Id.* ¶ 35.) The ISPs have not provided the identity of hackers who are also their subscribers to Plaintiff. (*Id.* ¶ 36.) The ISPs instead filed several motions to extend the time in which to respond to the subpoenas. (*Id.* ¶ 37.) The ISPs, rather than responding, moved to quash the subpoenas. (*Id.* ¶ 38.) The Court, after hearing extensive evidence and argument from the ISPs, entered orders on April 27 and May 21, 2012, in which it directed the ISPs, among other things, to produce subscriber information for the Court to review *in camera* before disclosing it to Plaintiff. (*Id.*)

Rather than comply with that order, the ISPs caused further delay by filing a petition with the Illinois Supreme Court under Supreme Court Rule 383, seeking a supervisory order to preclude the disclosure of subscriber information to the Court for *in camera* review. (*Id.* ¶ 39.) The Illinois Supreme Court on June 24, 2012 granted that petition and vacated the May 24, 2012 order. (*Id.*) In seeking to quash the subpoenas, and in submitting the Rule 383 Petition, the ISPs made numerous arguments for which they had no standing, on behalf of its subscribers who have been identified as hackers. (*Id.* ¶ 40.)  The ISPs, among other things, challenged on grounds only available to parties to litigation, such as lack of personal jurisdiction, improper joinder,

challenges to the sufficiency of factual allegations in the Complaint under 735 ILCS 5/2-615, and other arguments that are available only to litigants to make. (*Id.* ¶ 41.)

The ISPs also argued that the burden on their subscribers of producing identifying information in response to subpoenas served upon them was excessive. (*Id.* ¶ 42.) The ISPs made this argument despite the fact that the subpoenas imposed no burden on the subscribers because the ISPs, and not subscribers, were the only ones required to take action. (*Id.*) The ISPs chose to act as if they were parties to this litigation, and have obstructed any attempt by Plaintiff to stop the hacking into, and theft from, its website. (*Id.* ¶ 43.) Every action that the ISPs have taken in connection with this litigation has served to delay litigation and to prevent Plaintiff from preventing hacking. (*Id.* ¶ 44.) Every action that the ISPs have taken in connection with this litigation has prevented Plaintiff from asserting its rights, preventing criminal activity against it, or obtaining any relief for harm caused to it. (*Id.*)

The ISPs did not and have not produced evidence suggesting that they have notified any of their subscribers to cease and desist the illegal hacking into, and theft from, Plaintiff's website. (*Id.* ¶ 45.) The ISPs did not and have not produced evidence suggesting that they have cancelled a single contract with a subscriber on the ground that Plaintiff has identified it as having stolen from its website. (*Id.* ¶ 46.) The ISPs did not and have not produced evidence suggesting that they have notified law enforcement officials that certain of their subscribers have engaged in criminal activity against Plaintiff. (*Id.* ¶ 47.) Upon information and belief, the ISPs have taken no reasonable action to prevent the massive level of hacking into, and theft from, Plaintiff's website, which continues to this day. (*Id.* ¶ 48.)

The ISPs and their respective Corporate Representatives have thus enabled and sheltered the continued massive hacking into and theft from Plaintiff's website. (*Id.* ¶ 49.) The extent of

the hacking that the ISPs continue to enable is demonstrated by the fact that between August 1 and December 6, 2011 alone, Plaintiff's software blocked well over 330,000 unauthorized sign-on attempts to its website (over 2,500 per day). (*Id.* ¶ 50.) The IP addresses listed in the Complaint represent less than two percent (2%) of the attempts to hack into Plaintiff's website. (*Id.* ¶ 51.) In total, hackers illegally downloaded over 170,000 files, using more than 3.5 terbytes of total bandwidth, from Plaintiff's website. (*Id.*) Furthermore, upon information and belief, nearly twenty percent, or 1,805, of the group of subscribers that the ISPs seek to protect have attempted to hack into Plaintiff's website with a new, hacked user-or passcode, since this litigation began. (*Id.* ¶ 52.) This amount continues to increase daily. (*Id.*) Of those, at least seventy-five have each attempted to hack Plaintiff's website five or more times each since this action began. (*Id.*)

## ARGUMENT

A Federal litigant must plead sufficient factual matter that, if accepted as true, will state a claim to relief that is plausible on its face. *See Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). The plaintiff must plead "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949. The standard governing a Rule 12(b)(6) motion incorporates two important and related principals. First, the complaint cannot rest upon conclusory assertions, or simply allege legal conclusions portrayed as facts. *See Kendall v. Visa USA, Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008). *Twombly* and the cases following it require that a complaint allege "not just ultimate facts (such as a conspiracy), but *evidentiary facts* which if true, will prove" the alleged violation. *Id*. at 1047 (quoting *Twombly*, 550 U.S. at 555) (emphasis added); *see also Iqbal*, 129 S.Ct. at 1950 (courts are "not

bound to accept as true a legal conclusion couched as a factual allegation") (internal citation omitted); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (court need not accept "merely conclusory, unwarranted deductions of fact").

Under Rule 12(b)(6), "dismissal for failure to state a claim is proper only if it is clear that no relief could be granted under any set of facts could be proved consistent with the allegations." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993). This rule challenges the sufficiency of a pleading, and it must be read in conjunction with Rule 8(a), which provides the standard for a well-plead complaint in Federal Courts. 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §1355-56 (1990) ("[A] short and plain statement of the claim showing that the pleader is entitled to relief."). Furthermore, a court "must accept all material allegations in the complaint as true, and construe them in light most favorable to the plaintiff." *NL Industries v. Kaplan*, 792 F.2d 896 (9th Cir. 1986). Accordingly, the court's task in a Motion to Dismiss adjudication is a limited one; "[t]he issue is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Vega v. JP Morgan Chase Bank, NA*, 654 F. Supp. 2d 1104 (E.D. Ca. 2009) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). As such, dismissal under a Rule 12(b)(6) motion is only proper 'where there is either a "lack of cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Id.* (quoting *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990)). Plaintiff's Complaint easily satisfies this standard for each count.

## I.    THE DOCTRINES OF "LAW OF THE CASE" AND COLLATERAL ESTOPPEL ARE INAPPLICABLE.

AT&T devotes much of its Motion in an attempt to leverage a AT&T seeks to leverage a two-sentence supervisory order from the Illinois Supreme Court entered in this case on June 27

2012 to mean far more than what it actually says, and any reasonable interpretation of it.  The

substantive part of that order, entered when this case was still pending in the Circuit Court of St.

Clair County, Illinois, is as follows:

> "In the exercise of this Court's supervisory authority, the Circui8t Court of St. Clair County is directed to vacate its orders of May 21, 2012 …, and to enter an order allowing the motion to quash subpoenas filed by movants AT&T Internet Services, et al."

From that brief Order, AT&T argues that Plaintiff's claims against it are barred under the

"law of the case" and doctrine, and the doctrine of collateral estoppel.   ECF No. 27 at 11-12.

Initially, and most obviously, the Supreme Court's Oder  in the underlying litigation can

be viewed as doing only what it did:  ordered the trial court to quash some, but not all, of the

subpoenas served in this case.  The Supreme Court gave no reason for doing so; despite the

massive filings that AT&T submitted in seeking that Illinois Supreme Court Rule 383 Order, in

which it asserted a vast variety substantive arguments that are generally reserved to actual parties

in litigation, and threw in a vast number of extraneous and irrelevant claims as well, the Illinois

Supreme Court did not expressly adopt any of AT&T's specific arguments.  As a consequence,

AT&T's attempts to argue that the Order bars claims against it based upon its own actionable

conduct fails.

Specifically, while ATT&T seeks to rely upon the "law of the case" doctrine to escape

liability for Plaintiff's claims against it, it is clear that that doctrine does not bar any claims.  The

doctrine in Illinois generally bars the relitigation of an issue previously decided in the same case.

*Long v. Elboro,* 397 Ill. App. 3d 982, 989, 922 N.E.2d 555  (2d Dist. 2010).  As applied in

Illinois, the doctrine applies to questions of both law and fact.  *Alwin v. Village of Wheeling,* 371

Ill. App. 3d 898, 910, 864 N.E.2d 897 (1st Dist. 2007).  Questions of law that are decided in a

prior judicial proceeding are binding on the trial court on remand, as well as on appellate courts

in subsequent appeal.  *Long,* 397 Ill. App. 3d at 989, 922 N.E.2d 555.  The purpose of the doctrine is to protect the settled expectations of parties, ensure uniformity of decisions, maintains consistency during the course of a particular case, and promotes the proper administration of justice. *Pettre v. Kunich,* 356 Ill. App. 3d 57, 63, 824 N.E.2d 1117 (1st 2005).

The only application of the law-of-the case doctrine based upon the Illinois Supreme Court order is whether subpoenas served on AT&T as a third-party should be quashed.  There is simply nothing more to be gleaned from the Supreme Court Order.  AT&T nevertheless misleadingly attempts to bootstrap that two-sentence order to mean something far more than what it is.  Among other things, AT&T asserts that the issues in Plaintiff's Complaint "were finally decided by the Illinois Supreme Court."  ECF No. 27 at 7-8.  Of course, they were not.  There was no "final" decision by the Illinois Supreme court, just a supervisory order quashing some, but not all, of the subpoenas issued in that case.  And despite AT&T's attempt to argue that the Supreme Court "finally decided" issues that "are in fact identical to those raised by Lightspeed's claims against AT&T," there is nothing to suggest anything of the sort.  AT&T advanced arguments as a third-party standing on the sidelines and complaining, among other things, about the burden that producing the names of its customer-hackers would place upon it.  No party presented any argument to the Illinois Supreme Court as to whether AT&T was substantively liable under the claims asserted against it in Counts I, IV, VII, VIII and X of the Complaint.  There has been no decision, final or otherwise, on those issues, and AT&T's claims to the contrary are frivolous.

There is also no basis to seek application of the doctrine of collateral estoppel, as AT&T seeks to do.  ECF No. 27 1a 7.  The doctrine applies only when a party participates in two *distinct* cases arising out of different causes of action, and a pivotal fact in both cases was

8

adjudicated against that party in a prior case. *See, e.g., Department of Transp. V. Chicago Title & Trust Co.*, 303 Ill. App. 3d 484, 707 N.E.2d 637 (1st Dist. 1999). The requirements for application of collateral estoppel are that (1) the issues must be identical; (2) a final judgment on the merits must have been entered in the prior adjudication; and (3) the party against whom the doctrine is asserted must have been a party, or in privity with a party, in the prior adjudication. *Cree Development v. Mid America Advertising,* 324 Ill. App. 3d 534, 755 N.E.2d 491 (5th Dist. 2001).

Despite AT&T's protestations that allowing this case to proceed would "contradict the principles of collateral estoppel" (ECF No. 27 at 7), the only one contradicting those principles is AT&T, which seeks to escape liability under it without meeting any of its prerequisites: the issues are not identical, because the Illinois Supreme Court was not presented with any question of AT&T's substantive liability; there is no final judgment on the merits; and there is no "prior adjudication" in a separate matter.

The meaning of the Illinois Supreme Court's Order from June 2012 is plain on its face: It ordered the trial court to quash some of the subpoenas issued to ISPs, and nothing more. AT&T's attempt to use that Order as an escape hatch for substantive liability is baseless.

## II.     AT&T'S "DUTY" ARGUMENTS FAIL.

AT&T's argument that it did not owe a "duty" to Lightspeed also fails because it does not address any claims in Plaintiff's Complaint. (ECF No. 27 at 8-9.)

Liaghtspeed has not asserted a claim for negligence against AT&T. And AT&T has not, and cannot, point to the existence of a "duty" or a "special relationship" as an element of any claim asserted against it. *See id.* Despite the fact that the argument is not directed to a single claim against AT&T, it argues about the absence of an "duty" or "special relationship" giving rise to Plaintiff's pending claims against it, and the argument is obviously irrelevant.

Furthermore, AT&T has premised its argument upon astonishing misleading and disingenuous statements.  AT&T chides Lightspeed because "the so-called `co-conspirator' subscribers have not been named, served, or even sued in this lawsuit."  ECF No. 27 at 9.  The reason, of course, is that AT&T has acted in concert with its subscribers, running interference on their behalf, in a deliberate effort to ***prevent*** them from being "named, served or … sued."  In exchange, AT&T maintained its ability to collect monthly subscriber fees from those individuals.  As Plaintiff has alleged, that conduct satisfies the elements of a conspiracy between AT&T and its subscribers, in which the subscribers are able to continue to commit criminal acts against Plaintiff, in exchange for assurances that AT&T will use all necessary tools at its disposal to prevent them from being identified and their criminal activates stopped.  And AT&T's suggestion that "If Lightspeed were truly modified to stop criminal activity … it would presumably have contacted law enforcement or taken some such measure…" other than suing AT&T.  ECF No. 27 at n.5.  Of course, AT&T, in furtherance of its conspiracy to allow its subscribers to continue hacking into Plaintiff's computer systems, has prevented Plaintiff from contacting law enforcement by withholding the names of subscribers, which AT&T, in the face of a court order from the Circuit Court of St. Clair County, refused to produce.  And Plaintiff ***has*** taken steps besides suing AT&T; it spent considerable time and effort availing itself of the Illinois courts, only be met with the efforts of AT&T, Comcast and other large ISPs to avoid producing the information at all cost, including the cost of enabling continuing and massive criminal activity being directed at Plaintiff.

### III.   EACH CLAIM AGAINST AT&T STATES A VALID CAUSE OF ACTION.

When AT&T finally turns to the substantive allegations against it, more than half-way through its supporting memorandum, it fares no better than in the first half of its brief, because each claim against it states a valid cause of action.

#### A. Plaintiff Properly Alleges Aiding And Abetting In Count X.

AT&T's argument relating to the claim in Count X for aiding and abetting fails to identify any defect in that count.

AT&T's argument is based upon a false premise:  that it "fail[ed] to attempt to prevent the subscribers' alleged conduct."  (ECF No. 27 at 11.)  That argument is demonstrably false. The allegations that are actually in the Complaint in Count X are that AT&T actively took steps to enable its subscribers to continue to hack into Plaintiff's websites and acted to conceal their involvement, while at the same time billing the same individuals for internet services.  The Allegations in Count X are that AT&T was advised that many of its subscribers were hacking into Plaintiff's website at a massive rate; that AT&T never instructed them to stop, or took action necessary to prevent, such hacking; that, in exchange for continued monthly subscriber payments, AT&T ran interference for them and acted as their *de facto* legal counsel in order to shelter them from liability, and to allow them to continue hacking.  (ECF No. 2-2 ¶¶ 98-103.) While AT&T argues that it lacked any duty to act, the allegations are that it *did* act, and in fact did whatever it felt was necessary to prevent Plaintiff from stopping its subscribers from hacking into its websites.

AT&T's argument with respect to the claim for aiding and abetting in Count X grossly misstates Plaintiff's argument.  Under AT&T's formulation, it is a passive bystander to the

ongoing criminality of its subscribers.  In reality, Plaintiff has alleged that AT&T acted to allow, supported and facilitated the ongoing criminal conduct of its subscribers who continue to hack into Plaintiff's websites.  AT&T's suggestion that Plaintiff has failed to allege a causal link between its conduct and the continued hacking is also incorrect.  Plaintiff clearly alleged that AT&T's acts and omissions have directly allowed their customers to continue their criminal conduct against Plaintiff.

### B.  Plaintiff Properly Alleges Civil Conspiracy In Count VII.

AT&T's primary argument with respect with respect to the claim for conspiracy in Count VII is that Plaintiff did not plead an agreement among the parties.   AT&T claims that "There is no allegation of an agreement here."  ECF No. 27 at 12.  That  statement is demonstrably false. Plaintiff alleges in Count VII that there was an agreement, and that AT&T was advised that many of its subscribers were hacking into Plaintiff's website at a massive rate; that AT&T never instructed them to stop, or took action necessary to prevent, such hacking; that, in exchange for continued monthly subscriber payments, AT&T ran interference for them and acted as their *de facto* legal counsel in order to shelter them from liability, and to allow them to continue hacking. (ECF No. 2-2 ¶¶ 98-103.)  While AT&T claims that there is "no allegation of an agreement," in reality, its decision to act as attorneys for its subscribers in order to shield and facilitate their ongoing criminality, clearly evidences an agreement and overt actions in furtherance of the conspiracy.  Plaintiff has sufficiently pleaded that AT&T reached an explicit agreement with its subscribers that, in exchange for continued monthly subscription payments, AT&T acted to shield and defend them from liability, to conceal their identities from Plaintiff, and to advocate on their behalf while they continued hacking into Plaintiff's websites.

### C.  Plaintiff Properly Alleges A Computer Fraud And Abuse Act Violation In Count I.

AT&T argues that Plaintiff "contends that [Defendant] Smith gained unauthorized access to its websites, and that AT&T `failed and refused to take action to prevent' such access."  ECF No. 27 14 14.  AT&T's argument, of course, does not accurately portray Count I.  In Count I, Plaintiff alleges that Defendant Smith violated the CFAA by, among other things, using a hacked username/password to gain access to Plaintiff's site, and purposefully disseminating content to unauthorized individuals.  (ECF No. 2-2 ¶¶ 53-61.) The CFAA, among other things, provides a right of actions in such circumstances.  Specifically, the  CFAA at Section 1030(a) states lists actions subject to liability, including intentionally accessing a computer without authorization; obtaining information from, a protected computer without authorization;  causes transmission of a program or information from a computer; or traffics in passwords used to access a computer without authorization.  *See* 18 U.S.C.  § 1030(a).

Furthermore, the FAA imposes liability for any person who "***conspires*** to commit … an offense" under Section 1030(a) is liable for civil penalties. 18 U.S.C.  § 1030(b) (emphasis added).  Plaintiff alleged at the outset of the Complaint that it is against both Defendant Smith, and his co-conspirators.  (ECF No. 2-2 ¶ 1.)  Plaintiff brought the action against AT&T and its Representative for, among other things, civil conspiracy and violation of the CFAA and alleged that it, directly and through its Representative, allowed AT&T subscribers to "repeatedly and persistently hack into and steal from Plaintiff's website;" "failed to take reasonable action to prevent their subscribers from hacking into and stealing from Plaintiff's website; failed to warn their subscribers to cease and desist in such conduct; interfered with Plaintiff's efforts to identify and take action to prevent the subscribers' illegal and tortious activity; and **through direct policy decisions,** inaction or for other reasons, allowed the continued and pervasive criminal and

13

tortious acts by certain of [its] subscribers against Plaintiff."  (ECF No. 2-2 ¶ 2) (emphasis added)[2].

Plaintiff also alleged that AT&T and its Representatives "knowingly assisted, or negligently allowed", the theft from Plaintiff's website, and that it has "opposed and interfered with Plaintiff's attempts" to learn the identities of the hackers."  (ECF No. 2-2 ¶ 2.)  Plaintiff alleged that AT&T conspired with Defendant Smith and his co-conspirators by, among other things, failing and refusing to take any action to prevent" the Defendant and others from hacking into, and stealing from, Plaintiff's websites. (ECF No. 2-2 ¶¶ 27, 56, 57.)  Plaintiff's allegations are that AT&T and its Representative acted in concert with Defendant Smith and other hackers to hack into and steal from Plaintiff's website.

As such, Plaintiff has properly alleged both that (1) AT&T and its Representative acted in concert with Defendant Smith and other hackers in allowing them to hack into Plaintiff's website, and (2) conspired with Defendant Smith and other hackers to hack into and steal from those sites.  AT&T's arguments that the Complaint lacks allegations to impose liability under CFAA Section 1030 are, thus, demonstrably false.  Plaintiff's allegations, when viewed in the light most favorable to Plaintiff as the Court must in response to a Rule 12(b)(6) motion, properly allege that AT&T is directly liable for damages under CFAA Section 1030(a), and that it is liable as a co-conspirator with Defendant Smith and others under the CFAA Section 1030(b).

Furthermore, Plaintiff has sufficiently alleged that it has suffered a "loss" as defined in the Act, which defines that term as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program,

---

[2] Count I (and every other Count in the Complaint) incorporates by reference all allegations preceding it in the Complaint.  (ECF No. 2-2 ¶ 53.)

system, or information to its condition prior to the offense, and *any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service*."   18 U.S.C. § 1030(e)(11) (emphasis added).   Plaintiff alleged that "The cost to Plaintiff … to identify Defendant and other hackers was in excess of $250,000."   (ECF No. 2-2 ¶ 57.)   The allegations in Plaintiff's Complaint sufficiently allege that it has suffered a "loss."   As Chief Judge Holderman held in *Farmers Insurance Exchange v. Auto Club Group,* "Loss" also pertains to "any revenue loss incurred, or other consequential damages incurred" by the defendant. *Farmers,* 823 F.Supp.2d at 854 (*citing* 18 U.S.C. §1030(e)(11)).

A plaintiff asserting a claim under the Act can therefore satisfy its obligation to plead damages by "alleging costs reasonably incurred in responding to an alleged [Act] offense, *even if the alleged offense ultimately is found to have caused no damage as defined by the [Act.]   Id.* (emphasis added).   In *Farmers,* the Court agreed with another decision in the U.S. District Court for the Northern District of Illinois holding that a plaintiff adequately plead loss under Act Section 1030 by alleging costs of at least $5,000 in terms of responding to the defendant's conduct the plaintiff's damage assessments.   *Id.;* citing *Sam's Wine and Liquor, Inc. v. Harting,* No. 08 C 570, 2008 WL 4394962 at *4 (N.D. Ill. Sept. 24, 2008). Plaintiff has met the pleading requirements for alleging a violation of the CFAA.

### D.   Plaintiff Properly Alleges An Illinois Consumer Fraud And Deceptive Business Practices Act In Count VIII.

AT&T also seeks dismissal on Count IV in which Plaintiff alleges a violation of the Illinois Consumer Fraud and Abuse Act (the "IFCA," 815 ILCS 505/1, *et seq.*).   (ECF No. 27 at 16-17.)   AT&T's argument is that Plaintiff "fails to allege a single misrepresentation, concealment or other deceptive act or practice by AT&T."   (*Id.*)   That argument is demonstrably false; Plaintiff alleged in great detail practices and conduct by AT&T that concealed the

identities if its subscribers who hacked into Plaintiff's websites, and took action to facilitate and allow that conduct to continue.

The IFCA is both a regulatory and a remedial statute to protect various entities, including business persons, against fraud, unfair methods of competition, and other unfair and deceptive business practices. *Robinson v. Toyota Motor Credit Corp.,* 201 Ill.2d 403, 775 N.E.2d 951 (2002). Because the IFCA is in the nature of a remedial statute, courts must construe it liberally in order to give effect to its purposes. *Id.* (citing *Cripe v. Leiter*, 184 Ill.2d 185, 191, 703 N.E.2d 100 (1998)). The IFCA defines a unfair or deceptive practices as:

> "including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact * * * in the conduct of any trade or commerce … 815 ILCS 505/2 (West 1992).

Section 10(a) of the IFCA creates a remedy for people who suffer damage as a result of a violation of the Act committed by another person, and the elements are: (1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; and (3) the occurrence of the deception during a course of conduct involving trade or commerce. *Id.* (citations omitted). A plaintiff may recover for both unfair, and deceptive, conduct. *Id.* (citing *Saunders v. Michigan Avenue National Bank,* 278 Ill. App. 3d 307, 313, 662 N.E.2d 602 (1st Cir. 1996)). In order to state a claim for deceptive practices, the plaintiff must state with particularity and specificity the deceptive acts or practices. *Connick v. Suzuki Motor Co.,* 174 Ill.2d 482, 675 N.E.2d 584 (1996).

Plaintiff alleges in Count VIII that AT&T engaged in deceptive practices by, among other things, participating in "efforts to defend those gaining illegal access to Plaintiff's website from being identified, while at the same time failing to prevent the individuals from continued

16

unlawful entry into the website." (ECF No. 2-2 ¶ 100.) Furthermore, the conduct that Plaintiff alleged is sufficient to impose liability on AT&T, because the "consumer nexus required is that the misconduct either involves trade practices to the market generally, or otherwise implicates concerns for consumer protection. *See, e.g., ASI Acquisition, LLC v. Rayman,* No. 01 C 165, 2002 WL 335311, at *2 (N.D.Ill. Feb. 28, 2002); *Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.,* 190 Ill. App. 3d 524, 546 N.E.2d 33, 40-41 (2d Dist. 1989.) Plaintiff alleged that AT&T's deceptive practices included, among other things, concealing the identities of those gaining illegal access to its websites from identification, while at the same time, failing to prevent the individuals from continued unlawful entry into the website. (ECF No. 2-2 ¶ 100.) Plaintiff alleged that this deception "occurred in the course of conduct involving trade" (*Id.* ¶ 101) and that, as a consequence, Plaintiff's allegations show that this conduct implicates concerns for consumer protection, because AT&T's conduct has allowed the massive and unrelenting hacking into Plaintiff's website. Among other things, AT&T's failure to take conduct to stop hacking by its subscribers allowed massive hacking, estimated at 2,500 hacking attempts per day, to continue unabated. (ECF No. 2-2 ¶ 50.) Defendant's conduct, or failure to act, also contributed to the downloading of 170,000 files, using more than 3.5 terbytes of total bandwidth. (EECF No. 2-2 ¶ 51.) Allowing such massive criminality to continue unchecked directly implicates concerns for consumer protection.

AT&T's argument that Plaintiff did not allege its deceptive practices with the particularly required under Rule 9(b) also fails. Plaintiff attached to its Complaint a list of over 6,000 Internet Protocol addresses that accessed its websites. It alleged with particularity the dates and times that Defendant Smith accessed the website, which led to the investigation yielding the more than 6,000 names. (ECF No. 2-2 ¶¶ 24-26.) It alleged that, despite knowledge of the

massive hacking by those individuals, AT&T ran interference for its subscribers who Plaintiff had identified as committing criminal acts.  (*Id.* ¶ 35.)  Plaintiff alleged that AT&T never instructed its subscribers to stop hacking into its websites, and did not report such criminality to law enforcement.  AT&T instead acted as the *de facto* defense counsel for its subscribers, and did everything in its power to prevent Plaintiff from identifying those guilty of the hacking, while allowing them to continue hacking in exchange for monthly subscriber fees.  (ECF No. 2-2 ¶¶ 32-49.)  Those allegations specifically identify, with particularity, the acts and omissions of AT&T , when the acts occurred, where and how they occurred.  Plaintiff has pled this count with particularity that satisfies Rule 9(9b).

### E.  Plaintiff Properly Alleges A Count For Unjust Enrichment In Count IV.

AT&T's argument that Plaintiff has not sufficiently pled unjust enrichment in Count X fails. (ECF No. 27 at 17-18.)  In order to allege such a claim, the plaintiff must allege facts suggesting that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience.  *See, e.g., Raintree Homes, Inc. v. Vill. Of Long Grove, 209 Ill.2d 408,* 807 N.E.2d 439, 445 (2004) ("The doctrine of unjust enrichment underlies a number of legal and equitable actions and remedies."); *Martis v. Grinnell Mut. Reinsurance Co.,* 388 Ill. App. 3d 1017, 905 N.E.2d 920 (2009).   To establish an unjust enrichment claim under Illinois common law, a plaintiff must show that (1) the defendant has "unjustly retained a benefit to the plaintiff's detriment," and (2) the defendant's "retention of the benefit violates the fundamental principles of justice, equity, and good conscience."   *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.,* 131 Ill.2d 145, 160, 545 N.E.2d 672 (1989).   "For a cause of action based on a theory of unjust enrichment to exist, there must be an independent basis that establishes a duty on the part

of the defendant to act and the defendant must have failed to abide by that duty." *Martis,* 388 Ill. App. 3d at 1025, 905 N.E.2d 920.  It "is not a separate cause of action that, standing alone, would justify an action for recovery." *Mulliban v. QVC, Inc.,* 382 Ill. App. 3d 620, 631, 888 N.E.2d 1190 (2008).   But, as with the claims at issue here, "it is a condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress, or undue influence, and may be redressed by a cause of action based upon that improper conduct." *Martis,* 388 Ill.. App. 3d at 1024-25, 905 N.E.2d 920.

Plaintiff has plead unjust enrichment as a separate count.  However, it has also alleged several independent bases to establish a duty on the part of AT&T, and that AT&T failed to abide by its duties.  Plaintiff's claim is properly supported by the conduct of AT&T in allowing and being complicit in "unlawful or improper conduct," and it states an appropriate claim for relief in connection with this litigation.

## IV.   THERE IS NO FEDERAL PREEMPTION OF ANY OF PLAINTIFF'S CLAIMS DUE TO THE FEDERAL COPYRIGHT ACT.

AT&T closes its supporting with two paragraphs claiming that Plaintiff's state law claims are barred by the Federal Copyright Act.  (ECF No. 27 at 18-19.)  AT&T's argument is frivolous for several reasons.

AT&T argues that Plaintiff's claims are preempted because they relate to the theft of files subject potentially subject to Federal copyright protection.  (ECF No. 27 at 18-19.)   That argument is incorrect on two levels.  First, Plaintiff alleged that Defendants stole, or conspired to steal, *private* computer files, not specifically files generally available to the general public upon the payment of a fee.  Second, each claim in the Complaint requires establishment of an element not required to establish copyright infringement, and each claim survives under the "extra

element" test for preemption under Federal copyright law.  Plaintiff has not alleged any copyright violation.

AT&T's argument also fails because each claim in the Complaint involves pleading of elements not required for a Copyright Act claim.  In each of the five counts alleged against AT&T and/or its Representative, Plaintiff seeks to allocate liability for the harm that suffered. The claims relate to whether AT&T and its Representative should be held to be civilly liable for Plaintiff's harm, and not whether they committed copyright infringement of Plaintiff's works. None alleges the existence of copyrightable information, and each is distinct from a copyright infringement claim.  Plaintiff does not assert that AT&T infringed on its copyright. To the contrary, Plaintiff claims that AT&T is liable for the damage he caused by virtue of its acts and omissions.  The harm caused by AT&T's acts and omissions are *sui generis* harms distinct from infringement.

The Federal Copyright Act preempts claims arising under state law if they are equivalent to copyright infringement claims.  *See* 17 U.S.C. § 301(a); *Higher Gear Health Group, Inc.,* 223 F.Supp.2d 953, 956 (N.D. Ill. 2001).  Section 301(a) "`preempts all legal and equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106' [of the Copyright Act] and are in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103."  *Seng-Tiong Ho v. Taflove,* No. 10-2144, 2011 WL 2175878, at *8 (7th Cir. Jun. 6, 2011) (quoting 17 U.S.C. § 301(a)).  The Seventh Circuit has identified two elements of copyright preemption under Section 301:  "First, the work in which the right is asserted must be fixed in tangible form and come within the subject matter of copyright as specified in § 102.  Second, the right must be equivalent to any of the rights specified in § 106."  *Id.* (quoting *Baltimore Orioles, Inc. v. Major League Baseball*

*Players Ass'n.,* 805 F.2d 663, 674 (7th Cir. 1986)).  Those rights include the "'reproduction, adaptation, publication, p0erformance and display' of the copyrighted work." *Id.* (quoting *Toney v. L'Oreal USA, Inc.,* 406 F.3d 905, 909 (7th Cir. 2005)).  In order to avoid preemption, a state law claim "must regulate conduct that is qualitatively distinguishable from that governed by federal copyright law – i.e., conduct other than reproduction, adaptation, publication, performance and display." *Id.* (quoting *Toney,* 406 F.3d at 910.)

In this action, there is no allegation of copyright infringement.  Plaintiff alleges that Defendants acted to hack into its websites, and steal private information it.  There is no allegation that the information included publicly-available information subject to the Copyright Act.  At this stage of the proceedings, the Court must accept those allegations as true.  *Cole v. Milwaukee Area Tech Coll. Dist.,* 634 F.3d 901, 903 (7th Cir. 2011).  The only allegations regarding any copyright come from AT&T, which seeks to read them into the Complaint solely for purposes of liability.  And each claim against AT&T includes an extra element not required for copyright infringement:

The elements of copyright infringement are (i) ownership of a valid copyright, and (ii) copying of constituent elements of work that are original.  *See, e.g., Feist Publications, Inc. v. Rural Tel. Serv., Co.*, 499 U.S. 340, 361 (1991). Each claim asserted against AT&T involves an element substantively and quantitatively different than required for establishment of copyright infringement.

*Count I* alleges a Computer Fraud and Abuse Act violation, for which Plaintiff was required to allege (1) damage or loss; (2) caused by; (3) a violation of the substantive provisions set forth at [18 U.S.C.] § 1030(c) (4)(A)(1)()-(V)."  *Cassetica Software, Inc. v. Computer Scis. Corp.,* No. 09 C 0003, 2009 WL 1703015 at *3 (N.D.Ill. June 18 2009).  Aside from the

nonsensical conclusion that AT&T's argument, if accepted, would hold that one Federal law preempts another, none of those "substantive provisions" are an element of liability under the Copyright Act, and therefore there is no preemption.  Likewise, each of Counts IV, VII, VIII and X, as set forth below, do not involve copyright claims, and include pleading of extra elements not required for a copyright claim.  None are preempted.

## CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that this Court deny the Motion in its entirety, and grant it any and all further relief that this Court deems to be reasonable and appropriate under the circumstances.

Respectfully submitted,

LIGHTSPEED MEDIA CORPORATION

DATED: October 1, 2012

By:    /s/ Paul Duffy
       Paul Duffy (Bar No. 6210496)
       Prenda Law Inc.
       161 N. Clark St., Suite 3200
       Chicago, IL 60601
       Telephone: (312) 880-9160
       Facsimile: (312) 893-5677
       E-mail: paduffy@wefightpiracy.com
       *Attorney for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

 The undersigned hereby certifies that on October 1, 2012, all counsel of record who are deemed to have consented to electronic serve are being served a true and correct copy of the foregoing document using the Court's CM/ECF system.

**DATED:** October 1, 2012

/s/ Paul A. Duffy   
