## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

|  |  |  |
|---|---|---|
| | ) | |
| LIGHTSPEED MEDIA CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:12-cv-00889-WDS-SCW |
| | ) | |
| v. | ) | |
| | ) | **DEFENDANT ANTHONY** |
| ANTHONY SMITH, SBC INTERNET SERVICES, | ) | **SMITH'S MOTION FOR** |
| INC., d/b/a AT&T INTERNET SERVICES; AT&T | ) | **ATTORNEY'S FEES PURSUANT** |
| CORPORATE REPRESENTATIVE #1; COMCAST | ) | **TO FED. R. CIV. P. 54(d)(2)** |
| CABLE COMMUNICATIONS, LLC, and | ) | **AND 28 U.S.C. § 1927** |
| COMCAST CORPORATE REPRESENTATIVE #1, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Defendant Anthony Smith ("Smith") respectfully submits this motion, pursuant to Fed. R. Civ. P. 54(d)(2) and 28 U.S.C. § 1927, for an order requiring counsel for Plaintiff Lightspeed Media Corporation's ("Plaintiff"), specifically John Steele ("Steele"), Paul Duffy ("Duffy"), and Paul Hansmeier ("Hansmeier"), to satisfy personally the excess attorney's fees Smith reasonably incurred because of their unreasonable and vexatious multiplication of the proceedings in this case.

In support of this motion, Smith states as follows.

### FACTUAL BACKGROUND

Plaintiff filed the initial complaint in this action in the Circuit Court for the Twentieth Judicial District, St. Clair County, Illinois (the "Circuit Court") under the caption *Lightspeed Media Corporation v. John Doe*, No. 11-L-683 (Ill. Cir. Ct. Dec. 14, 2011). See Doc. 2-3. Plaintiff moved for leave to obtain the identities of the unnamed John Doe defendant and more than 6,600 non-party alleged co-conspirators by serving subpoenas on their Internet Service Providers ("ISPs"). *See id.* ¶¶ 1, 3, 6, 16 & 18; *see also* Doc. 9-3 pp. 12-90 (listing more than 6,600 non-parties by IP address). On December 16, 2011, the Circuit Court granted Plaintiff leave to serve ISPs subpoenas to obtain that identifying information. Doc. 9-4. On March 19, 2012, after the subpoenas were served, several ISPs objected and moved to quash. Doc. 9-5. The Circuit Court denied the motion to quash on April 12, 2012. Doc. 9-6. On June 27, 2012, upon motion by the ISPs, the Illinois Supreme Court entered a

supervisory order directing the Circuit Court to quash the subpoenas. Doc. 9-10. The Circuit Court did so on July 16, 2012. Doc. 28-2.

Plaintiff filed an amended complaint in the Circuit Court on August 3, 2012, for the first time naming as defendants two ISPs, unnamed corporate representatives of each, and Smith. Doc. 2-2 ("Amended Complaint"). Plaintiff's attorney Kevin Hoerner ("Hoerner") signed the amended complaint, and Duffy's name appeared in the signature block. *Id*. pp. 22 & 23. Hoerner obtained a summons for Smith from the Circuit Court on August 7, 2012. Doc. 33-1. Plaintiff then reissued the same subpoenas to the same ISPs that the Illinois Supreme Court had ordered quashed. *See* Doc. 14 p. 14; *compare* Doc. 14-6 *with* Doc. 14-7.

An ISP defendant, SBC Internet Services, Inc. d/b/a AT&T Internet Services ("AT&T"), removed the action to this Court by filing a notice of removal on August 10, 2012. Doc. 2. On August 16, 2012, again seeking the same discovery denied in the state court system, Plaintiff contended that the Illinois Supreme Court's "supervisory order did not … vacate the Circuit Court's order granting leave to issue subscriber identification subpoenas or otherwise hamper Plaintiff's case." Doc. 9 p. 4. The Circuit Court had vacated the effect of its order granting leave to issue subpoenas by quashing the outstanding subpoenas, pursuant to the supervisory order.

Smith first learned of this action on August 20, 2012, when he was served a copy of the Amended Complaint, along with the summons issued by the Circuit Court. Doc. 33 ¶ 6. The process server stated to Mr. Smith, "You're in a lot of trouble." See Smith Declaration ¶ 2 ("Smith Dec.") (Exhibit A hereto). The process server informed Mr. Smith that the case involved computers and hacking. *Id.* ¶ 4. The process server handed Mr. Smith his business card, pointing out to Mr. Smith that Attorney Steele's name and phone number were written on the back of the card. *Id.* ¶ 6. The process server told Mr. Smith that Attorney Steele was an important lawyer from Washington, D.C. who had no interest in the case, but that Mr. Steele would be able to help Mr. Smith get the situation resolved. *Id.* ¶ 7. On that same day, August 20, 2012, Attorneys Steele, Hoerner, Duffy and Hansmeier appeared in this Court on behalf of Plaintiff for a hearing on Plaintiff's motion for expedited discovery. Doc. 29 (hearing transcript).

The ISP defendants filed motions to dismiss all claims against them on August 29, 2012. Docs. 26 & 28. Plaintiff filed oppositions dates October 1, 2012. Docs. 39 & 40. Smith filed a motion to dismiss all claims against him on September 18, 2012. Doc. 36. Smith declared his innocence regarding Plaintiff's claims. Doc. 37 p. 1. Plaintiff filed an opposition on October 22, 2012. Doc. 44.

The parties filed a joint report and proposed scheduling order on October 22, 2012, noting Plaintiff's position "that discovery should commence immediately after the October 25, 2012 initial pretrial scheduling and discovery conference," and Defendants' position "that discovery should be stayed pending rulings by the Court on the outstanding motions to dismiss." Doc. 45 p. 1. Accordingly, Defendants filed a motion to defer discovery on October 24, 2012. Doc. 47. Plaintiff filed an opposition on October 31, 2012, contending that the Court should not stay discovery to examine the merits of the case because the complaint was not "patently frivolous." Doc. 50 pp. 4-5. Defendants filed a reply on November 5, 2012, further describing the frivolous nature of Plaintiff's claims. Doc. 52 pp. 2-3; *see also id.* p. 4 ("before Smith is put to the additional burden of producing evidence, Lightspeed has to show that there is some ground for suspecting that Smith has indeed violated Lightspeed's rights").

On November 7, 2012, the Court granted Defendants' motion, ordering a stay of discovery pending resolution of Defendants' motions to dismiss. Doc. 53.

On November 14, 2012, Hansmeier moved to withdraw from the case, and the motion was granted the next day. Docs. 55 & 56. On March 6, 2013, Steele moved to withdraw from the case, and the motion was granted the next day. Docs. 57 & 58.

On March 21, 2013, Duffy signed and filed a notice of voluntary dismissal. Doc. 59. The Court entered an order dismissing the case without prejudice the next day. Doc. 60.

### LEGAL STANDARD

"Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.

[A] court has discretion to impose § 1927 sanctions when an attorney has acted in an "objectively unreasonable manner" by engaging in "serious and studied disregard for the orderly process of justice," *Pacific Dunlop Holdings, Inc. v. Barosh*, 22 F.3d 113, 119 (7th Cir. 1994); pursued a claim that is "without a plausible legal or factual basis and lacking in justification," *id.*; or "pursue[d] a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound," *Kapco Mfg. Co. v. C & O Enters., Inc.*, 886 F.2d 1485, 1491 (7th Cir. 1989).

*Jolly Grp., Ltd. v. Medline Indus, Inc.*, 435 F.3d 717, 720 (7th Cir. 2006).

Unreasonable and vexatious conduct may be shown by either subjective or objective bad faith. *Walter v. Fiorenzo*, 840 F.2d 427, 433 (7th Cir. 1988) (28 U.S.C. § 1927 sanctions may be imposed against an attorney who "has acted in an objectively unreasonable manner by engaging in a serious and studied disregard for the orderly process of justice"); *Ordower v. Feldman*, 826 F.2d 1569, 1574 (7th Cir. 1987) (intentional ill will or reckless conduct constitutes vexatious conduct); *In re TCI, Ltd.*, 769 F.2d 441, 445 (7th Cir. 1985) (bad faith can be demonstrated by subjective evidence of malice, objective evidence of reckless conduct, or indifference to the law).

"Subjective bad faith must be shown only if the conduct under consideration had an objectively colorable basis … The standard for objective bad faith does not require a finding of malice or ill will; reckless indifference to the law will qualify." *Dal Pozzo v. Basic Mach. Co.*, 463 F. 3d 609, 614 (7th Cir. 2006) (*citing In re TCI Ltd.*, 769 F.2d 441, 445 (7th Cir. 1985)).

Section 1927 sanctions may be imposed for either factual claims or legal arguments without support. "Under § 1927, sanctions for filing a baseless claim properly may be imposed where those claims are not supported by the facts." *Walter v. Fiorenzo*, 840 F.2d 427, 435 (7th Cir. 1988) (affirming award against counsel for filing complaint without sufficient factual basis against a defendant). "An argument in the teeth of the law is vexatious … When a [party] makes an argument so empty that no responsible lawyer could think the argument supportable by any plausible plea for a change in the law the court may reply with a penalty." *Wisconsin v. Glick*, 782 F.2d 670, 673 (7th Cir. 1986) (awarding Fed. R. App. P. 38 fees against criminal defendants and contemplating Section 1927 sanctions against counsel *sua sponte*). Section 1927 fees may be imposed for making baseless claims,

*Kotsilieris v. Chalmers*, 966 F.2d 1181, 1184 (7th Cir. 2003), filing baseless opposition papers, *Smiga v. Dean, Witter, Reynolds, Inc.*, 766 F.2d 698, 708 (2d Cir. 1985), and for taking "frivolous legal positions" or making "scandalous allegations," *Blair v. Shenandoah Women's Ctr., Inc.*, 757 F.2d 1435, 1438 (4th Cir. 1985).

Attorney's fees may be assessed against counsel even though there has been no judgment on the merits. *Knorr Brake Corp. v. Harbil, Inc.*, 738 F.2d 223, 226 (7th Cir. 1984) (*citing Tamari v. Bache & Co. (Lebanon) S.A.L.*, 729 F.2d 469 (7th Cir. 1984)). A court may look to extrinsic or circumstantial evidence of an attorney's subjective knowledge. *Id.* at 227.

## ARGUMENT

### I.      Plaintiff brought Smith into this action for baseless reasons.

The Seventh Circuit "has upheld section 1927 sanctions … [when] counsel raised baseless claims despite notice of the frivolous nature of these claims…" *Kotsilieris v. Chalmers*, 966 F.2d 1181, 1184 (7th Cir. 2003) (collecting cases). Every factual allegation and claim Plaintiff's counsel made against Smith was sanctionably frivolous.

In its Amended Complaint, Plaintiff contended that Smith accessed Plaintiff's websites to download and disseminate its contents to others. Doc. 2-2 ¶¶ 17-18. Immediately upon being brought into this case, Smith moved to dismiss for failure to state a claim, demonstrating the legal shortcomings in each of Plaintiff's counts against him, while further proclaiming himself "innocent of those baseless assertions." Doc 37 p.1. Plaintiff belittled this as an "attempt to avoid liability through a baseless proclamation of his innocence." Doc. 44 p. 7. Plaintiff's argument inverted the burden of proof: Smith has no liability for any acts alleged in the complaint, both because the allegations were insufficient as a matter of law under Rule 12(b)(6) to render anyone liable, and because he had no role whatsoever in any of the acts alleged.

Smith maintains his innocence of Plaintiff's claims. Exhibit A hereto, ¶ 11. Plaintiff presented no evidence to the contrary. Smith's ISP assigned him an IP address, like any other typical residential ISP subscriber. Plaintiff alleged that the IP address was detected "accessing, without authorization, ten (10) of the Plaintiffs' protected websites" and "downloading more than seventy-two (72) private

computer files from these websites." Doc. 2-2 ¶ 25. But Plaintiff offered and has no factual basis for support, such as an affidavit describing any steps Plaintiff took to authenticate its allegations or determine that Smith, rather than his assigned IP address, had anything to do with this case.

Plaintiff willfully overlooked a point that courts across the nation have now repeatedly pointed out to Plaintiff's counsel: "As many courts have noted, 'the ISP subscriber to whom a certain IP address was assigned may not be the same person who used the internet connection for illicit purposes.'" *First Time Videos, LLC v. John Doe*, No. 12-cv-621, 2012 U.S. Dist. LEXIS 54736, *12 (E.D. Cal. Apr. 18, 2012) (citations omitted) (Prenda Law's Brett Gibbs for plaintiff). "Where an IP address might actually identify an individual subscriber and address the correlation is still far from perfect … The infringer might be the subscriber, someone in the subscriber's household, a visitor with her laptop, a neighbor, or someone parked on the street at any given moment." *VPR Internationale v. Does 1-1,017*, No. 11-cv-02068, 2011 U.S. Dist. LEXIS 64656, *4 (C.D. Ill. Apr. 29, 2011) (Steele for plaintiff). "'[I]t is no more likely that the subscriber to an IP address carried out a particular computer function … than to say an individual who pays the telephone bill made a specific telephone call.'" *AF Holdings LLC v. Rogers*, No. 12-cv-1519, 2013 U.S. Dist. LEXIS 11929, *4 (S.D. Cal. Jan. 29, 2013) (Prenda Law's Brett Gibbs for plaintiff) (quoting *In re Bittorrent Adult Film Copyright Infringement Cases*, No. 11-cv-3995, 2012 U.S. Dist. LEXIS 61447, *9 (E.D.N.Y. May 1, 2012)). "Due to the risk of 'false positives,' an allegation that an IP address is registered to an individual is not sufficient in and of itself to support a claim that the individual is guilty of infringement." *Id.* at *6. "Just because you have the ISP address doesn't mean that you have the right person." Hr'g Tr., *Guava, LLC v. Merkel*, No. 27-CV-1220976, p. 36 (Minn. Dist. Ct. Hennepin Cty. Jan. 25, 2013) (Exhibit B hereto) (Hansmeier and Steele (misidentified in the transcript as "John Steooe") for plaintiff). Courts have specifically and repeatedly warned Plaintiff's counsel against the leap of bad faith they made in naming Smith as a so-called "hacker" based only on his IP address. To name and serve Smith as a defendant without any basis greater than his name on his cable bill is the very definition of recklessness and vexatiousness.

On the same grounds, at least one Court has found that a Prenda Law attorney (Brett Gibbs) "violated Rule 11(b)(3) for filing a pleading that lacks factual foundation." Order to Show Cause re Sanctions for Rule 11 and Local Rule 83-3 Violations, *Ingenuity 13 LLC v. John Doe*, No. 12-cv-8333, p. 5 (C.D. Cal. Feb. 7, 2013) (Exhibit C hereto). As that Court noted, a plaintiff's "pre-complaint duty to find supporting facts is 'not satisfied by rumor or hunch.'" *Id.* p. 2 (*quoting Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992)).

Likewise, Plaintiff has not and cannot shown that Smith himself committed any culpable acts, rather than, e.g., "other members of the household; family guests; or, the next door neighbor who may be leeching from the [defendant household's] Internet access. Thus, Plaintiff acted recklessly by naming [Defendant] as the infringer based on its haphazard and incomplete investigation." *Id.* p. 6. The *Ingenuity 13* Court further explained the shortcomings of Prenda Law's "snapshot observation" methodology, in a copyright case, with an an analysis equally applicable to this Plaintiff's claims:

> … To allege copyright infringement based on an IP snapshot is akin to alleging theft based on a single surveillance camera shot: a photo of a child reaching for candy from a display does not automatically mean he stole it. No Court would allow a lawsuit to be filed based on that amount of evidence.
>
> What is more, downloading data via the Bittorrent protocol is not like stealing candy. Stealing a piece of a chocolate bar, however small, is still theft; but copying an encrypted, unusable piece of a video file via the Bittorrent protocol may not be copyright infringement. In the former case, some chocolate was taken; in the latter case, an encrypted, unusable chunk of zeroes and ones. And as part of its prima facie copyright claim, Plaintiff must show that Defendants copied the copyrighted work. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). If a download was not completed, Plaintiff's lawsuit may be deemed frivolous.

*Id.* pp. 4-5.

Plaintiff argued that "[t]he time for Smith to challenge the accuracy of the allegations, of course, is at trial." Doc. 44 p. 2. But Plaintiff's voluntary dismissal deprived Smith of any opportunity to clear his name of the complaint's scurrilous allegations, which Plaintiff restated in its frivolous, now-abandoned opposition to Smith's motion to dismiss. Plaintiff recklessly, vexatiously, and unreasonably placed Smith in the path of its scattershot approach to snapshot litigation.

## II.     Plaintiff brought Smith into this action under fraudulent terms.

Section 1927 "provides a remedy for bad faith misconduct by an attorney in the pursuit of a case in court." *Bender v. Freed*, 436 F.3d 747, 751 (7th Cir. 2006). Plaintiff's counsel began exhibiting such misconduct toward Smith when it named him as a defendant, then exacerbated the misconduct by misrepresenting itself when serving process upon Smith. On August 20, 2012, Plaintiff's process server directed Smith to contact attorney Steele to discuss the case. Exhibit A hereto ¶¶ 6-7. The process server handed Smith a business card with Steele's phone number on it and told Smith that Steele was an important lawyer from Washington, D.C. who had no interest in the case, but that Steele would be able to help Smith get the situation resolved. *Id.* To the contrary, that same day, Steele appeared at a hearing in this Court as counsel for Plaintiff. Steele's name did not appear on the Amended Complaint, so Smith had no documents showing Steele's true role. *See id.* ¶ 10. Only Smith's good luck or good instincts saved him from speaking to Steele without representation, as untold numbers of other similarly situated ISP subscribers may have done, which would have allowed Steele to immediately engage in improper "settlement" discussions.

Moreover, Plaintiff brought Smith into this action knowing that venue was improper. The action was commenced in St. Clair County in the Circuit Court for the Twentieth Judicial District. At the time that Plaintiff filed the Amended Complaint and obtained the summons to serve on Smith, the proceeding had not yet been removed from in St. Clair County, and both documents indicated that the proceeding was in that court. See Doc. 33 ¶ 6. Smith was served at his Collinsville residence, which is in Madison County, not in St. Clair County. Plaintiff falsely stated in the Amended Complaint that "[v]enue in this county is proper pursuant to 735 ILCS 5/2-101, because, upon information and belief, Defendant Smith resides in St. Clair County, Illinois …" Doc. 2-2 ¶ 11. That allegation of venue was false, as Plaintiff (or its counsel) knew when it entered his Madison County address on the summons. See Doc. 33-1. Only the intervening acts of AT&T's removal of the action to this Court, which has jurisdiction over St. Clair County and Madison County, created any basis for venue, after Plaintiff filed its obviously false pleading.

Such misrepresentations are habitual for Plaintiff and its counsel. Plaintiff claimed on October 31, 2012 that it was "currently litigating its claims against dozens of the hackers that were identified in the original action." Doc. 50 p. 8, citing Doc. 9-1 ¶ 6. A review of PACER reveals that on that date, Plaintiff was involved in exactly two active lawsuits, with only one individual defendant in each: this action against Smith and the ISPs, and *Lightspeed Media Corp. v. Shashek*, 12-cv-00860-WDS-DGW (S.D. Ill. filed July 31, 2012). Yet even if Plaintiff had been litigating dozens of CFAA cases in state courts for some reason, that volume would only provide more examples of the systemic flaws and uncivil procedures that Plaintiff's counsel brings to litigation.

### III.    Plaintiff brought Smith into this case alleging only frivolous claims against him.

The Amended Complaint raised six distinct causes of action against Smith personally, but none had merit, as Smith explained in his motion to dismiss. By staying all discovery until resolving the motions to dismiss, the Court effectively rejected Plaintiff's argument that "[t]he Complaint in this action is by no stretch of the imagination frivolous." Doc. 50 p. 5. Indeed, Defendant's arguments in opposing Smith's motion, signed by Duffy, defied common sense.

Plaintiff raised one federal claim, under 18 U.S.C. § 1030, the Computer Fraud and Abuse Act ("CFAA"). The CFAA requires a civil plaintiff to show damage or loss as defined under the statute, by which loss must be "costs associated with *interruption* of service," *Grubb v. Bd. of Trustees of the Univ. of Ill.*, 730 F. Supp. 2d 860, 867 (N.D. Ill. 2010), and damage means "any *impairment* to the integrity or availability of data, a program, a system or information," 18 U.S.C. § 1030(8). Plaintiff did not allege either interruption nor impairment. Instead, in opposing Smith's motion to dismiss, Plaintiff attempted to redefine both words to apply when a program (its authentication program) remains fully operational but is *circumvented*. See Doc. 44 pp. 11-12. Absent any claim of damage or loss, Plaintiff's sole federal claim was improper.[1] *See Navistar v. New Balt. Garage, Inc.,* No. 11-cv-6269, 2012 U.S. Dist. LEXIS 134369, *19-20 (N.D. Ill. 2012) ("the mere copying of electronic information from a computer system is not enough to satisfy the damage

---

[1] Recognizing the omission, Plaintiff belatedly sought to supplement its Amended Complaint by its CEO's self-serving declaration that "hackers have permanently destroyed Lightspeed's computer systems." Doc. 9-1 ¶ 8. But the Amended Complaint itself offered no colorable basis for Plaintiff to allege damage *or* loss under the CFAA.

requirement of the CFAA"); *Triteq Lock & Security LLC v. Innovative Secured Solutions, LLC*, No. 10-cv-1304, 2012 U.S. Dist. LEXIS 14147, \*19-20 (N.D. Ill. Feb. 1, 2012) ("with respect to the first meaning of 'loss,' to permit a plaintiff to state a CFAA claim by simply alleging costs incurred in responding to an alleged offense or conducting a damage assessment without alleging that the offense caused damage would impermissibly broaden the applicability of the CFAA to provide seemingly unfettered access to federal courts to adjudicate state law issues incidental to computer use").

Plaintiff demonstrated the paucity of its CFAA claim when Smith's motion to dismiss called on Plaintiff to identify which 18 U.S.C. § 1030(a) subsection it claimed might apply to Smith, noting that some require Rule 9(b) specificity. Doc. 37 p. 6 & n. 6 (citing *Motorola, Inc. v. Lemko Corp.*, 609 F. Supp. 2d 760, 765 (N.D. Ill. 2009)). Plaintiff responded as follows:

> Specifically, Section 1030(a) lists actions subject to liability, including intentionally accessing a computer without authorization; obtaining information from, a protected computer without authorization; causes transmission of a program or information from a computer; *traffics in passwords used to access a computer without authorization*. See 18 U.S.C. § 1030(a). Plaintiff has alleged that Defendant Smith engaged in all of that conduct, and Smith's claim that he cannot ascertain which parts of the CFAA that he has violated ring hollow and do not justify dismissal.

Doc. 44 p. 8 (emphasis added).

Plaintiff's mishmash of partial excerpts and paraphrases left Smith guessing, but it appeared to allude to at least one subsection that requires Rule 9(b) specificity: 18 U.S.C. § 1030(a)(6)(A) ("knowingly and with intent to defraud traffics (as defined in section 1029) in any password or similar information through which a computer may be accessed without authorization, if … such trafficking affects interstate or foreign commerce"). Tellingly, Plaintiff's jumbled paraphrase omitted the "intent to defraud" element that imposes Rule 9(b) obligations, which the Amended Complaint did not satisfy.

To save its CFAA claim, Plaintiff misread the statute, asserting that "any person who 'conspires to commit … an offense' under Section 1030(a) is liable for civil penalties. Doc. 44 p. 8, quoting Section 1030(b). Section 1030(b) of the CFAA allows imposition of Section 1030(c)'s criminal punishments, i.e., fines and imprisonment, on criminal conspirators. But the CFAA does not

recognize a civil action under Section 1030(b) absent a direct 1030(a) violation. *Trademotion, LLC v. Marketcliq, Inc.*, 857 F. Supp. 2d 1285, 1293-94 (M.D. Fla. 2012). CFAA civil remedies are limited to "compensatory damages and injunctive relief or other equitable relief." 18 U.S.C. § 1030(g). The Amended Complaint recognized as much, seeking only damages pursuant to Section 1030(g). Doc. 2-2 p. 21 (Prayer for Relief no. 10). It was transparently improper for Plaintiff to argue its claim for CFAA conspiracy liability sustained its claim, where even a properly pled allegation could only attain forms of relief that the statute does not provide a civil plaintiff, and which Plaintiff did not seek.

Likewise, Plaintiff's denial that its state common-law claims were preempted by the Copyright Act cannot sustain scrutiny. Plaintiff argued against preemption on the grounds that "[t]he Court's review is limited to allegations that actually appear in the Complaint in response to a motion to dismiss …" Doc. 44 p. 13. The Amended Complaint alleged that "Defendant was detected downloading more than seventy-two (72) private computer files from [Plaintiff's] websites." Doc. 2-2 ¶ 25. Downloading copyrighted materials is governed by the Copyright Act, and the only computer files specifically identified in the Amended Complaint as supposedly downloaded by Smith or anyone else were the few that Plaintiff referenced in a short exhibit to the original complaint: one movie file in .wmv (Windows Media Video) format, and four digital photographic image files in the .jpg (JPEG) format, which are all covered by copyright. Doc. 9-3 p. 11 (incorporated by reference in the Amended Complaint, Doc. 2-2 ¶ 25). The Amended Complaint also invoked remedies fro copyright infringement, such as an "[o]rder of impoundment under 17 U.S.C. §§ 503 & 509" (i.e., the Copyright Act) and attorney's fees and costs, a copyright remedy under 17 U.S.C. §§ 505 not available under any of Plaintiff's stated causes of action. See Doc. 37 p. 10 & n. 12.

As Plaintiff argued, it is bound by its pleadings, in which each cause of action was founded on allegations that Smith downloaded copies of Plaintiff's content (films and photographs) and shared or disseminated those copies. The Court properly gave no credence to Plaintiff's belated attempt to use its opposition to expand the scope of its already amended complaint. *See, e.g.*, Doc. 44 p. 13 ("The phrase 'private computer files' incorporates such files as password lists and other user generated information that could not colorably be described as subject to the Copyright Act.").

Plaintiff frivolously argued that "each claim against Smith includes an extra element not required for copyright infringement." Doc. 44 p. 15. Plaintiff identified no such extra elements, just as it failed to point out any files specifically identified in the complaint not subject to copyright, and thus avoid copyright preemption. Plaintiff's extensive argument that it had not raised a copyright infringement claim was frivolous and irrelevant, ignoring Smith's point that copyright need not be pleaded as a cause of action to preempt non-copyright claims. See Doc. 37 p. 10 n. 13 & p. 13 (citing *CEO Mktg. Promotions Co. v. Heartland Promotions, Inc.*, 739 F. Supp. 1150 (N.D. Ill. 1990); *Vaughn v. Kelly*, No. 06 C 6427, 2007 U.S. Dist. LEXIS 17804 (N.D. Ill. Mar. 13, 2007); and *Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225 (4th Cir. 1993)).

Plaintiff contended its conversion claim could survive "because an action for conversion may arise for any chattel that can be described, identified, or segregated." Doc. 44 p. 16. This argument was frivolous, overlooking any supporting federal precedent (*compare, e.g.,* Doc. 37 pp. 13-15 and Smith's citations therein) and Plaintiff's own failure to describe or identify any chattel in terms more specific than "private computer files" that Smith supposedly downloaded.

Plaintiff frivolously contended that its unjust enrichment claim should not be dismissed while conceding that, in Illinois, it "is not a separate cause of action." Doc. 44 p. 18. Plaintiff also frivolously contended that its breach of contract claim should not be dismissed, though it had nowhere alleged a central element: "that Smith entered into the contract that [Plaintiff] claims he nevertheless breached." Doc. 37 p. 17. Plaintiff unreasonably alleged a conspiracy between Smith and more than 6,600 others, while conceding that he lacked material knowledge about them: "The only entities that know the hackers' identities are the Defendant ISPs, AT&T and Comcast." Doc. 50 p. 7, citing Doc. 9-1 ¶ 5. *See generally Pac. Century Int'l, Ltd. v. John Does 1-37*, 282 F.R.D. 189, 195 (N.D. Ill. 2012) ("based on what has been pleaded, it does not appear plausible that plaintiffs could plead the existence of a conspiracy") (Steele and Duffy for plaintiff).

In short, Plaintiff's allegations against Smith were each frivolous taken on their merits, indefensible even on the basis of Plaintiff's arguments in opposition, and were vexatious *in toto*. Plaintiff had no reasonable basis to doubt Smith's stated innocence, but even taken on their face,

none of the allegations could have sustained a claim against anyone. Plaintiff acted vexatiously in requiring Smith to respond to its flimsy claims.

**IV.     Plaintiff's conduct of this litigation has been unreasonable and vexatious.**

"If a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious." *Kapco v. C & O Enters.*, 886 F.2d 1485, 1491 (7th Cir. 1989) (quoting *In re TCI Ltd.*, 769 F.2d 441, 445 (7th Cir. 1985) (citations omitted). In *Kapco*, the district court found violations of 28 U.S.C. § 1927 and Rule 11 based on (1) the filing of meritless motions and false representations of the need for emergency relief, (2) correspondence with opposing counsel and its defendants that fell below acceptable standards, served to harass and prolong the litigation, (3) conduct evidencing "a disregard for an orderly and truthful resolution of the dispute," and (4) submissions to the court that were "lengthy, rambling, filled with invective, often recycled from earlier submissions, lacked in citations to authority, and filled with misrepresentations of fact and law." *Kapco*, 886 F.2d at 1490-91. Plaintiff manifested an equally unreasonable approach to Smith throughout this action.

Plaintiff's dismissal abandoned its unsupportable claims against Smith and the ISP defendants, revealing the entire action to have been little but pretext. Plaintiff demonstrated no genuine interest in proceeding against any party, dismissing before resolution of any claims, when discovery about non-parties was not immediately forthcoming. Plaintiff's counsel began dropping out of the case once the Court stayed discovery. That is par for the course for Plaintiff's counsel: Typically, discovery identifying ISP subscribers is not the beginning of a Prenda lawsuit but its end and its sole animating purpose. As AT&T noted,

> Early discovery would give Lightspeed basically all it seeks in this lawsuit — the personally identifiable information of hundreds or thousands of collection targets —before the case could even be subject to a motion to dismiss for failure to state a plausible claim. …
>
> … As elsewhere, Lightspeed and its attorneys would have this Court act as the instrument for its collection activity on a grand scale without regard to whether Lightspeed has asserted any viable claims, and without regard to the substantive and procedural rights of the ISPs or their subscribers. … Presumably, Lightspeed

is merely searching for any sort of relief that could result in the collection of more settlements before any judicial scrutiny and adversarial debate in this Court.

Doc. 14 pp. 19-21.

Plaintiff's counsel had no valid claims to stand behind, and actually prosecuted nothing beyond its failed attempt to resuscitate the discovery denied by the Illinois Supreme Court. Its decision to hale Smith into the action as a pretext for pursuing non-parties warrants sanctions. The impropriety of Plaintiff's counsel in this action is best viewed in context of their unorthodox approach to other litigation. As other courts have noted, "[g]iven the intimidating tactics and oppressive demands made by Plaintiff's counsel in other cases, it is particularly appropriate to require the Plaintiff to proceed according to the federal rules and only allow discovery related to valid claims that can and actually will be prosecuted in the federal court where the claims have been filed." *Millennium TGA Inc. v. Comcast Cable Commc'ns*, 286 F.R.D. 8, 15 (D.D.C. June 25, 2012) (Plaintiff represented by Steele and Duffy); see also *id.* at *9-10 (Plaintiff engaged in "judge shopping" by dismissing action assigned to a judge who "had previously imposed restrictions upon plaintiffs who had brought a similar copyright infringement case … Millennium therefore preferred to litigate before what it considered to be a more favorable forum").

Steele, Hansmeier and Duffy have orchestrated a nationwide campaign through Prenda Law and other related entities that several courts have found extends beyond vexatious litigation into fraud on the court. For one example that beggars description, Duffy, a prinicpal of Prenda Law, wrote a letter to the court disclaiming any role in representing the plaintiff, a Prenda Law client, though Prenda Law's local counsel admitted having been retained to represent the plaintiff by Prenda Law principal Brett Gibbs. Hr'g Tr., *Sunlust Pictures, LLC v. Nguyen*, No. 12-cv-1685, pp. 10-12 (M.D. Fl. Nov. 27, 2012) (Exhibit D hereto). Mark Lutz, formerly a Prenda Law paralegal, represented himself as the plaintiff's "corporate representative," but conceded that he had no knowledge of the corporate officers and was paid on a contract basis to make courtroom appearances as a corporate representative for Prenda Law plaintiffs, including Hard Drive Productions and Guava LLC. *Id.* pp. 13-17 (misidentifying Mr. Lutz as "John Lutz"). The *Sunlust* Court dismissed the case from the

bench "for failure to appear at this hearing, for failure to present a lawful agent, for attempted fraud on the Court by offering up a person who has no authority to act on behalf of the corporation as its corporate representative." *Id.* p. 20. Steele, who happened to be present at the hearing, represented to the Court, "I don't represent Sunlust or anybody anymore. I no longer actively practice law. ... I do appear occasionally at hearings on an ad hoc basis, but I do not have any current clients." *Id.* p. 19. (At the time, Steele was listed as lead counsel in this action.)

In some cases, Plaintiff's counsel has evidently arranged for straw defendants who avoid paying their settlement demands by "agree[ing] to be sued" as a named defendant in a case Plaintiff's counsel use as a springboard to subpoena the names of alleged co-conspirators. Exhibit B hereto at pp. 6-7; *see also id.* p. 21 (Plaintiff's counsel "haven't even asked [defendant] for his computer or for discovery or deposition. That's not why they're seeking discovery they're looking for this third party, non-party discovery to identify more targets.") In that *Guava* case, Plaintiff's counsel even helpfully arranged for the defendant's legal representation when they sued him outside his home state. *Id.* pp. 17-20 (testimony by defendant's attorney about Hansmeier recruiting her; "Before I was involved in the case they said essentially well we don't know any attorneys in Oregon but if you're interested we could sue you in Minnesota and we know a potential pro bono attorney for you. [The defendant] agreed.") Plaintiff's counsel applied the same conspirator discovery approach in this Court, but without a cooperating defendant whose attorney Plaintiff could handpick.

In other cases, Plaintiff's counsel has evidently conjured up sham plaintiffs so it could skip the middleman, settling claims without any need to split the proceeds with a client. A signature of one Alan Cooper appears in court filings and purported assignment agreements in several Prenda Law copyright infringement cases on behalf of its clients Ingenuity 13 LLC and AF Holdings LLC. *See, e.g.,* V. Pet. to Perpetuate Test.*, In re Ingenuity 13 LLC*, Case No. 2:11-mc-00084 p. 8 (E.D. Cal. filed Oct. 28, 2011) (typed signature by Alan Cooper, putative "Manager of Ingenuity 13 LLC," confirmed by Steele Hansmeier PLLC's Brett Gibbs for plaintiff) (Exhibit E hereto); Compl. for Copyright Infringement Ex. B., *AF Holdings LLC v. Does 1-1058,* Case No. 1:12-cv-00048 p. 33 (D.D.C. filed Jan. 11, 2012) (signature of "Alan Cooper," putative assignee of AF Holdings, LLC, at p. 33; see also

*id.* p. 7 (complaint signed by Duffy) (Exhibit F hereto). In reality, Alan Cooper worked from 2006 to 2012 as a caretaker for property Steele owns in Aitkin County, Minnesota, and since the purported signatures have come to light, he has repeatedly denied any involvement in AF Holdings or Ingenuity 13, claiming that Steele and his colleagues have misappropriated his name in order to defraud others in copyright infringement cases; eventually Mr. Cooper filed suit against Steele, Prenda Law, AF Holdings and Ingenuity 13. *See* Compl., *Cooper v. Steele* (Minn. Dist. Ct. Hennepin Cty. filed Jan. 25, 2013).[2] Courts have thus begun to question the validity of the documents filed in Plaintiff's counsel's cases purporting to bear an "Alan Cooper" signature, including the *Ingenuity 13* Court:

> ... [T]he Court perceives that Plaintiff may have defrauded the Court. ... If it is true that Alan Cooper's identity was misappropriated and the underlying copyright assignments were improperly executed using his identity, then Plaintiff faces a few problems.
>
> First, with an invalid assignment, Plaintiff has no standing in these cases. Second, by bringing these cases, Plaintiff's conduct can be considered vexatious, as these cases were filed for a facially improper purpose. And third, the Court will not idle while Plaintiff defrauds this institution.

Exhibit C p. 9.

Though Steele and Hansmeier have at times tried to disavow having any direct role in Prenda Law, the *Ingenuity 13* Court has since found that they and Duffy had a "pecuniary interest and active, albeit clandestine participation in these cases. … Further, it appears that these persons, and their related entities, may have defrauded the Court through their acts and representations in these cases." Order, *Ingenuity 13 LLC v. John Doe*, No. 12-cv-8333 (C.D. Cal. Mar. 14, 2013). Earlier this week, at an April 2, 2013 hearing on an order to show cause why they should not be sanctioned in *Ingenuity*

---

[2] In typical form, Steele, Duffy and Prenda Law each filed suit against Cooper and his attorney Paul Godfread for defamation. *See* Notice of Removal, *Steele v. Godfread*, No. 13-cv-20744 (S.D. Fla. entered Mar. 1, 2013); Notice of Voluntary Dismissal*, id.* (entered Mar. 6, 2013); Notice of Removal, *Duffy v. Godfread*, No. 13-cv-01569 (N.D. Ill. entered Feb. 28, 2013); Am. Notice of Removal, *Prenda Law, Inc. v. Godfread*, No. 13-cv-00207 (S.D. Ill. entered Mar. 11, 2013). Smith's counsel also represents Cooper and Godfread in the defamation actions.

*13*, Steele, Duffy, and Hansmeier were given an opportunity to rebut the claims of fraud upon the court. All three exercised their Fifth Amendment right against self-incrimination.[3]

In this case, Plaintiff's counsel claimed a pressing need for Rule 26(f) pre-hearing discovery about Internet users not named or served as parties. Such discovery inappropriately sought irrelevant information, in that it was not "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Courts have identified the error in Prenda Law's co-conspirator discovery theory:

> The plaintiffs' contention, in essence, is that identities of the non-parties associated with the IP addresses will be relevant to claims against future defendants who have not yet been sued. By that device, the plaintiffs can avoid all personal jurisdiction and joinder hurdles, and yet obtain the identifying information connected with hundreds of IP addresses located all over the country through a single lawsuit.
>
> To have relevance to the actions currently pending, however, the requested discovery must bear on the civil conspiracy and copyright claims against the current John Doe defendants. In light of the structure of the BitTorrent system, subpoenas seeking the identity of users of non-party IP addresses are not reasonably calculated to lead to the discovery of evidence relevant to the pending claims. BitTorrent users remain anonymous to other BitTorrent users, and have no connection to them beyond the mere fact that they downloaded the same file. It is therefore not a reasonable calculation that the individuals connected to the subpoenaed IP addresses will have any discoverable information related to the current defendants.
>
> … It is thus plain that the plaintiffs are not seeking information about the non-party IP addresses for the purpose of litigating their current claims. Instead, the plaintiffs intend to either sue the individuals whose identity they uncover or, more likely, to negotiate a settlement with those individuals.

*Pac. Century Int'l, Ltd. v. John Does 1-37*, 282 F.R.D. 189, 195 (N.D. Ill. 2012) (footnotes omitted) (Steele and Duffy for plaintiff).

As Smith and the other Defendants pointed out,

---

[3] Though the hearing transcript is not yet available and the Court has yet to issue any post-hearing order, the hearing received extensive media coverage. See, e.g., Kashmir Hill, *Porn Copyright Lawyer John Steele, Who Has Sued More Than 20,000 People, Is Now The One In Legal Trouble*, Forbes (Apr. 2, 2013) (available at http://www.forbes.com/sites/kashmirhill/2013/04/02/trouble-for-porn-copyright-lawyer-john-steele/) (Exhibit G hereto).

… Lightspeed's objective is to learn the identities of as many of its targets as possible before the litigation collapses as baseless, so that Lightspeed can force them to 'acknowledge[] their role' — i.e., enter quick, monetary settlements with Lightspeed — or hope to leverage the same by threatening to 'litigat[e] its claims against' them. … [T]his case is all about Lightspeed learning the identities of a long list of so-called 'co-conspirators' — over most of whom it could not obtain jurisdiction in this Court due to improper joinder and other issues — before its case and complaint are deemed unsustainable.

Doc. 52 p. 5 (quoting Doc. 50 p. 8).

Unless they happen to name a defendant who defaults, Plaintiff's counsel typically avoids taking even the most perfunctory steps to perpetuate cases past the pre-hearing discovery phase. Once they obtain all the non-party contact information a case will bear, they bow out from litigating claims by voluntarily dismissing under Rule 41(a). That Rule has been Plaintiff's counsel's saving grace, protecting them from the many insurmountable jurisdictional, evidentiary, and ethical flaws in their copyright and CFAA cases, letting them duck most substantive scrutiny of the merits of their claims. Plaintiff's counsel's fraudulent house of cards, currently toppling in the *Ingenuity 13* Court in the Central District of California, is just the most notorious manifestation of their malfeasance.

Yet Plaintiff's counsel has often skirted sanctions before. *See, e.g., Hard Drive Prods., Inc. v. Does 1-48*, No. 11-cv-9062, 2012 U.S. Dist. LEXIS 82927, *16 (N.D. Ill. June 14, 2012) (warning Duffy client, "[b]efore naming this defendant in an amended complaint or otherwise moving forward against him, Hard Drive must consider long and hard whether doing so will comport with Rule 11 (b)"); *Sunlust Pictures, LLC v. Does 1-75*, No. 12-cv-1546, 2012 U.S. Dist. LEXIS 121368, *16-17 (N.D. Ill. Aug. 27, 2012) (permitting defendant to proceed anonymously to prevent abusive litigation practices by Duffy client, specifically "the possibility that Sunlust could use inappropriate litigation tactics to 'coerce' a settlement"); *AF Holdings LLC v. John Doe*, Civ. No. 12-cv-01525, 2012 U.S. Dist. LEXIS 104396, *5 (July 25, 2012) (Prenda Law plaintiff's "misrepresentation that the subscriber information records are 'facing imminent destruction' is disingenuous and may run afoul of Rule 11 …"). Most of the ISPs, including Smith's ISP, complied with the Circuit Court subpoenas, handing their subscribers' identifying information over to Plaintiff's counsel. Doc. 9-1 ¶¶ 5-6. Plaintiff's voluntary dismissal leaves it with a lengthy list of names and contact information for

18

Smith and other alleged "co-conspirators," and free reign to badger them toward settlement without judicial oversight. The Court should not allow this case to be another opportunity for Plaintiff's counsel to make a mockery of the courts and laugh all the way to the bank.

**V.       Smith is entitled to an award of attorney's fees.**

Attorney's fees are properly awarded to Smith under 28 U.S.C. § 1927 for the reasons detailed above. An award of fees is required to make Plaintiff bear the unreasonable costs it imposed on Smith. "When an attorney recklessly creates needless costs the other side is entitled to relief*." In re TCI, Ltd*., 769 F.2d 441, 446 (7th Cir. 1985) ("Suits are easy to file and hard to defend. Litigation gives lawyers opportunities to impose on their adversaries costs much greater than they impose on their own clients. The greater the disparity, the more litigation becomes a predatory instrument rather than a method of resolving honest disputes.")

All of Smith's attorney's fees were unreasonably imposed by Plaintiff's actions in this case. A fair estimate of Smith's attorney's fees to date, pursuant to Fed. R. Civ. P. 54(d)(2)(B)(iii), is $70,000. Smith will provide an itemization of those fees if the Court so requires.

<b>CONCLUSION</b>

For the foregoing reasons, Plaintiff respectfully requests that this Motion for Attorney's Fees Pursuant to Fed. R. Civ. P. 54(d) and 28 U.S.C. § 1927 be granted.

Dated: April 5, 2013                                     Respectfully submitted,

 /s/ Jason E. Sweet

Jason E. Sweet (admitted *pro hac vice*)
Email: jsweet@boothsweet.com

 /s/ Dan Booth

Dan Booth (admitted *pro hac vice*)
Email: dbooth@boothsweet.com

BOOTH SWEET LLP
32R Essex Street
Cambridge, MA 02139
Tel.: (617) 250-8602
Fax: (617) 250-8883

*Counsel for Defendant Anthony Smith*

19

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1(b)

I hereby certify that on this 5th day of April, 2013, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record and provide service upon each.


       /s/ Dan Booth
       Dan Booth