J. Blake Mayes (No. 024159)
David V. Telles (No. 024078)
**MAYESTELLES PLLC**
909 West McDowell Road
Phoenix, Arizona 85007-1729
Telephone: 602.714.7900
admin@mayestelles.com
*Attorneys for Defendant World Timbers, Inc.*

**MARICOPA COUNTY SUPERIOR COURT**

**STATE OF ARIZONA**

LIGHTSPEED MEDIA CORPORATION, an Arizona corporation,

Plaintiff,

v.

WORLD TIMBERS, INC., an Arizona corporation, and JOHN DOE,

Defendants.

No. CV2012-053230

**DEFENDANT WORLD TIMBERS, INC.'S MOTION TO DISMISS**

**(Oral Argument Requested)**

Defendant World Timbers, Inc., pursuant to Rules 11 and 12(b)(6), Arizona Rules of Civil Procedure, moves to dismiss Plaintiff Lightspeed Media Corporation's Complaint against it for (i) being unsigned and (ii) for failure to state a claim.

Plaintiff's Complaint is unsigned in violation of Rule 11. Furthermore, Plaintiff cannot prevail on its claims against World Timbers as a matter of law because (i) World Timbers owed Plaintiff no duty as a matter of law, and (ii) the doctrine of *respondeat superior* does not apply to conduct outside the course and scope of employment or not in furtherance of the employer's business.

World Timbers' Motion is supported by the following Memorandum of Points and Authorities.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

Plaintiff, the operator of an "adult entertainment website," Complaint at ¶ 12, is attempting to impose a burden upon companies and others who pay for an Internet

connection. It seeks to impose upon them a duty to prevent anyone, including unknown and "savvy" hackers, from using their Internet connection to illegally access information on any website worldwide. Complaint at ¶ 14. In essence, anyone with an Internet connection must not simply secure their network for their own protection, but make it impenetrable to an extent even Plaintiff -- who has an economic and legal interest in protecting its website's pornographic material -- could not do with its own website. *Id.*

Plaintiff filed its Complaint on May 29, 2012, against Defendant World Timbers – a family owned supplier of lumber and woodworking tools.[1] The other Defendant is an unknown individual referred to as John Doe, whom Plaintiff describes as a "savvy hacker[]" who allegedly intentionally "hacked" into one of Plaintiff's adult entertainment websites -- despite all of Plaintiff's security efforts -- and accessed the content thereon. Complaint at ¶¶ 13-15.

Plaintiff alleges that it retained "Arcadia Data Security Consultants, LLC ("Arcadia") to identify IP addresses associated with hackers that use usernames/hacked passwords and the Internet to access Plaintiff's private website and content." *Id.* at ¶ 18. A quick look at the Arizona Corporation Commission website reveals that both Plaintiff and "Arcadia Data Security Consultants, LLC" are owned and controlled by the same individual operating out of his home in the Arcadia neighborhood here in Phoenix.[2]

---

[1] *Available at* http://www.woodworkerssource.com/history.php. On a motion to dismiss, a court may take judicial notice of information displayed on a party's website, as such information satisfies Rule 201 as not being "subject to reasonable dispute in that it is … capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Arizona Rules of Evidence. *See* Exhibit 1 to Defendant World Timbers, Inc's Request for Judicial Notice ("Request for Judicial Notice"), filed concurrently herewith.

[2] *Available at* http://starpas.azcc.gov/scripts/cgiip.exe/WService=wsbroker1/names-detail.p?name-id=L17113486&type=L.L.C and http://starpas.azcc.gov/scripts/cgiip.exe/WService=wsbroker1/names-detail.p?name-id=12315392&type=CORPORATION. On a motion to dismiss, a court may take judicial notice of matters of public record in accordance with Arizona Rule of Evidence 201 without converting the motion to dismiss to a motion for summary judgment. *See* Request for Judicial Notice, Exh. 2 and 3.

MAYES TELLES PLLC
909 WEST MCDOWELL ROAD
PHOENIX, ARIZONA 85007-1729

Using its purported IP address results, Plaintiff alleges that the unknown individual accessed its website using an IP address allegedly associated with World Timbers' Internet connection. Plaintiff now attempts to hold World Timbers responsible for the alleged acts of this unknown person. The law will not support this. As discussed below, Plaintiff's Complaint should be dismissed for any one of several reasons.

As an initial matter, Plaintiff has failed to satisfy Rule 11, which requires that "[e]very pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated." Ariz. R. Civ. Pro. 11. Despite this basic requirement, the Complaint served upon World Timbers in this case is unsigned. *See* Complaint at 14. Whether an oversight or otherwise, on that basis alone, the Complaint should be dismissed.

Nevertheless, as a matter of law, Plaintiff cannot prevail against World Timbers in this frivolous lawsuit on any theory. While Plaintiff affirmatively sets forth only one claim for relief against World Timbers -- negligence -- it also mentions *respondeat superior* in Paragraph 3 of its Complaint. Out of an abundance of caution, World Timbers addresses both theories in this Motion.

As to negligence, World Timbers owed no conceivable duty to protect Plaintiff or its "adult entertainment website" from the alleged intentional, criminal conduct by an unknown individual.

As to *respondeat superior*, Plaintiff has neither alleged (nor can in good faith allege) the basic elements necessary to hold World Timbers liable for the alleged acts of a purported employee, *to wit*, that s/he was acting in the course and scope of employment and furthering the business of World Timbers. Indeed, Plaintiff admits that it does not even know if the alleged hacker was a World Timbers employee. Complaint at ¶ 59.

Plaintiff's Complaint, therefore, should be dismissed with prejudice as against Defendant World Timbers. And, as no named Defendant will remain, the Court should dismiss the case in its entirety.

. . .

MAYESTELLES PLLC
909 WEST MCDOWELL ROAD
PHOENIX, ARIZONA 85007-1729

## II. FACTS.

As to Defendant John Doe, Plaintiff alleges Computer Fraud and Abuse, Conversion, Unjust Enrichment as a result of "unlawfully accessing Plaintiff's [] website" (Complaint at ¶ 41), and breach of contract. *See generally* Complaint.

As to its undesignated negligence claim against World Timbers, Plaintiff alleges, *inter alia*, that World Timbers "had a duty to properly supervise its agents and/or employees" and, alternatively, "a duty to prevent negligent or tortious conduct by persons, whether or not its agents or employees, upon its premises or with instrumentalities, such as computers, under the control of [World Timbers]." Complaint at ¶¶ 54-55.

Plaintiff does not allege that it has or had any contractual or other relationship with World Timbers or that the alleged "hacking" was somehow related to any such relationship or to World Timbers' business. Nor does Plaintiff allege that the alleged "hacking" is somehow related to any John Doe's purported employment with World Timbers. These issues are relevant to the legal issues of duty discussed below.

As to *respondeat superior*, Plaintiff alleges only the bare legal conclusion that World Timbers "is vicariously liable for the actions of Defendant JOHN DOE pursuant to the doctrine of *respondeat superior*." Complaint at ¶ 3. Plaintiff does not allege that JOHN DOE was acting in the course and scope of his or her purported employment with World Timbers in allegedly hacking Plaintiff's website. Nor does Plaintiff allege that the alleged activities furthered the business of World Timbers. There is good reason for both. It simply does not pass muster to allege that allegedly hacking an "adult entertainment website" to access pornography is within the course and scope of employment at or in furtherance of the business of a lumber and woodworking supply company.

## III. ARGUMENT.

### A. **<u>Plaintiff's Complaint is unsigned and therefore subject to dismissal pursuant to Rule 11</u>.**

Rule 11 provides, in pertinent part, that "[e]very pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the

MAYESTELLES PLLC
909 WEST MCDOWELL ROAD
PHOENIX, ARIZONA 85007-1729

attorney's individual name, whose address shall be stated." Ariz. R. Civ. P. 11. Plaintiff's Complaint here is unsigned (although its Certificate of Compulsory Arbitration is signed). It is therefore subject to dismissal.

**B. Plaintiff fails to state a claim against World Timbers for negligence, *respondeat superior*, or otherwise.**

**1. The standard under Rule 12(b)(6).**

Motions to dismiss are granted where it appears that the plaintiff should be denied relief as a matter of law given the facts alleged. *Logan v. Forever Living Prods. Int'l, Inc.*, 203 Ariz. 191, 193, ¶ 7, 52 P.3d 760, 762 (2002). "When adjudicating a Rule 12(b)(6) motion to dismiss, Arizona courts look only to the pleading itself and consider the well-pled factual allegations contained therein." *Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, 419, ¶ 7, 189 P.3d 344, 346 (2008).

In considering a Rule 12(b)(6) motion, all material allegations of the complaint are taken as true and read in the light most favorable to the plaintiff. However, allegations that represent mere conclusions or unwarranted deductions are not credited. *Aldabbagh v. Arizona Dep't of Liquor Licenses & Control*, 162 Ariz. 415, 417, 783 P.2d 1207, 1209 (Ct. App. 1989) ("When testing a motion to dismiss for failure to state a claim, well-pleaded material allegations of the complaint are taken as admitted, but conclusions of law or unwarranted deductions of fact are not"). In other words, a motion to dismiss for failure to state a claim should be granted if it appears that the plaintiff would not be entitled to relief under any facts susceptible of proof in the statement of the claim. *Dressler v. Morrison*, 212 Ariz. 279, 281, ¶ 11, 130 P.3d 978, 980 (2006).

**2. Plaintiff's *respondeat superior* claim fails as it is a bare and unsupported legal conclusion.**

Two elements are required to hold an employer liable for its employees actions under the doctrine of *respondeat superior*: (i) the existence of an employer-employee relationship (*Lee Moor Contracting Co. v. Blanton*, 49 Ariz. 130, 133, 65 P.2d 35, 36 (1937)); and (ii) the employee's act for which liability is sought must have occurred within the scope and course of employment. *Baker ex rel. Hall Brake Supply, Inc. v. Stewart Title*

MAYESTELLES PLLC
909 WEST MCDOWELL ROAD
PHOENIX, ARIZONA 85007-1729

MAYESTELLES PLLC
909 WEST MCDOWELL ROAD
PHOENIX, ARIZONA 85007-1729

*& Trust of Phoenix, Inc.*, 197 Ariz. 535, 540, ¶ 17, 5 P.3d 249, 254 (App. 2000). Conduct falls within the scope and course of employment if it: (i) is the kind the employee is employed to perform; (ii) occurs within the authorized time and space limits; and (iii) furthers the employer's business. *Id.*

Plaintiff's only allegation as to *respondeat superior* is that World Timbers "is vicariously liable for the actions of Defendant JOHN DOE pursuant to the doctrine of *respondeat superior*." Complaint at ¶ 3. This is the epitome of an unsupported conclusion of law that is not to be credited under the Rule 12(b)(6) standard. *See Aldabbagh*, 162 Ariz. at 417, 783 P.2d at 1209.

Plaintiff fails to allege that the alleged *intentional* conduct giving rise to this action is either (i) the kind the employee is employed to perform, (ii) occurs within the authorized time and space limits, or (iii) furthers World Timbers' business. *See generally* Complaint Of course, Plaintiff, knowing the nature of World Timbers' business, could not credibly or reasonably allege element (i) or (iii).

Similarly, Plaintiff's allegations that the "hacker" was one of World Timbers' "employees" is conclusory and baseless. In fact, courts have rejected and/or placed doubt on the reliability of reverse IP lookup as able to identify the true offender:

> [T]he assumption that the person who pays for Internet access at a given location is the same individual who allegedly downloaded a single sexually explicit film is tenuous, and one that has grown more so over time. An IP address provides only the location at which any one of any number of computer devises may be deployed, much like a telephone number can be used for any number of telephones.
>
> * * *
>
> Unless the wireless router has been appropriately secured (and in some cases, even if it has been secured), neighbors or passersby could access the Internet using the IP address assigned to a particular subscriber and download the plaintiff's film.
>
> * * *
>
> In sum, although the complaints state that IP addresses are assigned to "devices" and thus by discovering the individual

> associated with that IP address will reveal "defendants' true identity," this is unlikely to be the case. Most, if not all, of the IP addresses will actually reflect a wireless router or other networking devise, meaning that while the ISPs will provide the name of its subscriber, the alleged infringer could be the subscriber, a member of his or her family, an employee, invitee, neighbor or interloper.

*In re Bittorrent Adult Film Copyright Infringement Cases*, Nos. 11-3995, 12-1147, 12-1150, 12-1154, 2012 WL 1570765, at *3-5 (E.D.N.Y. May 1, 2012) (and cases cited therein). Plaintiff has failed therefore to allege either that an employer-employee relationship existed or that the "hacker," if an employee, was acting within the scope and course of his employment with World Timbers. As a result, Plaintiff's *respondeat superior* claim is subject to dismissal for failure to state a claim.

MAYESTELLES PLLC
909 WEST MCDOWELL ROAD
PHOENIX, ARIZONA 85007-1729

**3. Plaintiff's negligence claim is subject to dismissal because the alleged harm was unforeseeable, and World Timbers therefore owed no duty to Plaintiff.**

As to its negligence claim against World Timbers, Plaintiff alleges, in the alternative, that (i) John Doe was World Timbers' agent or employee or (ii) World Timbers had a duty to Plaintiff whether or not John Doe was its agent or employee. Complaint at ¶¶ 53-55. Under either analysis, World Timbers owed Plaintiff no duty as a matter of law.

"To establish a claim for negligence, a plaintiff must prove four elements: (1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Gipson v. Kasey*, 214 Ariz. 141, 143 ¶ 9, 150 P.3d 228, 230 (2007). Here, Plaintiff cannot get past the first element -- the existence of a duty of care.

Duty is also an essential element of a negligent supervision claim. *Dawson v. Withycombe*, 216 Ariz. 84, 109, ¶ 83, 163 P.3d 1034, 1059 (Ct. App. 2009) ("A necessary element of any negligence claim is the existence of a duty."). "Whether the defendant owes the plaintiff a duty of care is a threshold issue; absent some duty, an action for negligence cannot be maintained." *Gipson v. Kasey*, 214 Ariz. at 143, ¶ 11, 150 P.3d at

230. The existence of a duty "is not a factual matter; it is a legal matter to be determined *before* the case-specific facts are considered." *Vasquez v. State*, 220 Ariz. 304, 314, ¶ 33, 206 P.3d at 763 (Ct. App. 2008) (internal citations omitted; emphasis in original). In order for a duty to exist, "the relationship of the parties [must be] such that the defendant [i]s under an obligation to use some care to avoid or prevent injury to the plaintiff.'" *Id.*, 220 Ariz.at 312-13, ¶ 28, 206 P.3d at 761-62 (internal citations omitted). No duty exists here.

**a. To suggest that World Timbers owed Plaintiff a duty to prevent its employees from intentionally accessing Plaintiff's website content is to stretch the duty standard too far.**

As one basis for purported negligence liability, Plaintiff alleges that John Doe was World Timbers' agent or employee. Complaint at ¶ 54.

While a duty to a third party may arise in the context of an employer-employee relationship, that duty is not without limits. A number of Arizona cases have addressed the duty of an employer to third parties for the acts of its employees.

For example, in *Riddle v. Arizona Oncology Services, Inc.*, for example, the Arizona Court of Appeals rejected a finding of duty where an employer ordered its employee to leave work because she was intoxicated and the employee subsequently caused an automobile accident and resulting injuries. 186 Ariz. 464, 924 P.2d 468 (1996).

While there are no Arizona cases that address the specific issue of an employer's duty to supervise employee use of the Internet, courts in other states considering the issue have addressed it and concluded that no such duty exists.

For example, in *Delfino v. Agilent Technologies, Inc.*, 145 Cal. App. 4th 790 (2006), a California Court of Appeals held that an employer was not responsible under a negligent supervision/retention theory for anonymous threatening messages sent by an employee to another individual and posted on Internet bulletin boards. The California Court reasoned that because there was no business relationship between the plaintiff and the employer, no notice to the employer that the violations were occurring, and no evidence that the threats were connected to his employment, there was no suggestion of the existence of a duty. *Id.* at 815-16.



MAYESTELLES PLLC
909 WEST MCDOWELL ROAD
PHOENIX, ARIZONA 85007-1729

The *Delfino* court also reasoned that imposing a duty on employers would create an undue burden:

> Additionally, the burden imposed on the employer in this instance would be enormous. It would be a dubious proposition indeed to suggest that a party, simply by virtue of engaging in business, owes a duty to the world for all acts taken by its employees, irrespective of whether those actions were connected with the enterprise in which the business was engaged. And it is not realistic that the type of risk involved here – unknown malicious acts of an employee bearing no relationship to his job achieved by accessing the Internet to make death threats – is readily insurable one. Therefore, we conclude that plaintiffs did not establish here that [the employer] owed a duty.

145 Cal. App. 4th at 816-17 (citations omitted).

The Wisconsin Court of Appeals reached a similar conclusion in a case where an employee improperly used his employer's resources (including computers and Internet) to harm a third party. *Sigler v. Kobinsky*, 314 Wis.2d, 762 N.W.2d 706, 709 (Wis. Ct. App. 2008). The Court concluded that "[b]ecause it was not foreseeable that permitting employees to have unsupervised access to the internet would probably result in harm to some person or some thing, the Siglers have failed to allege facts showing that [the employer] had a duty of care." 762 N.W. at 710.

This Court should reach the same result here. Plaintiff makes no allegations of a business relationship between Plaintiff and World Timbers, no allegations that World Timbers had received prior notice that any employees were using its Internet to access Plaintiffs (or anyone else's) websites without authority, and no allegations that John Doe's hacking into Plaintiff's website were connected to his employment with World Timbers. Accordingly, World Timbers owed no duty to Plaintiff to police its purported employee's Internet usage. As a matter of public policy, the Court should not stretch the bounds of duty to the extent Plaintiff would suggests it reaches.

MAYESTELLES PLLC
909 WEST MCDOWELL ROAD
PHOENIX, ARIZONA 85007-1729

Moreover, the alleged hacking could have happened, if it did, absent the Company's computers and Internet connection. Making its network even more secure would not have guaranteed that the hacking would not have happened using another network. And, even Plaintiffs admit that security systems, including their own, are not infallible and remain subject to hacking. Complaint at ¶¶ 13-14.

**b. To suggest that World Timbers owed Plaintiff a duty to protect it from the acts of unrelated third parties is unsustainable as a matter of law.**

As an alternative basis for a duty, Plaintiff alleges that World Timbers had a duty to Plaintiff to protect Plaintiff, not just from its employees, but also from *any* third party. Complaint at ¶ 55 (asserting a duty "to prevent negligent or tortious conduct by persons, whether or not its agents or employees . . . ."). If a company does not have a duty to police its employees' use of the Internet, it certainly does not have a duty to police third parties over which it has no control.

In Arizona, there is no duty to control the conduct of third parties unless (i) a special relationship exists between the defendant and the third person to control the third person's conduct, or (ii) a special relationship exists between the defendant and the plaintiff that gives the plaintiff a right of protection. *Wertheim v. Pima County*, 211 Ariz. 422, 424-25, ¶ 11, 122 P.3d 1, 3-4 (Ct. App. 2005) (*citing* Restatement (Second) of Torts § 315 (1965)). Accordingly, absent some relationship between World Timbers and John Doe or between World Timbers and Plaintiff giving rise to a duty, Plaintiff's negligence claim fails as a matter of law. *See supra*. The Complaint contains no such allegations. As a result, Plaintiff's negligence claim fails to state a claim for negligence under any of Plaintiff's theories.

**IV. CONCLUSION.**

The Court should dismiss Plaintiff's Complaint in its entirety as to World Timbers for the following reasons:

1. Plaintiff's Complaint is unsigned;

. . .

MAYESTELLES PLLC
909 WEST MCDOWELL ROAD
PHOENIX, ARIZONA 85007-1729

2. Plaintiff's *respondeat superior* claim fails as a matter of law because John Doe's purported conduct was not alleged to be the type of conduct John Doe was employed to perform or in furtherance of World Timbers' business; and

3. Plaintiff has not alleged facts giving rise to an actionable duty on the part of World Timbers.

World Timbers further respectfully requests an award of its attorneys' fees and costs incurred in filing and pursuing this Motion to Dismiss pursuant to, *inter alia*, A.R.S. §§ 12-349, and -341.

RESPECTFULLY SUBMITTED this 3rd day of July, 2012.

**MAYESTELLES PLLC**

By: /s/ J. Blake Mayes
J. Blake Mayes
David V. Telles
Attorneys for Defendant World Timbers, Inc.

ORIGINAL E-FILED this
3rd day of July, 2012

COPY MAILED this 3rd
day of July, 2012, to:

Steven James Goodhue
The Law Offices of Steven James Goodhue
9375 East Shea Blvd., Suite 100
Scottsdale, Arizona 85260
*Attorney for Plaintiff*

/s/ Lupe Lopez

MAYESTELLES PLLC
909 WEST MCDOWELL ROAD
PHOENIX, ARIZONA 85007-1729

J. Blake Mayes (No. 024159)
David V. Telles (No. 024078)
**MAYESTELLES PLLC**
909 West McDowell Road
Phoenix, Arizona 85007-1729
Telephone: 602.714.7900
admin@mayestelles.com
*Attorneys for Defendant World Timbers, Inc.*

**MARICOPA COUNTY SUPERIOR COURT**

**STATE OF ARIZONA**

LIGHTSPEED MEDIA CORPORATION, an Arizona corporation,

Plaintiff,

v.

WORLD TIMBERS, INC., an Arizona corporation, and JOHN DOE,

Defendants.

No. CV2012-053230

**DEFENDANT WORLD TIMBERS, INC.'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF ITS MOTION TO DISMISS**

**(Oral Argument Requested)**

Defendant World Timbers, Inc. ("World Timbers"), pursuant to Rule 201 of the Arizona Rules of Evidence, hereby requests that the Court take judicial notice of the documents attached as Exhibits 1 – 3 hereto for consideration in conjunction with World Timbers' Motion to Dismiss.

On a motion to dismiss, a court may take judicial notice of matters of public record in accordance with Rule 201, Arizona Rules of Evidence, without converting the motion to dismiss to a motion for summary judgment. *Strategic Dev. & Const., Inc. v. 7th & Roosevelt Partners, LLC*, 224 Ariz. 60, 64, 226 P.3d 1046, 1050 (Ct. App. 2010) ("[A] Rule 12(b)(6) motion that presents a document that is a matter of public record need not be treated as a motion for summary judgment."). Similarly, the Court may take judicial notice of information contained on a party's website because it satisfies Rule 201's requirement of not being "subject to reasonable dispute in that it is … capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Ariz. R. Evid. 201(b).

MAYESTELLES PLLC
909 WEST MCDOWELL ROAD
PHOENIX, ARIZONA 85007-1729

Exhibit 1 is an excerpt from World Timbers' website and is offered for the purpose of showing the nature of World Timbers' business.

Exhibit 2 is a public record from the Arizona Corporation Commission's website that shows the ownership, control, and business location of Plaintiff.

Exhibit 3 is a public record from the Arizona Corporation Commission's that shows the common ownership and control between Plaintiff and the company that purportedly identified the IP address at issue, Arcadia Data Security Consultants, LLC.

For the foregoing reasons, World Timbers respectfully requests that the Court take judicial notice of Exhibits 1 and 2 hereto in conjunction with considering and ruling on World Timbers' Motion to Dismiss.

RESPECTFULLY SUBMITTED this 3rd day of July, 2012.

**MAYESTELLES PLLC**

By: /s/ J. Blake Mayes
J. Blake Mayes
David V. Telles
Attorneys for Defendant World Timbers, Inc.

ORIGINAL E-FILED this
3rd day of July, 2012

COPY MAILED this 3rd
day of July, 2012, to:

Steven James Goodhue
The Law Offices of Steven James Goodhue
9375 East Shea Blvd., Suite 100
Scottsdale, Arizona 85260
*Attorney for Plaintiff*

/s/ Lupe Lopez

# EXHIBIT 1




# Company History

## Woodworkers Source

*Woodworkers Source is a family business started by Keith Stephens in 1978. Keith's wife, Betty, and their son, Mark, are also active in the business. The Company has three retail locations and a top notch web site offering the broadest selection of hardwoods in the United States. The retail stores also stock sheet goods, veneers, power and hand tools, and woodworking supplies.*
*Here's the full story as told by Keith.*

### HISTORY

In the late sixties my wife, Betty, and I were just starting our life journey together. I was a CPA with a large international accounting firm and Betty was a Registered Nurse. We enjoyed working hard but were usually broke. Then in 1970 life started to change. You probably know the words ..."I'm pregnant!" With a baby on the way we wanted a house and found one we liked in Scottsdale, AZ.

The house was in fine shape but improvement projects started to come along. I had no experience with home repair or improvement but undertook projects and enjoyed the process. Usually the results were better than satisfactory. My tool inventory started with a Sears radial arm saw and a Black& Decker ¼" drill. Then Betty bought me a Black& Decker router, 1 HP, ¼ " collet, edge guide and carrying case. $39.00 for the package. That router kept going until about 3 years ago when the bearings seized. It was an entry level tool but a bargain that gave me lots of pleasure and experience.







1976 was a repeat performance with another baby and another house. This house had a breakfast area that needed the right table; but we just could not find one to buy. It seemed every table was the wrong size, wrong style, wrong color or wrong something. Then Betty came up with the magic words, "Why don't you build us one?"

### MY FIRST PIECE OF FURNITURE

We searched the books and found a likeable design that I thought I could build. The table came out fine, and as folks visited us they always commented on the table. A little positive feed back and I was hooked on building things. While the table was a fine project it was made using construction lumber. I thought it was time to use better materials.

While I had no idea what hardwood was, I announced my desire to build a hardwood project. Betty and I designed a jewelry box...about 7"x12"x16" with two drawers and a lift up glass top. When I was in the seventh grade, Boys Shop was 6 weeks each of woodworking, metal work and plastics. The woodworking project was a note pad holder, a simple project made from a board about 4x6, beveled edges and 2 posts with a leather strap – all done using hand tools, which must be why it took 6 weeks. I used a hand saw and a hand plane to cut the board, make it smooth and square, and bevel all 4 edges. But before doing any of that we had to make a bill of materials. With this training I sketched the jewelry box and developed a bill of materials. Now off to the lumber yard.

I went to the yard where I usually bought materials and asked for some hardwood. The conversation went like this:

"Sorry, Keith, we do not sell hardwoods."

"Where do I get some?" I asked.

"We do not know" they replied.

Disappointed, I went to another lumber yard and received the same information. I went home baffled. Here I was an aspiring woodworker with a plan and a bill of materials but could not find any hardwood lumber. I continued to ask friends and relatives and ultimately got directed to the local hardwood outlet.

This hardwood dealer was in a particularly seedy part of town and I was a bit uneasy about going there. On the wall were 9 or 12 samples of different woods. I asked the questions most folks are concerned about: *How hard is it? Can I cut and drill it? Will I need to sharpen my blades?* Unfortunately the counter person was not very helpful. His responses to my inquires were short and curt. Finally, based just on the look of it, I selected Ash from the wall of samples and said I would like some. What happened next is etched in my memory for all time. This step in my woodworking education was absolutely shocking. I was directed to a pile of random width, random length, rough lumber. Up to this point in my life every board I had ever seen was S4S dimensioned stock. I grew up in the Arizona desert so I had no real frame of reference for trees or lumber. To the best of my knowledge boards came out of a tree, ready for use, just like I saw them in the other lumber store. After fumbling with a few boards and having no idea what to do I returned to the sales counter and asked for more help.

I pulled out my bill of materials and explained about my jewelry box and the wood I needed. Help was not forthcoming. The counter person held my bill of materials high in the air and pronounced to everyone "Look at this! Look at this! This guy has a list." Embarrassed, shocked and confused I left the lumberyard wondering how I was going to get hardwood to build my jewelry box.
Driving home I passed a cabinet shop and stopped. Fortunately the person I spoke with was quite helpful and I left with some Ash surfaced to ½" and straight edged. The jewelry box was a success – but there were several shop mishaps in the process – and I began a relationship with hardwoods.

### STARTING THE BUSINESS

Several years earlier I abandoned public accounting to start a data processing service company and then developed a chain of early childhood learning centers. In 1978, and for several unrelated reasons, I wanted to start another company. My woodworking knowledge continued to grow and I was a subscriber with the first issue of Fine Woodworking. Woodworking seemed to be gaining in

business opportunity. Then I stumbled onto an ad for a hardwood lumber franchise. Austin Hardwoods had a location in Tucson, AZ and wanted to sell it.

The store needed basic business procedures but it had the most important factor to success —*customers*. Also the manager was a good asset and I could operate the business from Scottsdale as a sideline to my primary business. This seemed like an easy entry into the hardwood lumber business During the first few months I moved the franchise to a better location, expanded the inventory, and installed a marketing program and basic business practices. The business started to grow nicely. In 1980 I opened a second facility in Phoenix and expanded into hand tools. With two facilities more supervision was needed and Betty joined the team to manage inventory.

I was fascinated with imported woods and enjoyed experimenting with them in my projects. One day in a craft store in San Diego, CA I saw a fancy box made from Tulipwood. Red streaks on a cream background. Spectacular! We expanded our inventory of imported woods and I began searching the world for wood for our customers.

In 1984 I sold the early childhood learning centers to Gerber. This provided the capital to move both the Tucson and Phoenix stores to bigger, better facilities and we opened a new facility to test a revised concept for a retail woodworking speciality center. This concept did not succeed. During the next couple of years I had a general manager in charge and I tried to be semi-retired; this did not work for me, or the business, so in 1986 I was back to working full time.

## GROWING THE BUSINESS

Sales continued to grow each year and in a few years we opened another, larger facility in the northwest section of Phoenix about thirty miles from the existing location. In the 80's we were a

dealer for Inca machinery, a high quality brand of Swiss equipment. Unfortunately Inca, due to dollar/franc relationship, withdrew from the USA market. Then in 1996 we became a dealer for JET. Later, JET acquired Powermatic and Today Woodworkers Source is one of the largest JET/Powermatic dealers in the US.

In the mid nineties we placed small ads in several magazines offering hardwood by mail order, and orders started to come in. At first, these were handled by the office staff but over time the volume grew and a full time customer service representative was added and in 1998 our first web site was launched.

Mark, our youngest son, worked part time at Woodworkers nearly all of his life. After graduating from Arizona State University he took over the mail order business and directed its growth. Today mail order sales represent nearly 15% of the company's sales, and the company foresees internet sales as an area of significant growth.

Each of the company's facilities were upgraded again from 2004 to 2006. The northwest Phoenix location moved to a new, larger, and more modern facility that integrated the mail order customer service and fulfillment department. The other Phoenix facility that opened in 1984 was moved to a better location in Tempe, AZ with a new and larger building. We remodeled the Tucson store, expanding it and matching the other facilities as close as possible.

Today, Woodworkers Source serves a growing customer base from 3 top-quality facilities and a state-of-the-art web site. Hardwood lumber is still our core product but we also offer a complete line of woodworking materials, equipment and supplies.

*"Your hardwood samples are a great way to experience woods that you otherwise wouldn't. Thanks!"*

See more...

**Call us! It's toll free:**
**800-423-2450**

*Three stores in Arizona:*
**Hours:** Monday-Saturday 8am-5pm

| 18115 N. Black Canyon Hwy<br>**Phoenix**, AZ 85023<br>602-504-1931 | 645 W. Elliot Rd.<br>**Tempe**, AZ 85284<br>480-355-5090 | 3441 S. Palo Verde<br>**Tucson**, AZ 85713<br>520-745-8301 |
|---|---|---|



All Major Credit Cards Accepted:






Home | Shipping | Info | Resources | Forum | Blog | Privacy Policy
Current Specials | Lumber | Veneer | Turning Stock | Other | Power Equipment | Garage Sale

Copyright ©2008 All Rights Reserved. World Timbers Inc.
WoodworkersSource.com. Exotic Hardwood Lumber and Woodworkers Supplies.

# EXHIBIT 2

Case 3:12-cv-00889-GPM-SCW Document 64-1 Filed 05/01/13 Page 18 of 23 Page ID #2360

**Jump To...**

Annual Reports   Scanned Documents   Microfilm

E-FILE An Annual Report Online << Click Here

FORMS For Annual Reports To Be Printed And Mailed << Click Here

| Corporate Inquiry | |
|---|---|
| **File Number:** -1231539-2 | Check Corporate Status |
| **Corp. Name:** LIGHTSPEED MEDIA CORPORATION | |

## Domestic Address

| 4402 N ARCADIA DR |
|---|
| PHOENIX, AZ 85018 |

## Statutory Agent Information

| **Agent Name:** JODHA SINGH KHALSA |
|---|
| |
| **Agent Mailing/Physical Address:** |
| 3200 N CENTRAL AVE #1150 |
| PHOENIX, AZ 85012 |
| |
| **Agent Status:** APPOINTED 09/21/2005 |
| **Agent Last Updated:** 10/08/2009 |

## Additional Corporate Information

| **Corporation Type:** BUSINESS | **Business Type:** INTERNET WEBSITE CONTENT |
|---|---|
| **Incorporation Date:** 09/21/2005 | **Corporate Life Period:** PERPETUAL |
| **Domicile:** ARIZONA | **County:** MARICOPA |
| **Approval Date:** 09/21/2005 | **Original Publish Date:** 01/11/2006 |

## Officer Information

| STEVE JONES<br>PRESIDENT | |
|---|---|

PHOENIX,AZ 85018
**Date of Taking Office:** 09/21/2006
**Last Updated:** 10/28/2011

## Director Information

STEVE JONES
DIRECTOR
4402 N ARCADIA DR
PHOENIX,AZ 85018
**Date of Taking Office:** 09/21/2006
**Last Updated:** 10/28/2011

## Annual Reports

**Next Annual Report Due:** 09/21/2012

E-FILE An Annual Report Online << Click Here

FORMS For Annual Reports To Be Printed And Mailed << Click Here

| File Year | File Month | Date Received | Reason Returned | Date Returned | Extension |
|---|---|---|---|---|---|
| 2011 | 09 | 10/03/2011 | | | |
| 2010 | 09 | 06/24/2010 | | | |
| 2009 | 09 | 01/13/2010 | | | |
| 2008 | 09 | 08/27/2008 | | | |
| 2007 | 09 | 11/07/2007 | | | |
| 2006 | 09 | 02/21/2007 | | | |

Back To Top

## Scanned Documents

**(Click on gray button to view document - will open in a new window)**

| Document Number | Description | Date Received |
|---|---|---|
| 01315262 | ARTICLES | 09/21/2005 |
| 01445206 | PUB OF ARTICLES | 01/11/2006 |
| 01897928 | 06 ANNUAL REPORT | 02/21/2007 |
| 02214654 | 07 ANNUAL REPORT | 11/07/2007 |
| | | |

# EXHIBIT 3

**Jump To...**

Scanned Documents

| Corporate Inquiry | |
|---|---|
| **File Number: L-1711348-6** | Check Corporate Status |
| **Corp. Name: ARCADIA DATA SECURITY CONSULTANTS, LLC** | |

## Domestic Address

| |
|---|
| 4402 N. ARCADIA DR. |
| PHOENIX, AZ 85018 |

## Statutory Agent Information

| |
|---|
| **Agent Name:** JODHA SINGH KHALSA |
| |
| **Agent Mailing/Physical Address:** |
| 3200 N. CENTRAL AVE. #1150 |
| PHOENIX, AZ 85012 |
| |
| **Agent Status:** APPOINTED 09/30/2011 |
| **Agent Last Updated:** 01/30/2012 |

## Additional Corporate Information

| | |
|---|---|
| **Corporation Type:** DOMESTIC L.L.C. | **Business Type:** |
| **Incorporation Date:** 09/30/2011 | **Corporate Life Period:** PERPETUAL |
| **Domicile:** ARIZONA | **County:** MARICOPA |
| **Approval Date:** 10/18/2011 | **Original Publish Date:** 12/29/2011 |

## Manager/Member Information

| | |
|---|---|
| STEVE JONES<br>MEMBER<br>4402 N. ARCADIA DR.<br>PHOENIX,AZ 85018<br>**Date of Taking Office:** 09/30/2011<br>**Last Updated:** 10/18/2011 | |

## Scanned Documents

(Click on gray button to view document - will open in a new window)

| Document Number | Description | Date Received |
|---|---|---|
| 03621963 | ARTICLES OF ORGANIZATION | 09/30/2011 |
| 03725261 | PUB OF ARTICLES OF ORGANIZATION | 12/29/2011 |

Back To Top

## Comments

| POTENTIAL NAME CONFLICT: N17040780,L17113486 |
|---|

- **Corporate Name Search Instructions**
- **General Web Site Usage Instructions**
- **STARPAS Main Menu**
- **A.C.C. Corporations Division Main Page**
- **Arizona Corporation Commission Home Page**