## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LIGHTSPEED MEDIA CORPORATION, | CASE No. 3:12-CV-00889-GPM-SCW |
| Plaintiff, | |
| | Judge: Hon. G. Patrick Murphy |
| v. | |
| | Magistrate: Hon. Stephen C. Williams |
| ANTHONY SMITH, et al, | |
| Defendants. | |

### PAUL DUFFY'S  MEMORANDUM IN SUPPORT OF MOTION TO VACATE OR, IN THE ALTERNATIVE, FOR RECONSIDERATION OF THE ORDER GRANTING DEFENDANT'S MOTION FOR ATTORNEYS' FEES

### I.   INTRODUCTION

Paul Duffy ("Duffy") hereby moves to vacate or, in the alternative, reconsider the Court's Memorandum and Order (Dkt. 65) granting Defendant Anthony Smith's motion for attorneys' fees. (Dkt 61.)  Duffy respectfully requests the Court to grant this relief because Duffy's conduct was not vexatious and did not multiply the proceedings in this matter. Duffy therefore respectfully requests that the Court vacate its October 30, 2013  Order as it pertains to him in light of the arguments raised herein.

### II.   BACKGROUND

The underlying action has been pending since December 14, 2011, when it was filed in Illinois state court. Duffy did not file or sign the complaint, and his name was not on the pleadings in the case when it was filed.  The Court's docket reflects that Duffy appeared in the case before this Court on or about August 17, 2013.  (Dkt.  #11.)  During pendency of this litigation in this Court, Duffy's involvement in the case in this Court consisted entirely of the

following:  (1) filed the emergency motion seeking the production of information from Internet Service Providers ("ISPs"), which was not directed to Defendant Smith (Dkt. #9); (2) attended, but did not participate in, the emergency motion hearing in August 2012; (3) responded to motions to dismiss brought by ISPs and Smith, which were not ruled upon (Dkt. #39, 40, 44); (4) responded to the motion for sanctions on behalf of the Plaintiff; and (5) dismissed the Complaint in March 2013. (Dkt. #59.)

Most of the actions set forth above related to efforts to get ISPs to produce information relevant to Plaintiff's damages, and (aside from responding to his motions) were not directed to Defendant Smith.  On September 10, 2012, attorney Daniel Booth filed an appearance on behalf of Defendant Anthony Smith. (Dkt.. 32.)   On September 18, 2012, Defendant Smith filed a motion to dismiss Plaintiff's complaint. (Dkt. 36.)  Plaintiff responded (Dkt. 44) and Defendant replied. (Dkt. 51.) Plaintiff voluntary dismissed its complaint on March 21, 2013. (Dkt. 59.) The pending motions to dismiss were dismissed as moot and the case was closed.

On April 5, 2013, Defendant Smith filed a motion seeking his attorneys' fees against attorneys John Steele, Paul Duffy and Paul Hansmeier under 28 U.S.C. § 1927.

III.    **ARGUMENT**

A.    **The Court Should Reconsider Its Order**

A motion for reconsideration, although not authorized by civil or criminal rules, is a creature of pragmatism. *See Stanley v. Posner*, 2009 WL 3230320, at *1 (S.D. Ill. Oct. 5, 2009). Typically arising in civil cases, a motion to reconsider serves the limited function of correcting errors of law or fact or presenting newly discovered evidence. *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269-70 (7th Cir. 1990) (citation omitted). That said, motions   for   reconsideration   serve   a   valuable   function   where   the   court   "has   patently

2

misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Id.* (citation omitted) (internal quotation marks omitted). With total respect to the Court, reconsideration is appropriate here because undersigned counsel's conduct in this case did not give rise to Defendant Smith's motion to recover costs attorney fees.  Under 28 U.S.C. § 1927, "an attorney who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *Kotsilieris v. Chalmers*, 966 F.2d 1181, 1183 (7th Cir. 1992). The two key elements in determining whether an attorney will be sanctioned under Section 1927 are: (1) whether that attorney multiplied the proceedings; and (2) whether he did so in an unreasonable or vexatious fashion. *Overnight Transp. Co. v. Chicago Indus. Tire Co.*, 697 F.2d 789, 794 (7th Cir. 1983).

### a.     Multiplication of Proceedings

There is no evidence in the record that Duffy took any action that multiplied the proceedings. As set forth above, Duffy did not file this lawsuit, and only undertook the five (5) discrete actions set forth above.  None of these actions multiplied the proceedings.

*First,* regarding the emergency hearing, while Duffy signed the motion for an emergency hearing, he did not argue the motion at the hearing or otherwise do anything other than attend the hearing.  While the Court has indicated that it believes the motion should have been brought on an emergency basis, as set forth below, Plaintiff did so because the ISPs had agreed to only preserve relevant evidence until the Illinois Supreme Court ruled on their motion for a supervisory order; when the Supreme Court granted that order, there was no longer any agreement on the part of ISPs to preserve relevant information and it was possibly subject to

immediate destruction.  Furthermore, Plaintiff stated facts that strongly supported the need to move on an emergency basis.

In addition, he emergency hearing occurred prior to the date on which Defendant's attorneys filed appearances in this case and Defendant Smith did not file an opposition to the motion or participate in the emergency hearing.  Therefore, nothing about Duffy's participation in the emergency hearing multiplied the proceedings; Plaintiff would have brought the same motion on a non-emergency basis if he did not believe that relevant evidence was subject to destruction, and if the harm to his business had not multiplied exponentially during the course of this litigation.  Defendant did not attend the emergency motion hearing, and his counsel had not yet appeared when it was held.

*Second,* responding to the ISPs' and Smith's motions to dismiss did not multiply the proceedings.  As set forth in Plaintiff's responses to them, each claim that Plaintiff alleged was firmly grounded factually and legally.  Indeed, the Circuit Court for St. Clair County found that Plaintiff had adequately alleged claims for relief when it granted Plaintiff's motion to conduct discovery to identify those individuals that Plaintiff alleged conspired with Defendant Smith to harm Plaintiff and its business.

Duffy did not participate in the Rule 26(f) scheduling conference, or in any pleadings relating to the ISPs' motion to stay discovery pending a ruling on their motion to dismiss.  And opposing Defendant Smith's motion for an award of attorney fees did not multiply the proceedings; Plaintiff alleged valid arguments in opposition to it.

Taken as a whole, none of Duffy's actions multiplied the proceedings. There is nothing in the record to suggest otherwise. Indeed, Defendant makes no valid allegations that Duffy, himself, multiplied the proceeding or engaged in the alleged "bullying" that Defendant alleges

occurred.  Finally, liability under Section 1927 is direct, not vicarious. *See FM Indus., Inc. v. Citicorp Credit Servs.*, 614 F.3d 335, 341 (7th Cir. 2010). Thus, Duffy can only be held accountable for his actions, not those of others.

**b.      Unreasonable And Vexatious.**

There is no evidence or allegation in the record that the actions Duffy took were unreasonable or vexatious.

*First*, regarding Duffy's filing the emergency motion, Plaintiff reasonably believed that there was an imminent and substantial threat of harm to Plaintiff's business unless he could identify and sue those who were hacking into its computers.  As set forth above, while the ISPs agreed to preserve names of those alleged to have conspired with Defendant Smith in connection with the claims at issue, they committed to do so only until the Illinois Supreme Court ruled on their motion for a supervisory order.  When the Supreme Court granted their motion and quashed subpoenas that the Trial Court had authorized Plaintiff to serve, there was no longer an agreement to avoid destroying subscriber information and Plaintiff had to act on an emergency basis in order to prevent the destruction of the only information available to determine the identities of, those who were identified by IP address a s co-conspirators in the Complaint, and thus to stop them from hacking.  (*See* Dkt. #9, the Emergency Motion).  Furthermore, the U.S. District Court for the District of Columbia had, at the time, just issued a ruling in which it held that objections such as those raised here by the ISPs in this case  to the production of information were not a valid basis to withhold identifying information about the ISPs' customers.  (*Id.*; Dkt. #9-2.)

Furthermore, Plaintiff supported its request for emergency relief with a declaration by its principal, Steve Jones.  (A true and accurate copy of the declaration ("Jones Decl.")  is attached

5

at *"Exhibit "A"* hereto and made a part hereof.)  In it, Jones provided several valid reasons for seeking relief on an emergency basis.  Among other things, Jones stated that it was being subjected to concerted and sustained hacking activities as a direct consequence of this litigation. He stated that in the two months preceding the Emergency Motion, Plaintiff's "websites [were] targeted by 9,955 unique hackers worldwide.  These hackers have attempted to breach [Plaintiff's] systems 78,298 times."  Jones Decl. at ¶7.  He stated that computer hackers "have permanently destroyed [Plaintiff's] computer systems"; "committed identity theft against" Plaintiff and its counsel; "committed bank fraud against my family" and "even attempted to incite fellow hackers to murder me."  Jones Decl. at ¶8.  Furthermore, Jones stated that the Defendant ISPs "maintain subscriber information for only a specific period of time.  Each day that passes reduces [Plaintiff's] ability to prove its case against the hackers…"  *Id.* at ¶9.

Jones was in attendance and was introduced at the hearing on the emergency motion, and was prepared to testify as to the matters set forth in his declaration.  He was not called to testify at the hearing.  While the Court denied the emergency motion, Plaintiff nonetheless had a good faith basis to request emergency relief.  The only way Plaintiff knew to stop the massive hacking against it was to learn the identities of, and bring legal action against, the hackers.  Indeed, the risk to Plaintiff's very existence increased with each day that it was unable to seek legal remedies against those who were engaged in massive hacking against its computer systems, a matter borne out by the fact that, after the Court denied the emergency motion, Jones announced publicly that he was trying to sell his ownership of Plaintiff and leave the business.

None of  Duffy's individual actions were unreasonable or vexatious. There is nothing in the record to suggest otherwise.  Indeed, Defendant does not point to specific conduct that Duffy personally took that was unreasonable or vexatious. Because liability under Section 1927 is

direct, not vicarious, Duffy can only be held accountable for his actions, not those of others. *See FM Indus., Inc.* 614 F.3d at 341 (7th Cir. 2010).

It bears mentioning that the "bullying pretense" referenced in the Court's order,  which Duffy understands, based upon Defendant Smith's motion, relates to actions occurring at or before the time of the filing of the complaint, precedes his involvement in this case.  Duffy submits that Plaintiff had a good faith basis to file the emergency motion on the ground that it was necessary to address an exigent threat to the Plaintiff's livelihood. He further submits that Plaintiff's complaint was filed in a good-faith attempt to seek relief from serious hacking threats.

### c.      Excess Costs, Expenses, and Attorneys' Fees

An attorney who violates 28 U.S.C. § 1927 is not responsible for paying the entire costs of the litigation, but only the "excess" costs, expenses and fees arising directly from any such violation. Even if any of Duffy's actions violated Section 1927—and they did not—the Court would be left to determine what excess costs, expenses and attorneys' fees are directly traceable to any such violation. The Defendant fails to identify any such excess expenses.

Regarding the emergency hearing, it was directed solely to the ISPs, and not to Defendant Smith.  Neither Defendant nor his attorney participated in the hearing. Indeed, Defendant's attorney had not even appeared in the case at that time it occurred. Accordingly, Defendant cannot have inured any excess costs, expenses or fees as a result of the emergency hearing. And with respect to the opposition to Defendant Smith's motion to dismiss, Plaintiff believes that it was well founded in fact and law, and alleged valid claims against Defendant.  Indeed, the Circuit Court of St. Clair County implicitly found that Plaintiff properly alleged valid claims when it authorized it to subpoena the ISPs to determine the identities of Defendant Smith's

coconspirators.  And Plaintiff's arguments in opposition to Defendant's motion for sanctions was also well-grounded in fact and existing law.

Furthermore, Defendant Smith's suggestion that a "fair estimate" of his fees is $70,000 is not even superficially plausible.  Defendants' counsels' sole meaningful act in connection with this litigation was to file a motion to dismiss and a reply memorandum. The notion that Defendant incurred $70,000 in connection with his motion to dismiss far exceeds all bounds of reasonableness. To put this number in context, Defendant's counsel would have had to spend 29-days straight (billing eight hours a day) to approach this figure. Yet, Defendant filed his motion to dismiss only eight days after his counsel first appeared. (*Compare* Dkt. 30 *with* Dkt. 36.) Further, Defendant's motion to dismiss was filed after the ISPs' motions to dismiss, and ostensibly borrowed heavily from the reasoning and research contained therein.[1]

## IV.    CONCLUSION

For the foregoing reasons, Duffy respectfully requests that the Court vacate the sanctions order as to Duffy.  If the Court declines to do so, it should, at the very least, determine whether sanctions were warranted in light of the information and arguments raised herein. The fact that the Defendant has not pointed to a specific act that Duffy took that actually multiplied the litigation (unreasonably, vexatiously or otherwise), and the fact that the emergency motion was not directed at Defendant Smith,  warrants the Court's reconsideration of sanctions as to him.

Respectfully Submitted

DATED: November 7, 2013

By:    /s/ Paul A. Duffy
Paul Duffy (IL Bar No. 6210496)
2 N. LaSalle Street, 13th Floor
Chicago, IL 60602
312-952-6136

---

[1] Assuming an hourly billing rate of $300 per hour.

**<u>Certificate of Service</u>**

I hereby certify that on this November 7, 2013, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

<u>/s/ Paul A. Duffy</u>