IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| LIGHTSPEED MEDIA CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:12-cv-00889-GPM-SCW |
| | ) | |
| v. | ) | **DEFENDANT ANTHONY** |
| | ) | **SMITH'S ITEMIZATION** |
| ANTHONY SMITH, SBC INTERNET SERVICES, | ) | **OF ATTORNEY'S FEES** |
| INC., d/b/a AT&T INTERNET SERVICES; AT&T | ) | |
| CORPORATE REPRESENTATIVE #1; COMCAST | ) | |
| CABLE COMMUNICATIONS, LLC, and | ) | |
| COMCAST CORPORATE REPRESENTATIVE #1, | ) | |
| | ) | |
| Defendants. | ) | |

Defendant Anthony Smith ("Smith") respectfully submits this Itemization of Attorney's Fees. On October 30, 2013, the Court granted Smith's Motion for Attorney's Fees Pursuant to Fed. R. Civ. P. 54(d)(2) and 28 U.S.C. § 1927 (ECF No. 61; "Motion") and ordered Smith to file an itemization of fees on or before November 8, 2013 (ECF No. 65; "Order"). Smith submits the itemization and supporting exhibits and affidavits as attachments hereto: twelve pages of time entries and costs from August 2012 through May 2013 (Exhibit A),[1] charts from the AIPLA Economic Survey 2013 showing average attorney fees for intellectual property law partners and associates (Exhibits B and C), a recent order supporting the attorney's fees rate (Exhibit D), and affidavits of two partners at Booth Sweet LLP, the firm that represents Smith (Exhibits E and F).

**I.      It Is Proper for the Court to Award Smith the Full Amount of His Attorney's Fees.**

The Court may award to a party the "excess costs, expenses, and attorney's fees reasonably incurred" as a result of an opposing attorney's sanctionable conduct. 28 U.S.C. §

---

[1] The entries recorded for certain billable events have been abbreviated to avoid disclosing the substance or content of any privileged communications (i.e., "Confer: with Smith").

1

1927. Smith requests an award of all of his attorney's fees, costs and expenses. "Plaintiff's counsel had no valid claims to stand behind, and actually prosecuted nothing beyond its failed attempt to resuscitate the discovery denied by the Illinois Supreme Court. Its decision to hale Smith into the action as a pretext for pursuing non-parties warrants sanctions." Motion p. 14. "All of Smith's attorney's fees were unreasonably imposed by Plaintiff's actions in this case." *Id.* p. 19. Plaintiff Lightspeed Media Corporation ("LMC") and its counsel, specifically attorneys John Steele, Paul Hansmeier, and Paul Duffy, pursued an adversary proceeding baseless from its inception, as further detailed in the Motion, Smith's reply to LMC's opposition to the motion (ECF No. 51), the Order, and Smith's response in opposition to LMC's attorneys' motions to vacate the Order (ECF No. 81). Smith incurred nothing but "excess costs, expenses, and attorney's fees," and seeks an award of the same. It is proper for the Court to order that LMC's attorneys must make Smith whole. *See Overnite Transp. Co. v. Chicago Indus. Tire Co.*, 697 F.2d 789, 794 (7th Cir. 1983) (under Section 1927 a court may award all fees, costs, and expenses against an attorney who files an action he knew or should have known was baseless); *Claiborne v. Wisdom*, 414 F.3d 715, 721 (7th Cir. 2005) (affirming $107,845.77 award, "the full amount of the defendants' attorney's fees under § 1927"); *Walter v. Fiorenzo,* 840 F.2d 427, 435-36 (7th Cir. 1988) (upholding award of all fees, costs, and expenses incurred in defending a baseless claim). *See also* Gregory P. Joseph, *Sanctions: The Federal Law of Litigation Abuse* § 24(B) at 3-46 to 47 (4th ed. 2008); Georgene M. Vairo, *Rule 11 Sanctions: Case Law, Perspectives, and Preventive Measures* 762 (3d ed. 2003).

**II.     The Court Should Use the Lodestar Method to Assess the Fees Reasonably Incurred.**

At the same time, Section 1927 permits an award only of those fees, costs, and expenses "reasonably incurred." 28 U.S.C. § 1927. Case law is sparse in this circuit and others on how fees, costs, and expenses "reasonably incurred" are to be calculated, but the Seventh Circuit has instructed: "In calculating attorney's fees [under Section 1927] a district court should determine the reasonable number of hours expended and the reasonably hourly rate for such expenditures." *Kotsilieris v. Chalmers,* 966 F.2d 1181, 1187 (7th Cir. 1992). Without using the term, the instruction in *Kotsilieris* describes what is known as the "lodestar" method, which many district courts have employed in determining the fees "reasonably incurred" under Section 1927. See, e.g., *Tillman v. New Line Cinema Corp.,* No. 05-cv-910, 2008 U.S. Dist. LEXIS 105200, *8 (N.D. Ill. Dec. 31, 2008), *aff'd,* 374 Fed App'x 664 (7th Cir. 2010).[2]

Under the lodestar method, as *Kotsilieris* suggests, attorney's fees are calculated as "the hours reasonably expended multiplied by the reasonable hourly rate." *Johnson v. GDF, Inc.,* 668 F.3d 927, 929 (7th Cir. 2012); *see also Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). The lodestar approach forms the "centerpiece" of attorney's fee determinations. *Pickett v. Sheridan Health Care Ctr.,* 664 F.3d 632, 639 (7th Cir. 2011) (internal citation omitted); *accord Gastineau v. Wright,* 592 F.3d 747, 748 (7th Cir. 2010) (calling the lodestar method "the touchstone for a district court's calculation of attorney's fees"). It yields a presumptively reasonable fee, and the presumption is a strong one. *Perdue v. Kenny A. ex reI. Winn,* 559 U.S. 542, 552 (2010); accord *Pickett*, 664 F.3d at 639. Therefore, to determine the compensable fees, costs, and expenses that

---

[2] *See also Rhein v. McCoy*, No. 09-cv-02368, 2011 U.S. Dist. LEXIS 106206, *18-21 (D. Colo. Sept. 16, 2011); *Squires Golf Club v. Bank of America,* No. 10-cv-6734, 2011 U.S. Dist. LEXIS 3764, *10 (E.D. Pa. Mar. 22, 2011); *Stanich v. Hissong Group, Inc.,* No. 09-cv-0143, 2010 U.S. Dist. LEXIS 98709, *9-10 (S.D. Ohio Sept. 20, 2010); *Larin Corp. v. Alltrade, Inc.,* No. 06-cv-1394, 2008 U.S. Dist. LEXIS 65193, *8-18 (C.D. Cal. July 11, 2008).

3

Smith reasonably incurred for purposes of Section 1927, there are "three determinations required to set that figure: (1) the number of hours reasonably expended by … counsel, (2) the reasonable hourly rate for those services, and (3) costs." *Johnson*, 668 F.3d at 931.

A. **The Hours Expended by Smith's Attorneys in His Defense Are Reasonable.**

Smith's attorneys expended a reasonable amount of hours in his defense over the course of a year in the adversary proceeding. Smith's attorneys spent a total of about 187 hours from August 2012 through May 2013 on the adversary proceeding—excluding the hours spent on the sanctions matter after the Order, and excluding the hours spent on this memorandum and itemization of fees. Smith's attorneys made every effort to avoid duplicating each others' work and to minimize the cost of the representation to Smith, as their time records reflect.

The lodestar method entitles the petitioning party to compensation only for attorney time "reasonably expended." *Hensley,* 461 U.S. at 433; *Johnson,* 668 F.3d at 931. Time spent unreasonably cannot be compensated. *People Who Care v. Rockford Dep't of Ed.,* 90 F.3d 1307, 1314 (7th Cir. 1996). In particular, time that is "excessive, redundant, or otherwise unnecessary" will be disallowed, *Hensley,* 461 U.S. at 434*; Johnson,* 668 F.3d at 931, as will time spent on unrelated matters, *Gautreaux v. Chicago Housing Auth.,* 491 F.3d 649, 661 (7th Cir. 2007), or time resulting from overstaffing of the case, *Schlacher v. Law Offices of Phillip J Rotche & Assocs., P.C.,* 574 F.3d 852, 858 (7th Cir. 2009). The party seeking fees has the burden of proving the reasonableness of the hours worked by submitting evidence supporting those hours. *Hensley,* 461 U.S. at 433; *Spegon v. Catholic Bishop of Chicago,* 175 F.3d 544, 553 (7th Cir. 1999). The fee award may be reduced if the documentation is inadequate. *Hensley,* 461 U.S. at 433.

**B. Smith's Attorney's Fees Are Market Rate and Are Presumptively Reasonable.**

The reasonable hourly rate is "derived from the market rate for the services rendered." *Johnson,* 668 F.3d at 933; *Pickett,* 664 F.3d at 640. The market rate is "the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the kind of work in question." *Stark v. PPM Am., Inc.,* 354 F.3d 666, 674 (7th Cir. 2004). But "[t]he best evidence of an attorney's market rate, however, is his or her actual billing rate for similar work." *Johnson*, 668 F.3d at 927 (citing *Pickett,* 664 F.3d at 640); *see also Mathur v. Bd. of Trustees of S. Ill. Univ.*, 317 F.3d 738, 743 (7th Cir. 2003) ("the attorney's actual billing rate for comparable work is presumptively appropriate to use as the market rate") (internal quotation omitted).

The burden of proving the market rate is on the party seeking fees. *Gautreaux,* 491 F.3d at 659; *Stark,* 354 F.3d at 674. Once that party establishes the market rate, the burden shifts to the opposing party to demonstrate why a lower rate should be awarded. *Gautreaux,* 491 F.3d 649 at 659-60; *Stark,* 354 F.3d at 675. Any reduction requires evidence showing "'a good reason why a lower rate is essential.'" *Pickett,* 664 F.3d at 640 (quoting *People Who Care,* 90 F.3d at 1313).

Smith meets his burden. Smith submitted affidavits from his lead trial counsel, Jason E. Sweet and Daniel G. Booth, listing the hourly rates charged by the two partners and the associate from their firm, Booth Sweet LLP, who worked on this adversary proceeding. Exhibit A hereto. These rates were the normal hourly rates of the attorneys and were the rates charged to Smith in connection with the adversary proceeding. *See Stark,* 354 F.3d at 675 (affirming determination that hourly rates were reasonable based on affidavits attesting to hourly rates and payment of the fees at those rates). "[L]awyers who fetch above average rates are presumptively entitled to them, rather than to some rate devised by the court." *Id.* at 1150; *see also Mathur,* 317 F.3d at

5

743-44 (noting that an hourly rate cannot be adjusted downward "just because the proffered rate is higher than the local rate"); *Top Tobacco, L.P. v. N. Atl. Operating Co.,* Case No. 06-cv-950, 2007 U.S. Dist. LEXIS 66614, *6 (N.D. Ill. Sept. 6, 2007) (rejecting argument that the petitioning attorneys' rates were high for the market and higher than the rates of the opposing party's attorneys). "Lawyers do not come from cookie cutters"; some are able to command a higher price than others. *Gusman v. Unisys Corp.,* 986 F.2d 1146, 1150 (7th Cir. 1993).

These rates were also a relative bargain. The partners at Booth Sweet LLP charged $409 per hour. Ex. A p. 2. A recent survey conducted by the Law Practice Management Committee of the American Intellectual Property Law Association ("AIPLA") of billing rates for attorneys specializing in intellectual property shows that rate to be below average. Intellectual property partners at private law firms nationwide charge $469 per hour in 2012, on average, with $425 per hour the median rate of those surveyed. Ex. B p. 2 (AIPLA Economic Survey 2013 I-34). In Chicago, partners charged an average of $497 per hour in 2012, and a median of $475 per hour. *Id.* In the Boston metropolitan area, where Booth Sweet LLP is based, the survey respondents charged an average of $627 per hour in 2012, and a median of $650 per hour. *Id.*

Likewise, Booth Sweet LLP billed its associate at a rate of $200 per hour. Ex. A p. 2. According to the AIPLA Economic Survey, on average, intellectual property associates are billed at $339 per hour nationwide, $365 per hour in the Chicago area, and $407 per hour in the Boston area. Ex. C p. 2 (AIPLA Economic Survey 2013 I-48).

The hourly billing rates submitted are not just presumptively reasonable as the actual rates charged; their reasonableness is evidenced by the significantly higher rates charged by comparable attorneys. *See generally Triune Star, Inc. v. Walt Disney Co.*, 2009 U.S. Dist. LEXIS

34034, *8 (N.D. Ill. Apr. 23, 2009) (AIPLA survey "confirms the reasonableness of the rates charged" by defendant attorneys); *id.* at *9 (denying request to reduce hourly rates "somewhat higher" than those demonstrated by the AIPLA survey). They have also been recently validated in another court proceeding, *AF Holdings, LLC v. Chowdhury*, Civ. A. No. 12-cv-12105 (D. Mass.), in which the court accepted attorney Jason Sweet's $409.00 per hour rate as the basis for an attorney's fees award, trebled and imposed as damages against the defaulting plaintiff. Ex. D (Memorandum of Law in Support of Default Judgment, Affidavit of Jason Sweet and Final Judgment Jointly and Severally Against Plaintiff And Its Aliases[3]).

Because Smith meets his burden, LMC's attorneys must now supply "a good reason" to apply lower rates, if they have one. *Pickett,* 664 F.3d at 640 (internal quotation omitted). They have not done so. Instead, they have offered faulty assumptions, unsupported opinions, and idle speculation about Booth Sweet LLP's billing rate. ECF No. 67 pp. 7-8; ECF No. 69 p. 8; ECF No. 75 p. 8. The evidence shows that the regular hourly rates charged by Smith's attorneys are the relevant market rates and are reasonable for purposes of calculating fees under Section 1927.

C.   **No Adjustment to the Lodestar Amount Is Appropriate.**

No adjustment is necessary to the lodestar amount, which represents reasonable hours worked at presumptively reasonable rates. Nor should any adjustment be made, if any could be.

Under other fee-shifting statutes, "once calculated, the lodestar amount may be adjusted." *Johnson,* 668 F.3d at 929. Typically, the adjustment involves increasing (or "enhancing") the lodestar. *See Perdue,* 559 U.S. at 552. But Section 1927 only permits an award of a party's "excess costs," making an enhancement impossible. "A district court may not sanction an

---

[3] The defaulting plaintiff been represented, before the default, by local counsel for Prenda Law, Inc. (the same firm whose attorneys represent LMC in this Court), and judgment was entered jointly and severally against AF Holdings, LLC and its aliases Prenda Law, Inc., John Steele, Paul Duffy, Paul Hansmeier, and Mark Lutz. Ex. C.

attorney for *more* than the excess costs, expenses and fees incurred by the opposing party." *Haynes v. City & County of San Francisco,* 688 F.3d 984, 987 (9th Cir. 2012) (emphasis in original)). Enhancements are in any event awarded only in "rare" and "exceptional" circumstances, *Perdue,* 559 U.S. at 552 (internal quotation omitted). There are no exceptional circumstances here (beyond those, noted elsewhere, that warrant compensation in full for Smith through the imposition of sanctions) and Smith is not seeking an enhancement.

By the same token, no reduction of the lodestar is possible. The Seventh Circuit has distinguished Section 1927 from Rule 11, characterizing Section 1927 as "a real fee shifting law" and a violation of it as "a form of intentional tort." *Shales v. General Chauffeurs, Sales Drivers and Helpers Local Union No. 330*, 557 F.3d 746, 749 (7th Cir. 2009). As with damages awarded for an intentional tort, sanctions under Section 1927 "depend on the victim's loss." *Id.* Therefore, the Seventh Circuit held, the attorney's ability to pay has no effect on the appropriate award. *Id.*; *see also Hamilton v. Boise Cascade Express*, 519 F.3d 1197, 1205-06 (10th Cir. 2008). The *Shales* reasoning strongly suggests that, because the lodestar amount represents compensation for the applicant's loss, the amount should not be reduced based on the kinds of "equitable factors" some authorities cite. *See* Gregory P. Joseph, *supra,* § 24(D) at 3-48 to 49; *Evans v. City of Evanston*, 941 F.2d 473, 477 (7th Cir. 1991) (criticizing fee awards "figured to the last penny"; there is "no precise rule or formula," and any method "not arbitrary [and] likely to arrive at a fair fee" will be sustained). In any event, LMC's attorneys have offered only *ad hominem* argument for a reduction, which is insufficient. No adjustment is necessary or appropriate.

### III. The Amount of Sanctions Sought Is Reasonable in the Circumstances of this Case.

In light of the nature of the case, the work performed, and the outcome obtained, the requested sanction of $72,367.00 is more than proper. The hours and hourly rate are eminently reasonable for the year-long defense of an action in which millions were at stake. See ECF No. 14 pp. 16-17 (argument, successful in the state court action prior to removal, that LMC sought discovery "only for the purposes of coercing millions of dollars in settlement payments and not for the purpose of prosecuting this lawsuit"). LMC wanted discovery of identifying information of more than 6,600 Internet subscribers. *Id.* LMC's lawyers typically use that information to seek settlements of about $4,000 apiece. *See* ECF No. 81-4 p. 4. Smith maintained his innocence at all times, declaring, "I am, and always have been, innocent of these allegations." ECF No. 61-1 ¶ 11; *see also* ECF No. 37 p. 1; ECF No. 61 p. 5. He did not submit to settlement or serve LMC's lawyers as a straw defendant (see ECF No. 61 p. 15); instead he stood up on behalf of himself and other innocents who he helped spare from "plunder" at the hands of LMC's lawyers. ECF No. 81-4 p. 2. This required extensive litigation practice:

> Smith did more than move to dismiss and reply to Plaintiff's opposition thereto. He was also active in, among other things, conferences with co-counsel and opposing counsel; the parties' joint report and proposed scheduling order; two scheduling and discovery conferences (see ECF No. 49); and two filings regarding discovery (ECF Nos. 47 & 52). ... Smith had to become versed in the suit's tortured history in state and federal court to address the faulty claims against him, and had to fight for a stay of the premature discovery Plaintiff pursued even though it stood to be mooted by defendants' motions to dismiss.

ECF No. 64 p. 2.

The allegations themselves required extensive analysis and review to properly challenge. By actively defending the claim, Smith obtained the eventual voluntary dismissal; unless LMC files suit against him again this month, the two-year statute of limitations will expire on its

Computer Fraud and Abuse Act claim, freeing him at last from any threat LMC and its lawyers once posed. "The standard is whether the fees are reasonable in relation to the difficulty, stakes, and outcome of the case." *Gastineau,* 592 F.3d at 748 (internal quotation omitted). By that standard, the fees are more than reasonable.

The only unreasonable aspect of the fees is that, to date, they have been unreasonably imposed on the wrong party. Plaintiff's attorneys created Smith's costs by filing and prosecuting a baseless adversary proceeding; they should bear them. *See Riddle & Associates, P. C. v. Kelly,* 414 F.3d 832, 835 (7th Cir. 2005) (noting one purpose of section 1927 is "to ensure that those who create unnecessary costs also bear them" (internal quotation omitted).

Dated: November 8, 2013                    Respectfully,

           /s/ Dan Booth
Dan Booth (admitted *pro hac vice*)
Email: dbooth@boothsweet.com

           /s/ Jason Sweet
Jason E. Sweet (admitted *pro hac vice*)
Email: jsweet@boothsweet.com

BOOTH SWEET LLP
32R Essex Street
Cambridge, MA 02139
Tel.: (617) 250-8602
Fax: (617) 250-8883

*Counsel for Defendant Anthony Smith*

**CERTIFICATION PURSUANT TO LOCAL RULE 7.1(b)**

I hereby certify that on this 8th day of November, 2013, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record and provide service upon each; it is now assumed such service shall also be made thereby to John Steele and Paul Hansmeier in light of their recent motions, and I shall also serve the foregoing upon John Steele and Paul Hansmeier by mail.

       /s/ Dan Booth  
       Dan Booth