UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LIGHTSPEED MEDIA CORPORATION, | CASE No. 3:12-CV-00889-GPM-SCW |
| Plaintiff, | |
| v. | Judge: Hon. G. Patrick Murphy |
| ANTHONY SMITH, et al, | Magistrate: Hon. Stephen C. Williams |
| Defendants. | |

**MEMORANDUM OF LAW IN OPPOSITION TO
COMCAST'S MOTION FOR ATTORNEYS' FEES**

John Steele respectfully opposes Defendant Comcast's Motion for Attorneys' Fees. (ECF No. 82.) Comcast's motion does not identify a single act of Steele's that unreasonably and vexatiously multiplied these proceedings. In fact, Comcast relies on a cherry-picked order from one federal judge in another state where the parties, attorneys of record, claims, counterclaims, legal issues, and contested facts were completely different then this case.  The Seventh Circuit precedent regarding sanctions pursuant to § 1927 sanctions is crystal clear: a lawyer is responsible for his actions, but not those of others. *FM Indus., Inc. v. Citicorp Credit Servs.*, 614 F.3d 335, 341 (7th Cir. 2010) ("Liability under § 1927 is direct, not vicarious"); *Claiborne v. Wisdom*, 414 F.3d 715, 722-74 (7th Cir. 2005) (liability is restricted to the misbehaving lawyer and may not be transferred to his partners or law firm). Steele appeared in this case for one oral argument on behalf of Plaintiff.  This Court can take judicial notice of its own docket, which is irrefutable evidence that Steele was not even the attorney of record prior to August 21, 2012 and that Steele appeared once on August 21, 2012 and once when he called into a scheduling conference and did not participate in any meaningful manner. Sanctions under 28 U.S.C. § 1927

are simply not warranted as to him. Because the Motion for Attorney [sic] Fees by SBC Internet Services, Inc. (ECF No. 82) is substantially similar to that of Comcast, Steele also opposes SBC's motion for the same reasons set forth herein, as to SBC.

I. **STEELE'S CONDUCT WAS NOT UNREASONABLE OR VEXATIOUS AND DID NOT MULTIPLY THE PROCEEDINGS**

The Seventh Circuit's decision in *FM Industries* is directly on point. In that case, two attorneys—Rhine and McGrath—appeared on the plaintiff's behalf. *FM Indus., Inc.*, 614 F.3d at 337-39. For his part, Rhine filed a frivolous complaint seeking $15 billion in damages, served extortionate discovery on non-party law firms, failed to observe the court's timelines and sought a sanction of $815 million when the defendants missed a discovery deadline by a single day. *Id.* at 339. "McGrath, by contrast, did not sign the complaint, demand $815 million as a discovery sanction … or take any other steps that led to the sanction against Rhine." *Id.* at 340. The district court did not identify "a single thing that McGrath did wrong." Nevertheless, the district court imposed sanctions on both Rhine and McGrath under 28 U.S.C. § 1927.

The Seventh Circuit reversed the district court's sanctions as to McGrath. Writing for the court, Chief Judge Easterbrook noted, "liability under § 1927 is direct, not vicarious." *Id.* at 340. Because of this, McGrath, "was not responsible for documents that bear Rhine's name but not his own." *Id.* Although McGrath, "filed an appearance for [the plaintiff] and signed five papers, the district court did not find that any of those five vexatiously multiplied the proceedings." *Id.* Chief Judge Easterbrook rejected the argument that McGrath should be held liable on the grounds that he did not prevent Rhine from filing unreasonable and vexatious documents. He also rejected the argument that McGrath otherwise bore responsibility for Rhine's actions. *Id.* at 340-41. The Seventh Circuit emphasized, "personal responsibility remains essential to an award

2

of sanctions under § 1927." *Id.* at 341. *See also Claiborne v. Wisdom*, 414 F.3d 715, 722-74 (7th Cir. 2005).

Steele appeared in this case, which was filed as far back as December 2011, for the sole purpose of appearing for oral argument at the emergency hearing held on August 21, 2012. Other than appearing by telephone for a scheduling conference, Steele had no other involvement in this case.[1] Steele filed his notice of appearance on the same day as the August 21, 2012 so that he could appear before this Court for oral argument. Steele was not an attorney in this matter prior to August 21, 2012. Steele did not draft a single pleading filed in this matter. Steele did not sign a single document, other than those pertaining to his appearance. Steele was not the attorney of record when the emergency hearing was even set. And as the court docket makes clear, Steele was not involved in any pleadings, hearings, filings, or other matters related to this case before or after the emergency hearing.

Steele's participation in one oral argument in this matter did not unreasonably or vexatiously multiply the proceedings as to Comcast, or any other Defendant. Regarding the emergency hearing, Steele did not ask for the hearing to be held, and did not file the underlying motion or memorandum of law. Regarding the scheduling conference, Steele dialed in to the conference call as he was required to since he was still an attorney of record. The Court docket makes it clear that Steele was involved in only these two discrete acts in this case. And none of the ISP's in this case can point to anything done by Steele at the emergency hearing or the scheduling conference that either multiplied the proceedings or was vexatious. After Steele argued on behalf of the Plaintiff on August 21, 2012, this Court took the matter under

---

[1] Although Steele was on the conference call, he does not recall making any statements other than introducing himself and saying thank you at the end of the conference. Steele assumes that the Court is not looking at Steele's silence at a mandatory scheduling conference as relevant to whether he was vexatious or multiplied the proceedings.

3

advisement.  Clearly, nothing resulted from the emergency hearing, other than the ISP's were not required to provide any discovery information regarding its subscribers to Plaintiff.  Steele submits that he could not have multiplied the proceedings if the only motion he argued before the Court was never granted and thus none of the parties were forced to do any additional work related to the case because of Plaintiff's unsuccessful emergency motion.

Under the explicit guidelines laid out by Chief Judge Easterbrook, Steele simply cannot be held liable for pleadings he did not sign and file, and for events occurring outside of the time frame that Steele was counsel of record.  Therefore, Steele does not address the other pleadings unrelated to his work in this matter.

## II. COMCAST'S CORE CRITICISM IS NOT DIRECTED AGAINST STEELE AND IS OTHERWISE BARRED

Comcast summarized its core criticism of Plaintiff's conduct as follows: "To wit, Plaintiff baselessly and punitively named Comcast as a defendant in this action after attempting – and failing – to get third-party discovery from Comcast." (*See* ECF No. 78 at 2.) Comcast's criticism is not directed against Steele because the asserted impropriety—naming Comcast as a defendant—occurred before Steele even filed an appearance in this case. Further, Comcast never took any formal action, such as the filing of a motion under Federal Rule of Civil Procedure 11, during the pendency of the litigation that reflected its asserted concern. Even when the case was dismissed, Comcast did not bring a timely motion for attorneys' fees; Comcast presumably would never have done so absent the Court's recent order.

Further, there are two reasons why Comcast's motion is barred: (1) timeliness; and (2) eligibility. As for timeliness, it is well-established that section 1927 motions must be brought within a "reasonable time" or as "expeditiously as possible" after a case is disposed of. *Overnite Transp. Co. v. Chicago Indus. Tire Co.*, 697 F.2d 789, 793 (7th Cir. 1983). In *Overnite Transp.*,

4

the Seventh Circuit ruled that a district court lacked jurisdiction to rule on section 1927 motion brought over eight months after the case was dismissed. *Id.* at 792. While the Seventh Circuit declined to adopt the Eighth Circuit's twenty-one day rule deadline for bringing section 1927 motions, it nevertheless emphasized that "motions for fees and costs must be made within a reasonable time." *Id.* at 793 n.4. Here, Comcast's motion for fees was filed roughly six months after this case was dismissed. Under the Seventh Circuit's holding in *Overnite Transp.*, this Court appears to lack jurisdiction to rule on Comcast's motion.

As for eligibility, Comcast's core criticism is that the complaint filed against it was baseless. While Steele is unable to identify any directly controlling Seventh Circuit authority on point, there is "an unbroken band of cases across the courts of appeals holding that a lawyer cannot violate section 1927 in the course of commencing an action." *Jensen v. Phillips Screw Co.*, 546 F.3d 59, 65 (1st Cir. 2008) (citing *Steinert v. Winn Group, Inc.*, 440 F.3d 1214, 1224 (10th Cir. 2006); *MEMC Elec. Mat'ls, Inc. v. Mitsubishi Mat'ls Silicone Corp.*, 420 F.3d 1369, 1382 (Fed. Cir. 2005); *DeBauche v. Trani*, 191 F.3d 499, 511 (4th Cir. 1999); *Zuk v. E. Pa. Psych. Inst.*, 103 F.3d 294, 297 (3d Cir. 1996); *In re Keegan Mgmt. Co.*, 78 F.3d 431, 435 (9th Cir. 1996). While no Defendant—including Comcast—alleges that Steele commenced this action, the "unbroken band" of authority "across the courts of appeals" holds that section 1927 does not apply to that activity. If Comcast had genuinely believed that Plaintiff's complaint was baseless, the appropriate response would have been a properly filed motion pursuant to Fed. R. Civ. P. 11.

**III. COMCAST'S *AD HOMINEM* ATTACKS HAVE NO RELEVANCE TO THE ISSUE BEFORE THE COURT**

The overwhelming majority of Comcast's motion is devoted to launching gratuitous insults against Messrs. Steele, Duffy and Steele, and in particular referencing and quoting the

5

sanctions order issued by Judge Wright in *Ingenuity 13 v. John Doe*, No. 12-cv-8333 (C.D. Cal.). And while Comcast's effort to attack opposing counsel has failed in many other courts, there have been a few judges that have taken issue with Prenda Law and or various attorneys that work with Prenda.[2] To be sure, Judge Wright's findings are extreme, but they are also the subject of seven appeals to the U.S. Court of Appeals for the Ninth Circuit. For this Court's background, at a hearing that lasted an estimated 12 minutes at which no evidence was presented, Judge Wright found, among other things, that attorneys who had never appearing in the case were dodging taxes, forging signatures, had "shattered" law practices, that they were the *de facto* owners of the plaintiff[3] and that they directed attorneys to lie to the court. These findings were not based on evidence and were made notwithstanding that Steele, Duffy and Steele never appeared or otherwise participated in the case. With respect, it was a patently unjust proceeding, and that is why it is being vigorously contested on appeal. However, if Comcast, or any other Defendant has any actual evidence--as opposed to anonymous blog posts and hearsay—to prove their allegations, this Court would have seen it a long time ago.

But this Court does not have to evaluate Judge Wright's order in any event, since it has no relation to this type of case, or to any of the parties in this matter. In other words, it is not necessary for this Court to evaluate the findings of Judge Wright for one reason above all others. There is no issue preclusion in regards to the allegations made by the Defendants. Therefore, if

---

[2] Steele has never practiced law in California, and no evidence has ever been introduced that Steele owns Prenda Law or the Plaintiff in this matter.

[3] The court, for example, determined that Steele, Hansmeier and Duffy were the plaintiff's owners notwithstanding that plaintiff's officer appeared at the hearing and was prepared, but not allowed, to testify as to the plaintiff's actual ownership. And the Court also found that Prenda Law opened in 2010, despite the fact that the Illinois Secretary of State, Prenda Law's incorporation documents, Prenda Law's insurance documents, testimony by Prenda Law's actual owner, and filings with the ARDC establish Prenda Law's incorporation as November 11, 2011.

any of the Defendants in this matter wish to establish in <u>this</u> case that Steele owns Prenda Law, Inc. or the Plaintiff in this matter, this is their opportunity to do so. Steele asks this Court to require Comcast—or any of the other Defendants in this matter—to provide some evidence for their assertions that Steele was involved in this matter to a greater extent than admitted by Steele, that Steele actually has some ownership interest in any client he has ever represented, or that Steele has ever had any ownership of Prenda.  It should trouble this Court—as it already has other judges—that when pressed to provide any proof of their salacious claims against Steele, there is silence.

    For example, if Steele really owned an Illinois law firm, it would be a very easy fact to prove. For example, Steele would have to be listed as an officer or shareholder of the company with both the Illinois Secretary of State and the Illinois Attorney and Registration Disciplinary Committee.  He is not.  Certainly a law firm that was formally incorporated in Illinois, that has signed retainer agreements with clients, that has filed cases in federal courts across the country, that is registered with the ARDC, that had employees, that handled client trust accounts, and that filed countless county, state, and federal forms would have some record showing Steele was involved in its ownership. Steele has adamantly denied—under oath—that he has any ownership of Prenda or any of his former clients.[4]

    The tactics of the defendants in comparable actions around the nation rely almost exclusively on launching similar personal attacks—whether based in fact or not (and they never are)—against copyright holder plaintiffs and their counsel. Comcast is simply throwing around accusations in an effort to change the narrative of anti-piracy litigation.  Breathlessly repeating cherry picked orders that fail to cite to evidence is not relevant here.  If Comcast or any other

---

[4] Steele has also strongly denied the other bare allegations made by Attorney Sweet, but the only allegation raised in front of Judge Wright that has to do with this matter is the allegation that Steele has some ownership in Prenda.

7

Defendant wants to establish that Steele owns Prenda, or that Steele performed more acts in this case than this Court's own docket states, then they should present some evidence to that effect. Its very telling that despite months of Steele adamantly denying the smears listed in Comcast's motion, Comcast fails to attach any exhibits to substantiate their claims. If they were able to prove their claims elsewhere, and if those claims were as widely accepted as Comcast would have this Court believe, then it should be no problem for Comcast to submit evidence to this Court. Comcast has no such evidence, which is why Comcast is unable to fulfill its obligation to describe exactly what Steele did in this case that multiplied the proceedings. No matter how many times Comcast, and others, repeat that everyone should be joint and severally liable, or that Steele should be liable because he appeared for one oral argument, it cannot circumvent the Seventh Circuit's holdings in *FM Industries* and its progeny, which eliminated vicarious liability under Section 1927.

**IV.     Neither Plaintiff nor Prenda Law engaged in sanctionable conduct in this matter**

Plaintiff was one of the oldest adult content producers in the country. It fought tooth and nail against online digital piracy for more than a decade, and was well known as a strong advocate against Bit Torrent based piracy. The reason that Plaintiff brought this action was to protect itself from digital piracy and stop the ongoing damage it was experiencing every day.

There is absolutely no doubt that subscribers of Comcast and every other major ISP are using modern technology to steal copyrighted content that they could never have stolen prior to the Internet and the advent of BitTorrent technology. It is also undisputable that Comcast and the other large ISP's make millions of dollars from monthly subscriber fees paid by both pirates and non-pirates.

At the August 21, 2012 hearing, this Court itself made clear that when Plaintiff suffered financial harm due to Comcast, it could pursue damages against Comcast. And while it is technically true that Plaintiff could have simply waited until it was completely bankrupt before fighting to find out the identity of the Comcast subscribers stealing its content, there is nothing in relevant case law that prevents Plaintiff from pursing Comcast when it did, particularly since all it wanted was the identity of Comcast subscribers that stole from it. Comcast chose to fight on behalf of its subscribers instead of providing the information. It may seem strange that a company the size of Comcast would constantly fight to hide the identity of subscribers in cases throughout the country. However, Comcast receives millions of dollars a month—an unknown portion of which comes from pirates—and can afford to hire as many lawyers as it takes to continue their business model. And inherent in Comcast's business model is its need for monthly access fees paid by its subscribers.

Since the inception of this case, Plaintiff has lost its entire business. And what has happened to Plaintiff is occurring throughout this country. Comcast itself released a study recently showing that almost ¼ of all Internet traffic is due to piracy. (*See* Exhibit 'A'). Comcast gets paid every month by the very infringers it admits are stealing copyrighted content. In fact, Comcast earned over $62 Billion dollars in 2012 alone. (*See* Exhibit 'B').

And while this Court did not grant Plaintiff's emergency motion, it was not brought in bad faith. Plaintiff is now bankrupt as it claimed it would be without an emergency order. Comcast is more profitable and has more subscribers than ever. Piracy has skyrocketed, and as Comcast itself admits, one quarter of all Internet traffic is directly related to piracy. Even Comcast cannot deny piracy exists among its subscribers. And the appreciative pirates who use Comcast's network continue to pay Comcast every month while they steal any movie, song, or

software they want without fear of getting caught. Everybody benefits from the current arrangement, except of course for copyright holders such as Plaintiff.

Steele acknowledges that Plaintiff was not granted the relief it requested in the August hearing. But the claims Plaintiff brought, and the arguments that were raised, were done so in good faith. Steele appeared in a hearing in which Plaintiff flew up to Illinois to explain to this Court that it faced ruin as a direct result of piracy occurring on Defendant's networks. And now, in what can only be described as incredible chutzpah, Comcast asks this Court to sanction the attorneys who dared petition this Court for the names of Comcast's subscribers who were observed stealing Plaintiff's works.

Comcast's motion is not about whether Steele is liable for the entirety of this case—7th Circuit precedence is unequivocal Steele cannot be held vicariously liable under § 1927. Rather, Comcast's drastically untimely motion is a blatant effort to silence the next copyright holder who catches a subscriber using Comcast's network to steal. After all, Comcast has $62 Billion reasons to shelter its revenue stream.

Finally, while Comcast has successfully prevented Plaintiff from finding out the identity of its subscribers who stole from Plaintiff, there is nothing in the record to suggest that the various counsels for Plaintiff did anything that was vexatious or that unnecessarily multiply these proceedings.

**CONCLUSION**

Steele participated in oral arguments before this Court on August 21, 2012 and listened in on a scheduling conference call shortly thereafter. For these two discrete actions, the Defendants, including Comcast, seek to hold Steele liable for hundreds of thousands of dollars of attorneys' fees. For good reason, the Seventh Circuit has made clear that previous such requests are

completely inappropriate. An attorney who makes a limited appearance in an action should not have to fear being held liable for every action by anyone else in the history of the case. Particularly when the Court's own docket makes clear what exactly the limited role that Steele actually had in this case.

Respectfully submitted,

DATED: November 12, 2013

By: /s John Steele

John Steele
1111 Lincoln Road, Suite 400
Miami Beach, FL 33139
(786) 571-8131
*Pro se*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 12th day of November 2013, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

/s/ John Steele
John Steele
