1          IN THE DISTRICT OF THE UNITED STATES OF AMERICA
               FOR THE SOUTHERN DISTRICT OF ILLINOIS

2   _____
                                     )
3   **LIGHTSPEED MEDIA CORPORATION,**   )
                                     )
4               Plaintiff(s),        )
                                     )
5       vs.                          )   Case No. **12-889-GPM**
                                     )
6   **ANTHONY SMITH, et al.,**          )
                                     )
7               Defendant(s).        )
    _____)

8

9                     *ALL PENDING MOTIONS*

10  BE IT REMEMBERED AND CERTIFIED that heretofore on  **11/13/2013,**
    the same being one of the regular judicial days in and for the
11  United States District Court for the Southern District of
    Illinois, **Honorable G. Patrick Murphy,** United States District
12  Judge, presiding, the following proceedings were recorded by
    mechanical stenography; transcript produced by computer.

13

14                       **APPEARANCES:**
    *FOR PLAINTIFF:*
15          **John L. Steele** of Steele Hansmeier PLLC, 161 North
    Clark Street, Suite 4700, Chicago, IL 60601
16          **And Paul A. Duffy,** Prenda Law, Inc.,
    161 N. Clark Street, Suite 3200, Chicago, IL 60601
17          **And (by phone) Paul Hansmeier** of Alpha Law Firm, 80,
    South 8th Street, Suite 900, Minneapolis, MN 55402

18

19  *FOR DEFENDANTS:*
            **Troy A. Bozarth** of HeplerBroom LLC - Edwardsville, 130
    North Main Street, P.O. Box 510, Edwardsville, IL 62025.
20          **And Andrew G. Toennies** of Lashly & Baer PC, 714 Locust
    Street, St. Louis, MO 63101
21          **And (by phone) Daniel G. Booth** of Booth Sweet LLP, 32R
    Essex Street, Cambridge, MA  02139(by phone)
22          **And (by phone) Bart Westcott Huffman** of Locke Lord LLP
    - Austin, 100 Congress Avenue, Suite 300, Austin, TX 78701

23

    *REPORTED BY*: **Molly N. Clayton, RPR, FCRR,** Official Reporter
24  for United States District Court, SDIL, 750 Missouri Ave., East
    St. Louis, Illinois 62201, (618)482-9226,
25                  *molly_clayton@ilsd.uscourts.gov*

1

<u>INDEX OF WITNESS EXAMINATION</u>

2                                       <u>DX</u>        <u>CX</u>       <u>R-DX</u>      <u>R-CX</u>

3    No witness testimony.

4

5                        <u>INDEX OF EXHIBITS</u>

6    <u>EXHIBIT</u>               <u>DESCRIPTION</u>          <u>Id'D</u>       <u>Rcv'd</u>

7    No exhibits identified or received.

8

9                        <u>MISCELLANEOUS INDEX</u>

10                                          <u>PAGE</u>

11   No miscellaneous index entries.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              *COURTROOM DEPUTY:  Lightspeed Media versus Smith, et*

2    *al.,* Case Number 12-889-GPM, is called for a hearing on all

3    pending motions.

4              Will the parties identify themselves for the record?

5              *MR. STEELE:*  John Steele, former counsel for

6    Lightspeed Media.

7              *THE COURT:*  All right.  Mr. Steele, good morning.

8              *MR. STEELE:*  Good morning.

9              *MR. DUFFY:*  Good morning, your Honor, Paul Duffy,

10   former counsel for Lightspeed.

11             *THE COURT:*  All right.  Mr. Duffy, good morning to

12   you.

13             *MR. TOENNIES:*  Good morning.  Andy Toennies for

14   ComCast.

15             *THE COURT:*  Mr. Toennies.

16             *MR. BOZARTH:*  Good morning.  Troy Bozarth for AT&T,

17   your Honor.

18             *THE COURT:*  Mr. Bozarth.

19             Now, the Court is going to have to be particularly

20   cherry with its use of language.  Unfortunately, with my

21   extensive singing engagements, my throat is giving out, and I

22   have got just enough left to take care of this -- or some of

23   it.  Now, the matter before the Court is -- I guess it is

24   Mr. Hansmeier's motion requesting fees under the statute.

25             *MR. STEELE:*  Your Honor, if I may, there are people on

1   the phone as well.

2           *THE COURT:*  Right.

3           *MR. STEELE:*  Okay.

4           *THE COURT:*  Linda has already checked them in, haven't

5   you, Linda?

6           *COURTROOM DEPUTY:*  Yes, sir.  It is Mr. Hansmeier,

7   Mr. Booth, and Mr. Huffman.

8           *THE COURT:*  Right.

9           Now, the Court's understanding that it's only

10  Mr. Hansmeier's motion.  I just looked at the other

11  applications for attorneys' fees fairly recently.  Those will

12  be dealt with in due course.  Now, this is part of a certain

13  piece of litigation that's now become infamous over the federal

14  court system, so to speak.  Ours didn't get too far, so there's

15  not all that much to do.  I'm familiar with the procedural

16  history of it.

17          Now, the application that's before the Court today for

18  representing one of the defendants is, in total, a little over

19  $75,000.  They're requesting $400 an hour for the fees.  I

20  don't need to hear too much argument on that.  That's actually

21  a fairly modest request around this place.  We used to see fees

22  for removal petitions that would run twice that.  So...

23          The Court's understanding of where we are at in

24  this -- of course, Prenda law firm takes exception to the idea

25  that their litigation was pointless, vexatious, and aborted

1    from the start, put that aside.

2           Mr. Hansmeier has filed an objection in the case, and

3    he says:  Now, wait a minute.  Don't include me in this.  I'm

4    not a part of this.  I didn't get notice of it.

5           Now, there is some problem with that point of view.

6    Because I've looked at all the papers and papers from other

7    cases and we've got testimony in the case and it looks like

8    this Prenda law firm is made up of Mr. Duffy and Mr. Hansmeier

9    and others; at least they come together on certain occasions.

10   And it would seem that notice to Prenda would be notice enough

11   to all.  But the reason I've set this is, in the 16 years I've

12   been up here, I've not been too quick to nail people with

13   attorneys' fees.  We generally let people come in here and have

14   their say and then send them home.  But there's something -- we

15   may have something here.

16          Now, who is going to speak for the plaintiff's motion

17   that's up?  Somebody on the phone?  Not the plaintiff's motion,

18   the defendants' motion that's up, the defendant that's asking.

19   You represented an individual.  You got a couple people working

20   on the case.  You are asking a little over $70,000.  You are

21   talking about $400 an hour.  I'll let them argue that if they

22   want, but that seems like a pretty modest amount to me in this

23   case.  I'm not worried about that.  I've read your papers.

24          Why don't you meet -- first address the problem.

25   Mr. Hansmeier says:  Don't include me.  I'm not a part of this

1    thing, so I didn't get notice.  He would have me re-set this

2    and send it back to the next judge that gets to finish this up

3    along with all the other matters.  We don't know who that is

4    yet.

5          Go.

6          *MR. BOOTH:*  Your Honor, this is Dan Booth on behalf of

7    Anthony Smith.

8          *THE COURT:*  All right.  Dan, if you would, speak up so

9    I can hear you.

10         *MR. BOOTH:*  Yes, your Honor.

11         Well, so as you said, this is on our motion for

12   attorneys' fees, which the Court has granted, and as you say we

13   are billing at a lower rate than others have seen.  And I

14   believed we billed a reasonable number of hours, and it does

15   sound like you are not particularly interested in arguments on

16   those issues.  The issue you are raising, though, is whether

17   service on attorney Duffy of Prenda Law is sufficient to

18   provide notice of the motion for sanctions on attorneys

19   Hansmeier and also attorney Steele, both of Prenda Law.

20         And I think its common sense that it must be, in

21   addition to them being in the same firm, and there being case

22   after case saying that service on the firm gives notice to all

23   attorneys in the firm.  This is a particularly close

24   collaboration in the partnership between these three attorneys

25   that we've seen in this case and in many other cases.  But even

1   just focusing on this case, this is where we've got

2   attorneys -- Duffy filing the notice of appearance for Steele,

3   and the motion for pro hac admission of Hansmeier.  This is

4   Steele filing Hansmeier's motion to do the hearing.

5        THE COURT:  If you would refresh my memory, Counsel.

6   With electronic filing here, we have a particular -- some say

7   peculiar way of entering your appearance in this case.  How was

8   Mr. Hansmeier's entry of appearance entered?

9        MR. BOOTH:  My recollection is that attorney Duffy

10  initially filed the motion for pro hac admission on behalf

11  attorney Hansmeier, and then the Court struck that because it

12  needed to be filed by Hansmeier personally and attorney

13  Duffy --

14       MR. HANSMEIER:  Judge, this is attorney Hansmeier.  I

15  would --

16       THE COURT:  Just a minute.  I'm not ready to hear from

17  you yet.  I'm going to have my clerk look up and check this.

18  She is pretty good at that, so we can kind of put this matter

19  behind us without too much chatter.

20       Linda, have you had a chance to look at that?

21       COURTROOM DEPUTY:  Judge, there are quite a few

22  motions, your Honor.

23       MR. HANSMEIER:  Now, the entry in the docket is not --

24       THE COURT:  Now, wait just a minute.  Just a minute.

25  I don't have much voice left, but I've got some.  Now,

1    ordinarily around this place -- for the next week -- when I
2    talk, everybody just listens.  I'm still talking.  Listen.
3              *MR. HANSMEIER:*  Yes, your Honor.
4              *THE COURT:*  All right.  Now, Linda, see what you find.
5              *COURTROOM DEPUTY:*  Which two attorneys are we worried
6    about here?
7              *THE COURT:*  Mr. Hansmeier.  When did he first make his
8    entry of appearance?
9              *COURTROOM DEPUTY:*  I'm looking for that now, Judge.
10             *THE COURT:*  It may take us a few minutes.
11             *COURTROOM DEPUTY:*  There's quite a few motions so...
12             *MR. BOOTH:*  If I may, your Honor, if it will assist
13   matters, I believe that attorney Hansmeier.  The initial
14   appearance was on Docket Number 19, was the attempted entry,
15   and then that was stricken at Docket Number 21.
16             *THE COURT:*  All right.  Docket Number 21 first.
17             *MR. HANSMEIER:*  And I appeared through Alpha Law Firm,
18   not through Prenda Law, Inc., if you review --
19             *THE COURT:*  Counsel, now, I'm not -- Counsel, I'm
20   going to tell you, and I'm going to -- I'll ask people when I
21   want them to speak.  I'm not big on this telephone appearance
22   bit, but I'll go along with it on certain occasions.
23             Now, Linda, first of all, take me to 21.  What's it
24   show?
25             *COURTROOM DEPUTY:*  Twenty-one is a motion to appear

1    pro hac vice by attorney Hansmeier, filed by attorney

2    Hansmeier.  Number 19, the first docket he referred to was

3    stricken.  I'm opening that document now.  It was stricken

4    because the document needed to be filed by Mr. Hansmeier, and

5    it was filed by Mr. Duffy.

6         THE COURT:  Okay.  Mr. Duffy was trying to file for

7    Mr. Hansmeier, but we have this -- we have this rule you have

8    to file your own things.  It is stricken.  Then we come back to

9    21, and then what's Mr. Hansmeier doing then?

10        COURTROOM DEPUTY:  Twenty-one, Mr. Hansmeier filed his

11   own pro hac vice motion.

12        THE COURT:  And what does it say?  Read it to me.

13        COURTROOM DEPUTY:  It is a form probably provided by

14   us.

15        THE COURT:  Yes.

16        COURTROOM DEPUTY:  "Pursuant to local 83.1(b), the

17   undersigned attorney moves for admission pro hac vice to the

18   U.S. District Court for the Southern District of Illinois in

19   order to appear as counsel of record on behalf of the

20   plaintiff, Lightspeed Media."

21        THE COURT:  All right.  He is in for Lightspeed Media.

22        COURTROOM DEPUTY:  Correct.

23        THE COURT:  Good enough.  All right.  Now, let's fast

24   forward.  And we are here on the defendant, I think on

25   Mr. Steele's motion or whoever it is today.  Let's just see how

1   they were given notice.

2        COURTROOM DEPUTY:  For the hearing today?

3        THE COURT:  For the hearing -- no, not on the hearing,

4   on the motion itself when he comes in and asks for attorneys'

5   fees.  On that motion, I granted it.

6        COURTROOM DEPUTY:  Okay.

7        THE COURT:  So the defendant would have filed this

8   motion, and on his motion the record will reflect how it was

9   served.

10        COURTROOM DEPUTY:  There are a lot of motions.

11        THE COURT:  Well, I think this would be the first one.

12        LAW CLERK:  I think it is 61.

13        COURTROOM DEPUTY:  Document 61 is a motion for

14   attorneys' fees by Anthony Smith, who is the defendant, filed

15   by Mr. Daniel Booth.

16        THE COURT:  Mmm hmm.

17        COURTROOM DEPUTY:  That motion, there was a response

18   filed at Document 63.  There was a reply at Document 64.

19        THE COURT:  I know that but on the -- yeah.  Keep

20   going.

21        COURTROOM DEPUTY:  On the order on 65 granting the

22   motion for fees.

23        THE COURT:  But on the initial motion there would be a

24   record of how it was served on the other counsel.  Show that to

25   me or read it to me.

1      *COURTROOM DEPUTY:*  There is a certificate of service

2   on that motion, signed by Dan Booth, that says, "I certify that

3   on the 5th day of April 2003 I electronically filed the

4   foregoing documents with the clerk of the court using the

5   CM/ECF system, which will send notification of such files to

6   all attorneys of record and provide service upon each."

7      *THE COURT:*  All right.  So --

8      *COURTROOM DEPUTY:*  I can go back out to that document

9   and tell you where it went.

10     *THE COURT:*  All right.  Let's go back out to that

11   document, and it will tell us where it went.

12     *COURTROOM DEPUTY:*  That receipt shows the motion

13   electronically went to Mr. Toennies, Mr. Huffman, Mr. Booth,

14   Jason Sweet, John Seiver, Kevin Hoerner, Paul Duffy, Troy

15   Bozarth, all electronically.

16     *THE COURT:*  All right.  Now, it doesn't show

17   individual service on Mr. Hansmeier in this case, even though

18   he had entered his appearance, correct?

19     *COURTROOM DEPUTY:*  It does not show one for him, but

20   I'm not sure when his appearance was entered.  Was that the

21   first document we looked at?

22     *THE COURT:*  Yes.  He had been there, so it was not

23   made electronically.

24     *COURTROOM DEPUTY:*  Correct.

25     *THE COURT:*  Now, the issue is whether the service on

1    Mr. Duffy is enough to get our other lawyer in that is arguing

2    today.

3         All right.  Counsel, now before you go any further,

4    let me tell you this.  There is going to be numerous arguments

5    here over fees.  Everyone that's been involved in the case is

6    going to want fees.  There is almost certainly going to be an

7    appeal to the Court of Appeals on this matter, whoever handles

8    it.  Do you wish to proceed on the record you have, or do you

9    want to just back up and make notice now? -- or you are going

10   to have actual notice.  You have got the respondent on the

11   phone.  How do you wish to proceed?

12        Do you hear me?

13        *MR. BOOTH:*  Yes, your Honor.  And we would at this

14   point proceed on the basis of both the notice through Prenda

15   Law initially when we filed the motion.

16        *THE COURT:*  I understand that.  I'm just asking you

17   this question -- and now identify yourself on the record.  My

18   court reporter is trying to get it down who you are.

19        *MR. BOOTH:*  Dan Booth.

20        *THE COURT:*  All right.  Now, do you wish to proceed

21   today on the basis of the record that you have, or do you wish

22   to have this thing pushed back a couple of weeks and some judge

23   is going to have to hear all these?

24        *MR. BOOTH:*  Our preference is to proceed on the basis

25   of the record we currently have.

1      *THE COURT:*  That's it.  I generally let people do what

2   they think.  It is your case.  And you are the one that's going

3   to have to defend it on appeal, and you may well be right.

4          So go ahead.  Why is the notice on Prenda law firm and

5   the other lawyer sufficient in this case?

6          *MR. BOOTH:*  Well, your Honor, attorney Hansmeier

7   identified himself to this Court as of counsel to Prenda Law.

8   If you look at the motion to stay discovery that he filed on

9   behalf of Lightspeed, he signed that and his signature block

10  says he is of counsel to Prenda Law, Inc.  And so when you

11  serve a document on a law firm, you are providing notice to the

12  entire law firm of the document, and so there is no basis for

13  him to object at this point that there was not notice.  That

14  notice already happened six months ago.

15         *THE COURT:*  All right.  Your idea is that in this

16  case, even being of counsel, in light of the ongoing

17  relationship and what's been filed before, that's enough.

18         *MR. BOOTH:*  Yes, your Honor.

19         *THE COURT:*  All right.  Now, next question.  In just a

20  very few paragraphs.  Don't read from your papers.  I've read

21  your papers.  Why do you think that attorneys' fees are proper

22  under the statute in this case.  These are not Rule 11 fees.

23  These are -- you are referring to the statute itself.  Go

24  ahead.

25         *MR. BOOTH:*  Well, briefly, your Honor, this is a case

1    where sanctions were properly granted.  This is exactly the

2    sort of case to which the statute applies.  The purpose of this

3    case was to get discovery from certain Internet service

4    providers who over time had become reluctant to give such

5    service once they, I think, became aware that Prenda Law was

6    using this not for a legitimate end but as a shakedown racket,

7    in effect.

8         And so they were not looking to impose actual

9    liability on my client, Smith, who was fully innocent.  They

10   had simply picked an individual defendant so that it looked

11   like a more substantive case.  They wanted it -- not just a

12   mass of anonymous hackers, they wanted a scapegoat, but they

13   got the wrong scapegoat.  Their hunch was wrong.  And so he was

14   in the case on -- brought in for an ulterior purpose wrongly,

15   and, in addition, none of the claims amounted to anything.

16        In our motion to dismiss, we walked through why they

17   had not stated a claim under the Computer Fraud and Abuse Act

18   or any of the other claims that they brought.  And they failed

19   to properly refute those issues.  I think they were aware of

20   that, and that's one of the reasons that our client was

21   dismissed; the other being, of course, eventually, once the

22   Court granted our -- granted the defendants' motion to stay

23   discovery, they knew they weren't going to get what they were

24   after, which was names and contact information for thousands of

25   Internet service providers as an opportunity to shake more of

1   them down.  So when they didn't have that, they were done with

2   the case.

3           THE COURT:  Well, your point is your fellow just

4   happened to be in the line of fire and --

5           MR. BOOTH:  Absolutely.

6           THE COURT:  And he got hit.

7           MR. BOOTH:  Absolutely.

8           THE COURT:  And he wasn't a part of it.

9           MR. BOOTH:  There's tens of thousands of alleged

10  illegal downloaders, but they've only named a handful of the

11  individual defendants who got caught in the line of fire.

12          THE COURT:  Right.

13          MR. BOOTH:  And even those cases don't move past

14  preliminary discovery unless they happen to get a default.

15          THE COURT:  Well, as I say, I'm fairly confident I

16  know where all this is going.

17          All right.  I'll let my respondent here very quickly

18  state your case why you don't think the notice is sufficient,

19  and you might tell the Court here in a moment of candor when

20  you first found out this motion had been filed and how you

21  found it out and then why this -- these attorneys' fees

22  shouldn't be entered against you.  Know that I have read your

23  papers.

24          MR. HANSMEIER:  Thank you, your Honor.  As an initial

25  matter --

1            THE COURT:  Now, who is speaking?  Who is speaking?

2    We have to do this on the record.

3            Did you get that, Molly?

4            She did not get it.  Identify yourself again.

5        MR. HANSMEIER:  This is attorney Paul Hansmeier.

6        THE COURT:  All right.  Mr. Hansmeier, now make your

7    first point, what you call the initial matter.

8        MR. HANSMEIER:  The initial matter is notice.  And if

9    the Court reviews its docket, it will see that when my

10   appearance was entered in this case, it was not entered on

11   behalf of Prenda Law, Inc.  Instead, it was entered on behalf

12   of Alpha Law Firm, LLC.  And that's the law firm that I own,

13   and that's the law firm that I've been practicing through

14   during this case, and that's the law firm that would have to be

15   served if I was to receive notice of something.

16       THE COURT:  Well, we are not -- we are talking

17   about -- let me stop you there.  I'm aware of that.  I've read

18   the record in this case.  My question to you, though, was, When

19   did you first learn of this motion, and how did you learn of

20   it?

21       MR. HANSMEIER:  I first learned of the motion when I

22   got a phone call from Paul Duffy telling me that the Court had

23   granted the motion for attorneys' fees against not only him

24   but --

25       THE COURT:  Right.  You didn't get notice of it until

1    after the order had been entered.

2           MR. HANSMEIER:  That's correct.

3           THE COURT:  All right.  Now, we can -- that's -- the

4    sufficiency of the notice is a legal question.

5           I understand the argument.

6           Now, tell me why you shouldn't be jointly and several

7    for actually what are pretty modest fees in this case.

8           MR. HANSMEIER:  Well, with respect, your Honor,

9    they're not modest for me.  That $70,000 is an extremely large

10   amount of money.

11          THE COURT:  You have not seen anything yet.  The other

12   defendants have not filed there's yet.  That's what you call

13   bargain rates around here.  You are going to see what rates are

14   shortly.  As I said, ordinarily we look for six figures on

15   notices of removal around this place.  So I don't know what

16   your financial situation is, but in the larger picture I can

17   just tell you that's just kind of a foreshadowing of about what

18   you are going to see here shortly here, I think.

19          But go ahead.  Set aside the amount.  Why is it that

20   you are not responsible for these?

21          MR. HANSMEIER:  Well, your Honor, in our papers, we

22   had cited to a case, *FM Industries*, and in *FM Industries*, the

23   Seventh Circuit has made very clear over both that case and

24   prior cases that 1927 liability cannot be imposed on a joint

25   and several basis.  In other words, they held the cornerstone

1    of 1927 liability is personal responsibility.  So in other

2    words, if there is something I did in this case where I

3    personally unreasonably and vexatiously multiplied the

4    proceedings and by doing so imposed excess costs on the

5    defendants --

6         THE COURT:  Well, do you say -- wait.  Let me stop

7    you.  Let me stop you there.  That's an important point.  Do

8    you think that personally excludes jointly and severally?

9         MR. HANSMEIER:  Absolutely.

10         THE COURT:  Really?

11         MR. HANSMEIER:  The -- absolutely.  In a case -- in

12    the FM Industries, for example, there were two attorneys of

13    record.  One of the attorneys was held to have done some pretty

14    crazy things, including, for example, asking for $15 billion in

15    damages.  The other attorney was not held to have done any of

16    the things that the district court found objectionable.

17         THE COURT:  Were they from the same firm?

18         MR. HANSMEIER:  They were from different firms.

19         THE COURT:  All right.  I mean, that's what we have

20    here, is we have concerted action.  Everyone here is trying to

21    do the same thing.  We're operating under the Prenda law firm.

22         MR. HANSMEIER:  Again, your Honor, my law firm that I

23    appeared through in this case was Alpha Law Firm.  The other

24    side likes to say that I'm involved with Prenda law firm and

25    make these blanket statements, but the record is very clear on

1    the point that my entry of appearance was through Alpha Law

2    Firm, not through Prenda law firm.

3           THE COURT:  Answer my question.  Not for who?

4           MR. HANSMEIER:  Can you repeat the question, your

5    Honor?

6           THE COURT:  Yes.  Just repeat what you just said.  I'm

7    having great difficulty hearing you.  You said it was not for

8    someone but instead was for someone else.  Say that again.

9           MR. HANSMEIER:  My entry of appearance was for Alpha

10   Law Firm, not for Prenda law firm.

11          THE COURT:  Well, it's odd that in the first paper

12   you're trying to have the Prenda law firm admitted pro hac

13   vice.

14          MR. HANSMEIER:  I believe my papers that were filed in

15   this case were on behalf of Alpha Law Firm.

16          THE COURT:  Good enough.  I understand what you are

17   saying.  All right.  Let's wrap this up.  What else do you want

18   to say?

19          MR. HANSMEIER:  So because 1927 liability cannot be

20   joint and several, there is no vicarious 1927 liability.  It's

21   burden on the person moving for fees to show what, if anything,

22   that I personally did that was unreasonable or vexatious or

23   multiplied the proceedings.  For example, I attended the

24   emergency hearing via telephone and listened in, just like I'm

25   listening -- well, except I didn't participate, but I just

1    listened in.  I participated in the Rule 26(f) conference and

2    then filed one paper in this case.

3         THE COURT:  Well, let me ask you this:  What about the

4    history of this?  I've looked at all the papers in previous

5    cases, and it has always been you and Mr. Duffy and -- I don't

6    know -- someone else that have been operating under the Prenda

7    law firm moniker.  I mean, this isn't the -- this isn't the

8    first time out of the block.

9         MR. HANSMEIER:  Your Honor, I don't -- I'm not aware

10   of what cases you are referring to.  I appeared on behalf of

11   the law firm Steele Hansmeier.

12        THE COURT:  No.  I'm talking about previous and other

13   litigation.  I mean, judges have even commented on that, I

14   believe.  Am I reading the record wrong?  Is this your first

15   time associating with the Prenda law firm?

16        MR. HANSMEIER:  I think in this -- well, I have

17   appeared as a counsel of record in this case through Alpha Law

18   Firm.  I believe there was a signature block in this case

19   with --

20        THE COURT:  I didn't ask you that question I'm talking

21   about other cases in other venues at other times.

22        MR. HANSMEIER:  I'm trying to wrack my memory.  I

23   don't know of another appearance I have had for Prenda law firm

24   I can't think of one.

25        THE COURT:  All right.  Maybe I read the record wrong.

```
 1   I understand your position.  Now I'm going to let the

 2   defendants' lawyer sum up.

 3           What do you have to say about the record in other

 4   cases, Counsel?

 5           MR. BOOTH:  Your Honor, in other cases --

 6           THE COURT:  I can't hear you.  Speak up.  Put the mic

 7   in front of you.  I'll tell you what, the next time there will

 8   not be any more of this telephone business.  You will all be

 9   here.  I'm not sure which judge it will be but -- who is

10   speaking?

11           MR. BOOTH:  Yes, your Honor.

12           THE COURT:  Who?

13           MR. BOOTH:  Dan Booth again, your Honor.

14           THE COURT:  All right.  Yeah.  Now tell me about the

15   record.  Did I read that wrong?  Hasn't our respondent been in

16   other cases with the Prenda law firm?

17           MR. BOOTH:  There are other cases in which --

18   specifically in the AF Holdings cases in California, where it

19   has been found that as a matter of fact that attorney Hansmeier

20   and attorney Steele and attorney Duffy collectively are Prenda

21   Law.

22           THE COURT:  Well, that's what I read.

23           MR. BOOTH:  They are the --

24           THE COURT:  All right.  The Court's -- the Court's

25   heard enough on this.  Now, there are other matters -- there
```

1    are other matters pending.

2         I don't think the other two defendants have submitted

3    their application for fees.  They want fees, but I haven't seen

4    the itemization; is that correct?

5         *MR. TOENNIES:*  Yes, your Honor.

6         *MR. BOZARTH:*  That's correct, your Honor.

7         *THE COURT:*  All right.  Here's what the Court's going

8    to do.  I'll take a short -- I'll take a short look at this and

9    enter a short order.  But this is just -- this is just the

10   beginning of this.  I'm going to recommend to my colleagues

11   that all -- the next hearings be in person so they can better

12   examine and hear.  This just didn't work out as well.  We will

13   give you a little more -- a little more notice, and then

14   everything can be wrapped up at one time.

15        And then it will go up to the Court of Appeals then.

16   There is not much else I can do with this this morning.

17        *MR. STEELE:*  Your Honor, may I -- this is John Steele.

18        *THE COURT:*  Yes, Mr. Steele.

19        *MR. STEELE:*  I feel like there's been a lot of

20   assertions made as if it is just a fact about me, and I flew

21   all the way out here because I wanted to -- people are saying

22   things as if they are facts without any basis, and they're

23   pointing out to cherry-pick cases that went their way in other

24   states and with -- regarding completely different people.  And

25   we have here today the owner of Prenda Law, you know, who can

1   tell -- these allegations that are just casually dropped --

2   that people own a company that there is no evidence that they

3   own of.  Despite what another judge may have ruled, there are

4   other ones that have disagreed.  So as far as here, I'd like to

5   address my culpability or my involvement in this case, if I

6   could.

7       *THE COURT:*  Well, why don't you just tell me what you

8   say your participation in the case was.  You were in the case,

9   but go ahead.

10      *MR. STEELE:*  Yes, your Honor.  I appeared at the

11  emergency hearing, which, obviously, your Honor is well aware

12  of.  I was on the phone with a scheduling conference, and

13  that's essentially it.  I had withdrawn from this case.  I

14  thought I had withdrawn months ago.  I thought it was already

15  done, and I found out in March 2013, it had not.

16      So I filed my notice of withdrawal, which is prior to

17  any motion for fees being filed, so, clearly, I could not have

18  learned through ECF.  I learned about this fee issue when Paul

19  Hansmeier called me -- I don't know if it was a few days ago, a

20  week ago, whatever -- and told me what he had just learned from

21  Paul Duffy.  So I don't -- one of the last things -- I maybe

22  appeared a couple more times.

23      But this is the one of the last things I did as an

24  attorney.  I don't even practice anymore.  And I'm trying to

25  understand -- you know, just simply saying that I have an

1  ownership interest in Prenda Law is not sufficient, I don't

2  believe, by various counsels because I don't.  And so if there

3  is going to be some liability placed on me, I believe that the

4  other side has some duty to show, to prove wild accusations,

5  such as Anthony Smith is innocent, John Steele owns Prenda Law.

6  All these different items just aren't true.

7          *THE COURT:*  Well, it is actually not that complicated.

8  You entered your appearance in the lawsuit.  If you didn't know

9  better or if you hadn't heard anything, it would seem to be a

10 real or serious lawsuit like any others that we get.  You don't

11 enter a lawsuit on a limited basis.  You represent people.

12 Here, we've got a defendant in this case who gets -- who is put

13 through the grinder.

14          Now, I agree with everything that I've read and seen.

15 This was abusive litigation.  This is simply filing a lawsuit

16 to do discovery to find out if you can sue somebody.  That's

17 just utter nonsense.  Now, you don't have to agree with it.  I

18 don't -- as I say, I know where this lawsuit's going to end,

19 and you might make a -- you might make a convincing argument in

20 the Court of Appeals, but I think you are going to get a chance

21 to.

22          The issue of who owns what is only pertinent to me as

23 to the sufficiency of the notice in this case, and I'm going

24 to -- I'm going to sit and think about that.  And what you are

25 telling me is you didn't get notice.  I'm going to tell you

1   just what I told the other lawyer that we just discussed with.

2   This is a very modest fee request.

3          I'm anticipating the next fee request you are going to

4   get are going to be, you know, several -- a couple of hundred

5   thousand bucks each, because I do this every day.  I know what

6   these -- I know what these firms charge.  I'm kind of wondering

7   what -- why someone would, in light of the record, would want

8   to -- would want to resist this.  But you want to resist this,

9   and I'll take a look at, and I'll write it up.

10          MR. STEELE:  And, your Honor, I think it is important

11   because we are assuming a lot of things.  For instance, prior

12   to this case even being filed, I personally spoke with Anthony

13   Smith twice.  I personally spoke with him and came away

14   saying --

15          THE COURT:  Who left him with a card that said call

16   this person.  They're a very important lawyer from --

17          MR. STEELE:  It wasn't --

18          THE COURT:  Obviously, somebody did.

19          MR. STEELE:  The person that did that, I've never met

20   never heard of, never spoke to.

21          THE COURT:  But it is your case, you are responsible

22   for it.  It is your case, you filed it.  There seems to be --

23          MR. STEELE:  I didn't file it.

24          THE COURT:  There seems to be -- what do you mean you

25   didn't file it?  You entered your appearance in it.

1        *MR. STEELE:*  Right.  But I did not file this case.

2        *THE COURT:*  Do you think that makes a difference --

3        *MR. STEELE:*  I do.

4        *THE COURT:*  -- if you enter your appearance in a case

5    that's pointless, worthless, a sham?

6        *MR. STEELE:*  Well, Judge, this same type of cases have

7    been ruled in our favor in many other jurisdictions, including

8    the state action that preceded proceeded this, the judge sided

9    with our arguments.  So in one case --

10       *THE COURT:*  Mr. Steele, you are in the United States

11   court of -- in Southern District of Illinois.  You are part of

12   the Court of Appeals for the Seventh Circuit.  Now, I could be

13   dead wrong.  Occasionally, I am; not too often.  But I would

14   say that this litigation the chances of being successful on

15   appeal are somewhere between slim and below zero.  This matter

16   is under advisement.  The Court's in recess.

17                              -oOo-

18                      REPORTER'S CERTIFICATE

19       I, Molly N. Clayton, RPR, FCRR, Official Court Reporter
     for the U.S. District Court, Southern District of Illinois, do
20   hereby certify that I reported with mechanical stenography the
     proceedings contained in pages 1 - 27; and that the same is a
21   full, true, correct and complete transcript from the record of
     proceedings in the above-entitled matter.

22          DATED this 5th day of December, 2013.

23

24

25                                s/Molly Clayton, RPR, FCRR
                             _____