## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**LIGHTSPEED MEDIA CORP.,**

*Plaintiff,*

*v.*

**ANTHONY SMITH, et al.,**

*Defendants.*

Civil No. 3:12-cv-889-DRH-SCW

## DECLARATION OF PAUL HANSMEIER

Paul Hansmeier, under penalty of perjury and pursuant to 28 U.S.C. § 1746, declares as follows:

1.     I have personal knowledge of all facts stated within this declaration.

2.     Attached as **Exhibit A** is a true and correct copy of a letter I received from attorney Jason Sweet regarding judgment enforcement discovery in this matter.

3.     Attached as **Exhibit B** is a true and correct copy of a subpoena that was attached to the letter and was issued from this District.

4.     Attached as **Exhibit C** is a true and correct copy of the Appellants' opening brief in the appeal taken from the Court's November 27, 2013, Order.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: January 29, 2014

/s/

# Exhibit A

## BOOTH SWEET LLP

32R Essex Street  Cambridge, MA 02139
T: 617.250.8602 | F: 617.250.8883 | www.boothsweet.com

Paul Hansmeier                                             January 21, 2014
Class Justice PLLC
100 5th S. Street
Suite 1900
Minneapolis, MN 55402

Re:     *AF Holdings LLC v. Chowdhury*, No. 12-cv-12105 (D.Mass. 2012); and

        *Lightspeed Media Corp. v. Smith*, No. 12-cv-00889 (S.D. Ill. 2012)

Attorney Hansmeier,

        Enclosed, please find the following documents:

1.  First Set of Post-Judgment Interrogatories Propounded to Judgment Debtor Paul Hansmeier in *AF Holdings LLC v. Chowdhury*. Responses are due February 21, 2014;

2.  First Set of Post-Judgment Requests for Documents Propounded to Judgment Debtor Paul Hansmeier in *AF Holdings LLC v. Chowdhury*. Responses are due February 21, 2014;

3.  Copies of subpoenas issued in *AF Holdings LLC v. Chowdhury* and *Lightspeed Media Corp. v. Smith* requesting financial information and sent to the following banks:

        a.   Bank of America
        b.   Citibank
        c.   Fifth Third Bank
        d.   First Advantage
        e.   Hiway FCU
        f.   Indymac
        g.   JP Morgan Chase
        h.   Marquette Bank
        i.   OneWest Bank
        j.   Ready Street Bank
        k.   TCF National Bank
        l.   Wells Fargo

4.  A single copy of the Schedule A that was attached to each of the subpoenas identified above.

        Thank you for your attention to this matter.

                                                    Regards,

                                                    Jason E. Sweet

Enclosures

# Exhibit D

AO 88B  (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### *for the*

#### Southern District of Illinois

| | | |
|---|---|---|
| Lightspeed Media Corporation | ) | |
| *Plaintiff* | ) | Civil Action No.   3:12-cv-00889-DRH-SCW |
| v. | ) | |
| Anthony Smith, et al | ) | |
| *Defendant* | ) | |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:   INDYMAC, c/o Legal Department - Subpoena Compliance, 155 N. Lake Ave., Pasadena, CA 91101

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: identified in Schedule A, attached hereto.

| Place:  Jason Sweet, Booth Sweet LLP, 32R Essex Street, Cambridge, MA 02139 | Date and Time:  01/30/2014 10:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   01/16/2014

CLERK OF COURT

                                                          OR

_____                    _____
*Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____, who issues or requests this subpoena, are:
Defendant Sandipan Chowdhury

Jason Sweet, Booth Sweet LLP, 32R Essex Street, Cambridge, MA 02139, Tel: 617-250-8619, Fax: 617-250-8883, jsweet@boothsweet.com

#### Notice to the person who issues or requests this subpoena
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

# Exhibit E

NO. 13-3801

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

LIGHTSPEED MEDIA CORPORATION,
*Plaintiff,*

v.

ANTHONY SMITH, et al.,
*Defendants-Appellees,*

Appeal of:
PAUL DUFFY, JOHN STEELE, & PAUL HANSMEIER,
*Appellants.*

On Appeal from the United States District Court
for the Southern District of Illinois, No. 3:12-cv-00889-GPM-SCW

**Opening Brief & Required Short Appendix of
Appellants Paul Duffy, John Steele & Paul Hansmeier**

Paul Hansmeier
100 South Fifth Street, Suite 1900
Minneapolis, MN 55402
612-234-5744

John Steele
1111 Lincoln Road, Suite 400
Miami Beach, FL 33139
786-571-8131

Paul Duffy
2. N. LaSalle Street, 13th Floor
Chicago, IL 60602
312-952-6136

**CIRCUIT RULE 26.1   DISCLOSURE STATEMENT**

Appellate Court No: 13-3801

Short Caption: Lightspeed Media Corp. v. Smith, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[  ]   **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH  INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Paul Hansmeier, in propria persona.

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

N/A

(3)  If the party or amicus is a corporation:

i)  Identify all its parent corporations, if any; and

N/A

ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

N/A

Attorney's Signature: s/ Paul Hansmeier                    Date: 01-27-2014

Attorney's Printed Name: Paul Hansmeier

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes _____   No  X

Address: 100 South Fifth Street, Suite 1900

Minneapolis, MN 55402

Phone Number: 612-234-5744          Fax Number: N/A

E Mail Address: mail@classjustice.org

rev. 01/08 AK

## CIRCUIT RULE 26.1   DISCLOSURE STATEMENT

Appellate Court No: 13-3801

Short Caption: Lightspeed v. Smith

 To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

 The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

**[  ]   PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH  INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Paul Duffy, pro se

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

No such individuals has appeared for Paul Duffy in this action

(3) If the party or amicus is a corporation:

 i)  Identify all its parent corporations, if any; and

 N/A

 ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

 N/A

Attorney's Signature: s/ _[signature]_                     Date: January 27, 2014

Attorney's Printed Name: Paul Duffy

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes _____   No  X

Address:  2 N. LaSalle Street, 13th Floor
Chicago, IL 60602

Phone Number: (312) 952-6136            Fax Number: N/A

E-Mail Address: pduffy@pduffygroup.com

rev. 01/08 AK

**CIRCUIT RULE 26.1   DISCLOSURE STATEMENT**

Appellate Court No: __13-3801__

Short Caption: __LIGHT SPEED MEDIA CORP V. SMITH, ET AL__

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[  ]   **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED
AND INDICATE WHICH  INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

__JOHN STEELE, IN PROPRIA PERSONA__

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

__N/A__

(3)  If the party or amicus is a corporation:

   i)  Identify all its parent corporations, if any; and

   __N/A__

   ii)  list any publicly held company that owns 10% or more of the party's or amicus' stock:

   __N/A__

Attorney's Signature: __s/  John Steele__     Date: __1/20/14__

Attorney's Printed Name: __JOHN STEELE__

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes ◯   No ⊘

Address: __1111 LINCOLN RD 400__
__MIAMI BEACH FL 33139__

Phone Number: __786-571-8131__     Fax Number: __N/A__

E-Mail Address: __JOHN STEELE 3940 @ GMAIL.COM__

rev. 01/08 AK

# TABLE OF CONTENTS

TABLE OF CONTENTS................................................................................i

TABLE OF AUTHORITIES ......................................................................iii

Jurisdictional Statement ............................................................................ 1

    A.    The district court's jurisdiction ................................................. 1

    B.    Appellate jurisdiction ................................................................ 1

    C.    The district court's November 27, 2013 sanctions order is final and immediately appealable. ........................................................ 2

Statement of the Issues .............................................................................. 3

Statement of the Case and Facts ............................................................... 4

    A.    The original state court action ................................................. 4

    B.    The amended state court action and removal to federal court .................. 6

    C.    The emergency motion for discovery, and the appearances of attorneys John Steele & Paul Hansmeier .................................... 7

    D.    The motions to dismiss and to stay discovery, and the lapse of time thereafter ........................................................................... 8

    E.    Plaintiff's voluntary dismissal of the action under Rule 41(a)(1)............... 9

    F.    Smith's motion for attorney fees under 28 U.S.C. § 1927 .......................... 9

    G.    The district court's initial order imposing sanctions under § 1927. ......... 10

    H.    The Motions to Reconsider and Vacate.................................... 10

    I.    The ISPs' motions for attorneys' fees under § 1927 .................... 11

    J.    The November 13, 2013 hearing .............................................. 12

    K.    The district court's final order imposing sanctions under § 1927 ........... 13

Summary of the Argument........................................................................ 14

ARGUMENT ............................................................................................ 16

I.    The District Court Erred by Failing to Afford Fundamental Due Process Protections to Appellants, Including Notice and the Opportunity to be Heard.............................................................. 16

    A.    Attorneys Steele and Hansmeier were never served with, nor given an opportunity to respond to, Smith's initial motion for sanctions.......... 16

    B.    Attorney Paul Duffy was never given an opportunity to respond to the motions for § 1927 sanctions by AT&T and Comcast. ....................... 20

C.    None of the three sanctioned attorneys were given an opportunity to respond to the fee itemizations filed by Smith, AT&T, or Comcast. ................................................................................ 21

II.   The District Court Erred as a Matter of Law by Misapplying 28 U.S.C. § 1927 ................................................................................ 23

A.    Liability under § 1927 is direct, not vicarious, but the district court held the sanctioned attorneys' vicariously liable for others' actions. ..... 23

B.    The § 1927 Motions by AT&T and Comcast Were Untimely, and Should Not Have Been Considered. ........................................ 28

III.  The District Court Erred by Making Factual Findings and Imposing Sanctions Unsupported by the Record ........................................ 30

A.    Delay is normally a prerequisite for sanctions under § 1927, but the district court failed to make any findings sufficient to show that the sanctioned attorneys caused needless delay. ........................... 31

B.    The alternate § 1927 theory employed by the district court, *i.e.* "where the suit was without either a legal or factual basis and the attorney was or should have been aware of this fact," is unsupported by the record. ................................................ 33

C.    The district court committed clear error in finding that Plaintiff's suit was baseless, because the suit was supported by an arguable legal theory and was not entirely without color. ........................... 36

D.    The district court committed clear error in drawing an inference of bad faith and/or baselessness from Plaintiff's voluntary dismissal, because the record showed good-faith reasons for dismissal. ............... 38

E.    The district court committed clear error in finding that the sanctioned attorneys exhibited "a serious and studied disregard for the orderly process of justice." .............................................. 40

CONCLUSION ................................................................................ 44

Certificate of Compliance ............................................................... 45

Statutory Addendum ...................................................................... 46

REQUIRED SHORT APPENDIX ................................................... 47

# TABLE OF AUTHORITIES

## Cases

*AF Holdings LLC v. Does 1–1,058*, No. 12-0048, 2012 WL 3204917
(D.D.C. Aug. 6, 2012) ....................................................... 38

*Brown v. Fed. of State Medical Bds. Of U.S.*, 830 F.2d 1429 (7th Cir.
1987) ................................................................ passim

*Buchanan v. Sherrill*, 51 F.3d 227 (10th Cir. 1995) .................................. 18

*Cafeteria & Restaurant Workers Union v. McElroy*, 367 U.S. 886 (1961) ................ 18

*Claiborne v. Wisdom*, 414 F.3d 715 (7th Cir. 2005) ........................... passim

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990) .................... 2, 38, 39

*Dahnke v. Teamsters Local 695*, 906 F.2d 1192 (7th Cir. 1990) ............. 35

*Daniel International Corp. v. Fischbach & Moore, Inc.*, 916 F.2d 1061
(5th Cir. 1990) ...................................................... 18

*FJ Hanshaw Enter. v. Emerald River Develop.*, 244 F.3d 1128 (9th Cir.
2001) ................................................................ 25

*FM Indus., Inc. v. Citicorp Credit Servs.*, 614 F.3d 335 (7th Cir. 2010).. 14, 24, 25, 27

*Harrell v. Joffrion*, 73 F.R.D. 267 (W.D. La.), *aff'd without opinion*, 545
F.2d 167 (5th Cir. 1976) .......................................... 34

*In re Mroz*, 65 F.3d 1567 (11th Cir. 1995) ................................ 18

*In re TCI Ltd.*, 769 F.2d 441 (7th Cir. 1985) .............................. 22

*Indianapolis Colts v. Mayor and City Council of Baltimore*, 775 F.2d
177 (7th Cir. 1985) ........................................... 36, 38

*Kapco Mfg. Co., Inc. v. C & O Enters., Inc.*, 886 F.2d 1485 (7th Cir.
1989) .............................................................. passim

*Knorr Brake Corp. v. Harbil, Inc.*, 738 F.2d 223 (7th Cir. 1984) .............. passim

*Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928 (7th Cir. 1989) (en banc) ............................................................ 30, 34, 41, 43

*Maynard v. Nygren*, 332 F.3d 462 (7th Cir. 2003) ...................................................... 3

Order on Motion for Expedited Discovery, *VPR Internationale v. Does 1–1017*, No. 2:11-cv-02068-HAB-DGB, at 1 (C.D. Ill. Mar. 9, 2011) (Dkt. No. 9) (attached in Appendix at AA-117) ................................... 37

*Overnite Transp. Co. v. Chicago Indus. Tire Co.*, 697 F.2d 789 (7th Cir. 1983) ................................................................ passim

*Pruitt v. Mote*, 503 F.3d 647 (7th Cir. 2007) .............................................. 3, 23, 28, 30

*Reid v. United States*, 715 F.2d 1148 (7th Cir. 1983) .............................................. 31

*Ross v. City of Waukegan*, 5 F.3d 1084 (7th Cir. 1993) ........................... 31, 34, 41, 43

*Steinert v. Winn Group, Inc.*, 440 F.3d 1214 (10th Cir. 2006) ................................... 29

*Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073 (7th Cir. 1987) ................... 28

*Talano v. N.W. Med. Faculty Found., Inc.*, 273 F.3d 757 (7th Cir. 2001) ............... 20

*Terket v. Lund*, 623 F.2d 29 (7th Cir. 1980) ...................................................... 28, 29

*Walter v. Fiorenzo*, 840 F.2d 427 (7th Cir. 1988) ................................................... 33

## Statutes

18 U.S.C. § 1030 ........................................................................................................... 1

28 U.S.C. § 1291 ........................................................................................................... 1

28 U.S.C. § 1927 ................................................................................................. 1, 2, 33

## Rules

Fed. R. Civ. P. 41(a)(1) ....................................................................................... passim

Fed. R. Civ. P. 5(a)(1) ............................................................................................ 17, 18

Fed. R. Civ. P. 60(b) ....................................................................................... 13, 20, 24

## Jurisdictional Statement

### A. The district court's jurisdiction

The U.S. District Court for the Southern District of Illinois (the "district court") had federal question and diversity jurisdiction over the subject matter of this action pursuant to a Notice of Removal filed by Defendant SBC Internet Services, Inc. d/b/a AT&T Internet Services ("AT&T") on August 9, 2012, which cited 28 U.S.C. §§ 1331, 1332, 1441, and 1446. Dkt. 02.[1] Federal question jurisdiction was based upon Plaintiff's assertion of claims under the Computer Fraud & Abuse Act ("CFAA"), 18 U.S.C. § 1030, and supplemental jurisdiction over Plaintiff's state law claims was based upon the relation of the state law claims to the CFAA claims such that they formed part of the same case or controversy. *Id.* at 3. Diversity jurisdiction was based upon Plaintiff's allegations of having been damaged in the amount of $774,850 and upon Plaintiff's request for actual damages in an amount exceeding $200,000. *Id.* at 5. Plaintiff is an Arizona corporation with its principal place of business in Arizona; Defendant AT&T is a California corporation with its principal place of business in Texas; and Defendant Comcast Cable Communications, LLC ("Comcast") is a limited liability company organized under Delaware law, whose sole member is Comcast Holdings Corp., a Pennsylvania corporation with its principal place of business in Pennsylvania. *Id.* at 4. No other parties were joined and served at the time of removal, including Defendant Smith, a citizen of the state of Illinois. *Id.* at 4–5.

### B. Appellate jurisdiction

The United States Court of Appeals for the Seventh Circuit has jurisdiction to hear the appeal from a final order imposing sanctions under 28 U.S.C. § 1927 pursuant to 28 U.S.C. § 1291. The district court's final order

---

[1] "Dkt." refers to the docket number in the district court record. "SA" refers to the short appendix attached to this brief. "AA" refers to the separately-bound appendix submitted with this brief.

1

imposing sanctions against the attorneys for the Plaintiff was entered on November 27, 2013. SA-1. No motion for new trial, for alteration of a judgment, or any motion otherwise claimed to toll the time within which to appeal was filed. The sanctioned attorneys Paul Duffy, Paul Hansmeier, and John Steele filed a timely joint notice of appeal on December 12, 2013. AA-1. This case is not a direct appeal from the decision of a magistrate judge.

## C. The district court's November 27, 2013 sanctions order is final and immediately appealable.

All claims in the underlying action were voluntarily dismissed without prejudice by Plaintiff Lightspeed Media Corp. ("Lightspeed"), pursuant to Fed. R. Civ. P. 41(a)(1), on March 21, 2013. AA-32. The district court preliminarily granted Defendant Anthony Smith's petition for attorney fees under 28 U.S.C. § 1927 in an initial, non-final order which did not set the amount of fees on October 30, 2013. SA-14; *see also* SA-3 (describing as "only an interim order"). Shortly thereafter, Defendants AT&T and Comcast each moved for attorney fees under § 1927. Dkt. 78, 82. The district court denied Appellants' motions to vacate or reconsider, granted the sanctions motions of AT&T and Comcast, and set the amounts of the fee awards to Smith, AT&T, and Comcast in a final order entered on November 27, 2013. SA-1.

A final order entering sanctions against attorneys after voluntary dismissal of the action under Rule 41(a)(1) is a final appealable order. *See generally Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990) (reviewing Rule 11 sanction entered after voluntary dismissal under Rule 41(a)(1)). While sanctions orders entered during pending litigation are interlocutory and are not immediately appealable as collateral orders, the underlying litigation here was voluntarily dismissed on March 21, 2013, rendering the sanctions order final and immediately appealable.

### Statement of the Issues

1. Whether the district court abused its discretion by failing to provide due process to Appellants before imposing sanctions under 28 U.S.C. § 1927, including notice and an opportunity to be heard.

**Standard of review:** Due process entitles a party or attorney threatened with sanctions to notice and an opportunity to respond. *Kapco Mfg. Co., Inc. v. C & O Enters., Inc.*, 886 F.2d 1485, 1494 (7th Cir. 1989). An order imposing sanctions under § 1927 is reviewed for abuse of discretion. *Claiborne v. Wisdom*, 414 F.3d 715, 721 (7th Cir. 2005). A failure to apply the correct legal standard or undertake a necessary inquiry is an abuse of discretion. *Pruitt v. Mote*, 503 F.3d 647, 660 (7th Cir. 2007).

2. Whether the district court erred as a matter of law by misapplying 28 U.S.C. § 1927, either by failing to link its sanctions to specific actions by each sanctioned attorney, or by considering § 1927 motions filed over seven months after dismissal.

**Standard of review:** § 1927 is strictly construed. *Knorr Brake Corp. v. Harbil, Inc.*, 738 F.2d 223, 226 (7th Cir. 1984). While an order imposing sanctions under § 1927 is reviewed for abuse of discretion, the interpretation of § 1927 is a matter of law reviewed *de novo*. *Claiborne*, 414 F.3d at 721. A failure to apply the correct legal standard or undertake a necessary inquiry is an abuse of discretion. *Pruitt*, 503 F.3d at 660.

3. Whether the district court erred by making factual findings, and imposing sanctions, unsupported by the record.

**Standard of review:** An order imposing sanctions under § 1927 is reviewed for abuse of discretion. *Claiborne*, 414 F.3d at 721. Factual findings are generally reviewed for clear error, but findings tainted by application of an incorrect legal standard are subject to fuller review. *Maynard v. Nygren*, 332 F.3d 462, 467 (7th Cir. 2003).

## Statement of the Case and Facts

This case is an appeal from a final order imposing over a quarter-million dollars in attorneys' fees and costs under 28 U.S.C. § 1927, against three attorneys jointly and severally for the entirety of the litigation in federal court. SA-12–13.

### A. The original state court action

On December 12, 2011, Plaintiff Lightspeed Media Corporation filed a complaint against a John Doe defendant in the state Circuit Court of the Twentieth Judicial Circuit, St. Clair County, Illinois. AA-108. The complaint was filed by attorney Michael O'Malley of Carey Danis & Lowe. AA-116. It alleged that John Doe generated and traded hacked passwords to unlawfully access Plaintiff's members'-only website. AA-110–12. It further alleged that John Doe conspired with members of his hacking community to gain this unlawful access and assisted others in doing the same. *Id.* John Doe and his coconspirators were known to Plaintiff only by the Internet Protocol ("IP") addresses assigned to them by their Internet Service Providers ("ISPs"). *Id.* The complaint asserted violations of the Computer Fraud & Abuse Act, 18 U.S.C. § 1030, as well as Illinois state law claims for conversion, unjust enrichment, breach of contract, and civil conspiracy. AA-112–16.

On December 16, 2011, Plaintiff, through its counsel Michael O'Malley, brought a motion for leave to take limited early discovery from certain third-party ISPs to ascertain the identities of John Doe and his co-conspirators. Dkt. 02-9, at 6–13. The motion was supported by an affidavit of Steven E. Jones, Plaintiff's chief executive officer and the founder of Arcadia Data Security Consultants. AA-103–07. In his affidavit, Mr. Jones testified to having over 25 years of experience in the computer industry in software design and systems analysis capacities. AA-104. Mr. Jones' affidavit also described the process by which Arcadia's software identified un-

4

lawful accesses to Plaintiff's website. AA-105–07. Plaintiff's request was granted that same day. Dkt. 02-9, at 14–16.

On March 20, 2012, a small handful of the ISPs[2] filed motions to quash the subpoenas that had been issued and for a protective order. Dkt. 09-5. On April 12, 2012, the circuit court denied the ISPs' motions to quash and ordered full compliance with Plaintiff's subpoenas by June 12, 2012. Dkt. 09-6.

On April 25, 2012, the ISPs brought a motion asking the Circuit Court to enter a finding of "friendly" contempt, for the purposes of obtaining immediate appellate review of the circuit court's April 12, 2012 order. Dkt. 02-12, at 42–46. On the same day, the ISPs also moved to stay the proceedings pending appeal. Dkt. 02-12, at 47–52. Plaintiff, through its counsel Kevin Hoerner of Becker, Paulson, Hoerner & Thompson P.C. and Paul Duffy of Prenda Law, Inc., filed opposition papers. Dkt. 02-13, at 26–33. On May 21, 2012, the circuit court denied the ISPs' motions and entered a case management order requiring the ISPs to produce a map and list of the locations of identified subscribers, to provide notice of the court's order enforcing the subpoena to their subscribers, and requiring Plaintiff to disclose and describe the operation of its forensic software. Dkt. 02-17, at 48–53.

On May 22, 2012, the ISPs moved the Illinois Supreme Court for a supervisory order, under Illinois Supreme Court Rule 383, directing the circuit court to vacate its order denying their previous motion to quash and for a protective order. Dkt. 09-9. Plaintiff filed objections to that effort through its attorneys Kevin Hoerner, Clyde Kuehn and Paul Duffy. Dkt. 02-23, at 26–40. The motion was granted by the Illinois Supreme Court on June 27, 2012. Dkt. 09-10, at 3. However, the relief granted was limited to

---

[2] Including AT&T Internet Services; BellSouth.net; Cellco Partnership d/b/a Verizon Wireless; Centurytel Internet Holdings Inc.; Cox Communications, Inc.; Embarq Communications, Inc.; Qwest Communications Co. LLC; Verizon Online LLC; and Wayport, Inc.

reversing the May 21, 2012 orders and ordering certain subpoenas quashed as issued. *Id.* Pursuant to the Illinois Supreme Court's order, the circuit court entered an order on July 16, 2012 which vacated its May 21 order and allowed the motions to quash filed by "Movants AT&T Internet Services, et al." Dkt. 28-2, at 2.

On August 3, 2012, Plaintiff requested leave to file a First Amended Complaint, which was granted that same day. Dkt. 02-4.

### B. The amended state court action and removal to federal court

Plaintiff's First Amended Complaint was filed on August 3, 2012. AA-80–102. It was signed and filed by attorney Kevin T. Hoerner. AA-101. It also included the address block for attorney Paul Duffy, but was not signed by him. AA-102. It was not signed by Appellants John Steele or Paul Hansmeier. *See generally* AA-80–102.

The First Amended Complaint named the formerly unidentified John Doe Defendant, Anthony Smith, and in addition named as Defendants two ISPs, AT&T Internet Services ("AT&T") and Comcast Cable Communications LLC ("Comcast"), as well as unidentified corporate representatives from each named ISP. AA-80. In addition to its allegations against the now-identified Smith, Plaintiff's amended complaint alleged that AT&T and Comcast had interposed themselves in the litigation to prevent and obstruct Plaintiff from ascertaining the identities of Internet subscribers who were actively destroying Plaintiff's business. AA-87–91. It further alleged that AT&T and Comcast had failed to take action to prevent their Internet subscribers from these acts against Plaintiff despite being on actual notice of the activities and having plenary control over their subscribers' Internet accounts. *Id.* The amended complaint asserted violations of the CFAA, 18 U.S.C. § 1030, by all Defendants. AA-91–92. It further asserted Illinois law claims against Smith for conversion, unjust enrichment, breach of contract, and civil conspiracy, and against AT&T and Comcast for unjust enrichment, civil conspiracy, violations of the Illinois

Consumer Fraud & Deceptive Practices Act, and aiding and abetting. AA-92–99.

On August 9, 2012, Defendant AT&T removed the First Amended Complaint to the U.S. District Court for the Southern District of Illinois based upon federal question and diversity jurisdiction. Dkt. 02.

## C. The emergency motion for discovery, and the appearances of attorneys John Steele & Paul Hansmeier

On August 16, 2012, Plaintiff, through its attorney Paul Duffy, filed an emergency motion for an order allowing it to take limited discovery prior to the Rule 26(f) conference. AA-65–78. Specifically, Plaintiff asked the district court to (1) order AT&T and Comcast to transmit a copy of a cease-and-desist and evidence-preservation notice (AA-60) to the Internet subscribers listed in the First Amended Complaint as co-conspirators of Smith; (2) order AT&T and Comcast to provide Plaintiff with the identifying information of the Internet subscribers identified as co-conspirators which had already been compiled; (3) order AT&T and Comcast to preserve evidence relevant to Plaintiff's case; and (4) order AT&T and Comcast to produce information sufficient to identify the unknown corporate representative Defendants. AA-65–78. Attached was a declaration by Steve Jones, stating that Plaintiff had been targeted by 9,955 unique hackers who had made 78,298 attempts to breach its systems over the prior two months. AA-62–64. Plaintiff argued that the emergency nature of its motion was justified by the financial burdens caused by the epidemic level of ongoing hacking activity and by the evanescent nature of the case-critical electronically-stored information. AA-69, AA-72, AA-75. AT&T submitted a written opposition on August 20, 2012. Dkt. 14.

On August 20, 2012, attorney John Steele noticed his appearance for Plaintiff (AA-58), and attorney Paul Hansmeier moved to appear *pro hac vice* (AA-57). Neither Steele nor Hansmeier had previously appeared in

the removed action. For his part, Hansmeier never even appeared in the original state court action.

The district court heard Plaintiff's motion on August 20, 2012. AA-38. Attorneys John L. Steele, Kevin T. Hoerner, Paul Duffy, and Paul Hansmeier (by telephone) appeared on behalf of Plaintiff. *Id.* Attorney Steele presented argument on behalf of Plaintiff. AA-42. At the hearing, the district court stated that Plaintiff's request was properly understood as a request for injunctive relief. AA-55. The district court further stated that it believed no evidence was at risk of destruction. *Id.* The district stated that it was "skeptical about how this case could ever be put on, but my feet are not set in stone on it. I've seen some cases that didn't look too hot at the start that got better with time. This may be one of those cases." *Id.* The district court orally denied the motion at the hearing, stating that Plaintiff would "have to go through the regular discovery route just like everyone else." *Id.*

### D. The motions to dismiss and to stay discovery, and the lapse of time thereafter

On August 29, 2012, AT&T and Comcast filed separate motions to dismiss Plaintiff's First Amended Complaint. Dkt. 26, 28. Plaintiff, through its attorney Paul Duffy, filed briefs in opposition to each motion to dismiss on October 1, 2012. Dkt. 40, 41. These motions were fully briefed for decision as of October 15, 2012, when Comcast filed a reply brief. Dkt. 42.

Counsel for Defendant Smith first appeared in the case on September 9, 2012. Dkt. 30, 31, 32. Defendant Smith filed a motion to dismiss the First Amended Complaint on September 12, 2012. Dkt. 36. Plaintiff, through its attorney Paul Duffy, responded in opposition on October 22, 2012 (Dkt. 44), and the motion was fully briefed for decision as of November 5, 2012, when Smith filed his reply brief (Dkt. 51).

On October 24, 2012, the Defendants jointly moved to stay discovery pending the district court's ruling on their motions to dismiss the First Amended Complaint. Dkt. 47. Plaintiff, through its attorney Paul Hansmeier, opposed the stay motion in a response filed on October 31, 2012. Dkt. 50. On November 7, 2012, in a text entry order, the Magistrate Judge granted the Defendants' motion for a stay of discovery pending the district court's ruling on the outstanding motions to dismiss. Dkt. 53.

On November 14, 2012, attorney Paul Hansmeier moved to withdraw as attorney for Plaintiff. AA-36. His motion was granted the following day. Dkt. 56. Thereafter, there was no activity in the case for nearly four months, until March 6, 2013, when attorney John L. Steele moved to withdraw as attorney for Plaintiff. AA-34. His motion was granted the following day. Dkt. 58.

## E.  Plaintiff's voluntary dismissal of the action under Rule 41(a)(1)

On March 21, 2013—over five months after the AT&T and Comcast motions to dismiss were fully briefed, and over four months after the Smith motion was fully briefed and discovery was stayed—Plaintiff, through its attorney Paul Duffy, filed a notice of voluntary dismissal of the action without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1). AA-32. In a text entry order on March 22, 2013, the district court terminated the pending motions to dismiss as moot. Dkt. 60.

## F.  Smith's motion for attorney fees under 28 U.S.C. § 1927

On April 5, 2013, Defendant Smith moved the district court for an award of attorneys' fees under 28 U.S.C. § 1927 against attorneys Paul Duffy, John Steele, and Paul Hansmeier personally. Dkt. 61. Smith included an unsworn declaration stating that he was innocent and that a process server had given him Steele's contact information when serving the complaint and summons. AA-31. Smith's motion did not seek § 1927 sanctions against attorney Kevin Hoerner, the sole signer of the First

Amended Complaint. Dkt. 61. Attached to Smith's motion was a certificate of service which stated that the motion was served via the district court's CM/ECF system on attorneys of record; no other method of service was specified. Dkt. 61, at 20. At the time of Smith's motion, Steele had withdrawn from his representation over four weeks prior; Hansmeier over twenty weeks prior.

On April 19, 2013, Plaintiff filed an opposition through attorney Paul Duffy. Dkt. 63. Plaintiff argued that (1) Smith failed to demonstrate that Plaintiff had multiplied the proceedings in any substantive manner; (2) Smith failed to demonstrate that Plaintiff had engaged in vexatious or unreasonable conduct or that Plaintiff lacked a good-faith basis for its claims; and (3) Smith failed to show how its attorneys' fees constituted an excess cost under § 1927. Dkt. 63. Smith filed a reply brief on May 1, 2013. Dkt. 64. However, over the next six months, the district court did not act on Smith's motion, and nothing else happened in the case.

**G. The district court's initial order imposing sanctions under § 1927.**

On October 30, 2013, the district court entered a two-page order granting Smith's motion for attorneys' fees against Duffy, Steele, and Hansmeier, and ordering Smith to file an itemization of fees by November 8, 2013. SA-14. The district court ruled that "Plaintiff raised baseless claims despite knowledge those claims were frivolous and pressed for a meritless 'emergency' discovery hearing." *Id.* The district court stated that "[t]he litigation smacked of bullying pretense," and that it found the in-court hearing on Plaintiff's emergency motion for limited early discovery particularly informative with regard to the motion for sanctions. *Id.* The order did not mention Duffy, Steele or Hansmeier by name. *See id.*

**H. The Motions to Reconsider and Vacate**

On October 31, 2013, Paul Hansmeier filed a motion to vacate or reconsider the district court's order imposing § 1927 sanctions. Dkt. 66.

Hansmeier argued that: (1) he was never served with Smith's motion, and was thus deprived of notice and an opportunity to be heard; (2) Smith failed to identify any specific behavior on Hansmeier's part that unreasonably or vexatiously multiplied the proceedings; and (3) Smith failed to show how Hansmeier's actions imposed excess costs. Dkt. 66. On November 4, John Steele also filed a motion to vacate or reconsider, raising similar arguments. Dkt. 68. Steele and Hansmeier each submitted a declaration stating that they were never served with Smith's motion. AA-29–30. Paul Duffy also filed a motion to vacate or reconsider on November 7. Dkt. 74. The district court set the motions for hearing on November 13. Dkt. 70, 77.

On November 6, 2013, attorney Kevin Hoerner—the sole signer of the First Amended Complaint—moved to withdraw from his representation of Plaintiff, arguing that he "ha[d] only served as local counsel in this case" and that Smith's § 1927 motion was not directed at him. Dkt. 70. The district court granted Hoerner's motion that same day in a text-entry order, stating without further explanation that Hoerner "was local counsel not implicated in the Order." Dkt. 72.

Also on November 6, Steele and Hansmeier moved to continue the hearing for sixty days, stating that Hansmeier had a conflict on November 13 and that Duffy and Steele were preparing for an upcoming trial and depositions, respectively. Dkt. 73. The district court denied a continuance the following day without explanation. Dkt. 76.

## I.  The ISPs' motions for attorneys' fees under § 1927

On November 8, 2013—over seven months after Plaintiff's voluntary dismissal of the action—AT&T and Comcast each filed motions for attorneys' fees under § 1927 against Duffy, Steele, and Hansmeier personally. Dkt. 78, 82. At the time of the ISPs' motions, Steele had withdrawn from his representation over thirty-five weeks prior; Hansmeier over fifty weeks prior. The district court scheduled these motions for hearing in five

days, on November 13. Dkt. 94. Steele and Hansmeier filed responses in opposition. Dkt. 86, 88.

Prior to the November 13, 2013 hearing, Smith submitted fee itemizations (Dkt. 84, 90), as well as a response in opposition to the pending motions to reconsider or vacate the sanctions order (Dkt. 92). In conjunction with his opposition, Smith attached a March 2013 declaration by Steele from another case stating that he and Hansmeier were of counsel with the law firm Prenda Law, Inc. and that Paul Duffy was the principal of that firm. Dkt. 92-2. Smith did not attach any declarations by Hansmeier. Smith also attached a declaration by Brett Gibbs from another case in which Gibbs stated that he had worked with Steele and Hansmeier on other cases. Dkt. 92-3.

## J.  The November 13, 2013 hearing

At the November 13, 2013 hearing, the district court stated repeatedly that Smith's request for over $75,000 in fees was "modest," and that he expected AT&T and Comcast would request "a couple of hundred thousand bucks each." AA-6, AA-7, AA-19, AA-27. Counsel for Smith argued that notice to Duffy was sufficient to reach Steele and Hansmeier, and refused the district court's invitation to "just back up and make notice now." AA-8–9, AA-14–15. The district court questioned Hansmeier and Steele but not Duffy, who was present but was not allowed to speak. AA-3, AA-17–22, AA-24–28. The district court stated that the case "was abusive litigation. This is simply filing a lawsuit to do discovery to find out if you can sue somebody. That's just utter nonsense." AA-26.

The district court took the matter under advisement, stating that it would take a "short look at this and enter a short order. But … this is just the beginning of this." AA-24, AA-28. The court said it would "recommend to my colleagues that … the next hearings be in person so they can better examine and hear. This just didn't work out as well. We will give you … a little more notice, and then everything can be wrapped up at one time."

AA-24. Instead, the court entered its final sanctions order on November 27, without holding further hearings. SA-1.

After the hearing, AT&T and Comcast submitted fee itemizations (though AT&T's itemization was in the form of a separate motion) seeking $119,637.05 and $69,021.26, respectively. Dkt. 97, 98. On November 25, the district court entered an order recharacterizing these, and Smith's fee itemization, as supplements to their respective § 1927 motions. Dkt. 99.

## K. The district court's final order imposing sanctions under § 1927

The district court entered its final order on November 27, 2013. SA-1–13. Other than the issue of notice, it evaluated the arguments raised by Duffy, Steele, and Hansmeier under the strict Fed. R. Civ. P. 60(b) standard of review. SA-3–4. The district court generally focused on the actions of "Plaintiff" rather than the discrete actions of its counsel, finding that Plaintiff filed and pursued claims against Smith, AT&T, and Comcast that were "baseless from the start." SA-1–2, SA 9–10. It found that Plaintiff dismissed its claims "[r]ather than waiting for the Court's ruling" on the motions to dismiss. SA-9. It further found that Duffy, Steele, and Hansmeier had shown a "serious and studied disregard for the orderly process of justice," but only specifically identified statements made at the November 13 hearing as misconduct. SA-10–11. The district court found that Duffy, Steele, and Hansmeier "acted in concert throughout the entirety of the proceedings" and found them jointly and severally liable for $261,025.11 in attorneys' fees. SA-13. Duffy, Steele, and Hansmeier filed a joint notice of appeal on December 12, 2013. AA-1.

## Summary of the Argument

There are several independent reasons for this Court to vacate the sanctions orders, which imposed over a quarter-million dollars in attorneys' fees under 28 U.S.C. § 1927 jointly and severally against three attorneys, the Appellants, for the entirety of the litigation below. The district court failed to provide due process of law, failed to undertake necessary inquiries under this Court's § 1927 precedent, and made factual findings without explanation and without support in the record.

*First*, the sanctioned attorneys were not afforded the due process protections to which they were entitled. Smith's § 1927 motion was not served on Steele or Hansmeier, who had withdrawn from the case, and who found out about it only after it was granted. Their arguments were not fairly evaluated *de novo*, but instead were rejected under the harsh Rule 60(b) reconsideration standard. In addition, the district court ruled on AT&T and Comcast's § 1927 motions before Duffy could respond, and none of the sanctioned attorneys were allowed to challenge any of the fee itemizations. These errors prejudiced the sanctioned attorneys and allowed discrepancies to go unchallenged. Because the district court failed in multiple ways to observe the requirements of due process prior to entering its sanctions order, the sanctions must be vacated.

*Second*, and even more importantly, the district court erred as a matter of law by misinterpreting § 1927 and failing to perform two necessary inquiries. This Court has clearly stated that liability under § 1927 is direct, not vicarious; sanctions must be specifically apportioned according to attorneys' individual actions and cannot be imputed to others. *FM Indus., Inc. v. Citicorp Credit Servs.*, 614 F.3d 335, 341 (7th Cir. 2010); *Claiborne v. Wisdom*, 414 F.3d 715, 722–24 (7th Cir. 2005). Yet the district court sanctioned the attorneys jointly and severally for the entirety of the litigation without addressing their individual actions. As a matter of record, neither Duffy, Steele, nor Hansmeier signed the complaint that the dis-

trict court adjudged to be baseless. Although each attorney played very different roles, the district court made no distinction between them. And the district court made no inquiry into the responsibility of Kevin Hoerner, who was not sanctioned, but who actually signed the amended complaint and represented Plaintiff over the entirety of the case.

This Court has also established that if § 1927 motions are not brought within a reasonable time, the district court loses jurisdiction to consider them. *Overnite Transp. Co. v. Chicago Indus. Tire Co.*, 697 F.2d 789, 793 (7th Cir. 1983). Yet, the district court considered and granted § 1927 motions by AT&T and Comcast filed more than seven months after Plaintiff's voluntary dismissal, without any inquiry into the issue of timeliness. The district court's failure to undertake necessary inquiries is legal error requiring reversal.

*Third*, the sanctions order is not supported by the record. The sanctions order repeatedly describes Plaintiff's case as baseless, but it fails to explain how or why Plaintiff's claims were baseless. Nor is it evident from the record why the sanctioned attorneys should have known in advance that Plaintiff's claims would be adjudged baseless, particularly since the district court had expressed muted optimism regarding the case and had been made aware of supportive authority from other jurisdictions. The district court drew a negative inference from Plaintiff's voluntary dismissal, despite good-faith reasons for that dismissal. And the district court found that the three attorneys exhibited a "relentless willingness to lie," based only on several statements by Steele and Hansmeier (not Duffy) that were not contradicted by the record. These findings were clear error due to the lack of explanation and the lack of support in the record, and the sanctions order based upon these findings was an abuse of discretion.

## ARGUMENT

**I.    The District Court Erred by Failing to Afford Fundamental Due
Process Protections to Appellants, Including Notice and the
Opportunity to be Heard.**

The requirements of due process are applicable to proceedings in which
sanctions are contemplated; they entitle a party or attorney to notice and
an opportunity to respond. *Kapco Mfg. Co., Inc. v. C & O Enters., Inc.*, 886
F.2d 1485, 1494 (7th Cir. 1989). The district court failed to provide the
sanctioned attorneys the basic due process protections to which they were
entitled. Attorneys John Steele and Paul Hansmeier were never even
served with Smith's motion for sanctions under § 1927. Attorney Paul
Duffy was not given an opportunity to respond to the § 1927 motions of
AT&T and Comcast. None of the sanctioned attorneys were given an op-
portunity to respond to the fee itemizations. The district court's failure to
provide due process to the sanctioned attorneys caused prejudice, created
serious problems with the record on review, and provides ample reason for
this Court to reverse the more than quarter-million dollar attorney fee
award that resulted.

**A. Attorneys Steele and Hansmeier were never served with, nor given
an opportunity to respond to, Smith's initial motion for sanctions.**

Both Steele and Hansmeier withdrew from the underlying case prior to
Smith's § 1927 motion, and therefore did not receive service of Smith's
motion via the court's CM/ECF system. *See* AA-36, AA-34; Dkt. 56, 58.
Both Steele and Hansmeier filed declarations that they were "never
served or otherwise notified of" Smith's motion for fees under § 1927, and
that they first became aware of the motion through attorney Duffy. AA-
29–30. Furthermore, at the November 23, 2013 hearing, Hansmeier stated
that he did not learn of the motion until the district court granted Smith's
motion on October 30, 2013. AA-18. Steele, in turn, stated that he did not

learn of the motion until attorney Hansmeier called him, shortly after he learned that it had been granted. AA-25. At the November 23, 2013 hearing, the district court asked Smith's attorneys whether they wanted "to proceed on the record you have, or … just back up and make notice now," but Smith's attorneys chose to "proceed on the basis of the record we currently have" rather than provide Steele or Hansmeier with actual notice. AA-14.

The district court provided three justifications for why service upon attorneys Steele and Hansmeier was unnecessary; each is insufficient. *First*, as to Steele, the district court stated that Smith's motion was served on him because it was served through the CM/ECF system to the e-mail address "docket@wefightpiracy.com." SA-5. However, while the district court correctly noted that Steele received notifications through that e-mail address while he was attorney of record, it did not inquire or determine whether Steele continued to have access to or receive e-mail from that account after his withdrawal. SA-5; *see generally* AA-3–28. The district court thus could not find actual service contradicting Steele's declaration. As to Hansmeier, the district court made no analysis suggesting he could have been served through e-mail. SA-5.

*Second*, the district court noted that attorney Duffy was served by e-mail, and cited Fed. R. Civ. P. 5(a)(1) for the proposition that motions do not need to be served upon all counsel, but merely upon all parties. SA-5. However, this Court stated in *Kapco Manufacturing Co. v. C & O Enterprises, Inc.*, that due process entitles "a party *or attorney* to notice and opportunity to respond." 886 F.2d 1485, 1494 (7th Cir. 1989) (emphasis added). The *Kapco Manufacturing* court's statement that notice must be provided to "a party *or* attorney" faced with sanctions implies that the requirements of due process are dependent upon the specific nature of the contemplated sanctions—if sanctions are contemplated against an attorney, then notice to the attorney is required, "or," if sanctions are contemplated against a party, then notice to the party is required. 886 F.2d at

17

1494 (emphasis added). This interpretation has been explicitly recognized by at least one sister circuit. *In re Mroz*, 65 F.3d 1567, 1575 (11th Cir. 1995) ("Due process requires that the attorney (or party) be given fair notice that his conduct may warrant sanctions and the reasons why.") Here, neither Steele nor Hansmeier were provided with individualized notice.

As a matter of logic and policy, where sanctions are contemplated against attorneys as individuals, actual service on those individuals is necessary where they have withdrawn from representation prior to the sanctions proceedings. "The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." *Cafeteria & Restaurant Workers Union v. McElroy*, 367 U.S. 886, 895 (1961). Because the district court here was contemplating sanctions aimed explicitly at the Plaintiff's attorneys, and because Steele and Hansmeier had withdrawn, service upon those attorneys was a necessary element of due process.

While the district court cited *Daniel International Corp. v. Fischbach & Moore, Inc.*, 916 F.2d 1061, 1063 (5th Cir. 1990), and *Buchanan v. Sherrill*, 51 F.3d 227, 228 (10th Cir. 1995), for the proposition that service upon one attorney for a party is sufficient (SA-5–6), each of these cases is distinguishable. Neither *Daniel International* nor *Buchanan* dealt with a situation where attorneys were personally under the threat of a sanctions proceeding against them, let alone where several of the attorneys had withdrawn prior to the initiation of the sanctions proceeding. *See Daniel*, 916 F.2d at 1063; *Buchanan*, 51 F.3d at 228. The district court's reliance on Fed. R. Civ. P. 5(a)(1) as the standard for effective service in this context was an error of law and was insufficient for due process.

*Third*, the district court observed "other evidence suggesting these three men worked in concert with one another," but the evidence it cited had no probative value with regard to whether service of Smith's § 1927 motion was properly made upon Steele and Hansmeier. SA-6–7. The dis-

trict court cited the fact that attorney Duffy had initially used his CM/ECF account to file a notice of appearance for Steele and a pro hac vice motion for Hansmeier (SA-6–7 (citing Dkt. 11, 15)), but failed to note that attorneys for Comcast had made the exact same procedural error. Dkt. 13 (stricken pro hac vice motion for attorney John D. Seiver filed by attorney Andrew G. Toennies). Even assuming this was more than a simple procedural error, an event which occurred on August 20, 2012 does not tend to show that the attorneys had "worked in concert" at the time that Smith's § 1927 motion was filed on April 5, 2013. Similarly, the district court's reference to "similarities in documents" filed by the three sanctioned attorneys does not tend to show a close relationship on April 5, 2013—especially not the similarities in their motions to vacate and/or reconsider the initial § 1927 fee order, which were filed after the attorneys had informed one another of that order's existence. SA-7.

The district court also took judicial notice of other federal courts which had "found Duffy, Steele and Hansmeier to be in cahoots." SA-7. Primarily, the district court cited Judge Wright of the Central District of California, whose opinion was adopted by the other courts cited. SA-7. However, Judge Wright's findings are currently on appeal before the Ninth Circuit, and that case—a copyright action brought by an entirely different plaintiff—has nothing to do with the instant case, which asserted claims based upon computer hacking. More fundamentally, whether attorneys are or have been, at some point, "in cahoots" does not indicate whether service of Smith's § 1927 motion on April 5, 2013 was properly effectuated.

The district court further stated that, assuming that service on Steele and Hansmeier was defective, this due process violation was cured when the Court reheard the issue on November 13, 2013. SA-8. However, the idea that the November 13, 2013 hearing and the November 27, 2013 final order imposing § 1927 sanctions served as a curative for the lack of due process relating to Smith's initial § 1927 motion is belied by the record. The district court made clear that the arguments raised by Steele and

Hansmeier, other than the issue of notice, were not evaluated *de novo*. SA-4. Instead, their arguments were evaluated under the strict Fed. R. Civ. P. 60(b) standard. SA-3–4; *Talano v. N.W. Med. Faculty Found., Inc.*, 273 F.3d 757, 762 (7th Cir. 2001) ("Relief under Rule 60(b) is an extraordinary remedy that is to be granted only in exceptional circumstances.") Rather than cure the due process violations, the application of a strict legal standard to the arguments of Steele and Hansmeier in fact perpetuated the prejudice against them.

## B. Attorney Paul Duffy was never given an opportunity to respond to the motions for § 1927 sanctions by AT&T and Comcast.

The district court denied attorney Paul Duffy an opportunity to respond to the motions for sanctions filed by AT&T and Comcast. Without an opportunity to respond, Duffy should not have been ordered to pay the fees of AT&T and Comcast under § 1927.

The district court stated in its November 27, 2013 order that "Paul Duffy … had an opportunity to respond, and did respond, to Smith, AT&T, and ComCast's general requests for fees and costs." SA-12. Yet, this statement is clearly erroneous with respect to the AT&T and ComCast motions; the record is completely devoid of a Duffy response to these motions. Indeed, the district court entered the sanctions order before the time for responding under the Local Rules had lapsed, and without otherwise ordering an expedited briefing schedule.

The motion hearing was not a substitute opportunity to respond, because the district court did not allow Duffy to speak. AT&T and Comcast each filed their motions for fees under § 1927 on November 8, 2013. Dkt. 78, 82. Both AT&T and Comcast noticed hearings on their motions for November 13, 2013, a hearing date already scheduled for consideration of Appellants' pending motions to vacate the initial order imposing sanctions. Dkt. 79, 83. At that motion hearing, Duffy was present but was not asked to speak by the district court, other than to state his name for the

record, and the district court made clear that it would not allow unsolicited interjections from counsel. AA-3, AA-5, AA-10 ("Counsel, I'm going to tell you, and I'm going to — I'll ask people when I want them to speak."). Therefore, the hearing did not serve as an opportunity to respond to the allegations against him in any respect. Ultimately, Duffy was given no opportunity to respond, in writing or verbally, prior to the district court's November 27, 2013 order granting AT&T and Comcast's § 1927 motions.

## C. None of the three sanctioned attorneys were given an opportunity to respond to the fee itemizations filed by Smith, AT&T, or Comcast.

The district court did not allow Duffy, Steele, or Hansmeier an opportunity to respond to the fee itemizations submitted by Smith, AT&T, and Comcast. The district court's failure to do so not only violated the attorneys' due process rights, but also preserved discrepancies in the itemizations which would have been revealed through the adversary process. In this regard, the district court failed to "fulfill its heightened responsibilities in reflecting upon the nuances of the case and in formulating an appropriate sanction." *Kapco Mfg.*, 886 F.2d at 1497.

AT&T and Comcast each filed separate fee itemizations, on November 15 and November 22, respectively. Dkt. 97, 98. On November 27, 2013, before the time under the Local Rules for responding to the itemizations had lapsed, the district court entered its sanctions order.

As for Smith, he filed his initial fee itemization on November 8, 2013. Dkt. 84. On November 10, Hansmeier filed a notice of intention to respond to Smith's fee itemization on or before November 22. Dkt. 87. However, on November 12, Smith's fee itemization was stricken for its failure to comply with the Local Rules. Dkt. 89. Smith filed a compliant petition that same day. Dkt. 90. Then, on November 25, 2013, the district court recharacterized Smith's petition as a supplement to Smith's § 1927 mo

tion, resetting the response deadline to parallel that of AT&T and Comcast. Dkt. 99.

During the November 13, 2013 hearing, the fee itemizations of AT&T and Comcast were not discussed at all, except to confirm that they had not been filed, and insofar as the district court speculated that they were "going to be … a couple hundred of thousand bucks each," and that "ordinarily we look for six figures on notices of removal around this place." AA-19, AA-24, AA-27. The fee itemization of Smith was discussed only to a minimal degree, with the district court repeatedly describing Smith's request for over $75,000 as "modest." AA-6, AA-7, AA-19, AA-27.

The district court's failure to allow the sanctioned attorneys to challenge the fee itemizations was prejudicial, because it allowed for material errors and discrepancies in the itemizations. For instance, Smith's counsel, Jason Sweet, submitted an itemization for $2,290.40 purportedly incurred on October 25, 2012, for "Research and Draft: CFAA section for motion to dismiss," and another itemization for $1,308.80 with the same explanation the following day. Dkt. 90-1 at 8–9. Yet, Smith's motion to dismiss was filed over one month earlier, on September 18, 2012. Dkt. 36. As another example, the district court failed to address the apparent paradox between its conclusion that Plaintiff's claims were baseless and the Defendants' collective request for over a quarter-million dollars in attorneys' fees. "When a case is preposterous … the defendants need not incur substantial costs." *In re TCI Ltd.*, 769 F.2d 441, 449 (7th Cir. 1985); *see also Brown v. Fed. of State Medical Bds. Of U.S.*, 830 F.2d 1429, 1439 (7th Cir. 1987) ("A duty of mitigation exists, and a district court should ensure that the party requesting fees has not needlessly protracted the litigation."). Similarly, the district court did not address the apparent discrepancy in Smith's counsel claim for over $3,000 more in fees than Comcast, even though Smith's attorneys billed at lower rates than Comcast's counsel, did not utilize a local counsel as Comcast did, and performed far fewer actions in this case than Comcast's counsel (especially considering that Smith's

counsel did not appear in the action until after the August 20, 2012 hearing on Plaintiff's early discovery motion). *See* Dkt. 7, 22, 90-1, 98-1, 98-2. These are just a few examples of the many discrepancies not subjected to the adversary process.

## II.   The District Court Erred as a Matter of Law by Misapplying 28 U.S.C. § 1927

"Section 1927 clearly is punitive and thus must be construed strictly." *Knorr Brake Corp. v. Harbil, Inc.*, 738 F.2d 223, 226 (7th Cir. 1984). The question of how to interpret § 1927 is a matter of law, and is reviewed *de novo. Claiborne v. Wisdom*, 414 F.3d 715, 721 (7th Cir. 2005). A failure to apply the correct legal standard or undertake a necessary inquiry is an abuse of discretion. *Pruitt v. Mote*, 503 F.3d 647, 660 (7th Cir. 2007).

Here, the district court misapplied § 1927, in at least two significant ways. *First*, the district court failed to apportion personal responsibility for bringing what it concluded was a baseless case, or to apportion the sanctions it imposed accordingly. In so doing, the district court ignored established case law and failed to make findings specific enough to sustain its sanctions on review. *Second*, the district court erred by even considering the § 1927 motions brought by AT&T and Comcast, in light of the fact that those motions were filed over seven months after the case was voluntarily dismissed. Because AT&T and Comcast had no reason for their lengthy and unreasonable delay, the district court was without jurisdiction to hear their motions. These errors mandate reversal.

## A.  Liability under § 1927 is direct, not vicarious, but the district court held the sanctioned attorneys' vicariously liable for others' actions.

The district court abused its discretion by failing to consider or apportion personal responsibility for any of the conduct below. The precedent of this Court establishes that § 1927 sanctions must be apportioned against individual attorneys by reference to their individual actions, and cannot be transferred to other attorneys or entities simply by reference to their

appearance in the case, their association in a law firm, or otherwise. *FM Indus., Inc. v. Citicorp Credit Servs.*, 614 F.3d 335, 341 (7th Cir. 2010) ("Liability under § 1927 is direct, not vicarious."); *Claiborne v. Wisdom*, 414 F.3d 715, 722–24 (7th Cir. 2005) (liability restricted to misbehaving lawyer and may not be transferred to his partners or law firm). This Court has stated that "personal responsibility remains essential to an award of sanctions under § 1927." *FM Indus., Inc.*, 614 F.3d at 341; *see also Claiborne*, 414 F.3d at 722–24. Even if a district court is "disgusted by the behavior" of a plaintiff and its counsel, it must specifically apportion responsibility, and cannot simply impute responsibility for every filing upon every attorney who appears in an action. *FM Indus., Inc.*, 614 F.3d at 341. The district court failed to undertake this necessary inquiry.

The district court did not treat the issue of personal responsibility with any specificity. To the contrary, in its initial order granting Smith's § 1927 motion, the district court did not refer to Plaintiff's counsel by name, and referred only to actions of the "Plaintiff." SA-14. In its final order entered on November 27, 2013, the district court only briefly mentioned the sanctioned attorneys' arguments regarding the necessity of personal responsibility, and dismissed them as not warranting relief under the strict standard of Fed. R. Civ. P. 60(b). SA-3–4. In the sanctions order, the district court again referred to specific actions of "Plaintiff" rather than the discrete actions of its counsel. SA-9–10. Rather than apportion personal responsibility among the attorneys for Plaintiff, the district court instead focused its remarks on the nature and extent of the interrelationship between the sanctioned attorneys: taking judicial notice that they were "in cahoots," and stating, without explanation, that they were "closely associated and acted in concert to file and prosecute this frivolous lawsuit," and "share total responsibility for their actions." SA-7–8, SA-12–13. Under this Court's rulings in *FM Industries, Inc. v. Citicorp Credit Services*, 614 F.3d at 341, and *Claiborne v. Wisdom*, 414 F.3d at 722–24, there can be no joint and several liability for sanctions under § 1927, and therefore the district

court's award of sanctions based upon that theory constituted reversible legal error.

The district court's failure to apportion personal responsibility among the attorneys for Plaintiff is particularly striking in light of two facts. *First*, the district court imposed no sanction whatsoever on attorney Kevin Hoerner—the only attorney who actually signed the First Amended Complaint. AA-101. At the time Hoerner signed the complaint, Hansmeier had not even entered an appearance in the action. The district court allowed Hoerner to withdraw from the case, stating without explanation that Hoerner "was local counsel not implicated in" its sanctions order. Dkt. 72. This determination that Hoerner was merely "local counsel" was error; Hoerner acted as co-counsel. Lightspeed had no ostensible need for local counsel at the time the amended complaint was filed, since it was also represented by Duffy, who was licensed to practice in both the State of Illinois and the Southern District of Illinois. This Court is not bound by a "mere label" offered by a district court. *FJ Hanshaw Enter. v. Emerald River Develop.*, 244 F.3d 1128, 1143 (9th Cir. 2001). Indeed, a § 1927 inquiry focuses on deeds, not labels. *See FM Industries*, 614 F.3d at 340–41; *Claiborne*, 414 F.3d at 723 (language of § 1927 focuses on individual signer of document).

*Second*, the record shows that each of the sanctioned attorneys played very different roles in the underlying case. With respect to the type of direct conduct contemplated by the *FM Industries* and *Claiborne* courts, their actions consisted of the following:

- Paul Duffy appeared in the removed action on August 17, 2013. Dkt. 11. Although Duffy's name and address appeared on the First Amended Complaint, he did not sign or file that pleading, and his name was not on the original state court complaint. AA-101–102, AA-108, AA-116. Between the time at which the litigation was removed to federal court and Plaintiff's voluntary dis-

missal, Duffy's involvement in the case consisted of the following: (1) signing and filing the emergency motion for limited early discovery from the ISP defendants (AA-78); (2) attending, but not participating in, the August 20, 2012 hearing on that motion (AA-38); (3) responding to motions to dismiss brought by Smith, AT&T, and Comcast, which were not ruled upon (Dkt. 39, 40, 41); and (4) filing the Plaintiff's Rule 41(a)(1) notice of voluntary dismissal (AA-32).

- John Steele first appeared in the action on August 20, 2012—the same day as the motion hearing on Plaintiff's emergency motion for limited early discovery—and withdrew from his representation with the district court's permission on March 7, 2013. AA-34, AA-58; Dkt. 58. During the interim, Steele: (1) attended the August 20, 2012 motion hearing and participated in oral argument (AA-38); and (2) attended a telephonic scheduling and discovery conference on October 25, 2012 (Dkt. 49). Steele neither signed nor filed any pleadings or motions during the course of his representation.

- Paul Hansmeier, like Steele, first appeared in the action on August 20, 2012.[3] Hansmeier withdrew from his representation with the district court's permission less than three months later, on November 15, 2012. AA-36; Dkt. 56. During the interim, Hansmeier: (1) attended, but did not participate in, the August 20, 2012 motion hearing (AA-38); (2) attended the October 25, 2012 telephonic scheduling and discovery conference (Dkt. 49); and (3) signed and filed a ten-page opposition to the joint motion for a stay of discovery (Dkt 50).

Each of the sanctioned attorneys took minimal discrete actions in the case. Duffy's only substantive actions in the removed case were signing

---

[3] Via a motion for admission pro hac vice, granted the following day. AA-57; Dkt. 24.

the discovery motion, responding to the Defendants' motions to dismiss, and dismissing the case; Steele's only substantive act was to present oral argument at a single hearing; and Hansmeier's only substantive act was to sign an opposition to the Defendants' motion to stay discovery. Yet, these minimal actions gave rise to over a quarter-million dollars in sanctions. More importantly, the actions taken by each were different and varied. Thus, the district court's decision to sanction these three attorneys jointly and severally for the entirety of the litigation cannot be squared with the logical apportionment of responsibility among attorneys envisioned by the *FM Industries* and *Claiborne* courts.

The district court erred as a matter of law by failing to make any analysis of the attorneys' varied roles in the case. The district court claimed to have "carefully considered the interrelationship between Duffy, Hansmeier, and Steele," and found that they "acted in concert throughout the entirety of the proceedings in this matter." SA-12–13. However, this erroneous finding is a mere conclusion, supported by no pertinent analysis, and contradicted by the facts in the record. For example, the record clearly shows Hansmeier had no role in the case whatsoever until his *pro hac vice* motion on August 20, 2013—seventeen days after Hoerner filed the First Amended Complaint. AA-80; Dkt. 15.

The district court's main justification for sanctions was that the First Amended Complaint asserted "baseless" claims. Yet, the district court imposed over a quarter-million dollars in sanctions against attorneys who did not sign the complaint, while declining to sanction or even examine the role of the attorney who actually signed the complaint. Two of these attorneys had not even appeared at the time the time the amended complaint was removed. Moreover, it imposed sanctions jointly and severally, without analysis of each individual's separate actions. This result is facially illogical, and the district court's failure to make individualized findings of direct responsibility was reversible error. *Pruitt v. Mote*, 503 F.3d 647,

660 (7th Cir. 2007) (failure to undertake a necessary inquiry is an abuse of discretion).

## B. The § 1927 Motions by AT&T and Comcast Were Untimely, and Should Not Have Been Considered.

The district court erred by considering, and granting, the § 1927 motions brought by AT&T and Comcast. Because AT&T and Comcast brought their § 1927 motions over seven months after Plaintiff's voluntary dismissal of the action, these motions were not brought within a reasonable time. AT&T and Comcast's unreasonable delay should have deprived the district court of jurisdiction to consider or grant their § 1927 motions.

This Court has stated that, absent a specific statute or other rule, a motion for attorneys' fees under 28 U.S.C. § 1927 must be brought "within 'a reasonable time,' or as 'expeditiously as possible' after a judgment on the merits is entered." *Overnite Transp. Co. v. Chicago Indus. Tire Co.*, 697 F.2d 789, 793 (7th Cir. 1983) (citing *Terket v. Lund*, 623 F.2d 29 (7th Cir. 1980). In *Overnite Transportation Co. v. Chicago Industrial Tire Co.*, this Court set aside and vacated a district court's award of attorney fees under § 1927 where the movants had waited until eight months after dismissal and two months after affirmance on appeal to bring their § 1927 motion. *Id.* This Court held that the § 1927 motion was untimely and the district court was without jurisdiction to act on the motion. *Id.* at 793–94.

This requirement of reasonable timeliness for § 1927 motions is applicable here as well. While *Overnite Transportation* dealt specifically with a situation where an action was dismissed by the court on the merits, the requirement of reasonable timeliness need not and should not be confined to such a disposition. This Court has previously examined the timeliness of a motion for sanctions filed after voluntary dismissal under Rule 41(a)(1) by comparing the filing date of the sanctions motion to the date of voluntary dismissal. *Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1079–80 (7th Cir. 1987) (in context of Rule 11). And this Court pre-

viously established a general requirement of reasonable timeliness in *Terket v. Lund*, where this Court wrote that "district courts in this circuit should proceed with attorneys' fees motions, *even after an appeal is filed*, as expeditiously as possible." 623 F.2d 29, 34 (7th Cir. 1980) (emphasis added) (implying that the requirement of expediency is not limited only to where a merits appeal is contemplated); *see also Overnite Transp. Co.*, 697 F.2d at 793 (citing *Terket* as establishing "a general rule"). Furthermore, a general requirement of reasonable timeliness for § 1927 motions is echoed by other circuits. *See Steinert v. Winn Group, Inc.*, 440 F.3d 1214, 1223 (10th Cir. 2006) ("[R]esort to § 1927 should not be unnecessarily or unreasonably delayed.") Thus, the requirement that § 1927 motions be brought within a reasonable time is general and applicable here, and should have been examined by comparing the date of voluntary dismissal to the date of the sanctions motion.

In the instant case, AT&T and Comcast waited more than seven months after Lightspeed's March 21, 2013 voluntary dismissal of the action under Rule 41(a)(1) to file their § 1927 sanctions motions. *Compare* AA-32, *with* Dkt. 78, 82. These motions were also filed more than seven months after Smith had initially moved for § 1927 sanctions on April 5, 2013. Dkt. 61. Neither AT&T nor Comcast provided any explanation for their extreme delay, in their motion papers or otherwise. *See generally* Dkt. 78, 82. Despite the issue having been raised before it (*e.g.*, Dkt. 86, at 4), the district court wholly failed to address the ISPs' more than seven-month delay in its order granting the fee motions of AT&T and Comcast. *See generally* SA-1–13.

This delay of over seven months was unreasonable. AT&T and Comcast were on notice that Smith was seeking § 1927 sanctions as of April 5, 2013, since they were served with Smith's motion by CM/ECF, and provided no excuse or explanation for their extreme delay. This delay is comparable to the delay this Court disapproved of in *Overnite Transportation*, and even more inexcusable here since there could be no confusion regard-

ing the effect of a pending appeal where the Plaintiff had voluntarily dis-
missed under Rule 41(a)(1). *See* 697 F.2d at 792–93 (disapproving of an
eight-month delay). The district court erred by considering AT&T and
Comcast's § 1927 motions, because the unreasonable delay of those mo-
tions should have deprived the district court of jurisdiction to entertain
them. *Id.* at 793–94 ("[T]he district court was without jurisdiction to act
on the motion."). Further, even if the delay were not unreasonable on its
face, the district court's failure to address the issue would itself constitute
an abuse of discretion requiring reversal and remand. *Pruitt*, 503 F.3d at
660 (failure to undertake a necessary inquiry is an abuse of discretion).

## III.   The District Court Erred by Making Factual Findings and Imposing Sanctions Unsupported by the Record

Where district courts impose "substantial awards," this Court has in-
structed that they must "state with some specificity the reasons for the
imposition of a sanction." *Brown*, 830 F.2d at 1438. Here, the district court
imposed sanctions of over a quarter-million dollars, and committed clear
error by making findings without explanation or clear support from the
record. *See Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 936
(7th Cir. 1989) (en banc) ("Deferential review will not prevent this court
from ensuring that district judges reflect seriously, and consider fully, be-
fore imposing (or denying) sanctions.").

For example, the district court made no findings of delay, instead im-
posing sanctions for the filing and prosecution of an allegedly baseless
complaint—but it failed to explain how or why the claims were baseless.
The district court failed to acknowledge favorable authority, or even its
own early expression of optimism regarding the merits of the case. The
district court drew an improper inference of bad faith from Plaintiff's vol-
untary dismissal where the record shows valid, good-faith reasons for it,
and the district court found a handful of uncontroverted statements to be

lies. Where, as here, the district court reaches conclusory findings without sufficient explanation and without clear support from the record, the district court's decision must be reversed. *See Ross v. City of Waukegan*, 5 F.3d 1084, 1089 (7th Cir. 1993) (to affirm without explanation or clear support from record "would render us no more than a rubber stamp").

## A. Delay is normally a prerequisite for sanctions under § 1927, but the district court failed to make any findings sufficient to show that the sanctioned attorneys caused needless delay.

There are two theories by which a district court may impose sanctions under 28 U.S.C. § 1927 on an attorney. The first theory is a direct application of the statute's legislative purpose of deterring dilatory litigation practices, as summarized by this Court in *Overnight Transportation Co. v. Chicago Industrial Tire Co.* 697 F.2d 789, 794 (7th Cir. 1983) (statute specifically targets dilatory litigation practices); *see also Reid v. United States*, 715 F.2d 1148, 1154 (7th Cir. 1983) (§ 1927 only for "needless delay"). This theory was not used by the district court in the underlying action. To the contrary, the district court cited no facts and made no findings relating to any dilatory tactics, and instead used an alternate theory allowing § 1927 sanctions in limited circumstances based upon the filing and prosecution of a complaint.

Indeed, the district court based the entirety of its rationale for sanctions on the filing and prosecution of what it deemed to be a meritless complaint, and failed to point to any specific conduct by the sanctioned attorneys which multiplied the proceedings. In its initial order, the court stated simply that it agreed with Smith that Plaintiff's claims were baseless, that Plaintiff had "pressed for a meritless 'emergency' discovery hearing," and that "[t]he litigation smacked of bullying pretense." SA-14. However, Smith did not attend the August 20, 2013 discovery hearing or otherwise file papers contesting Plaintiff's emergency discovery motion. AA-38. That event therefore could not have multiplied the proceedings, or have alone served as the basis for § 1927 sanctions as to Smith. *Claiborne*,

414 F.3d at 722. Aside from its reference to the August 20, 2013 hearing, the district court's comments refer generically to the filing and prosecution of the complaint, rather than to any specific conduct by a specific attorney. SA-14–15.

In its final order, which also awarded fees to AT&T and Comcast, the district court reiterated its prior conclusion that "Plaintiff filed and pursued claims against Smith that Plaintiff knew were baseless from the start." SA-1–2. The district court further stated that Plaintiff named AT&T and Comcast as Defendants "without any valid claims," and that this "unreasonably and vexatiously multiplied the proceedings" by requiring AT&T and Comcast to attend various hearings and respond to various motions. SA-9–10. Again, these comments refer generically to the filing and prosecution of the complaint, and not to specific conduct by the sanctioned attorneys. While the district court referred to "a relentless willingness to lie to the Court on paper and in person," the only conduct it identified in support of this finding were statements made by Steele and Hansmeier during the November 13, 2013 sanctions hearing (addressed separately in Part III.E), which were not dilatory. SA-10–11. Most notably, in its final order, the district court awarded fees to Smith, AT&T, and Comcast "for all time expended from the filing of the amended complaint and the removal of the case to federal court in August 2012." SA-11. In sum, the district court did not consider, discuss, or award fees under § 1927 based on the excess costs incurred from specific dilatory conduct. Instead, the district court awarded fees for the entirety of the action, stemming from the filing and prosecution of the complaint itself. Thus, the district court's award of sanctions must be evaluated under the exceptional secondary formula outlined in *Overnite Transportation*.

**B. The alternate § 1927 theory employed by the district court, *i.e.* "where the suit was without either a legal or factual basis and the attorney was or should have been aware of this fact," is unsupported by the record.**

*Overnite Transportation* established an exceptional application of § 1927 to award fees in "situations where the suit was without either a legal or factual basis and the attorney was or should have been aware of this fact." 697 F.2d at 794. Only under this § 1927 theory is an award of attorneys' fees for the entirety of an action possible, instead of a lesser award for specific excesses. *See id.*; *Claiborne*, 414 F.3d at 722. However, this theory is wholly inapplicable here, where the record shows that the district court initially expressed a muted optimism regarding the case, and where the district court failed to explain with specificity how or why Plaintiff's claims were baseless. Furthermore, it is unclear how or why this theory should apply to Steele, Hansmeier, and Duffy jointly and severally where the first two *had not even appeared* on behalf of the Plaintiff at the time the First Amended Complaint was filed, and where the First Amended Complaint was actually signed by attorney Kevin Hoerner.

The § 1927 theory established in *Overnite* allows sanctions for filing a baseless claim, but it excludes excludes claims supported by an arguable legal theory even if that theory turns out to be incorrect. 697 F.2d at 794–95. Under this theory, "it is not sufficient that the claim be found meritless; the claim must be without a plausible legal or factual basis and lacking in justification." *Knorr Brake*, 738 F.2d at 226. "[S]anctions are not automatically warranted where a party loses a dispositive motion," but may be imposed where a factual or legal deficiency in the complaint "should have been obvious" to counsel. *Walter v. Fiorenzo*, 840 F.2d 427, 435–36 (7th Cir. 1988) (upholding § 1927 sanction for baseless claim after summary judgment where counsel had nearly four years of discovery to establish facts and district court had already dismissed three other similarly-situated defendants).

The *Overnite* court provided an instructive example of the use of this § 1927 theory to impose attorneys' fees for an entire case, rather than for specific excesses due to specific conduct: a case where the plaintiff's attorney was a medical doctor, but nevertheless prosecuted a frivolous medical malpractice case on behalf of his client. 697 F.2d at 794 (citing *Harrell v. Joffrion*, 73 F.R.D. 267, 268 (W.D. La.), *aff'd without opinion*, 545 F.2d 167 (5th Cir. 1976)). This Court revisited this § 1927 theory in *Claiborne v. Wisdom*, affirming an award of "the full amount of the defendants' attorneys' fees" under § 1927 where the plaintiff's attorney had "pursued a number of claims without any factual basis," a finding that went "to the heart of the case." 414 F.3d at 722. However, in finding the suit to be baseless, the district court in *Claiborne* had explained specifically that a punitive damages claim was factually baseless due to the plaintiff's own admission, that none of the witnesses called by the plaintiff had corroborated her sexual harassment and intimidation claims, and that another claim was time-barred. *Id.* at 720. These findings went "to the heart of the case." *Id.* at 722.

Here, in contrast, the district court failed to make any statements explaining specifically how or why Plaintiff's claims against Smith, AT&T, or Comcast were baseless and lacking in justification. In its initial order, the district court merely stated that "[t]he litigation smacked of bullying pretense." SA-14. At the November 13, 2013 hearing, the district court stated that "[t]his was abusive litigation. This is simply filing a lawsuit to do discovery to find out if you can sue somebody." AA-26. And in its final order, the district court merely stated, without more, that Plaintiff did not have "any valid claims" against AT&T or Comcast. SA-9–10.

The district court's failure to explain how or why Plaintiff's claims were baseless was itself an abuse of discretion, insofar as it makes appellate review difficult if not impossible. *Ross*, 5 F.3d at 1089 (to affirm without explanation or clear support from record "would render us no more than a rubber stamp"); *Mars Steel*, 880 F.2d at 936; *Brown*, 830 F.2d at

1438 (requiring that "in cases involving substantial awards a district
judge state with some specificity the reasons for the imposition of a sanc-
tion").

Furthermore, it is unclear from the record how or why Plaintiff or its
attorneys should have been on notice that their claims were baseless when
the district court had expressed a muted optimism regarding the case ear-
ly in the action. During the August 20, 2012 hearing on Plaintiff's emer-
gency motion for early discovery, the district court stated:

> I'll be honest about this. I'm skeptical about
> how this case could ever be put on, but my
> feet are not set in stone on it. I've seen some
> cases that didn't look too hot at the start that
> got better with time. This may be one of
> those cases. But you are going to have to go
> through the regular discovery route just like
> everyone else….

AA-55. In other words, as far back as August 20, 2012—before any De-
fendant had filed a motion to dismiss, and thus before the vast majority of
Defendants' fees had accumulated—the district court had expressed en-
couraging words regarding the viability of the case. While it is true that
attorneys have a continuing obligation to dismiss claims that are no long-
er viable, *Dahnke v. Teamsters Local 695*, 906 F.2d 1192, 1201 n.6 (7th
Cir. 1990), the district court gave no reason in the above excerpt for a rea-
sonably careful attorney to suspect that his claims would be held to be
wholly baseless. To the contrary, the district court expressed a muted op-
timism regarding the improvement of the case "with time," comparing the
case to others in the court's experience that had in fact improved. AA-55.

The district court's observation at the August 20, 2012 hearing that
the case could improve is especially important in light of the district
court's heavy reliance on that hearing. In its October 30 initial order
granting § 1927 sanctions, the district court stated that it was "particular-

35

ly informed by the in-court hearing on Plaintiff's 'emergency' motion held
before the undersigned." SA-14. Thus, while the district court sanctioned
the Appellant attorneys for the entirety of the litigation, it did so "particu-
larly" based upon a hearing in which the district court expressed a muted
optimism regarding the future improvement of the case—giving Plaintiff
and its attorneys no notice that their claims would later be deemed base-
less. It is unclear how the decision to file and prosecute the action could
have been objectively unreasonable under the circumstances, in light of
the district court's early statement regarding the viability of the case and
its failure to explain how or why Plaintiff's claims were baseless.

## C. The district court committed clear error in finding that Plaintiff's suit was baseless, because the suit was supported by an arguable legal theory and was not entirely without color.

In addition to failing to explain why it found the First Amended Com-
plaint baseless, the district court also failed to take favorable authority
from other jurisdictions into account. Plaintiff's claims were supported by
arguable legal theories, many of which had been expressly approved by
other courts. For a district court to enter a finding of baselessness, "it is
not sufficient that the claim be found meritless; the claim must be without
a plausible legal or factual basis and lacking in justification." *Knorr
Brake*, 738 F.2d at 226. This Court has stated that disagreements among
judges as to the merits of an issue can support the reasonableness of a
party's arguments. *Indianapolis Colts v. Mayor and City Council of Bal-
timore*, 775 F.2d 177, 182 (7th Cir. 1985) (in context of Rule 11). Here,
while the district court may have found Plaintiff's action to be meritless, it
was clear error to find the action baseless where Plaintiff's arguments had
been approved by other courts.

The district court declined to discuss any favorable citations from other
jurisdictions in its final order. *See generally* SA-1–13. And at the Novem-
ber hearing, when Steele began explaining favorable authority from other

jurisdictions, the district court cut him off, stating: "Mr. Steele, you are in the United States Court of … Southern District of Illinois." AA-28.

However, Plaintiff's decision to name the ISPs as defendants was not without color; such action had been expressly approved in similar circumstances. In one case, Judge Baker of the Central District of Illinois denied discovery of the identities of anonymous internet subscribers because the plaintiff did *not* name the ISPs as defendants:

> Certainly there are existing, identified entities who could be named as defendants that have control over or know the identity of a particular internet service address customer. Their being named in the suit would give the court an entity upon whom process could possibly be served and provide personal jurisdiction over identified parties to the suit.

Order on Motion for Expedited Discovery, *VPR Internationale v. Does 1– 1017*, No. 2:11-cv-02068-HAB-DGB, at 1 (C.D. Ill. Mar. 9, 2011) (Dkt. No. 9) (attached in Appendix at AA-117). In other words, the district court found an action that is *mandatory* in the Central District of Illinois to be *sanctionable* in the Southern District of Illinois.

Plaintiff also provided the district court with an example of a case in Arizona where similar claims to its own had been held sufficient to survive a motion to dismiss. Dkt. 63, at 3. And other courts have agreed that ISPs cannot resist subpoenas for subscriber information by standing in the shoes of their subscribers. For example, contemporaneous with the Plaintiff's filing of the First Amended Complaint, Judge Beryl A. Howell of the District of Columbia entered a 42-page memorandum order extensively analyzing the various issues commonly raised by ISPs in opposition to subpoenas for the identifying information of subscribers, and ultimately siding with the arguments voiced by Plaintiff in this action. *See generally AF Holdings LLC v. Does 1–1,058*, No. 12-0048, 2012 WL 3204917 (D.D.C.

Aug. 6, 2012) (attached in record at Dkt. 09-2). Put together, all of these authorities suggested that Plaintiff could assert valid claims in good faith against the ISPs and Smith. Although the district court may have had the discretion to deem Plaintiff's claims meritless, it was clear error to find that they were baseless—and that the attorneys should have known they were baseless—where other judges had disagreed. *See Indianapolis Colts*, 775 F.2d at 182; *Knorr Brake*, 738 F.2d at 226.

**D. The district court committed clear error in drawing an inference of bad faith and/or baselessness from Plaintiff's voluntary dismissal, because the record showed good-faith reasons for dismissal.**

As discussed previously, the district court failed to explain how or why Plaintiff's claims were baseless, or why Plaintiff and its attorneys should have known that they were. However, the district court did imply that it drew an inference of bad faith or baselessness from Plaintiff's voluntary dismissal of the action under Rule 41(a)(1): "Plaintiff continued to advance its baseless claims until the Court ruled that no discovery would be forth-coming until the motions to dismiss … were ruled on. Rather than waiting for the Court's ruling, however, Plaintiff dismissed all of its claims." SA-9. An inference of bad faith was improper under the circumstances of this case because alternate good-faith reasons existed for Plaintiff's voluntary dismissal and are supported by the record.

As a preliminary matter, the Supreme Court has carefully delineated the relationship between dismissals under Rule 41(a)(1) and sanctions. A plaintiff has a "right to one free dismissal," and while a plaintiff may still be sanctioned after dismissal for filing baseless papers, that is "a separate abuse of the judicial system, subject to separate sanction." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 397–98 (1990). Therefore, sanctions should be considered as a separate matter; the dismissal should not be used to support sanctions against Plaintiff or its counsel because a plaintiff has an absolute "right" to a Rule 41(a)(1) dismissal.

Even assuming it can be proper to draw an inference from a Rule 41 dismissal, Plaintiff did not simply "cut its losses and run out of court, using Rule 41 as an emergency exit." *Cooter & Gell*, 496 U.S. at 390 (internal quotation omitted). Plaintiff filed vigorous oppositions to each motion to dismiss. Dkt. 39, 40, 44. Plaintiff then patiently waited almost five months for a decision on those motions before finally dismissing its action on March 21, 2013. AA-32. The district court also attempted to link the dismissal to the magistrate's order "that no discovery would be forthcoming until the motions to dismiss … were ruled on." SA-9. But the order staying discovery was entered on November 7, 2012, more than *four months prior* to Plaintiff's voluntary dismissal. Dkt. 53. The record does not reflect that Plaintiff ran out of court to escape an unfavorable ruling; to the contrary, it shows that Plaintiff was reasonably patient.

The Rule 41(a)(1) dismissal here was an especially inappropriate source for an inference of baselessness, because Plaintiff had provided at least two good-faith reasons for its dismissal. *First*, in a declaration filed with Plaintiff's emergency motion for early discovery from the ISP defendants, the CEO of Lightspeed stated that in the past two months, Plaintiff's websites had been targeted by 9,955 unique hackers worldwide, and that there had been 78,298 attempts to breach Plaintiff's systems. AA-63. The First Amended Complaint had alleged that the continuing onslaught of hacking against Plaintiff was damaging and imposing significant costs on his business. AA-92. And, in fact, after the early discovery motion was denied, the CEO of Lightspeed began attempting to sell his ownership of the company and leave the business. Dkt. 75. Thus, dismissal may be explained as the result of the hacking epidemic having finally overwhelmed Plaintiff's financial wherewithal to sustain its litigation posture.

*Second*, in the same declaration, the CEO of Lightspeed stated that AT&T and Comcast maintain subscriber information for only a specific period of time, and that each day that passed therefore reduced Plaintiff's ability to prove its case. AA-64. Indeed, in its August 16, 2012 emergency

motion for early discovery, Plaintiff asked for an order requiring the ISPs
to send an evidence-preservation notice to their subscribers (identified by
IP address in the First Amended Complaint) so that these people would be
put on notice of their responsibility to preserve potentially "case-critical
electronically stored evidence." AA-60, AA-72. However, Plaintiff was de-
nied this, normal discovery was stayed pending the outcome of the mo-
tions to dismiss, and the motions to dismiss remained fully-briefed on the
district court's docket but undecided for over four months before Plaintiff's
voluntary dismissal on March 21, 2013. This was over *seven months* after
Plaintiff made its unsuccessful motion for evidence-preservation letters to
be sent. Thus, dismissal may also be explained as the result of Plaintiff's
determination that the "case-critical electronically stored evidence" it had
previously sought was no longer likely to exist. Ultimately, the very same
reasons that Plaintiff unsuccessfully sought emergency early discovery
were valid and plausible good-faith reasons to dismiss the case. In light of
these alternate explanations for the Rule 41(a)(1) dismissal, the district
court's negative inference was clear error.

## E. The district court committed clear error in finding that the sanctioned attorneys exhibited "a serious and studied disregard for the orderly process of justice."

The district court found that the sanctioned attorneys exhibited a "se-
rious and studied disregard for the orderly process of justice" based upon a
"relentless willingness to lie to the Court on paper and in person." SA-10.
The only instance of misconduct cited by the district court in support of
this finding was that "at the November 13 hearing, Hansmeier skirted the
Court's direct questions, Steele made feigned protestations, and both flat-
out lied about their association with Prenda Law, Inc. in the face of docu-
mentary evidence on the record in this case, and their sworn declarations
in other cases." SA-10–11. However, the district court's findings against
these attorneys constitute clear error based upon mistakes of fact, as the

statements by Steele and Hansmeier at the hearing are supported by the record.

As a preliminary matter, the district court failed to identify any example of alleged misconduct by attorney Duffy—it cited actions only by Steele and Hansmeier at the November 13, 2013 hearing. *Id.* Duffy did not even speak at the November 13 hearing, other than to state his name. AA-5. Thus, the district court's finding of misconduct with regard to Duffy must be overturned as clear error, because it is unsupported by any explanation. *Ross*, 5 F.3d at 1089; *Mars Steel*, 880 F.2d at 936; *see also Brown*, 830 F.2d at 1438.

Only a few statements of fact were made by Steele and Hansmeier at the November 13, 2013 hearing:

- Hansmeier stated that he "appeared through Alpha Law Firm, not Prenda Law, Inc." AA-10, AA-20–21. He stated that he had been practicing through Alpha Law Firm during the case. AA-18.

- Hansmeier stated that he first learned of Smith's motion for § 1927 sanctions when he "got a phone call from Paul Duffy" telling him that the motion had been granted. AA-18.

- In response to the district court's question whether Hansmeier had previously associated with Prenda Law, Inc., Hansmeier stated that "I'm trying to wrack my memory. I don't know of another appearance that I have had for Prenda law firm. I can't think of one." AA-22.

- Steele stated that his involvement in the case was limited to his appearance at the August 20, 2012 hearing, to a telephonic scheduling conference, and that he "maybe appeared a couple

more times." AA-25. Steele stated that he did not file the case.
AA-27–28.

- Steele stated that he had first learned of Smith's motion for
  § 1927 sanctions when "Paul Hansmeier called me." AA-25.

- Steele stated that he had no ownership interest in Prenda Law,
  Inc., and that he had ceased practicing law. AA-24–25.

None of these statements support the district court's conclusion that
these attorneys had "flat-out lied" to the court. Hansmeier's motion for
admission pro hac vice did not mention Prenda Law, Inc., and he identi-
fied himself at the August 20, 2012 motion hearing as associated with Al-
pha Law Firm. AA-38, AA-57. Although he submitted one document with
a signature block stating that he was of counsel to Prenda Law, Inc. (Dkt.
50, at 9), he acknowledged this at the hearing and attempted to explain
before being cut off by the district court. AA-22. Next, Hansmeier's state-
ment that, upon "wracking his memory," he could not think of other ap-
pearances for Prenda Law, Inc. cannot be characterized as a lie. It was
expressly limited by his recollection at the time of the hearing. Steele's
statements that he did not file the case and had limited involvement re-
flect the record. Finally, Steele's statement that he had no ownership in-
terest in Prenda Law, Inc. is not contradicted by anything in the record,
because it is true. There was nothing showing an ownership interest. An
"of counsel" position does not imply ownership; to the contrary, it implies
that an attorney assists on only a limited basis.

Steele and Hansmeier's statements were not "flat-out lie[s]," and they
certainly do not show a "relentless willingness to lie to the Court." SA-10–
11. Because it did not explain its finding other than by reference to these
statements, the district court's finding that the sanctioned attorneys
evinced a "serious and studied disregard for the orderly process of justice"

was clear error and an abuse of discretion. *Ross*, 5 F.3d at 1089; *Mars Steel*, 880 F.2d at 936; *see also Brown*, 830 F.2d at 1438.

## CONCLUSION

The district court has an obligation to abide by the precedent of this Court when considering the imposition of sanctions under 28 U.S.C. § 1927. The district court has a duty to provide notice and an opportunity to be heard to the sanctioned attorneys. The district court further has a duty to undertake necessary inquiries, including determining the personal responsibility of each attorney and determining whether unreasonable delay has deprived it of jurisdiction to consider a § 1927 motion. The district court also has a basic duty to explain large sanctions with specificity, and to make findings only where they are supported by the record. As a matter of law, the district court was wrong to impose sanctions without due process, and was wrong to impose sanctions without considering the crucial issues of personal responsibility or timeliness. The district court erred further by making findings, and imposing over a quarter-million dollars in sanctions, without explanation or clear support in the record. This Court should reverse the sanctions orders.

DATED: January 27, 2014

/s/ Paul Hansmeier
Paul Hansmeier
100 South Fifth Street, Suite 1900
Minneapolis, MN 55402
612-234-5744
*In propria persona*

/s/ Paul Duffy  (with consent)
Paul Duffy
2. N. LaSalle Street, 13th Floor
Chicago, IL 60602
312-952-6136
*In propria persona*

/s/ John Steele  (with consent)
John Steele
1111 Lincoln Road, Suite 400
Miami Beach, FL 33139
786-571-8131
*In propria persona*

**Certificate of Compliance
With Type-Volume Limitation, Typeface
Requirements, And Type Style Requirements**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 13,956 words, including headings, footnotes, and quotations, and excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Circuit Rule 32(b), and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Office Word 2007 with 12-point Century Schoolbook font.

DATED: January 27, 2014

/s/ Paul Hansmeier
Paul Hansmeier
100 South Fifth Street, Suite 1900
Minneapolis, MN 55402
612-234-5744

## Statutory Addendum

**28 U.S.C. § 1927:**

Any attorney or other person admitted to conduct cases in any court of the United States or any territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

**Fed. R. Civ. P. 41:**

(a)  Voluntary Dismissal.

    (1) By the Plaintiff.

        (A)   Without a Court Order. Subject to Rules 23(e), 23.1(c), 23.2, and 66 and any applicable federal statute, the plaintiff may dismiss an action without a court order by filing:

           (i)   a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment […]

# REQUIRED SHORT APPENDIX

# REQUIRED SHORT APPENDIX

## Table of Contents

| Document description | Location in Record | Page No. |
|---|---|---|
| Circuit Rule 30(d) Statement | N/A | ii |
| Memorandum and Order Denying Motions to Vacate and/or Reconsider and Granting Motions for Attorney Fees | Dkt. 100 | SA-1 |
| Memorandum and Order Granting Motion for Attorney Fees | Dkt. 65 | SA-14 |

## CIRCUIT RULE 30(d) STATEMENT

Pursuant to Circuit Rule 30(d), the undersigned certifies that the material required by Circuit Rule 30(a) is included in the required short appendix. All other material required by Circuit Rule 30(b) is included in the separately-bound appendix.

DATED: January 27, 2014

/s/ Paul Hansmeier
Paul Hansmeier
100 South Fifth Street, Suite 1900
Minneapolis, MN 55402
612-234-5744

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

LIGHTSPEED MEDIA CORP.,      )
                        )
         Plaintiff,       )
                        )
vs.                          )      CIVIL NO. 12-889-GPM
                        )
ANTHONY SMITH, et al.,        )
                        )
         Defendants.     )

## MEMORANDUM AND ORDER

**MURPHY, District Judge:**

Currently before the Court are motions to vacate, or in the alternative reconsider the order granting fees and costs to Defendant Anthony Smith filed by Paul Duffy, Paul Hansmeier, and John Steele (Docs. 66, 68, 74). Also before the Court are motions for fees and costs filed by Defendants ComCast Cable Communications, LLC ("ComCast") and SBC Internet Services, Inc. d/b/a AT&T Internet Services ("AT&T") (Docs. 78, 82), as well as itemizations of fees and costs filed by Smith, ComCast, and AT&T (Docs. 90, 97, 98).

The Court initially reserved ruling on these motions (*See* Doc. 96); for the reasons set forth below, the Court now denies the motions to vacate or reconsider filed by Duffy, Hansmeier, and Steele, and grants the motions for attorney fees filed by ComCast and AT&T.

## BACKGROUND

On March 21, 2013, this matter was voluntarily dismissed by Plaintiff Lightspeed Media Corp. (Docs. 59, 60). Following the dismissal, the Court granted Defendant Anthony Smith's motion requesting attorney fees and costs because Plaintiff filed and pursued claims against Smith

SA-1

that Plaintiff knew were baseless from the start (Doc. 65). The Court granted Smith his fees and costs under 28 U.S.C. § 1927 to be paid by Plaintiff's counsel: John Steele, Paul Duffy, and Paul Hansmeier (Doc. 65). The Court's order granting Mr. Smith attorney fees was entered on October 30, 2013 (Doc. 65). The very next day, Paul Hansmeier filed a motion to vacate, or in the alternative reconsider, the order (Docs. 66, 67) arguing that he should not be liable for Smith's attorney fees. John Steele and Paul Duffy then filed similar motions on November 4, 2013 (Docs. 68, 69), and November 7, 2013 (Docs. 74, 75), respectively. Defendant Anthony Smith filed a response in opposition to Duffy, Hansmeier, and Steele's motions (Doc. 92).

After the Court granted Smith's request for fees and costs, Defendants ComCast and AT&T then filed motions also requesting fees and costs (Docs. 78, 82). Hansmeier filed a response in opposition to ComCast and AT&T's motions (Doc. 86), as did Steele (Doc. 88). Smith filed a reply to Hansmeier and Steele's responses (Doc. 93).

A hearing was held on November 13, 2013 on all of the above motions (Doc. 70). Duffy and Steele appeared at the hearing in person, and Hansmeier appeared by phone (Doc. 96).

## DISCUSSION

## I. MOTIONS TO VACATE, OR IN THE ALTERNATIVE RECONSIDER ORDER GRANTING ATTORNEY FEES TO DEFENDANT ANTHONY SMITH

The Court will first address the motions to vacate, or in the alternative, reconsider its order granting fees and costs to Anthony Smith under 28 U.S.C. § 1927 filed by Plaintiff's current attorney of record, Paul Duffy, and former attorneys of record, Paul Hansmeier and John Steele (Docs. 66, 68, 74). Because the motions fail to state any grounds warranting relief under Rule 60(b), the motions to vacate or reconsider are denied.

SA-2

### A.  Legal Standard

Technically, a "Motion to Reconsider" does not exist under the Federal Rules of Civil Procedure.  But such motions are routinely filed, and they are generally treated as motions to alter or amend judgment under Rule 59(e), or motions for relief from a judgment or order under Rule 60(b).  *See e.g.*, *Mares v. Busby*, 34 F.3d 533, 535 (7th Cir. 1994).  At issue here is the Court's order granting Smith's request for attorney fees (Doc. 65), which is only an interim order because the Court has not yet determined the amount of attorney fees that Smith is entitled to.  *Midlock v. Apple Vacations W., Inc.*, 406 F.3d 453, 456 (7th Cir. 2005).  Since the order is not a final order and no judgment has been entered, Rule 59(e) is not applicable.  Therefore, the motions filed by Duffy, Hansmeier, and Steele must be evaluated under Rule 60(b).

"Relief under Rule 60(b) is an extraordinary remedy that is to be granted only in exceptional circumstances."  *Talano v. N.W. Med. Faculty Found., Inc.,* 273 F.3d 757, 762 (7th Cir. 2001).  Rule 60(b) permits a court to grant relief based on one of six specific grounds listed in the rule.  *Talano*, 273 F.3d at 762; FED. R. CIV. P. 60(b).  The request for relief "must be shaped to the specific grounds . . . listed in Rule 60(b)—they cannot be general pleas for relief."  *United States v. Deutsch*, 981 F.2d 299, 301 (7th Cir. 1992).

### B.  Paul Duffy's Motion to Vacate or Reconsider (Doc. 74)

The Court turns first to Duffy's motion to vacate or reconsider because it can be easily dismissed as he does not state a proper legal basis for relief under Rule 60(b).  In his motion, Duffy argues that the Court should reconsider its order granting attorney fees to Anthony Smith because he took only "five discrete actions" in this matter, none of which multiplied the proceedings or were unreasonable or vexatious (Doc. 75).  In the alternative, if Duffy's actions

were sanctionable, Smith failed to identify any "excess" expenses directly traceable to Duffy's actions (Doc. 75).

Duffy's motion is not based on any of the grounds specified in Rule 60(b).  Instead, Duffy merely takes umbrage with the Court's analysis of the evidence and its ruling, and rehashes old arguments that he made and the Court denied in his response to Anthony Smith's motion for attorney fees (*Compare* Doc. 63 *with* Docs. 74, 75).  Neither of these things warrants relief under Rule 60(b).  *Karraker v. Rent–A–Center, Inc.,* 411 F.3d 831, 837 (7th Cir. 2005) (Rule 60(b) motion is not the time to rehash previously rejected arguments); *Russell v. Delco Remy Div. of General Motors Corp.,* 51 F.3d 746, 749 (7th Cir. 1995) (Rule 60 "was designed to address mistakes attributable to special circumstances and not merely to erroneous applications of law.")

Because Duffy's motion fails to state any grounds for relief within the scope of Rule 60(b), his motion to vacate or reconsider (Doc. 74) is **DENIED**.

### C.  Paul Hansmeier and John Steele's Motions to Vacate or Reconsider (Docs. 66, 68)

The Court next turns to the motions to vacate or reconsider filed by Hansmeier and Steele. These motions can be considered in tandem because they are largely identical.  Like Duffy, Hansmeier and Steele argue that that the Court should reconsider its order granting attorney fees to Anthony Smith because they took only a small number of "discrete actions" in this matter, none of which multiplied the proceedings or were unreasonable or vexatious (Docs. 67, 69).  As previously stated, these arguments do not translate into a legal basis warranting relief under Rule 60(b).

Hansmeier and Steele also argue that the Court should vacate its order because it imposed

sanctions on them without giving them notice or an opportunity to be heard in violation of their right to due process (Docs. 67, 69). Specifically, they claim that they were not apprised of Smith's motion for attorney fees until after the District Court had entered its order imposing sanctions on October 30, 2013 because Smith failed to serve them. Smith's motion for attorney fees was electronically filed on April 5, 2013, and the CM/ECF system sent notice to all attorneys of record (Doc. 61). Hansmeier and Steele claim that since they were no longer attorneys of record (*See* Doc.s 56, 58), they did not receive the notice (Doc. 67, 69).

"[T]he requirements of due process of law are applicable to a proceeding to impose sanctions, entitling a party or attorney to notice and opportunity to respond[.]" *Kapco Mfg. Co., Inc. v. C & O Enterprises, Inc.*, 886 F.2d 1485, 1494 (7th Cir. 1989). Despite their protestations, the Court finds that Hansmeier and Steele both received all the process they were due.

First and foremost, Steele's claim that he never got notice of Smith's motion for fees is baseless. A review of CM/ECF records reveals that notice of Smith's motion for attorney fees (Doc. 61) went to numerous email addresses, including: docket@wefightpiracy.com—an email address used by both Steele and Paul Duffy.[1] Therefore, it is irrefutable that Steele had actual notice of Smith's motion for attorney fees prior to the Court's order granting the motion.

Second, Smith served Paul Duffy, Plaintiff's lead attorney, with his motion for attorney fees; and service on Duffy was effective for all of Plaintiff's counsel, past and present, including Steele and Hansmeier. Rule 5 does not require motions to be served on all counsel of record, but merely requires that the pleadings be served on all parties. *See* FED. R. CIV. P. 5(a)(1). Furthermore, service is not required on each of several counsel appearing on behalf of a party.

---

[1] Prior to his termination as counsel for Plaintiff, Steele received electronic notices from the CM/ECF system at three email addresses: (1) jlsteele@wefightpiracy.com, (2) docket@wefightpiracy.com, and (3) nawersal@wefightpiracy.com (*See, e.g.,* Doc. 57). He now receives electronic notices at johnlsteele33140@gmail.com (Doc. 88).

*Daniel Int'l Corp. v. Fischbach & Moore, Inc.*, 916 F.2d 1061, 1063 (5th Cir. 1990). "Service upon one, but not all, of its counsel is effective service." *Id.* (serving "local" counsel and not "lead" counsel complied with Rule 5 because the Rule does not "require service on each of several counsel appearing on behalf of a party"); *Buchanan v. Sherrill*, 51 F.3d 227, 228 (10th Cir. 1995) (serving motion for summary judgment only on plaintiff's attorney who had recently entered an appearance and not on attorney who had represented plaintiff from the outset complied with Rule 5 because the rule does not require service on both attorneys of record).

Here, Smith served his motion for attorney fees on Duffy, and that is all he was required to do. He did not have to also personally serve Steele and Hansmeier. This is particularly true since Duffy, Steele, and Hansmeier are all associated with the same law firm: Prenda Law, Inc. The docket sheet indicates Paul Duffy's firm is Prenda Law; Steele listed his firm as Prenda Law on his entry of appearance and his motion to withdraw (Docs. 20, 57); and Hansmeier indicated that he was "of counsel" to Prenda Law, Inc. (Doc. 50). The Court also takes judicial notice that Steele submitted a declaration in the Central District of California swearing that he was "of counsel with the law firm, Prenda Law, Inc." and that Hansmeier was "also of counsel to the firm." *Ingenuity 13 LLC v. John Doe*, Case No. 12-cv-8333-ODW (C.D. Cal. March 8, 2013), ECF No. 83).

Aside from being from the same firm, there is other evidence suggesting these three men worked in concert with one another. First, Duffy, Steele, and Hansmeier used each other's CM/ECF login information, and/or filed documents on behalf of one another. For example, both Steele and Hansmeier used Duffy's CM/ECF login information to enter their appearances, or Duffy attempted to do so for them (*See* Doc. 11, 15); Hansmeier also used Steele's CM/ECF login

information to file his motion to continue, or Steele filed it on Hansmeier's behalf (Doc. 73).

Second, the similarities in documents filed by Duffy, Steele, and Hansmeier indicate an ongoing relationship.   For example, in the instant motions to vacate/reconsider, the three men use identical formatting from the caption, to the font, and the signature block, and the substance is largely the same (*Compare* Docs. 66, 67, 67-1 *with* Docs. 68, 68-1, 68-2, 69 *with* Docs. 74, 75).   Third, the Court takes judicial notice that several other federal courts have found Duffy, Steele, and Hansmeier to be in cahoots.   Most notably, Judge Otis Wright in the Central District of California found that Steele, Hansmeier, and Duffy were "starving attorneys" with "shattered law practices" who conspired to use copyright laws to "plunder the citizenry," and he adopted into his findings a chart showing the relationship between these men and others associated with Prenda Law. *Ingenuity 13 LLC v. John Doe*, Case No. 12-cv-8333-ODW, 2013 WL 1898633, at *1–*2, *5 (C.D. Cal. May 6, 2013).   *See also AF Holdings, LLC v. John Doe(s)*, Case No. 12-cv-1445-JNE-FLN, (D. Minn. November 6, 2013), ECF No. 67 (noting Judge Wright's findings, but stating "[i]t would not be a wise use of the Court's limited resources to *sua sponte* attempt to fully untangle the relationship between Hansmeier, Steele, Duffy, [and others]"); *AF Holdings, LLC v. Navasca*, Case No. 12-cv-02396-EMC, 2013 WL 5701104, at *2 (N.D. Cal. Oct. 16, 2013) (adopting Judge Wright's findings with respect to AF Holdings, Steele, and Hansmeier's "alter ego relationship, their conduct, and their business model"); *AF Holdings, LLC v. Chowdhury*, Case No. 12-cv-12105-JLT (D. Mass. October 22, 2013), ECF No. 34 (finding AF Holdings, LLC was "an alias of its counsel, Prenda Law, Inc., its principals, attorneys John L. Steele, Paul A. Duffy, and Paul R. Hansmeier, and its paralegal, Mark Lutz").

Based on this information, the Court has no doubt that Duffy, Steele, and Hansmeier are

closely associated and acted in concert to file and prosecute this frivolous lawsuit. Therefore, Smith's service on Duffy was also effective for Steele and Hansmeier. As such, Steel and Hansmeier had adequate notice of Smith's motion, and the deadline for response papers, but chose to disregard it.

However, assuming arguendo that Steele and Hansmeier did not have notice or an opportunity to be heard before the Court imposed sanctions, the due process violation was subsequently cured when the Court reheard the issue on November 13 at Steele and Hansmeier's request. Steele and Hansmeier had ample notice of the November 13 hearing, and they knew that they could sanctioned and ordered to pay Anthony Smith's attorney fees. The written briefs that Steele and Hansmeier filed in advance of that hearing, and the statements they made at the hearing itself gave them the opportunity to confront the Court's belief that they had engaged in sanctionable conduct and to try to convince the Court that they should not be sanctioned. "So it was essentially a no-harm, no-foul situation because, generally speaking, 'procedural errors are cured by holding a new hearing in compliance with due process requirements.'" *In re Hancock*, 192 F.3d 1083, 1086 (7th Cir. 1999), *quoting Batanic v. Immigration and Naturalization Service*, 12 F.3d 662, 667 (7th Cir. 1993) (holding imposition of sanctions was a deprivation of due process, however said deprivation was cured when the court stayed the sanctions order and scheduled another hearing). *See also Wright v. CompGeeks.com*, 429 F. App'x 693, 698 (10th Cir. 2011); *Powell v. Cadwell*, 42 F. App'x 821, 822 (7th Cir. 2002); *In re Rimsat, Ltd.*, 212 F.3d 1039, 1044 (7th Cir. 2000).

Because Hansmeier and Steele's motions fail to state any grounds for relief within the scope of Rule 60(b), and they were not deprived of due process with respect to the imposition of

sanctions, their motions to vacate or reconsider (Docs. 66, 68) are **DENIED**.

## II.  MOTIONS FOR ATTORNEY FEES

The Court will next address the motions for attorney fees and costs under § 1927 filed by Defendants ComCast and AT&T (Docs. 78, 82).   Under 28 U.S.C. §1927, "any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.  The purpose of § 1927 "is to deter frivolous litigation and abusive practices by attorneys, and to ensure that those who create unnecessary costs also bear them."  *Kapco Mfg. Co., Inc. v. C & O Enterprises, Inc.*, 886 F.2d 1485, 1491 (7th Cir. 1989) (internal citations omitted).   While there is no catch-all definition for either 'unreasonably' or 'vexatiously,' the Seventh Circuit has upheld sanctions under this statute when counsel acted recklessly, raised baseless claims despite notice of the frivolous nature of these claims, or otherwise showed indifference to statutes, rules, or court orders.  *Jolly Grp., Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006); *Kotsilieris v. Chalmers,* 966 F.2d 1181, 1184 (7th Cir. 1992).

ComCast and AT&T argue that fees are appropriate here because Plaintiff raised baseless claims against them, despite knowledge those claims were frivolous, in an effort to obtain the discovery that the Illinois Supreme Court had previously thwarted (Docs. 78, 82).   Furthermore, Plaintiff continued to advance its baseless claims until the Court ruled that no discovery would be forthcoming until the motions to dismiss filed by Defendants were ruled on (Docs. 78, 82).  Rather than waiting for the Court's ruling, however, Plaintiff dismissed all of its claims (Docs. 78, 82).

The Court agrees with ComCast and AT&T.  By naming ComCast and AT&T as

Page 9 of 13

SA-9

Defendants without any valid claims in an attempt to make an end run around the Illinois Supreme

Court's denial of discovery, Plaintiff unreasonably and vexatiously multiplied the proceedings in

this matter.   Namely, Defendants' attorneys were forced to respond to and appear for a hearing on

Plaintiff's emergency motion for expedited discovery, to file various motions to dismiss, to appear

for a scheduling and discovery conference, and to file a motion to stay discovery.

The Court also finds that Duffy, Hansmeier, and Steele exhibited a "serious and studied

disregard for the orderly process of justice." *Jolly Grp., Ltd. v. Medline Indus., Inc.*, 435 F.3d 717,

720 (7th Cir. 2006), *quoting Pacific Dunlop Holdings, Inc. v. Barosh,* 22 F.3d 113, 119 (7th Cir.

1994).   These men have shown a relentless willingness to lie to the Court on paper and in person,

despite being on notice that they were facing sanctions in this Court, being sanctioned by other

courts,[2] and being referred to state and federal bars,[3] the United States Attorney in at least two

districts,[4] one state Attorney General,[5] and the Internal Revenue Service.[6]   For example, at the

November 13 hearing, Hansmeier skirted the Court's direct questions, Steele made feigned

protestations, and both flat-out lied about their association with Prenda Law, Inc. in the face of

---

[2] *AF Holdings, LLC v. John Doe(s)*, Case No. 12-cv-1445-JNE-FLN, (D. Minn. November 6, 2013), ECF No. 67 (ordering AF Holdings and Prenda Law to repay settlement money and all attorney fees and costs incurred by defendants); *Ingenuity 13 LLC v. John Doe*, Case No. 12-cv-8333-ODW, 2013 WL 1898633, at *5–6 (C.D. Cal. May 6, 2013) (jointly and severally liable for defendant's attorney fees and costs in the amount of $81, 319.72); *AF Holdings, LLC v. Chowdhury*, Case No. 12-cv-12105-JLT (D. Mass. October 22, 2013), ECF No. 34 (jointly and severally liable for defendant's in the amount of $21,393.60, with fees and costs trebled for a total judgment of $64,180.80).
[3] *AF Holdings, LLC v. John Doe(s)*, Case No. 12-cv-1445-JNE-FLN, (D. Minn. November 6, 2013), ECF No. 67; *Ingenuity 13 LLC v. John Doe*, Case No. 12-cv-8333-ODW, 2013 WL 1898633, at *5 (C.D. Cal. May 6, 2013)
[4] *AF Holdings, LLC v. John Doe(s)*, Case No. 12-cv-1445-JNE-FLN, (D. Minn. November 6, 2013), ECF No. 67; *Ingenuity 13 LLC v. John Doe*, Case No. 12-cv-8333-ODW, 2013 WL 1898633, at *5 (C.D. Cal. May 6, 2013)
[5] *AF Holdings, LLC v. John Doe(s)*, Case No. 12-cv-1445-JNE-FLN, (D. Minn. November 6, 2013), ECF No. 67
[6] *Ingenuity 13 LLC v. John Doe*, Case No. 12-cv-8333-ODW, 2013 WL 1898633, at *5 (C.D. Cal. May 6, 2013)

documentary evidence on the record in this case, and their sworn declarations in other cases.[7]

Accordingly, the imposition of attorneys' fees under § 1927 is appropriate here—from the inception of the claims through the present. *See Overnite Transp. Co. v. Chi. Indus. Tire Co.,* 697 F.2d 789, 794 (7th Cir.1983) (§ 1927 can reach the filing of the complaint where the lawsuit was legally meritless from the outset, and counsel should have known that it was); *Kotsilieris v. Chalmers,* 966 F.2d 1181, 1184–85 (7th Cir. 1992) (§ 1927 sanctions appropriate where counsel pursued baseless claim despite receiving notice that claims were frivolous).

## III.     ITEMIZATIONS OF FEES AND COSTS

For the reasons stated above, and in accordance with the Court's previous order (Doc. 65), Defendants have been awarded reasonable attorney fees and costs under 28 U.S.C. § 1927 for all time expended from the filing of the amended complaint and the removal of the case to federal court in August 2012.

Anthony Smith seeks a total of $72,367.00 in attorney fees and costs (Doc. 90).   This total includes $72,150.40 in attorney fees for 187.2 hours of work done by Smith's attorneys from the time Smith was served with summons in August 2012 through May 2013 (Doc. 90-1).   The hours were billed at a rate of $409.00 per hour for partners Dan Booth and Jason Sweet and $200.00 per hour for (Doc. 90-1).   This total also includes $216.20 in costs (Doc. 90-1).

SBC Internet Services, Inc. d/b/a AT&T Internet Services ("AT&T") seeks a total of $119,637.05 in attorney fees and costs (Doc. 97).   This total includes $870.29 in costs and $38,987.83 in attorney fees for the law firm of Hepler Broom for approximately 158.7 hours of

---

[7] Steele submitted a declaration in the Central District of California swearing that he was "of counsel with the law firm, Prenda Law, Inc." and that Hansmeier was "also of counsel to the firm." *Ingenuity 13 LLC v. John Doe*, Case No. 12-cv-8333-ODW (C.D. Cal. March 8, 2013), ECF No. 83).

work from the time the case was removed to federal court in August 2012 through November 2013 (Doc. 97-1). The hours were billed at various billing rates ranging from $295.00 to $110.00 per hour (Doc. 97-1). The total sought by AT&T also includes $864.92 in costs and $80,524.50 in attorney fees for the law firm of Locke Lord, LLP for approximately 215 hours of work from the time the case was removed to federal court in August 2012 through November 2013(Doc. 97-2). The hours were billed at various billing rates ranging from $250 to $555 per hour (Doc. 97-2).

ComCast Cable Communications, LLC seeks a total of $69,021.26 in attorney fees and costs (Doc. 98). This total includes $806.98 in costs and $57,144.28 in attorney fees for the law firm of Davis Wright Tremaine, LLP ("DWT") for approximately 132 hours of work from the time the case was removed to federal court in August 2012 through April 2013 (Doc. 98-1). The hours were billed at various billing rates ranging from $531.00 to $212.50 per hour (Doc. 98-1). This total also includes $11,070.00 in attorney fees for the law firm of Lashley & Baer, P.C. for 36.9 hours of work at a billing rate of $300.00 per hour (Doc. 98-2).

The Court notes that Paul Duffy, Paul Hansmeier, and John Steele had an opportunity to respond, and did respond, to Smith, AT&T, and ComCast's general requests for fees and costs (Docs. 63, 66, 68, 74, 86). Duffy, Hansmeier, and Steele have not filed responses to the specific itemizations, but having reviewed the itemizations and declarations in support thereof, the Court finds a response is not necessary because no further information is required for this ruling.

After carefully considering the itemizations of fees and costs and the declarations in support thereof submitted by the attorneys for Smith, AT&T, and ComCast, the Court finds the time spent and the amounts charged by Smith, AT&T, and ComCast to be reasonable. The Court has also carefully considered the interrelationship between Duffy, Hansmeier, and Steele. The

Court finds, that these men acted in concert throughout the entirety of the proceedings in this matter, share total responsibility for their actions, and are jointly and severally liable for the fees and costs of Defendants.

## CONCLUSION

The motions to vacate, or in the alternative, to reconsider the order granting Anthony Smith's motion for attorney fees filed by Paul Duffy (Doc. 74), Paul Hansmeier (Doc. 66), and John Steele (Doc. 68) are **DENIED.**

The motions for attorney fees and costs filed by Defendants ComCast Cable Communications, LLC (Doc. 78) and SBC Internet Services, Inc. d/b/a AT&T Internet Services (Doc. 82) are **GRANTED**.

It is **ORDERED** that pursuant to 28 U.S.C § 1927, Paul Duffy, Paul Hansmeier, and John Steele are jointly and severally liable, and shall pay within 14 days of this order, attorney fees and costs to Defendant Anthony Smith in the amount of $72,367.00, to AT&T in the amount of $119,637.05, and to ComCast in the amount of $69,021.26 for a total judgment of $261,025.11, with interest as provided by law.

**IT IS SO ORDERED.**

DATED: November 27, 2013

s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge

SA-13

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LIGHTSPEED MEDIA CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )    CIVIL NO. 12-889-GPM |
| | ) |
| ANTHONY SMITH, et al., | ) |
| | ) |
| Defendants. | ) |

## <u>MEMORANDUM AND ORDER</u>

**MURPHY, District Judge:**

Under 28 U.S.C. §1927, "an attorney who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *Kotsilieris v. Chalmers,* 966 F.2d 1181, 1183 (7th Cir. 1992). While there is no catch-all definition for either 'unreasonably' or 'vexatiously,' the Seventh Circuit has upheld sanctions under this statute when counsel acted recklessly, raised baseless claims despite notice of the frivolous nature of these claims, or otherwise showed indifference to statutes, rules, or court orders. *Id.* at 1184. Now before this Court is Defendant's motion for attorney fees because Plaintiff raised baseless claims despite knowledge those claims were frivolous and pressed for a meritless 'emergency' discovery hearing (Doc. 61). The Court agrees with Defendant. The litigation smacked of bullying pretense. The Court has read all the papers and is particularly informed by the in-court hearing on Plaintiff's "emergency" motion held before the undersigned (Doc. 23). The motion for attorney

SA-14

fees made pursuant to 28 U.S.C. §1927 is **GRANTED**.   Defendant Anthony Smith is

**ORDERED** to file an itemization of fees on or before November 8, 2013.

**IT IS SO ORDERED.**

**DATED**: October 30, 2013

/s/ *G. Patrick Murphy*

G. PATRICK MURPHY
United States District Judge

SA-15