UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **LIGHTSPEED MEDIA CORP.,** *Plaintiff*, v. **ANTHONY SMITH, et al.,** *Defendants*. | Civil No. 3:12-cv-889-DRH-SCW |

**PAUL HANSMEIER'S SURREPLY TO THE DEFENDANTS' JOINT REPLY TO OPPOSITIONS OF PAUL DUFFY AND PAUL HANSMEIER TO MOTION FOR CONTEMPT, OR IN THE ALTERNATIVE, FOR AN ORDER TO PLAINTIFF'S COUNSEL TO SHOW CAUSE WHY THEY SHOULD NOT BE HELD IN CONTEMPT**

In their Reply (Dkt. 119) to Hansmeier's Opposition (Dkt. 112), Movants raise two new issues. First, Movants argue that, as a matter of law, district courts may not impose sanctions in the form of money judgments. (Reply, at 2-3.) Second, Movants reference a sanctions order issued from the U.S. District Court for the Northern District of Illinois against attorney Paul Duffy and Prenda Law, Inc., but not attorneys John Steele or Hansmeier. Hansmeier responds to each of these issues, respectively.

I. **THE MOVANTS' CITATION TO *CLEVELAND HAIR CLINIC* IS UNAVAILING**

The Movants cite to *Cleveland Hair Clinic*[1] for the proposition that "the contempt power is an appropriate way to enforce a sanction for misconduct, which is not an ordinary money judgment." (*See* Reply, at 2-3.) The Movants are quite correct that sanctions taking the form of equitable decrees may be enforced through contempt proceedings. Indeed, in *Cleveland Hair*

---

[1] As discussed in Hansmeier's motion papers, the Movants attempted to deceive the Court and the Respondents by swapping the *Cleveland Hair Clinic* decision cited to in their Contempt Motion with a later decision of the Seventh Circuit case bearing the same caption.

*Clinic*, the district court imposed a sanction in the form of an equitable decree to pay $174,121 to the plaintiff's counsel, "forthwith." 104 F.3d 123, 124 (7th Cir. 1997). When the plaintiff's counsel appeared before the district court and stated, brazenly, that he would not comply, contempt proceedings were clearly appropriate.

What *Cleveland Hair Clinic* does not stand for—and does not even suggest, for that matter—is the proposition that a district court lacks the discretion to impose sanctions in the form of a money judgment, rather than an equitable decree. There are numerous examples of district courts imposing sanctions under 28 U.S.C. § 1927 in the form of money judgments. For example, the sanctions order precipitating the appeal in *FM Indus., Inc. v. Citicorp Credit Servs., Inc.*, 614 F.3d 335 (7th Cir. 2010), was an award of $35,000 in attorneys' fees under 28 U.S.C. § 1927. *See FM Indus., Inc. v. Citicorp Credit Servs., Inc.*, No. 1:07-cv-1794 (N.D. Ill. Feb. 4, 2009), at ECF No. 553. The order was ultimately enforced through citations to discover assets and writs of execution. *See, e.g., id.*, at ECF No. 588. In another example, in *M.B. Financial Bank, N.A. v. Stevens*, the district court imposed sanctions under 28 U.S.C. § 1927, declaring the sanctioned counsel to be "personally liable" to the moving parties for $10,155.00 and $2,432.00, respectively. No. 1:11-cv-798 (N.D. Ill. July 5, 2011), at ECF No. 90.

Accordingly, the issue before this Court is not whether equitable decrees can be enforced through contempt proceedings—they clearly can—but rather, whether the November 27, 2013 Order was a money judgment or an equitable decree. On its face, the Order literally states that the sanctions award is a "total judgment of $261,025.11, with interest as provided by law." (*See* Dkt. 100, at 13.) While the Movants have previously seized on the "14 day" window referenced in the Order, this window is directly out of Fed. R. Civ. P. 62(a), which provides for an

automatic 14 day stay of execution after entry of judgment. Had the November 27, 2013 Order referenced any other number of days, the Movants' contention would be far more persuasive.

In summary, the Movants' discussion of *Cleveland Hair Clinic* is a canard. Neither the Movants nor Hansmeier dispute that equitable decrees may be enforced through contempt proceedings. But in placing such a strong focus on how equitable decrees are enforced, the Movants failed to meaningfully consider whether the November 27, 2013 Order is, in fact, one.

## II.   THE MOVANTS' DISCUSSION OF A THIRD-PARTY SANCTIONS ORDER IS INCOMPLETE

The Movants attempt to bias the Court by discussing a recent sanctions order issued from the U.S. District Court for the Northern District of Illinois. Yet, the Movants' approach to discussing that order is representative of the improper tactics that gave rise to the highly vulnerable November 27, 2013 Order.

The Movants' superficial reference to the Northern District of Illinois order fails to disclose several material facts concerning it, namely: (1) it was not issued against Hansmeier or Steele, neither of who appeared in the case; (2) the case involves different claims and facts than the matter before this Court; and (3) the sanctions were issued for alleged conduct that is very different than the conduct criticized in the November 27, 2013 Order. Further, the Movants precede their reference to the Northern District of Illinois order with a statement that "all three of the sanctioned attorneys saw fit to abuse the authority of state and federal courts in Illinois in connection with this case." Yet, they have no basis for suggesting that Hansmeier appeared in the state court action in connection with this case, because he did not. They also have no basis for suggesting that the Northern District of Illinois sanctions order has anything to do with Hansmeier or the issues before the Court, because it does not. In sum, the Movants failed to accurately distinguish among the actions of Hansmeier, Duffy and Steele.

This failure is consistent with tactics that preceded and ultimately contaminated the November 27, 2013 Order. It is clear that the Order relied heavily on the arguments asserted by Movants. Yet, the court was not well-served by Movants, whose approach to pursuing sanctions was inconsistent with bright-line Seventh Circuit precedent. For example, the Movants pursued sanctions against Hansmeier for bringing a baseless case, even though Hansmeier did not sign the complaint or even appear in the case until after the amended complaint was filed. In essence, Movants sought to hold Hansmeier vicariously liable for the act of asserting the amended complaint. And the court did. But the Seventh Circuit consistently reverses § 1927 sanctions orders imposing vicarious liability. *See, e.g., FM Indus., Inc. v. Citicorp Credit Servs., Inc.*, 614 F.3d 335 (7th Cir. 2010) ("Liability under § 1927 is direct, not vicarious").

The Movants' tendency to make superficial references to orders issued by other courts is exemplified by their suggestion that this Court follow the lead of the Honorable Judge Otis Wright, II of the U.S. District Court for the Central District of California, who issued punishing sanctions against the three attorneys sanctioned in this case. Indeed, there are several linguistic and substantive indications from the November 27, 2013 Order that suggest it was heavily influenced by Judge Wright's order. The Movants have repeatedly suggested that this Court do what Judge Wright did, but fail to inform the Court of developments in the appeal of that order. In their opening brief to the Ninth Circuit, the sanctioned parties asserted that under the Ninth Circuit's "prior precedent, a district court's sanctioning authority does not permit the imposition of punitive sanctions." In the opposition brief, the respondent was forced to concede this point, stating, "[C]urrent circuit precedent suggests that a court lacks the inherent authority to issue a deterrent sanction over and above compensatory damages." Thus, the Movants appear to be

urging the Court to take actions that adverse parties agree was inconsistent with Ninth Circuit precedent, to say nothing of Seventh Circuit precedent.

Ultimately, the Movants' references to other orders do more harm than good. The Movants do not discuss the facts of those cases, whether those orders violated binding precedent or whether they have any relevance to the decision facing the Court. The only purpose these references serve is to bias the Court's decision-making process. But the benefit of attaining bias should not, and cannot, trump the obligations of Movants' counsel as officers of the court.

## CONCLUSION

The Court should deny the contempt motion.

February 11, 2014

Respectfully submitted,

/s/ Paul Hansmeier
Paul Hansmeier
80 S. 8th St. Ste 900
Minneapolis, MN 55402
612-234-5744

5