IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

LIGHTSPEED MEDIA CORP.,

    Plaintiff,

vs.                                      No.   3:12-cv-889-DRH-SCW

ANTHONY SMITH, et al.,

    Defendants.

MEMORANDUM AND ORDER

HERNDON, Chief Judge:

This matter is before the Court on Defendants Anthony Smith ("Smith"), Comcast Cable Communications LLC and Comcast Corporate Representative #1 (together, "Comcast"), and SBC Internet Services, Inc. d/b/a AT&T Internet Services' ("AT&T") (collectively "defendants") joint motion for contempt, or in the alternative, for an order to plaintiff's counsel to show cause why they each should not be held in contempt (Doc. 107).  Plaintiff's counsel Paul Duffy ("Duffy") and Paul Hansmeier ("Hansmeier") responded (Docs. 111, 113).   At the direction of the Court (Docs. 112, 117), defendants filed a reply (Doc. 119).   On February 13, 2014, the Court held a hearing on the issues (Doc. 123).   For the following reasons, the defendants' motion will be **GRANTED.**

I.   Background

On December 14, 2011, Lightspeed Media Corporation ("Lightspeed") filed suit in the Circuit Court of the Twentieth Judicial District in St. Clair County.

Lightspeed owns or operates one or more paid-subscription adult entertainment websites. In its first complaint, Lightspeed alleged that John Doe and more than 6,600 "co-conspirators" had gained unauthorized access to its website. On December 16, 2011, the circuit court granted an *ex parte* motion for leave to obtain discovery by subpoena, from dozens of Internet Service Providers ("ISPs"), of information personally identifying the defendants. AT&T and Comcast subsequently filed motions to quash the subpoenas and/or for a protective order. On May 22, 2013, the Illinois Supreme Court directed the circuit court to vacate its order denying the motion to quash.

On August 3, 2012, Lightspeed filed an amended complaint. Lightspeed contended that Smith accessed content from Lightspeed's password-protected websites without authorization. Lightspeed asserted that AT&T and Comcast improperly opposed Lightspeed's discovery, failed to act to protect Lightspeed's websites, and conspired with their customers to Lightspeed's detriment. Specifically, Lightspeed alleged 10 Counts: Computer Fraud and Abuse (Count I), Conversion (Count II), Unjust Enrichment (Count III), Unjust Enrichment (Count IV), Count V (Breach of Contract), Civil Conspiracy (Count VI), Civil Conspiracy (Count VII), Illinois Consumer Fraud and Deceptive Practices Act (Count VIII), Aiding and Abetting (Count X). AT&T removed this action to federal court on August 9, 2012.

Plaintiff thereafter filed an emergency motion for Discovery prior to the Rule 26(f) Conference (Doc. 9) requesting the ISP information. Judge G. Patrick

Murphy held a hearing on the issue and denied the motion (Doc. 23). Defendants each filed motions to dismiss (Docs. 26, 28, 36). Prior to the resolution of the motions to dismiss, Lightspeed entered a notice of voluntary dismissal on March 21, 2013. Defendants subsequently moved for attorney's fees pursuant to 28 U.S.C. § 1927 (Docs. 61, 78, 82). Judge Murphy granted Defendant Smith's motion (Doc. 65) and counsel (Duffy, Hansmeier, and John Steele ("Steele")) sought reconsideration of that order (Docs. 66, 68, 74). On November 13, 2013, Judge Murphy held a hearing on the motions for reconsideration and the motions for attorney's fees by ComCast and AT&T (Doc. 96) in which he deferred ruling.

On November 27, 2013, Judge Murphy denied the motions to vacate, or in the alternative, reconsider the order granting Smith's motion for attorney fees, granted ComCast's and AT&T's motions for attorney's fees, and ordered that pursuant to 28 U.S.C. § 1927, Duffy, Hansmeier, and Steele are jointly and severally liable, and shall pay within 14 days of the order (December 11, 2013), attorney fees and costs to Smith in the amount of $72,367.00, to AT&T in the amount of $119,637.05, and to ComCast in the amount of $69,021.26 for a total judgment of $261,00252.11 with interest as provided by law (Doc. 100). Duffy, Hansmeier, and Steele filed a notice of Appeal on December 12, 2013.

On December 27, 2013, defendants filed a joint motion for contempt, or in the alternative, for an order to plaintiffs' counsel to show cause why they each should not be held in contempt (Doc. 107). Plaintiff's counsel Duffy and Hansmeier responded (Doc. 111, 113), Steele filed a motion to stay the sanction's

order (Doc. 114), and, at the direction of the Court (Docs. 112, 118), defendants filed a reply (Doc. 119).

Defendants request 1) an order holding in contempt plaintiffs' counsel Steele, Duffy, and Hansmeier or, in the alternative, 2) an order requiring Duffy, Hansmeier and Steele to show cause why they should not each be held in contempt for their failure to timely comply with the fee order. In their reply, defendants focus on the contempt. They specifically request that this Court hold Duffy, Hansmeier and Steele in contempt of Court, and also order them to pay the defendants attorneys' fees incurred in seeking this finding of contempt, along with interest and additional daily fines for each day the sanctioned attorneys fail to make any and all payment(s) ordered.

Plaintiff's counsels' responses assert three points: (1) defendants have not submitted any evidence regarding compliance (Doc. 113 at 2), (2) the order is a money judgment and therefore not properly enforceable through contempt proceedings (Doc. 111 at 3-5; Doc. 113 at 2-4), and (3) defendants have otherwise failed to establish the elements of civil contempt (Doc. 111 at 5-6). Hansmeier further asserts that in the alternative, the Court should grant plaintiff's counsel leave to seek a stay of the November 27, 2013 order (Doc. 113 at 4-6).

The Court held a hearing on defendants' motion for contempt on February 13, 2014 (Doc. 124). During the proceedings, plaintiff's counsel admitted on the record to noncompliance, each stating that they had not paid the sanction amount to defendants or otherwise sought a supersedeas bond. The Court also addressed

plaintiff's counsels' argument that the Court should consider the sanctions order as a money judgment, concluding that the Court's order was not a money judgment but instead a sanctions order. The Court deferred ruling on the motion for contempt and directed plaintiff's counsel to file asset statements from a certified public accountant on or before February 24, 2014. The Court also considered Steele's motion to stay (Doc. 114) and heard arguments from the parties. The Court denied Steele's motion to stay on the record and addressed and similarly dismissed Hansmeier's stay request (Doc. 124).

## II. Analysis

### A. Civil Contempt

Federal courts have both inherent and statutory authority to punish for contempt and to coerce compliance with their orders. *International Union, UMWA v. Bagwell*, 512 U.S. 821, 831-833 (1994). To prevail on a request for a contempt finding, the moving party must establish by clear and convincing evidence that: (1) a court order sets forth an unambiguous command; (2) the alleged contemnor violated that command; (3) the violation was significant, meaning the alleged contemnor did not substantially comply with the order; and (4) the alleged contemnor failed to make a reasonable and diligent effort to comply. *S.E.C. v. Hyatt*, 621 F.3d 687, 692 (7th Cir. 2010).

There is no debate as to whether plaintiff's counsel significantly violated Judge Murphy's November 27, 2013 order (hereinafter "Sanctions Order"). As previously indicated, plaintiff's counsel has not made a single payment.

Furthermore, Duffy, Hansmeier, and Steele failed to make a reasonable and diligent effort to comply with the Sanctions Order. While Steele filed a motion to stay the Sanctions Order, this motion was not accompanied by a supersedeas bond and was filed untimely. *See* Fed. R. Civ. P. 62(d).

The key issue here is whether the Sanctions Order was "an unambiguous command." Plaintiff's counsel asserted that the Sanctions Order is a money judgment, not an equitable decree. At the show cause hearing, the Court held that the Sanctions Order was an equitable decree, specifically a sanctions order. However, plaintiff's counsel argues that this confusion is the primary reason they did not comply with the Sanctions Order. The Court finds this argument disingenuous. Seventh Circuit case law is quite clear. *See Cleveland Hair Clinic, Inc. v. Puig*, 106 F.3d 165, 166 (7th Cir. 1997) ("Use of contempt power is an appropriate way to enforce a sanction for misconduct, which is not an ordinary money judgment.") Furthermore, if plaintiff's counsel was confused, they could have filed a motion to clarify with Judge Murphy.

**B.     Inability to Pay**

At the show cause hearing, plaintiff's counsel emphatically indicated an inability to pay. Specifically, "I can't pay what I don't have" (Show Cause Hr'g Tr. 22:16-17 (Hansmeier)). Also, "[I]t's extremely important because if the Court issues sanction order for, I don't know, a billion dollars, we can't pay it. And I don't believe that there's any case law to establish that – there's not a debtor's prison. I mean if we can't pay it, we can't pay it" (Show Cause Hr'g Tr. 19:10-15

(Steele)). Plaintiff's counsel again pointed to their confusion over the nature of the Sanctions Order as the reason why they had not yet supplied the Court with their financial information. The Court therefore directed plaintiff's counsel to provide asset statements prepared by a certified public accountant on or before February 24, 2014. Plaintiff's counsel timely submitted financial condition statements to the Court *in camera*.

"Inability to pay is a valid defense in a contempt proceeding, but the party raising the defense has the burden of proving its inability to pay." *In re Re. Tech. Corp.*, 624 F.3d 376, 387 (7th Cir. 2010) (citing *United States v. Rylander*, 460 U.S. 752, 757 (1983)). In the case where there has been no attempt to comply with the Court's order, plaintiff's counsel must show a "complete inability to pay." *Id.* Plaintiff's counsel, "stated differently, . . . [has] the burden of establishing clearly, *plainly*, and *unmistakably* that compliance is *impossible*." *Id.* (internal citations and quotations omitted) (emphasis in original).

The Court finds that plaintiff's counsel has not met its burden. They submitted incomplete, and to say the least suspicious, statements of financial condition. Attached to each statement was a letter from their certified public accountant ("CPA"). In these letters, the CPA indicates a departure from generally accepted accounting principles. He further notes that plaintiff's counsel elected to omit substantially all of the disclosures required by generally accepted accounting principles. The Court finds these statements insufficient to establish plaintiff's counsel's inability to pay.

Plaintiff's counsel significantly violated an unambiguous order of the Court. They also failed meet their burden regarding their inability to pay defense. Accordingly, the Court finds plaintiff's counsel Paul Duffy, Paul Hansmeier, and John Steele in civil contempt and defendants' joint motion for contempt (Doc. 107) is **GRANTED.**

C.  **Civil Contempt Sanction**

"Sanctions for civil contempt are designed either to compel the contemnor into compliance with an existing court order or to compensate the complainant for losses sustained as a result of the contumacy." *U.S. v. Dowell*, 257 F.3d 694, 699 (7th Cir. 2001). Remedial sanctions compensate the complainant for his losses caused by the contemptuous conduct. *Id.* Coercive sanctions aim to coerce the contemnor's compliance with a court order. *Id.* A coercive sanction must afford the contemnor the opportunity to "purge", to avoid punishment by complying with the order. *Id.* The factors to be considered by the court in imposing a civil contempt sanction include: (1) Harm from noncompliance, (2) Probable effectiveness of the sanction, (3) Contemnor's financial resources and the burden the sanctions may impose; and (4) Contemnor's willfulness in disregarding the court's order. *United States v. United Mine Workers of America,* 330 U.S. 258, 303-304 (1947).

The Court must "consider the character and magnitude of the harm threatened by continued contumacy . . . ." *Id.* at 304. As to the character of the harm, the Court finds that plaintiff's counsel *wilfully* violated the Sanctions Order.

Plaintiff's attorneys have made no effort to comply. In fact, until defendants filed the current contempt motion, plaintiff's counsel had not addressed the Court regarding the Sanctions Order, merely filing a notice of appeal. While a violation need not be willful for the Court to impose civil contempt sanctions, willfulness inherent in the contemptuous act is a major consideration in determining the appropriate sanctions. *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 191 (1949) ("The absence of willfulness does not relieve from civil contempt"); *Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir. 1996); *Stotler and Co. v. Able*, 870 F.2d 1158, 1163 (7th Cir. 1989); *In re Federal Facilities Reality Trust,* 227 F.2d 657, 658 (7th Cir. 1955).

The Court also finds the magnitude of harm significant. As indicated in the Sanctions Order, this case is "baseless" (Doc. 100 at 9). Judge Murphy ordered sanctions for attorney's fees and costs because plaintiff "unreasonably and vexatiously multiplied the proceedings in this matter" (Doc. 100 at 10). Plaintiff's counsel's failure to address the Sanctions Order further multiplies the proceedings. Not only is the magnitude of the harm significant in financial terms for the defendant in added attorney's fees and costs of the contempt motion but also in regards to the integrity of the Court. The Court again notes that plaintiff's counsel made no effort to comply with the order to address the Court. Also, the Court cannot ignore the behavior of plaintiff's counsel before the undersigned at the show cause hearing. While the Court was unable to nail down any specific lies due, in significant part, to plaintiff's counsel excellent "attorney speak", the

misrepresentations and half-truths presented indicate plaintiff's counsel's clear disrespect of the Court.[1] Furthermore, as the Court indicated at the hearing in regards to Steele's motion to stay, "[W]ith respect to talking about the community, the community has to worry about lawyers who file unreasonable and vexatious claims. That's where the harm to the community is . . . . The community is worried about lawyers, worried about lawyers that file these kind[s] of lawsuits. So if, in fact, Judge Murphy is right – and for the time being until the Seventh Circuit says something differently, I have to assume he is – the community is worried about guys like you" (Show Cause Hr'g Tr. 38:6-15).

The Court is also directed to review plaintiff's counsel's financial resources. *United Mine Workers of Am.*, 330 U.S. at 304 ("[A] court which has returned a conviction for contempt must, in fixing the amount of a fine to be imposed . . . as a means of securing future compliance, consider the amount of [the party's] financial resources and the consequent seriousness of the burden to that particular [party].") As previously discussed, the Court has taken into consideration plaintiff's counsel's

---

[1] For example, in the show cause hearing, the parties addressed plaintiff's counsel's financial means. The Court specifically asked why plaintiff's counsel had not yet submitted their financial information to the Court. Hansmeier indicated that he had not provided this information as of yet because they were unsure as to whether the Court was going to rule the order a sanction's order or a money judgment. Again, Hansmeier indicated "I can't pay what I don't have." Bart Huffman, Attorney for AT&T, then indicated that plaintiff's counsel had mentioned that they have made millions of dollars. Steele objected to this characterization, and asked Mr. Huffman to indicate where he would have publically touted making millions of dollars. Mr. Huffman responded that he believed there was an article in FORBES. To which Mr. Steele responded, "No, absolutely, I never did, and I resent being told that I've said something that's not true. If Mr. Huffman would like to present something that I personally made money of a certain amount, feel free, but it will never come, Your Honor" (Show Cause Hr'g Tr. 23:16-20). After a quick Google search, the Court quickly comes across the following article: Kashmir Hill, *How Porn Copyright Lawyer John Steele Has Made A 'Few Million Dollars' Pursuing (Sometimes Innocent) 'Porn Pirates,"* FORBES, Oct. 15, 2012, *available at* http://www.forbes.com/sites/kashmirhill/2012/10/15/how-porn-copyright-lawyer-john-steele-justifies-his-pursuit-of-sometimes-innocent-porn-pirates/. Therein, Mr. Steele states in response to the article's author suggestion that he has made $15 million settling these suits, "Maybe a little less. We don't track the amount we've recovered. More than a few million." The Court notes that while it is true this is not a "certain amount", it is disingenuous to imply destitution given the statement and, at the very least, the Court deserved a full, truthful explanation of the statement.

ability to pay. The Court also now takes judicial notice of the same attorneys' ability to post a $101,650.00 supersedeas bond, Supersedeas Undertaking for Appeal, *Ingenuity 13 LLC v. John Doe*, No. 2:12-cv-08333-ODW-JCx (C.D. Cal. May 23, 2013), ECF No. 174, as well as their subsequent ability to post an additional bond in the amount of $135,933.66, Supersedeas Undertaking, *Ingenuity 13 LLC v. John Doe*, No. 2:12-cv-08333-ODW-JCx (C.D. Cal. July 23, 2013), ECF No. 229. Plaintiff's counsel clearly had the ability to pay in those instances and they failed to provide the Court with the information it needed in order to adequately make an accurate assessment regarding their current ability to pay.

As a preliminary matter, the Court **DIRECTS** plaintiff's counsel to pay interest on the sanction amounts pursuant to the Sanctions Order as provided by law. For clarification, the Court interprets this provision of the Sanctions Order as follows. The Court will apply the federal interest rate as contemplated in 28 U.S.C. § 1961, 18 U.S.C. § 3612, and 40 U.S.C. § 258(e)(1). These sections direct the Court to compute interest from the first day on which the defendant is liable for interest at a rate equal to the weekly average 1-year constant maturity Treasury yield for the calendar week preceding the first day on which the defendant is liable for interest. Plaintiff's counsel became liable for interest on December 11, 2013. Therefore the .13% interest rate from the week ending December 6, 2013 will apply. Plaintiff's counsel is responsible for the entire time period from the date of liability to the date of compliance, including those days during which this motion was

pending.

The Court believes that both coercive and remedial sanctions are warranted in this case.  See *United Mine Workers of Am.*, 330 U.S. at 302-303; *Shakman v. Democratic Organization of Cook County*, 533 F.2d 344, 349 (7th Cir. 1976); *Dowell,* 257 F.3d at 699.  The Court has determined this to be the most effective way to ensure compliance with the Sanctions Order and to uphold the integrity of the Court.

The Court sanctions plaintiff's attorneys in the amount of 10% of the original sanction amounts equally divided among Duffy, Steele, and Hansmeier.  This sanction is to be paid to the defendants as follows: $7,236.70 to Smith, $11,963.75 to AT&T, and $6,902.13 to ComCast, for a total amount of $26,102.58.  This remedial sanction contemplates the attorney's fees and costs incurred by defendants during the course of litigating this contempt motion.  The Court acknowledges that a lodestar calculation is traditionally used.  However, requiring defense counsel to provide billing statements would most certainly cause delay and further litigation thereby negating the goals of this order and only further harming the defendants.  The previous clarification regarding interest does not apply to this sanction.

Finally, plaintiff's counsel shall comply with the Sanctions Order and this order within 7 days, on or before March 31, 2014.  Compliance is construed by the Court as follows.  Plaintiff's counsel may make payment to all of the defendants of the ordered amounts in full.  Plaintiff's counsel may also file a motion to stay and

accompanying supersedeas bond of the full amount. Fed. R. Civ. P. 62(d). Bonds or payments of partial amounts will not be considered compliance with this Court's order. Failure to comply with this order in that timeframe shall result in a $500 per day per attorney fine for up to 30 days. After 30 days, this amount shall increase to $1,000 per day per attorney.

The Court notes that defendant, Smith filed a "Renewed Motion for Contempt" on March 20, 2014, as the Court was finishing up the final draft of this order. The Court will consider that motion as a motion for an additional sanction for contempt since it relates directly to representations made in Court and in the financial statements by plaintiff's counsel. Counsel, Steele, Duffy and Hansmeier, shall respond to the March 20 motion, no later than April 20, 2014. Upon reviewing those responses, the Court will consider whether to require another hearing and the range of sanctions that it may be considering, if any.

**IT IS SO ORDERED.**

Digitally signed by David R. Herndon
Date: 2014.03.24 13:04:51 -05'00'

**Chief Judge**
**United States District Court**