UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

LIGHSPEED MEDIA CORP.,
     *Plaintiff,*

     *v.*

ANTHONY SMITH, et al.,

     *Defendants.*

Civil No. 3:12-cv-889-DRH-SCW

PAUL HANSMEIER'S BRIEF IN OPPOSITION TO ANTHONY SMITH'S
RENEWED MOTION FOR CONTEMPT

## I.    INTRODUCTION

Anthony Smith's renewed contempt motion, premised on the ridiculous notion that Hansmeier has transferred assets off-shore, has zero factual basis and not an inkling of support in the 180-pages of "documents" attached to Smith's memorandum of law. Hansmeier categorically denies having an interest—direct, indirect or otherwise—in any off-shore bank account. Smith's accusation could not be more baseless, irresponsible or vexatious.

With the aid of extensive third-party subpoenas, Hansmeier's financial and banking records have been thoroughly scrutinized by Smith. What do these records show? The absence of assets belonging to Hansmeier. Indeed, while Smith obsesses over the records of John Steele and, to a much lesser extent, Paul Duffy, he barely mentions Hansmeier's name, much less offers documents that contradict any statement Hansmeier has made to the Court. Most significantly, there is not a

single discrepancy between Hansmeier's statement of financial position and the documents furnished by Smith.

In short, Hansmeier has done nothing warranting a further contempt finding, let alone the illegitimate forms of relief requested in Smith's motion—most of which are, in any event, moot due to the recent stay of the contempt order. As is demonstrated below, Smith's speculation rests on an embarrassingly inept collection of obvious irrelevancies. Smith's renewed motion is the very definition of baselessness. It should be denied.

## II.   BACKGROUND

It is important to put Smith's renewed motion in its proper context: Smith has enjoyed extraordinarily broad latitude in obtaining financial discovery in this matter. Among other topics, he has been allowed to subpoena the financial records for at least *eighteen* different persons and entities, including Hansmeier, over a period of time ranging from as far back as 2010 to the present day. The over 180-pages of documents attached to Smith's renewed motion suggest that Smith has obtained detailed, transaction-level information, for what appears to be every inflow and outflow of money that could under any theory—however far-fetched—be attributed to Hansmeier. Indeed, Smith's motion references specific checks issued in 2010, wire transfers initiated in 2011, credit card charges from 2012 and a payment made in 2013.

Yet, despite Smith's seemingly omniscient access to Hansmeier's financial transactions, despite his apparent possession of over three years of Hansmeier's

bank statements, credit card charges, wire transfers and checks (not to mention those of Steele, Duffy and over a dozen non-party entities), Smith has *totally* and *completely* failed to make a presentation of Hansmeier's ability to comply with the sanctions order.

The relevant inquiry, for purposes of Smith's renewed motion, is really quite simple: Between November 2013 (when the sanctions order issued) and the contempt order, did Hansmeier personally have an ability to pay $261,025.11? If the facts truly supported the proposition that Hansmeier did, in fact, have an ability to do so, then Smith could very easily make this showing by identifying an asset that Hansmeier failed to apply to the Sanctions Order. Smith makes no such showing.

Instead, Smith's Renewed Motion delves into such irrelevancies as blog sites and e-mail services allegedly subscribed to by Steele and financial transactions that occurred *years* ago. In reviewing the documents presented by Smith, the Court should ask itself: where are the wire transfer slips showing money transferred overseas; what about the bank account statements from November 2013 through March 2014; why is Smith unable to identify a single asset that Hansmeier failed to apply to the sanctions order? The answer, of course, is that Hansmeier did not transfer money overseas and did not have the financial capacity to comply with the sanctions order.

To recap: Hansmeier presented a statement of financial condition that was prepared by a Certified Public Accountant and which demonstrated that Hansmeier did not have the ability to pay $261,025.11. Smith, who has had sweeping access to

Hansmeier's financial records, has not identified a single asset that Hansmeier failed to apply to the Sanctions Order.

### III.    <u>ARGUMENT</u>

#### A.    **Legal Standard**

Smith bears the burden to prove by clear and convincing evidence that Hansmeier is in contempt. *FTC v. Trudeau*, 579 F.3d 754, 763 (7th Cir. 2009); *Goluba v. School District of Ripon*, 45 F.3d 1035, 1037 (7th Cir. 1995). Clear and convincing evidence is a high standard: Smith must "leave[] no reasonable doubt in the mind of the trier of fact as to the truth of the proposition[s] in question." As the Supreme Court has observed, "clear and convincing evidence" is "evidence so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Cruzan by Cruzan v. Director, Mo. Dept. of Health*, 497 U.S. 261, 285 n.11 (1990).

#### B.    **Smith Has Not Demonstrated That Hansmeier Had The Ability to Comply With the Sanctions Order**

Smith has not established by "clear and convincing" evidence—or any evidence, for that matter—that Hansmeier made a single misstatement regarding his ability to comply with the sanctions order. Indeed, Smith's renewed motion does not even reference a *single statement* Hansmeier has made during these proceedings. He certainly does not identify a *single misstatement*. Instead, Smith has provided the Court with 180-pages of unauthenticated, irrelevant and patently inadmissible pages of documents regarding events that transpired largely in 2011 and 2012.

### 1.    The Documents Obtained By Smith In Discovery Do Not Rebut Any Statement Hansmeier Has Made To This Court

Smith's renewed motion sets forth nine paragraphs of "evidence", which he submits as "proof" that Hansmeier and others "significantly understated" their "financial resources" and "acted to conceal or move assets off-shore." As is demonstrated below, Smith's presentation could not be more pathetic.

Smith's first paragraph discusses an alleged credit card application submitted by Steele in late-2011. The document Smith presents in support of his discussion is not authenticated in any manner whatsoever. Further, even if authentic, Steele's credit card application from over two years ago is not probative in any manner whatsoever of Hansmeier's financial position at the end of 2013.

Smith's second paragraph discusses a bank statement from September 2012 for a bank account owned by John Steele and a transfer of funds from that account. Once again, the documents presented in support of his discussion are not authenticated in any manner whatsoever. Further, even if authentic, Smith's discussion is not probative in any manner whatsoever with respect to Hansmeier's financial position at the end of 2013. Hansmeier has zero personal knowledge regarding these transfers and was not a source or recipient of the referenced funds. Smith does not suggest otherwise.

Smith's third paragraph discusses a modest one-time payment from Prenda Law, Inc. to a third-party law firm for legal and professional fees. The documents Smith relies on are not authenticated in any manner whatsoever. Further,

Hansmeier did not initiate or receive funds from the transfer. The transfer is not probative of Hansmeier's financial position at the time of the sanctions order.

Smith's fourth paragraph alludes to funds that allegedly flowed through four separate business entities. Once again, the documents Smith relies on are not authenticated in any manner whatsoever. Further, the alleged gross revenues of four separate business entities are not at issue in this proceeding. Businesses have costs, pay taxes and distribute proceeds according to shareholder interests. Among other things, Smith makes no showing of whether these businesses turned a profit and, if so, what Hansmeier's cut of those profits was. Further, Smith makes no showing of whether the money, if any, distributed to Hansmeier was sufficient to pay the sanctions order after accounting for taxes, ordinary living expenses, and the costs of overturning the punitive sanctions order issued in the Central District of California. For his part, Hansmeier has made such a showing by submitting a statement of financial position prepared by a Certified Public Accountant. Smith does not rebut Hansmeier's showing.

Smith's fifth paragraph alludes to forty-seven "mystery" bank accounts opened since 2010. Smith does not identify the bank accounts by account number or account holder, identify the person(s) who opened the accounts, demonstrate improper transfers from these accounts or even suggest that assets in these accounts were controlled by Hansmeier. Instead of making an fact-based showing on any of these points, Smith resorts to a flimsy suggestion of wrongdoing (e.g. "Several of these accounts were opened and closed so quickly as to suggest that

Plaintiff's Counsel have transferred monies between accounts and related entities in a deliberate attempt to obscure its sources and their current holdings"). But banks do not delete transaction information after forty-seven accounts are opened. If anyone was obscuring their current holdings, Smith could easily hold up an account statement to make the point. Smith does not demonstrate any improprieties in connection with these "mystery" accounts because, one must presume, no improprieties exist.

Smith's sixth paragraph describes transfers initiated by Steele in 2011. The documents cited by Smith are not authenticated. Hansmeier was neither a source nor a recipient of those funds and has no personal knowledge of the alleged transfers. As such, these transfers have no probative value with respect to Hansmeier's financial position at the time of the sanctions order.

Smith's seventh paragraph states that Steele and Duffy (but not Hansmeier) were authorized signers on certain bank accounts. This statement has no probative value with respect to Hansmeier's financial position at the time of the sanctions order. Smith further accuses Hansmeier of denying involvement in a long-dissolved company, Media Copyright Group LLC. Yet, Smith does not provide a *single* citation to any such denial.[1] Further, the documents relied on by Smith for his accusations are not authenticated in any manner whatsoever.

Smith's eighth and ninth paragraphs truly scrape the bottom of the barrel. Mr. Steele's subscription to a web blog, an aggregate of $2,100 in payments to

---

[1] Nor is his conclusory assertion that 6881 Forensics LLC is a d/b/a for Media Copyright Group LLC supported by a single corporate document.

Latvian-based vendor at the very beginning of 2011, and Mr. Steele's subscription to

a secure webmail provider are an utterly-comical substitute for demonstrations of

actual substantial transfers of funds to overseas accounts. Making matters worse,

the documents relied on by Smith are not authenticated. The *only* point

demonstrated by Smith's eighth and ninth paragraphs is the total lack of any

misstatement by Hansmeier or anyone else.

In the final analysis, Smith's breathtakingly broad discovery has established,

at the very most, that Steele applied for a credit card in 2011, that Steele

transferred funds between domestic bank accounts in 2011 and 2012, that a law

firm was paid a modest legal fee in 2012, that bank accounts were opened and

closed by persons Smith declined to identify, that Steele and Duffy were authorized

signers on a bank account, and that Steele subscribed to a blog site and an e-mail

service. That is it. Smith's presentation does not even hint that Hansmeier (or

anyone else, for that matter) had the ability to comply with the sanctions order.

Smith's burden is to show by "clear and convincing" evidence that Hansmeier made

a misstatement to the Court. Smith's scattershot presentation does not come close.

> **2.    Smith's presentation of "documents" submitted in**
> ***Ingenuity 13, LLC v. John Doe*, 12-cv-8333 (C.D. Cal) is yet**
> **another set of obvious irrelevancies**

Smith's presentation of "documents" submitted in *Ingenuity 13, LLC v. John*

*Doe*, 12-cv-8333 (C.D. Cal), is an even greater waste of this Court's time. As an

initial matter, Smith makes no effort whatsoever to satisfy the standards for

admissibility set forth in the Federal Rules of Evidence.

Rule 901(a) requires a party seeking to admit an item into evidence to "produce evidence sufficient to support a finding that the item is what the proponent claims it is." *United States v. Boyd*, 208 F.3d 638, 644 (7th Cir. 2000). A proponent of evidence may authenticate it in a variety of ways, including testimony by a witness with direct knowledge of the evidence's authenticity or by pointing to "distinctive characteristics" that, under the circumstances, suggest reliability. Fed. R. Evid. 901(b), (b)(1), (b)(4). Further, evidence, otherwise subject to exclusion as hearsay, that comprises records of "regularly conducted business activity" is admissible pursuant to Rule 803(6). That rule requires authentication of the records by the testimony of the "custodian or other qualified witness" or by various forms of self-authentication. Fed. R. Evid. 803(6).

Smith cavalierly holds out as the "documents" submitted in *Ingenuity 13, LLC v. John Doe* as the financial records of Prenda Law, Inc. Yet, Smith fails to provide a single authenticating affidavit from a custodian of records or other qualified witness to demonstrate the records are what Smith says they are. Further, the purported source of the documents, Brett Gibbs, did not prepare the documents himself, did not claim personal knowledge of the information presented in the documents and claimed to have received them from a mystery source. In other words, not even Gibbs can authenticate the documents. The documents could very well reflect fabricated records. Indeed, Gibbs presented the documents to the *Ingenuity 13* court for the express purpose of attempting to escape the punitive sanctions award. That alone suggests that Gibbs had every reason to "present"

information in the light most favorable to his cause. In any event, for the sake of creating a record, Hansmeier objects to the Court's consideration of these documents on the grounds of lack of authentication.

More fundamentally, though, it is unclear what relevance these documents have to the issues before the Court. Hansmeier has never denied making money in 2012. What he has (and continues) to deny is his ability to comply with the sanctions order. The last financial transaction Smith attributes to Hansmeier in the mystery documents occurred on December 11, 2012—a year prior to the sanctions order. It is not important if Hansmeier had an ability to comply with the sanctions order a year *before* it issued; it is important whether Hansmeier had an ability to comply with the sanctions order *when* it issued. Hansmeier's CPA-prepared presentation of his financial position at the time of the sanctions order makes clear that he did not have this ability. Nothing in the *Ingenuity 13* mystery documents rebuts Hansmeier's showing.

## C. Smith's "Evidence" of Further Misrepresentations is Unavailing

Smith holds out e-mail correspondence between his counsel and Steele as evidence of "further misrepresentations." The e-mail correspondence appears to be Steele's effort to meet and confer prior to bringing a motion for a protective order. This e-mail correspondence has no apparent relevance to the issues before the Court. It does not even involve Hansmeier.

**D.**     **Smith's "Evidence" of Interference With Discovery in This Action is Not Actually Evidence**

Smith alleges that Duffy attempted to interfere with discovery. His sole "evidence" for this allegation is his counsel's declaration, which consists exclusively of recollections of statements uttered by a third-party. Contrary to Smith's apparent understanding, these recollections are not admissible evidence and do not fall within any of the exceptions to the rule against hearsay. Further, it is not clear what harm Smith is alleging from the described actions. He acknowledges receipt of the subpoenaed documents on March 12, 2014. Finally, Smith's allegations do not involve Hansmeier in any manner.

**E.**     **Smith's Requested Forms of Relief Are Largely Moot in Light of the Supersedeas Bond**

Smith's requests for additional daily sanctions and an asset freeze are now moot in light of the fact that a supersedeas bond has been posted. Hansmeier wishes to make clear that he did not contribute to the posting of the supersedeas bond, nor does Smith show otherwise. Smith's request for additional money pursuant to Fed. R. Civ. P. 37 has no basis with respect to Hansmeier, as Smith makes no allegation that Hansmeier in any manner increased Smith's costs of conducting discovery. Further, as set forth above, Smith's only allegation of discovery misconduct is supported solely by his counsel's hearsay declaration.

Finally, it is incumbent upon Hansmeier to address a misrepresentation made by Smith in support of his requests for relief. Smith references a transfer of funds made by Hansmeier in March 2013. As an initial matter, it goes without saying that this transfer occurred more than six months before the sanctions order

in this case. Regardless, as is relevant here, Smith's suggestion that Alpha Law

Firm LLC was subject to an order to show cause in the referenced action is

categorically false. As the district court in that case stated, "[The] Court issued an

Order to Show Cause, dated March 6, 2013, ordering *Plaintiff* and its attorney

*Michael K. Dugas* to show cause why the Court should not award reasonable

attorneys' fees and costs to the Non-Party John Does." *See* Memorandum Opinion,

*Guava LLC v. Spencer Merkel*, No. 27-cv-12-20976 (4th Dist. Hennepin Cty., Minn.

Aug. 7, 2013) (emphasis added). Conspicuously absent from this statement is a

mention of Alpha Law Firm; Smith's statement can only be described as a flat-out

lie. Finally, it bears mentioning that the mentioned funds were used to purchase a

house, which Hansmeier disclosed to the Court in his CPA-prepared statement of

financial position. This is yet another example of how Smith's presentation confirms

Hansmeier's CPA-prepared statement of financial position.

## IV.   CONCLUSION

Smith's renewed motion for contempt is baseless and it should be denied.


April 18, 2014                          /s/ Paul Hansmeier
                                        Paul Hansmeier
                                        80 S. 8th St. Ste 900
                                        Minneapolis, MN 55402
                                        612-234-5744

## CERTIFICATE OF SERVICE

I hereby certify that on April 18, 2014 I filed the foregoing document through

the Court's CM/ECF system, which will electronically serve this document on all

parties of record.

/s/ Paul Hansmeier