UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**LIGHSPEED MEDIA CORP.,**
    *Plaintiff,*

    *v.*

**ANTHONY SMITH, et al.,**

    *Defendants.*

Civil No. 3:12-cv-889-DRH-SCW

**JOHN STEELE'S MEMORANDUM IN OPPOSITION TO ANTHONY SMITH'S RENEWED MOTION FOR CONTEMPT**

**I.   INTRODUCTION**

Anthony Smith's renewed contempt motion[1], like the rest of the pleadings filed by his law firm, Booth and Sweet ("Booth") is full of wild and bizarre allegations, none of which have any basis in fact. Thankfully, a detailed response to each and every unfounded and completely unsupported allegation is unnecessary. Steele has posted the Supersedeas bond, and Counsel for Defendant's dream of seizing Steele's assets are no longer even remotely appropriate.[2] To the extent Booth's motion claims that Steele was untruthful to this Court and had the ability to pay, they utterly fail to support this unfounded assertion.

Some unsubstantiated, and never proven, claims including the lie that Steele has an ownership interest in Prenda Law are now before this Court due to the most

---

[1] Steele believes that Mr. Smith has nothing to do with Booth's efforts to essentially create a law practice out of filing serial sanction motions.

[2] Steele feels relieved that at least Booth did not ask for his incarceration like they did recently in a Massachusetts court. Fortunately, the judge in that matter denied Booth's absurd request.

recent (but surely not last) motion for sanctions from Booth. For example, since Steele has never had an ownership interest in Prenda Law, he cannot discuss mysterious, and as-of-yet-unauthenticated documents from Brett Gibbs.

Much of the documentation provided by Booth has nothing to do with Steele. The documents that do pertain to Steele, such as his claim to have made $900,000 in 2011 is true, and completely irrelevant. Steele could have been a billionaire in 2011. The question before this Court however, is not whether Steele has ever made money. Nor is the question did Steele create overseas accounts.[3] The simple question that Booth has the burden of proving is whether Steele personally had sufficient assets sufficient in November 2013 to pay $261,000. The truth is that Steele did not. Booth has not furnished a single document that contradicts Steele's assertions. This is a common theme with filings by Booth, who also cavalierly assert that Steele owns Prenda Law, AF Holdings, Ingenuity 13, and several entities that Steele has never even heard of. Having dealt with Booth in other cases, he is aware that the lack of evidence has never prevented them taking a fact, such as Steele and his siblings receiving $2.1 million from his father's estate, and creating a fantastical story that has no relationship with the truth. Furthermore, Booth has turned completely legal actions performed by Steele, such as subscribing to the website www.sovereignman.com, into ipso facto proof that Steele has moved money overseas, committed widespread perjury, and has somehow induced others to commit widespread perjury. For this Court to believe Booth, it must also find that

---

[3] Steele adamantly denies ever creating an offshore financial account of any sort.

2

the actual owner of Prenda Law—Paul Duffy—committed perjury when he swore he was its owner. Steele would have also had to convince Steve Lightspeed—the owner of the Plaintiff Lightspeed Media—to appear in this Court and lie to Judge Murphy. And for all their discovery efforts, Booth has been able to show a grand sun of $2000 being sent overseas three years ago. This would be comical, if not for the pain and trouble Booth has caused to Steele and his family.

    Steele unequivocally denies ever having created an offshore account of any sort at any time in his life. Period. Either Steele is committing perjury, lying to multiple federal judges, and committing widespread tax fraud, or Booth has engaged in sanctionable misrepresentations. Alleging that Steele has offshore accounts, regardless of the excessive use of hyperbole and scary adjectives, does not change the fact that no evidence of any offshore accounts related to Steele has ever been presented in any court ever.

    For this Court to find any act of Prenda should be attributed to Steele, the Court would have to believe that Steele lied to multiple federal judges without getting caught, committed massive tax fraud without the IRS finding out, and proactively broke into the Illinois Secretary of State's corporate records database to hide his ownership of Prenda Law, all because of the remote chance that years later a federal judge might sanction Prenda Law for $261,000. It is patently unfair, and contrary to established case law as discussed extensively in the Hansmeier response, for Steele to bear the burden of proving a negative. Especially considering

that Booth has yet to even establish that Steele had the ability to pay $261,000 in November 2013, that Steele lied to this Court, or that Steele owns Prenda Law.

In short, Steele has done nothing warranting a further contempt finding, let alone the illegitimate forms of relief requested in Smith's motion—most of which are, in any event, moot due to the recent stay of the contempt order. As is demonstrated below, Smith's speculation rests on selected facts put into false contexts, with Booth withholding facts that do not fit in with their conspiracy theories. Smith's renewed motion is the very definition of baselessness. It should be denied.

## II. BACKGROUND

Steele and his partner, Paul Hansmeier ("Hansmeier") were early pioneers in catching thieves and hackers who engaged in stealing copyrighted works and other computer related misdeeds, including computer hacking and copyright infringement. From 2010 until November 2011, Steele Hansmeier PLLC, represented various copyright holders in suits against individuals they had obtained evidence against using the same methods that the FBI utilizes to catch pirates and hackers. In November 2012, Steele and Hansmeier transferred its book of clients to a new law firm named Prenda Law, Inc. recently created by Paul Duffy. Mr. Duffy is an Illinois attorney who had known Steele for several years.

During an approximately six-month transition period, Steele assisted Mr. Duffy as he implemented a system to pursue pirates. At several times during this transition, Steele assisted Prenda Law by appearing at a handful of oral arguments,

mostly during a time that Mr. Duffy was recovering from eye surgery. Steele moved to the State of Florida in the summer of 2011, and rarely returned to Illinois. Steele's law license is not active, as he has not engaged in the regular practice of law in years.

This Court held a hearing in February 2014 regarding Booth's first (but certainly not last) motion for contempt. At the hearing, Steele, Hansmeier, and Duffy were all ordered to prepare and submit financial statements prepared by a licensed CPA within 7 days. At the hearing, no reference was made to the GAAP, the Generally Accepted Accounting Rules, a set of standards designed for the financial reporting of corporations, not individuals. Steele submitted his financial statement as directed. Steele's submissions were accurate, and no filing since has disproved any aspect of Steele's statement.

Having engaged in a discovery effort that would be fairly described as "very expansive", Booth subpoenaed an untold number of third party deponents, accompanying his requests to these third parties with inappropriate and unsubstantiated statements regarding Steele. As a result of this effort, Booth submitted 180 pages of financial records that also <u>do not</u> contradict Steele's financial statement, or support the proposition that Steele could have personally paid $261,000 in November 2013.

### III. ARGUMENT

#### A. Legal Standard

Smith bears the burden to prove by clear and convincing evidence that Steele is in contempt. *FTC v. Trudeau*, 579 F.3d 754, 763 (7th Cir. 2009); *Goluba v. School District of Ripon*, 45 F.3d 1035, 1037 (7th Cir. 1995). Clear and convincing evidence is a high standard: Smith must "leave[] no reasonable doubt in the mind of the trier of fact as to the truth of the proposition[s] in question." As the Supreme Court has observed, "clear and convincing evidence" is "evidence so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Cruzan by Cruzan v. Director, Mo. Dept. of Health*, 497 U.S. 261, 285 n.11 (1990).

Steele incorporates Hansmeier's Memorandum in response to Booth's renewed Motion. In addition, Steele supplemts the record with the following response to allegations made regarding Steele personally.

#### B. Argument

##### 1. Steele claims his income in 2011 was $900,000

This is completely true. In fact, Steele believes he earned slightly more than that in 2011. And, since Steele has properly reported all of his income since he started working at age 16, Steele's 2011 tax return properly reflects that income, and Steele paid his proper taxes on that income. Steele has no idea why what he earned in 2011 is relevant to his ability to pay in 2013. This Court itself has taken

judicial notice that Steele had to contribute to a $250,000 bond in California in 2013, thus <u>de</u>creasing his available assets.

## 2. Steele had $2,177,005.27 wired into his account and distributed that funds soon thereafter.

Steele would hope this Court takes a critical look at this 'smoking gun', in which Booth breathlessly claims a mysterious $2.1 million dollars was moved around various accounts by Steele.  The money in question resulted from Steele's deceased father's estate, which had recently sold a company owned by Steele's father for over 20 years.  The money was deposited into Steele's personal account, and Steele transferred it into an IOLTA account shortly thereafter.  The reason Steele preferred to keep the money in an IOLTA account is because he was only entitled to 1/3 of that money.  His two siblings were the beneficiaries of the other 2/3's of the money.  Booth knows this since the wire instructions list Steele's siblings on the transfer.  But in keeping with their standard practice, Booth cherry-picks facts, failing to mention anything that contradicts their latest conspiracy theory.  Attached as Exhibit 'A' is a letter from Attorney Steven Prebish of the law firm Patzik, Frank, & Samotny Ltd regarding the transfer.  Steele believes that Booth is well aware of the innocuous nature of this money as banking records show where the money went to. Booth intentionally fails to disclose facts such as the outgoing wires show they went to family members, and instead misleads this Court into assuming something nefarious is afoot.

3. **Prenda's payment of $5000 in 2012 to another law firm is not relevant to any of the questions before this Court.**

There are many logical flaws in connecting a $5000 payment made by a law firm Steele does not own to a sanctions order that came out against Steele over a year later. Assuming for a moment that Steele owns Prenda—which he does not—and that Steele issued a $5000 payment to a law firm. Steele fails to see any logical connection between a legal payment made to a law firm in 2012 to Steele's ability to pay $261,000 in November 2013. Despite the breathless exclamation and hyperbole, there is no evidence that Prenda Law, Paul Hansmeier, Paul Duffy, or John Steele ever transferred any funds overseas between November 2013 and present. That is because Steele did not. In fact, Steele cannot remember a single person, or company, that he knows transferring money overseas in 2013 or 2014.

4. **There were a total of $4.4 Million dollars in settlement monies paid out to Steele Hansmeier, Prenda, and Livewire Holdings.**

Steele will assume Booth is correct in this statement, and adds that it actually hurts their 'theory'. First, Steele does not own Prenda Law, or Livewire Holdings. Second, Steele would submit to the Court that it is pretty standard practice for a litigation firm such as Steele Hansmeier to receive settlements. Surely, Booth does not argue that every law firm who receives settlement funds into their IOLTA account is doing anything unethical. Second, all the funds mentioned by Booth are prior to the sanction in this case. Lastly, Steele openly admits that he

received a contingency fee for legal work he performed while an attorney at Steele Hansmeier in 2010 and 2011. Every dollar paid to Steele was declared on his 2010 and 2011 tax returns. While an attorney earning legal fees by actually helping clients and not relying on the serial filing of sanction motions may seem strange to Booth, Steele submits that his contingency fees are a standard industry practice.

### 5. Steele legally opened up multiple bank accounts.

Steele is unsure how to respond to this accusation. Steele is a U.S. citizen and is aware of no case law that suggests he is prevented from opening—or closing—a bank account. Steele never lied an any forms, or committed any illegal act by opening or closing any account. In fact, Steele strongly argues that the very fact that he openly used U.S. banks and provided his Social Security number and identification when opening any of his accounts, that his behavior shows he was <u>not</u> trying to hide accounts or money. It simply belies logic that a person trying to hide money overseas would open a bank account at a U.S. Bank with his own social security number.

### 6. Steele transferred money between several bank accounts he had two years before this case started.

Steele completely agrees with the facts asserted by Booth, but is not sure what relevance they have to the legal question before this Court. In fact, Steele has opened and transferred money between various accounts for decades, and believes this to be a legal act. Furthermore, Steele fully asserts his right to open bank accounts in the future, and transfer his money in or out of them as he sees fit.

Steele could have opened 1000 bank accounts in the same day, and his position is that such acts are perfectly legal.

### 7. Steele is a signatory on accounts at Fifth Third bank.

Steele agrees this is true. Steele also has made clear on many occasions that he assisted Mr. Duffy during an initial transition period, and afterwards as needed to assist Mr. Duffy. Steele never signed any checks or used his signature in any way with the accounts in question. Booth clearly knows that Steele never wrote a check or made a deposit, since Steele's name is not any actual transactional documents. But Booth intentionally leaves out that critical fact, and allows this Court to incorrectly infer a relationship that is not supported by the facts or the record. Steele would add that even if he did sign all the checks for Prenda and was the only person who every dealt with the accounts in question—which is not the case—such a fact would not show that Steele could pay $261,000 in November of 2013. Most law firms have an accountant who has signing authority, and Steele is not aware of any case law that would hold a law firm's accountant is suddenly the owner of a law firm if they have signing authority to write checks.

### 8. Steele paid for a subscription to Sovereign Man.

Like several of Booth's initial factual claims, this statement is true. However, as is the case with much of Booth's allegations, they begin with an innocuous fact, invent a conclusion that fits their agenda, and then hides relevant facts from the Court. Steele is aware of no case law that makes it illegal for

someone to sign up for emails from the Sovereign Man website. Steele never read an article regarding Latvia, and has never heard of Peter Gage Morris or Ober-Haus Real Estate Advisors. Booth is claiming that because Steele signed up for a one-year subscription to Sovereign Man, he must have offshore accounts in Latvia.

### 9. Steele set up an email on Countermail.

Steele agrees wholeheartedly with the claim by Booth that he opened an email account with a service called Countermail. This was done largely because of Booth and the type of clients that Booth represents. Steele has been the subject of multiple identity theft attempts, and numerous attempts by hackers and pirates to steal personal information from Steele. Indeed, during the pendency of this lawsuit Prenda Law's website was hacked into, presumably by Smith or one of his coconspirators (notwithstanding Smith's unsigned declaration that was an innocent actor in this case). Indeed, as recently as yesterday Steele understands that the e-mail account of an anti-piracy attorney was hacked into and his e-mails were stolen. Steele is not aware of any case law that supports the position that using Counter Mail is illegal. Steele asserts that he has an absolute right to use any email provider he chooses. And since Booth makes a regular habit out of filing pleadings and issuing subpoenas without proper notice to Steele, it is only prudent for Steele protect his personal information as best he can.

### 10. Ingenuity 13, LLC and the unverified documents that Brett Gibbs has given to Booth.

11

Any payments received by Steele in 2011 through 2013 are clearly outlined in Steele's bank statements and reported as income by Steele for tax purposes. It appears that Mr. Gibbs created some accounting sheet of Prenda Law finances for some period of time prior to this case, and thus is irrelevant. Steele has no personal knowledge of Mr. Gibbs' accounting records, methodology, or how Mr. Gibbs created his documents. According to Mr. Gibbs himself, he doesn't either, and claims he doesn't even know how his document came into existence. Such a document hardly comports with the Federal Rules of Civil Procedure governing admissible evidence. Fortunately for this Court, and the other courts that have already thrown out Booth's inflammatory sanction motions, none of the documents are relevant. For Mr. Gibbs to provide statements relevant to Booth's renewed motion for sanctions, Mr. Gibbs would have to show first hand knowledge of Steele's finances between November 2013 and present. Given that Mr. Steele has not spoken to Mr. Gibbs since shortly after he perjured himself before Judge Wright in March 2013, Mr. Gibbs could have no such knowledge of Steele.

Mr. Gibbs client in the Judge Wright matter has filed an extensive bar complaint regarding Mr. Gibbs conduct. Steele has also filed a bar complaint against Mr. Gibbs and was recently contacted by the California Bar requesting additional information regarding Mr. Gibbs.

**B.    Steele did nothing wrong in asking that the ISP's and Booth not publish personal information regarding Steele and his family.**

Steele affirmatively states that he was working on a motion for a limited protective order solely for the purpose protecting personal information from being released as a marketing tool by Booth. Steele reached out to AT&T and Comcast asking that they not disclose any such information. In phone calls and via email, the ISP's indicated that they would not. Steele has had past dealings with these two ISP's. Despite their differences, Steele felt reassured that the ISP's would not misuse any personal information they obtained. After attempting to reach out to Booth in good faith, asking them to respect his family's privacy, it was obvious to Steele that Booth would never agree to such a courtesy.

The remainder of Booth's motion is filled with *ad hominem* attacks on Steele, claims unsupported by the record, and requests for this Court to freeze assets and punish Steele in various ways. Steele has posted the bond—by receiving loans from a friend and a family member[4]—and thus all the extensive requests from Booth that this Court punish Steele for not posting a bond are moot.

### C. Smith Has Not Demonstrated That Steele had the ability to pay the sanctions order issued in November 2013.

Booth has a pretty obvious business model. First they offer to represent pirates who were caught stealing or hacking various copyright holders at no cost to the pirate. Then they file numerous sanction motions in an effort to obtain an unearned windfall. By accusing the Plaintiff, and its attorneys of bad conduct, they

---

[4] Steele is fully prepared to provide proof that the funds were paid by two other individuals with funds that had been in their control since before this case started. Steele would ask that any proof be provided in camera. Past experience with Booth, and their pirate clients, have shown a propensity to harass anyone associated with Steele.

13

hope to change the court's focus from their own client's illegal acts to the behavior of the Plaintiff and their attorneys. Normally, after accusing an attorney of wrongdoing, an opposing counsel will provide proof. Booth has a different approach. They simply double down, restate their original claim with new adjectives, add some new unsupported claims, and demand that Steele disprove their assertions.

However, if Booth really had proof of any off shore money transfers, or Steele owning Prenda Law, they would have brought that to the various Courts a long time ago. Unfortunately for Booth, the actual owners of the various entitles have testified Steele has no ownership. And there is nothing in the record to show Steele could have paid a $261,000 sanction award in November 2013.

Steele has never created an account of any type whatsoever overseas. Steele affirmatively claims that he would not know how to create such an account. Steele has never reported an overseas account on his tax return. A $2000 wire to Latvia from 2011 that Steele cannot even recall is hardly the proof required of Booth to show Steele could pay $261,000 in November 2013. Furthermore, given that no record exists in the world that Steele has ever had an overseas account, the clear burden of proving otherwise rests on Booth. After spending untold hours obsessing over Steele's financials, Booth was unable to find any such proof. Rather than admit the lack of any proof, Booth now claims that such lack of proof is proof itself! In other words, according to Booth, the fact that no proof exists of any overseas wires or accounts is proof that Steele has overseas accounts. Steele respectfully asks this Court to hold Booth to the same standard that Judge Murphy imposed in

this Case. At least the Plaintiff in this case claimed to have actual proof of Defendant Smith's guilt, and came to Court with it. Booth claims that since Steele signed up Sovereign Man in 2011, and his law firm paid someone $2000 in 2011. Therefore, Steele could pay a sanction award of $261,000 three years later. If this Court were to require Booth to substantiate each and every one of their unsupported claims made in their Renewed Motion for Contempt, Steele sincerely believes it would be Booth paying a sanction award to Steele.

Steele would like to respectfully remind this Court that notwithstanding the gratuitous referrals to bar disciplinary authorities and other investigative agencies (including referrals issued by a federal magistrate judge who was recently authoritatively overruled on review), none of these agencies have attributed wrongdoing to Steele or anyone else.[5]

Finally, Steele wishes to add that he does not believe Paul Duffy, or his company Prenda Law, did anything wrong in this case. Had Steele owned Prenda Law at any time, he would proudly inform the Court of such ownership. And if Steele had an ownership interest in Lightspeed Media, or any of the other companies Booth casually accuses Steele of owning, Steele would gladly state that point. Steele does not believe Lightspeed Media, nor any other company pursing Booth's clients, did anything other than try to protect their companies from being devastated by computer criminals. While most courts have allowed the victims of

---

[5] In at least one other case in the U.S. District Court for the District of Massachusetts, Booth added Steele's name to a judgment in a case Steele did not even knew existed. So Steele cannot state with certainty if there are other sanction orders issued on an ex parte basis.

computer crime in these types of cases to present a case, Steele will be the first to admit that the constant cries by Booth have gained traction in an extremely limited number of courts.

### III. CONCLUSION

Smith's renewed motion for contempt is baseless, nothing but an inappropriate effort by Booth for an undeserved windfall, and should be denied.


April 21, 2014 /s/ John Steele
John Steele
1111 Lincoln Road, Suite 400
Miami Beach, FL 33139
Johnlsteele33140@gmail.com
612-466-0870

**CERTIFICATE OF SERVICE**

I hereby certify that on April 21, 2014I filed the foregoing document through the Court's CM/ECF system, which will electronically serve this document on all parties of record.

                                              /s/ John Steele