## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **LIGHSPEED MEDIA CORP.,** | |
| *Plaintiff,* | Civil No. 3:12-cv-889-DRH-SCW |
| *v.* | |
| **ANTHONY SMITH, et al.,** | |
| *Defendants.* | |

Jason Sweet's quixotic sanctions odyssey has reached a new low. In his most-recent sanctions motion, Sweet seeks money from Paul Hansmeier without actually accusing Hansmeier of wrongdoing. For the Court to rule in Sweet's favor, the Court would have to blindly accept the fiction that Hansmeier could possibly interfere with subpoenas that Sweet *never notified him of.* Sweet's latest money grab is completely frivolous.[1]

## I.   BACKGROUND.

Sweet has filed many money requests in this matter. (*See* Dkts. 61, 90, 107, 124, 135 and 153.) His most-recent request, which he declares he was "constrained" to file, demands a payment of $4,908. (*See* Dkt. 153, at 7.) Sweet attempts to justify his return to the trough by accusing John Steele of "stymie[ing] legitimate discovery proceedings." (*Id.* at 4.) Steele's grave offense, as it is revealed, was to send Sweet an e-mail. (*See id.* at 4–5.)

---

[1] Hansmeier will address the unreasonable and vexatious nature of Sweet's latest request for money in his forthcoming cross-motion for sanctions.

## II.   <u>ARGUMENT</u>.

Sweet's latest sanctions motion should be denied for at least three reasons: (1) he does not allege that Hansmeier engaged in misconduct; (2) the non-monetary relief he seeks is not even possible for Hansmeier to comply with; and (3) Sweet's allegations against John Steele make no sense.

In addition, as significant portions of Sweet's memorandum appear to have been plagiarized, Sweet's fee request appears to be grossly inflated. Sweet's Rule 37 certification is false and his additional factual assertions are superfluous.

### A.   **Sweet Does Not Claim That Hansmeier Engaged in Misconduct**

None of the conduct referenced in Sweet's latest sanctions motion implicates Hansmeier. Sweet does not, for example, claim: (a) that Hansmeier sent him an e-mail; (b) that Hansmeier contacted any third parties; or (c) that Hansmeier otherwise interfered with outstanding discovery. (*See generally* Dkt. 153.) Nor could he. As was more fully discussed in Hansmeier's recently-filed Motion for Sanctions and to Quash, Sweet did not even bother to furnish Hansmeier with notice copies of the subpoenas at issue. (*See* Dkt. 157.) As a matter of basic logic, Hansmeier could not interfere with discovery he was not on notice of. Because actual misconduct is an absolute prerequisite to an imposition of sanctions, Sweet's motion must be denied. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 33 (1991) (Sanctions can be imposed if the court finds that the party "acted in bad faith, vexatiously, wantonly, or for oppressive reasons….").

In his supplemental filing, Sweet attempts to bootstrap Hansmeier's filing of a Motion to Quash into a showing that Hansmeier is working in concert with Steele and Duffy (although Sweet does not describe the nature of this alleged concert). Yet, Hansmeier's motion was filed in response to Sweet's latest motion for sanctions, in which Sweet revealed his *ex parte* subpoena campaign to Hansmeier for the very first time. There is simply no conceptual link between the filing of a motion to quash and the earlier-sent e-mail that gave rise to Sweet's latest sanctions motion.

### B.   Sweet's Request For Non-Monetary Relief Proposes An Impossible Task

In addition to his money demand, Sweet also demands that Hansmeier send letters to the subpoena recipients at issue. (*See* Dkt. #153, at 6.) The obvious problem with this request is that Hansmeier has no idea who the subpoena recipients are. (*See* Dkt. # 157) (identifying Sweet's failure to provide Hansmeier with Rule 45 notice of the subpoenas at issue). To this very day, Sweet has refused to provide Hansmeier with this basic information.

### C.   Sweet's Allegations Against John Steele Make No Sense

Sweet's allegations against John Steele make no sense. True, Steele sent Sweet an e-mail. Yet, Sweet does not identify a plausible reason for why that e-mail should give rise to sanctions.

Sweet begins his argument with the straw man that discovery in this case is not stayed. (*See* Dkt. # 153, at 4.) Regardless of whether this is true, Steele did not take this position in his e-mail. (*See* Dkt. # 153-1) (mentioning a stay of the action, not discovery).

3

Sweet continues his argument with a second straw man. This time, Sweet discusses whether the filing of a supersedeas bond forgives an act of contempt. (*See* Dkt. # 153, at 5.) This discussion has no apparent relevance to the issues before the Court.

Sweet concludes his argument by labeling "Steele's representations to third parties" as being "entirely without merit." (*Id.*) In this portion of his argument, it becomes clear that Sweet's allegations are founded in confusion: contrary to Sweet's apparent understanding, the record demonstrates that Steele did not, as Sweet describes it, "[take] it upon himself to limit or attempt or 'quash' the subpoenas by inappropriately notifying the third parties of a 'stay,'" or "advise" anyone to "ignore" Sweet's subpoenas. (*Id.*)

If this was not clear from the plain language of Steele's e-mail, one can reference Steele's actual third-party communications. (Dkt. # 158-1.) In his communication, Steele referenced the Court's April 4, 2014 Stay Order and forwarded a copy of the order to the subpoena recipient. Contrary to Sweet's accusations, Steele did not, for example, "advise" the records custodian to "ignore" anything. (*See id.*) All Steele did was make at least one third-party aware of the developments in this case.

Steele's communications contrast sharply with the communications in the cases cited by Sweet. In *Price v. Trans. Union, L.L.C.*, 847 F. Supp. 2d 788 (E.D. Pa. 2012), for example, the Court referenced sanctions imposed against a defendant who misinformed third parties that subpoenas were "null and void as a matter of

law and should not be complied with." *Id.* at 795. Steele's communications do nothing of the sort.

Finally, and perhaps most critically, Sweet does not allege that his discovery efforts were impacted whatsoever by Steele's communications with third-parties. Not even Sweet's supplement to his sanctions motion suggests that his discovery efforts have been affected, much less imposed "yet another cost on Smith and the Court…." (Dkt # 153, at 6.) Sweet's suggestion that he was "requir[ed] to file this motion" is completely absurd. Sweet's concern about imposing costs on this Court would have been better addressed by his speaking with the third-party subpoena recipients to determine how Steele's communications impacted their undue burden decisional calculus, if at all. At a minimum, he is required to make some sort of showing to the Court.

### D. Sweet's Fee Request Appears To Be Grossly Inflated

Sweet is no stranger to grossly inflated fee petitions. In a case pending in the District of Massachusetts, Sweet represented a plaintiff who accused a copyright holder and its attorneys[2] of fraud and all other sorts of misdeeds. After over three years of litigation, the only non-dismissed defendant submitted an offer of judgment to Sweet's client for the nuisance amount of $3,000. *See Shirkov v. Dunlap, Grubb & Weaver PLLC*, No. 10-12043 (D. Mass. Mar. 27, 2014). After his client accepted the offer of judgment, Sweet submitted a fee petition for $362,767.00—or an amount in excess of 10,000 percent of what his client recovered. *See id.* The district court axed

---

[2] The law firm of Dunlap, Grubb & Weaver PLLC.

Sweet's fee request by over 90 percent, and would likely have gone much further had the defendants suggested a lower amount. *See id.*

In this case, Sweet is seeking $5,000 for a memorandum of law that is just over six pages. (*See* Dkt. # 153.) Two of these pages comprise the introduction and basic factual background. (*Id.*, at 1–2.) The standard of review section, which consists of five lengthy paragraphs, appears to be completely plagiarized from third-party sources. Paragraphs 1, 2 and 5 are lifted word-for-word from the magistrate judge's "Applicable Legal Standards" section in a Report and Recommendation issued in *Danis v. USN Commc'ns, Inc.*, No. 98 C 7482 (N.D. Ill. Oct. 23, 2000). Paragraph 3 is lifted word-for-word from an Opinion and Order issued in *Cordius Trust v. Kummerfeld Associates, Inc.*, No. 99 Civ. 3200 (S.D.N.Y. Oct. 23, 2009), at p. 14. Paragraph 4 is lifted word-for-word from a Memorandum Decision in *In re Horsfall*, No. 10-12596 (Bankr. W.D. Wi. Nov. 17, 2011).

Sweet's argument, which spans two pages, includes substantial block citations to Steele's e-mail, the court's Contempt Order, and more plagiarized legal citations. Other than his time spent rearranging paragraphs copied whole cloth from various judicial decisions, Sweet's original work in this matter appears to consist of three short argument paragraphs. For this he seeks $5,000.

Given his significant plagiarizing, one has to wonder whether Sweet even read any of the twenty-six cases he cited. For example, the final case he references, *In re Prudential Ins. Co. America Sales Practice Litig.*, 278 F.3d 175 (3d Cir. 2002), is cited as a decision of the Eastern District of Pennsylvania. This is incorrect. It is

a Third Circuit decision, which he would know if he had bothered to read to read the case.

### E.   Sweet's Rule 37 Certification Is A Lie

Sweet certifies that he "conferred in good faith with Plaintiff's Counsel to try and resolve the disputes related to the production of the documents by non-parties." (Dkt. # 153, at 7.) This is flat-out lie, at least with respect to Hansmeier. Sweet's memorandum of law defines Hansmeier as "Plaintiff's Counsel", and neither Sweet nor anyone else conferred with Hansmeier prior to Sweet's latest sanctions motion. This Court should order Sweet to identify under the penalty of perjury the time and place of his alleged Rule 37 meet-and-confer with Hansmeier.

### F.   Sweet's Additional Factual Assertions Are Superfluous

Sweet uses his latest sanctions motion to prop up baseless assertions in his prior sanctions motions. For example, he opens his motion with a bold statement: "The evidence in this case is voluminous, undisputed, and disturbing." (*See* Dkt. # 153, at 1.) For such a strong statement, one would expect a citation to at least *one* example of such "evidence." None is provided. Nor does statement have any bearing on the issues raised in Sweet's latest sanction motion.

Sweet then accuses Hansmeier (and Duffy and Steele, of course) of "a massive effort to hide, move and transfer his assets in order to avoid complying with numerous sanctions order and judgments levied against him." Once again, Sweet does not let a lack of evidence or relevance get in the way of his assertions.

7

Sweet concludes his propping up efforts by once again accusing Duffy of "falsely informing at least one bank that a motion to quash was still pending." Yet, no matter how many times Sweet repeats his accusation, nothing will change the fact that the sole evidence on which his accusation rests is *Sweet's own declaration*. Sweet's declaration about his conversation with a third-party is inadmissible on several levels. Regardless, it has nothing to do with his latest sanctions motion or Hansmeier's conduct.

## III.   <u>CONCLUSION</u>.

The Court should deny Sweet's latest sanctions motion.

Respectfully Submitted,

May 2, 2014

<u>/s/ Paul Hansmeier</u>
Paul Hansmeier
80 S. 8th St. Ste 900
Minneapolis, MN 55402
612-234-5744

**CERTIFICATE OF SERVICE**

I hereby certify that on May 2, 2014 I filed the foregoing document through the Court's CM/ECF system, which will electronically serve this document on all parties of record.

/s/ Paul Hansmeier