## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| LIGHTSPEED MEDIA CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:12-cv-00889-GPM-SCW |
| | ) | |
| v. | ) | **DEFENDANT ANTHONY** |
| | ) | **SMITH'S RESPONSE TO PAUL** |
| ANTHONY SMITH, SBC INTERNET SERVICES, | ) | **HANSMEIER'S MOTION FOR** |
| INC., d/b/a AT&T INTERNET SERVICES; AT&T | ) | **SANCTIONS AND TO QUASH**[1] |
| CORPORATE REPRESENTATIVE #1; COMCAST | ) | |
| CABLE COMMUNICATIONS, LLC, and | ) | |
| COMCAST CORPORATE REPRESENTATIVE #1, | ) | |
| | ) | |
| Defendants. | ) | |

Defendant Anthony Smith ("Smith") respectfully submits this response in opposition to Paul Hansmeier's ("Hansmeier") Motion for Sanctions and to Quash, Dkt. No. 157 ("Motion"). The Motion argues that on March 24, 2014, Smith issued third-party subpoenas without serving notice and copies to parties as required by Federal Rule of Civil Procedure 45(a)(4).[2] Hansmeier has no grounds to object because he was duly notified and served, even though he is not a party to this action. The Motion is frivolous and should therefore be denied, as further stated below.

### RELEVANT FACTUAL BACKGROUND

Plaintiff and its counsel pursued a wholly frivolous case in chief, and the Court sanctioned John Steele ("Steele"), Paul Duffy ("Duffy") and Hansmeier (collectively, "Plaintiff's Counsel") pursuant to 28 U.S.C. § 1927 "because Plaintiff raised baseless claims despite knowledge those claims were frivolous." Dkt. No. 65. The Court found Plaintiff's Counsel jointly and severally liable and ordered them to pay defendants' attorney fees and expenses, totaling $261,025.11, with interest as provided by law, within 14 days of its November 27, 2013 order. Dkt. No. 100 pp. 12-13.

---

[1] Smith originally filed this motion yesterday evening. Included in the exhibits was a communication Steele made to a non-party which included social security numbers and dates of birth. Because Steele, Hansmeier and Duffy had redacted this information when disclosing similar documents to non-parties, Smith's counsel made the erroneous assumption that it had been done here as well. Once alerted this morning, Smith's counsel immediately contacted the Clerk and had the motion stricken. Smith's counsel apologizes to the Court and to Steele, Hansmeier and Duffy.

[2] The Motion makes the same argument about subpoenas Smith issued on or around March 7, 2014, but concedes that Smith voluntarily withdrew those subpoenas. Motion p. 4. Hansmeier nevertheless now takes issue with Smith's more recent reissuance of those same subpoenas, though Smith provided notice and service upon Hansmeier (and Steele and Duffy).

Plaintiff's counsel failed to comply and Defendants filed a joint motion for contempt on December 27, 2013. Dkt. No. 107. While that motion was pending, Smith issued third-party subpoenas to twelve financial institutions on January 16, 2014 to ascertain facts concerning Plaintiff's Counsel's financial resources and their ability to pay the amount ordered. *See* Dkt. No. 116-1. Hansmeier moved to quash the subpoenas and the Court denied the motion. Dkt. No. 116, 125. Smith issued more third-party subpoenas on or about March 7, 2014 to T-Mobile, American Express, MasterCard, GoDaddy, TransFirst, Hotmail, Google, and Twitter.

On March 18, 2014, Hansmeier emailed Smith's counsel to object that the March 7 subpoenas did not comply with Rule 45(a)(4)'s notice and service requirements. Motion p. 4; Dkt. No. 157-1 Ex. B. Smith's counsel responded that Hansmeier is not a party, and that service on Duffy had been duly provided, which the Court had determined constitutes service on Hansmeier as well. *See* Dkt. No. 157-1 p. 6; see also Dkt. No. 100 p. 5 ("service on Duffy was effective for all of Plaintiff's counsel, past and present, including Steele and Hansmeier"). Nevertheless, Smith's counsel voluntarily withdrew those subpoenas that day, informing Hansmeier that he would reissue the subpoenas and serve them on Hansmeier.[3] *See* Motion pp. 4-5; Dkt. No. 157-1 p. 8. Smith's counsel enquired about the form of service Hansmeier would prefer: "When I send out new copies tomorrow, I will email them to you and Messrs. Steele and Duffy. Or would you prefer I send them via certified mail so that you each may later claim to have never received them?" *See* Ex. A hereto. Hansmeier responded, "I do not accept service via e-mail." *Id.*

Smith filed a renewed motion for contempt on March 20, 2014. Dkt. No. 135. The Court considers Smith's renewed motion "a motion for an additional sanction for contempt since it relates directly to representations made in Court and in the financial statements by plaintiff's counsel." Dkt. No. 136 p. 13.

On March 24, 2014, the Court found Plaintiff's Counsel in contempt of court for willfully violating the sanctions order and making no effort to comply. *Id.* pp. 8-9. Plaintiff's counsel contended they were unable to pay, but failed to meet their burden of proving it. *Id.* pp. 7-8.

On March 25, 2014, to continue his discovery into Plaintiff's counsel's financial resources and the veracity of their representations, Smith reissued his subpoenas (dated March 24th) to the

---

[3] Smith also informed Hansmeier, Steele and Duffy that he did not receive any documents in response to any of the subpoenas at issue. *See* Dkt. No. 157-1 p. 6.

same third parties (excepting Google) whose subpoenas he had temporarily withdrawn. *See* Doc. 153 p. 2. In that same package, and pursuant to the Court's March 24, 2014 Order, Smith also included copies of the the Sealed Motion and attendant exhibits he had filed. See, Dkt. Nos. 135; 137 ("Smith is DIRECTED to provide a copy of the motion to plaintiff's counsel."). Smith served the reissued subpoenas on Steele, Duffy, and Hansmeier by certified mail on March 26, 2014. *See* Ex. B hereto. The U.S. mail tracking number for the delivery to Hansmeier is 7012 3050 0000 6666 4895. *Id.* Neither Steele nor Duffy deny receiving any of the documents, nor does Hansmeier deny receiving the Sealed Motion.[4]

Steele received the subpoenas on March 28, 2014. On April 11, 2014, Steele told Smith's counsel that he had received the reissued subpoenas and contacted the third parties to notify them that "the subpoenas must be withdrawn." Dkt. No. 153-1. Smith's counsel informed Steele that he had no right to do so, instructed him to "stop interfering with legitimate discovery efforts" and to promptly confirm that he had cleared up the interference. *Id.*; *see also* Dkt. No. 153 pp. 4-6. Steele did not, and Smith's counsel moved for discovery sanctions on Friday, April 18, 2014. Dkt. No. 153.

Later on Friday, April 18, 2014 Hansmeier sent Smith's counsel, Steele, and Duffy an email asserting that he had never received the subpoenas at issue, and asking that Smith's motion for discovery sanctions be withdrawn. Dkt. No. 157-1 p. 11. Smith's counsel was busy between April 18 and 22 finalizing a First Circuit brief for a different client, Sandipan Chowdhury, who had won a judgment in which Steele, Hansmeier, and Duffy were found jointly and severally liable on the defendant's counterclaims after he was sued by one of their shell company plaintiffs. *See* Appellee's Response Brief, *AF Holdings, LLC v. Chowdhury*, No. 13-2535 (1st Cir. filed Apr. 22, 2014). As an Appellant in *Chowdhury*, Hansmeier had been informed of Smith's counsel's April 22 briefing deadline through the First Circuit's ECF system. *See* Appellee's Briefing Notice, *id.* (1st Cir. issued

---

[4] "I never got it" is an all too common refrain from Hansmeier, Steele and Duffy that has resulted in Smith's counsel now photographing the contents of every package. *See, e.g., AF Holdings, LLC v. Patel*, 13-mc-00068, Doc. 11 (D. Minn. Sep. 24, 2013) (Hansmeier characterizing himself as a nonparty and not properly served), and Doc. 14 (order finding Hansmeier was properly served); *Ingenuity 13 v. Doe*, No. 12-cv-08333, Doc. 224 (C.D. Cal. July, 18, 2013) (finding lack of service was because "Steele entered his address incorrectly—not once, but four times."); *Freeborn & Peters v. Fletcher, et al.*, No. 12-L-4104 (May 7, 2013) (affidavit by process server that Duffy threw subpoena on ground and walked away) (attached as Ex. C).

Mar. 19, 2014). After "the passage of over three days," Hansmeier filed "his" Motion on Monday, April 22, 2014.[5]

## ARGUMENT

### I.  Hansmeier states no valid grounds for seeking sanctions.

Hansmeier recognizes that the March 7, 2014 subpoenas were voluntarily withdrawn. Hansmeier and Smith disagree over whether the March 7, 2014 subpoenas required service on Hansmeier as a matter of law. *See* Dkt. No. 157-1 p. 8; *see also F.T.C. v. Trudeau*, 2012 U.S. Dist. LEXIS 160545 (N.D. Ohio Nov. 8, 2012); Doc. 100 p. 5 ("Mr. Hansmeier has filed an objection in the case, and he says: Now, wait a minute. Don't include me in this. I'm not a part of this.")

Regardless, the Motion does not appear to argue that those voluntarily withdrawn subpoenas warrant sanctions; just that they demonstrate a "pattern of deception"—a 'pattern' which consists of a single allegation. Motion p. 6. In fact, what they actually demonstrate is Smith bending over backwards to avoid even a hint of impropriety, against litigants who appear to be permanently bent in the other direction.

Hansmeier asserts as fact that he did not receive notice of the March 24, 2014 subpoenas. Motion p. 5. But he recognizes that, on March 18, 2014, Smith's counsel informed him by email that the March 7 subpoenas would be reissued. Motion p. 4. Even if Hansmeier were a proper party requiring notice under Rule 45, that email constitutes prior notice sufficient to satisfy the rule. Personal service of a subpoena is not required under Rule 45. *Ott v. City of Milwaukee*, 274 F.R.D. 238, 241 (E.D. Wisc. 2011); *Doe v. Hersemann*, 155 F.R.D. 630 (N.D. Ind. 1994). Instead, "service is complete upon mailing." Fed. R. Civ. P. 5(b)(2)(c).

> Service is deemed complete at the instant the documents are placed into the hands of the United States Post Office or a Post Office Box. The critical event in the service procedure under Rule 5 is the mailing, not receipt, of the papers sought to be served. Non-receipt or nonacceptance of the envelope containing the papers is insignificant and has no effect on the validity of service.

*Russell v. City of Milwaukee*, 338 F.3d 662, 667 (7th Cir. 2003) (*quoting* Moore's Federal Practice § 5.04[2][a][ii] at 5-29 to 5-30). *Cf. Renaud v. Gillick*, No. 06-cv-98465, 2007 U.S. Dist. LEXIS 98319

---

[5]  Throughout the proceedings Plaintiff's Counsel continue to file individual motions that include arguments on behalf of one another. Though they claim not to be in cahoots, "the Court notes that the Prenda parties (John Steele, Paul Duffy, Paul Hansmeier[]) continue to act in concert." *Ingenuity 13*, Doc. 224 at p. 4. Here, Hansmeier seeks to quash *all subpoenas*—not just those in which he alone may have an interest.

(W.D. Wash. Jan. 8, 2007) (granting leave to issue pre-Rule 26(f) third party subpoenas after plaintiff mailed motion for discovery to defendant pursuant to Rule 5(b)).

Furthermore, the Court determined as part of the sanctions order that service on Duffy is effective service on Hansmeier and Steele. Dkt. No. 100 pp. 5-8. Smith's counsel reminded Hansmeier of that determination when he groused about the March 7, 2014 subpoenas. Dkt. No. 157-1 p. 6. That determination still holds under the law of the case doctrine, which governs the Court's authority "to reconsider a previous ruling in the same litigation, whether a ruling made by him or by a district judge previously presiding in the case." *Santamarina v. Sears*, 466 F.3d 570, 571-72 (7th Cir. 2006). Under that doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Jarrard v. CDI Telecomms., Inc.*, 408 F.3d 905, 911-12 (7th Cir. 2005) (*quoting Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-16 (1988)). True, "the law of the case doctrine permits 'a court to revisit an issue if an intervening change in the law, or some other special circumstance, warrants reexamining the claim.'" *E.E.O.C. v. Sears, Roebuck & Co.*, 413 F.3d 789, 796 (____) (*quoting United States v. Thomas*, 11 F.3d 732, 736 (7th Cir. 1993). But Hansmeier identifies no such intervening change or special circumstance. *See generally Potter v. Janus Inv. Fund*, 483 F. Supp. 2d 692, 708-09 (S.D. Ill. 2007) (collecting cases). His dissatisfaction with the Court's prior determination is insufficient.

## II.    Hansmeier states no valid grounds for seeking to quash Smith's subpoenas.

Hansmeier has already filed one frivolous motion to quash. Dkt. No. 116. *See also* Dkt. No. 124 at 6 (Smith's opposition) ("The frivolous Motion [to quash] is only the latest in [Hansmeier, Duffy, and Steele's] long series of dilatory tactics."); Dkt. No. 125 (order denying motion to quash). His second attempt fares no better.

The Motion argues for sanctions under the Court's inherent powers, which would require finding that a party "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Motion p. 6 (*quoting Methode Elecs., Inc. v. Adam Techs., Inc.*, 371 F.3d 923, 938 (7th Cir. 2004)). Nothing in his Motion rises to that level. The Motion flatly stats that conduct by Smith's counsel merits sanctions, but the only conduct Hansmeier identifies is as follows:

- his lack of prior notice or service of the March 7 subpoenas, though Duffy was properly served and it is the law of the case that service on Duffy constitutes

service on Steele and Hansmeier; and though Smith's counsel promptly and voluntarily withdrew those subpoenas within hours of Hansmeier raising the issue;

• his lack of prior notice of the March 24 subpoenas, though he was given notice on March 18;

• his lack of service of the March 24 subpoenas, though he was properly served and just hasn't received service from the post office yet;

• lack of service of a courtesy copy by email, though he told Smith's counsel he does not accept service by email;

• a three-day lag time in responding to his April 18 email, when he knew or should have known that Smith's counsel was busy responding to a brief Hansmeier himself filed in *Chowdhury*; and

• seeking further discovery about Hansmeier, Duffy, and Steele after their belated bond was posted, when the first dozen subpoenas yielded copious information calling into question or directly contradicting their representations to this and other Courts. *See* Doc. 135 and exhibits thereto.

In the end, that last issue seems to this Motion appears to be a mere smokescreen. Smith's discovery efforts seem to have struck a nerve with Plaintiff's Counsel, and they are taking extraordinary measures to prevent it from proceeding.[6] To wit, Smith has identified $212,125 Steele transferred to an investment business he co-owns with Robert Balzebre, and $229,512.11 Steele invested in various stocks and IRAs. Similarly, Hansmeier has transferred $445,000 to a company with the notation that such checks were for "estate planning." Said company has no discernible address, officers, employees, products or services.

The Motion also declines to state the factors considered in this Circuit before sanctions may be imposed for discovery violations: "(1) the prejudice or surprise to the party against whom the evidence is being offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003).

Even if there had been any discovery violation, Hansmeier has shown no prejudice and cannot. Steele and Duffy received copies of the subpoenas and found nothing to which to mount an

---

[6] Steele has gone so far as to notify entities Smith has not even subpoenaed that a stay is in place. *See, e.g.,* Ex. D (a forwarded email following a call from a perplexed attorney for GMS Group as to why he was being sent subpoenas not directed toward his company).

objection.[7] If Hansmeier had any concerns about whether he personally would find something objectionable, he could have gotten copies from his colleagues Steele or Duffy; or he could have allowed for service by email. The Motion makes a baseless argument that, "[i]t is likely that several of Sweet's subpoenas have no tangible relevance to the issues before the Court, and that several implicate the attorney-client privilege." Motion p. 8. Irrelevance by itself would not constitute prejudice, and does not appear to be a genuine issue; Hansmeier's true concern is that the discovery is all too relevant. Here, each non-Google subpoena remains relevant and was narrowly tailored:

1. **MCZ/Centrum Flamingo III.** Real estate company that commenced eviction proceedings against Steele and Mark Lutz. Requested items include security deposit information and checks used for rent payments.

2. **Pearl Insurance.** Prenda's liability insurer. Requested documents in order to better discern the relationships between Plaintiff's Counsel.

3. **T-Mobile.** Steele's credit card shows payments to a T-Mobile subsidiary for a disposable cell phone. Information was requested to determine where the calls were made from and to whom.

4. Plaintiff's Counsel deny any connections to Latvia, however account information for websites owned and controlled by Steele and Hansmeier show that several sites were administratively accessed via a Romanian ISP. To that end, Smith requested information from Plaintiff's Counsel known **Twitter, GoDaddy, and Hotmail** accounts to 1) discern the source of communications between them; and 2) any discussion of assets or ownership.

5. The remaining entities, **TransFirst, American Express, MasterCard, Pershing, LLC, Sabadell Utd. Bank, Bank of New York, Capital One**, are financial institutions identified via the previous subpoenas.

On the issue of privilege, the Motion offers one mooted and incorrect example: one of Smith's withdrawn subpoenas was issued to Google, which maintains Hansmeier's Google account. *Id.* p. 7. Smith elected not to reissue a subpoena to Google, mooting the issue. *See* Ex. E hereto (copies of subpoenas sent). Furthermore, Smith's subpoena to Google, like his other third party subpoenas, was tailored to avoid requesting information or documents that might implicate attorney-client privilege concerns. *See* Ex. A. As already explained to Steele, his subpoenas to email providers sought only the identification of emails' senders, recipients, date and time, and subject header—not any potentially privileged content. *See* Ex. F hereto; *Chevron Corp. v. Donziger*, No. 12-mc-80237-CRB, Doc. 70 pp. 4-6, 7-19 (N.D. Cal. Aug. 22, 2013) (denying motion to quash subpoenas to

---

[7] Though admittedly, Steele found it worthwhile to skip the motion to quash stage altogether and interfere with discovery without leave of court, taking it upon himself to tell the subpoenaed non-parties to not comply—the issue addressed in Smith's motion for sanctions. *See* Dkt. No. 153, 158.

Google and Yahoo requesting identifying information associated with the subscribers as well as the usage information of each account for certain time periods).

Further, if there had been a discovery violation, Hansmeier could not show any bad faith or willfulness in Smith failing to disclose information; he gave service to Hansmeier directly. Nor can Hansmeier show that a trial is likely to be disrupted, when no party has had an active claim in the case for more than a year.[8]  In short, Hansmeier alleges nothing that resembles a discovery violation and nothing that would justify quashing any subpoena.

## VI.   The relief sought in the Motion is improper and should not be granted.

Hansmeier has curiously changed positions. At the outset of this case, after the Illinois Supreme Court stopped Plaintiff and its counsel's dogged pursuit of discovery about non-parties they amended their complaint to accuse Smith of conspiring with thousands of those non-parties—though as Hansmeier himself argued, only their ISPs knew their identities. Dkt. No. 50 p. 7. His first motion to quash asked the court to *prevent* discovery about non-parties, namely, himself, Hansmeier and Duffy. Dkt. No. 116. He now wants it both ways: he seeks to prevent Smith from continuing to discover information about financial and other irregularities in his, Steele's and Duffy's accounts, while at the same time obtaining access to Smith's discovery from third parties about other non-parties. There is a limited exception to the standing doctrine which allows a party to assert the rights of others where "the party asserting the right has a close relationship with the person who possesses the right," and where "there is a hindrance to the possessor's ability to protect his own interests." *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004). To the extent Hansmeier doesn't already have the financial records of those non-parties in his control, they are the last thing he should be awarded.

## CONCLUSION

Smith therefore respectfully urges this Court to deny the Motion in all regards.

Dated: May 6, 2014                                        Respectfully,

                                                          /s/ Jason Sweet
                                                          Jason E. Sweet (admitted *pro hac vice*)
                                                          Email: jsweet@boothsweet.com

---

[8]  On March 21, 2014, the anniversary of the voluntary dismissal of all claims, when Plaintiff abandoned any pretense to pursuing *bona fide* litigation, passed without celebration. *See* Dkt. No. 59.

 /s/ Dan Booth (with consent)
Dan Booth (admitted *pro hac vice*)
Email: dbooth@boothsweet.com

BOOTH SWEET LLP
32R Essex Street
Cambridge, MA 02139
Tel.: (617) 250-8602
Fax: (617) 250-8883

*Counsel for Defendant Anthony Smith*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 6, 2014, all counsel of record who are deemed to have consented to electronic service are being served a true and correct copy of the foregoing document using the Court's CM/ECF system.

/s/ Jason Sweet
Jason E. Sweet