<u>UNITED STATES DISTRICT COURT</u>
<u>FOR THE SOUTHERN DISTRICT OF ILLINOIS</u>

**LIGHSPEED MEDIA CORP.,**

       *Plaintiff,*

    *v.*

**ANTHONY SMITH, et al.,**

       *Defendants.*

Civil No. 3:12-cv-889-DRH-SCW

<u>PAUL HANSMEIER'S REPLY TO JASON SWEET'S REPONSE TO</u>
<u>HANSMEIER'S MOTION FOR SANCTIONS AND TO QUASH</u>

Pursuant to SDIL-LR 7.1(c), exceptional circumstances warrant the filing of a reply brief. The exceptional circumstances include Sweet's attempt to deceive the Court.

To recap: in his motion for sanctions and to quash, Hansmeier's allegation is that Sweet failed to satisfy his obligations under Federal Rule of Civil Procedure 45(a)(4), which requires Sweet to provide Hansmeier with "notice and a copy of the subpoena" prior to serving it "on the person to whom it is directed." *See* Fed. R. Civ. P. 45(a)(4). The purpose of this rule is to "afford other parties an opportunity to object to the production or to serve a demand for additional documents or things." Fed. R. Civ. P. 45 committee note, 1991 amendments. District courts are well within their discretion to sanction attorneys who issue non-party subpoenas without abiding by Rule 45's requirements. *See Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 386–87 (7th Cir. 2008).

I.   <u>Sweet's Arguments Regarding Service</u>.

Sweet's claim that he served Hansmeier with the subpoenas appears to be an attempt to deceive the court. Sweet's deception is exposed by reference to the various proofs of delivery presented in Exhibit B to his filing, including: (1) the tracking number; (2) the return receipt; and (3) and the purchase receipt. (*See* Dkt. #163−2.)

The tracking number identified in Sweet's memorandum (Dkt. #163, at 3), 70123050000066664895, is not associated with a delivered package. Instead, it is associated with a package that is "in-transit." *See* Hansmeier Declaration, Exhibit A. Hansmeier contacted the post office to get more information about this package, and was informed that the post office did not have any information beyond what was presented online. Hansmeier Declaration, at ¶2. Further, there is no record of this package being received at Hansmeier's office suite. Hansmeier Declaration, at ¶2. Perhaps the package was addressed in a manner that would not reach Hansmeier.

Sweet presented a return receipt that—at first glance—appears to be associated with a March 26 mailing to Hansmeier. (*See* Dkt. #163−2, at 6.) However, a careful examination of the return receipt reveals that the tracking number on the bottom of the receipt *does not match* the tracking number presented in Sweet's response (or, for that matter the tracking number identified in the

purchase receipt on page 1 of Exhibit 2 to Sweet's response).[1] After noticing this discrepancy, Hansmeier contacted Sweet and learned that Sweet "[had] *not received a return receipt*" for the alleged March 26 mailing. *See* Hansmeier Declaration, Exhibit B.

Put plainly, Sweet presented a return receipt to the Court that does not match the package that he is trying to establish was delivered to Hansmeier. Sweet *was never in possession* of a return receipt matching this package. Further, the return receipts for the packages mailed to Duffy and Steele match the tracking numbers identified on the purchase receipt. The natural assumption of a reader reviewing Exhibit 2 to Sweet's response is that the purchase receipt on page 1, matches the certified mail receipts on pages 2–5, the return receipts on pages 6–8 and documents in the photograph on page 9. Sweet's response does nothing to dispel this assumption. This was not an innocent mix-up. Again, Sweet *was never in possession* of a return receipt for his alleged March 26 mailing to Hansmeier.

Even basic math dispels Sweet's assertion that he mailed subpoenas to Hansmeier. Assuming that Sweet uses the cheapest (and therefore lightest) printer paper available—20 lb. paper—the weight per sheet of standard size paper is .16 ounces. *See* Hansmeier Declaration, at ¶3. Sweet's *ex parte* memorandum, with exhibits, totaled 203 pages. 203 pages multiplied by .16 ounces figures out to 32.48 ounces. The package Sweet allegedly mailed to Hansmeier was 38.6 ounces. (*See*

---

[1] The tracking number at the bottom of the return receipt submitted by Sweet is, 70131710000002796949. This tracking number is associated with a package that was delivered to Hansmeier on March 10, 2014.

Dkt. #163−2, at 1.) (stating mailing weight of package mailed to Minneapolis.) The subpoenas Sweet allegedly mailed to Hansmeier totaled sixty pages. (*See* Dkt. 163−5.) Sixty pages multiplied by .16 ounces is 9.6 ounces. Adding 9.6 ounces to the 32.48 ounces of the *ex parte* memorandum results in a figure, 42.08, that *exceeds the stated mailing weight* of the package Sweet alleges to have mailed to Hansmeier—and this is before accounting for the weight of packaging.

In summary: Sweet never mailed subpoenas to Hansmeier. His efforts to state otherwise appear to be an attempt to deceive the Court. It is no wonder that Sweet was unwilling to support his statements regarding mailing with a declaration filed under the penalty of perjury.

Sweet's other arguments regarding service are ridiculous. His suggestion, for example, that "the law of the case" doctrine excuses him from Rule 45 compliance misses a critical point: There has been no holding in this case that Sweet's Rule 45 obligations with respect to Hansmeier are satisfied by serving Duffy with notice and a copy of subpoenas. Such a holding would make no sense. Duffy, Steele and Hansmeier have different interests regarding attorney-client privilege, relevance and privacy. They are each individually entitled to notice and a copy of the subpoenas issued by Sweet. It is not difficult or even slightly burdensome for Sweet to mail copies of his subpoenas to each of Duffy, Steele and Hansmeier.

Sweet's suggestion that his March 18, 2014 e-mail to Hansmeier satisfied his Rule 45 obligations is even more absurd. First, his argument ignores the fact that Rule 45 requires both *notice* and *a copy of the subpoena*. *See* Fed. R. Civ. P. 45(a)(4).

Even if his March 18, 2014 e-mail satisfied Rule 45's notice requirement (and it did not), Sweet was still required to provide Hansmeier with copies of the subpoenas he was issuing. *See id*. Sweet had not done so prior to March 18, and he did not do so after March 18. All Sweet's March 18 e-mail did was identify a list of the recipients of Sweet's March 7 *ex parte* subpoenas. (*See* Dkt. #163−1, at 1−2.) Without copies of these subpoenas, Hansmeier had no way of knowing what objections he might possibly raise. Second, Sweet's response glosses over the fact that Sweet's March 18 e-mail listed a different set of recipients than those who were served on March 24. The recipients of Sweet's March 24 subpoenas included, for example, MCZ Centrum Flamingo III, Pearl Insurance, Salbadell Utd. Bank, Pershing, LLC, Bank of New York and Capital One. (*See* Dkt. #163, at 7.) Not one of these entities was listed on Sweet's March 18 e-mail. Thus, at least with respect to these entities, Sweet's e-mail could not possibly satisfy Rule 45's notice prong.

## II.   <u>Sanctions Are Warranted</u>.

Sweet's conduct is at least as egregious as the conduct sanctioned by the district court in *Judson Atkinson Candies, Inc*. In *Judson Atkinson Candies, Inc.*, counsel failed to provide copies of the subpoenas to opposing counsel. *Id.* at 387. Then, counsel failed to provide copies of the documents obtained to opposing counsel until ten days after the last installment was received. *Id.* Then, counsel made misrepresentations regarding the subpoenas that were issued. *Id.* The Seventh Circuit ruled that district court was well within its discretion to sanction counsel.

Here, Sweet was previously caught red-handed issuing *ex parte* subpoenas. Despite being caught once, Sweet decided to try the tactic again. This time around, though, he declined to subpoena Google. After all, it was his prior subpoena to Google that alerted Hansmeier to Sweet's efforts. Then, when caught once again, Sweet lied to this Court about serving Hansmeier with the subpoena. Indeed, he presented a document to the Court with the apparent mission of having the Court form an incorrect conclusion about service. Sweet has never produced the subpoenaed documents to Hansmeier. In fact, in his response, Sweet bizarrely fights against being forced to do so. What is Sweet hiding?

Sweet's suggestion that Hansmeier suffered no prejudice has been directly addressed (and rejected) by the Seventh Circuit, which made clear that the deprivation of an "opportunity to object" is prejudice. *Judson Atkinson Candies, Inc.*, 529 F.3d at 87. Indeed, a cursory overview of Sweet's subpoenas shows that many of them could not have less relevance to the issues before the Court. Taking a single example, Sweet's only stated basis for issuing a subpoena to Pearl Insurance is to "better discern the relationships between Plaintiff's Counsel." (Dkt. #163, at 7.) That issue is plainly not before this Court.

Hansmeier would bring this Court's attention to one final misrepresentation made by Sweet. In Sweet's response, Sweet references a transfer of $445,000 made by Hansmeier. (*See* Dkt. 163, at 7.) However, Sweet does not disclose to the Court

that the transfer occurred years ago[2] and that Sweet obtained this information from a subpoena issued prior to his Renewed Sanctions Motion. In other words, Sweet's suggestion that his discovery has "struck a nerve" with Hansmeier (or anyone else) is premised on yet another (but surely not the last) misrepresentation to this Court by Sweet.

III.   Conclusion.

The Court should grant Hansmeier's Motion for Sanctions and to Quash and award Hansmeier the relief sought therein. It should further consider defending itself Sweet's repeated false statements to the Court.

Respectfully Submitted,

May 7, 2014

/s/ Paul Hansmeier_____
Paul Hansmeier
80 S. 8th St. Ste 900
Minneapolis, MN 55402
612-234-5744

---

[2] Hansmeier believes the transfer occurred in 2011, but it was so long ago that he cannot recall the precise date. Sweet refuses to provide Hansmeier with the information.

7

**CERTIFICATE OF SERVICE**

I hereby certify that on May 7, 2014 I filed the foregoing document through the Court's CM/ECF system, which will electronically serve this document on all parties of record.


/s/ Paul Hansmeier_____