# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **LIGHSPEED MEDIA CORP.,** *Plaintiff,* v. **ANTHONY SMITH, et al.,** *Defendants.* | Civil No. 3:12-cv-889-DRH-SCW |

## PAUL HANSMEIER'S RENEWED MOTION TO STRIKE REPLY BRIEF AND ACCOMPANYING EXHIBITS

It is no wonder why Jason Sweet attempted to file the "Reply" *ex parte*. It is both procedurally and substantively fraudulent. It is also about as clear a violation of Illinois Rule of Professional Conduct 3.3(d) (and its Massachusetts counterpart) as can possibly be imagined. This Court has shown Sweet great deference, but should no longer countenance his incredible misconduct.

### I. The "Reply" is Procedurally Fraudulent.

The purpose of a reply memorandum is to respond to the counterarguments asserted in an opposing party's opposition memorandum. The "Reply" goes so far afield of these restrictions that it should be considered procedurally fraudulent and stricken as such.

Take, for example, the section headings of the "Reply": (1) "The Court's Finding That Plaintiff's Counsel Act in Concert Remains the Law of the Case"; (2) "Ownership of Prenda."; and (3) "What Plaintiff's Counsel Hope to Hide." What does "Ownership of Prenda" have to do with whether Duffy, Steele or Hansmeier

obstructed discovery—which, of course, is the actual matter subject of the motion giving rise to the "Reply"? (*See* Dkt. #153) ("Motion for Sanctions for Obstructing Discovery).

As another example, the statements in footnote one of the "Reply" are in direct response to Hansmeier's reply brief to an unrelated motion. (*See* ECF No. 166.) Indeed, Sweet even cites to Hansmeier's unrelated reply brief at ECF No. 166. Smith's attempt to rebut argument in an unrelated reply brief is an obvious attempt to bypass this Court's strict prohibition against sur-replies. *See* SDIL-LR 7.1(c).[1]

Perhaps the most blatant example of Sweet's procedural fraud is the exhibits attached to the "Reply". These exhibits are not probative in any manner whatsoever of whether Duffy, Steele or Hansmeier "obstructed discovery", as Sweet alleges. Further, Sweet was in possession of several of these documents when he filed his sanctions motion. He attached documents from TCF, for example, to his renewed motion for contempt. (*See* Dkt. 135-28.) Finally, the entire basis for Sweet's motion—that Steele obstructed discovery—is fatally undermined by the documents he attached, as several of the documents appear to be *the product of discovery Sweet claims was obstructed*. To make this last point crystal clear: Sweet is wasting this Court's time and the time of Duffy, Steele and Hansmeier by *continuing to seek sanctions for the obstruction of discovery that has already been produced*.

---

[1] Although it is outside the scope of this motion, Sweet's representations in the footnote are false. If the Court cares to hold Sweet responsible for lying to the Court, it can simply ask Sweet to produce, under the penalty of perjury, the "several return receipts for packages Hansmeier has denied receiving" along with the e-mails in which Hansmeier denied receipt.

If the Court is not yet convinced that the "Reply" has nothing to do with the subject matter of the motion it relates to—whether discovery obstruction occurred—Hansmeier would ask it to consider the first sentence of the "Reply's" Conclusion:

> Plaintiff's Counsel have identified no current sources of income, yet are able to maintain mortgages in excess of $500,000.00; able to provide for their families' living expenses; and even on occasion add a pool, spa[2] and other renovations to their home.

This has nothing to with whether discovery was obstructed.

## II. The "Reply" is Substantively Fraudulent.

This Court, of course, has the inherent power to strike a filing that is substantively fraudulent on its face. Although a comprehensive response to the substance of the "Reply" is well beyond the scope of this motion, Hansmeier would simply note one unmistakable instance of fraud. In its entirety, paragraph eight on page four of Sweet's "Reply" reads as follows:

> Hansmeier too had a say in Prenda's operation, initialing his decision for the chosen level of insurance coverage for Prenda. *See* Ex. O (with exemplars of Hansmeier's initials). Note, this document shows Prenda consists of *three* partners.

(*See* Dkt. #172, at 4, ¶8.) (emphasis in original). Both of Sweet's statements are fraudulent, almost to the point of absurdity.

Paul Hansmeier's initials are "PH". The initials on Exhibit O are "PD"—Paul Duffy, perhaps? Further, Hansmeier's handwriting is not remotely comparable to

---

[2] The association documents at Hansmeier's condominium building prevent him from adding a "pool" or a "spa" to his unit. Hansmeier addressed his ability to cover living expenses in his statement of financial position previously submitted to Court. Of course, neither of these points has any relevance to Sweet's fraudulent discovery obstruction narrative.

3

the handwriting on the insurance application. Just compare the exemplars provided by Sweet on the following unrelated pages attached to Exhibit O.

| *Insurance Application* | *Exemplars* |
|---|---|
|  |  |

The letters on the application read "PD" and bear no resemblance to Sweet's exemplars of Hansmeier's initials. Sweet also states that the insurance application "show Prenda consists of *three* partners." (emphasis in original). But the word "partner" literally does not appear in the application. The portion of the exhibit highlighted by Sweet reads "3 laywer(s) and 5 of counsel." (*See* Dkt 172-15.) In any event, none of this has anything to do with alleged discovery violations.

### III. The "Reply" is Associated With a Major Ethics Violation.

The "Reply" was filed *ex parte*. Both Illinois and Massachusetts require attorneys in *ex parte* proceedings "to inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse." *See, e.g.,* Ill. R. Prof. Conduct 3.3(d). Sweet's filing was about as significant a violation of this rule as can possibly be imagined.

Pretending, for one moment, that the "Reply" actually addressed the subject matter of the alleged discovery violation, where is the disclosure from Sweet regarding what subpoena responses he has obtained? Certain of the exhibits

4

attached to his "Reply" (e.g. the GMS Group/Pershing Square response) appear to be the product of the very discovery he claims has been obstructed. This is a disclosure that would assist this Court in making an informed decision.

As for the actual substance of his "Reply", Sweet's presentation of financial documents appear to be directed towards a renewed showing of ability to pay. Sweet fails to disclose the dates of several transfers discussed in the "Reply" and the current balances of the accounts referenced in the "Reply." Conspicuously, Sweet discusses transfers that occurred years ago, but is largely silent as to the financial positions of Duffy, Steele and Hansmeier from November 2013 to the present. Sweet had an absolute professional obligation to not be silent on facts that would assist the Court in making an informed decision. He totally and completely violated that obligation.

This Court has the inherent authority to strike documents that are associated with major ethics violations.

## **CONCLUSION**

For all of the reasons described in Hansmeier original motion to strike, and in this renewed motion to strike, the Court should strike Sweet's "Reply" and all of the exhibits attached to it.

Respectfully submitted,

May 20, 2014

/s/ Paul Hansmeier
Paul Hansmeier
80 S. 8th St. Ste 900
Minneapolis, MN 55402
612-234-5744

5

**CERTIFICATE OF SERVICE**

I hereby certify that on May 20, 2014 I filed the foregoing document through the Court's CM/ECF system, which will electronically serve this document on all parties of record.

/s/ Paul Hansmeier