IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LIGHTSPEED MEDIA CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:12-cv-00889-DRH-SCW |
| ) | |
| ANTHONY SMITH, SBC INTERNET ) | **RESPONSE TO PETITION BY** |
| SERVICES, INC., d/b/a AT&T INTERNET ) | **PAUL HANSMEIER FOR AN** |
| SERVICES; AT&T CORPORATE ) | **ORDER TO SHOW CAUSE WHY** |
| REPRESENTATIVE #1; COMCAST ) | **RESPONDENTS ANTHONY SMITH,** |
| CABLE COMMUNICATIONS, LLC, and ) | **JASON SWEET AND DAN BOOTH** |
| COMCAST CORPORATE ) | **SHOULD NOT BE FOUND IN** |
| REPRESENTATIVE #1, ) | **CIVIL CONTEMPT** |
| ) | |
| Defendants. ) | |

Defendant Anthony Smith ("Smith") and Smith's counsel Jason Sweet ("Sweet") and Dan Booth (collectively "Respondents") respectfully submit this response to Paul Hansmeier's ("Hansmeier") civil contempt petition. Doc. 169 ("Petition"). Sweet mistakenly filed a document without redacting personal data identifiers on one of its ninety-five pages of exhibits. Doc. 163 ("Response"); Doc. 163-4 p. 5; Affidavit of Jason Sweet ¶ 4 ("Sweet Aff.") (Ex. A hereto). Sweet acted to mitigate the mistake as soon as he became aware of it. Once notified by Sweet, the Court struck the Response from the docket. Doc. 164; Sweet Aff. ¶ 6. Sweet redacted, apologized, and refiled. *See* Doc. 165 p. 1 n. 1. The next day Sweet found the unredacted Response was on a public website and quickly had it removed. Sweet Aff. ¶¶ 8-13. Despite this prompt compliance and redress of an inadvertent error, Hansmeier wants all Respondents found in civil contempt, ordered to pay Hansmeier $1,375 plus fees related to the Petition, fined $1,000 per day for any noncompliance, and prosecuted as criminals. Petition p. 3; Doc. 170 pp. 7-12.

The Petition, and the extraordinary relief Hansmeier seeks, should be denied entirely.

**RELEVANT FACTUAL BACKGROUND**

Before any discovery, while defendants' motions to dismiss were still pending, the plaintiff noticed voluntary dismissal of all claims on March 21, 2013. Doc. 59. On April 5, 2013, Smith moved for sanctions against Hansmeier, Paul Duffy ("Duffy") and John Steele ("Steele") (collectively "Plaintiff's Counsel") pursuant to 28 U.S.C. § 1927. Doc. 61. The Court granted the

motion. Doc. 65. On November 27, 2013, the Court ordered Plaintiff's Counsel to pay all defendants' attorney's fees and costs by December 11, 2013. Doc. 100 ("Sanctions Order").[1]

Plaintiff's Counsel failed to obey the Sanctions Order. The defendants filed a joint motion for contempt on December 27, 2013. Doc. 107. Plaintiff's Counsel indicated an inability to pay. Doc. 136 p. 6. Smith subpoenaed twelve third parties to obtain evidence of Plaintiff's Counsel's financial resources and ability to pay the amounts ordered. *See* Doc. 116-1. Steele moved to stay the Sanctions Order. Doc. 114. The Court denied Steele's motion on February 13, 2014. Doc. 123. Plaintiff's Counsel moved to quash Smith's subpoenas. Doc. 116 ("Motion to Quash"). The Court denied the Motion to Quash on February 19, 2014. Doc. 125. Smith filed a renewed motion for contempt *ex parte* on March 20, 2014. Doc. 134, 135. On March 24, 2014, the Court found Plaintiff's Counsel in contempt of Court for failing to comply with the Sanctions Order. Doc. 136 ("Contempt Order").[2] Plaintiff's Counsel failed to prove an inability to pay. *Id.* pp. 6-7.

On March 25, 2014, Smith issued a second round of subpoenas, pertinent to his pending renewed motion for contempt, to third parties identified in his first round of discovery. *See* Doc. 165-5.[3] Hansmeier again moved to quash the subpoenas and sought sanctions against Sweet, claiming he had not received prior notice of the subpoenas. Doc. 157. Smith responded, explaining that Hansmeier had been sent notice by certified mail, and further noted that Plaintiff's Counsel had compounded their sanctionable, contemptuous acts with extreme measures to interfere with discovery.[4] *See* Response pp. 2-3 (notice) & 6 (interference). Smith suggested that Plaintiff's Counsel

---

[1] Plaintiff's Counsel appealed the Sanctions Order. *See* Doc. 102. The Seventh Circuit heard oral argument on April 7, 2014 and has not yet issued an opinion.

[2] Plaintiff's Counsel also appealed the Contempt Order. *See* Doc. 140, 145. No briefs have yet been filed in that appeal. The Court stayed the Contempt Order pending appellate review. Doc. 148. Plaintiff's Counsel have still not paid Smith or the other defendants the amounts required by the Sanctions Order. Instead, Steele posted a belated bond. Doc. 149.

[3] Smith had previously issued that second round of subpoenas on March 7, 2014, but voluntarily withdrew them and reissued them on March 25, 2014. *See* Doc. 163 p. 2.

[4] For instance, Steele contacted third parties subject to the subpoenas and falsely informed them that discovery had been stayed by the Contempt Order. *See* Doc. 153, 158. Steele bragged about this interference: "I have already contacted the third parties involved, and notified them." Doc. 153-1 p. 2. Steele lied to Smith that the other defendants had agreed to a protective order; the other defendants repudiated that claim. *See* Doc. 135 p. 8 and Exs. W-Y thereto. Likewise, on March 3, 2014, twelve days *after* the Court denied the Motion to Quash, Duffy faxed the Motion to Quash to JP Morgan/Chase Bank as if it were a pending motion prohibiting disclosure. *See* Doc. 135 p. 9 and Ex. Z thereto. In a similar obstructive maneuver, Plaintiff's Counsel all falsely contended in the Motion to Quash: "Smith's issuance of discovery is in direct violation of a discovery stay (Dkt. No. 53) that was imposed over ten months ago." Doc. 116 p. 2. As the Court explained, that preliminary stay of discovery, while defendants' motions to dismiss was pending, had become moot upon plaintiff's notice of dismissal. Doc. 125 p. 3.

2

seemed motivated to their dilatory interferences and obstructive post-sanction motions, including the instant motion,[5] because Smith's "first dozen subpoenas yielded copious information calling into question or directly contradicting their representations to this and other Courts" about their finances. Response p. 6. A footnote in the Response cited one such attempted interference: Steele told so many subpoenaed third parties not to respond to discovery that he lost track, giving the securities broker GMS Group ("GMS") the same false notice that a stay was in place, though Smith had not subpoenaed GMS. *Id.* p. 6 n. 1. The footnote cited an exhibit: a forwarded email from Steele to GMS, to which Steele had attached a Schedule A from two of Smith's subpoenas ("Schedule A"). *Id.* That Schedule A included a list of five people likely to have access to financial accounts pertinent to Plaintiff's Counsel's ability to pay—Steele, Hansmeier, and Duffy; Steele's wife and co-worker Kerry Steele[6] ("Ms. Steele"); and Mark Lutz[7] ("Lutz"), a paralegal at Prenda Law, Inc., a firm with which "Duffy, Steele and Hansmeier are all associated." Sanctions Order p. 6.

Sweet prepared the Response for filing, handling all redactions. Sweet Aff. ¶ 2. He thoroughly redacted at least eighty-three personal data identifiers and financial account numbers from Exhibit E to the Response. *See* Doc. 163-5 pp. 5, 7, 25, 28, 35, 42, 49, 56 & 59-60; Sweet Aff. ¶ 3. Exhibit E includes all thirteen of Smith's second round of subpoenas, including a properly redacted

---

[5] *See also* Doc. 114, 116, 138. Plaintiff's Counsel's many post-sanction and post-contempt filings have needlessly burdened Smith and delayed the proper course of discovery.

[6] Hansmeier argues that Ms. Steele has "no connection to this case." Doc. 170 p. 12. On LinkedIn, Ms. Steele has identified herself as project manager/legal secretary at Steele Law Firm from its September 2007 inception through March 2012, and as Prenda Law, LLC's business manager/PR director from its inception in August 2010 through August 2012. *See* Sweet Aff. ¶ 18 & Ex. A. (Curiously, Prenda was not incorporated in Illinois until November 7, 2011. *See* Doc. 172 p. 2. n. 2.) The 2012 Prenda Law Profit and Loss Detail lists Ms. Steele as one of Prenda Law's "1099 Staff" and indicates payments totaling $2500 to Ms. Steele from Prenda Law's Chase Bank operating account on June 8, 2012, including $551.57 paid "Re: Sunlust Pictures" as an unspecified reimbursable expense. Doc. 135 Ex. T pp. 1 & 2. Thus, Ms. Steele was engaged by Prenda Law during the pendency of this case. *See* Doc. 2-9 pp. 38-40 (March 2012 filing by Paul Duffy of Prenda Law on behalf of plaintiff in St. Clair County proceeding).

[7] Lutz signed at least one affidavit declaring, "I am a paralegal at Prenda Law, Inc., located at 1111 Lincoln Road, Ste 400, Miami Beach, FL 33139." Affidavit of Mark Lutz, *AF Holdings, LLC v. John Doe*, No. 11-cv-24473 (S.D. Fla. filed Apr. 16, 2012). Ms. Steele notarized that affidavit. *Id.* That is also Steele's address. *See* Doc. 114.
  Hansmeier argues that Lutz "has nothing to do with this case." Doc. 170 p. 12. Yet in related cases, Lutz has acted as a supposed "corporate representative" for Prenda Law clients, *see generally* Doc. 61 pp. 14-15 & Doc. 61-4 at pp. 14-17 (Lutz testifying that he was paid on a contract basis to make courtroom appearances on behalf of Sunlust Productions, Hard Drive Productions, and Guava LLC, despite lacking authority to act for those corporations or knowledge of their corporate officers) and as putative CEO or manager of several of Plaintiff's Counsel's offshore shell company plaintiffs. *See* Doc. 92-3 (affidavit of former Prenda counsel Brett Gibbs identifying Lutz as the CEO of AF Holdings and Ingenuity 13) & Doc. 92-4 p. 4 (finding Plaintiff's Counsel were AF Holdings and Ingenuity 13's "*de facto* owners and officers"); *see also AF Holdings LLC v. Navasca*, Case No. 12-cv-02396-EMC (NJV), 2013 U.S. Dist. LEXIS 118110, *2 n. 2 (N.D. Cal. Aug. 20, 2013) (as AF Holdings' Rule 30(b)(6) deponent, "Hansmeier testified that 'Mr. Lutz is the sole manager/employee of AF Holdings.'").

copy of Schedule A. *Id.* p. 42; Sweet Aff. ¶ 3. However, by mistake, Sweet did not redact the five birth dates and Social Security numbers from Schedule A where it appeared in Exhibit D. Doc. 163-4 p. 5; Sweet Aff. ¶ 4. Sweet filed the Response and its exhibits on May 5, 2014 at 4:49 PM CDT. Doc. 163; Sweet Aff. ¶ 5.

The next morning, May 6, 2014, Sweet became aware that he had not completely redacted the Response. Sweet Aff. ¶ 6. Sweet called the Court's clerk at approximately 10:25 AM CDT on May 6, 2014 to inform the Court of the error and to determine how to rectify it. *Id*. The clerk instructed Sweet to file a motion to withdraw and substitute a redacted version. *Id*. Shortly thereafter, at or around 10:32 AM CDT, Hansmeier called the Court "to inform it of the circumstances." Doc. 170 p. 2. As Sweet drafted a motion to withdraw, the Court struck and sealed the Response of its own accord at 10:51 AM CDT, giving notice that a redacted copy needed to be refiled. Doc. 164; Sweet Aff. ¶ 6.

Sweet refiled the Response, with Schedule A redacted in Exhibit D, on May 6, 2014 at 11:33 AM CDT. Doc. 165; Sweet Aff. ¶ 7. The refiled response was identical to the original Response except for the new redactions and a footnote adding this statement and apology:

> Smith originally filed this motion yesterday evening. Included in the exhibits was a communication Steele made to a non-party which included social security numbers and dates of birth. Because Steele, Hansmeier and Duffy had redacted this information when disclosing similar documents to non-parties, Smith's counsel made the erroneous assumption that it had been done here as well. Once alerted this morning, Smith's counsel immediately contacted the Clerk and had the motion stricken. Smith's counsel apologizes to the Court and to Steele, Hansmeier and Duffy.

Doc. 165 p. 1 n. 1.

Later on May 6, 2014, Hansmeier emailed Sweet and Booth to request that they purchase three years of identity theft protection services for him at an annual cost of approximately $275. Doc. 170-1 p. 4. Sweet responded that day, again stating his sincere regret, but noting, "we also believe the disclosure was harmless. Social Security numbers can be purchased for $5; dates of birth are readily ascertainable for free online and through public databases." *Id*.

On May 7, 2014, at 7:06 AM CDT, Hansmeier again emailed Sweet and Booth, stating that the unredacted Exhibit D had been "retrieved by the piracy community before [it] was struck by the Court and [is] now being publicized." Doc. 170-1 p. 6. Though he did not specify where it had been publicized, Sweet found it on an Internet Archive website that collects federal court filings: https://

archive.org/details/usfederalcourtsdev ("RECAP"). Sweet Aff. ¶ 8; *see also* Doc. 170-1 p. 18 (indicating that Exhibit D of the Response had been uploaded to RECAP at 11:25:23 on May 6, 2014). Sweet used Google to search online for other websites where the unredacted Schedule A might still be available and found no indication that it was online anywhere else. Sweet Aff. ¶ 10. At approximately 8:00 AM CDT on May 7, 2014, Sweet called the Internet Archive to ask that the entire stricken Response, including all its exhibits, be taken down. *Id.* ¶ 11; *see also* Doc. 170-1 p. 11. At 11:57 CDT on May 7, 2014, the Internet Archive called Sweet to say that the Response and exhibits had been removed from the site. Sweet Aff. ¶ 12. Sweet reviewed RECAP to verify the removal; the page where the unredacted Schedule A had been available now turned up a "page not found" message. *Id.* ¶ 13. Sweet again used Google to conduct further online searches, and found no indication that the unredacted subpoena was available online any longer. *Id.* ¶ 14. Sweet informed Hansmeier of those mitigating acts on May 8, 2014. Doc. 170-1 p. 11. Hansmeier filed his Petition on May 9, 2014. Doc. 169.

## LEGAL STANDARD

> To prevail on a request for a contempt finding, the moving party must establish by clear and convincing evidence that (1) a court order sets forth an unambiguous command; (2) the alleged contemnor violated that command; (3) the violation was significant, meaning the alleged contemnor did not substantially comply with the order; and (4) the alleged contemnor failed to make a reasonable and diligent effort to comply.

*United States SEC v. Hyatt*, 621 F.3d 687, 692 (7th Cir. 2010) (*citing Prima Tek II, L.L.C. v. Klerk's Plastic Indus., B.V.*, 525 F.3d 533, 542 (7th Cir. 2008)).

"Sanctions for civil contempt are designed either to compel the contemnor into compliance with an existing court order or to compensate the complainant for losses sustained as a result of the contumacy." *United States v. Dowell*, 257 F.3d 694, 699 (7th Cir. 2001).

## ARGUMENT

I.  **Respondents are not in contempt of court.**

Social Security numbers and birth dates included in a document publicly filed with the Court shall be in redacted form, pursuant to Fed. R. Civ. P. 5.2(a), SDIL-LR 5.1(d), and Southern District of Illinois Amended Administrative Order No. 107. The Court's ECF electronic filing system gives notice that compliance with those redaction rules is required. *See* Doc. 170 p. 6. The electronically filed Response did not fully comply with those requirements.

5

Hansmeier contends that those uncontested facts alone establish all four elements necessary for a finding of civil contempt against Respondents. Doc. 170 pp. 7-8; *see Hyatt*, 621 F.3d at 692. They do not. Hansmeier has not demonstrated, by clear and convincing evidence, that Respondents should be found in civil contempt.

The first element of civil contempt is an unambiguous command. Only this element is satisfied for each Respondent; the rules and the Court's Administrative Order are not ambiguous.

The second element of civil contempt is a violation of the command. Sweet prepared the Response for filing, handled the redactions, filed the Response through ECF, and certified that he had done so. *See* Response p. 9; Sweet Aff ¶ 5. Sweet takes full responsibility for the unredacted filing. Sweet Aff. ¶ 15. Booth and Smith did not handle the redactions to, or filing of, the Response and its exhibits, *see id.*, so neither of them could have violated any Court order or rule.

The third element of civil contempt is that the "violation was significant, meaning it did not substantially comply with the Order." *Prima Tek II*, 525 F.3d at 542. The Petition does not show that this element is satisfied. Substantial compliance does not mean unfailing compliance in all instances. *See id.* (affirming this Court's judgment that a petitioner had not proved failure to substantially comply with an order based on an immaterial amount of breaches). "Certainly 100% compliance could not be expected in any event; in fact, it would be impossible." *United States v. Kroger Grocery and Baking Co.*, 163 F.2d 168, 177 (7th Cir. 1947).

One isolated, unintended oversight does not amount to substantial noncompliance. Sweet had scrupulously redacted Exhibit E to the Response, filed simultaneously. *See* Doc. 163-5; Sweet Aff. ¶ 3. Fully redacting Exhibit E required at least eighty-three individual redactions of financial account numbers, birth dates and Social Security numbers. Sweet Aff. ¶ 3; *see* Doc. 163-5 pp. 5, 7, 25, 28, 35, 49, 56 & 59-60. Indeed, the Schedule A at issue in the Petition appeared in Exhibit E in redacted form, but not in Exhibit D. Doc. 163-5 p. 42; *see also* Doc. 165-5 p. 42 (same, as exhibit to refiled response). Thus the redactions were extensive but imperfect; one page of the exhibits slipped through, while ten pages were duly redacted.

"We are presented, then, with the question of how much non-compliance is needed before a district court can impose civil contempt sanctions." *Bailey v. Roob*, 567 F.3d 930, 937 (7th Cir. 2009). At issue in *Bailey* was the Indiana Medicaid program's compliance with a consent decree regulating the collection and evaluation of disability benefit applications. *Id.* at 932. The district court

6

determined that "four arguably incomplete applications" out of a sample of twenty-six files were not such clear and convincing evidence that would compel civil contempt sanctions. *Id.* at 933. The Seventh Circuit affirmed: "even if we did what appellants ask us to do and took the four 'less than complete' applications as an implicit finding that Indiana fell short of the terms of the consent decree in some cases, that finding would not necessarily justify the civil contempt sanctions that appellants seek." *Id.* at 939.

Falling short of the order in perhaps four out of twenty-six cases, about 15%, was not enough evidence of substantial noncompliance to require sanctions in *Bailey*. In this case, Hansmeier points to *one* unredacted page out of the 104 pages of the Response and exhibits; less than one percent of the filing. In *Prima Tek II*, the Seventh Circuit affirmed a judgment in which this Court declined to find contempt, based on roughly the same proportion of acts in compliance with its orders. *See Prima Tek II*, 525 F.3d at 538 ("Overall, while some sales violated the terms of the license [incorporated into a prior Court order], more than 99 percent did not."); *id.* at 542 (though "some of these transactions indeed did not comply," finding plaintiff "unable to prove by clear and convincing evidence that [defendant] failed to substantially comply with the [Court's] Order"). Despite a single unredacted page, Respondents substantially complied with the redaction requirements. The Petition fails to demonstrate a violation so significant, measured by the extent of noncompliance, that would prove the third element of civil contempt.

The fourth element is also not satisfied. Absent evidence of *willful* noncompliance, the petitioner must prove the respondent "was not 'reasonably diligent' in carrying out the terms of the court order." *Bailey v. Roob*, 567 F.3d 930, 935 (7th Cir. 2009). In *Bailey*, the Seventh Circuit cited with approval similar phrasing used by the Second Circuit "in elaborating the contempt standard, requiring that the evidence be sufficient to *foreclose* a finding of reasonable diligence." *Id.* (emphasis added) (*citing United States v. Local 1804-1, Int'l Longshoremen's Ass'n, AFL-CIO*, 44 F.3d 1091, 1096 (2d Cir. 1995)). Hansmeier did not attempt to show Respondents willfully refused to comply with any order, and offered no evidence sufficient to show a lack of reasonable diligence. The Petition's aspersions cannot foreclose a finding that Respondents exhibited reasonable diligence in the Response when Sweet fully redacted Exhibit E and promptly addressed the mistake in Exhibit D.

In *Ohda v. Potter*, No. 06-cv-759-CAN, 2008 U.S. Dist. LEXIS 23344 (N.D. Ind. Mar 19, 2008), the United States District Court for the Northern District of Indiana faced a motion for

7

sanctions over documents filed with personal identifiers unredacted, in violation of its then-analogous Local Rule 5.2. The motion was denied, because the harm was "relatively minor" and "the violation appears to be based on inadvertence." *Id.* at *10. The documents had been filed accidentally, "rather than with malice"; the filer moved quickly to redact and refile; and the "personal identifiers were only in the public's eye for approximately a month." *Id.* In this case, the personal identifiers were on PACER for less than a day, and on RECAP for about a day.

Respondents have demonstrated even greater diligence concerning privacy than required by the redaction requirements by filing certain documents *ex parte*. Doc. 135, 172. Dozens of pages of exhibits to those documents included financial account numbers. *See* Doc. 134, 171.

Sweet has personally filed dozens of pages of pleadings and hundreds of pages of exhibits in this case in 2014 alone. Sweet Aff. ¶ 16; *see* Doc. 124, 135 & Exs. A-EE, 153, 158, 163, 172 & Exs. A-X. The Petition marks the first time that anyone has claimed that his redactions were less than perfect, in this case or any other. Sweet Aff. ¶ 17. Only one page fell through the cracks. Having already redacted Schedule A in Exhibit E of the Response, Sweet erroneously believed that he had already redacted it when he prepared Exhibit D and he did not redact it again. Sweet Aff. ¶ 4. That mistake was neither willful nor so unreasonable that civil sanctions are warranted.

II. **Hansmeier fails to show that the sanctions he proposes are required to compel Respondents' compliance or to compensate Hansmeier for any actual loss.**

Hansmeier's proposed sanctions are not proper. "The rule to be spelled out from the court decisions is that a party compelled to resort to a civil contempt proceeding to preserve and enforce an adjudicated right is entitled to a decree by way of a fine for injuries actually sustained by him as a result of the contemptuous act[.]" *In re Federal Facilities Trust*, 227 F.2d 657, 658 (7th Cir. 1955) (emphasis added) (citations omitted). *See also United States v. Dowell*, 257 F.3d 694, 699 (7th Cir. 2001) ("Sanctions for civil contempt are designed either to compel the contemnor into compliance with an existing court order or to compensate the complainant for losses sustained as a result of the contumacy."). Hansmeier was not *compelled* to petition the Court to coerce compliance after Respondents expeditiously addressed the erroneous filing, and his conjectural injury is based on no evidence of any loss *actually sustained*. Furthermore, the specific sanctions he proposes, a $1,375 fine, attorney's fees and costs, and referral for criminal prosecution, are wholly unsupported in these circumstances.

### A. Respondents' compliance did not compel Hansmeier to move for contempt.

Hansmeier moves the court to "[o]rder and direct Respondents to cease and desist publication of … unredacted personal identifiers." Petition p. 2. No such sanction is appropriate, as there is no need to coerce Respondents' obedience. Sweet promptly took responsibility for rectifying the erroneous filing and subsequent publication of the unredacted Schedule A.

On May 6, 2014, unprompted by Plaintiff's Counsel, Sweet informed the Court of the erroneous filing, and the Court struck the Response within thirty minutes. Sweet Aff. ¶ 6; Doc. 164.[8] As ordered by the Court, Sweet filed a redacted version the same day. Doc. 164, 165-4; *see also* Doc. 170-1 pp. 8-10. On the morning of May 7, 2014, Hansmeier and Steele notified Sweet and Booth that the unredacted Response had been published outside of PACER, but not where it could be found. Doc. 170-1 p. 6. Sweet independently investigated the issue and found that the Response had been published on RECAP and requested a takedown; the Response was taken down from the site within hours. Sweet Aff. ¶¶ 8 & 11-12; Doc. 170-1 p. 11. Sweet then reviewed RECAP to verify the removal, and used Google to conduct further online searches for any other website still making the unredacted Schedule A available and found no indication that it was still available anywhere online. Sweet Aff. ¶¶ 13-14; Doc. 170-1 p. 11.

"A civil contempt action is remedial in nature in that it is brought to compel obedience to a court's order. Once compliance has been achieved, civil sanctions are no longer necessary or appropriate." *United States v. Greyhound Corp.*, 363 F. Supp. 525, 570 (N.D. Ill. 1973), *aff'd*, 508 F. 2d 529 (7th Cir. 1974). Respondents acted so swiftly to limit exposure and are now fully compliant in this matter. *See Richards v. Great Western Ins. Co.*, No. 11-cv-965, 2012 U.S. Dist. LEXIS 30109, *34 (D. Minn. Jan. 13, 2012) (recommending denial of motion for sanctions related to violation of Fed. R. Civ. P. 5.2(a), where filing party "promptly took action and refiled the documents at issue, redacting Plaintiff's social-security number and birthdate, within two days"), *adopted*, 2012 U.S. Dist. LEXIS 28541 (D. Minn. Mar. 5, 2012). The Petition is therefore moot. *See id.* at *37 ("because the Court has already sealed the documents containing Plaintiff's information and ordered

---

[8] *See also* Doc. 170-1 p. 8 (May 7, 2014 email from Booth to Plaintiff's Counsel) ("Immediately upon becoming aware of the inadvertent filing of information subject to redaction, Mr. Sweet contacted the court's clerk of his own accord to remedy the matter, anticipating your concerns. At his prompting, the clerk struck the filing, less than 24 hours after it was filed.").

[defendants] to file redacted versions of those documents, Plaintiff's request for a protective order is moot").

Hansmeier had already received all proper relief when public access to the unredacted documents was restricted, at Respondents' behest, before the Petition was filed. The typical relief for the erroneous publication of personal data identifiers is restricting public access to the identifiers. *See, e.g., Brandt v. Turbine Engine Specialists, Inc.*, No. 08-cv-0026-DRH, 2008 U.S. Dist. LEXIS 35699, *6-7 (S.D. Ill. May 1, 2008) (Herndon, C.J.) (ordering deletion of attachment filed in violation of SDIL-LR 5.1(d)(1)); *Northington v. H&M Int'l*, No. 08-cv-6297, 2011 U.S. Dist. LEXIS 149591, *40-41 (N.D. Ill. Dec. 29, 2011) (permitting substitution of filed documents with redacted versions). Courts routinely remove documents with personal identifying information from the docket and order the filing party to refile redacted versions. *See, e.g., Nat'l Guardian Life Ins. Co. v. Bean*, 867 F. Supp. 2d 985, 989 (N.D. Ill. 2011) ("un-redacted exhibits which include social security numbers and full dates of birth"); *Burkett v. Wicker*, 478 F. Supp. 2d 1065, 1069 (N.D. Ind. 2007) (ordering redaction of birthdate and Social Security number from filed exhibits); *Pomart v. Purdue Univ.*, No. 05-cv-75-AS, 2005 U.S. Dist. LEXIS 42709, *3-4 (N.D. Ind. Dec. 15, 2005) (ordering redaction of documents filed with party's Social Security number); *Boettcher v. Metro. Life Ins. Co.*, No. 08-cv-439, 2009 U.S. Dist. LEXIS 19405, *4 (E.D. Wis. Feb. 25, 2009) (ordering clerk to seal documents with unredacted birth dates and ordering filing party to refile redacted version pursuant to Fed. R. Civ. P. 5.2); *Cooksey v. Bd. of Educ.*, No. 12-cv-7180, 2014 U.S. Dist. LEXIS 20263, *77 (N.D. Ill. Feb. 19, 2014). All further relief sought in the Petition should be denied.

### B. Hansmeier hypothesizes an injury but fails to demonstrate actual loss.

Sanctions for civil contempt are only those needed to remedy an actual, proven loss. *See Prima Tek II*, 525 F.3d at 543 ("remedial sanctions [for contempt] are limited to provable losses sustained by a non-breaching party as a result of the violation of the order") (*citing Autotech Techs. LP*, 499 F.3d at 752); *South Suburban Hous. Ctr. v. Berry*, 186 F.3d 851, 854 (7th Cir. 1999) ("When the purpose of sanctions in a civil contempt proceeding is compensatory, a fine, payable to the complainant, must be based on evidence of actual loss.") (*citing United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947)). To be compensable, the injury must be "a concrete adverse effect" arising from Respondents' actions. *Moore v. Final Reviewing Auth. Bd.*, No. 98-4276, 2000 U.S. App. LEXIS 3702, *4 (7th Cir. Mar. 7, 2000) (unpublished).

Hansmeier's conjectured loss is not evidence of an actual injury. He speculates that someone who downloaded the Response, during the brief window of time when it was available on PACER or RECAP, might use it in an untoward fashion: "It is beyond question that the offending exhibit had been widely distributed among people who have the sophistication and motive to do harm to Hansmeier, John Steele and his wife, Paul Duffy and Mark Lutz." Doc. 170 p. 9. This hypothetical injury does not justify any civil contempt sanctions. Hansmeier contends that he and his colleagues are "now at at extreme risk of identity theft."[9] *Id.* p. 8. In support, he argues that the public is interested in this case: "This is a high-profile case."[10] *Id.* p. 9. But public interest does not suggest that Hansmeier has suffered or will suffer an actual compensable loss.[11]

Hansmeier notes that "an unscrupulous individual" *could* cause harm with a Social Security number. *See* Doc. 170 pp. 8-9 (citing cases). He fails to show that Respondents, or any member of the public interested in this case, is less than scrupulous. Instead, he cites an exhibit showing a discussion by Twitter users about downloading the Response (but *not* the unredacted Schedule A) that actually undermines Hansmeier's speculations. Doc. 170-1 p. 20. The Petition misleadingly reports that "several members of the anti-copyright community … have confirmed their possession of [Schedule A] and have discussed reposting it on another website." Petition p. 1. Hansmeier fails to substantiate his hyperbolic fear-mongering regarding an "anti-copyright movement." Doc. 170 p. 9. In fact, what the Twitter users discussed was their apparent decision *not* to repost the subpoena to RECAP after Sweet effectuated its removal.[12] *See* Doc. 170-1 p. 20 ("So doc 163 [the Response] has been removed

---

[9] Hansmeier must be familiar with such risks. He, Steele and Duffy notoriously founded much of their bad faith litigation on acts of identity theft they perpetrated. They "stole the identity of Alan Cooper … [and] fraudulently signed the copyright assignment for 'Popular Demand' using Alan Cooper's signature without his authorization, holding him out to be an officer of AF Holdings. Alan Cooper is not an officer of AF Holdings and has no affiliation with Plaintiffs other than his employment as a groundskeeper for Steele." Doc. 92-4 p. 9 (Order Issuing Sanctions, *Ingenuity 13 LLC v. John Doe*, No. 12-cv-8333-ODW(JCx) (C.D. Cal. May 6, 2013)).

[10] Hansmeier further provides evidence that "the docket in this case has been downloaded 18,045 times" from RECAP. Doc. 170 p. 4 (citing Doc. 170-1 p. 16). He also provides evidence that some documents from the docket were downloaded from RECAP 1,002 times in a week. *Id.* (citing Doc. 170-1 p. 18). But he offers no evidence showing that anyone ever downloaded the stricken Response or its unredacted Schedule A exhibit from RECAP.

[11] The Court has already recognized where the public interest in this case lies, at the show-cause hearing before the Contempt Order: "the community has to worry about lawyers who file unreasonable and vexatious claims. … The community is worried about lawyers, worried about lawyers that file these kind of lawsuits. … [T]he community is worried about guys like you." Contempt Order p. 10 (quoting Doc. 127 p. 38) (addressing Steele).

[12] The fact that the Response was initially uploaded from PACER to RECAP tends to show, as Hansmeier argues, that "at least one person accessed the offending exhibit [from PACER] during the eighteen hours before it was stricken." Doc. 170 p. 3. However, that single access does not prove that Hansmeier is at risk of identity theft or has suffered an actual loss due to Respondents.

from IA [Internet Archive/RECAP].") One of the Twitter users emphasized that the Response should *not* be publicized, noting that it had been refiled in redacted form:

- "163 [the Response] was pulled for reason … best to not make it public.";
- "it was replaced with 165 [the refiled Response]. same things, more black marker.";
- "I don't think we [] to grab it again, but should honor it being stri[c]ken."

Doc. 170-1 p. 20. The Twitter users themselves expressed their intention to comply. Hansmeier elsewhere concedes as much: "to their credit, they appear to have refrained from reposting the exhibit." Doc. 170 p. 9 n. 1. Hansmeier's sole evidence of harm is not based in reality.

Indeed, none of the information published constitutes an invasion of privacy. "Social security numbers … are not private facts under Illinois law." *Feltman v. Blatt, Hasenmiller, Leisker & Moore, LLC*, No. 06-cv-2379, 2008 U.S. Dist. LEXIS 99966, *19 (N.D. Ill. Dec. 11, 2008). "[T]here is no liability for publicity given to matters of public record such as the date of birth…" *Geisberger v. Willuhn*, 72 Ill. App. 3d 435, 439, 390 N.E. 2d 945, 948 (1979) (citing Restatement (Second) of Torts § 652D (1977)). "Information such as … date of birth … is not normally regarded as highly personal…" *United States Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 600 (1982). A redacted filing was proper, but nothing more. *See Bond v. Utreras*, No. 04-cv-2617, 2006 U.S. Dist. LEXIS 10501, *11-12 (N.D. Ill. Mar. 10, 2006) ("Defendants' concerns regarding the disclosure of personal information are valid, but the Court will not throw out the baby with the bath water.") (ordering redactions of private information before production).

  **C.**  **Hansmeier does not sufficiently support any of his proposed remedies.**

Hansmeier asks to be paid $1,375, which he declares (without citation) is the estimated cost of five years of unspecified "identity theft protection services." Petition p. 2; Doc. 170 pp. 3 & 10. The Petition fails to justify any such expense for an unproven loss. *See Matthys v. Green Tree Serv., LLC (In re Matthys)*, No. 09-16585-AJM-13, 2010 Bankr. LEXIS 1765 (Bankr. S.D. Ind. May 26, 2010) (dismissing claim based on violation of Fed. R. Civ. P. 5.2 and related rules); *accord Killian v. Green Tree Servicing, LLC (In re Killian)*, No. 05-14629-HB, 2009 Bankr. LEXIS 2030 (Bankr. D.S.C. July 23, 2009).

Even if Hansmeier did require identity theft protection, he need not incur such great expense.[13] According to Consumer Reports, "do-it-yourself safeguards are just as effective as paid services." *Don't get taken guarding your ID*, Consumer Reports (Jan. 2013), http://www.consumerreports.org/cro/magazine/2013/01/don-t-get-taken-guarding-your-id/index.htm. Most if not all of the protection offered by paid services can be achieved for free or almost nothing, through credit reports, mobile apps, or "stand-alone alerts for $5/month and … a free ID-theft protection risk assessment" available online. *Id.* The disproportionate award of $1,375 Hansmeier seeks would be not remedial but punitive, so it could not be imposed to compensate civil contempt. "A contempt fine … is considered civil and remedial if it … 'compensates the complainant for losses sustained.'" *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 829 (1994) (*quoting United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947)). *See also Cox v. Zale Del.*, 239 F.3d 910, 916 (7th Cir. 2001) ("[P]unishment is the purpose of criminal but not civil contempt."). Indeed, the sanction "would be difficult to justify even if it were described as punitive damages." *SEC v. McNamara*, 481 F.3d 451, 457 (7th Cir. 2007) (vacating and remanding civil contempt order that could impose multiple damages).

No attorney's fees or costs are appropriate to compensate Hansmeier for litigating a Petition he filed *after* the Court, at Sweet's instance, struck the unredacted Response. Hansmeier told Booth and Sweet "that he would seek his costs and fees if he was forced to litigate a contempt motion." Doc. 170 p. 4; *see also* Doc. 170-1 p. 9 (email discussion between Hansmeier and Booth agreeing that Hansmeier's intent to seek costs and fees "seems needless"). Hansmeier cites a case in which attorney's fees were granted to a petitioner who moved to seal unredacted filings. Doc. 170 p. 9 (*citing Reed v. AMCO Ins. Co.*, No. 09-cv-0328-LRH-RAM, 2012 U.S. Dist. LEXIS 32446, *8-9 (D. Nev. Mar. 9, 2012). Unlike that petitioner, Hansmeier was not forced to litigate anything. *See Hecht v. Don Mowry Flexo Parts, Inc.*, 111 F.R.D. 6, 14-15 (N.D. Ill. 1986) (declining to award attorney's fees where petitioner "accomplished neither of the proper purposes of civil contempt: [petitioner] acted too late to coerce compliance … and [petitioner] has failed to show it suffered any harm to be compensated").

---

[13] Perhaps hoping to justify the price tag, Hansmeier misstates the sanction imposed in *Weakley v. Redline Recovery Servs., LLC*, No. 09-cv-1423-BEN (WMC), 2011 U.S. Dist. LEXIS 42750, *6 (S.D. Cal. Apr. 20, 2011). Hansmeier claims that the *Weakley* court "impos[ed] criminal sanction of $1,817 on attorney for violating Rule 5.2." Doc. 170 p. 10. In *Weakley*, the Plaintiff *moved for* $1,817 in sanctions, but the Court awarded only $900, and nowhere termed the sanction criminal.

To the extent that the Petition cites criminal contempt cases to support a finding of civil contempt, they are inapposite. *See* Doc. 170 pp. 9-10. "[T]he operative facts necessary to make out a finding of civil and criminal contempt are different." *United States v. Ryan*, 810 F.2d 650, 654 (7th Cir. 1987).

Hansmeier also moves the Court to refer this matter for criminal prosecution.[14] Petition p. 2; Doc. 170 p. 11. That is an inordinate response to an already ameliorated mistake. "[O]nly the least possible power adequate to the end proposed should be used in contempt cases." *United States v. Wilson*, 421 U.S. 309, 319 (1975) (internal quotation omitted).

Criminal prosecution would also be improper because the error was not deliberate. "Willfulness is, of course, an element of criminal contempt and must be proved beyond a reasonable doubt." *United States v. Greyhound Corp.*, 508 F.2d 529, 531 (7th Cir. 1974). "A good-faith effort to comply with a court order tends to negate willfulness" on a criminal contempt charge. *See United States v. Ray*, 683 F.2d 1116, 1126 (7th Cir. 1982) (*citing Greyhound*). "Criminal contempt of court is a dark stain on an attorney's record, even when it does not lead to imprisonment or a substantial fine. That is among the reasons why a conviction under 18 U.S.C. § 401 depends on proof of wilful misconduct." *United States v. Mottweiler*, 82 F.3d 769, 770 (7th Cir. 1996). "[N]egligence does not support a criminal conviction" for contempt. *Id.* at 772. *Cf. Milwaukee Concrete Studios v. Field Mfg. Co.*, 8 F.3d 441, 449 (7th Cir. 1993) ("the error was inadvertent and therefore not sanctionable" under Rule 11).

Hansmeier offers little but innuendo and "coincidence" to suggest willfulness. His evidence of willfulness is little but this: Sweet filed the Response in the mistaken belief that he had redacted Schedule A, which Hansmeier mischaracterizes as "willful disregard"; the case is "high profile" and Smith's counsel have discussed the Sanctions Order online; Ms. Steele and Lutz, who both had signatory power on financial accounts tied to Prenda Law, were among those listed in Schedule A; Hansmeier considers Exhibit D irrelevant to Smith's Response; and Sweet called the Court to seek to have the filing stricken at or about the time someone uploaded Exhibit D to RECAP. *See* Doc. 170

---

[14] Hansmeier specifically seeks "deterrent (i.e. criminal) sanctions." Doc. 170 p. 12. Criminal sanctions cannot hope to deter future *inadvertence*. "[C]ontempt is considered … criminal if its purpose is to … deter future misconduct." *United States v. Lippitt*, 180 F.3d 873, 876 (7th Cir. 1999); *accord Shillitani v. United States*, 384 U.S. 364, 370 n. 5 (1966). Such general deterrent interests as "encouraging lawyers to be more conscientious as a whole … are weak where the failure to follow a rule is accidental rather than intentional." *Murray v. Carrier*, 477 U.S. 478, 524 (1986) (Brennan, J., dissenting). *Cf. Milwaukee Concrete Studios*, 8 F.3d at 451 (in case of inadvertent error, Rule 11 sanctions "were not necessary to deter similar conduct in the future").

pp. 11-13. This evidence is too far from "beyond a reasonable doubt" to support a charge of criminal contempt. None of Petition's proposed sanctions are supported.

## CONCLUSION

The Petition does not show, by clear and convincing evidence, that Respondents are in contempt or that any sanctions are warranted. Therefore, the Petition should be denied entirely.

Dated: May 21, 2014                  Respectfully submitted,

                                                   /s/ Jason E. Sweet
                                                   Jason E. Sweet
                                                   jsweet@boothsweet.com

                                                   BOOTH SWEET LLP
                                                   32R Essex Street
                                                   Cambridge, MA 02139
                                                   Tel.: (617) 250-8602
                                                   Fax: (617) 250-8883

                                                   *Counsel for Defendant Anthony Smith*

## CERTIFICATE OF SERVICE

I hereby certify that on this May 21, 2014 I filed the foregoing document and my supporting affidavit through the Court's CM/ECF system, which will serve the documents on all counsel of record who have consented to electronic service.

                                                   /s/ Jason E. Sweet