<u>UNITED STATES DISTRICT COURT</u>
<u>FOR THE SOUTHERN DISTRICT OF ILLINOIS</u>

**LIGHSPEED MEDIA CORP.,**

       *Plaintiff*,

*v.*                                       Civil No. 3:12-cv-889-DRH-SCW

**ANTHONY SMITH, et al.,**

       *Defendants*.

<u>PAUL HANSMEIER'S REPLY</u>
<u>REGARDING HIS PETITION FOR CONTEMPT</u>

Paul Hansmeier respectfully submits this reply regarding his Petition for Contempt. Pursuant to SDIL-LR 7.1(a), extraordinary circumstances warrant the filing of a reply brief. Specifically, the Response runs so far astray of the substance of the Petition for Contempt that a reply will aid in refocusing the issues.

    I.    <u>The elements of civil contempt are satisfied</u>.

Respondents concede the first element of contempt—an unambiguous command. (*See* Dkt. #176, at 6.)

Respondents concede the second element of contempt—a violation of the command. (*See id.*, at 5) ("The electronically filed Response did not fully comply with those requirements.") While Sweet attempts to exonerate Booth and Smith, his attempt fails. Booth signed the document; the document was filed on Smith's behalf.

Respondents challenge the third element of contempt—a significant violation. But they completely miss the mark. They are required to redact every single exhibit filed with this Court. A single offending exhibit creates the harm—the risk of identity theft—the rules are intended to

prevent. This is not a case of a technical violation—where, for example, Respondents redacted social security numbers, but not birthdates—or even a case where Respondents redacted the personal identifiers for all but one person. Instead, the *entire* offending exhibit was unredacted.

Not one of the three cases cited by Respondents on this point addresses a violation of redaction requirements. *Prima Tex II, L.L.C. v. Klerk's Plastic Indus., B.V.*, 525 F.3d 533 (7th Cir. 2001), involved the violation of a patent license agreement for the manufacture and sale of pot covers. *Id.* at 536. *United States v. Kroger Grocery and Baking Co.*, 163 F.2d 168, 177 (7th Cir. 1947), predates the Internet by an estimated three decades and does not address redaction requirements. *Bailey v. Roob*, 567 F.3d 930 (7th Cir. 2009), addressed the use of a district court's contempt powers against a public agency, which the Seventh Circuit cautioned be sparingly applied, lest a court "find itself deeply entangled with the development and management of a city or state agency." *Id.* at 937.

Context matters. In *Bailey*, the Seventh Circuit instructed that in civil contempt proceedings, "context is extremely important to appellate oversight." *Id.* (quoting *Langton v. Johnston*, 928 F.2d 1206, 1220) (1st Cir. 1991)). The Respondents' citations to cases decided in completely different contexts could not be less relevant. Rather, the cases cited by Hansmeier— arising directly in the context of Rule 5.2—are informative. In those cases, district courts imposed remedial sanctions and even punitive sanctions against attorneys who violated redaction requirements. And, unlike those cases, this case is nationally prominent—thus greatly magnifying the harm flowing from any particular violation. In the context of this case, thus, there can be no serious question that the Respondents' conceded violation was significant.

Respondents challenge the fourth element of contempt—lack of reasonable diligence. To defend themselves, Respondents claim: "Hansmeier … offered no evidence to show a lack of

reasonable diligence." But that is not true. Hansmeier offered Respondents' own description of their pre-filing diligence: "Because Steele, Hansmeier and Duffy had redacted this information when disclosing similar documents to non-parties, Smith's counsel made the erroneous assumption that it had been done here as well." (*See* Dkt. #165, at 1 n.1.) Put more plainly: Respondents *did not review* the exhibit before filing it; they "*assumed*" it was redacted. This admission is sufficient to "foreclose a finding of reasonable diligence." *Bailey*, 567 F.3d at 935.

Respondents cite to *Ohda v. Potter*, No. 6-cv-759 (N.D. Ind. Mar. 19, 2008) to defend themselves, but this case has no relevance to the "reasonable diligence" inquiry. In *Ohda*, a *pro se* litigant filed a one paragraph motion for summary judgment and for sanctions. The magistrate judge summarily dismissed the motion without much discussion, and did not discuss the standard for reasonable diligence in the Rule 5.2 context. Respondents also defend themselves by noting their redactions of other filings. Yet, the fact that Respondents may have redacted other filings does not speak to what diligence they undertook before filing the offending exhibit.

II.   <u>Compensatory Sanctions are Warranted</u>.

Respondents misapprehend the nature of civil sanctions. First, they seem to believe that their remedial measures mooted Hansmeier's Petition for Contempt. They are incorrect. Respondents' violation of Rule 5.2 cannot be "unrung", as they suggest. The personal identifiers have been published, accessed, and reproduced and distributed an unknowable (but likely significant) number of times by people who do not like attorneys who sue computer-based wrongdoers. Respondents' citation to *Richards v. Great Western Ins. Co.*, No. 11-cv-965 (D. Minn. Jan. 13, 2012) is inapposite. There, a motion for a protective order was deemed moot because corrective action had taken place; the motion for sanctions was *not* declared moot.

Respondents argue, "typical relief for the erroneous publication of personal data identifiers is restricting public access to the identifiers." They are partially correct. Identity theft protection services are also "typical relief." Indeed, Respondents make no effort to distinguish (much less discuss) the cases cited by Hansmeier in which district courts awarded the injured party the costs of identity theft protection services.

Respondents suggest that the heightened risk of identity theft facing Hansmeier is not an actual, proven, loss, but fail to cite a single case in the Rule 5.2 context standing for this proposition. The cases cited by Hansmeier all held that this risk was sufficiently concrete to justify remedial (and sometimes punitive) sanctions. And the circumstances present in this case (e.g., national prominence, the leak of the offending exhibit to public websites, the download of the exhibit as many as 1,000 times, and the animus toward Hansmeier by the people in possession of the exhibit) are far more extreme than any other case cited by Hansmeier or the Respondents.

Respondents criticize Hansmeier for not identifying the identity theft protection services he would have them pay for. To mollify Respondents, Hansmeier obtained the $275 annual identity theft protection quote from the Lifelock identity theft protection company. In fact, since the filing of his Contempt Petition, prices have gone up. The current cost for the comprehensive package is now an estimated $320 annually.

Hansmeier's request for attorneys' fees and costs is a direct consequence of the Respondents' refusal to engage in a good-faith negotiation to resolve this matter. Respondents were unwilling to contemplate any resolution involving the payment of money—even the very modest costs of three years' worth of identity theft protection services. Respondents' unrealistic approach to their violation has inflicted further harm on Hansmeier (not to mention burden on

4

this Court) by forcing him to expend the time and cost of prosecuting the Contempt Petition. While this Court cannot force Respondents to be reasonable, it can force them to cure the harm continuing to flow from their intransigence.

III.    <u>A Referral is Warranted</u>.

Given the level of personal animus between counsel in this case, it is not inconceivable that Respondents intentionally filed the unredacted personal identifiers. There are several indicia of intentional conduct. Respondents continue to refuse to explain how they learned the offending document was unredacted. They refuse to tell the Court whether they know the identity of the person who uploaded the offending exhibit to RECAP. There is also the fact that the offending document was one of the few subpoenas that included the social security number and birth date of John Steele's wife, Kerry Steele. The offending exhibit was not necessary, as it was used to support a proposition presented in a footnote. The personal identifiers in the exhibit were on part the exhibit that had no relevance to the footnoted proposition. There is still the strange, unexplained, coincidence of Sweet's call into chambers and the upload of the offending exhibit to RECAP occurring at the exact same time. Finally, if it was not clear that opposing counsel has not learned their lesson, Hansmeier would draw the Court's attention to Exhibit A to Respondents' response, in which they once again failed to review an exhibit prior to filing.

<strong><u>CONCLUSION</u></strong>

The Court should grant the Contempt Petition.

Respectfully submitted,

May 24, 2014

/s/ Paul Hansmeier
Paul Hansmeier
80 S. 8th St. Ste 900
Minneapolis, MN 55402
612-234-5744

5

**CERTIFICATE OF SERVICE**

I hereby certify that on May 24, 2014, I filed the foregoing document through the Court's

CM/ECF system, which will electronically serve this document on all parties of record.


/s/ Paul Hansmeier