CERTIFIED COPY
A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

*In the*

# United States Court of Appeals

## For the Seventh Circuit

―――――――――――――

Nos. 13-3801 and 14-1682

LIGHTSPEED MEDIA CORPORATION,

*Plaintiff,*

*v.*

ANTHONY SMITH, *et al.*,

*Defendants-Appellees,*

Appeal of PAUL DUFFY, JOHN STEELE, and PAUL HANSMEIER,

*Appellants.*

―――――――――――――

Appeals from the United States District Court for the
Southern District of Illinois.
No. 12 CV 00889 — **G. Patrick Murphy**, *Judge,* and **David R. Herndon**,
*Chief Judge.*

―――――――――――――

ARGUED APRIL 7, 2014[1] — DECIDED JULY 31, 2014

―――――――――――――

―――――――――――――

[1] No. 13-3801 was argued before this panel. No. 14-1682 was submitted to the same panel pursuant to Internal Operating Procedure 6(b). The panel concluded that oral argument was unnecessary in the latter case, which is submitted on the briefs in accordance with Fed. R. App. P. 34(a)(2)(C).

Before WOOD, *Chief Judge*, and KANNE and SYKES, *Circuit Judges*.

WOOD, *Chief Judge*. The first rule of holes, according to an old saying, is to stop digging. The two appeals before us bring that to mind, for reasons that will become apparent. The first, No. 13-3801, comes to us from the district court's order granting a motion for attorneys' fees and costs under 28 U.S.C. § 1927 filed by SBC Internet Services, LLC (d/b/a AT&T), Comcast Cable Communications, LLC (collectively "the ISPs"), and Anthony Smith, defendants in the underlying litigation. The order imposed joint and several liability for the fees against Paul Duffy, John Steele, and Paul Hansmeier. They have appealed from that order. They did not, however, file a motion either to clarify the nature of the sanctions or to stay the order. Instead, they simply did not pay. The defendants then moved for an order to show cause why appellants should not be held in contempt for their failure to pay, or in the alternative for immediate contempt. After a hearing, the district court found that they had failed to pay and that there was no excuse for their behavior. It thus held them in civil contempt and ordered them to pay 10% of the original sanctions award to cover the defendants' additional costs for the contempt litigation. It also assessed a daily fine, in case payment was not forthcoming. The second appeal before us, No. 14-1682, is from the contempt proceeding.

## I

## A

Lightspeed Media operates online pornography sites. Our story begins when it brought suit in St. Clair County, Illinois, against one John Doe defendant, identified only

through his IP address. (An IP, or Internet Protocol, address is the number assigned to a particular device on the Internet.) Doe's IP address was allegedly associated with the unlawful viewing of Lightspeed's content, made possible by the use of a widely shared, "hacked" password. Lightspeed then identified approximately 6,600 others (through their IP addresses only) as alleged "co-conspirators" in a wide-reaching scheme to steal passwords and content. The only conspiratorial act alleged was the use of the same password. Then, following what seems to be appellants' *modus operandi*, see, *e.g.*, *AF Holdings, LLC v. Does 1–1058*, 752 F.3d 990, 993 (D.C. Cir. 2014), Lightspeed, acting *ex parte*, served subpoenas on the ISPs (which at that point were non-parties) for the personally identifiable information of each of the 6,600 alleged co-conspirators, none of whom had been joined as parties. The ISPs refused to turn over the information and instead filed a motion to quash and for a protective order.

The state trial court denied the ISPs' motion, and so the ISPs sought appellate review. At the same time, Duffy called an attorney representing the ISPs and requested the name and title of each employee who decided that an ISP would not comply with the subpoenas. Steele then submitted an affidavit stating that the ISP attorney refused to provide that information. The Illinois Supreme Court ultimately ruled that the trial court erred by refusing to quash the subpoenas. Lightspeed responded by amending its complaint on August 3, 2012, and formally naming as co-conspirator parties the ISPs and unidentified "corporate representatives" of the ISPs. The complaint painted with a broad brush: it alleged everything from negligence, to violations of the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030 and 1030(g), to deceptive practices and aiding and abetting. "John Doe," in the

amended complaint, became Anthony Smith. Then, ignoring the fact that the Illinois Supreme Court had just rejected its request for the same information, Lightspeed issued new subpoenas seeking the personally identifiable information of Smith's purported 6,600 co-conspirators.

On August 9, 2012, the ISPs removed the case to the District Court for the Southern District of Illinois. See 28 U.S.C. § 1446(b)(3). Lightspeed immediately filed an emergency motion in advance of the routine Rule 26(f) conference, see FED. R. CIV. P. 26(f), asking the federal court to order the ISPs to produce the same "co-conspirators'" personally identifiable information. At the same time, Hansmeier submitted a motion for *pro hac vice* admission; he did not identify a law firm on the form. Steele entered an appearance in which he listed his firm as Prenda Law. The firm affiliations, however, turned out to be provisional, to put it kindly. At the emergency motion hearing, Steele identified his firm as Steele Hansmeier PLLC, Duffy said that he was with Prenda Law, and Hansmeier was with something called Alpha Law Firm. Steele Hansmeier and Prenda are listed at the same street address, 161 North Clark Street, in Chicago, in different suites.

Addressing the discovery motion at the emergency hearing, Steele spoke at length about the dire need for the requested information. Unconvinced, the district judge denied the motion, stating in passing that he was "skeptical about how this case could ever be put on, but my feet are not set in stone on it. I've seen some cases that didn't look too hot at the start that got better with time. This may be one of those cases." Defendants then submitted both a motion to dismiss and a motion to stay discovery pending a ruling on the for-

mer motion. In November 2012, Hansmeier submitted a motion to withdraw without indicating which firm he was with; in March 2013, Steele withdrew.

This was not the only case Duffy, Steele, and Hansmeier had at the time. While the motion to dismiss was pending in the Southern District of Illinois, a court in the Central District of California held a hearing for the express purpose of exploring the role this trio, operating often as "Prenda Law," played in some underlying copyright infringement litigation. That hearing did not go well for them; sanctions were imposed on all three (among others) and the matter referred to a variety of state and federal authorities. See *Ingenuity 13 LLC v. John Doe*, No. 12-cv-8333, 2013 WL 1898633 (C.D. Cal. May 6, 2013). For our purposes the relevant fact is that the district court there found that Steele, Hansmeier, and Duffy owned and controlled Prenda Law. The court went on to say that they

> demonstrated [a] willingness to deceive not just [that] Court, but other courts where they have appeared. [Their] representations about their operations, relationships, and financial interests have varied from feigned ignorance to misstatements to outright lies. But this deception was calculated so that the Court would grant [their] early-discovery requests, thereby allowing [them] to identify defendants and exact settlement proceeds from them.

*Id.* at *3. After the show-cause order was entered in the Central District of California but before any sanctions were imposed, Duffy, Steele, and Hansmeier (along with others from Prenda) began voluntarily to dismiss similar cases filed across the country, including the one now before us. Four-

teen days after the district court granted Lightspeed's motion for voluntary dismissal, defendant Smith filed a motion for attorney's fees under Fed. R. Civ. P. 54(d)(2) and 28 U.S.C. § 1927. Duffy filed a response; Steele and Hansmeier did not.

In October, the district court granted Smith fees and costs pursuant to section 1927. The order ran jointly and severally against each appellant. Taking into account both the record in the case before it and the rulings in other districts, the court found that the litigation against Smith "smacked of bullying pretense." The court said that its decision to impose sanctions was particularly informed by the emergency motion for discovery. The next day, Hansmeier filed a motion to vacate or reconsider, and a few days later Steele and Duffy did the same. Hansmeier and Steele alleged that while Duffy received notice that sanctions were being sought, they did not.

After the district court granted fees and costs for Smith, the ISPs filed a motion requesting the same. Hansmeier and Steele opposed the motion, and so the district court held a hearing to deal with both the motion to reconsider the fees awarded Smith and the new ISP motion. On November 27, 2013, the district court denied the motion to reconsider (which had been filed on behalf of all three appellants) and awarded attorneys' fees to the ISPs. Appeal No. 13-3801 followed.

## B

### 1. Notice and Opportunity to be Heard

Steele and Hansmeier contend that their due process rights were violated because they never received proper notice of Smith's motion for sanctions. The record, however,

does not support them. First, as the district court concluded, even if we assume that they did not have notice originally, that defect was cured when the district court granted rehearing on the sanctions issue. Indeed, in their briefs before this court, Steele and Hansmeier seem to concede as much. Their complaint has shifted to one focusing on the adequacy of their opportunity to *respond*. It is too late to change theories, however, and in any event, the district court correctly ruled that whatever procedural flaw there may have been was fully corrected by affording a new opportunity for a hearing. Finally, they received adequate notice in the first place.

Due process requires "notice 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *United States Air Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). Actual notice is not required. *Id.* We are not talking here about service of process, which proceeds under a more restrictive set of rules. See FED. R. CIV. P. 4. Instead, the motion for sanctions was one step in an ongoing piece of litigation. Given the close connections among the lawyers, it was reasonable for the court to conclude that service on Duffy would suffice to give notice to Steele and Hansmeier as well. The behavior each one displayed throughout this litigation underscored their ongoing relationship and communication: they used one another's CM/ECF login information, filed motions on behalf of each other, and submitted substantially similar documents.

It is also worth noting that Federal Rule of Civil Procedure 5(b)(2)(B)(i) permits leaving notice at a person's office with a clerk or someone in charge, or even in a conspicuous

place. Duffy received notice, he was in charge of Prenda Law, and there was evidence that both Steele and Hansmeier were working for Prenda as well. While appellants huff that the district court "wholly gloss[ed] over the fact that Hansmeier noticed his appearance in the case for Alpha Law Firm, not Prenda Law," the district court had ample reason to find the Prenda/Alpha distinction illusory at best, fraudulent at worst. Two days *after* Steele moved to withdraw from this case, he declared in another action that he was "of counsel with the law firm, Prenda Law, Inc." and that Hansmeier was "also of counsel to the firm." Declaration of John Steele, *Ingenuity 13 LLC v. John Doe*, Case No. 2:12-cv-08333-ODW-JC, ECF No. 83 ¶¶ 1, 4 (C.D. Cal. filed Mar. 8, 2013). And this is to say nothing of the fact that at least once Hansmeier indicated *in this case* that he was of counsel to Prenda.

In separate proceedings in the Central District of California, Duffy, Steele, and Hansmeier each took the Fifth instead of answering the court's questions about attorney misconduct and the relationship between Prenda and other potential shell companies. See *Ingenuity 13 LLC*, 2013 WL 1898633, at *2 n.3. See also Joe Mullin, "Judge smash: Prenda's porn-trolling days are over," ArsTechnica (April 2, 2013), available at   http://arstechnica.com/tech-policy/2013/04/prenda-porn-trolls-clam-up-as-their-plans-crumble-in-an-la-courtroom/ (all websites cited in this opinion were last visited on July 31, 2014). The Fifth Amendment, however, "does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence." *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976); see also *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 390 (7th Cir. 1995).

Nos. 13-3801 & 14-1682                                    9

A quick look at publicly available documents supports the district court's finding that service on Duffy also accomplished service on Steele and Hansmeier. In its application for authorization to transact business in Florida, Steele Hansmeier, a Minnesota corporation, listed its mailing address as 161 N. Clark St. No. 3200, Chicago, IL 60601. Paul Hansmeier is listed as Manager and his address is listed as 1111 Lincoln Rd., Suite 400, in Miami Beach, Florida. See http://search.sunbiz.org/Inquiry/CorporationSearch/Search ResultDetail/EntityName/forl-m11000004784-c904d9dd-b0c6-4096-bce2-4476d6ff780f/Steele%20Hansmeier/Page1.

Interestingly, 161 N. Clark St. Suite 3200 is also listed as the principal place of business for Prenda Law, Inc., in its 2011 application for authorization to transact business in Florida. Its registered agent, Mark Lutz, uses the same Miami Beach address as Hansmeier did in the Steele Hansmeier application.      See      http://search.sunbiz.org/Inquiry/ CorporationSearch/SearchResultDetail/EntityName/forp-f11000004516-3c50423a-5be3-4bf9-bf44-36f37c29f9cc/Prenda %20Law/Page1. See also Declaration of Brett L. Gibbs Supporting Motion for Indicative Ruling, *Ingenuity 13 LLC v. Doe*, Case No. 2:12-cv-08333-ODW, Doc. 240-2, ¶¶ 12–13 ("I accepted Hansmeier's offer to work at Steele Hansmeier … I worked at Steele Hansmeier PLLC and its successor, Prenda Law, Inc., from late March 2011 until late February 2013."). Alpha's connection to Steele Hansmeier and Prenda shows up in a search for Steele Hansmeier on Minnesota's business filing site. There, Steele Hansmeier lists its registered address as 80 S. 8th St. #900 *Alpha Law Firm*, Minneapolis, MN 55402. See http://mblsportal.sos.state.mn.us/Business/Search Details?filingGuid=7e930678-96d4-e011-a886-001ec94ffe7f. See also DieTrollDie, "Down the Rabbit Hole – Pren-

da/Steele/Hansmeier Wonderland," (Feb. 28, 2012), available
at     http://dietrolldie.com/2012/02/28/down-the-rabbit-hole-
prendasteelehansmeier-wonderland/.

Little more need be said. We are disappointed that the
appellants' own attorney, Daniel J. Voelker, was either una-
ble or unwilling to tell us at oral argument about the precise
relationship between Prenda and Alpha Law, despite its rel-
evance for the issues on appeal. No matter: we have enough
to conclude with confidence that notice to Duffy was reason-
ably calculated to apprise Steele and Hansmeier of the pen-
dency of the motion. For the icing on the cake, we add that
the district court also found that Steele received actual notice
via email. Smith sent notice to the email address that Steele
shared with Duffy. While Duffy argues that after he with-
drew from the case he did not receive those emails, the dis-
trict court did not find him to be credible. We have no reason
to upset that assessment.

### 2.  *Opportunity to be Heard*

Steele and Hansmeier also argue that they were never
given an opportunity to be heard on Smith's motion. Once
again, the record belies their assertion. As we have noted,
they had adequate notice of the hearing. Duffy submitted a
memorandum in opposition to Smith's motion, but Steele
and Hansmeier did not. Nonetheless, the court gave all three
appellants another opportunity to be heard on the matter
after they submitted motions to vacate or reconsider the or-
der granting Smith's request for attorneys' fees. Before the
rehearing, Steele and Hansmeier both submitted briefs in
opposition to Comcast's fees. They chose not to submit addi-
tional briefs (apart from what was presented in the motion to
vacate or reconsider itself) on any other aspect of the order.

Nos. 13-3801 & 14-1682                                                11

At the hearing Hansmeier explained in detail why he thought that sanctions should not be imposed against him; Steele spoke as well. This more than sufficed as an opportunity to be heard.

### 3.  ISPs' Motions for Fees

In addition to challenging the attorneys' fees for Smith, appellants also argue that the district court erred by granting fees to the ISPs. Duffy argues he was not given an opportunity to respond to the ISPs' request, and all three argue they were not given an opportunity to respond to the fee itemization.

### a.  Duffy's Opportunity to Respond

While Steele and Hansmeier submitted timely memoranda in opposition to the ISPs' motions, Duffy did not. He asserts that he was not given an opportunity to respond because the district court ruled on the motions before the time to respond expired under the court's local rules. This argument is frivolous. Duffy does not cite any local rule for this point, and had he taken the time to look at the rules, he quickly would have realized that there was time to respond. The ISPs electronically filed their motions on November 8, 2013. The local rules allow 17 days for any response to electronically filed motions. See SDIL-LR 7.1(g); SDIL-LR 5.1(c). The rules provide that "[f]ailure to file a timely response to a motion may, in the Court's discretion, be considered an admission of the merits of the motion." SDIL-LR 7.1(g). Duffy had until November 25, 2013, to submit his response, but he did not file anything. The district court granted the ISPs' motion on November 27, 2013. Duffy had an opportunity to respond; he simply chose not to exercise it.

      *b. Fee itemization*

All three appellants also argue they were not given an opportunity to respond to both Smith and the ISPs' fee itemization and were prejudiced by this alleged omission. Once again, they miss the mark. They had a full opportunity to respond to Smith's itemization but chose to focus on other issues. With respect to the ISPs' itemization, they are correct that the district court erred when it ruled too quickly, but we conclude that this error was harmless.

Smith filed his itemization on November 8, 2013; he added a notice that he would raise the itemization at the November 13 hearing. On November 10, Hansmeier filed a notice of intention to file a response to Smith's itemization on or before November 22. On November 12, the court sent a Notice of Striking, which required Smith to re-file his itemization with a corrected signature block; Smith complied that same day. On November 13, the district court held a rehearing on the matter of Smith's fees and an initial hearing on the ISPs' request for fees. On November 25, the district court ordered the docket text to be modified to describe defendants' November 12 re-submitted itemization as a supplement to the motion for sanctions. The court did not indicate any change in the deadline for a response. The court then issued its ruling finding the fees reasonable on November 27—five days *after* the date by which Hansmeier had promised his response to Smith's itemization. While appellants contend that the court reset the response deadline on November 25 when it characterized Smith's re-submitted itemization as a supplement, they give us no indication why this should be so. Beyond the fact that the district court never actually reset the deadline, there was no change to the

substance of Smith's itemization. Moreover, appellants could not have relied on that November 25 characterization, because their deadline to submit their opposition was that same day. In short, appellants had ample opportunity to be heard on any questions related to Smith's itemization of fees.

The time the court gave for responses to the ISPs' itemization was shorter than the 17 days called for by the local rules. AT&T did not file its itemization until November 15; Comcast's filing was even later, November 22. The district court ruled on the submissions on November 27, just 12 and five days later. The court's order noted that Duffy, Hansmeier, and Steele had not filed responses to the specific itemization. It went on to explain that it found a response unnecessary because, after having reviewed the itemizations, it concluded that the itemized fees were reasonable. We can assume that it was error for the court to accelerate the time for ruling without informing the parties of the revised schedule. Nevertheless, any such error was harmless. Appellants have not given us any reason to believe that the ISPs' itemization was unreasonable. Indeed, in focusing on the errors in *Smith*'s fees, appellants argue that Smith's fees are unreasonable when compared to the fees requested by Comcast. We see no reversible error here.

### c.   Timeliness of the ISPs' Motion

Appellants next challenge the ISPs' motion on the ground that they delayed too long before filing it. They are correct that motions under section 1927 must not be unreasonably delayed. *Overnite Transp. Co. v. Chi. Indus. Tire Co.*, 697 F.2d 789, 793 (7th Cir. 1983). But they push the point too far when they assert that the delay divested the district court of jurisdiction over their motion. In *Overnite*, the case on which they

rely, an appeal of the judgment was pending, and eight months elapsed between the filing of the notice of appeal and this court's affirmance on appeal. During that period, jurisdiction had shifted from the district court to the court of appeals. After this court affirmed, the district court granted attorneys' fees pursuant to section 1927. *Id.* at 792. We held that the district court was without jurisdiction to rule on the motion for costs and attorneys' fees. The district court had not reserved jurisdiction over this issue after the notice of appeal was filed; the statute did not leave jurisdiction in the district court for this purpose; and no motions concerning the case were directed to either this court or the district court during the eight months the appeal on the merits was pending. *Id.*

The circumstances here are entirely different. Between the time the case was voluntarily dismissed to the time when the ISPs filed their motion for sanctions, the district court retained jurisdiction; no appeal was pending. Smith moved for sanctions on April 5, 2013, and the district court originally granted his motion on October 30, 2013. Appellants moved for reconsideration in late October and early November, and at that point the ISPs moved for attorneys' fees. It was up to the district court to decide, in its discretion, whether that motion was timely. The court concluded that it was, and we see no abuse of discretion in that ruling.

### 4.  *Merits*

Appellants next throw a variety of arguments regarding the substantive ruling against the wall, with the hope that one might stick. None does.

Nos. 13-3801 & 14-1682                                              15

The court ordered the imposition of attorneys' fees under section 1927 from the inception of the suit. The statute reads as follows:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Our review of fee awards under section 1927 is only for abuse of discretion. *Walter v. Fiorenzo*, 840 F.2d 427, 433 (7th Cir. 1988). Sanctions are proper if the attorney "has acted in an objectively unreasonable manner by engaging in a serious and studied disregard for the orderly process of justice … or where a claim [is] without a plausible legal or factual basis and lacking in justification." *Id.* (internal quotation marks and citations omitted). Bearing that standard in mind, we consider whether the court abused its discretion by imposing fees for the entire course of this litigation and by making liability joint and several.

### a.  Fees from Inception

Lightspeed's suit against the ISPs was premised on the notion that because the ISPs challenged appellants' subpoena of the personally identifiable information of Smith's 6,600 "co-conspirators," they somehow became part of a purported plot to steal Lightspeed's content. If there was any conceivable merit in that theory, then perhaps fees would have been inappropriate. But there was not.

Count I alleged that the ISPs violated the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. §§ 1030 and 1030(g), by failing to prevent hacking. The only alleged assistance to hackers, however, was the challenge to the subpoena. As expansive as the CFAA is, see Orin S. Kerr, *Vagueness Challenges to the Computer Fraud and Abuse Act*, 94 MINN. L. REV. 1561, 1563–65 (2010), this is a frivolous charge.

Court II alleged that the ISPs were unjustly enriched because they collected subscriber fees from people who used the internet to gain illegal access to Lightspeed's website. To this day, the appellants have provided no support for the idea that every time an internet user does something unlawful online, the user's ISP is unjustly enriched because it continues receiving subscriber fees from the malefactor. The law in fact is to the contrary. See 17 U.S.C. § 512(a) (a "service provider shall not be liable … for infringement of copyright by reason of the provider's transmitting, routing, or providing connections for" material distributed by others on its network).

Count III alleges that the ISPs were members of a civil conspiracy to hack and steal from Lightspeed because the ISPs supposedly knew of the alleged hacking and yet protected the John Does by challenging the subpoena. Count III also throws in an accusation that the ISP corporate representatives were co-conspirators. These assertions are utterly without legal merit. The complaint lacks even the most rudimentary allegation of agreement that would satisfy federal pleading standards. In addition, a service provider does not risk becoming a co-conspirator every time it challenges a subpoena. To argue that challenging a subpoena makes the ISPs co-conspirators in a fictional copyright infringement

ring is frivolous. Appellants' theory is all the more outrageous given the fact that the Illinois Supreme Court quashed a functionally identical abusive subpoena.

Count IV alleges that the ISPs violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/2, by engaging in the deceptive practice of allowing illegal access to plaintiff's online content. More than this, however, is needed to state a claim under the Illinois statute: it requires "(1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; and (3) the occurrence of the deception during a course of conduct involving trade or commerce." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002). The Act also covers unfair conduct. *Id.* Lightspeed's complaint fails to place the defendants on notice of how they may have violated this statute.

Counts V and VI are similarly meritless. They allege that the ISPs aided and abetted Smith and the thousands of John Does by fighting the subpoenas. They also assert, somewhat contradictorily, that the ISP corporate representatives acted outside the scope of their employment when they helped with that aiding and abetting. These claims are baseless.

The district court similarly did not abuse its discretion in awarding attorneys' fees to Smith from the inception of the suit. Lightspeed raised baseless claims and pressed for a meritless "emergency" discovery hearing. The district court found that the litigation "smacked of bully pretense." At the November 13, 2013, hearing on fees, the court could not have been more clear: it stated that appellants were engaged in "abusive litigation … simply filing a lawsuit to do discovery to find out if you can sue somebody. That's just utter non-

sense." We see no need to belabor the point. The record amply supports the district court's conclusions, as our discussion of the case thus far demonstrates. There was no abuse of discretion in the court's decision to grant either the ISPs or Smith fees for the entire case.

### b.  Joint and Several Liability

We now turn to the question whether the district court abused its discretion in holding appellants jointly and severally liable for the fees awarded. Appellants begin by asserting that the district court misapplied section 1927 by holding them vicariously liable for each others' actions. They are mistaken. While it is true that section 1927 liability is direct, see *Claiborne v. Wisdom*, 414 F.3d 715, 724 (7th Cir. 2005), an order holding parties jointly and severally liable for costs *after* determining that each one is individually liable is a finding of direct liability.

Next, they contend that *FM Industries, Inc. v. Citicorp Credit Services, Inc.*, 614 F.3d 335 (7th Cir. 2010), stands for the proposition that a lawyer cannot be held responsible for documents that bear another's name but not his own. *FMI*, however, does not stand for such a broad proposition. There, we upheld sanctions against an attorney, but we found that they could not be levied against the copyright specialist retained by plaintiff's principal counsel. The copyright specialist, we said,

> seems to have been sanctioned for making the mistake of agreeing to help a careless lawyer [] who put his name to frivolous and malicious documents … [b]ut of course [the copyright specialist] was not engaged as a second-tier reviewer … [H]e was engaged

> to help [the attorney] get his bearings in copyright
> law. That [the copyright specialist] failed at this task
> does not make him responsible for documents that
> bear [the attorney's] name but not his own.

*Id.* at 340. The defendant had argued that the copyright specialist should be liable because he did not *prevent* the lead attorney from filing unreasonable and vexatious documents. We rejected that reasoning and commented that "[s]ection 1927 does not require every lawyer who files an appearance to review and vet every paper filed by every other lawyer." *Id.* at 341.

The relevant question thus relates to the scope of responsibility undertaken by each individual attorney. In our case, the district court found that while Steele and Hansmeier were not listed on every court document, the evidence showed that they were "in cahoots" with Duffy and worked with him to use the judicial system for a legally meritless claim. Their efforts seem to have continued in this court. While both Steele and Hansmeier now contend that they showed up in this case only after the federal proceedings were underway, the record shows that both were also involved in the shadows of the state court proceedings. Steele called AT&T's counsel about the subpoenas, and he appeared and argued against the ISPs' motion to quash and motion to stay. Hansmeier appeared at a conference before a magistrate judge and was the sole signatory of the 10-page opposition to the ISPs' motion for the stay of discovery. While Steele and Hansmeier insist that they had only minimal activity with this case, the district court did not abuse its discretion when it found otherwise.

## II

We turn now to case No. 14-1682, the appeal from the or-
der holding Duffy, Steele, and Hansmeier in civil contempt
and fining each one one-third of 10% of defendants' costs
stemming from the first appeal.

## A

As we noted at the outset, after the district court ordered
appellants to pay the section 1927 sanctions within 14 days
of the order, they failed to do so. As a result, defendants
submitted a joint motion for contempt, or in the alternative,
for an order to show cause why they should not all be held
in contempt. At the show-cause hearing, each appellant ad-
mitted that he had not paid any part of the sanctions. None-
theless, appellants argued that contempt was unavailable
because the sanctions order should be regarded as a money
judgment and thus something that is not enforceable
through contempt proceedings. In the alternative, they
claimed an inability to pay. The court thought the sanctions
order was equitable and enforceable by use of contempt
power. Based on appellants' claimed inability to pay, the dis-
trict court ordered each to submit a financial statement from
a certified public accountant that verified his asserted lack of
resources. Although the financial statements were submit-
ted, they opened Pandora's Box. Attached to each financial
statement was a bombshell letter from appellants' certified
public accountant stating that appellants had "elected to
omit substantially all of the disclosures required by general-
ly accepted accounting principles." Not surprisingly, the dis-
trict court found the statements insufficient to establish an
inability to pay. It also took notice that these same attorneys
had posted large bonds in other cases. In conjunction with

Nos. 13-3801 & 14-1682                                                 21

the failure even to mention these other cases, the court saw this as an attempt to impede its ability to make an accurate assessment of their current ability to pay.

The court found that appellants had willfully violated the sanctions order and made no effort to comply. The magnitude of harm was significant, it added, particularly as the underlying case was baseless and a misuse of the courts. Additionally, the court found appellants to have made misrepresentations and presented "half-truths" at the show-cause hearing, showing clear disrespect for the court. Taking all of this into account, the court sanctioned appellants in the amount of 10% of the original sanction and ordered the sum to be divided equally among them. It also set up a schedule of additional fines if they failed to comply.

## B

Our review, as before, is for abuse of discretion. See *Autotech Techs. LP v. Integral Research & Dev. Corp.*, 499 F.3d 737, 751 (7th Cir. 2007). To succeed on a contempt petition, defendants had to demonstrate by clear and convincing evidence that the appellants violated the express and unequivocal command of a court order. *Id.* Broken down into its elements, the evidence had to show that (1) the order set forth an unambiguous command; (2) appellants violated that command; (3) appellants' violation was significant; and (4) appellants failed to take steps reasonably and diligently to comply with the order. See *id.*; see also *FTC v. Trudeau*, 579 F.3d 754, 763 (7th Cir. 2009) (citing *Prima Tek II, LLC v. Klerk's Plastic Indus., B.V.*, 525 F.3d 542 (7th Cir. 2008). We take the elements in turn.

The district court's original order was unambiguous. The court made clear that it was imposing sanctions pursuant to 28 U.S.C. § 1927 and explicitly commanded appellants to pay within 14 days. Appellants try to evade it by arguing that they thought the order was for a money judgment. But this was neither private nor public litigation against the attorneys. What was at stake was the court's power to govern its bar. As section 1927 (and for that matter 28 U.S.C. § 1651) reflect, courts have the authority, through contempt proceedings, to sanction attorneys and to enforce their orders. See *Cleveland Hair Clinic, Inc. v. Puig*, 106 F.3d 165, 166 (7th Cir. 1997) ("Use of the contempt power is an appropriate way to enforce a sanction for misconduct, which is not an ordinary money judgment."); *Alpern v. Lieb*, 11 F.3d 689, 690 (7th Cir. 1993) ("[Rule 11] directs the imposition of sanctions for unprofessional conduct in litigation, and while the form of sanction is often and was here an order to pay attorney's fees to the opponent in the litigation, it is still a sanction, just as an order of restitution in a criminal case is a sanction even when it directs that payment be made to a private person rather than to the government."). The money-judgment defense gets appellants nowhere.

Appellants next argue that there is no evidence that they did *not* substantially comply with the order, or at least take reasonable and diligent steps to do so. This position ignores the record. At the show-cause hearing appellants made clear that they had not paid anything and, when questioned about payment, they never pointed to any step in that direction. They elected instead to defend on the ground that they were unable to pay. Inability to pay is indeed a valid defense in contempt proceedings, *In re Resource Tech. Corp.*, 624 F.3d 376, 387 (7th Cir. 2010), but the question *whether* the sanc-

tions were paid is different from the question *why* payment was not made. The district court was entitled to answer the first one in the negative, given appellants' admission on the record that they had neither paid the required amount to defendants nor posted a supersedeas bond.

Appellants next argue that even if civil contempt might have been proper, that was not the type of contempt imposed against them. They urge that the fine imposed was criminal in nature and they are therefore entitled to a separate prosecution and full due process. We see nothing here, however, that would justify characterizing these fines as criminal. Civil contempt proceedings may be either coercive or remedial. See *United States v. Dowell*, 257 F.3d 694, 699 (7th Cir. 2001). They are "designed either to compel the contemnor into compliance with an existing court order or to compensate the complainant for losses sustained as a result of the contumacy." *Id.* This fine was remedial. It was paid to the defendants, see *Hicks on Behalf of Feiock v. Feiock*, 485 U.S. 624, 632 (1988), and it corresponded to the attorneys' fees and costs incurred by defendants during the course of litigating the contempt motion. The fact that the court chose a fine equal to 10% of the original sanction without consulting billing statements does not convert this into a fine for criminal contempt. See *Evans v. City of Evanston*, 941 F.2d 473, 477 (7th Cir. 1991).

Appellants' related argument that the court's inability-to-pay analysis was an abuse of discretion is equally unavailing. Where "there has been no effort at even partial compliance with the court's order, the inability-to-pay defense requires a showing of a 'complete inability' to pay"; appellants "had the burden of establishing 'clearly, *plainly*, and *unmis-*

*takably'* that 'compliance is *impossible*.'" *In re Resource Tech. Corp.*, 624 F.3d at 387 (citing *Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir. 1995)).

*********************

Appellants' burden in each of these proceedings was high and the record supports the district court's holdings that they did not meet it. Any arguments that we have not discussed do not merit separate attention. We AFFIRM the order of sanctions imposed against appellants in No. 13-3801. We also AFFIRM the order in No. 14-1682 holding appellants in civil contempt and imposing the stated fine. Costs of appeal are to be taxed against appellants jointly and severally. See FED. R. APP. P. 39(a).