UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LIGHTSPEED MEDIA CORPORATION, )<br>  )<br>           Plaintiff,  )<br>  )<br>v.  )<br>  )<br>ANTHONY SMITH, SBC INTERNET  )<br>SERVICES, INC., d/b/a AT&T INTERNET  )<br>SERVICES; AT&T CORPORATE  )<br>REPRESENTATIVE #1; COMCAST  )<br>CABLE COMMUNICATIONS, LLC, and  )<br>COMCAST CORPORATE  )<br>REPRESENTATIVE #1,  )<br>  )<br>           Defendants.  )<br>  ) | Case No. 3:12-cv-00889-DRH-SCW |

**MOTION FOR RECONSIDERATION**

John L. Steele ("Steele"), Paul A. Duffy ("Duffy"), and Paul R. Hansmeier ("Hansmeier") (collectively "Lightspeed's Counsel") say that at the time the court imposed the November 2013 sanctions order ("Order") they had nothing—no money or assets to satisfy the Order. Yet, what little proof they provided for *in camera* review to support their inability was rejected by the Court; any attempts at independent confirmation were obstructed; and their pleas of poverty were belied by posting the $250,000 bond. Accordingly, Smith filed motions for contempt and discovery sanctions.

After the November 12, 2014 hearing, the Court denied Smith's motions, reasoning Smith did not present sufficient evidence to support his claims. Doc. 188 pp. 8-9.

Smith now brings this motion for reconsideration to correct errors of fact and to present newly discovered evidence obtained after the hearing.

**I. STANDARD OF REVIEW**

"A court has the power to revisit prior decisions of its own … in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (*quoting Arizona v. California*, 460 U.S. 605, 618 n. 8 (1983)); Fed. R. Civ. P. 54(b) (providing a non-final order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities").

The Seventh Circuit has held that a motion challenging the merits of a district court order will automatically be considered as having been filed pursuant to Rule 59(e) or Rule 60(b) of the Federal Rules of Civil Procedures. *See, e.g., Mares v. Busby*, 34 F.3d 533, 535 (7th Cir. 1994).

Generally, "motions for reconsideration serve a limited function; to correct manifest errors of law or fact or to present newly discovered evidence. *Caisse Nationale de Credit v. CBI Industries*, 90 F.3d 1264, 1269 (7th Cir. 1996). Such motions cannot in any case be employed as a vehicle to introduce new evidence that could have been adduced during pendency of [the motion under reconsideration]." *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987) (*quoting Keene Corp. v. Int'l Fid. Ins. Co.*, 561 F.Supp. 656, 665-66 (N.D. Ill. 1982), *aff'd*, 736 F.2d 388 (7th Cir. 1984)). Here, Smith seeks relief under Federal Rules of Civil Procedure 59(e) and/or 60(b).

A Rule 59(e) motion serves a narrow purpose and "must clearly establish either a manifest error of law or fact or must present newly discovered evidence." *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995) (*citing FDIC v. Meyer*, 781 F.2d 1260, 1268 (7th Cir. 1986)). *See also Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996). "A manifest error is not demonstrated by the disappointment of the losing party. Likewise, Rule 60(b) authorizes a district court to relieve a party from final judgment or order for similar reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence … ; (3) fraud … ; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged … ; or (6) any other reason justifying relief from the operation of the judgment.

To support a motion for reconsideration based on newly discovered evidence, the moving party must show it did not know and reasonably could not have discovered with reasonable diligence the evidence proffered in the motion for reconsideration until after judgment was rendered. *Caisse Nationale,* 90 F.3d at 1269. It is at a district court's discretion as to whether reconsideration is warranted under Rule 59(e). *Pickett v. Prince*, 207 F.3d 402, 407 (7th Cir. 2000) (stating "[A] motion to reconsider a ruling is constrained only by the doctrine of the law of the case. And that doctrine is highly flexible, especially when a judge is being asked to reconsider his own ruling.") (citations omitted)). "The rule essentially enables a district court to correct its own errors, sparing the parties and the appellate courts the burden of unnecessary appellate proceedings." *Russell v. Delco Remy*

*Div. of General Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995) (citation omitted). The rule does not serve as a vehicle to re-litigate old matters or to advance new legal theories. *Moro*, 91 F.3d at 876.

## II. ARGUMENT

A. **Newly Obtained and Previously Submitted Evidence Warrant Discovery Sanctions.**

A court may impose a sanction if the party fails to comply with a discovery order under Rule 37(b)(2). *See* Fed. R. Civ. P. 37(b)(2). With respect to sanctions, an "order" is interpreted broadly. A formal written order to comply with a discovery request is not required. *See Brandt v. Vulcan, Inc.*, 30 F.3d 752, 756 n.7 (7th Cir. 1994); *see also Murry v. Northeast Ill. Reg'l Commuter R.R. Corp.*, No. 98-cv-1734, 2000 U.S. Dist. LEXIS 2680, *3 (N.D. Ill. Feb. 28, 2000). Foremost, however, the court has inherent powers to "fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). The power coexists where procedural rules govern the same conduct. *Id.* at 49. Inherent power must be exercised with restraint and discretion, and, therefore, sanctions are not authorized when in direct conflict with laws or procedural rules. *See Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988); *Kovilic Constr. Co., Inc. v. Missbrenner*, 106 F.3d 768, 774 (7th Cir. 1997).

As evident from the language of the rules, neither Rule 34 nor Rule 37 require a court to issue a formal order prior to issuance of sanctions. *See* Fed. R. Civ. P. 34 and 37. "As with a statute, our inquiry is complete if we find the text of the Rule to be clear and unambiguous." *Business Guides, Inc. v. Chromatic Communications Enters., Inc*., 498 U.S. 533, 541 (1991). Furthermore, Lightspeed's Counsel is also independently obligated under the Federal Rules of Civil Procedure to follow the discovery rules in good faith. *See, e.g.,* Fed. R. Civ. P. 37(b)(2), advisory committee's note (noting that it is the disobedient party's or counsel's burden to prove its failure to comply was "substantially justified" or that it would be unjust to impose sanctions).

By subpoenas issued to twelve financial institutions on January 16, 2014, Smith sought postorder discovery to ascertain facts concerning Lightspeed's Counsel's financial resources and their ability to pay the amount ordered. *See* Doc. 116-1. On January 30, 2014, Lightspeed's Counsel's moved to quash the subpoenas. Doc. 116. Smith filed an opposition to the motion to quash. Doc. 124. On February 19, 2014, the Court denied the motion to quash, noting that "Smith provides compelling reasons why the financial records of these individuals and entities were subpoenaed." Doc. 125 p. 3.

On or around January 23, 2014, Annette Kuklak, a representative of JP Morgan/Chase Bank,

called Smith's counsel Jason Sweet in response to Smith's subpoena, asking for an additional 30 days to comply, given the unusually high number of accounts associated with Lightspeed's Counsel. Doc. 135 p. 9. On March 6, 2014, Attorney Sweet called Ms. Kuklak to inquire as to the status of the discovery request; she replied that there was a pending motion to quash prohibiting disclosure. *Id.* Sweet informed Ms. Kuklak that the motion to quash had been denied on February 19, 2014. *Id.* She stated that Duffy had faxed the motion to quash to the bank on March 3, 2014—almost two weeks after the motion was denied. *Id.* See also Doc. 135-26 (Affidavit of Jason Sweet); and Doc. 153 p. 4.

In response to this allegation of obstruction, Duffy's response was only to say "it is false" [Doc. 155 pp. 1-2]; and Smith "has failed to state a single fact suggesting that Duffy has 'obstructed discovery.'" Doc. 162 p. 2. No elaboration, other argument or evidence in support thereof was made by Duffy or Lightspeed's Counsel.

At the November 12th hearing, Duffy again denied the allegations directed at him. However, he went on to raise new arguments, saying that if he did send the motion to quash to one of the banking institutions it was in error; and that he cannot be held responsible for a banking institution improperly relying on a motion to quash as a basis for not responding to a subpoena. Doc. 188. Given the newly raised defenses presented at the hearing, and which the Court relied upon in making its ruling, it would be inappropriate to not allow Smith the opportunity to refute them.

After the hearing, Smith contacted general counsel at JP Morgan to confirm the truthfulness of Duffy's statements.[1] At which point, Smith's counsel was informed of the following:

| | |
|---|---|
| January 29, 2014: | John Steele contacts JP Morgan and informs them he intends to file a motion to quash. |
| January 30, 2014: | John Steele faxes JP Morgan a copy of the motion to quash. JP Morgan notes the faxed copy is not filed stamped. |
| February 3, 2014: | JP Morgan requests a filed copy from Paul Duffy. |
| March 3, 2014: | JP Morgan again requests a filed copy from Paul Duffy. Paul Duffy faxes over the denied motion to quash. |

Prior to this conversation, Smith was unaware of Steele's involvement in obstructing the subpoenas. More importantly, it further undercuts Duffy's contention that he sent the motion in error and that he cannot be held responsible for the bank's reliance thereon, as it was sent as part of a

---

[1] On December 15, 2014, counsel for JP Morgan contacted Smith's counsel and informed him of their intent to comply with the subpoena request, and that records and contemporaneous notes of the conversations with Steele and Duffy will arrive before the end of the year. At which, time Smith's counsel will supplement the record accordingly.

4

continuing conversation initiated by Lightspeed's Counsel and with the understanding by both parties the motion was to stay discovery.

The documents in question turned out to be some of the most dispositive regarding Lightspeed's Counsel's culpability and financial resources, detailing millions of dollars flowing through multiple accounts to multiple aliases. More so, of the twelve banks subpoenaed, this is the only one Lightspeed's Counsel interfered with. Smith is unaware of any other motions to quash being sent to the other eleven banks.

Steele too stated, at the November 12th hearing, that he never intentionally made any misrepresentations to third parties. "He admitted to sending at least one banking institution a copy of the Court's order staying the contempt order but insists he never commented on how the bank should interpret that order." Doc. 188. "Steele contends he simply sent the order, at the bank's request, and any misinterpretations can only be attributed to the bank." *Id.*

This lie directly contradicted by the evidence Smith previously submitted to the Court. On April 11, 2014, **Steele emailed Smith's counsel that he contacted the third parties to notify them that "the subpoenas must be withdrawn" as "the action had been stayed."** Doc. 153-1. Smith even submitted a copy of one of those communications, wherein Steele expressly and affirmatively tells the bank not to comply with the subpoena as the matter has been "stayed."

> It was a pleasure speaking with you today. I have attached the order we spoke about. The subpoena you have is dated March 26, 2014, and **the order I have included shows that the Court stayed the matter on April 4, 2014**. Please let me know if you need anything else.

Doc. 158-1.

Steele's affirmative misrepresentations that the March 24 subpoenas were "stayed" were made with the express intent to obstruct discovery. And as before, the stay targeted only certain banks, one of which contained evidence relevant Smith's pending motions. Plaintiff's Counsel's phantom stay, later made real by a frivolous motion to quash, denied Smith access to this information until after the November hearing. Doc. 166; Doc. 185 ("Considering the above, Hansmeier has not stated any valid reason for quashing the subpoenas.").

**B.     New Evidence Supports the Contention Lightspeed's Counsel is in Contempt.**

"With regard to the Motion for Contempt (Doc. 135), the question before the Court is whether Lightspeed's Counsel, as of November 2013, had sufficient assets to pay the fee order." Doc. 188.

On December 11, 2013, two weeks after entry of the Order, Steele opened a joint account at Sabadell Bank. The opening deposit for the account was a cashier's check in the amount of $16,994.31. This was followed by another deposit on December 30, 2013 in the amount of $116,395.89. Another $170,743.98 was deposited into the account during the month of January 2014. Total, the deposits for those two months combined equaled $300,134.18.

Nonetheless, on January 29, 2014, Steele signed and filed a memorandum declaring:

> The quarter of a million dollars liability created by the very tenuous November 27, 2013, Order would impose a crippling financial liability on Steele.

Doc.115 p. 3.

And again, at the show cause hearing on February 13, 2014, Steele asked the Court for a chance to show "that I do not have the ability to write a check for $250,000." Doc. 101 at 10:9-16. Despite the plaintive nature of his pleas, between January 2014 and February 2014, Steele wrote checks totaling **$296,873.35**—just none to the Court.

1. Of that amount, Steele wrote checks totaling $210,515 between February 19-28, 2014. *See* Ex. A

2. Of that amount, two were for cashiers checks issued to himself in the amounts of $20,000 (February 18, 2014) and $18,000 (February 19, 2014). The remaining $172, 515 were for home renovations. *Id.*

3. Between April 2014 and August 2014, Steele deposited $127,000 into the account. Each of the deposits were annotated "for home renovations."[2] An additional $50,623.11 was deposited through September 2014. *Id.*

Also worth noting:

1. Steele's home, which he paid $766,000 outright on April 17, 2013, is currently on the market for $1.6 million. *See* Ex. B.

2. Steele had a second account with Sabadell from September 8, 2014 through October 16, 2014. Into which $50,137.08 from a held for investment account ("HFI") was deposited. Of that money, $10,000 was paid to Citicard and the rest withdrawn by Steele via cashier's checks payable to himself. *See* Ex. C.

---

[2] *See also* Doc. 172-26.

At time of Order, Steele had access to liquid, disposable assets in the amount $347,010.43.

Similar to Steele, Hansmeier also signed and filed a memorandum on January 29, 2014, declaring "the quarter of a million dollars liability created by the … Order would impose a crippling financial liability on Hansmeier" Doc. 113 p. 6. Hansmeier too, appeared at the show cause hearing on February 13, 2014, claiming

> I personally would ask for leave from the Court to submit financial documentation under seal so that I may show I do not, in fact, have a quarter of a million dollars to satisfy this payment amount with. I certainly recognize my obligation to do everything in my power, and I certainly fully intend to do so, but I simply do not have $250,000, would simply ask for the opportunity to present that to the Court so the Court can evaluate my financial status.

As Smith has previously shown the Court, Hansmeier transferred a total of $515,000 to Monyet LLC with the notation that such checks were for "estate planning." Doc. 172-21. Said company has no discernible address, officers, employees, products or services—but a transfer from Livewire indicates the owner: "Monyet/Paul Robert Hansmeier." *Id.*

A more telling of Hansmeier's relationship with Monyet can be found in the pages of a debtor's examination wherein it is revealed that Hansmeier still has, and at the time of the Order had, access to the half million dollars. Ex. D at p. 37:2-12. *See also* Ex. E at pp. 17:17-24; 18:23-24; 19:13-25.

Lightspeed's Counsel mistakenly asserts that it is Smith's burden to prove that the Lightspeed's Counsel was not destitute at the time of the Order, when in fact, it is the defendant's burden to prove otherwise.

> "Inability to pay is a valid defense in a contempt proceeding, but the party raising the defense has the burden of proving its inability to pay." *In re Re. Tech. Corp.*, 624 F.3d 376, 387 (7th Cir. 2010) (citing *United States v. Rylander*, 460 U.S. 752, 757 (1983)). In the case where there has been no attempt to comply with the Court's order, plaintiff's counsel must show a "complete inability to pay." *Id.* Plaintiff's counsel, "stated differently, … [has] the burden of establishing *clearly*, *plainly*, and *unmistakably* that compliance is *impossible*." *Id.* (internal citations and quotations omitted) (emphasis in original).

Doc. 136 p.7.

While conceding that, from 2010 through October 2013, Plaintiff's Counsel earned millions, they now claim to possess no assets at all, or to have lacked sufficient assets to pay the sanctions ordered in November 2013. *See, e.g.,* Doc. 154 p. 6.

### C.     Millions of Dollars Remain Unaccounted.

Putting aside the fact that, in submitting *in camera* "incomplete, and to say the least suspicious, statements of financial condition," Lightspeed's Counsel have committed fraud on the Court, they have failed to meet their burden of establishing an inability to pay. Doc. 136 p. 7.[3] Most conspicuously though, and in violation of several discovery requests, they have refused to provide Smith the same tax returns which purportedly exonerate them. *See, e.g.,* Docs. 135-22; 135-24.

Furthermore, at the time of the Order, Lightspeed's Counsel each owned both a house and a car, yet have not explained why neither of these assets could have been used to satisfy the Order. Hansmeier, at the November hearing, claimed his home is worth less than he paid for it, which prevented him from selling the property to assist him in fulfilling the Order. However, in support of his claim he has provided nothing. The same holds true for Duffy, who claims his home is in foreclosure, yet provides no documentation.

While conceding that, from 2010 through October 2013, Plaintiff's Counsel earned millions, they now claim to possess no assets at all, or to have lacked sufficient assets to pay the sanctions ordered in November 2013. *See, e.g.,* Doc. 154 p. 6. Smith has demonstrated that Lightspeed's Counsel collected online settlements in 2012 of $4.4 million and another $1.9 from checks. At the hearing, Lightspeed's Counsel claimed Prenda didn't make millions, the bulk of the money went to clients, employees, and business expenses. Yet, when added, the financial records for 2012 indicate otherwise:

1. Expenses—$605,701.17
2. Clients—$355,387.14
3. 1099 Employees—$33,646.84
4. Freelancers—$75,891.80 (including reimbursement for filing fees, etc.)
5. Unidentified Employees—$286,012.14

Doc. 135-20.

This leaves nearly **$5 million** unaccounted for by Lightspeed's Counsel. Yet, they cry poverty.

---

[3] At the November hearing, Steele submitted to the Court, self-serving affidavits of his poverty from one of his sisters and an unidentified friend, which does not suffice to carry the burden of production. *United States ex rel. Thom v. Jenkins*, 760 F.2d 736, 739, 740 (7th Cir. 1985) (explaining that self-serving statements of financial hardship or indigence, without corroboration by third parties or financial records including tax returns, canceled checks, or bank statements, do not satisfy the burden of production); *Maggio v. Zeitz*, 333 U.S. 56, 76 (1948).

**D.      Lightspeed's Counsel's Conduct Supports a Finding of Contempt and Sanctions.**

A court may apply sanctions in a civil contempt proceeding "to coerce the defendant into compliance with the court's order." *United States v. United Mine Workers of America*, 330 U.S. 258, 303-04 (1947). In such instances, the court must "consider the character and magnitude of the harm threatened by continued contumacy,[4] and the probable effectiveness of any suggested action in bringing about the result desired." *Id.* (footnotes omitted). The propriety of a specific coercive sanction depends on the contemnor's ability to comply with the court's order. *Shillitani v. United States*, 384 U.S. 364, 371 (1966). (citing *Maggio v. Zeitz*, 333 U.S. 56, 76 (1948)); *see also United Mine Workers*, 330 U.S. at 304.

Lightspeed's Counsel has established a pattern of lying to this Court and continuing vexatious conduct. *See* Doc. 65 p. 1 ("Plaintiff raised baseless claims despite knowledge those claims were frivolous"); Doc. 100 p. 5  ("Steele's claim that he never got notice of Smith's motion for fees is baseless."); *id.*, at 7 ("he Court has no doubt that Duffy, Steele, and Hansmeier are  closely associated and acted in concert to file and prosecute this frivolous lawsuit."); *id.*, at 9 ("The Court also finds that Duffy, Hansmeier, and Steele exhibited a "serious and studied disregard for the orderly process of justice."); Doc. 101 p. 24:14-17 ("Now, I agree with everything that I've read and seen. This was abusive litigation."); Doc. 136 p. 6 ("However, plaintiff's counsel argues that this confusion is the primary reason they did not comply with the Sanctions Order. The Court finds this argument disingenuous. Seventh Circuit case law is quite clear."); *id.*, at 9 ("As indicated in the Sanctions Order, this case is 'baseless.'"); *id.*, at 9-10 ("While the Court was unable to nail down any specific lies due, in significant part, to plaintiff's counsel excellent "attorney speak", the misrepresentations and half-truths presented indicate plaintiff's counsel's clear disrespect of the Court."); Doc. 185 p. 6 ("Hansmeier has not stated any valid reason for quashing the subpoenas. Likewise, the request for sanctions is baseless."); and so on.

These numerous false representations have caused Smith to incur significant additional expenses in conducting third party discovery to obtain accurate financial documentation. These third party documents were clearly in the possession, custody or control of Lightspeed's Counsel. Smith should be awarded sanctions in an amount sufficient to cover his costs, including attorneys' fees

---

[4] *See e.g.* http://m.startribune.com/lifestyle/health/285777711.html?section=/

incurred in conducting third-party discovery, necessitated solely by Lightspeed's Counsel's misconduct.

Lightspeed's Counsel's "have shown a relentless willingness to lie to the Court on paper and in person." Doc. 100 p. 10. They fail to carry the burden of their defense, by offering nothing more than empty words and previously rejected tax statements; why should the Court believe them now? *Maggio v. Zeitz*, 333 U.S. 56, 76 (1948) (finding insufficient the alleged contemnor's "own denials which the court finds incredible in context").

## CONCLUSION

"The credibility of an alleged contemnor's denial of an ability to pay must be weighed in light of the circumstances present in the case." *Maggio*, 333 U.S. at 76. Here, the underlying judgment involved a finding that Lightspeed's Counsel filed baseless claims and "unreasonably and vexatiously multiplied the proceedings in this matter." Doc. 136 p. 9. Nothing has changed since then.

Throughout the course of this case, Lightspeed's Counsel has repeatedly failed to provide necessary information to the Court, which was one of the reasons the Court imposed the $261,00252.11 sanction in the first place. In light of all the circumstances in this case, Lightspeed's Counsel's unsupported claims of an inability to pay any portion of the Order at the time cannot be found to be credible.

Dated: December 16, 2014

Respectfully,

/s/ Jason E. Sweet

Jason E. Sweet (BBO# 668596)
Email: jsweet@boothsweet.com

/s/ Daniel G. Booth (with consent)

Daniel G. Booth (BBO# 668596)
Email: dbooth@boothsweet.com

BOOTH SWEET LLP
32R Essex Street
Cambridge, MA 02139
Tel.: (617) 250-8602
Fax: (617) 250-8883

*Pro Hac Vice*
*Counsel for Anthony Smith*

**CERTIFICATE OF SERVICE**

I hereby certify that on this December 16, 2014 I filed the foregoing document and my supporting affidavit through the Court's CM/ECF system, which will serve the documents on all counsel of record who have consented to electronic service.

/s/ Jason E. Sweet