UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LIGHTSPEED MEDIA CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>ANTHONY SMITH, SBC INTERNET SERVICES, INC., d/b/a AT&T INTERNET SERVICES; AT&T CORPORATE REPRESENTATIVE #1; COMCAST CABLE COMMUNICATIONS, LLC, and COMCAST CORPORATE REPRESENTATIVE #1,<br><br>    Defendants. | Case No. 3:12-cv-00889-DRH-SCW |

**DEFENDANT'S REPLY TO LIGHTSPEED'S COUNSEL'S OPPOSITIONS**

Defendant Anthony Smith ("Smith"), in further support of his motion for reconsideration (Doc. 189) (the "Smith Motion"), respectfully submits this Reply to the Oppositions (Doc. 191 and 192 respectively) filed by Paul Hansmeier ("Hansmeier") and John Steele ("Steele") (collectively "Lightspeed's Counsel").[1]

**I. Lightspeed's Counsel's Oppositions Justify This Reply Pursuant to Local Rule 7.1(c).**

The Smith Motion corrected material errors of fact and included newly obtained evidence demonstrating that Lightspeed's Counsel obstructed discovery and made affirmative misrepresentations to the Court regarding their ability to pay the November 2013 Sanctions Order. *See* Docs. 135 ("Contempt Motion") and 136 ("Sanctions Order") p. 13 (noting that the Smith Motion "relates directly to representations made in Court and in the financial statements by plaintiff's counsel"). *See also,* Doc. 153 ("Discovery Motion"). The oppositions mischaracterize the Smith Motion's focus and its evidence, without presenting any evidence or legal authority to the contrary—a tactic unworthy of any litigant, but especially unfortunate coming from attorneys. *See Beam v. IPCO Corp.*, 838 F.2d 242, 249 (7th Cir.1988) ("Lawyers have a duty of candor to the tribunal. Counsel … would be well-advised to observe that violations of this duty can lead to sanctions even more severe than payment of an opponent's fees and costs."); *id.*, at 249 n.5 ("disingenuous

---

[1] Paul Duffy, the third member of Lightspeed's counsel, filed no opposition to the motion for reconsideration.

arguments" and "misrepresentations of controlling law", because they postpone resolution of the real issues and cause delay, can be evidence of bad faith.) *See also Borowski v. DePuy, Inc.*, 850 F.2d 297, 306 (7th Cir. 1988). Pursuant to Local Rule 7.1(c), the Oppositions give rise to exceptional circumstances that require this Reply to rectify Lightspeed's Counsel's most recent circumventions of the facts, the evidence, and common sense.

## II.     Lightspeed's Counsel Fail to Adequately Develop Their Arguments.

As an initial matter, Lightspeed's Counsel's oppositions are waived for failure to adequately develop their arguments. Puffery is proffered as fact; the record is presented "in a thoroughly misleading and unprofessional fashion." *Borowski,* 850 F.2d at 306. More so, the oppositions do not set forth case citations, facts or legal arguments in support thereof. This lack of authority or legal argument forfeits any issues asserted by Lightspeed's Counsel. *See United States CFTC v. Lake Shore Asset Mgmt.*, 540 F.Supp.2d 994, 1007 (N.D. Ill. 2008) (*citing Weinstein v. Schwartz,* 422 F.3d 476, 477 n. 1 (7th Cir. 2005)); *Kramer v. Banc of Am. Sec., LLC*, 355 F.3d 961, 964 n.1 (7th Cir. 2004) ("We have repeatedly made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived …") (*quoting United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991)). Lightspeed's Counsel's deficient oppositions were submitted after they were already on notice by this Court that the practice of submitting cursory filings was unacceptable. *See* Doc. 186 p. 2 (*citing Doe, By and Through G.S. v. Johnson*, 52 F. 3d 1448, 1457 (7th Cir. 1995)).

## III.    Lightspeed's Counsel's Apportion Argument Fails, Again.

Hansmeier contends "nothing in the record even remotely suggests that Hansmeier engaged in discovery misconduct." Doc. 191 p. 2. In doing so, he turns a blind eye to the frivolous discovery motions he filed and for which Smith incurred costs responding to. Doc. 185 p. 6 ("Considering the above, Hansmeier has not stated any valid reason for quashing the subpoenas."). Most importantly, the argument ignores previous findings made by this Court.

> In our case, the district court found that while Steele and Hansmeier were not listed on every court document, the evidence showed that they were "in cahoots" with Duffy and worked with him to use the judicial system for a legally meritless claim. Their efforts seem to have continued in this court.

*Lightspeed Media Corp. v. Anthony Smith*, Nos. 13‐3801 & 14‐1682, p. 19 (7th Cir. July 31, 2014). This determination of joint and several liability still holds under the law of the case doctrine. *Jarrard*

*v. CDI Telecomms., Inc.*, 408 F.3d 905, 911-12 (7th Cir. 2005) ("when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.").

IV. **Oppositions Fail to Cite the Appropriate Standard for Clear and Convincing Evidence.**

Lightspeed's Counsel cites *Cruzan by Cruzan v. Director, Mo. Dept. of Health* for the proposition that "clear and convincing evidence [in a contempt proceeding] is a very high standard." Doc. 191 p.5 (*citing* 497 U.S. 261, 285 n.11 (1990)). First, the clear and convincing standard of *Cruzan* is inapplicable as it is limited to a specific context, the termination of life support. *Id*. Secondly, in *Ridge v. DaimlerChrysler*, the Seventh Circuit observed that heightened standards of clear and convincing evidence do not apply in civil cases unless a statute or the Constitution so requires. 516 F.3d 623, 625-26 (7th Cir. Feb. 20, 2008).[2] Smith's Contempt Motion is premised upon material misrepresentations "made in Court and in the financial statements by plaintiff's counsel." Doc. 136, p. 13. Lightspeed's Counsel's obligation of candor toward the Court is codified in Rule 3.3 of the Illinois Rules of Professional Conduct. There is no doubt Lightspeed's Counsel has been less than candid with the Court, and no doubt Smith has provided ample evidence of their deceit. Indeed, much of the same evidence which Smith relies on in his Contempt Motion informed prior, favorable Circuit and Court decisions regarding Lightspeed's Counsel's contempt.

V. **At the Time of the Sanctions Order, Hansmeier had Access to $515,000.**

Beginning June 30, 2014, Hansmeier was the subject of a debtor's exam in Minnesota state court. Hansmeier as the sole member of Alpha Law wrote $515,000 in checks to Monyet, LLC, which he described alternatively as both a limited liability company and a trust.[3] Doc. 189-4 pp. 37:2-39:24.[4] Hansmeier identified Monyet, LLC as being created for the benefit of himself, his wife

---

[2] *See e.g. Morris v. Jenkins,* 819 F.2d 678, 681 (7th Cir. 1987) (wherein many of the case cited were "neither controlling nor relevant"). As the record indicates, when the law disfavors Lightspeed's Counsel, it is ignored, glossed over, or misstated.

[3] "Counsel's willingness to shift positions depending on the argument of the moment gave his contentions an undesirable *Alice in Wonderland* quality as various facts faded in and out of view like the Cheshire Cat's grin. Needless to say, … this litigation tactic did not advance his … cause and diminished counsel's credibility with the court." *United States CFTC v. Lake Shore Asset Mgmt.,* 540 F.Supp.2d 994, 1008 (N.D. Ill. 2008). *Cf.* "I can't tell you how it operates within the whole estate planning scheme is because … that's something that's well beyond my expertize." Doc. 189-4 pp. 37: 9-12 *with Ingenuity 13 v. Doe,* 12-cv-08333-ODW-JC, ECF No. 69-1 (Filed March 6, 2013) (wherein Hansmeier testifies for the better part of 290 pages as to trust organization).

[4] The transcripts of the Minnesota state court debtor's exam were not transcribed until September 7, 2014 [Doc. 189-4 p. 61] and September 12, 2014 [Doc. 189-5 p. 37] respectively. The undersigned requested copies once he became aware of them and their relevance. Said documents were not in the undersign's possession until after the November 12, 2014 hearing, nor do the oppositions demonstrate otherwise.

and son. Doc. 189-5 p. 19:7-8; 18. At the time of the transfers, Monyet, LLC was not engaged in business in any way, had no creditors, had no legitimate business purpose for having any funds in a bank account—it was merely a conduit for Hansmeier to keep funds out of the reach of creditors. *Gouveia v. Cahillane* (*In re Cahillane*), 408 B.R. 175, 194, 204 (Bankr. N.D. Ind. 2009). *See also Posnanski v. Kosth* (*In re Kosth*), No. 09-br-82212, 2012 Bankr. LEXIS 1091, *1 (Bankr. C.D. Ill. Mar. 13, 2012) ("The debtor omitted a whole series of payments made by the debtor through his corporation for the benefit of family members and related companies. The timing of those transfers, in the months preceding the filing of the bankruptcy, was suspicious. Moreover, the omissions were clearly material, as they related to transfers later avoided by the trustee for the benefit of creditors."); *Green Bay Packaging, Inc. v. Oscarson* (*In re Oscarson*), No. 05-br-52582, 2008 Bankr. LEXIS 2014 (Bankr. N.D. Ill. July 2, 2008). Despite the facts and applicable law to the contrary, Hansmeier proffers only: "This too is false." Doc. 191 p. 7. This opposition is without merit or legal authority, and fails to challenge the facts.

**VI.    Millions of Dollars Remain Unaccounted.**

Hansmeier's refutation that nearly $5 million remains unaccounted for [Doc. 191 p. 7] is that the exhibits the Smith Motion cites "are not authenticated." Again, this is an argument without merit, without legal authority and fails to challenge the authenticity of the documents' substance. As previously explained to Lightspeed's Counsel, documents produced in response to discovery are self-authenticating. *See* Doc. 161 pp. 2-4 (*citing Architectural Iron Workers Local No. 63 Welfare Fund v. United Contrs.*, 46 F.Supp.2d 769, 772 (N.D. Ill. 1999); Fed. R. Evid. 902(9)).

**VII.   What Mortgage?**

Steele contends he disclosed in his declaration that he took out a mortgage on his home for renovation purposes. Doc. 192, p. 2 ("The funds from the mortgage was placed into that account and used to renovate the home."). Yet, no declaration is cited or attached as an exhibit to the opposition. Nor does the record indicate any such declaration as being filed. Assuming such a declaration exists, it does not explain why no mortgage is on file with the Registry of Deeds (Ex. A), why none appears in the financial documents Smith's possesses, why none is found in an asset search (Ex. B) or why Steele fails to identify the lender. More so, the account wherein the funds were placed have no record of a check or transfer indicative of a loan or mortgage. Doc. 189-1. Indeed, rather than the lump sum one would expect from a bank, the account contains a series of unidentified deposits. *See* Doc. 189 p.

6 and Doc. 189-1. Steele's opposition also contains a lengthy argument regarding tenancy by the entirety bank accounts. However, and despite its length, the argument is void of legal authority.[5]

**VIII.    Steele Fails to Challenge the Substance of the Sabadell Bank Records.**

Steele doesn't dispute validity of the argument the Smith Motion makes nor does he contend that the bank documents would indicate otherwise. Instead, he argues "that bank records dated a year before the hearing … [cannot be] newly discovered evidence." Doc. 192 p. 2. The age of the documents is not relevant. Steele's affirmative misrepresentations to Sabadell Bank that the March 24 subpoenas were "stayed" were made with the express intent to obstruct discovery. More so, they were successful in their goal.[6]

**IX.    JP Morgan Relied on Affirmative Misrepresentations by Lightspeed's Counsel that Delayed Compliance for Two Months.**

On January 16, 2014, Smith's counsel sent two subpoenas to JP Morgan, one in this matter and an identical one to enforce a judgment in *AF Holdings v. Chowdhury*, No. 12-cv-12105 (D. Mass. 2012). Because each subpoena requested the exact same documents concerning the exact same parties, JP Morgan merged the matters. Ex. C p. 7. Between January 29, 2014 and January 31, 2014, John Steele made several calls[7] to JP Morgan stating he intended to file a motion to quash.[8] *Id.,* p. 4. Steele did provide a motion, but it was not file-stamped nor was it ever filed. *Id.* JP Morgan made repeated requests over a two month period for a filed copy that went unanswered by Lightspeed's Counsel. When Lightspeed's Counsel did respond to the request, they did so with a motion that had already been denied. Doc. 135 p. 7. *See also* Doc. 153. Considering the prior conduct in this matter, this was just another "attempt [by Lightspeed's Counsel] to impede [the Court's] ability to make an accurate assessment of their current ability to pay." *Lightspeed Media Corp.*, at p. 19.

---

[5] Interestingly, Steele asserts "one spouse is prohibited from taking any of the funds in the account without the permission of the other spouse." Doc. 192 p. 2. Assuming this is accurate, Steele does not then explain how he alone was able to issue to himself alone cashiers checks totaling $38,000. Doc. 189 p. 6.

[6] The Court did not deny the subsequently filed motion to quash [Doc. 157] until October 20, 2014 [Doc. 185]. A copy of that denial was sent to Sabadell Bank on October 27, 2014. The bank documents were mailed to Smith on November 10, 2014 and received November 17, 2014. Ex. D.

[7] Steele's obstruction of the subpoenas was for the benefit of Hansmeier and Duffy, as well as himself. This is worth noting, because Steele identifies himself to JP Morgan as "*Attorney* John Steele"—despite his license being inactive at the time. *See* Doc. 101 23:24. ("I don't even practice anymore.").

[8] "It is possible that Steele did contact JP Morgan and inform them that a motion to quash in this matter." Doc. 192 p. 3. Given the number of times Steele contacted JP Morgan, such feigned senility is suspect.

Dated: January 12, 2015                                        Respectfully,
                                                               /s/ Jason E. Sweet

                                                               Jason E. Sweet (BBO# 668596)
                                                               Email: jsweet@boothsweet.com

                                                               BOOTH SWEET LLP
                                                               32R Essex Street
                                                               Cambridge, MA 02139
                                                               Tel.: (617) 250-8602
                                                               Fax: (617) 250-8883

                                                               *Pro Hac Vice*
                                                               *Counsel for Anthony Smith*

## CERTIFICATE OF SERVICE

I hereby certify that on this January 12, 2015 I filed the foregoing document and my supporting affidavit through the Court's CM/ECF system, which will serve the documents on all counsel of record who have consented to electronic service.

                                                               /s/ Jason E. Sweet