# EXHIBIT A

27-CV-12-20976

Filed in Fourth Judicial District Court
1/20/2015 6:59:46 PM
Hennepin County Civil, MN

Case 3:12-cv-00889-DRH-SCW   Document 194-1   Filed 01/22/15   Page 2 of 28   Page ID
#4400

**STATE OF MINNESOTA**                      **DISTRICT COURT**

**COUNTY OF HENNEPIN**           **FOURTH JUDICIAL DISTRICT**

---

| | |
|---|---|
| Guava LLC, | CASE TYPE: Civil Other/ Misc. |
| | Court File No. 27-CV-12-20976 |
| Plaintiff, | The Hon. Tanya M. Bransford |
| v. | |
| | **ORDER ON MOTION FOR POST-** |
| Spencer Merkel, | **JUDGMENT REMEDIES AND** |
| | **MOTIONS FOR SANCTIONS** |
| Defendant. | |

---

      The above-entitled action came before the Honorable Tanya M. Bransford on September 19, 2014 and October 13, 2014, upon John Doe 173.19.225.244 Motion to add Paul Hansmeier and Class Justice, PLLC as Judgment Debtors and John Doe, Class Justice PLLC and Alpha Law Firm's Motion for Sanctions against Best & Flanagan and its counsel Edward Sheu. The record closed on October 22, 2014, upon post-hearing submissions by the parties.

      Edward Sheu, Attorney at Law, appeared on behalf of John Doe 173.19.225.244. Paul Hansmeier, Attorney at Law, appeared *pro se* and on behalf of Alpha Law Firm, LLC and Class Justice, PLLC.

      Now therefore, the Court, based upon all of the files, records, proceedings and arguments of counsel herein makes the following:

**ORDER**

1. John Doe 173.19.225.244's Motion to add Attorney Paul Hansmeier and Class Justice, PLLC as Judgment Debtors is **GRANTED in part**.

2. The judgment filed with this court on September 20, 2013, shall be amended to add Paul Hansmeier as a judgment debtor *ab initio*. Hansmeier shall be personally liable for the judgment award in the amount of $63,367.52, less any payments previously received, joint and several with the current judgment debtors, Michael K. Dugas, Alpha Law Firm LLC and Guava LLC.

3. John Doe's Motion for Sanctions against Best & Flanagan LLP and Edward Sheu is **DENIED**.

4. Class Justice PLLC's Motion for Sanctions against Best & Flanagan LLP and Edward Sheu is **DENIED**.

5. Alpha Law Firm's Motion for Sanctions against Best & Flanagan LLP and Edward Sheu is **DENIED** as moot.

6.   The attached memorandum is incorporated by reference herein.

**LET JUDGMENT BE ENTERED ACCORDINGLY**

**BY THE COURT:**

Dated: _____

_____
The Honorable Tanya M. Bransford
Judge of the District Court
Fourth Judicial District

### MEMORANDUM

### PROCEDURAL HISTORY

On October 17, 2012, Plaintiff Guava, LLC ("Plaintiff"), by and through its attorney Michael K. Dugas, Esq. ("Dugas") of the Alpha Law Firm LLC, 900 IDS Center, 80 South Eighth Street, Minneapolis, Minnesota 55402 ("Alpha"), filed this action against Defendant Spencer Merkel ("Defendant"), alleging violations of Minn. Stat. § 626A.02 *et seq.* and a civil conspiracy. The complaint identified Plaintiff as "a limited liability company that owns and operates protected computer systems, including computer systems accessible throughout Minnesota." (Compl. ¶ 2).  The complaint did not identify whether Plaintiff was a limited liability company organized under the laws of any state or country, and Plaintiff's counsel did not provide any competent evidence of Plaintiff's existence as a corporate entity. The Complaint did not specify Defendant's location or residence. (Compl. ¶ 3). The substantive allegations in the Complaint were similarly vague. Plaintiff alleged barebones facts, citing no dates or specific information regarding Defendant's alleged hacking into its computer systems. Plaintiff additionally alleged that Guava "operates computer systems that distribute third-party content." (Compl. ¶ 7). But instead of alleging factual evidence to explain Plaintiff's operations, Plaintiff

used an analogy to illustrate its operations. *Id*. In alleging civil conspiracy, Plaintiff maintained

that Defendant "colluded with multiple members of a hacking community to intercept electronic

communications taking place on Plaintiff's protected computer systems." (Compl. ¶ 17). Plaintiff

alleged no conduct in Minnesota other than Plaintiff's "computer systems accessible [are]

throughout Minnesota." (Compl. ¶ 2).

On October 25, 2012, Plaintiff filed Plaintiff's Unopposed Discovery Motion for

Authorizing Order. On October 30, 2012, attorney Paul R. Hansmeier, Esq. ("Hansmeier"), of

Prenda Law, Inc. ("Prenda"), 40 South Seventh Street, Suite 212-307, Minneapolis, Minnesota

55402, noticed his appearance for Plaintiff as "of counsel."  Dugas and Hansmeier appeared

before the Court on October 31, 2012, with no appearance from Defendant, for an order

permitting the issuance of subpoenas to over 300 internet service providers ("ISPs"). Plaintiff's

stated purpose in seeking court permission in connection with subpoenas under Minn. R. Civ. P.

45, which does not require court permission, was to order the ISPs to disclose their customers'

names and addresses. Dugas and Hansmeier represented to the Court that the motion was

particularly time sensitive and treated the motion as an "emergency." Following an October 31,

2012 hearing, this Court denied Plaintiff's motion finding that Plaintiff did not demonstrate that

the personally identifying information was relevant and material to the action and that the request

was broad and excessive. (Nov. 2, 2012 Ord.)

On November 6, 2012, Plaintiff filed Plaintiff's Emergency Renewed Unopposed

Discovery Motion for Authorizing Order to the Court requesting an order permitting discovery

on 17 ISPs, which the Court granted on the condition that the recipients of any subpoenas would

be permitted the opportunity to move to quash the subpoenas and noting no objection by

Defendant. (Nov. 7, 2012 Ord.). At the hearing, Defendant was represented by Trina Morrison,

27-CV-12-20976

Filed in Fourth Judicial District Court
1/20/2015 6:59:46 PM
Hennepin County Civil, MN

Case 3:12-cv-00889-DRH-SCW   Document 194-1   Filed 01/22/15   Page 5 of 28   Page ID
#4403

Attorney at Law. Ms. Morrison did not object to the issuance of the order even after inquiry by

the Court on the record.

In December 2012, over 30 non-parties, including four ISPs and more than 20 ISP

customers ("John Does"), filed motions seeking to quash Plaintiff's subpoenas, a protective order

preventing Plaintiff's discovery, and a dismissal of Plaintiff's action. Plaintiff moved to strike

portions of certain pleadings. Non-Party John Doe 173.19.225.224 ("John Doe 173") was

represented by Edward P. Sheu ("Sheu"), Attorney at Law, of Best and Flanagan LLP ("Best &

Flanagan").

On January 25, 2013, the Court heard the ISPs' and John Does' motions, and Plaintiff's

motion to strike. At the hearing, Plaintiff's counsel John L. Steele, Esq. ("Steele"), an Illinois

attorney who appeared for Plaintiff *pro hac vice*, along with Dugas and Hansmeier, represented

that Plaintiff was a limited liability company with an office in Las Vegas, Nevada and that he

believed Plaintiff to be based in "Nevis," referring to the Federation of St. Kitts and Nevis.  (Jan.

25, 2013 Hr'g Tr. at 9-11).  When asked by the Court if Plaintiff had any presence in Minnesota,

Steele did not directly respond: "It's my understanding that they do have some computer

equipment and various offices and one of the places would be Illinois and Las Vegas."  (1/25/13

Hr'g Tr. at 10). After being pressed by the Court, Steele stated that the lawsuit was brought in

Minnesota "because the location and progress verifying various activities were trying to show

that much of the activity, or certain amounts of the activity, was occurring in Minnesota so it's

the acts themselves that are occurring in Minnesota." (1/25/13 Hr'g Tr. at 10-11). Steele did not

state that the evidence previously collected pointed toward activity in Minnesota but that

Plaintiff was trying to show that "much of the activity or certain amounts of activity, was

occurring in Minnesota." *See id*. During the entire hearing, Plaintiff's counsel evaded the Court's

27-CV-12-20976

Filed in Fourth Judicial District Court
1/20/2015 6:59:46 PM
Hennepin County Civil, MN

Case 3:12-cv-00889-DRH-SCW   Document 194-1   Filed 01/22/15   Page 6 of 28   Page ID
#4404

inquiry into jurisdiction over this case and did not assert any concrete connections to Minnesota. In response to the Non-Parties' argument that Plaintiff did not file the proper document to bring suit pursuant to Minnesota Statute §322B.94 subd. 1 (2012), Plaintiff's counsel maintained that Plaintiff was not transacting business in Minnesota and that if necessary Plaintiff would file a Certificate of Authority that same day. (*See* 1/25/13 Hr'g Tr. at 37-40). The Court received no evidence that a Certificate of Authority was ever filed with the Secretary of State.

Also at the January 25, 2013 hearing, the Court took sworn testimony of Defendant's counsel, Trina Morrison, and received into the court record an Affidavit of Spencer Merkel dated January 24, 2013. ("Defendant Aff."). Defendant's counsel testified that she graduated from law school with Plaintiff's counsel, Dugas, and that she was approached to represent Defendant on a pro-bono basis after informing Dugas and Hansmeier that she may be interested in accepting pro-bono cases to gain experience. (*See* 1/25/13 Hr'g Tr. at 17-20).

In the affidavit, Defendant stated that he was a Beaverton, Oregon resident and that he received a September 26, 2012, letter from Prenda's Paul Duffy ("Duffy"), claiming that Defendant had illegally downloaded a movie named *Amateur Allure-MaeLynn*[1] and that Defendant could pay Prenda $3,400 by October 11, 2012, to avoid being named in the lawsuit, *Hard Drive Productions, Inc. v. Does 1-1,495*, which had been filed in the United States District Court for the District of Columbia. Defendant Aff. at ¶ 1; Exhibit A. Before the deadline, Defendant stated that he called Prenda Law and spoke with someone named Mike or Michael. *Id.* at ¶ 2. Defendant attested that he informed "Michael" that he was unable to pay the settlement

---

[1] This action appears to be markedly similar to a fraudulent scheme as found by Judge Otis Wright, United States District Judge of the Central District of California. In that case, Judge Wright found that Steele, Hansmeier and Paul Duffy conspired to send cease and desist letters to IP Address holders, alleging that such IP Address holders illegally stole a pornographic movie, and offered to settle for $4,000.00 or be sued. *Ingenuity 13 LLC v. Doe*, 2:12-CV-8333-ODW (JCx), 2013 WL 1898633 (C.D. Cal, May 6, 2013). Judge Wright found that this strategy was vexatious litigation designed to coerce settlement and extract settlement proceeds from defendants who did not want the social stigma of litigation relating to stolen pornographic movies attached to their names. *See id.*

27-CV-12-20976

Filed in Fourth Judicial District Court
1/20/2015 6:59:46 PM
Hennepin County Civil, MN

Case 3:12-cv-00889-DRH-SCW   Document 194-1   Filed 01/22/15   Page 7 of 28   Page ID
#4405

amount but inquired if they could settle the case. *Id.* According to the affidavit, "Michael" told Defendant that to settle he would have to agree to the following: Defendant would be sued, Defendant had to provide a bit-torrent log from his computer, and Prenda would dismiss the claim against Defendant after receiving the bit-torrent information. *Id.* at ¶ 3. During the discussion with "Michael," Defendant stated that he was told that a pro-bono attorney may be willing to take the case in Minnesota and that "Michael" did not know any pro-bono attorneys in Oregon. *Id.* at ¶ 4. Defendant stated that he agreed to be sued in Minnesota because he could not afford an attorney and obtained his attorney, Trina Morrison, based upon the information he received from Prenda. *Id.* Defendant also attested that he had never heard of Guava LLC or Alpha Law Firm LLC until this lawsuit; he believed that the opposing parties would be Prenda and Hard Drive Productions, Inc. *Id.* at ¶ 5-6. On January 15, 2013, Defendant received a voicemail from someone at Prenda stating that he "needed to make payment arrangements or [he] would be sued." *Id.* at ¶ 8. According to Defendant, Plaintiff had not requested either his bit-torrent log information or the names of any alleged co-conspirators. *Id.* at ¶ 9. Dugas submitted a Declaration of Michael Dugas in Support of Plaintiff's Response to Court's Order to Show Cause ("Dec. of Dugas") on April 16, 2013, which stated that Dugas was the only individual by the name of Mike or Michael at either Alpha Law Firm LLC or Prenda Law but that he never spoke to Defendant. Dec. of Dugas at ¶ 2-3. Dugas also claimed that he never offered a settlement to Defendant and the first discussion of settlement was with Defendant's attorney Trina Morrison on February 14, 2013. *Id.* at ¶ 5-6. Finally, Dugas asserted that this action is wholly unrelated to *Hard Drive Productions, Inc. v. Does 1-1,495*, filed in the United States District Court for the District of Columbia. *Id.* at ¶ 7.

6

Upon inquiry at the January 25, 2013 hearing, Plaintiff's counsel informed the Court that no discovery had been served upon Defendant since the case had been filed with the Court October 17, 2012, which is consistent with Defendant's statement. (*See* 1/25/13 Hr'g Tr. at 28-31); Defendant Aff. ¶ 9. It was clear from the Court's questioning at the hearing that it heavily questioned jurisdiction over this matter and appeared to have its doubts about the merits of the underlying case.

On March 1, 2013, before this Court ruled on the motions to quash, motions for protective order and motion to strike, Plaintiff and Defendant filed a stipulation for dismissal in which Plaintiff agreed to dismiss all claims against Defendant with prejudice. This Court signed and filed the Stipulation of Dismissal with Prejudice and Order on March 5, 2013, and judgment was entered by Hennepin County District Court Administration. The Court never received a sworn affidavit from a principal of Plaintiff and no principal ever appeared. Defendant never personally appeared before this Court, except through his counsel, Trina Morrison, and the affidavit received at the January 25, 2013 hearing. The underlying action was dismissed without any completed discovery and prior to the issuance of a scheduling order.

Also on March 1, 2013, one of the non-party John Does in this action, represented by Sheu, filed a request for attorney fees and costs against Plaintiff and its counsel. This Court issued an Order to Show Cause, dated March 6, 2013, ordering Plaintiff and its attorney Dugas to show cause why the Court should not award reasonable attorneys' fees and costs to the Non-Party John Does. An Amended Order to Show Cause, dated March 7, 2013, was issued by the Court, which permitted the other John Does and ISPs to file verified fee petitions to this Court in connection with the Motions for Attorneys' Fees and Costs. The Amended Order to Show Cause

7

27-CV-12-20976

Filed in Fourth Judicial District Court
1/20/2015 6:59:46 PM
Hennepin County Civil, MN

Case 3:12-cv-00889-DRH-SCW   Document 194-1   Filed 01/22/15   Page 9 of 28   Page ID
#4407

did not name John Steele, Paul Hansmeier, Prenda Law, Inc., Live Wire Holdings LLC, or the

Anti-Piracy Law Group.

On April 23, 2013, the Court heard the John Does' and ISPs' requests for fees and costs

and permitted all interested parties and their counsel to be heard. Despite this Court's Amended

Order to Show Cause ordering Plaintiff to appear, no corporate representative of Plaintiff

appeared before the Court. Plaintiff's counsel Dugas stated that he was appearing on behalf of

his client as well as himself; however, Dugas did not represent to the Court that he was a

principal or officer of Plaintiff.

On August 7, 2013, the Court filed an Order Granting in Part Non-Party John Does and

Non-Party ISPs' Motion for Attorneys' Fees and Costs ("August 7, 2013 Order"), which ordered

Alpha, Dugas and Guava (collectively "Judgment Debtors") to pay $63,367.52 in attorneys' fees

based upon the Court's finding of bad faith litigation. On August 30, 2013, the Court filed a

Memorandum Following Order Granting in Part Non-Party John Does and Non-Party ISP's

Motion for Attorneys' Fees and Costs, which explained the Court's rationale of its August 7,

2013 Order. In the Memorandum, the Court declined to include attorney Hansmeier and others as

judgment debtors because Dugas, Alpha and Guava were the only parties that were directed to

appear in the signed, Amended Order to Show Cause, filed on March 8, 2013. The Court held

that Plaintiff and its counsel acted in bad faith to initiate the lawsuit against Defendant in

Minnesota District Court. The Court concluded that the parties filed the Complaint as a sham to

pursue other potential IP address holders to extract settlements rather than to legitimately sue

Defendant for the alleged copyright infringement because, in part, none of the parties had any

connection to the State of Minnesota. The Court also discredited Dugas' testimony in his

27-CV-12-20976

Filed in Fourth Judicial District Court
1/20/2015 6:59:46 PM
Hennepin County Civil, MN

Case 3:12-cv-00889-DRH-SCW   Document 194-1   Filed 01/22/15   Page 10 of 28   PageID
#4408

declaration and found it to be untruthful, noting the contradictory testimony in the Defendant Aff., because of Dugas' bad faith actions during the course of litigation in the case.

The August 7, 2013 Order was reduced to a judgment on September 20, 2013, and the court administrator entered judgment against Judgment Debtors on September 23, 2013, in the amount of $63,367.52 for the unpaid fees and costs. On October 30, 2013, Judgment Debtors filed a Notice of Appeal to the Court of Appeals appealing the judgment entered by the Court on September 23, 2013. On November 5, 2013, Judgment Debtors filed a motion to stay the judgment pending the appeal and requested to deposit the amount of the judgment by cashier's check with the Court as collateral in lieu of a supersedeas bond. The Court denied the motion on November 21, 2013, and ordered Judgment Debtors to comply with post-judgment discovery no later than November 27, 2013. Judgment Creditor Best & Flanagan, on behalf of John Doe 173, attempted to conduct post-judgment discovery and collect on the judgment while the matter was on appeal without success.

On January 8, 2014, John Doe 173 filed a Motion for Judgment Enforcement and Discovery Sanctions. John Doe 173 sought to have Hansmeier added as a judgment debtor because Hansmeier was Alpha's sole member and asserted allegations that Hansmeier dissolved Alpha to avoid paying the sanctions order in the August 7, 2013 Order and refused to cooperate with post-judgment discovery. John Doe 173 also sought sanctions against Alpha for failing to comply with post-judgment discovery.

The Court conducted a hearing on January 22, 2014, on John Doe 173's request for Judgment Enforcement and Discovery Sanctions. On May 27, 2014, the Court entered an order denying John Doe 173's request to add Hansmeier as a judgment debtor, but granting John Doe 173's request for Discovery Sanctions. The order awarded John Doe 173 $3,300.00 in attorneys'

27-CV-12-20976

Filed in Fourth Judicial District Court
1/20/2015 6:59:46 PM
Hennepin County Civil, MN

Case 3:12-cv-00889-DRH-SCW   Document 194-1   Filed 01/22/15   Page 11 of 28   Page ID
#4409

fees and instructed Alpha to pay John Doe 173 this amount. In the order, the Court noted that

adding Hansmeier as a judgment debtor would not only alter the judgment debtors but also the

factual findings contained in the record, which were matters that were intertwined with the

appeal.

On May 28, 2014, Judgment Creditor filed a Notice of Request for Order for

Examination of Debtors and a proposed order because a Writ of Execution was returned by the

Hennepin County Sheriff's Office and was only partially satisfied. *See* Minn. Stat. §575.02. On

June 16, 2014, June 30, 2014, and July 2, 2014, Judgment Creditor conducted a debtors'

examination in which Hansmeier testified on behalf of Alpha and Dugas testified on behalf of

himself pursuant to Minn. Stat. § 575.04 (2014). The examinations were on the record and held

before this Court.

On August 4, 2014 the Minnesota Court of Appeals issued a decision in the appeal taken

from the judgment entered by the Court on September 23, 2013 which substantially affirmed the

Court's judgment. *Guava v. Merkel*, No. A13–2064, 2014 WL 3800492 (Minn. Ct. App. Aug. 4,

2014). The Court of Appeals held that this Court did not abuse its discretion by imposing

attorney's fees against Judgment Debtors because of the improper use of the judicial system and

bad faith litigation. *Id*. at *6. The Court also held that Alpha received sufficient notice of the

potential for a sanctions award against it and denied the motion to reverse the sanctions award

against the firm. *Id*. at *8.

Following the decision from the Court of Appeals, Best & Flanagan filed this Motion for

Post-Judgment remedies on September 5, 2014. A hearing on Best & Flanagan's request to

amend the judgment to add Hansmeier and Class Justice PLLC as judgment debtors convened on

September 19, 2014. Hansmeier claimed that he and Class Justice PLLC were not timely notified

27-CV-12-20976

Filed in Fourth Judicial District Court
1/20/2015 6:59:46 PM
Hennepin County Civil, MN

Case 3:12-cv-00889-DRH-SCW   Document 194-1   Filed 01/22/15   Page 12 of 28   Page ID
#4410

of the hearing because the matter was a dispositive motion that required 28 days' notice pursuant

to Minn. Gen. R. Prac. 115.03. The Court disagreed that the motion was dispositive but

continued the hearing to October 13, 2014, as a remedy for any untimeliness of Best &

Flanagan's motion. Before the hearing occurred, Hansmeier, Alpha, Class Justice PLLC and

John Doe filed a motion for sanctions on September 30, 2014 against Best & Flanagan and

Edward Sheu alleging violations of Minn. R. Gen. Prac. 11.02, bad faith pursuit of litigation

against Class Justice PLLC and discovery violations. After the hearing concluded, the Court left

the record open to allow the parties to submit written proposed orders to the Court. The record

closed on October 22, 2014, upon receipt of the proposed orders by both Hansmeier and Sheu.

## FACTUAL BACKGROUND[2]

In early 2010, Hansmeier formed Alpha as its sole manager and member. (June 16, 2014

Hr'g Tr. at 26:25-27:7) Hansmeier dissolved Alpha on August 25, 2013, shortly after this

Court's August 7, 2013 Order granting sanctions against Judgment Debtors, which required

payment of the sanctions within thirty days. On August 25, 2013, Hansmeier filed Articles of

Termination with the Secretary of State declaring "under the penalties of perjury," "that all

known debts, obligations and liabilities of the limited liability company have been paid and

discharged or that adequate provision has been made for payment or discharge. . . .  There are no

pending legal, administrative or arbitration proceedings by or against the limited liability

company, or that adequate provision has been made for the satisfaction of any judgment, order or

decree that may be entered against it in a pending proceeding."[3] Class Justice PLLC was

---

[2] The factual background section of this order shall only contain facts relevant to the current motions before this Court. Specifically, the facts section contain facts relating to the testimony taken at the debtors' examinations on June 16, 2014, June 30, 2014, and July 2, 2014 as well as relevant activity occurring primarily after judgment was entered on September 23, 2013. The facts established by this Court's Order on August 7, 2013, and memorandum following the order on August 30, 2013, remain a part of the court record but are referenced only when pertinent to the current motions.
[3] The Court was not made aware of Alpha's dissolution until November 2013.

27-CV-12-20976

Filed in Fourth Judicial District Court
1/20/2015 6:59:46 PM
Hennepin County Civil, MN

Case 3:12-cv-00889-DRH-SCW   Document 194-1   Filed 01/22/15   Page 13 of 28   Page ID
#4411

organized as a limited liability company on July 3, 2013, by Hansmeier at its sole member. It is

unclear from the record when the LLC was formed but Class Action Justice Institute, LLC's

("CAJI") is a limited liability company also organized by Hansmeier as a sole member law firm.

(*See* June 30, 2014 Hr'g Tr. at 54:24-55:6 and July 2, 2014 Hr'g Tr. at 21:12-21:14).  Class

Justice PLLC did not enter into a contractual obligation to assume Alpha's or CAJI liabilities.

On June 16, 2014, Dugas testified for the first time, that he was never employed by

Alpha. (6/16/14 Hr'g Tr. at 10:9-10:12). Dugas stated that he had worked for Prenda in 2012 and

then for LiveWire Holdings for the first half of 2013. (*Id*. at 6:3-6:13). Dugas stated that he

signed the pleadings with Alpha's signature block as a matter of convenience for mailing

purposes even though he could have signed on behalf of Prenda – and subsequently LiveWire

Holdings – the firm that was actually employing him at the time. (*Id*. at 10:13-11:11).

After the first hearing on the debtor's examination, the Court required Alpha to produce

income tax returns and documents that Hansmeier testified related to transfers of money to and

from Alpha's bank accounts, including the $65,970 transfer from Alpha to CAJI on February 6,

2013, less than two weeks after the January 25, 2013 hearing. Hansmeier indicated that the

February 6, 2013 $65,970 transfer, along with an earlier $59,400 transfer, were pursuant to

confidential agreements; however, when ordered to produce the supporting documents or move

for a protective order, Hansmeier indicated that he no longer had the records. Hansmeier

confirmed that he had transferred $80,000 from Alpha's bank account to his personal account on

March 13, 2013, (6/30/14 Hr'g Tr. at 45:8-46:11), one week after this Court issued to Alpha a

March 5, 2013 Order to Show Cause and a March 6, 2013 Amended Order to Show Cause.

Hansmeier claimed that he had no notice of the March 5 and March 6, 2013 Orders to

Show Cause directed to Alpha, or the August 7, 2013 sanctions award against Alpha, when he

27-CV-12-20976

Filed in Fourth Judicial District Court
1/20/2015 6:59:46 PM
Hennepin County Civil, MN

Case 3:12-cv-00889-DRH-SCW   Document 194-1   Filed 01/22/15   Page 14 of 28   Page ID
#4412

first transferred the $80,000 to himself on March 13, 2013 and when he later dissolved Alpha

with the Minnesota Secretary of State on August 25, 2013. (*See* 6/16/14 Hr'g Tr. at 31:22-

32:21). The Court finds that Hansmeier's initial involvement in this proceeding, as well as his

ongoing involvement in these proceedings and the appeal, undercuts his claim that he was

unaware of the motion for sanctions or the resulting order for sanctions when he made the

transfers from Alpha's account and when he dissolved Alpha. Hansmeier appeared at the January

25, 2013 hearing and argued extensively for Plaintiff, and Hansmeier was Alpha's sole owner.

The Court finds it unbelievable that Hansmeier did not have notice of the Court's March 5, 2013

and March 6, 2013 Orders to Show Cause, which were personally served on Alpha's offices,

pursuant to court rules of procedure and practice. The Minnesota Court of Appeals also rejected

the argument that Alpha had no notice of the sanctions hearing *Guava*, 2014 WL 3800492 at *8.

Therefore, the Court discredits Hansmeier's testimony based on the inconsistencies in his

representations to the Court during the litigation of the case at the debtors' examination and

based on his failures to provide responsive information in these proceedings.

Nearly all of Alpha's bank deposits had been transferred from other companies owned

solely or equally by Hansmeier, and most of Alpha's bank withdrawals were for Hansmeier's

personal or family purposes, including large transfers to Monyet, LLC, a company that was

formed in conjunction with Hansmeier's family trust. (7/2/14 Hr'g Tr. at 16:25-20:8). Although

Hansmeier claimed to lack knowledge when asked about many financial matters, sufficient

evidence was presented showing that Hansmeier used Alpha primarily for his personal use and

that Hansmeier had transferred funds away from Alpha to avoid paying creditors, including the

Judgment Creditor in this action.

13

27-CV-12-20976

Filed in Fourth Judicial District Court
1/20/2015 6:59:46 PM
Hennepin County Civil, MN

Case 3:12-cv-00889-DRH-SCW   Document 194-1   Filed 01/22/15   Page 15 of 28   Page ID
#4413

Among other evidence received during the debtors' examinations, Alpha was never insured, Alpha never had a client trust account, Alpha never had any fee agreement or any contract, and Alpha was hardly, if at all, used as a law firm. (*See* 7/2/14 Hr'g Tr. at 20:14-21:11 and 22:1-25:17). The Court finds that Alpha was insufficiently capitalized and deliberately undercapitalized. Recognizing that single-member limited liability companies may be less formally organized and operated than larger companies, Alpha failed to observe basic corporate formalities, a finding that is supported by Alpha's failure to produce any corporate or other records other than bank statements through post-judgment discovery. (*See* 7/2/14 Hr'g Tr. at 22:1-25:17).

For the first time at the debtor's examination, Hansmeier testified that Alpha had no role in this action except to serve as a local mailing address for Plaintiff in this action. (6/30/14 Hr'g Tr. at 34:16-34:22). Hansmeier testified that Alpha was not, in fact, the law firm of record for Plaintiff in this action; rather, he claimed, Prenda was the actual law firm of record for Plaintiff, and Alpha was merely providing a "convenient mailing address" for Prenda in Minnesota. (7/2/14 Hr'g Tr. at 9:21-10:14). However, Prenda appears to have a local address, less than five blocks from Alpha's address, according to Hansmeier's Notice of Appearance filed on October 30, 2012. The Court finds Hansmeier's position not well taken. Dugas signed multiple pleadings with the Alpha signature block, never once stating that Prenda was the actual law firm representing Plaintiff, and Hansmeier, who originally noticed his appearance in this action as "of counsel" for Prenda, at one point argued that he never actually noticed his appearance at all for Plaintiff. The Court finds Hansmeier's recent characterization of Alpha's role and affiliation in this matter, even post-appeal, to be an attempt to mislead the Court. The Court finds that Hansmeier did not operate Alpha as a law firm or a separate legal entity but simply to serve as a

conduit of money for his financial benefit and an attempt to deflect liability for sanctions. Hansmeier used Alpha as a liability shield to prosecute this and other actions, as well as a bridge for the transfer of money from other entities to himself. Hansmeier knew of the possibility of sanctions in this action, transferred Alpha's money away, and terminated Alpha to avoid paying the judgments in this action.

With respect to Hansmeier's Motion for Sanctions, Hansmeier primarily alleges that a number referenced in a transcript of his testimony at one of the debtor's examination, which was submitted as part of Judgment Creditor's motion, was a family member's social security number. However, Hansmeier claimed in prior testimony that he had no knowledge of the number, and the Court therefore had no evidence to conclude whether the referenced numbers were confidential identifiers that are governed by Minn. R. Gen. Prac. 11. Additionally, a review of the transcripts reveal that the referenced numbers do not contain a full number of digits required for a proper social security number. The Court finds that the alleged conduct by Judgment Creditor—the disclosure of a social security number on a court filing—was, if true, inadvertent, precipitated by Hansmeier's testimony, and quickly remedied.

## ANALYSIS

### I.   Jurisdiction and Notice

As a threshold matter, Hansmeier argues that this Court has no jurisdiction to add him or Class Justice PLLC as judgment debtors because the Court cannot legally amend a final judgment. Additionally, Hansmeier continued to maintain that Alpha had no notice of the sanctions order. (*See* 6/30/14 Hr'g Tr. at 45:8-46:11).

Generally, judgments are not stayed while the matter is on appeal and the district court's authority to make an order affecting the judgment is suspended. Minn. R. Civ. App. P. 108.01.

27-CV-12-20976

Filed in Fourth Judicial District Court
1/20/2015 6:59:46 PM
Hennepin County Civil, MN

Case 3:12-cv-00889-DRH-SCW  Document 194-1  Filed 01/22/15  Page 17 of 28  Page ID
#4415

However, the trial court "retains jurisdiction as to matters independent of, supplemental to, or collateral to the order or judgment appealed from." Minn. R. Civ. App. P. 108.01, subd. 2. The Minnesota Supreme Court has held that a trial court retains jurisdiction to enforce a judgment during and after appeals because "such enforcement is independent of the underlying appellate decision and would not modify the underlying appellate decision in any way." *Johns v. Harborage I, Ltd.*, 664 N.W.2d 291, 296 (Minn. 2003) (quoting *Kellar v. Von Holtum*, 605 N.W.2d 696, 700 (Minn. 2000) (internal quotations omitted).

This Court concludes that it retains jurisdiction to enforce the judgment in this motion post-appeal pursuant to *Johns*, 664 N.W.2d at 296. John Doe 173's motion seeks to enforce the sanction award based upon evidence garnered at the debtor's examination hearings before this Court and does not seek to modify the underlying judgment. More specifically, the motion seeks to open up the number of assets available to satisfy the judgment amount rather than to alter the underlying order of this court or increase the amount of the judgment award. The rule allowing post-judgment discovery specifically contemplates that the trial court will have continuing jurisdiction to enforce judgments that have been entered, as in the instant case. *See Johns*, 664 N.W.2d at 296; Minn. R. Civ. App. P. 108.01, subd. 2.

With respect to notice, the Court concludes that Alpha had sufficient notice of the sanctions award. The Minnesota Court of Appeals found that Alpha had been sufficiently notified of the potential for sanctions in the Amended Order to Show Cause. *Guava*, 2014 WL 3800492 at *8. Additionally, Hansmeier had sufficient notice that he may be personally liable for the sanctions because this Court allowed a continuance to remedy Hansmeier's objection to the current motion as untimely.

## II.    Motion to add Judgment Debtors

### a. Piercing the Corporate Veil

In Minnesota, a court may pierce the corporate veil to hold a party personally liable for the acts of a corporation if the entity is being used for a fraudulent purpose or the party is acting as an alter ego of the company. *Equity Trust Co. Custodian ex. rel. Eisenmenger IRA v. Cole*, 766 N.W.2d 334, 339 (Minn. Ct. App. 2009); *see also Victoria Elevator Co. v. Meriden Grain Co.*, 283 N.W.2d 509, 512 (Minn. 1979); Minn. Stat. §322B.303, subd. 2 (applying veil piercing case law to limited liability companies). "Piercing the corporate veil is an equitable remedy that may be applied in order to avoid an injustice." *Equity Trust Co.*, 766 N.W.2d at 339 (citation omitted). When examining the alter ego theory to pierce the corporate veil, courts look at the reality and not the form of the corporate operations and the individual's relationship to the corporate operation. *Id.* (citation omitted).

> Several factors are relevant to the inquiry, including: insufficient capitalization for purposes of corporate undertaking, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation at time of transaction in question, siphoning of funds by dominant shareholder, nonfunctioning of other officers and directors, absence of corporate records, and existence of corporation as merely facade for individual dealings... If the corporation or limited liability company is found to be an alter ego or mere instrumentality, a court may pierce the corporate veil if there is an element of injustice or fundamental unfairness.

*Id.* (quoting *Victoria Elevator Co.*, 283 N.W.2d at 512) (internal quotations omitted).

The Court finds that Hansmeier was acting as an alter ego of Alpha and it must pierce the corporate veil to avoid a fundamental unfairness in this case. When this Court examines the reality of Alpha's operations and Hansmeier's relationship to Alpha in light of the debtor's examination, the Court finds that Alpha was used primarily for Hansmeier's personal purposes. *Equity Trust Co.*, 766 N.W.2d at 339. Particularly pertinent to the case at hand is evidence of Hansmeier's draining of Alpha's funds that were "distributed" to either himself personally or other companies in which he held an ownership interest. Further, the Court finds a number of

transactions particularly disturbing because large sums of Alpha's money were transferred away for his personal dealings in complete disregard for corporate formalities and the separation of personal and business. More specifically, Hansmeier admitted that he transferred $80,000 from Alpha's account to himself so that he could make a down payment on his home (6/30/14 Hr'g Tr. at 45:8-46:11) and he transferred over $300,000 from Alpha's account to a limited liability company that oversaw the management of a trust set up for his the benefit of his family. (*See* 6/30/14 Hr'g Tr. at 35:23-36:24 and 7/2/14 Hr'g Tr. at 16:24-20:8). Although these transactions occurred prior to this Court's August 7, 2013 Order, they serve to illustrate that Hansmeier never observed corporate formalities with respect to Alpha and piercing the corporate veil is proper to avoid an injustice in this case.

This finding is compounded by the other forms of fraud perpetuated on this Court in this case. From the beginning, Dugas, Hansmeier and Alpha initiated this lawsuit in bad faith and as a sham in an effort to procure future settlements.[4] Further, Dugas and Hansmeier misled this Court to such an extent that even the simplest fact as to which attorney was employed by a specific firm was misrepresented. Initially, Hansmeier appeared as "of counsel" of Prenda while Dugas listed Alpha as his firm affiliation, as evidenced by this Court sanctioning Alpha as the firm of record in its August 7, 2013 Order. It was not until the debtor's examination, which occurred almost a year after the sanctions were ordered and Dugas withdrew as counsel for Plaintiff, that this Court learned that Dugas was never actually employed by Alpha. It was not until Judgment Creditor and others began to petition this Court for sanctions that Hansmeier began to act in self-preservation and on behalf of Alpha by arguing that Alpha had no notice of the potential sanction and dissolving Alpha less than three weeks after the sanctions order was

---

[4] The Court also presumes that the sham was also perpetuated by Plaintiff Guava; however, the Court has its doubt about the actual existence of Plaintiff as a legitimate LLC due to a lack of sworn testimony of any corporate officer during the pendency of the litigation.

27-CV-12-20976

Filed in Fourth Judicial District Court
1/20/2015 6:59:46 PM
Hennepin County Civil, MN

Case 3:12-cv-00889-DRH-SCW   Document 194-1   Filed 01/22/15   Page 20 of 28   Page ID
#4418

issued. If this Court did not pierce the corporate veil in this case, Hansmeier would be allowed to

act in bad faith and perpetuate a fraud on this Court, which is just as sanctionable as the conduct

found to be sanctionable by this Court in the August 7, 2013 Order, without consequence. The

truth behind all of Hansmeier's actions may never be revealed because of his bad faith actions

and evasive testimony in the face of potential consequences.[5] However, the record does support

piercing the corporate veil to hold Hansmeier personally liable for any unpaid judgment amount

because of his apparent disregard for corporate formalities and admitted use of corporate assets

for personal purposes. The majority of the factors listed in *Victoria Elevator* that courts should

consider when determining whether to pierce the corporate veil have been found in this case. In

this case, there was insufficient capitalization, a failure to observe corporate formalities,

insolvency of debtor corporation at time of transaction in question, siphoning of funds by

Hansmeier, absence of corporate records and the existence of corporation as merely facade for

individual dealings. *Victoria Elevator Co.*, 283 N.W.2d at 512.

> **b. Successor Liability**

In Minnesota, when

> one corporation transfers its assets to another corporation, absent consolidation,
> merger, or a mere continuation of the selling corporation such as a reorganization,
> the receiving corporation is not responsible for the debts of the transferring
> corporation except (a) where the purchaser agrees, expressly or impliedly, to
> assume such debts, or (b) the transfer of assets is entered into for inadequate
> consideration, or otherwise fraudulently, in order to escape liability for such
> debts.

*J.F. Anderson Lumber Co. v. Myers*, 206 N.W.2d 365, 370 (Minn. 1973); *see also* Minn. Stat.

§302A.661, subd. 4; *Johns*, 664 N.W.2d at 297.

---

[5] For example, Hansmeier attempted to evade Sheu's questioning at the debtor's examination on multiple occasions
by simply restating Sheu's question as his answer. (*See e.g.* 6/30/14 Hr'g Tr. at 49:8:-49:10 "Q: What is Under the
Bridge Consulting, LLC? A: It's a limited liability company called Under the Bridge Consulting, LLC."; 6/30/14
Hr'g Tr. 37:2-37:3 "Q: Do you know what Monyet, LLC is? A: It's presumably a limited liability company.")

27-CV-12-20976

Filed in Fourth Judicial District Court
1/20/2015 6:59:46 PM
Hennepin County Civil, MN

Case 3:12-cv-00889-DRH-SCW   Document 194-1   Filed 01/22/15   Page 21 of 28   Page ID
#4419

Despite Alpha's convenient dissolution and termination less than three weeks after the
August 7, 2013 Order for sanctions, the record contains no evidence that Class Justice
contractually assumed the debts of Alpha. Further, the Court was not presented with evidence
that there was a direct transfer of assets between Alpha and Class Justice. The evidence
establishes that there was a transfer between Alpha and CAJI and CAJI financial records are not
before the Court to show a chain of transfers from Alpha to Class Justice. Therefore, Class
Justice cannot be held liable for the judgment award pursuant to successor liability under
Minnesota law even though the evidence suggests that Alpha was dissolved to avoid the
sanctions award issued against it.

### c.   Minn. Stat. §575.05

Minn. Stat. §575.05 states in relevant part that "The judge may order any of the judgment
debtor's property in the hands of the judgment debtor or of any other person, or due to the
judgment debtor, not exempt from execution, to be applied toward the satisfaction of the
judgment…"

In this case, the sanctions order was issued on August 7, 2013, and reduced to a judgment
on September 23, 2013. The judgment was not due to the Judgment Creditor and others prior to
August 7, 2013. While the dates of the transfers do not legitimize Hansmeier's actions in the
eyes of the Court, the testimony and bank records produced as part of the debtor's examination
establish that money in the hands of a debtor was transferred prior to the date that any judgment
was due and owing. For example, the $80,000 transfer from Alpha to Hansmeier's personal
account occurred in March 2013. Therefore, Hansmeier is not personally liable for the sanctions
aware pursuant to Minn. Stat. §575.05 because at the time the judgment was entered, the money
available to pay the sanctions was not in the hands of the debtor Alpha. Alpha's corporate assets

27-CV-12-20976

Case 3:12-cv-00889-DRH-SCW   Document 194-1   Filed 01/22/15   Page 22 of 28   Page ID
#4420

Filed in Fourth Judicial District Court
1/20/2015 6:59:46 PM
Hennepin County Civil, MN

had been transferred away prior to the judgment and these transfers were not loans, so the money

was not in the hands of a third party, Hansmeier, and due to Alpha at the time that the sanctions

order was issued. *See generally Fannie Mae v. Heather Apartments Ltd. Partnership*, 811

N.W.2d 596, 599 (Minn. 2012).

### d.  Res Judicata and Collateral Estoppel

Hansmeier claims that he cannot be held liable for the sanctions award because the claim

is barred by res judicata based upon this Court's August 7, 2013 Order. The August 7, 2013

Order declined to hold Hansmeier personally liable because he was not named in the Amended

Order to Show Cause. Hansmeier further claims that this Court's May 27, 2014 Order, which

denied Judgment Creditor's motion to add Hansmeier as a judgment debtor while the judgment

was on appeal, serves as an additional basis for res judicata to apply to the current motion.

This Minnesota Supreme Court has held that

> Res judicata and collateral estoppel are related doctrines. Fundamental to both
> doctrines is that a right, question or fact distinctly put in issue and directly
> determined by a court of competent jurisdiction cannot be disputed in a
> subsequent suit between the same parties or their privies… Although the terms are
> sometimes used interchangeably, each doctrine is distinct in its effect. Res
> judicata, also known as "claim preclusion," while based on the same principle as
> collateral estoppel, is the broader of the two and applies more generally to a set of
> circumstances giving rise to entire claims or lawsuits… Once there is an
> adjudication of a dispute between parties, res judicata prevents either party from
> relitigating claims arising from the original circumstances, even under new legal
> theories… Collateral estoppel, characterized… as being "a miniature of res
> judicata," applies to specific legal issues that have been adjudicated and is also
> commonly and accurately known as "issue preclusion."

*Hauschildt v. Beckingham*, 686 N.W.2d 829, 837 (Minn. 2004) (citations omitted) (internal

quotations omitted).

> For the doctrine of collateral estoppel to apply, each of the following elements
> must be met: 1) the issue must be identical to one in a prior adjudication; 2) there
> was a final judgment on the merits; 3) the estopped party was a party or was in

privity with a party to the prior adjudication; and 4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

*Care Institute, Incorproated-Roseville v. County of Ramsey*, 612 N.W.2d 443, 448 (Minn. 2000) (citation omitted).

In this case, the Court concludes that the first two factors are dispositive. The Court does not view this issue as one that was identical to one in a prior adjudication because the Court does not view its previous two orders as a prior adjudication. Even assuming that the Court prior orders were a prior adjudication, there was no final judgment on the merits with respect to Hansmeier's personal liability for the sanctions order. In both of the referenced orders, the Court declined to add Hansmeier as a matter of procedure and specifically because he would not have had the opportunity to have this Court consider his personal liability on the merits. In the August 7, 2013 Order, the Court declined to add Hansmeier as a judgment debtor because he was not required to appear pursuant to the Amended Order to Show Cause and therefore had no opportunity to present a defense. In the May 27, 2014 Order, the Court declined to add Hansmeier as a judgment debtor because the judgment was on appeal and this Court could not add him as a judgment debtor without changing the facts of the case on appeal. At this time, Hansmeier has been afforded a full opportunity to present a defense to his personal liability and collateral estoppel does not apply to this case.

> Res judicata is a finality doctrine that mandates that there be an end to litigation…
> Under res judicata, a party is required to assert all alternative theories of recovery
> in the initial action… Res judicata not only applies to all claims actually litigated,
> but to all claims that could have been litigated in the earlier action.

*Hauschildt*, 686 N.W.2d at 840 (citations omitted) (internal quotations omitted).

> Res judicata applies as an absolute bar to a subsequent claim when (1) the earlier
> claim involved the same set of factual circumstances; (2) the earlier claim
> involved the same parties or their privies; (3) there was a final judgment on the
> merits; (4) the estopped party had a full and fair opportunity to litigate the matter.

*Id.* (citation omitted). All prongs must be met for res judicata to apply. *Id.*

The Court finds that res judicata does not apply to the facts of this case for the same reasons that collateral estoppel does not apply. There was no final judgment on the merits of Judgment Creditor's motion to add Hansmeier as a judgment debtor. Arguably, Judgment Creditor could have brought these claims to this Court and res judicata should apply because Hansmeier has been involved with the case since its inception. However, the Court declines to extend res judicata to this case based upon a "could have been litigated" theory because the extent of the fraud perpetuated upon this Court as well as Hansmeier's involvement was not clear until the debtor's examination. The facts and circumstances surrounding Hansmeier's personal bad faith with respect to this case was not a part of the record when the Court's prior orders were issued. In sum, collateral estoppel and res judicata do not bar Judgment Creditor's motion to add Hansmeier as a judgment debtor and Hansmeier shall be liable for the unpaid judgment pursuant to the Court's conclusion to pierce the corporate veil of Alpha.

## III. Motion for Sanctions

Minnesota Rule of Civil Procedure 11 states in relevant part that

By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,
(a) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
(b) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
(c) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery…

27-CV-12-20976

Filed in Fourth Judicial District Court
1/20/2015 6:59:46 PM
Hennepin County Civil, MN

Case 3:12-cv-00889-DRH-SCW   Document 194-1   Filed 01/22/15   Page 25 of 28   Page ID
#4423

Minn. R. Civ. P. 11.02. "If, after notice and a reasonable opportunity to respond, the court

determines that Rule 11.02 has been violated, the court may… impose an appropriate sanction

upon the attorneys, law firms, or parties that have violated Rule 11.02 or are responsible for the

violation." Minn. R. Civ. P. 11.03.

### a. John Doe

Parties are restricted from submitting restricted identifiers on any public filing subject to

certain exceptions. Minn. R. Gen. P. 11.02(a). Minn. R. Gen. P. 11.01 provides

> The following definitions apply for the purposes of this rule:
> (a) "Restricted identifiers" shall mean the social security number, employer
> identification number, and financial account numbers of a party or other person.
> (b) "Financial source documents" means income tax returns, W-2 forms and
> schedules, wage stubs, credit card statements, financial institution statements,
> check registers, and other financial information deemed financial source
> documents by court order.

"If a party fails to comply with the requirements of this rule in regard to another individual's

restricted identifiers or financial source documents, the court may upon motion or its own

initiative impose appropriate sanctions, including costs necessary to prepare an appropriate

document for filing." Minn. R. Gen. P. 11.04.

John Doe relies on *Engeseth v. County of Isanti*, 665 F. Supp.2d 1047 (D. Minn. 2009)

for support of its position. In that case, Chief Judge Michael Davis ordered sanctions against an

attorney for publicly filing an affidavit containing the full social security numbers and birth dates

of 179 individuals. *Id*. at 1048. The Court held

> Because of the serious consequences of Moccio's conduct and the lack of
> judgment demonstrated by his actions, the Court imposes the following sanctions
> under its inherent power: Moccio is ordered to notify all injured individuals of the
> improper disclosure of their personal information, to provide each individual with
> individualized credit reports and credit monitoring, and to make a payment of
> $5,000 to the Second Harvest Heartland food bank. These sanctions are meant to
> punish Moccio for his actions and to deter him from repeating those actions. The
> Court is deeply concerned with the harmful and widespread ramifications

associated with negligent and inattentive electronic filing of court documents. Although electronic filing significantly improves the efficiency and accessibility of our court system, it also elevates the likelihood of identity theft and damage to personal privacy when lawyers fail to follow federal and local rules. The Court therefore imposes upon Moccio the costs associated with preventing identity theft for the harmed parties. The Court also orders Moccio to pay $5000 to the Second Harvest Heartland food bank so that he will keep in mind the interests and safety of dependent parties before he acts in the future.

*Id*.

In this case, a set of numbers was published in a transcript attached to moving papers submitted by Sheu in a publicly viewable document. Hansmeier filed this motion alleging that the numbers published were a social security number of his family member and requested sanctions. The document was converted to a confidential filing soon after the motion was filed and therefore, the Court concludes that the public filing was inadvertent and quickly remedied. Moreover, during the testimony in which the numbers are referenced, Hansmeier testified that he did not know what the numbers were and no indication was given with respect to what the numbers represented. Upon review of the transcript, it appears that the numbers recited on the record are one digit less than a full social security number. Stated differently, the risk of harm is de minimus in this case because the document does not reveal either a full social security number or a name or identifier to correspond to the numbers. Minn. Gen. R. Prac. 11 allows the Court discretion to order sanctions when restricted identifiers are publicly filed. *See* Minn. Gen. R. Prac. 11.04 ("If a party fails to comply with the requirements of this rule in regard to another individual's restricted identifiers or financial source documents, the court *may* upon motion or its own initiative impose appropriate sanctions…" (emphasis added)). Based upon the circumstances, the Court declines to impose sanctions against Sheu and Best & Flanagan in favor of John Doe.

**b. Class Justice**

27-CV-12-20976

Filed in Fourth Judicial District Court
1/20/2015 6:59:46 PM
Hennepin County Civil, MN

Case 3:12-cv-00889-DRH-SCW   Document 194-1   Filed 01/22/15   Page 27 of 28   Page ID
#4425

Next, Class Justice requests that this Court impose sanctions on Sheu and Best &
Flanagan for attempting to obtain judgment against it frivolously and in bad faith because Best &
Flanagan continued to seek judgment against it after Class Justice established that it was not a
party to a transfer between Alpha and CAJI on February 6, 2013. Class Justice further claims that
it could not be consider a successor to CAJI and therefore there is no basis upon which Best &
Flanagan's motion can be granted.

The Court disagrees. Even though this Court has concluded that Class Justice is not a
successor to  CAJI, the motion to add Class Justice as a judgment debtor does not rise to the level
of bad faith in this action. Class Justice was not pursued in bad faith because, as evidenced by the
testimony at the debtor's examination, it was unclear which of Hansmeier's company were still
in business, still under his ownership and which companies preceded others. Hansmeier's
evasive testimony and non-compliance with post-judgment discovery made it difficult for
Judgment Creditor to either trust the word of Hansmeier or determine which party to seek
enforcement remedies against without using the Court's enforcement power pursuant to Minn.
Stat. §575.02. Based upon these factors, the Court finds that Minn. R. Civ. P. 11.02 was not
violated by Best & Flanagan or Sheu and the Court declines to order sanctions in favor of Class
Justice for bas faith litigation against it.

### c.  Alpha

Alpha Law Firm's motion for sanctions against Best & Flanagan and Sheu for alleged
discovery violations is moot as withdrawn.

### CONCLUSION

Based upon the foregoing analysis, John Doe 173.19.225.244's Motion to add Attorney
Paul Hansmeier as a judgment debtor is granted on the basis that this Court must pierce the

27-CV-12-20976

Case 3:12-cv-00889-DRH-SCW   Document 194-1   Filed 01/22/15   Page 28 of 28
#4426

Filed in Fourth Judicial District Court
1/20/2015 6:59:46 PM
Hennepin County Civil, MN

corporate veil and hold Hansmeier liable personally to avoid injustice and a fundamental
unfairness in this case. The Motion to add Class Justice PLLC as a judgment debtor is denied.
The record does not contain evidence that Class Justice assumed the debts and liabilities of
Alpha or that Alpha fraudulently transferred funds to Class Justice without adequate
consideration to avoid the sanction award.

 All the Motions for Sanctions in this case are denied. The Court finds that there was no
violation of Minn. R. Civ. P. 11.02 that would warrant sanctions pursuant to Minn. R. Civ. P.
11.03. Specifically, the public filing of an alleged social security number was inadvertent,
quickly remedied and the risk of harm was minimal because the numbers did not contain the
proper number of digits for a full social security number. Additionally, Judgment Creditor did
not pursue Class Justice PLLC in bad faith to warrant a sanction.