IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LIGHTSPEED MEDIA CORPORATION, ) | |
| ) | |
| Plaintiff, ) | Case No. 3:12-cv-889-DRH-SCW |
| ) | |
| v. ) | **DEFENDANT ANTHONY** |
| ) | **SMITH'S ITEMIZATION OF** |
| ANTHONY SMITH, SBC INTERNET SERVICES, ) | **ADDITIONAL EXPENSES** |
| INC., d/b/a AT&T INTERNET SERVICES; AT&T ) | **INCURRED IN CONDUCTING** |
| CORPORATE REPRESENTATIVE #1; COMCAST ) | **THIRD PARTY DISCOVERY,** |
| CABLE COMMUNICATIONS, LLC, and ) | **INCLUDING COSTS AND** |
| COMCAST CORPORATE REPRESENTATIVE #1, ) | **ATTORNEY'S FEES** |
| ) | |
| Defendants. ) | |

Defendant Anthony Smith ("Smith") respectfully submits this Itemization of Additional Expenses Incurred in Conducting Third Party Discovery, Including Costs and Attorney's Fees.

In its June 5, 2015 Memorandum and Order (Doc. 199), the Court reconsidered its denial (Doc. 188) of Smith's motions for contempt (Doc. 135) and for discovery sanctions (Doc. 153). The Court awarded sanctions against Plaintiff's counsel John Steele ("Steele") and Paul Hansmeier ("Hansmeier") "for their contemptuous statements in court." Doc. 199 p. 17. Further, the Court found Plaintiff's counsel Paul Duffy ("Duffy") and Steele "engaged in unreasonable, willful obstruction of discovery in bad faith" and awarded sanctions to Smith "in the amount of the additional expenses incurred in conducting third party discovery," apportioned equally between Steele and Duffy. *Id.* p. 16. With regard to those discovery sanctions, the Court ordered Smith to submit his reasonable costs by July 3, 2015. *Id.* Smith responds to that Order by this filing and the attached itemized invoice of time entries and costs for Smith (Exhibit A) and supporting affidavits of Smith's counsel. The total amount requested is $94,343.51.

I.   **Relevant Factual Background.**

A.   **Smith Sought Discovery to Remedy Plaintiffs' Counsel's Misrepresentations.**

Smith's post-dismissal discovery efforts were sparked when Steele, Hansmeier and Duffy (collectively "Plaintiff's counsel") failed to comply with the Court's November 27, 2013 order sanctioning them under Section 1927. Doc. 100. Defendants jointly moved for contempt one month later. Doc. 107. In January and February 2014, Plaintiff's counsel each claimed they lacked the means to pay. *See* Doc. 111 p. 6 (Duffy); Doc. 113 p. 6 (Hansmeier); Doc. 115 p. 3 (Steele); Doc. 127 pp. 8:10-21 (Hansmeier), 10:9-16 & 19:10-15 (Steele), & 20:10-21:9 (Duffy). On March 2, 2014 the Court found their financial condition statements were insufficient to establish an inability to pay, and found them in contempt for the first time. Doc. 136 p. 7. On April 4, 2014 the Court stayed its contempt order from resulting in additional fees. Doc. 148.

Smith sought discovery from Plaintiff's counsel personally, serving on Steele, Duffy, and Hansmeier interrogatories and requests for production concerning their finances on January 21, 2014. See Doc. 135 Exs. V & X. None of Plaintiff's counsel ever complied with those discovery requests; they denied receiving them, as is their wont. *Id.*; *see generally* Doc. 165 p. 3 n. 4.

Smith sought third-party discovery about Plaintiff's counsel's financial resources and their ability to pay the amount ordered. Doc. 153 p. 2. On January 16, 2014, he issued subpoenas to twelve financial institutions: Bank of America, Wells Fargo, First Advantage, JP Morgan Chase, OneWest Bank, TCF National Bank, Fifth Third Bank, Citibank, Ready Street Bank, Hiway FCU, Indymac, and Marquette Bank. Doc. 116-1 Ex. B. Plaintiffs' counsel jointly moved to quash the subpoenas on January 30, 2014. Doc. 116. The Court denied the motion on February 19, 2014. Doc. 125. Smith continued his discovery concerning Plaintiff's counsel's financial

resources and the veracity of their claimed inability to pay, issuing a second wave of subpoenas to third parties T-Mobile, American Express, MasterCard, GoDaddy, TransFirst, Hotmail, Google and Twitter on or about March 7, 2014. Doc. 153 p. 2. To mollify Plaintiff's counsel's objections to these subpoenas, "out of an abundance of caution," Smith withdrew them and reissued them on March 25, 2014. Doc. 165 pp. 2-3; Doc. 185 pp. 2-5. On or about the same date he issued further subpoenas to MCZ/Centrum Flamingo III, LLC, Pearl Insurance, Pershing LLC, Sabadell United Bank ("Sabadell"), BNY Mellon and Capital One Bank. Doc. 165 p. 7; Doc. 165-5. Smith continued to pursue discovery by investigating other sources with information pertinent to Plaintiff's counsel's finances. *See* Doc. 161 p. 1 n. 1; *see also* Doc. 189, 194, 195, 197.

**B.    Steele and Duffy Actively and Willfully Obstructed Pertinent Discovery.**

Steele and Duffy actively sought to obstruct this third-party discovery. Steele informed JP Morgan Chase on January 29, 2014 that he intended to move to quash the subpoenas. Doc. 199 p. 13. Steele sent the bank an unstamped copy of the joint motion to quash on January 30, 2014, the day it was filed. Doc. 116, 199 p. 13. The bank's requests for a file-stamped copy went unanswered through February 2014. Doc. 193-3 p. 4. The Court denied the motion on February 19, 2014. Doc. 125. Yet two weeks later, on March 3, Duffy faxed a stamped copy of the motion to JP Morgan Chase. Doc. 135 p. 9. Duffy's misrepresentation led the bank to believe the motion to quash to be pending, prohibiting compliance with the subpoena. *Id.* Exh. Z ¶¶ 2-6. Duffy's actions were "intentionally obstructive, as he had reason to know the motion to quash had been denied at the time he relayed it to the bank." Doc. 199 pp. 13-14.

On April 11, 2014, Steele informed Smith's counsel that he had received his copies of the Smith's latest subpoenas and claimed, "As you know the action has been stayed and any

outstanding subpoenas must be withdrawn. I have already contacted the third parties involved, and notified them." Doc. 153-1. Smith's counsel responded that the Court's April 4, 2014 Order, reflecting Steele's payment of a supersedeas bond pending appeal, only stayed the contempt order, not third-party discovery. *Id.*; *see* Doc. 136 p. 13. Yet five days later, on April 16, 2014, Steele faxed a copy of the April 4 Order to Sabadell Bank, falsely stating that "the order I have included shows that the Court stayed the matter on April 4, 2014." Doc. 158, 158-1 p. 4. "Despite Steele's explicit knowledge that discovery of his financial records had not been stayed, he proceeded to inform the bank that a stay was in place. This demonstrates his knowing interference in Smith's discovery efforts." Doc. 199 p. 14.

Hansmeier moved to quash Smith's March 2014 wave of subpoenas on April 22, 2014. Doc. 157. The motion was denied on October 20, 2014. Doc. 185. Sabadell was promptly notified and produced responsive documents that Smith's counsel received on November 17, 2014, about eight months after issuing the subpoena. *See* Doc. 193 p. 5 n. 6, Doc. 193-4. Sabadell produced extensive records showing Steele's substantial resources that contradicted his claimed insolvency; his misrepresentations to Sabadell and Hansmeier's motion to quash sought to avoid or delay those records' disclosure. Doc. 199 pp. 15-16; Doc. 190 Ex. A. Plaintiff's counsel effectively put off Sabadell's production until after the November 12, 2014 hearing on Smith's motions for contempt and discovery sanctions. Doc. 187.

At that hearing, Plaintiff's counsel each denied misrepresenting their financial status and, "[w]ith regard to obstructing discovery, Steele and Duffy indicated they never intentionally made misrepresentations to third parties." Doc. 199 p. 7. Smith's motion to reconsider (Doc. 189) "shed[] new light on Duffy and Steele's efforts to obstruct discovery by misleading subpoenaed

4

banking institutions." Doc. 199 p. 13. Smith's extensive efforts to expose their obstructions led to "newly discovered financial evidence to support his assertion that, despite their pleas of insolvency, Steele and Hansmeier had sufficient assets to satisfy the Fee Order." *Id.* p. 14.

**II.     It Is Proper for the Court to Award Smith the Full Amount of His Itemized Expenses, Costs and Attorney's Fees.**

**A.     Both Rule 37 and Section 1927 Support a Full Award to Smith.**

The Court cited both Federal Rule of Civil Procedure 37(b)(2)(C) and 28 U.S.C. § 1927 as grounds for awarding Smith his reasonable expenses for obstructions of discovery. Doc. 199 pp. 11-12. Smith's motion for sanctions for obstructing discovery also cited both Rule 37 and Section 1927. Doc. 153 pp. 3-4 & 6-7. Both grounds support an award of the full amount of Smith's costs, expenses, and attorney's fees itemized hereunder.

"District courts possess wide latitude in fashioning appropriate sanctions and evaluating the reasonableness of the attorneys' fees requested. ... [W]e will uphold any exercise of the district court's discretion that could be considered reasonable, even if we might have resolved the question differently ourselves." *Johnson v. Kakvand*, 192 F.3d 656, 661 (7th Cir. 1999) (citations omitted) (affirming Rule 37(b) sanctions and attorney's fees). "The review of an order imposing sanctions under section 1927 is a deferential one, subject to the abuse of discretion standard. ... This court need only inquire whether any reasonable person could agree with the district court's sanction award." *Kapco Mfg. Co. v. C & O Enters., Inc.*, 886 F.2d 1485, 1491 (7th Cir. 1989).

An attorney who violates Rule 37(b) must "pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). Steele and Duffy's obstructions were not justified and an award of expenses would be just. Further, an

5

attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Smith requests an award of all additional expenses, costs and attorney's fees he incurred as a result of their discovery obstructions, whether termed "reasonable expenses, including attorney's fees" under Rule 37 or "excess costs, expenses, and attorney's fees reasonably incurred" under Section 1927.

**B.     Smith Seeks an Award of All Expenses, Fees and Costs Reasonably Incurred Related to Additional Third Party Discovery as a Result of Plaintiff's Counsel's Actions.**

Smith requests an award of his reasonable expenses, costs and attorney's fees based on the discovery sanctions. Doc. 199 pp. 13-14 & 16. All additional litigation costs attributable to the discovery violations, as substantiated by the itemized invoice submitted herewith, should be reimbursed. Smith specifically requests reimbursement for his reasonable costs, fees, and expenses incurred in additional efforts to obtain the obstructed discovery from JP Morgan Chase and Sabadell, and in the additional discovery Smith pursued when the discovery was obstructed. He also seeks to recover his attorney's fees for litigating his motion for discovery sanctions (Doc. 153), its supplement (Doc. 158), and reply in support (Doc. 171); his opposition to Hansmeier's motion to strike that reply (Doc. 179); the hearing on the motion for sanctions (Doc. 187); and his motion for reconsideration (Doc. 189), reply in support (Doc. 193), and his supplemental filings thereto (Doc. 195, 197), and this filing. Those costs, fees and expenses are directly attributable to the discovery infractions, as explained below, so they should be compensated.

1. **Smith Seeks an Award of Expenses, Fees and Costs He Reasonably Incurred in Conducting Third Party Discovery.**

Plaintiffs' counsel used a variety of measures to obstruct discovery. They jointly moved to quash all of Smith's January 2014 subpoenas, and Hansmeier moved to quash all of Smith's March 2014 subpoenas. Doc. 116 & 157; *see* Doc. 125 & 185 (denying the motions). Steele and Duffy obstructed Smith's January 2014 subpoena to JP Morgan Chase; Steele falsely informed the bank that the discovery had been stayed, and after their motion to quash the subpoenas was denied, Duffy faxed the motion to the bank as if it were still pending. The obstructions delayed Smith's access to critical evidence of Plaintiff's counsel's financial status, necessitating a second wave of subpoenas in March and a motion for discovery sanctions. Steele obstructed the March 2014 subpoena to Sabadell Bank, further delaying vital evidence (*see* Doc. 199 p. 15) that, along with the January 2014 obstruction, ultimately necessitated Smith's motion for reconsideration.

In preparing and serving his January 16, 2014 subpoenas requesting discovery from financial institutions, Smith incurred costs and fees in his "attempt to ascertain certain facts relevant to the Court's § 1927 sanctions order." Doc. 125 p. 3. Likewise, in preparing and issuing his March 2014 subpoenas issued to financial institutions and other third parties, Smith incurred costs and fees in conjunction with his then-pending motion for contempt. Doc. 188 p. 7 (citing Doc. 135 & 153-1). All of those costs and fees, and those Smith incurred in reviewing the discovery responses and preparing them for the Court's review, would have been avoided if Plaintiff's counsel had timely complied with the Court's November 27, 2013 Order. Doc. 100; see Doc. 107 & 136. Their choice not to pay the sanctions ordered necessitated all such costs, including attorney's fees, which were therefore "excess costs" recoverable under Section 1927. *See* Doc. 90 p. 2 (collecting cases). The Seventh Circuit has affirmed the Court's exercise of its

discretion to award Smith fees for the entire case under Section 1927. *Lightspeed Media Corp. v. Smith*, 761 F.3d 699, 708-09 (7th Cir. 2014); *see* Doc. 183-1; Doc. 183-2 pp. 15-18.

Those costs are also compensable as "reasonable expenses, caused by the failure" of Plaintiff's counsel under Rule 37(b)(2)(C). Under Rule 37, "an award of sanctions must be proportionate to the circumstances surrounding the failure to comply with discovery." *Crown Life Ins. Co. v. Craig*, 995 F.2d 1376, 1382 (7th Cir. 1993). The Seventh Circuit "will presume proportionality when there are wilful or bad faith violations of discovery orders. The same presumption applies when there is a pattern of contumacious conduct or dilatory tactics or the failure of less drastic sanctions." *Id.* at 1383; *see also id.* at 1384 (affirming sanctions; where the violator's "failure to comply with discovery orders was wilful and demonstrated contumacious conduct and less severe sanctions failed, the sanction here involved was proportionate to the violation"). *See also Loctite Corp. v. Fel-Pro, Inc.*, 667 F.2d 577, 585 (7th Cir. 1981) (affirming award under 35 U.S.C. § 285 after plaintiff's failure to comply with discovery rules) (though "under Rule 37, attorney's fees are limited to those emanating from the abuse of the discovery process ... nearly all of the proceedings in this suit result from Loctite's initial failure to specify its charges against Fel-Pro. Thus, there can be little difference between the amount relating to the entire lawsuit and the amount flowing from the abuse of the discovery process.").

Because Plaintiff's counsel's frivolous, bad faith actions necessitated all of Smith's discovery attorney's fees and costs, they should all be reimbursed under Rule 37 and Section 1927 as "additional expenses incurred in conducting third party discovery." Doc. 199 p. 16.

Ordinarily Rule 37's proportionality limits recovery to expenses, including fees, directly caused by a discovery violation. *See Maynard v. Nygren*, 332 F.3d 462, 471 (7th Cir. 2003)

8

("Rule 37 supports only the reimbursement of fees resulting from the discovery violation.") (citing Fed. R. Civ. P. 37(c)(1)). But that limitation, which would bar recovery of the discovery costs and fees Smith incurred in the January discovery before the acts of obstruction, does not apply when the suit was entirely frivolous. *Id.* ("As long as the suit as a whole was not frivolous, and we have no reason to believe that it was, the remaining attorney's fees would have been incurred even without the discovery violation; thus, the causality requirement was not met."). The Court has repeatedly termed this lawsuit frivolous. Doc. 61 p. 1, 100 p. 8, 185 p. 2; *see* Doc. 189 p. 9. Plaintiff's counsel's failure to timely pay the sanctions ordered was not just frivolous but an act of civil contempt. Doc. 136. Their failure to pay was partly based on claimed insolvency that was itself false and contemptuous, as Smith has shown. Doc. 199. Accordingly, Smith requested an award of all expenses incurred in conducting the discovery, because "Plaintiff's Counsel's numerous false representations have caused Smith to incur significant additional expenses in conducting third party discovery to obtain accurate financial documentation." Doc. 135 p. 15; *accord* Doc. 189. p. 9. "Pursuant to Fed. R. Civ. P. 37, Smith should be awarded sanctions in an amount sufficient to cover his costs, including attorneys' fees incurred in conducting third-party discovery, necessitated solely by Plaintiff's Counsel's misconduct." Doc. 135 p. 15. Plaintiff's counsel's chain of bad-faith litigation calls for full relief.

In the alternative, if the Court chooses not to impose all of Smith's itemized discovery costs, expenses and fees on Steele and Duffy, Smith requests the amounts incurred in conducting all additional discovery after his January subpoenas were stymied, plus the costs of obtaining the obstructed JP Morgan Chase and Sabadell productions. Where a party's Rule 37 violation "has caused the need for additional discovery, it is only just that that party bear the costs of

conducting the additional discovery, as well as the costs and fees associated with the moving party's effort to obtain the needed discovery." *Commonwealth Edison Co. v. Diversified Techs. Grp.*, Case No. 93 C 4138, 1996 U.S. Dist. LEXIS 7872, *7 (N.D. Ill. June 7, 1996).

**2.  Smith Seeks an Award of Expenses, Fees and Costs Reasonably Incurred in Briefing and Litigating Issues Related to Steele and Duffy's Obstructions.**

Section 1927 and Rule 37(b) support awarding Smith his "expenses incurred in obtaining and defending an award." *Rickels v. City of South Bend*, 33 F.3d 785, 787 (7th Cir. 1994). "The rationale of fee-*shifting* rules is that the victor should be made whole--should be as well off as if the opponent had respected his legal rights in the first place." *Id.* (emphasis in original). Both Section 1927 and Rule 37(b) are fee-shifting provisions. *Nissenbaum v. Milwaukee County*, 333 F.3d 804, 811 (7th Cir. 2003) (as "Rule 37 establish[es a] fee-shifting regimen[], an award is automatic"); *Bender v. Freed*, 436 F.3d 747, 751 (7th Cir. 2006) ("the fee-shifting sanction of § 1927"); *Shales v. General Chauffeurs, Sales Drivers and Helpers Local Union No. 330*, 557 F.3d 746, 749 (7th Cir. 2009) ("§ 1927, a real fee shifting law"); *accord* Doc. 199 pp. 11-12.

Steele and Duffy's discovery obstructions were directly responsible for significant additional briefing costs. Smith requests the fees he incurred in briefing his April 18, 2014 motion for sanctions related to the discovery obstructions.[1] Doc. 153. That motion specifically requested monetary sanctions, noting, "sanctions to be awarded should be calculated to deter this type of conduct, and may take into consideration Smith's attorney fees incurred in the amount of $4,908 in connection with this motion." *Id.* pp. 6-7. *See* Ex. A pp. 6-7.

---

[1] Smith first documented Duffy's misrepresentation to JP Morgan Chase in his March 20, 2014 motion for contempt. Doc. 135 p. 9 & Ex. Z. The Court has separately ordered Steele and Hansmeier to compensate Smith for the contempts addressed in that motion so Smith does not request any fees he incurred in briefing that motion, to avoid double recovery.

10

Smith further requests the fees incurred in his opposition (Doc. 165) to Hansmeier's motion to quash (Doc. 157); in supplementing the Rule 37 motion to detail the Sabadell obstruction (Doc. 158), and his reply in support of the motion (Doc. 171), plus fees incurred in reviewing Plaintiffs' counsel's responses in opposition (Doc. 159, 160, 162) when preparing the reply; and in Smith's opposition (Doc. 179) to Hansmeier's motion to strike that reply (Doc. 173, 175). Those fees were all incurred in overcoming their discovery obstructions. Smith served his subpoena on Sabadell in March 2014. Doc. 165-5 pp. 33-39. Steele used the Court's April 4, 2014 Order as a pretext to interfere with Sabadell's response. Doc. 158-1. That bought Steele time; before Smith could determine the facts of the obstruction and call them to the Court's attention (*see* Doc. 158), Hansmeier moved to quash, postponing Sabadell's production until just after the November 12, 2014 hearing. On November 17, 2014 Smith received documents from Sabadell showing that in January and February 2014, while Steele claimed he could not afford to pay the sanctions, he was flush with ample funds that he largely devoted to remodeling his home. *See* Doc. 189 p. 6. Smith's motions were denied on November 18, 2014 (Doc. 188), before he could notify the Court of this evidence received the day before. Plaintiff's counsel should bear all costs and fees Smith expended in an attempt to litigate around their discovery interferences.

The evidence of Steele and Hansmeier's finances that Smith at last obtained, once the obstructions were finally overcome, was so compelling that the Court did not require a hearing on Smith's motion for reconsideration. Doc. 199 p. 12 ("Rule 37 requires no evidentiary hearing, and none is warranted where the briefs and affidavits fully recount the circumstances surrounding the noncompliance."). Thus, if not for the obstructions, that evidence would have been available earlier and the hearing could have been avoided. Because all costs and fees

incurred in the November 12, 2014 hearing related to the discovery sanctions were therefore necessitated only by the obstructions, Steele and Duffy should also bear them. Smith's attorneys were required to fly to Illinois to argue the sanctions motion, necessitating travel expenses and time; each attorney spent 9.5 hours total flying to St. Louis from Massachusetts, and then back again. *See* Doc. 182 ("The parties may NOT appear by phone for the hearing.").

Smith also requests recovery of his fees related to his motion for reconsideration (Doc. 189), Hansmeier and Steele's responses (Doc. 191, 192), Smith's reply in support (Doc. 193), and his supplemental filings thereto (Doc. 195, 197). Reimbursement is not limited to the costs of the initial motion for discovery sanctions. "If only the original motion ... were compensable, the fee-shifting provision of Rule 37 would have little effect." *Catapult Communications Corp. v. Foster*, No. 06 C 6112, 2009 U.S. Dist. LEXIS 76677, *4 (N.D. Ill. Aug. 25, 2009) (approving fees for motion for reconsideration). Where a defendant's motion for Rule 37 sanctions is denied based on a plaintiff's willful failure to comply with discovery, as shown in a subsequent motion for reconsideration by evidence of the plaintiff's false statements, sanctions against that plaintiff properly include the reasonable expenses incurred not only in the motion for reconsideration, but also in the original underlying motions related to sanctions and in preparing for and participating in the evidentiary hearing thereon. *Joshi v. Professional Health Services, Inc.*, 606 F. Supp. 302, 310 (D.D.C. 1985), *aff'd*, 817 F.2d 877, 881 (D.C. Cir. 1987). *Cf. Nelson v. Millennium Labs., Inc.*, Case No. 2:12-cv-01301-PHX-SLG, 2014 U.S. Dist. LEXIS 56650, *9-10 (D. Ariz. Apr. 15, 2014) (considering plaintiff's "history of discovery abuse and the lack of candor," imposing not just expenses and fees of instant motion for Rule 37 sanctions and reply, but also previously denied fees, expenses and costs associated with deposition abused by plaintiff).

The same principle applies where, as here, it is Plaintiff's counsel at fault rather than Plaintiff itself. Where a defendant's discovery motion is denied based on a willful, bad faith misrepresentation by plaintiff's counsel, and the court reconsiders the issue based on evidence of the misrepresentation, counsel should bear the costs incurred in both the original motion and the subsequent motion for sanctions. *See Wilcox v. Kmart Corp.*, Civ. A. No. 94-6122, 1995 U.S. Dist. LEXIS 3347, *2-4 & 11 (E.D. Penn. Mar. 14, 1995) (awarding fees and expenses for both motion to compel and motion for reconsideration). Therefore Smith seeks compensation for his briefing fees related thereto.

### III. The Court Should Use the Lodestar Method to Assess the Fees Reasonably Incurred.

"Rule 37(b) allows the court to award only 'reasonable expenses,'" including attorney's fees. *Tamari v. Bache & Co. (Lebanon) S.A.L.*, 729 F.2d 469, 475 (7th Cir. 1984). Likewise, Section 1927 permits an award only of fees, costs, and expenses "reasonably incurred." 28 U.S.C. § 1927. The lodestar method is typically used to calculate such expenses. *See* Doc. 90 pp. 3-4. Under the lodestar method, attorney's fees are calculated as "the hours reasonably expended multiplied by the reasonable hourly rate." *Johnson v. GDF, Inc.,* 668 F.3d 927, 929 (7th Cir. 2012); *see also Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). "There is a strong presumption that the lodestar calculation yields a reasonable attorneys' fee award." *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011). There are "three determinations required to set that figure: (1) the number of hours reasonably expended by … counsel, (2) the reasonable hourly rate for those services, and (3) costs." *Johnson*, 668 F.3d at 931.

A. **Smith's Attorneys Reasonably Expended the Time Itemized as a Result of Steele and Duffy's Discovery Obstructions.**

The lodestar method entitles the petitioning party to compensation only for attorney time "reasonably expended." *Hensley,* 461 U.S. at 433; *Johnson,* 668 F.3d at 931. Time spent unreasonably cannot be compensated. *People Who Care v. Rockford Dep't of Ed.,* 90 F.3d 1307, 1314 (7th Cir. 1996). In particular, time that is "excessive, redundant, or otherwise unnecessary" is disallowed, *Hensley,* 461 U.S. at 434*; Johnson,* 668 F.3d at 931, as is time spent on unrelated matters, *Gautreaux v. Chicago Housing Auth.,* 491 F.3d 649, 661 (7th Cir. 2007), or time resulting from overstaffing of the case*, Schlacher v. Law Offices of Phillip J Rotche & Assocs., P.C.,* 574 F.3d 852, 858 (7th Cir. 2009). The party seeking fees has the burden of proving the reasonableness of the hours worked by submitting evidence supporting those hours. *Hensley,* 461 U.S. at 433; *Spegon v. Catholic Bishop of Chicago,* 175 F.3d 544, 553 (7th Cir. 1999). The fee award may be reduced if the documentation is inadequate. *Hensley,* 461 U.S. at 433.

Smith's attorneys made every effort to avoid duplicating each others' work and to minimize the cost of the representation to Smith, as their time records reflect. *See* Ex. B & C. They expended a reasonable amount of hours pursuing discovery to demonstrate Plaintiff's counsel's misrepresentations in the face of their willful obstructions. This was no small task; as another District Court has observed, Plaintiff's counsel "obfuscate other facts, especially those concerning their operations, relationships, and financial interests. [Their] web of disinformation is so vast that [even they] cannot keep track—their explanations of their operations, relationships, and financial interests constantly vary." Doc. 92-4 p. 8 (Order Issuing Sanctions, *Ingenuity 13 LLC v. John Doe*, Case No. 2:12-cv-8333-ODW(JCx) (C.D. Cal. May 6, 2013). False claims of Plaintiff's counsel's insolvency spurred Smith to single-handedly dive into that

web of disinformation, chasing a paper trail through dozens of banks and other financial institutions, reviewing thousands of pages of documents and electronic records about accounts controlled by Plaintiff's counsel and more than a dozen of their shell companies. *See* Doc. 124 p. 4 (discussing Plaintiff's counsel's "financial shell game"). Plaintiff's counsel's habit of opening and promptly shuttering accounts, in an apparent attempt to obscure both their present financial resources and the proceeds' source, complicated Smith's task. *See* Doc. 135 p. 4. They further prolonged and vexatiously multiplied his task by interfering with third-party discovery, and by a series of baseless filings and false statements in Court, which required further filings by Smith's counsel. In all, his additional discovery efforts involved 224.30 of attorney time expended over eighteen months; slightly more than he spent litigating the stillborn case-in-chief. *See* Doc. 90 p. 4. Plaintiff's counsel's misrepresentations and obstructions made all that time necessary.

**B.     Smith's Attorney's Fees Are Market Rate and Are Presumptively Reasonable.**

The reasonable hourly rate is "derived from the market rate for the services rendered." *Johnson,* 668 F.3d at 933; *Pickett,* 664 F.3d at 640. The market rate is "the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the kind of work in question." *Stark v. PPM Am., Inc.,* 354 F.3d 666, 674 (7th Cir. 2004). "[T]he attorney's actual billing rate for comparable work is presumptively appropriate to use as the market rate." *Mathur v. Bd. of Trustees of S. Ill. Univ.*, 317 F.3d 738, 743 (7th Cir. 2003) (internal quotation omitted). The burden of proving the market rate is on the party seeking fees. *Gautreaux,* 491 F.3d at 659; *Stark,* 354 F.3d at 674.

Smith satisfies his burden. He has submitted supporting affidavits from his lead counsel, Jason E. Sweet and Daniel G. Booth, listing the hourly rates charged by the two partners. These

rates were the normal hourly rates of the attorneys and were the rates charged to Smith in connection with the discovery. *See* Doc. 90 pp. 5-6. At $409 per hour for both partners, these rates were also a relative bargain. *Id.* The Court approved that rate as reasonable in the first Order sanctioning Plaintiff's counsel. Doc. 100 pp. 11-12. Before that Order, the Court described as modest both the total Smith's counsel billed and their hourly rates: "That's actually a pretty modest request around this place. We used to see fees for removal petitions that would run twice that. ... [T]hat seems like a pretty modest amount to me in this case. ... That's what you call bargain rates around here." Doc. 100 pp. 4:17-22, 5:16-23 & 17:11-18. Though Smith's counsel have raised their rates for other clients since they began to represent him in 2012, they have not sought to reflect those higher rates in this case. The evidence shows that the regular $409 per hour rates charged by Smith's attorneys are the relevant market rates and are reasonable, if not low, for purposes of calculating fees under Section 1927 and Rule 37.

C.  **Smith's Costs Were Reasonably Incurred in Conducting Third Party Discovery.**

Smith incurred reasonable costs in conducting third-party discovery. He paid out $1,567.04 total to cover third parties' duplication and postage costs in responding to his January 16, 2014 subpoenas: $124.50 to Bank of America; $189.41 to Fifth Third Bank; $203.84 to CitiBank; $90.50 to TCF Bank, $708.13 to JP Morgan Chase, and $250.66 to Wells Fargo. He further paid $164.00 to TransUnion to research credit records for Plaintiff's counsel and certain payees of their firm Prenda Law. Smith would not have incurred those costs if Plaintiff's counsel had timely paid the sanctions under the Court's November 27, 2013 Order, honestly stated their finances in early 2014 instead of raising a spurious poverty defense, or responded to Smith's January 21, 2014 discovery requests. Those costs should be compensable under 28 U.S.C. §

1927 or Rule 37(b). Rule 37 sanctions "should encompass all expenses, whenever incurred, that would not have been sustained had the opponent conducted itself properly." *Aerway Labs., Inc. v. Arco Polymers, Inc.*, 90 F.R.D. 563, 565-66 (N.D. Ill. 1981), *cited with approval in Tamari v. Bache & Co. (Lebanon) S.A.L.*, 729 F.2d 469, 475 (7th Cir. 1984)).

The $708.13 Smith paid to JP Morgan Chase would also compensable because Steele and Duffy directly obstructed that discovery. Further costs caused by their obstructions include: $81.60 to Sabadell and $6.20 to GoDaddy for their duplication and postage costs in responding to Smith's March 2014 subpoenas (Doc. 165-5 pp. 12-17 & 33-39); $10.00 to the Delaware Secretary of State for Monyet, LLC's incorporation documents; and $175.00 to Scottrade, Inc. for its costs of duplication and postage in response to Smith's February 6, 2015 subpoena concerning Monyet, LLC. Smith incurred those costs to expose Plaintiff's counsel's financial misrepresentations to the Court, and because Steele and Duffy's obstructions prevented Smith from timely access to the information sought. Those costs should all be compensable.

Smith's $137.86 in postage costs should also be compensable, as they were also necessitated by Plaintiff's counsel's misrepresentations and evasions, and their interference and noncompliance with discovery. Of that total, Smith spent $32.28 in postage on January 21, 2014, sending Plaintiff's counsel copies of the January third-party subpoenas, and the discovery requests to which Plaintiff's counsel never responded; another $23.46 sending them his March 7, 2014 subpoenas, which Smith withdrew at their demand; and $57.14 on March 26, 2014, sending them his reissued subpoenas. *See* Doc. 165, 165-2. He also spent $24.99 on an overnight delivery to expedite his subpoena issued to Scottrade while his motion for reconsideration was pending.

Smith's costs and expenses associated with the November 12, 2014 hearing, necessitated by Plaintiff's counsel's false statements and Steele and Duffy's discovery obstructions, should also be compensable. The Rule 54(d) "limits on fees and costs available to a prevailing party post-judgment" do not apply when the Court imposes sanctions under Rule 37. *Rosenthal Collins Group, LLC v. Trading Techs., Int'l, Inc.*, No. 05 CV 4088, 2010 U.S. Dist. LEXIS 64767, *16 (N.D. Ill. June 29, 2010). Accordingly, "courts in this circuit (and others) have found that attorney travel costs are fair game in the sanctions context." *Id.* (collecting cases); *see* Fed. R. Civ. P. 54(d)(2)(E). Smith's attorneys incurred actual out-of-pocket expenses totaling $926.63 for their round-trip flight from Boston to St. Louis, hotel accommodations, car rental, and dining expenses over two days. *See* Exhibit B. To avoid double recovery, Smith requests only half that total, $463.31, as the hearing addressed not just Smith's motion for discovery sanctions but also Steele and Hansmeier's contempt, for which the Court has already ordered sanctions.

## IV. The Amount of Sanctions Sought Is Reasonable in the Circumstances of this Case.

In light of the nature of the case, the work performed, and the outcome obtained, Smith's requested sanction of $94,343.51 is more than proper. No adjustment to the lodestar amount, which represents reasonable hours worked at presumptively reasonable rates, is necessary or appropriate. *See* Doc. 90 pp. 7-8. The hours and hourly rate, and the itemized costs and expenses, are eminently reasonable for the more than a year spent fending off obstructive tactics, and ferreting out and poring over documents to prove Plaintiff's counsel falsehoods to the Court. Their bad faith interference with Smith's discovery, which ultimately exposed yet more of their malfeasance, justifies the amount he requests. The amount is also proportionate to the millions of dollars Plaintiff's counsel sought in this case, and a pittance compared with the millions more

they obtained by filing frivolous cases much like this. *See* Doc. 14 pp. 16-17 (arguing that this action, before removal, was "only for the purposes of coercing millions of dollars in settlement payments and not for the purposes of prosecuting this lawsuit"); Doc. 61-6.

At the outset of this case, Steele could be found bragging about his millions in ill-gotten proceeds. *See* Doc. 136 p. 10 n. 1. Lately he and his confederates have been busy squirreling their proceeds away, falsely representing their financial status to the Court, and trying to cover their tracks. Their falsehoods and obstructions created significant costs for Smith, which they should be made to bear. *See Riddle & Associates, P. C. v. Kelly,* 414 F.3d 832, 835 (7th Cir. 2005) (one purpose of Section 1927 is "to ensure that those who create unnecessary costs also bear them") (internal quotation omitted); *Tamari v. Bache & Co. (Lebanon) S.A.L.*, 729 F.2d 469, 475 (7th Cir. 1984) ("Requiring a party to bear these costs could offset substantially the very award that the party has obtained. This would create a disincentive for seeking sanctions in the first place and thus undermine the purposes behind Rule 37(b).") (discussing costs on appeal).

Dated: July 2, 2015                               Respectfully,

                                                                  /s/ Dan Booth
Dan Booth (admitted *pro hac vice*)
dbooth@boothsweet.com

Jason E. Sweet (admitted *pro hac vice*)
jsweet@boothsweet.com

BOOTH SWEET LLP
32R Essex Street
Cambridge, MA 02139
Tel.: (617) 250-8602
Fax: (617) 250-8883

*Counsel for Defendant Anthony Smith*

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1(b)

I hereby certify that on this 2nd day of July, 2015, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record and provide service upon each.

                                                /s/ Dan Booth
                                                Dan Booth