### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LIGHTSPEED MEDIA CORPORATION, | Case No. 3:12-CV-889-GPM-SCW |
|     Plaintiff, | |
| | Judge: Hon. David R. Herndon |
| v. | |
| ANTHONY SMITH, et al, | |
|     Defendants. | |

### MOTION AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR A STAY OF CONTEMPT ORDER PENDING APPEAL

John Steele respectfully moves this Court for a stay of its Orders granting Anthony Smith's Motion for Reconsideration (Dkt. 199) and awarding Smith $112,171.75 in monetary sanctions against Steele. (Dkts. 199, 210).

All of the factors favoring a stay are present in this case. Steele has a strong prospect of success on the merits of his pending appeal; Steele will suffer irreparable harm absent a stay; a stay for the limited purpose of securing review of the Orders by the Seventh Circuit will not harm anyone; and a stay is in the public interest.

### BACKGROUND

On March 24, 2014 the Court issued an order holding Steele in contempt and imposing a roughly $28,000 contempt sanction on him and others. (Doc. 136). In that order, the Court found that financial documents Steele had filed with the Court were "incomplete and suspicious." (Doc. 199 at 6). That order also recharacterized a previously-filed set of papers submitted by Defendant Anthony Smith as a motion for an additional sanction for contempt. (*Id.*).

A hearing on Steele's motion for an additional sanction for contempt was heard on November 12, 2014. At the hearing Smith's counsel had an opportunity to present evidence and argument. The Court denied Smith's motion in an order dated November 18, 2014. (Doc. 188). Then, on December 15, 2014 Smith filed a motion for reconsideration. Steele filed an opposition to the motion. (Doc. 193). On February 26, 2015—or over three months after the Court issued its denial order—Smith filed a document with the Court styled as a "Motion to Supplement" his prior motion for reconsideration. (Doc. 197). This document contained additional facts and argument that were not presented in Smith's original motion for reconsideration. (*Id.*). On June 25, 2015, the Court issued an Order granting Smith's November 18, 2014 motion for reconsideration. (Doc. 199). As it related to Steele, the Order imposed contempt sanctions in the amount of $65,000 (Doc. 199) (relating to the Court's findings regarding Steele's financial status) and $47,171.75 (Doc. 210) (imposing $94,343.51 sanction for discovery conduct and apportioning liability equally between Steele and attorney Paul Duffy). Steele has submitted funds to the Court in the full amount of the liability for which he is responsible, *i.e.* $112,171.75 and, for the reasons stated below, respectfully asks that the Court accept these funds as full security for Steele's liability pending an appeal.

## LEGAL STANDARD

The standard for a motion seeking a stay pending appeal consists of four factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *see also Antonelli v. FBI*, 553 F. Supp. 19, 20 (N.D. Ill. 1982). These familiar equitable factors cannot be reduced to a "set of rigid rules," but rather necessitate "individualized judgments in each case." *Hilton*, 481 U.S. at 777. Further, "to

find that plaintiffs have a strong likelihood of success on appeal, the Court need not harbor serious doubts concerning the correctness of [a] decision. Otherwise, relief under rule 62(c) would rarely be granted." *Peck v. Upshur Cnty. Bd. of Educ.*, 941 F. Supp. 1478, 1481 (N.D. W. Va. 1996). The substantiality of Steele's arguments on appeal, together with the balance of equities, weighs heavily in favor of granting a stay pending appellate review.

### ARGUMENT

For the reasons set forth herein, Steele has a strong likelihood of success on the merits of his appeal. The balance of the equities also favors a stay. The beneficiary of the Order will suffer no harm from a stay, but failing to stay the Order would irreparably harm Steele. Finally, granting a stay will serve the public interest.

### I.  Steele Has A Strong Likelihood Of Success On The Merits.

Steele has a strong likelihood of success on the merits because: (a) the $65,000 sanction was imposed without mandatory due process requirements; (b) the Court did not and could not find that the "evidence" relied upon by Smith satisfied the Seventh Circuit's requirements applicable to motion for reconsideration; and (c) the $94,343.51 sanction was imposed with zero findings as to why that amount is in any way related to the extra costs Smith incurred due to the violations identified in the Court's Order.

### A.  The $65,000 Sanction Was Imposed Without Mandatory Due Process.

The Court's $65,000 sanction was imposed for the purpose of punishment, rather than compensation or coercion. As such, the Court was required to provide Steele with mandatory due process protections. These due process protections were not provided, giving rise to an error of law that provides Steele with strong grounds for an appeal.

### 1.  Legal Standard.

Contempt sanctions come in two forms—civil and criminal. *FTC v. Trudeau*, 579 F.3d 754, 769 (7th Cir. 2009). The nature of the sanction depends on the character of the relief itself, and not on a court's subjective intent. *Id.* (citing *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828 (1994)). The form of sanction matters because criminal sanctions require certain constitutional safeguards before they are imposed (e.g., right to counsel, notice of charges, double jeopardy, proof beyond a reasonable doubt). *Id.* (citing *Bagwell*, 512 U.S. at 826–27, 831, 841); *In re Troutt,* 460 F.3d 887, 893 (7th Cir. 2006); Fed. R. Crim. P. 42(a)). Civil sanctions, by contrast, may be imposed without as many safeguards, though some level of due process is always required, and might vary depending on the circumstances. *Id.*

The difference between criminal and civil contempt turns on the nature of the relief provided. *Id.* A civil contempt is remedial, and for the benefit of the complainant, while criminal contempt is punitive to vindicate the authority of the court. In terms of monetary sanctions, civil sanctions fall in two categories. *Id.* They can compensate the complainant for his losses or they can coerce the contemnor's compliance with a court order. *Id.* On the other hand, a criminal contempt sanction is a flat, unconditional fine totaling even as little as $50 after a finding of contempt where the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance. *Id.*

## 2.    **Application.**

These proceedings had none of the bells and whistles of a criminal trial. So for the $65,000 sanction to stand, it must be a "civil" one. *Id.* Yet, the $65,000 sanction imposed by this Court was neither coercive nor compensatory, and was thus not civil.

### a.    **The Sanction Was Not Coercive.**

The sanction was not coercive because there was no opportunity to purge, *i.e.* avoid the penalty, or some part of it, by complying with the order. For the sanction to stand it must be compensatory.

### b.      The Sanction Was Not Compensatory.

The sanction was not compensatory. A careful comparison of the time sheets submitted by Smith in support of his request for discovery sanctions and the events in this case reveal that Smith has already recovered for most (if not all) of the time expended by his attorneys—down to the flights they have taken back-and-forth from Boston to St. Louis and the meals they ate while here. Based on the record that will be before it, the appellate court will be unable to find that the $65,000 compensated Smith for anything.

### c.      The Sanction Was Punitive.

The sanction was plainly imposed for the purpose of punishment. By the Court's own explanation, it arrived at $65,000 figure as part of a "purposeful pattern," in which the Court is calculating sanction awards by applying a progressively-higher percentage multiplier to the amount of a previously-imposed sanction—irrespective of harm. The sanction was imposed on Hansmeier and Steele on a joint and several basis, even though Steele submitted his statement of financial position independently of Hansmeier. The Court's explanation of the sanction amount included a threat to impose sanctions with a higher multiplier if future misconduct occurs—once again irrespective of the compensation function of a civil sanction. Further, the Court has already sanctioned Steele for submitting "incomplete" financial statements, providing Smith with whatever compensation to which he would even theoretically be entitled. Any additional sanction will only serve to punish, rather than compensate. All of these factors make crystal clear

that the function of the $65,000 sanction is to impose punishment and deterrence—not compensation.

### 3.      The Sanction Was Imposed Without Sufficient Due Process.

These proceedings had none of the bells and whistles of a criminal trial. There was no notice of charges, the standard of proof beyond a reasonable doubt was not applied and there was no independent prosecutor. Indeed, until the Court's order issued, Steele was not even put on notice that the Court was contemplating criminal sanctions. Importantly, the Constitutional safeguard of double jeopardy barred the Court's consideration of Smith's motion for reconsideration. The November 12, 2014 motion hearing put Steele at risk of jeopardy, and thus prevented the Court from entertaining further requests to put Steele at risk of jeopardy. A motion for reconsideration certainly cannot be used as an "end run" around Constitutional safeguards. To hold otherwise would render Constitutional safeguards meaningless.

### B.      The Court Did Not And Could Not Find That The New Evidence Relied Upon By Smith Satisfied The Seventh Circuit's Standard For Reconsideration

Seventh Circuit precedent is clear: "To support a motion for reconsideration based on newly discovered evidence, the moving party must show not only that this evidence was newly discovered or unknown to it until after the hearing, but also that it could not with reasonable diligence have discovered and produced such evidence at the hearing." *Caisse Nationale de Credit Agricole v. CBI Indus.*, 90 F.3d 1264, 1270 (7th Cir. 1996). Importantly, a motion for reconsideration is not meant to address arguments that a party should have previously raised. *Solis v. Current Dev. Corp.*, 557 F.3d 772, 780 (7th Cir. 2009). Nothing in the record explains why Smith did not present the information presented in his motion for reconsideration at the original motion hearing. The Court's Order does not and could not make any findings in this regard. For these reasons Steele respectfully submits that the appellate court will find that the

- 6 -

"new evidence" presented by Smith did not meet the demanding standard established by the Seventh Circuit.

### C.     The $94,343.51 Sanction Was Imposed With Zero Findings Linking The Amount Of The Sanction To The Conduct Described In The Court's Order.

Although the determination of the amount of reasonable attorney's fees is left to the sound discretion of the district court, it is equally true that a district court is nevertheless required to "provide a clear explanation of its reasons for the amount of the award it grants." *Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1282 (7th Cir. 1983). In this case, the Court's Order setting the amount fees was a basic minute entry that contained no such findings. The appellate court is going to have no explanation why, for example, the Court awarded fees incurred by Smith prior to the date on which the discovery violations identified in the order occurred. Nor is the any explanation for the total disproportion between the act of sending an e-mail and a one-half share of a $94,343.51 sanction. For these reasons, a reversal and remand with instructions to make findings appears to be highly probable in this case.

### II.  The Remaining Equitable Factors Support A Stay.

The remaining equitable factors also support a stay. Smith is not prejudiced in any manner by a stay as Steele has already paid $112,171.75 in funds to the Court, *i.e.* the total amount of the sanction against Steele. If Smith prevails in his appeal against Steele then he may simply make an application to the Court for the release of these funds. If Steele prevails then he can apply to the Court for a return of the funds. Thus, regardless of how the appeal turns out the party who is entitled to the money will receive the money with minimal further Court involvement or oversight. The public interest also supports a stay. If Smith were to immediately receive the funds, then Steele could be put in the position where recovering this money from Smith is difficult. If this scenario were to play out then the Court would be facing the burden of

substantial judgment enforcement efforts against Smith and his attorneys. The public interest favors a minimally-burdensome process whereby at the conclusion of the pending appeal the party who is entitled to the money can simply make an application to the Court for its receipt.

## CONCLUSION

The Court should stay the Orders (Dkts. 199, 210) pending appeal.

/s/ John Steele
John Steele
500 Michigan Ave.
Suite 600
Chicago, IL 60611
(312) 396-4154