## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

_____

LIGHTSPEED MEDIA CORPORATION,           )
                                        )
        Plaintiff,                      )     Case No. 3:12-cv-00889-GPM-SCW
                                        )
v.                                      )     **DEFENDANT ANTHONY**
                                        )     **SMITH'S RESPONSE TO**
ANTHONY SMITH, SBC INTERNET SERVICES,   )     **ORDER TO SHOW CAUSE**
INC., d/b/a AT&T INTERNET SERVICES; AT&T )    **AND APPLICATION FOR**
CORPORATE REPRESENTATIVE #1; COMCAST    )     **RECEIPT OF FUNDS**
CABLE COMMUNICATIONS, LLC, and          )
COMCAST CORPORATE REPRESENTATIVE #1,    )
                                        )
        Defendants.                     )
_____)

Defendant Anthony Smith ("Smith") hereby responds to the Court's Order to Show Cause (Doc. 229) and moves the Court to enforce its earlier Orders finding Plaintiff's counsel Paul Hansmeier in civil contempt (Doc. 199), and imposing discovery sanctions on Plaintiff's counsel John Steele and Paul Duffy in the amount of $94,343.51 (Doc. 210), by transferring that amount to Smith from the funds deposited in the Court. *See* Doc. 216; Fed. R. Civ. P. 67.

### PROCEDURAL BACKGROUND

After removal from state court in 2012 (Doc. 2), while defendants' motions to dismiss (Doc. 26, 28, 36) were pending, Plaintiff voluntarily dismissed all claims in 2013. Doc. 59. The Court then sanctioned Plaintiffs' attorneys John Steele ("Steele"), Paul Duffy ("Duffy") and Paul Hansmeier (collectively, the "Attorneys") pursuant to 28 U.S.C. § 1927, ordering them to pay defendants' attorney fees and expenses totaling $261,025.11. Doc. 100. The Attorneys denied that they could comply. *See* Doc. 101, 115, 127; *see also* the Attorneys' February 2014 *in camera* filings. For failing to comply, the Court sanctioned the Attorneys for civil contempt, ordering

1

them to pay an additional $26,102.58. Doc. 136. Meanwhile Smith, doubting the Attorneys' claims of insolvency, issued subpoenas to their financial institutions. *See* Doc. 116-1; 153 p. 2.

The Attorneys appealed from both the Section 1927 sanctions and the civil contempt sanctions. Doc. 102, 140. Steele posted a $287,300 supersedeas bond on April 8, 2014. Doc. 149. The Seventh Circuit affirmed both sanctions awards on August 22, 2014. Doc. 183-1, 183-2. Defendants collected on the supersedeas bond. *See* Doc. 189 p. 5 n. 1; Doc. 222 p. 5:2-3.

On June 5, 2015, the Court found that Steele and Duffy's misleading communications to JPMorgan/Chase Bank ("Chase") and, in Steele's case, to Sabadell United Bank, had obstructed Smith's financial discovery. Doc. 199 pp. 13-14 & 16. The Court also again found Steele and Hansmeier in contempt for misleading the Court by claiming insolvency when, as Smith's discovery showed, they had sufficient assets to satisfy the Section 1927 sanctions order. *Id.* pp. 14-16. The Court ordered Steele and Hansmeier to pay contempt sanctions of $65,623, and ordered Steele and Duffy to pay Smith's discovery costs, apportioned equally. *Id.* pp. 16-17.

Hansmeier noticed an appeal from the contempt sanction on July 6, 2015. Doc. 204. He filed for bankruptcy in Minnesota on July 13, 2015. Doc. 228-1 p. 6. Hansmeier declared that his obligation for the contempt sanction would be covered by Steele: "Anthony Smith Matter — This debt in the amount of $65,000.00 [sic] will be paid in full by codefendant outside of the plan within 30 days." Form 3015-1 - Chapter 13 Plan p. 3, *In re Paul Hansmeier*, Case No. 15-42460 (Bankr. D. Minn. filed July 13, 2015), attached as Exhibit A hereto.

On July 23, 2015, the Court set the amount of discovery sanctions at $94,343.51. Doc. 210, 213. Steele noticed an appeal on August 7, 2015. Doc. 211. On August 10, 2015, Steele submitted $112,171.75 to the Court as security pending appeal. Doc. 212 pp. 2 & 7; Doc. 216.

Duffy died the same day, without having filed a notice of appeal. *See* Doc. 228-1 pp. 2 & 6. On December 3, 2015, Hansmeier's bankruptcy was converted to Chapter 7. *Id.* p. 6; Doc. 229 p. 1.

On July 19, 2016, the Seventh Circuit ruled on Hansmeier and Steele's appeals from the discovery and contempt sanctions. Doc. 228-1. Hansmeier's appeal was dismissed for lack of standing because only his bankruptcy trustee was authorized to pursue it. *Id.* p. 7. The Seventh Circuit affirmed $94,343.51 discovery sanctions. *Id.* pp. 10-12. It vacated the $65,623 contempt sanction against Steele upon finding it "was a criminal contempt imposed without the process required by the Fifth Amendment to the U.S. Constitution." *Id.* p. 15. The Seventh Circuit remanded for further proceedings: "We make no comment on what type of contempt Smith may wish to seek, whether the court might re-consider the possibility of civil contempt, or whether criminal contempt could be justified once the proper procedures are followed. We are confident that the district court will take a fresh look at these questions in light of this opinion." *Id.*

On remand, the Court ordered Steele to show why he should not be fined for his civil contempt as a remedial sanction, in an amount necessary to compensate the Court for its costs incurred, including time expended, as a direct result of Steele's misrepresentations. Doc. 229 pp. 2-3. The Court further ordered Steele and Smith to file any brief related to the matter on or before September 23, 2016. *Id.* pp. 3-4. The $112,171.75 submitted by Steele as security remains on deposit with the Court. *See* Doc. 216 ("Pending the outcome of the appeal, the party who is entitled to the money shall make an application to the Court for its receipt.").

## ARGUMENT

### I.    Civil contempt proceedings and sanctions are well within the Court's discretion.

The Court would be well within its discretion to proceed against Steele and impose civil contempt sanctions. Though the Seventh Circuit vacated the contempt remedy as appropriate only for criminal contempts, it did not question the well-grounded findings that Steele and Hansmeier committed civil contempt. Developments over the last few months further support those findings, and the imposition of sanctions to compensate the Court.

### A.    Recent developments confirm the Court's findings of civil contempt.

The Attorneys separately appealed from a United States District Court for the Central District of California order sanctioning them, Prenda Law Firm ("Prenda"), and a few of their dummy plaintiff firms. Doc. 81-4; *see* Doc. 86 p. 5, Doc. 100 pp. 7 & 10 nn.; Doc. 88 p. 6, Doc. 228-1 p. 2. The Ninth Circuit affirmed those sanctions. *Ingenuity 13 LLC v. Doe*, No. 13-55859 (9th Cir. June 10, 2016) (not precedential), attached as Exhibit B hereto. The Ninth Circuit specifically affirmed the district court's finding that the Attorneys "were indeed the leaders and decision-makers behind Prenda Law's national trolling scheme," and recognized that the Attorneys "have lied to other courts about their ability to pay sanctions." *Id.* pp. 8 & 11 (citing the Seventh Circuit's first opinion in this case).

Further, on July 1, 2016, Hansmeier admitted to his ethical violations as alleged by the Minnesota Office of Lawyers Professional Responsibility including, in this case, violating the Illinois Rules of Professional Conduct by failing to pay sanctions and making false statements to the Court with respect to his ability to pay. *See* Petition for Disciplinary Action ¶¶ 58-94, *In re Paul Robert Hansmeier*, File No. A5-1885 (Minn. filed Oct. 28, 2015); Supplementary Petition

for Disciplinary Action, *id.* (Minn. filed May 4, 2016); Stipulation for Discipline ¶ 4, *id.* (Minn. filed July 1, 2016), attached as Exhibits C, D & E hereto. Hansmeier stipulated to the suspension of his license to practice law with no right to petition for reinstatement for four years. Ex. E ¶ 6. The Minnesota Supreme Court found the discipline warranted by Hansmeier's misconduct including, in this matter, "participating in the initiation of a lawsuit without a basis in law and fact, making false and misleading statements to the court, failing to pay attorney fees assessed against him by the court, and submitting to the court a financial statement that was false, misleading, and deceptive." Order p. 1, *id.* (Minn. Sept. 12, 2016), attached as Exhibit F hereto.

In particular, Hansmeier now unconditionally admits that his financial statement submitted to the Court *in camera* on February 24, 2014 was false, misleading and deceptive, substantially understating his net worth. Ex. C ¶¶ 58-94; Ex. E ¶ 4. On November 22, 2013, Hansmeier transferred $175,000 from Monyet LLC's Scottrade account to his wife Padraigin Browne's ("Browne") TCF Bank account. Ex. D ¶ 135(a); *see* Doc. 197-3 p. 14. Browne then withdrew $150,000 in cash from that account, which they kept in a box in a closet in their home "to ensure that [Hansmeier's] creditors would not be able to access those funds." Ex. D ¶¶ 135(b), (c). Hansmeier and Browne claimed the $150,000 in cash was used to pay their "household expenses." *Id.* ¶ 135(f). His financial statement to the Court disclosed only $500 cash among his assets, though "[a]t the time [Hansmeier] submitted the financial statement to the court, he knew of the existence of the $150,000 in cash in his closet." *Id.* ¶ 135(d), (e). The financial statement failed to disclose several other material holdings. *See id.* ¶¶ 135(h)-(k), (m).

**B.    The Court should summarily fine Steele and inform the IARDC of the sanction.**

The Court should summarily fine Steele in an amount necessary to reimburse all costs the Court bore because of his misrepresentations. Doc. 229 p. 3 (*citing United States v. Dowell*, 257 F.3d 694, 699 (7th Cir. 2001)); *accord Lasar v. Ford Motor Co.*, 339 F.3d 1101, 1111-12 (9th Cir. 2005) (*citing Dowell*), *cert. denied sub nom. Sutter v. Lasar*, 546 U.S. 873 (2005). In a civil contempt proceeding, the Court "normally will proceed in a more summary fashion than it would on an ordinary complaint." *D. Patrick, Inc. v. Ford Motor Co.*, 8 F.3d 455, 459 (7th Cir. 1993). A "contempt proceeding is concerned solely with whether or not the respondent's conduct violates a prior court order[.]" *Id.* That matter has been decided, and the Court need not revisit the established facts of Steele's contempt. *Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 759 (7th Cir. 2008). The Seventh Circuit specifically affirmed the finding that Steele and Hansmeier violated Court orders by falsely claiming an inability to pay sanctions at "the very time when Steele and Hansmeier were emptying accounts they controlled of sums vastly in excess of the sanctions they owed." Doc. 228-1 p. 12. "This was obviously egregious behavior, and a flat violation of the district court's order." *Id.* Therefore, "no evidentiary hearing [should be] required because the only relevant factual issue—whether [the contemnor attorney] complied with the order—was already resolved." *Alexander v. Chicago Park District*, 927 F.2d 1014, 1022 (7th Cir. 1991); *accord id.* at 1025 (*citing In re Grand Jury Proceedings*, 894 F.2d 881, 882-83 (7th Cir. 1989)).

Once the sanction is entered, the Court should further notify the Illinois Attorney Registration and Disciplinary Commission, which has a disciplinary proceeding against Steele pending for his conduct in this case among others. *See* Amended Complaint, *In re Steele*, Comm'n No. 2015PR00068 (Ill. Att'y Regis. & Disc. Comm'n Hr'g Bd. filed Aug. 20, 2015),

available at https://www.iardc.org/15PR0068CM.html; *id.* ¶¶ 78-114 (alleging counts of bad faith litigation, dishonest conduct, and obstructing discovery in this case).

## II.    The Court should transfer $94,343.51 to Smith.

The Court ordered Hansmeier and Steele to pay Smith a total of $65,263 jointly and severally, and ordered Steele and Duffy to pay Smith $94,343.51 apportioned equally. Doc. 199 p. 17, Doc. 210. The Court has $112,171.75, plus any accrued interest, on hold as security. Doc. 216. Transferring $94,343.51 of that amount to Smith—$47,171.75 to cover Steele's half of the discovery sanctions, and another $47,171.76 to cover either Duffy's half or a portion of Hansmeier's liability for contempt—would be solely compensatory and would comply with the Seventh Circuit's instructions on remand, as explained below. Pursuant to the Court's August 10, 2015 Minute Order, Doc. 216, Smith hereby applies to the Court for $94,343.51 of that security, plus any applicable interest, as compensation for the additional expenses he incurred in discovery arising out of the Attorneys' contemptuous misrepresentations and obstructions.

## A.    The Court should transfer $47,171.75 to Smith because he prevailed over Steele's appeal from the discovery sanctions.

The Court awarded discovery sanctions to Smith in the amount of the additional expenses incurred in conducting third party discovery, apportioned equally between Steele and Duffy. Doc. 199 p. 16. The Court found that the amount Smith requested, $94,343.51, was reasonable and recoverable. Doc. 210 p. 4. On Steele's appeal, the discovery sanctions were affirmed in full. Doc. 228-1 pp. 9-12. The Seventh Circuit entered judgment on July 19, 2016 and its mandate issued on August 10, 2016. Doc. 228, 228-2. Therefore at least $47,171.75, Steele's half of the $94,343.51 discovery sanctions award, should be paid to Smith as partial compensation for his excess expenses incurred in discovery, with any applicable interest.

**B.   The Court should transfer another $47,171.76 to Smith because there was no appeal from the discovery sanctions imposed on Duffy.**

"As with contempt, Rule 37(b) sanctions may serve either remedial and compensatory purposes or punitive and deterrent purposes." *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 783-84 (9th Cir. 1983). The sanctions imposed on Duffy and Steele were expressly remedial, compensating Smith for specific costs he incurred in discovery about the Attorneys' finances. Doc. 210. Compensatory sanctions, unlike punitive sanctions, survive the death of the sanctioned party. *See United States v. Asset*, 990 F.d 208, 212-14 (5th Cir. 1990).

Though Duffy died shortly after the Rule 37(b) discovery sanctions were entered, his liability remains and is past due. No estate has been opened for Duffy whose executor could serve as a substitute to appeal from the entry of sanctions. *See* Fed. R. App. P. 43(a). Any such appeal, if ever brought, would likely be moot. *See Schwartz v. Dhanapala*, No. 00-9280, 16 F. App'x 56 (2d Cir. 2001) (slip op.) (where sanctioned party died pending appeal from sanctions order, "the appeal is probably moot"); *Johnson v. Morgenthau*, 160 F.3d 897 (2d Cir. 1998); *Bivins v. Parke*, 7 F. App'x 532 (7th Cir. 2001). Because Duffy never posted security and left no estate from which to collect debts, his half of the discovery sanction will only be satisfied if it is paid out from the security Steele posted. It is proper to order compensation for Smith for his costs incurred in civil contempt, in lieu of discovery costs, by transferring to him another $47,171.76 of the funds held in the Court, at minimum.

It is especially appropriate to cover Duffy's share of the liability with funds Steele posted because the sanctions imposed on Duffy were for joining with Steele in obstructing discovery of bank records that showed Steele misrepresented his financial status. Smith first issued subpoenas to the Attorneys' financial institutions on January 16, 2014. *See* Doc. 125 p. 1. To forestall

discovery, Steele informed Chase on January 29, 2014 that he intended to move to quash the subpoenas, and the Attorneys filed a motion to quash the next day. *Id.*; Doc. 199 p. 13. Though the Court denied the motion on February 19, 2014, Duffy sent Chase a stamped copy of the motion two weeks later, on March 3, 2014. *Ibid.* Duffy's obstructive act was a continuation of Steele's obstructive acts with Chase and, as Smith later noted, the documents Chase ultimately produced were among the most damning evidence of the Attorneys' financial resources, "detailing millions of dollars flowing through multiple accounts to multiple aliases." Doc. 189 p. 5; *see* Doc. 135 Exs. J, L, P, & U. Those bank records confirmed more than $1.3 million dollars paid to the Attorneys, and to Steele and Hansmeier's Under the Bridge Consulting, from Prenda's Chase operating account. Doc. 135 p. 7 & *id.* Exs. S, T pp. 5-6 & U. When Smith finally obtained the obstructed evidence, it helped debunk Steele and Hansmeier's claims of financial inability and their denials of an ongoing, controlling role in Prenda. Steele should share in Duffy's liability because Duffy shared in Steele's obstructions to shield Steele and Hansmeier.

Therefore at least $47,171.76, Duffy's share of the $94,343.51 discovery sanctions award, should be paid to Smith as partial compensation for his excess expenses incurred in discovery, with any applicable interest.

**C.    In the alternative, the Court should transfer another $47,171.76 to Smith because Hansmeier's appeal from the contempt sanctions was dismissed.**

If the Court does not transfer $47,171.76 to Smith to cover Duffy's liability for his discovery obstructions, it should transfer at least that amount to Smith to cover Steele and Hansmeier's obligations for their contemptuous misrepresentations.

Smith pursued discovery, which Steele and Duffy obstructed, in order to determine and demonstrate the falsity of the Attorneys' claimed inability to pay. Doc. 200 p. 2. Steele and

Hansmeier's contemptuous false statements instigated Smith's pursuit of discovery from the Attorneys, which they never produced, and from their financial institutions, with which Steele and Duffy interfered. If not for the contemptuous false statements, Smith would not have incurred the $94,343.51 awarded by the Court as discovery costs. Doc. 200-1.

Smith incurred more than that amount in costs attributable both to the Attorneys' misrepresentations and their discovery obstructions. *See* Doc. 200 p. 10 n. 1 (noting that Smith had not sought any fees incurred in briefing his initial motion for contempt, Doc. 135, in which he first documented Duffy's discovery obstruction involving Chase). The Seventh Circuit vacated the contempt sanction upon finding it served to punish Steele rather than to compensate Smith. Doc. 228-1 p. 14. Yet the affirmed discovery sanctions and the remanded contempt sanctions sought to remedy the same costs. As the Court explained, Smith's discovery "expenses were incurred as a direct result of Lightspeed's counsel's refusal to pay the original sanctions order and false assertions of insolvency related thereto." Doc. 210 p. 2. To ensure compensation, and no more, the Court should transfer the full $94,343.51 (plus any applicable interest) that Smith itemized as incurred in responding to the Attorneys' misrepresentations and obstructions.

The Seventh Circuit did not question the Court's finding that Steele and Hansmeier engaged in civil contempt. Rather, the Seventh Circuit vacated the $65,263 contempt award as not compensatory upon finding that the $94,343.51 discovery sanction compensated any loss Smith incurred. Doc. 228-1 p. 14 ("[The Court] had taken care of costs attributable to the separate discovery sanctions in a separate part of the order."). Smith will receive only half of the compensation ordered unless the Court transfers the full sum to which he is entitled.

On July 6, 2015, Hansmeier filed a notice of appeal from the order finding him in civil contempt. Doc. 204. One week later, on July 13, 2015, Hansmeier filed for bankruptcy under Chapter 13. Doc. 228-1 p. 6. His appeal and Steele's appeal were docketed separately. Doc. 207, 217. Hansmeier's bankruptcy was converted to Chapter 7 on December 3, 2015. Doc. 228-1 p. 6. Accordingly, the Seventh Circuit dismissed his appeal for lack of standing, because only his bankruptcy trustee, not Hansmeier, had the authority to pursue an appeal on his behalf. *Id.* p. 7. As a result, the sanctions ordered against Hansmeier are still valid and past due. "[S]ince no appeal was ever taken from [the] order, save for that which was dismissed as improperly taken, that order stands as the final determination of a court of competent jurisdiction on such issue." *Falk v. Falk Corp.*, 390 F. Supp. 1276, 1282 (E.D. Wisc. 1975) (applying collateral estoppel to contempt order against deceased party despite dismissed appeal taken by widow as executrix).

Transferring $47,171.76 to Smith would appropriately draw from funds that Hansmeier contributed, though posted by Steele. Hansmeier's bankruptcy trustee, in a complaint against Browne, recounted her testimony that some $60,000 of the funds Steele deposited with the Court came from Hansmeier's closet box. *See* Complaint ¶ 63, *In re Paul Hansmeier*, No. 15-42460 (Bankr. D. Minn. filed Mar. 17, 2016) ($60,000 "went to John Steele to pay for one of the bonds for the appeal … I believe it was the Lightspeed appeal"), attached as Exhibit G hereto. *See also id.* ¶¶ 18-33 (detailing Hansmeier transfers from the Monyet Scottrade account to Browne's TCF Bank account, and Browne's cash withdrawals from that account, in the context of this Court's 2013 and 2015 judgments sanctioning Hansmeier) & ¶¶ 56-62 (recounting Hansmeier and Browne testimony regarding transfers of Monyet trust funds to Browne's TCF Bank account, and cash withdrawn from that account and kept in box in their closet).

The $60,000 that Hansmeier and Browne gave Steele went toward either the supersedeas bond that the Court approved when it stayed the first contempt order in 2014, Doc. 148 & 149, or toward the security Steele posted in 2015, Doc. 216. In either case, it supports transferring the funds to Smith. If the $60,000 was part of the 2014 supersedeas bond, then Hansmeier lied when he told the Court that he could not afford that bond, and that the bond had been secured by Steele alone. *See, e.g.*, Doc. 139 p. 5 n. 3 ("Hansmeier's contributions in other cases have exhausted his ability to pay in this case."), Doc. 141 p. 4, Doc. 141-1. And if so, Steele also misled the Court when he claimed that he had to borrow the money for the supersedeas bond. See Doc. 156 p. 13 ("Steele has posted the bond—by receiving loans from a friend and a family member"); Doc. 222 p. 14:19-24 (discussing "sworn statements from the two people that had to put up this money on short notice on my behalf"). If, on the other hand, the $60,000 was part of the security that Steele posted 2015, then it is proper to transfer at least $47,171.76 of Hansmeier's funds to cover the judgment against him.

Therefore at least $47,171.76, with any applicable interest, should be paid to Smith as partial compensation for his excess expenses incurred in discovery necessitated by Hansmeier and Steele's contemptuous misrepresentations.

## CONCLUSION

Smith therefore respectfully applies for $94,343.51 of the security posted in 2015, plus interest. Smith further supports the imposition of civil contempt sanctions upon Steele. Smith and his counsel will assist the contempt proceedings however the Court requires.

Dated: September 23, 2016          Respectfully,

  /s/ Dan Booth
Dan Booth (admitted *pro hac vice*)
Email: dbooth@boothsweet.com

  /s/ Jason Sweet (with consent)
Jason E. Sweet (admitted *pro hac vice*)
Email: jsweet@boothsweet.com

BOOTH SWEET LLP
32R Essex Street
Cambridge, MA 02139
Tel.: (617) 250-8602
Fax: (617) 250-8883

*Counsel for Defendant Anthony Smith*

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1(b)

I hereby certify that on this 23rd day of September, 2016, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record and provide service upon each.

  /s/ Dan Booth
Dan Booth