IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

LIGHTSPEED MEDIA CORP.,

    Plaintiff,

vs.   No. 3:12-cv-889-DRH-SCW

ANTHONY SMITH, et al.,

    Defendants.

### ORDER

**HERNDON, District Judge:**

### INTRODUCTION

This matter is before the Court on the matter of John Steele's civil contempt. Based on the record and the following, the Court **ORDERS** as follows:

### BACKGROUND

In 2012, Lightspeed Media Corporation, the operator of online pornography sites, filed an anti-hacking suit in state court against defendant Anthony Smith. The suit alleged that Smith's IP (Internet Protocol) address was associated with the unlawful viewing of Lightspeed's content and that Smith was part of a scheme to steal passwords and content from Lightspeed. Lightspeed, represented by attorneys Paul Duffy, John Steele and Paul Hansmeier (collectively, the attorneys), identified approximately 6,600 other individuals (through their IP addresses only) as Smith's Co-conspirators. Then, acting *ex parte,* Lightspeed served subpoenas on the ISPs (Internet Service Providers) seeking the personally identifiable

1

information for each of the alleged co-conspirators. The ISPs, who were non-parties at the time, fought the subpoenas and eventually won before the Illinois Supreme Court. Lightspeed responded by amending its complaint (adding the ISPs as parties) and reissuing the subpoenas. The ISPs refused to comply, removed the action to the Southern District of Illinois and continued to fight the subpoenas.

Apparently, this was standard operating procedure for Lightspeed and its attorneys. Beginning in 2010, Lightspeed's attorneys began filing hundreds of suits across the country against thousands of individuals for allegedly illegally downloading porn. The nationwide scheme "consisted of monitoring BitTorrent download activity of their copyrighted pornographic movies, recording IP addresses of the computers downloading the movies, filing suit in federal court to subpoena Internet Service Providers ("ISPs") for the identity of the subscribers to these IP addresses, and sending cease-and-desist letters to the subscribers, offering to settle each copyright infringement claim for about $4,000." *Ingenuity 13 LLC v. John Doe,* 2013 WL 1898633, *2 (C.D. Cal. May 6, 2013) (Wright, J.). In the spring of 2013, a California District Judge described the litigation strategy as exploitive and sanctioned the attorneys for misconduct. *Id.*

Shortly after being sanctioned in California, perhaps seeing the writing on the wall, Lightspeed voluntarily dismissed all claims in the instant litigation (Doc. 59). Thereafter, the Court found the Lightspeed lawsuit was frivolous, baseless, and "smacked of bullying pretense." Accordingly, the Court sanctioned the

attorneys pursuant to 28 U.S.C. § 1927 and ordered them to pay defendants' attorney fees and expenses totaling §261,025.11 (Doc. 100).

Rather than pay, the attorneys insisted they were insolvent (*See* Doc. 101, 115, 127; *see also* the Attorneys' 2014 *in camera* filings). For failing to comply, the Court sanctioned the Attorneys for civil contempt, ordering them to pay an additional $26,102.58 (Doc. 136). The Seventh Circuit affirmed both sanctions awards on August 22, 2014 (Doc. 183-1, 183-2). Smith then collected on a supersedeas bond that had been posted by Steele (Doc. 189 p. 5 n.1; Doc. 222 p. 5;2-3).

The attorneys' claims of insolvency and misconduct in furtherance of those claims are the cause of the current dispute. Smith, suspecting the attorneys' claims were baseless, issued subpoenas to the attorneys' financial institutions. The attorneys then utilized various misleading and obstructive tactics to block Smith's subpoenas. Eventually, despite the attorneys' misconduct, Smith managed to obtain relevant financial records and began the painstaking task of detangling the attorneys' web of lies. As it turned out, while the attorneys were claiming insolvency, "Steele and Hansmeier were emptying accounts they controlled of sums vastly in excess of the sanctions they owed." *Lightspeed Media Corp. v. Smith*, 830 F.3d 500, 508 (7th Cir. 2016).

A slew of briefing and argument before the Court followed. Ultimately, after reviewing the available evidence, the Court issued an order finding that Duffy and Steele engaged in unreasonable, willful obstruction of discovery in bad faith."

3

(Doc. 199). The Court imposed discovery sanctions, payable to Smith, in the amount of $94,343.51 (Smith's discovery costs) (Doc. 210). The monetary sanction as to Steele and Duffy was to be "apportioned equally" between the two attorneys (Doc. 210, p. 2,4). Hereinafter, the Court will refer to this sanction as the Discovery Sanction.

The Court also found Steele and Hansmeier in contempt for misleading the Court by claiming insolvency in relation to the Section 1927 Sanctions Order. The Court ordered Steele and Hansmeier to pay contempt sanctions of $65,623. Hereinafter, the Court will refer to this sanction as the Contempt Sanction.

Hansmeier noticed an appeal from the contempt sanction on July 6, 2015 (Doc. 204). A week thereafter, he filed for bankruptcy (Doc. 228-1 p. 6). Steele noticed an appeal on August 7, 2015 (Doc. 211). Duffy died on August 10, 2015, without having filed a notice of appeal (Doc. 228-1 pp. 2 & 6).

On or about August 10, 2015, Steele transferred funds to the Court via two separate wire transfers: One wire transfer in the amount of $65,000 (apparently in relation to the Contempt Sanction on behalf of himself and Hansmeier)[1] and a second wire transfer in the amount of $47,171.75 (one-half of the Discovery Sanction).

---

[1] Hansmeier noticed an appeal from the contempt sanction on July 6, 2015 (Doc. 204). He filed for bankruptcy in Minnesota on July 13, 2015 (Doc. 228-1 p. 6). Hansmeier declared that his obligation for the contempt sanction would be paid by Steele (Doc. 230-1). Hansmeier's bankruptcy was converted to a Chapter 7 (Doc. 228-1 p. 6; Doc. 229 p. 1).

Because an appeal was pending, the Court entered a minute order stating that it would "retain the $112,171.75 pending the outcome of the appeal." (Doc. 216). Further, pending the outcome of the appeal, the Court directed the party entitled to the money to "make an application to the Court for its receipt." *Id.*

On July 19, 2016, the Seventh Circuit ruled on Hansmeier and Steele's appeals from the Discovery Sanction and the Contempt Sanction (Doc. 228-1). Hansmeier's appeal was dismissed for lack of standing because only his bankruptcy trustee was authorized to pursue it. *Id.* p. 7. The Seventh Circuit affirmed the $94,343.51 Discovery Sanction. *Id.* pp. 10-12. It vacated the $65,623 contempt fine after finding it was not remedial and fell "on the criminal side of the line." *Id.* Pp. 12-15. Because criminal contempt proceedings had not been followed, the fine could not stand. *Id.* Accordingly, the Seventh Circuit remanded for further proceedings as to the Contempt Sanction stating as follows:

> We make no comment on what type of contempt Smith may wish to seek, whether the court might re-consider the possibility of civil contempt, or whether criminal contempt could be justified once the proper procedures are followed. We are confident that the district court will take a fresh look at these questions in light of this opinion.

*Id.* At 15.

On remand, the Court elected to reconsider the possibility of civil contempt (Doc. 229). On August 17, 2016, the Court ordered Steele to show cause why he should not be fined for his civil contempt as a remedial sanction, in an amount necessary to compensate the Court for its costs, and set the matter for hearing (Doc. 229). The Court allowed the parties until September 23, 2016 to file any

briefing in relation to the Show Cause Order (Doc. 229). Smith filed a responsive brief on September 23, 2016 (Doc. 230). Steele did not submit any briefing in relation to the Show Cause Order and did not reply to Smith's briefing on the matter.

In his responsive brief, Smith asked the Court to transfer $47,171.75, Steele's half of the $94,343.51 Discovery Sanction, from the retained funds to Smith (Doc. 230). The Court granted this request and directed the Clerk of the Court to transfer $47,171.75 to Smith.

Smith also asked the Court to transfer $47,171.76, Duffy's half of the Discovery Sanction, from Steele's retained funds to Smith (Doc. 230). Smith argued that because Duffy was deceased and no estate had been opened for Duffy, it was impossible for Smith to recover Duffy's half of the Discovery Sanction. The Court denied this request (Doc. 232).

In the alternative, Smith argued that Steele could be fined for his civil contempt as a remedial sanction, in an amount necessary to cover the unpaid portion of Smith's discovery costs ($47,171.76). The Court took the matter under advisement and notified the parties that it would address this matter at the show cause hearing:

> The Court is inclined to agree [with Smith's argument]. The Seventh Circuit did not question the Court's finding that Steele and Hansmeier engaged in civil contempt. Rather, the Seventh Circuit vacated the $65,263 contempt award as not compensatory upon finding that the $94,343.51 discovery sanction compensated any loss Smith incurred (Doc. 228-1 p. 14). However, in light of Duffy's death, Smith will receive only half of the compensation he is owed. But for Steele and Hansmeier's contemptuous false statements, Smith would

6

> not have pursued the subject discovery and would not have incurred $94,343.51 in costs. Imposing a fine on Steele in the amount of $47,171.76 (the remaining costs to Smith) for his conduct would be purely compensatory and would be a permissible sanction for Steele's civil contempt.
>
> The Court, however, will refrain from awarding costs at this time. Instead, in order to allow Steele every opportunity to respond, the Court will consider this matter at the Show Cause Hearing set for October 20, 2016.

(Doc. 232).

On October 19, 2016, Steele filed a motion to reconsider the above order (Doc. 233). The motion was denied (Doc. 234). The show cause hearing was held on October 20, 2016 (Doc. 235). Steele appeared in person and presented argument. Attorneys for Smith appeared by phone and presented argument. At the conclusion of the hearing, the Court took the matter under advisement.

## ANALYSIS

The Seventh Circuit vacated the contempt remedy imposed by the Court because it was criminal in nature and imposed without the process required by the Fifth Amendment. Although the Appellate Court vacated the contempt remedy, it did not question the finding that Steele committed civil contempt. Thus, the question the Court considers is the remedial sanction that should be imposed on Steele for his civil contempt.

"A monetary penalty for a wrong committed in federal court is civil in nature if the payment is designed to compensate for harm done." (Doc. 228-1 p.

13). Thus, a fine "connected to any cost imposed on either Smith or the district court" would be an appropriate remedy for Smith's civil contempt. *Id.* at 14.

In the instant case, Smith incurred $94,343.51 in costs. These costs were incurred because of the attorneys' fraudulent statements regarding ability to pay and the attorneys' subsequent efforts to prevent Smith and this Court from discovering their misrepresentations. Smith has recovered $47,171.75. However, Smith has $47,171.76 in unpaid costs. Steele's civil contempt (misrepresentations to this Court regarding insolvency) directly contributed these costs. Accordingly, the Court finds it is appropriate to fine Steele in the amount of $47,171.75, payable to Smith, to compensate Smith for resultant harm.

At the hearing, it was evident that Steele, as the last man standing, felt aggrieved at the possibility of being held responsible for all of Smith's costs. He feels he should not have to pick up the bill for Duffy and Hansmeier. But, the attorneys acted in concert to mislead this Court. Steele and Hansmeier fraudulently alleged insolvency. Steele and Duffy then obstructed discovery in an effort to conceal Steele and Hansmeier's misrepresentations and to avoid paying the Section 1927 Fine. The discovery costs Smith incurred are a direct result of the overlapping wrongs committed by Steele, Hansmeier, and Duffy. The attorneys are jointly and severally liable for this misconduct.

Finally, the Court believes it has authority to impose additional costs on Steele to compensate the taxpayers for the time the Court has spent resolving matters pertaining to the attorneys' misconduct. *See* U.S. v. Dowell, 257 F.3d

8

694, 699-700 (7th Cir. 2001); *Maynard v. Nygren*, 332 F.3d 462 (7th Cir. 2003). However, the Court declines to do so here.

## CONCLUSION

The Court imposes civil contempt sanctions against John Steele in the amount of $47,171.76 (an amount equal to Anthony Smith's unpaid costs). The Court **DIRECTS** the Clerk of the Court to transfer $47,171.76 from Steele's retained funds to Smith. The balance of the retained funds, $17,828.24,[2] shall be returned to Steele.

**FURTHER**, the Court **DIRECTS** the Clerk of Court to mail a copy of this order to the Attorney Registration and Disciplinary Commission of the Supreme Court of Illinois, 3161 West White Oaks Drive, Suite 301, Springfield, IL 62704, for such further action, if any, as the Commission may deem appropriate.

**IT IS SO ORDERED.**

Signed this 23rd day of November, 2016.

Judge Herndon
2016.11.23
15:35:29 -06'00'

**United States District Judge**

---

[2] Steele's retained funds totaled $112,171.75. On October 14, 2016, the Court ordered the Clerk of the Court to transfer $47,171.75 to Smith (Doc. 232) leaving $65,000 in retained funds. Thus, after the civil contempt sanction of $47,171.76 provided for herein is transferred to Smith, the balance of the retained funds will be $17,828.24.

9